## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| REVSTONE INDUSTRIES, LLC,[1] | |
| | Case No. 12-13262 (BLS) |
| Debtor. | |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS

The above-captioned debtor and debtor in possession (the "**Debtor**") submits this motion for interim and final orders pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions (the "**Motion**").[2] In support of its Motion, the Debtor respectfully states as follows:

### I.        JURISDICTION AND VENUE

1.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C.

---

[1]        The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]        Capitalized terms used but not otherwise defined herein have the meaning attributed to them in the *Declaration of Jay N. Brown in Support of First Day Motions* filed contemporaneously herewith.

§§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought hereby are Sections 105(a), 345, and 363 of the Bankruptcy Code, as well as Rule 6003 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules.

## II.    PROCEDURAL STATUS

2.    On December 3, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

3.    The Debtor continues to operate its businesses as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not yet appointed any official committees in this case, and no request has been made for the appointment of a trustee or an examiner.

4.    A description of the Debtor's businesses, capital structure, and the circumstances leading to the Chapter 11 filing is set forth in the Declaration of Jay N. Brown in Support of Chapter 11 Petition and First Day Motions (the "**Brown Declaration**") filed contemporaneously herewith and incorporated herein by reference.

## III.    RELIEF REQUESTED

5.    By this Motion, the Debtor seeks interim and final orders authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions.

703997156
RLF1 7673029v.1

## IV.    BASIS FOR RELIEF

### A.    The Debtor Should Be Authorized to Continue to Use Its Existing Cash Management System

6.    Before the commencement of this case, the Debtor and the Affiliates, in the ordinary course of business, used an integrated, centralized cash management system to collect, transfer and disburse funds and to accurately record all such transactions as they were made (the "**Cash Management System**").

7.    The Cash Management System includes the necessary accounting controls to enable the Debtor to trace funds through the system and to ensure that all transactions are adequately documented and readily ascertainable.  Employees of the Debtor and certain of the Affiliates maintain the books and records and document and journalize transactions, including, but not limited to, intercompany transactions, with particularity.  Postpetition, the Debtor will continue to maintain detailed records reflecting all such transfers of funds or transactions.

8.    The Debtor maintains a single bank account (the "**Bank Account**").  The Bank Account is a general account with Bank of America (the "**Bank**"):

| Bank | Location | Account Number | Account Type |
|------|----------|----------------|--------------|
| Bank of America | Troy, MI | ******5954 | General Account |

9.    The Debtor neither collects nor disburses funds through its Bank Account beyond nominal amounts from time to time.  As of the morning of the Petition Date, the Bank Account held a balance of $0.00.  In connection with the Judgment in favor of Boston Finance Group, LLC ("**BFG**"), and against the Debtor and certain Affiliates (as more particularly described in the Brown Declaration),[3] BFG had requested writs of nonperiodic garnishment upon the Bank, to

---

[3]    *See Boston Fin. Grp., LLC v. Power-Tec Mfg., LLC*, Case No. 12-28975-CK (Mich. Cir. Ct., Grand Traverse Cnty.).

703997156
RLF1 7673029v.1

which the Bank responded with garnishee disclosures. The Bank Account is not subject to a continuing garnishment. The Debtor does not maintain any investment accounts.

10.    The Debtor is entitled to receive funds from certain of its Affiliates in consideration of the Debtor's provision of actual, necessary, and reasonable out-of-pocket legal, accounting, insurance, marketing, payroll, general and administrative, and management services, as well as other services of a similar nature (the "**Management Fees**"). The Debtor receives such Management Fees from certain of its Affiliates, such as Metavation, LLC, MW Texas Die Casting, Inc., Contech Castings, LLC, and Eptec S.A. De C.V.

