**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 12-13262 (BLS) |

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDER UNDER SECTIONS 105, 363, AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND EMPLOYEE BENEFITS, (II) AUTHORIZING CONTINUATION OF EMPLOYEE BENEFIT PLANS AND PROGRAMS POSTPETITION, AND (III) DIRECTING ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS**

The above-captioned debtor and debtor in possession herein (the "**Debtor**") submits this Motion for an Order under Sections 105, 363, and 507 of the Bankruptcy Code (i) Authorizing Payment of Prepetition Wages, Salaries, and Employee Benefits, (ii) Authorizing Continuation of Employee Benefit Plans and Programs Postpetition, and (iii) Directing All Banks to Honor Prepetition Checks for Payment of Prepetition Employee Obligations (the "**Motion**").[2] In support of its Motion, the Debtor respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory

---

1 The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

2 Capitalized terms used but not otherwise defined herein have the meanings attributed to them in the *Declaration of Jay N. Brown in Support of First Day Motions* filed contemporaneously herewith.

predicates for the relief sought hereby are Sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code (the "**Bankruptcy Code**").

## II. PROCEDURAL STATUS

2. On December 3, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

3. The Debtor continues to operate its businesses as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The U.S. Trustee has not yet appointed any official committees in this case, and no request has been made for the appointment of a trustee or an examiner.

4. A description of the Debtor's businesses, capital structure, and the circumstances leading to the Chapter 11 filing is set forth in the Declaration of Jay N. Brown in Support of Chapter 11 Petition and First Day Motions (the "**Brown Declaration**") filed contemporaneously herewith and incorporated herein by reference.

## III. RELIEF REQUESTED

5. By this Motion, the Debtor seeks an order (i) authorizing payment or honoring of the various prepetition obligations to, or for the benefit of, the Debtor's current employees (described below), (ii) authorizing the Debtor to continue postpetition the employee benefit plans and programs in effect immediately prior to the filing of these cases, and (iii) directing all banks to honor prepetition checks for payment of the prepetition obligations to the Debtor's employees.

6. For the reasons set forth below, the Debtor respectfully submits that it is in the best interests of its estate for this Court to authorize the payments and honoring of the obligations requested herein. These obligations and benefits in respect of the Debtor's employees may include, without limitation, (a) unpaid prepetition wages, salaries and reimbursable business

expenses earned or incurred prior to the Petition Date (collectively, the "**Prepetition Employee Obligations**"); and (b) employee health and welfare benefit claims arising before the Petition Date including, without limitation, (i) medical, dental, vision, and prescription drug coverage; (ii) health savings accounts and flexible spending accounts for health and dependent care under Section 125 of the Internal Revenue Code; (iii) basic life, executive life, and voluntary life insurance; (iv) accidental death and dismemberment insurance ("**AD&D**"); (v) short-term and long-term disability benefits; (vi) counseling, (vii) a 401(k) savings plan, (viii) voluntary accident injury insurance, (ix) voluntary critical injury coverage and (x) paid time off ("**PTO**") (collectively, the "**Employee Benefits**").

7. The Prepetition Employee Obligations and Employee Benefits are funded by certain Affiliates (as defined in the Brown Declaration) and upstreamed to the account of the Debtor at the payroll processor (described below). For these reasons, the Debtor has only filed this motion out of an abundance of caution.

## IV. BASIS FOR RELIEF

### A. Wages, Salaries, and Compensation

8. As of the Petition Date, the Debtor has approximately fifty-eight (58) employees (the "**Employees**"). Currently, the majority of the Employees are based in Lexington, Kentucky and Southfield, Michigan. All of the Employees are salaried employees. The Debtor has the following officers: Chairman[3], Vice-Chairman, Treasurer, Vice President of Acquisitions, Secretary and General Counsel, and Assistant Secretary and Assistant General Counsel. In the ordinary course of the Debtor's businesses, the Employees earn and are paid salaries and/or other compensation every two weeks.

---

[3] The Chairman does not take a salary, but does participate in certain of the Employee Benefits.

