## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC,[1] | Case No. 12-13262 (BLS) |
| Debtor. | |

## MOTION FOR AUTHORIZATION TO (I) CONTINUE PREPETITION INSURANCE PROGRAM AND (II) PAY ANY PREPETITION PREMIUMS AND RELATED OBLIGATIONS

The above-captioned debtor and debtor in possession herein (the "**Debtor**") submits this Motion for Authorization to (i) Continue Prepetition Insurance Programs, and (ii) Pay Any Prepetition Premiums and Related Obligations (the "**Motion**").[2]  In support of the Motion, the Debtor respectfully states as follows:

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought hereby are Sections 105(a) and 363(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**").

---

[1]    The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222).  The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]    Capitalized terms used but not otherwise defined herein have the meanings attributed to them in the *Declaration of Jay N. Brown in Support of First Day Motions* filed contemporaneously herewith.

## II.    PROCEDURAL STATUS

2.    On December 3, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

3.    The Debtor continues to operate its businesses as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  The U.S. Trustee has not yet appointed any official committees in this case, and no request has been made for the appointment of a trustee or an examiner.

4.    A description of the Debtor's businesses, capital structure, and the circumstances leading to the Chapter 11 filing is set forth in the Declaration of Jay N. Brown in Support of Chapter 11 Petition and First Day Motions (the "**Brown Declaration**") filed contemporaneously herewith and incorporated herein by reference.

## III.    FACTUAL BACKGROUND

5.    In the ordinary course of its business, the Debtor maintains a carefully designed insurance program (the "**Insurance Program**").  This program includes seven insurance policies that were in effect as of the Petition Date, providing millions in dollars of coverage, including, but not limited to, policies covering general liability, umbrella coverage, workers' compensation, executive risk management, employed lawyers professional liability, and directors' and officers' liability (collectively, the "**Policies**").  These Policies are provided by several different insurance carriers (the "**Carriers**").  Attached hereto as **Exhibit A** and incorporated herein by reference is a comprehensive list of the Policies identified by the Debtor to date by type of coverage, Policy number, identity of Carriers, total premium for each Policy, and other salient information.

6.    The Debtor and certain Affiliates are responsible for approximately $4,160,000 per year in aggregate premiums and related fees to maintain the Insurance Program.  These

2

Policies provide insurance coverage for the both the Debtor and those Affiliates, and premiums are paid on a monthly basis. The continuation of the Policies is both necessary and critical to the Debtor's ability to operate its businesses.

7.      The Debtor uses Todd Associates, Inc. (the "**Broker**") to procure and coordinate insurance coverage for itself and its Affiliates. The Broker's services are critical to maintaining and renewing the various component policies within the Insurance Program. As part of its services, the Broker handles all administrative tasks involved with the routing and payment of premiums to the Carriers.

8.      Payment of the premiums to the Broker is allocated among the Affiliates, rather than the Debtor, and any payments made by any of the Affiliates on behalf of any other Affiliate creates an intercompany obligation between such Affiliates. The Broker's fee is directly subsumed in the billings for premiums it provides to the Debtor and the Affiliates.

9.      By obtaining the required insurance coverage for itself and the Affiliates on a combined basis, the Debtor has been able to realize substantial savings and efficiencies in the cost of its Insurance Program generally. The Debtor submits that it would not be feasible to separate out its operations and other insurance needs from those of its Affiliates and obtain replacement insurance coverage at a reasonable cost or within a reasonable time frame without exposing the Debtor to significant risk of disruption and increased expense.

10.     Furthermore, in many cases, the coverage provided by the Policies is required by various regulations, laws and contracts that govern the Debtor's businesses under applicable non-bankruptcy law. Likewise, the U.S. Trustee Guidelines require the Debtor to maintain adequate insurance coverage. Such coverage could not be provided without continuation of the Insurance Program.

3

## IV.  **RELIEF REQUESTED**

11.     By this Motion, the Debtor seeks authority (but not direction) to make the payments required to continue its Insurance Program,[3] including (i) payment of any prepetition premium or other obligations under the Policies listed on **Exhibit A** to the extent the Debtor determines, in its discretion, that such payments are necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, proceeds, or other rights or interests provided under the Policies, and (ii) any fee owed to the Broker necessary to continue the administration of the Insurance Program.

## V.  **BASIS FOR RELIEF REQUESTED**

12.     This Court has authority to grant the relief requested herein pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Moreover, Section 105(a) of the Bankruptcy Code allows the Court to authorize payments on account of certain prepetition claims when necessary.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  This is generally referred to as the "necessity of payment rule" or the "doctrine of necessity."  *See In re NVR, L.P.*, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989), *accord In re Fin. News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (prepetition claims may be paid when so doing is "critical to the debtor's

---

[3]     As set forth above, payment of the insurance premiums is currently allocated among the Affiliates, rather than the Debtor.  While the Debtor anticipates that this arrangement will continue, the Debtor nonetheless seeks the relief requested herein out of an abundance of caution and in order to ensure that there is no lapse in critical insurance coverage.