11.    These Affiliates use the Management Fees owed to the Debtor to pay certain obligations of the Debtor, such as payroll, at the Debtor's direction.[4] The Debtor's payroll processor is Ceridian Corporation ("**Ceridian**"). Ceridian maintains a payroll account on behalf of the Debtor and certain of the Affiliates at the Bank (the "**Payroll Account**"):

| Bank | Location | Account Number | Account Type |
|------|----------|----------------|--------------|
| Bank of America | Concord, CA | ******2709 | Ceridian Payroll Trust |

12.    Each payroll period, the Debtor processes payroll data and submits same to Ceridian, and, at the direction of the Debtor, certain of the Affiliates transfer Management Fees sufficient to cover payroll and ordinary fees of the Payroll Account. After disbursement, the Payroll Account balance reverts to zero dollars.[5]

---

[4]    Accounts of Affiliates at Wells Fargo, for example, are used to transfer funds into the Payroll Account for the payment of the Debtor's payroll two to three business days before each payroll disbursement date.

[5]    In connection with the Judgment in favor of BFG and against the Debtor and certain Affiliates (as more particularly described in the Brown Declaration), BFG had requested writs of nonperiodic garnishment upon Ceridian, to which Ceridian responded with garnishee disclosures. The Payroll Account is not subject to a continuing garnishment.

703997156
RLF1 7673029v.1

13.    The Cash Management System nevertheless allows for (a) overall corporate control of funds, (b) certain cash availability when and where needed, and (c) the reduction of administrative costs through a centralized method of coordinating the collection and movement of funds.  The Debtor's transition into Chapter 11 and preservation of the businesses of the Debtor and the Affiliates depend on the ability of the Debtor to maintain and operate the Cash Management System without interruption.

14.    The operation of the businesses of the Debtor and the Affiliates requires that the Cash Management System remain in place during the pendency of this Chapter 11 case. Adopting new cash management systems would be expensive, create unnecessary administrative burdens, and be disruptive to the Debtor's operations.  Moreover, it would be a critical waste of the Debtor's resources to impose a new cash management system.  Consequently, maintenance of the existing Cash Management System is in the best interests of all creditors and other parties in interest.

15.    The Debtor, therefore, requests authority to continue to use its Cash Management System as it may be modified as required in the ordinary course of business and pursuant to the Debtor's sound business judgment.

16.    This Court has routinely granted Chapter 11 debtors authority to continue using their existing cash management systems. *See, e.g.*, *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Bankr. D. Del. Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del.

5

June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

17.    The Debtor, therefore, requests authority to continue utilizing its Cash Management System as outlined herein.

**B.    The Debtor Should Be Granted Authority to Maintain Its Existing Bank Account**

18.    In addition, the Debtor requests that the Bank at which the Bank Account is maintained be authorized and directed to continue to administer the Bank Account as such account was maintained prepetition, without interruption and in the usual and ordinary course, and, as applicable, to pay any and all checks, drafts, wires, or automated clearinghouse transfers issued on the Bank Account on account of any claims arising on or after the Petition Date so long as sufficient funds are in such Bank Account.

19.    To effectuate the foregoing, the Debtor requests (i) that the Bank be authorized and directed to honor all representations from the Debtor as to which checks should be honored or dishonored and (ii) that any final payment made by the Bank prior to the Petition Date against the Bank Account, or any instrument issued by the Bank prior to the Petition Date on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

20.    The Debtor also seeks a waiver of the U.S. Trustee's requirement to the extent necessary to allow the Debtor to maintain use of its Payroll Account. The Payroll Account is a zero balance account at the Bank and maintained by Ceridian on behalf of the Debtor and certain Affiliates. Funds are only deposited when and to the extent necessary to meet periodic payroll

703997156
RLF1 7673029v.1

obligations.  For these reasons, the Debtor believes that any funds deposited in the Payroll Account at the Bank will be safe.

21.    The U.S. Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases.  These guidelines require Chapter 11 debtors to, among other things:  (i) close all existing bank accounts and open new debtor in possession bank accounts, (ii) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes, (iii) maintain a separate debtor in possession account for cash collateral, and (iv) obtain checks for all debtor in possession accounts that bear the designation "Debtor-In-Possession," the bankruptcy case number, and the type of accounts.

22.    The Debtor may deposit, withdraw, and otherwise transfer funds to and from the Bank Account by various methods, including check, wire transfer, automated clearinghouse transfer, internal bank transfer, and electronic funds transfer.  The Debtor believes that the Bank Account is held at a financially stable banking institution.