9. As a general matter, one payroll account is used for paying the salaries and related employment benefits to Employees every two weeks on Friday (collectively, the "**Payrolls**"). In addition, the Debtor is required by law to (i) match Social Security and Medicare taxes, (ii) based on a percentage of gross payroll, pay additional amounts for state and federal unemployment insurance and (iii) remit these payroll taxes to various taxing authorities (the "**Employer Payroll Taxes**"). The Debtor uses Ceridian Corporation ("**Ceridian**") as the Payroll processor. The Debtor estimates that the Payrolls for earned salaries total approximately $422,500 plus applicable Employer Payroll Taxes per pay period.[4] The Debtor requests the authority to continue to pay regularly scheduled Payrolls, including Employer Payroll Taxes, in the ordinary course of business, including any prepetition amounts that may have accrued but not become payable as of the Petition Date.

10. In the ordinary course of business, the Debtor also causes certain Payroll deductions to be automatically made for Employee obligations, such as federal income taxes, Social Security and Medicare contributions, court-ordered garnishment and support payments, benefit plan insurance programs, and other similar programs (collectively, the "**Deductions**"). For a fee of approximately $1,000 a month, the Debtor outsources to Ceridian the task of making the Deductions and the Employer Payroll Taxes and remitting the amounts due to relevant governmental authorities or other proper third parties.

11. To the extent that the Debtor is holding funds belonging to Employees that are collected from Employees and remitted to others, the Debtor maintains that such funds are not property of the bankruptcy estate. The amounts deducted are generally held in trust by Ceridian until they are forwarded to third parties. However, in an abundance of caution and to the extent

[4] This amount includes payments to former employees as part of their severance agreements.

that such funds relate to prepetition periods, the Debtor seeks authority to remit the applicable Deductions to appropriate governmental authorities and other third parties in accordance with the Debtor's regular policies and procedures. Further, the Debtor seeks the authority, but not the direction, to continue using Ceridian to handle Payrolls and its related Deductions and Employer Payroll Taxes.

**B. Reimbursement Obligations**

12. Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed Employees for reasonable expenses incurred in performing their jobs, including, but not limited to, business-related travel expenses and cell phones (the "**Reimbursable Expenses**"). Reimbursable Expenses were incurred in the ordinary course of business with the expectation that such expenses would be reimbursed in accordance with past practice. It would be inequitable and would cause harm to the morale of Employees to deny reimbursement of such expenses. Moreover, it is essential to the continued operation of the Debtor's businesses that the Debtor be permitted to continue to reimburse Employees for such business-related Reimbursable Expenses incurred in the ordinary course of the Debtor's businesses, whether incurred by an Employee prepetition or postpetition. As of the Petition Date, the Debtor estimates that unpaid, but submitted, Reimbursable Expenses total approximately $23,500. Additional unpaid amounts that have not yet been submitted likely total approximately $40,000 based on prior months.

**C. Employee Benefits**

13. The Employees are each full-time employees scheduled to work more than thirty (30) hours per week, citizens or legal residents of the United States and, therefore, eligible for various standard employee health and welfare benefits, including, without limitation, the Employee Benefits (defined in paragraph 6 above).

14. Medical, Dental, Vision and Prescription Drug Coverage: Employees are offered three (3) levels of voluntary medical plans self-funded by the Debtor through Ascalon Enterprises, LLC (the parent of the Debtor): Gold, Silver, and Bronze (the "**Medical Plan**"). Medical Plan participants are also offered prescription drug coverage. Voluntary vision coverage and dental insurance are provided through Guardian. For the standard medical benefits, the Debtor pays a portion of the cost (premiums are approximately $44,230 per month), and the Employee is responsible for paying the balance of the premium through payroll deductions. For the standard vision benefits, the Employee is responsible for paying the entire premium through payroll deductions. For the standard dental benefits, the Debtor pays premiums of approximately $1,700 per month and administrative fees of approximately $200 per month, and the Employee is responsible for paying the balance of the premium through payroll deductions.

15. Flexible Spending Accounts: Employees may elect to enroll in flexible spending accounts ("**FSAs**") for health and dependent care. FSAs permit employees to make pretax payroll contributions up to $2,500 per year for health care expenses for employees and eligible dependents and up to $5,000 per year per household for dependent care. The Employee's gross pay is reduced by an amount equal to the Employee's contributions, as elected annually during the open enrollment period. McGregor and Associates ("**McGregor**") is the third-party administrator for the FSA.

16. Health Savings Accounts: Employees may elect to enroll in health savings accounts ("**HSAs**"). HSAs permit employees to make pretax payroll contributions of up to $3,100 per individual or $6,250 per family. The Debtor contributes $50 per month per employee and the Employee's gross pay is reduced by an amount equal to the Employee's contributions, as

elected annually during the open enrollment period. McGregor is the third-party administrator for the HSA.