4

reorganization"); *In re Eagle-Pitcher Indus.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (noting that payment is necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately" (*quoting In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987))).

13.     Courts have recognized that the "necessity of payment rule" is "well-established in bankruptcy common law." *In re NVR L.P.*, 147 B.R. at 127; *id.* (stating that, under Section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (stating that a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept" (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984))). For the rule to apply, the payment must be in the best interests of the debtor and its other creditors. *See In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992); *see also* Eisenberg & Gecker, *The Doctrine of Necessity and Its Parameters*, 73 Marq. L. Rev. 1, 20 (1989).

14.     For the reasons described above, and in view of the Debtor's need to maintain insurance to operate its businesses, authorizing the Debtor to maintain the Insurance Program, and to make the payments required by the Policies, is in the best interests of all parties in interest in this Chapter 11 case. Thus, the Debtor respectfully requests that it be provided with the authority (but not direction) to fully retain in place its existing Insurance Program and honor the obligations described herein.

704000209
RLF1 7673036v.1

15.    The Debtor also seeks the authority (but not direction) to renew Policies or to enter into new insurance arrangements as may be required as the terms of existing Policies and arrangements expire, in the ordinary course of business, without further order of the Court.  It is essential to the continued operation of the Debtor's businesses and its efforts to successfully reorganize that the Insurance Program be maintained on an ongoing and uninterrupted basis.

16.    Bankruptcy courts adjudicating other Chapter 11 cases, including in the district, have held that a debtor is authorized to maintain prepetition insurance programs pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code where, as here, a sound business justification exists. *See, e.g., In re Champion Enter., Inc., et al.*, Case No. 09-14019 (KG), 2012 WL 111306 (Bankr. D. Del., Nov. 17 2009); *In re Sea Launch Co., L.L.C., et al.*, Case No. 09-12153 (BLS), 2009 WL 84738332 (Bankr. D. Del., June 25, 2009).  Given the nature of the Debtor's various coverage requirements, the Debtor submits that similar relief is appropriate in this Chapter 11 case.

17.    If the Court grants the relief sought in this Motion, the Debtor requests that all applicable banks and other financial institutions be authorized, when requested by the Debtor in its discretion, without any duty of inquiry or liability to any party for following the Debtor's instructions, to receive, process, honor, and pay any and all checks drawn on the Debtor's accounts to pay amounts owed under the Insurance Program, whether those checks are presented prior to or after the Petition Date, and to make other transfers, provided that sufficient funds are available in the applicable accounts to make the payments.

18.    The Debtor requests that authorization of the payment of the various premiums hereunder not be deemed to constitute the postpetition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code.  The Debtor is in the process of reviewing these

6

matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay should not affect the Debtor's right to contest the amount or validity of any such charges, in whole or in part. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, in the best interests of its estate and creditors, and should be granted in all respects.

### VI.    NOTICE AND PRIOR MOTIONS

19.    Notice of this Motion will be given to the following parties in interest (collectively, the "**Initial Notice Parties**"):  (a) the United States Trustee for the District of Delaware; (b) Wells Fargo Capital Finance, LLC ("**Wells Fargo**"); (c) Otterbourg, Steindler, Houston & Rosen, P.C., counsel to Wells Fargo; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (e) all other parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(b). Notice of this Motion also will be given to the Carriers listed on Exhibit A to this Motion. The Debtor will serve copies of the Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtor believes that the notice provided is fair and adequate and that no further notice is necessary.

20.    In the event the Court enters an interim order granting this Motion, the Debtor proposes to serve notice of such entry on the Initial Notice Parties and all Carriers listed on Exhibit A to this Motion. The notice will provide that any objections to the relief granted in the interim order must be filed with the Court and served upon counsel for the Debtor no later than seven (7) days prior to the final hearing to be held on the Motion (the "**Objection Deadline**"). If an objection is timely filed and served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion. If no objections are timely filed and served, the Debtor's counsel will file a certification of counsel to that effect attaching a final form of order.

704000209
RLF1 7673036v.1

21.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders substantially in the form attached hereto as **Exhibit B** and **Exhibit C**, respectively, granting the relief requested by this Motion and such further relief as may be just and necessary under the circumstances.

*[Remainder of page intentionally left blank]*

704000209
RLF1 7673036v.1

Dated: December 5, 2012
       Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

MAYER BROWN LLP
Brian Trust
Howard S. Beltzer
Frederick D. Hyman
1675 Broadway
New York, New York  10019-5820
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Proposed Attorneys for the Debtor
and Debtor in Possession*

9