23.    The Debtor seeks a waiver of the U.S. Trustee's requirement that the Bank Account be closed and that new postpetition bank accounts be opened.  The Bank Account and Payroll Account are part of a carefully constructed cash management system that permits the Debtor and the Affiliates to fund their ongoing operations in a streamlined and cost-efficient manner.  In order to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, it is important that the Debtor be permitted to maintain its existing Bank and Payroll Accounts and, when necessary, to open new accounts.

24.    The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and the Bank at which the Bank Account is maintained will be directed not to pay, any

7

debts incurred by the Debtor before the Petition Date other than as authorized by this Court. The Debtor will work closely with the Bank in order to ensure that appropriate procedures are in place to ensure that checks issued before the Petition Date but presented after the Petition Date will not be honored absent approval from this Court.

25.    In other cases of this size in this District, it has been recognized that the strict enforcement of bank account closing requirements may not always serve the rehabilitative purposes of Chapter 11. Accordingly, courts in this District have waived such requirements in many cases. *See, e.g.*, *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

26.    In sum, the Debtor requests that the Bank Account be deemed a debtor in possession account and that it be authorized, though not directed, to maintain and continue the use of the Bank Account and the Payroll Account in the same manner and with the same account numbers and document forms as those employed during the prepetition period.

**C.    The Debtor Should Be Granted Authority to Continue to Use Existing Business Forms and Checks**

27.    In order to minimize expenses to its estate, the Debtor also requests that it be authorized to continue to use all correspondence, business forms (including, but not limited to,

8

letterheads, purchase orders, and invoices) and checks existing immediately before the Petition Date, without reference to the Debtor's status as debtor in possession. The Debtor possesses blank check stock and requests ten (10) days from the date of entry of the proposed interim order appended hereto as **Exhibit A** to conform to the operating guidelines of the U.S. Trustee as to such checks. To the extent the Debtor possesses preprinted check stock and/or business forms stock, in accordance with Local Rule 2015-2(a), upon depletion of such check stock and/or business forms stock, the Debtor will obtain new check stock and/or business forms stock reflecting its status as a debtor in possession.

28.     Parties doing business with the Debtor should generally be aware of its status as debtor in possession as a result of the size of this Chapter 11 case, the notices given in connection therewith, and general press coverage. A requirement that the Debtor change its business forms would be expensive and burdensome to the Debtor's estate.

29.     Courts in this District have routinely granted the same or similar relief to other Chapter 11 debtors. *See, e.g., In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

703997156
RLF1 7673029v.1

30.    For these reasons, the Debtor requests that it be authorized to use existing checks and business forms without being required to place the legend "Debtor In Possession" on each.

**D.    Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345**

31.    If it is determined that the Debtor's use of the Bank Account does not conform with the approved investment practices identified in Section 345 of the Bankruptcy Code, the Debtor seeks to extend by sixty (60) days the time within which it is required to come into compliance with Section 345 of the Bankruptcy Code or to make such other arrangements as agreed with the U.S. Trustee.  If the Debtor determines that it is not able to comply with the requirements of Section 345 of the Bankruptcy Code within the sixty (60) day period, the Debtor will file a motion seeking a modification of such requirements in accordance with Local Rule 2015-2(b).

32.    Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety.  A court may, however, relieve a debtor in possession of the restrictions imposed by Section 345(b) of the Bankruptcy Code for "cause."  To the extent necessary, the Debtor believes that "cause" exists to waive the investment and deposit restrictions under Section 345(b) of the Bankruptcy Code.  Such relief is especially appropriate here given that the Bank Account holds only a nominal amount of cash at any given time.

703997156
RLF1 7673029v.1

33.    Courts have granted requests to approve similar relief as requested herein. *See, e.g.*, *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

E.    **The Bankruptcy Code Permits the Debtor to Continue Engaging in Intercompany Transactions**

34.    In the ordinary course of business, the Debtor and the Affiliates engage in intercompany transactions and transfers among themselves (collectively, the "**Intercompany Transactions**"). For example, as described herein, the Debtor is entitled to Management Fees from certain Affiliates for the provision of actual, necessary, and reasonable out-of-pocket legal, accounting, insurance, marketing, payroll, general and administrative, and management services. These Affiliates transfer funds attributable to such Management Fees to the Payroll Account to satisfy the Debtor's payroll expenses.