17. Life, AD&D, Short-Term and Long-Term Disability Insurance: Employees are provided basic life and AD&D coverage and short-term and long-term disability benefits through the Debtor's Guardian Term Life, Short and Long Term Disability Plan. Executives are provided supplemental life and disability coverage through the Debtor's Genworth Life and Annuity for Executive Life Insurance and Guardian Supplemental Individual Disability Income Insurance. The life insurance coverage available to Employees is as follows: (a) basic life insurance of up to $50,000 for all salaried employees and (b) executive life insurance of between $500,000-$1,500,000 for approximately seventeen (17) of the Employees. Basic short-term disability benefits are provided for Employees who are temporarily unable to work due to injury or illness up to 100% of base salary with a maximum of $5,000; basic long-term disability is up to 60% of base salary with a maximum of $8,000 per month. Approximately thirty-one (31) of the Employees are eligible for executive supplemental long-term disability that provides an additional potential coverage of $7,000 per month. The cost is paid in full by the Debtor.[5]

18. Employee Assistance Program: The Employee Assistance Program ("**EAP**") through Guardian provides free, confidential professional counseling to assist employees through difficult times of marital, family, financial or legal problems, drug or alcohol abuse, or other personal issues.

---

[5] In addition, the Debtor offers certain voluntary elections that the Employees may opt into which may result in related deductions from the Employee's paycheck. These programs include, but are not limited to, (i) AFLAC Group Accident Injury Insurance (voluntary supplemental coverage), (ii) Guardian Critical Illness Coverage (voluntary supplemental coverage), (iii) Guardian Voluntary Term Life Insurance, (iv) Ascalon Enterprises Employee Medical Benefits Plan, (v) Revstone Industries Dental Care Plan, (vi) Revstone Industries Vision Coverage, (vii) Revstone Flexible Spending Accounts (Healthcare and Dependent Care), and (viii) Revstone Health Savings Account.

19. The 401(k) Savings Plan: All Employees may enroll in the Debtor's 401(k) plan. The plan is administered by Wells Fargo. Participating Employees may defer a portion of their annual compensation, subject to maximum limitations set by the Internal Revenue Service. The Debtor has discretion to match Employee contributions to the 401(k) plan.

20. PTO: All Employees receive PTO as part of their overall compensation. On an annual basis, Employees accrue twenty (20) days of PTO if the Employee has ten (10) or more years of employment with the Debtor or if the Employee is an Executive, unless there is an employment agreement to the contrary. If the Employee has one (1) to ten (10) years of employment with the Debtor, fifteen (15) days of annual vacation is provided unless there is an employment agreement to the contrary. Employees with less than one (1) year of employment with the Debtor accrue PTO days monthly, up to fifteen (15) days, unless there is an employment agreement to the contrary. Upon termination, Employees are paid for earned but unused PTO. The Debtor anticipates that Employees will utilize PTO postpetition, including certain PTO that may have accrued before the Petition Date. The Debtor seeks authority (but not direction) to honor all earned PTO in the ordinary course consistent with the existing guidelines and policies described in this paragraph, regardless of whether it accrued during the pre or postpetition period.

21. As of the Petition Date, the Debtor was obligated to pay certain premium contributions to or provide benefits under the foregoing Employee Benefits programs, plans, and policies. The Debtor estimates the average monthly cost for Employee Benefits and related administrative fees is $71,500. That total is calculated based upon the following summary of estimated monthly fees due by the Debtor: (i) Medical premiums ($44,230); (ii) Dental premiums ($1700); (iii) Dental administrative fee ($200); (iv) FSA/HSA administrative fee

($250); (v) HSA employer contribution ($2,500); (vi) salaried basic life/AD&D/ Short-Term Disability/Long-Term Disability contributions ($8,000); (vii) Executive Life premiums ($11,000); and (viii) Executive Disability premiums ($3,500).

22. By this Motion, the Debtor seeks authority to pay in the ordinary course of business all amounts owed for expenses and fees relating to Employee Benefits, including those incurred prior to the Petition Date.