35.    Each Intercompany Transaction is accounted for through book entries on the Company's books and records. Such balances may represent extensions of intercompany credit and/or the performance of necessary and valuable services by one entity for another. To ensure that the Debtor will not, at the expense of its creditors, fund the operations of other entities, the Company will continue to maintain records of such transfers if the Court authorizes the

703997156
RLF1 7673029v.1

continuation of the Intercompany Transactions. Postpetition, the Debtor will maintain detailed records reflecting all such transfers of funds or transactions.

36.     Courts in this District have authorized debtors to continue their prepetition intercompany funding practices after the commencement of Chapter 11 cases. *See, e.g.*, *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

37.     As noted above, the Debtor and the Affiliates, in the ordinary course of business, may engage in Intercompany Transactions. Thus, the Debtor respectfully submits that court approval of these transactions is not required pursuant to Section 363(c)(1) of the Bankruptcy Code. Nevertheless, out of an abundance of caution, the Debtor seeks court approval of the relief requested herein, in the event this Court finds that the Intercompany Transactions are outside the ordinary course of business.

38.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order

such transaction under Section 363(b). *See, e.g., The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").  In the event an order permitting it to continue engaging in the Intercompany Transactions is necessary, the Debtor believes that its business judgment to continue the Intercompany Transactions is sound because, among other reasons discussed herein, the Intercompany Transactions reduce the administrative costs of the Debtor, facilitate the satisfaction of the Debtor's obligations, and are integral to the Debtor's business practices.  Thus, the Debtor submits that continuation of its Intercompany Transactions is in the best interests of the Debtor's estate and its creditors.

39.    Courts frequently have authorized debtors to continue their prepetition intercompany practices after commencement of Chapter 11 cases. *See, e.g., In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re Freedom Commc'ns Holdings, Inc.*, Case No. 09-13046 (BLS) (Bankr. D. Del. Sept. 2, 2009); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 30, 2009); *In re Sportsman's Warehouse, Inc.*, Case No. 09-10990 (CSS) (Bankr. D. Del. Mar. 23, 2009); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); *In re Verasun Energy Corp.*, Case No. 08-12606 (BLS) (Bankr. D. Del. Nov. 3, 2008).

F.    **Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived**

40.    The Debtor submits that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and that Bankruptcy Rule 6003 has been satisfied or should be deemed waived.  Similarly, and for the same reasons, the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

13

G.    **Reservation of Rights**

41.    The Debtor requests that any relief granted hereunder not be deemed to constitute the postpetition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, the relief granted hereunder should not affect the Debtor's right to contest the amount or validity of any claims, in whole or in part. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, in the best interests of its estate and creditors, and should be granted in all respects.

## V.    NOTICE AND PRIOR MOTIONS

42.    Notice of this Motion will be given to the following parties in interest (collectively, the "**Initial Notice Parties**"): (a) the United States Trustee for the District of Delaware; (b) Wells Fargo Capital Finance, LLC ("**Wells Fargo**"); (c) Otterbourg, Steindler, Houston & Rosen, P.C., counsel to Wells Fargo; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (e) all other parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(b). Notice of this Motion also will be given to the Bank and Ceridian. The Debtor will serve copies of the Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtor believes that the notice provided is fair and adequate and that no further notice is necessary.

43.    In the event the Court enters an interim order granting this Motion, the Debtor proposes to serve notice of such entry on the Initial Notice Parties, the Bank, and Ceridian. The notice will provide that any objections to the relief granted in the interim order must be filed with the Court and served upon counsel for the Debtor no later than seven (7) days prior to the final hearing to be held on the Motion (the "**Objection Deadline**"). If an objection is timely filed and

14

served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion. If no objections are timely filed and served, the Debtor's counsel will file a certification of counsel to that effect attaching a final form of order.

44.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested by this Motion and such further relief as may be just and necessary under the circumstances.


*[Remainder of page intentionally left blank]*

703997156
RLF1 7673029v.1

Dated: December 5, 2012
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

MAYER BROWN LLP
Brian Trust
Howard S. Beltzer
Frederick D. Hyman
1675 Broadway
New York, New York 10019-5820
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Proposed Attorneys for the Debtor
and Debtor in Possession*

703997156
RLF1 7673029v.1