## V. APPLICABLE AUTHORITY

### A. Priority Wage Claims

23. Under subsections (a)(4) and (a)(5) of Section 507 of the Bankruptcy Code, claims against a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date, and claims against a debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are afforded priority status to the extent of $11,725 per individual. The Debtor believes that the Prepetition Employee Obligations that they seek to pay, per Employee, do not exceed the $11,725 cap, are thus entitled to priority under subsections (a)(4) and (a)(5) of Section 507 of the Bankruptcy Code, and, as such, will be paid in full as a condition to confirmation of a plan pursuant to Section 1129 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(9). Payment of the Prepetition Employee Obligations and Employee Benefits in the ordinary course of business, therefore, will simply accelerate the timing of payment of obligations that will have to be paid in any event, and will not upset the priority scheme set forth in the Bankruptcy Code.

24. In addition, the Debtor seeks authority to pay the associated prepetition processing costs, such as program administration charges to the extent that they are entitled to priority under Section 507 of the Bankruptcy Code. *See Allegheny Int'l, Inc. v. Metropolitan*

*Life Ins. Co.*, 145 B.R. 820, 822 (W.D. Pa. 1992) (holding that the prepetition claims for administrative services in connection with a debtor's medical benefits plans were entitled to priority under Section 507(a)(4) of the Bankruptcy Code); *see also In re Lummus Indus. Inc.*, 193 B.R. 615, 619 (Bankr. M.D. Ga. 1996) (holding that prepetition administrative fees of debtors' health plan administrator were entitled to priority under Section 507(a)(4)).

**B. <u>Trust Fund Obligations</u>**

25. Certain of the Prepetition Employee Obligations should be paid because they constitute "trust fund taxes" such that the funds withheld from Employee paychecks are held in trust and are not property of the Debtor's estate. *See* 11 U.S.C. § 541; *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990). Even if the funds in question were part of the Debtor's estate, the withholdings likely would constitute priority claims of the relevant taxing authorities. *See* 11 U.S.C. § 507(a)(8).

26. In addition, many federal, state, and local taxing authorities impose personal liability on certain of the officers, directors, or both of entities responsible for collecting taxes from employees if such taxes are not remitted. Accordingly, if such obligations remained unpaid, the Debtor's officers and directors could be subject to claims or lawsuits during this Chapter 11 case, which would constitute a significant distraction for such individuals when their efforts should instead be focused on the Debtor's efforts to complete the restructuring. For these reasons, the Debtor, its estate, and its creditors would benefit from payment of the withholding obligations in the ordinary course of business.

**B. <u>Payment of Prepetition Employee Obligations and Employee Benefits</u>**

27. Sections 363(b) and 105(a) of the Bankruptcy Code further authorize the requested relief. Under Section 363(b) of the Bankruptcy Code, a debtor in possession may,

703994057
RLF1 7673810v.1

after notice and a hearing, use property of the estate outside of the ordinary course of business. *See* 11 U.S.C. § 363(b). Further, Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Debtor submits that this Court should authorize the proposed payment and honoring of the Prepetition Employee Obligations and Employee Benefits under Sections 105(a) and 363(b)(1) of the Bankruptcy Code.

28. Section 363(b)(1) of the Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b)(1). Although stated various ways, courts generally hold that a debtor's decision to enter into a transaction outside of the ordinary course of business is governed by the business judgment standard. *3* Collier on Bankruptcy ¶363.01[1][g] (Resnick & Sommer eds., 15th ed. rev. 2002); *see, e.g.*, *In re US Airways Grp., Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) ("The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company [. . .].'" (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985))).

29. When applying the "business judgment" rule, courts show great deference to the debtor's decision making. *See, e.g.*, *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1986); *In re Castre*, 312 B.R. 426, 430 (Bankr. D. Colo. 2004); *Austin Assocs. v. Howison* (*In re Murphy*), 288 B.R. 1, 5 (D. Me. 2002); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998);

*Pitt v. First Wellington Canyon Assocs.* (*In re First Wellington Canyon Assoc.*), No. 89-593, 1989 WL 165028, at *1 (N.D. Ill. Dec. 28, 1989); *Summit Land Co. v. Allen* (*In re Summit Land Co.*), 13 B.R. 310, 315 (Bankr. D. Utah 1981). The Debtor submits that, because the Prepetition Employee Obligations and Employee Benefits are entitled to priority status, and because the retention of the Debtor's workforce is vital to the Debtor's businesses and its prospects for successfully restructuring, it is in the best interest of the Debtor's estate, and indeed is critical for the successful rehabilitation of the Debtor, to permit the payment of such claims in the ordinary course of business during this Chapter 11 case.

30. In case law construing Sections 363 and 105(a) of the Bankruptcy Code, it is well established that bankruptcy courts have the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going concern value of a debtor's business, thereby facilitating its reorganization. *See, e.g.*, *Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay preexisting debts of certain classes, out of the earnings of the receivership . . . ."); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine . . . permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid" (citations and internal quotations omitted)).

31. The relief requested in this Motion is appropriate and should be authorized under Sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code. Courts in this district and elsewhere routinely recognize that payment of employee obligations is essential to a debtor's

703994057
RLF1 7673810v.1

reorganization efforts and authorize full payment of prepetition wage, salary, commission, expense, severance, and benefit claims based on the foregoing justifications. *See, e.g.*, *In re PTL Holdings LLC*, Case No. 11-12676 (BLS) (Bankr. D. Del. Aug. 25, 2009); *In re Point Blank Systems, Inc.*, Case No. 10-11255 (PJW) (Banks. D. Del. Apr. 14, 2010); *In re EZ Lube, LLC*, Case No. 08-13256 (CSS) (Bankr. D. Del. May 5, 2009); *In re NetEffect, Inc.*, Case No. 08-12008 (KJC) (Bankr. D. Del. Aug. 28, 2008); *In re W. Nonwovens Inc.*, Case No. 08-11435 (PJW) (Bankr. D. Del. Jul. 15, 2008); *In re Global Motorsport Grp., Inc.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 1, 2008); *In re Global Home Prods. LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. Apr. 11, 2006); *In re J.L. French Auto. Castings, Inc.*, Case No. 06-10119 (MFW) (Banks. D. Del. Mar. 3, 2006).

32. Although the Debtor seeks authority for the payment of the Prepetition Employee Obligations and Employee Benefits and to continue postpetition the Employee Benefits in effect immediately prior to the Petition Date, such action, if authorized, should not be deemed to constitute the postpetition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay should not affect the Debtor's right to contest the amount or validity of any such charges, in whole or in part. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, in the best interests of its estate and creditors, and should be granted in all respects.

## VI. REQUEST FOR IMMEDIATE RELIEF

33. Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure, the Court may grant relief regarding a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate within twenty-one (21) days after the filing of the petition if the relief sought is necessary to avoid immediate and irreparable harm. As set forth herein, the value of

the Debtor and/or its estate could suffer immediate and irreparable harm absent the relief requested in this Motion. Accordingly, the Debtor respectfully requests the entry of the Interim Order, in substantially the form submitted herewith, granting the relief sought in this Motion in connection with the "first day" hearings in this case.

34. The Debtor further seeks relief from the fourteen (14) day stay of the Interim Order and Final Order granting this Motion pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent such Bankruptcy Rule is applicable, and requests that the Interim Order and Final Order be effective immediately upon entry thereof.

## VII. NOTICE AND PRIOR MOTIONS

35. Notice of this Motion will be given to the following parties in interest (collectively, the "**Initial Notice Parties**"): (a) the United States Trustee for the District of Delaware; (b) Wells Fargo Capital Finance, LLC ("**Wells Fargo**"); (c) Otterbourg, Steindler, Houston & Rosen, P.C., counsel to Wells Fargo; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (e) all other parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(b). Notice of this Motion also will be given to Ceridian. The Debtor will serve copies of the Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtor believes that the notice provided is fair and adequate and that no further notice is necessary.

36. In the event the Court enters an interim order granting this Motion, the Debtor proposes to serve notice of such entry on the Initial Notice Parties and Ceridian. The notice will provide that any objections to the relief granted in the interim order must be filed with the Court and served upon counsel for the Debtor no later than seven (7) days prior to the final hearing to be held on the Motion (the "**Objection Deadline**"). If an objection is timely filed and served

prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion. If no objections are timely filed and served, the Debtor's counsel will file a certification of counsel to that effect attaching a final form of order.

37. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested by this Motion and such further relief as may be just and necessary under the circumstances.

[*Remainder of page intentionally left blank*]

Dated: December 5, 2012
Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No.2981)
Christopher M. Samis (No. 4909)
L. Katherine Good (No. 5101)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

Brian Trust
Howard S. Beltzer
Frederick D. Hyman
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Proposed Attorneys for the Debtor and Debtor in Possession*