IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

REVSTONE INDUSTRIES, LLC,[1]

Debtor.

Chapter 11

Case No. 12-13262 (BLS)

## INITIAL MONTHLY OPERATING REPORT

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| 12-Month Cash Flow Projection (Form IR-1) | YES | |
| Certificates of Insurance: | | |
| Workers Compensation | YES | |
| Property | YES | |
| General Liability | YES | |
| Vehicle | NO | |
| Other: Excess | YES | |
| Evidence of Debtor in Possession Bank Accounts | | |
| Tax Escrow Account | NO | YES - NOTE 1 |
| General Operating Account | NO | YES - NOTE 1 |
| Money Market Account | NO | YES - NOTE 1 |
| Other: Bank Accounts Listed in Cash Management Motion Attached | YES | YES - NOTE 1 |
| Retainers Paid (Form IR-2) | YES | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached are true and correct to the best of my knowledge and belief.

Date: 12/18/12

Signature of Authorized Individual*

James O'Toole
Printed Name of Authorized Individual

Assistant Secretary
Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

---

[1]     The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222).  The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

**NOTE 1**:  Please refer to the *Motion for Interim and Final Orders Authorizing Debtor to (I) Maintain Existing Cash Management System and Bank Account, (II) Continue Use of Existing Checks and Business Forms, (III) Obtain Limited Waiver of Section 345(b), and (IV) Continue Intercompany Transactions* [Docket No. 6] (the "Cash Management Motion") and the *Interim Order Authorizing Debtor to (I) Maintain Existing Cash Management System and Bank Account, (II) Continue Use of Existing Checks and Business Forms, (III) Obtain Limited Waiver of Section 345(b), and (IV) Continue Intercompany Transactions* [Docket No. 56] (the "Interim Cash Management Order").    Copies of the Cash Management Motion and the Interim Cash Management Order are attached hereto as Exhibit C.

RLF1 7735594v.1

# Exhibit A

**Cash Flow Projections**

| | Jan-13 | Feb-13 | Mar-13 | Apr-13 | May-13 | Jun-13 | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Start of Month | - | - | - | - | - | - | - | - | - | - | - | - |
| **RECEIPTS** | | | | | | | | | | | | |
| Shared service fees | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 | 754,867 |
| Management fees | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 | 60,457 |
| Other support - Spara | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total receipts** | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| Net payroll | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 | 606,410 |
| Payroll taxes | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 | 47,710 |
| Sales, use, & other taxes | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 | 8,839 |
| Secured rental leases | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 | 29,970 |
| Insurance | | | | | | | | | | | | |
| Administrative | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 | 113,816 |
| Professional fees | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 | 8,578 |
| US Trustee fees | | | | | | | | | | | | |
| Court costs | | | | | | | | | | | | |
| **Total disbursements** | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 | 815,324 |
| **Net Cash Flow** | - | - | - | - | - | - | - | - | - | - | - | - |
| Cash end of month | - | - | - | - | - | - | - | - | - | - | - | - |

# **Exhibit B**

## **Certificates of Insurance**



REVST-1          OP ID: SC

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
**12/14/12**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Spankie Carolanne | |
|---|---|---|---|
| Todd Associates, Inc.<br>23825 Commerce Park, Suite A<br>Beachwood, OH 44122<br>Timothy P. Fitzpatrick | 440-461-1101<br>440-446-0192 | PHONE (A/C, No, Ext): 440-995-4224 | FAX (A/C, No): 440-446-0192 |
| | | E-MAIL ADDRESS: scarolanne@toddassociates.com | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| | INSURER A : | Farmington Casualty Company | 41483 |
| INSURED | INSURER B : | Travelers P&C Co. of America | 25674 |
| Ascalon Enterprises LLC<br>Revstone Industries LLC<br>Spara LLC<br>21177 Hilltop<br>Southfield, MI 48034 | INSURER C : | Travelers Property & Casualty | 01701 |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| B | **GENERAL LIABILITY**<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE X OCCUR | | | 630291D4776 | 12/29/11 | 12/29/12 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | X UMBRELLA LIAB X OCCUR<br>☐ EXCESS LIAB ☐ CLAIMS-MADE<br>☐ DED X RETENTION $ None | | | CUP291D4776 | 12/29/11 | 12/29/12 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | UB291D4868 | 12/29/11 | 12/29/12 | X WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| B | Global Liability | | | GB03400374 | 12/29/11 | 12/29/12 | Per Occur | 1,000,000 |
| | | | | | | | Gen Agg | 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
**The Certificate Holder will receive written notice in the event any of the above policies are cancelled.**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| OFFIWI1<br>Office of the United<br>States Trustee<br>Attn: James O'Malley<br>844 King St, #2207, Box 35<br>Wilmington, DE 19899-0035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Timothy P. Fitzpatrick* |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

 REVST-1    OP ID: SC

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
**12/14/12**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Spankie Carolanne | | |
|---|---|---|---|---|
| Todd Associates, Inc.   440-461-1101   440-446-0192 <br> 23825 Commerce Park, Suite A <br> Beachwood, OH 44122 <br> Timothy P. Fitzpatrick | PHONE (A/C, No, Ext): 440-995-4224 | | FAX (A/C, No): 440-446-0192 | |
| | E-MAIL ADDRESS: scarolanne@toddassociates.com | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A : Torus Specialty Ins. Co, | | | 44776 |
| INSURED   Ascalon Enterprises LLC <br> Revstone Industries LLC <br> Spara LLC <br> 21177 Hilltop <br> Southfield, MI 48034 | INSURER B : | | | |
| | INSURER C : | | | |
| | INSURER D : | | | |
| | INSURER E : | | | |
| | INSURER F : | | | |

## COVERAGES    CERTIFICATE NUMBER:        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** <br> ☐ COMMERCIAL GENERAL LIABILITY <br> ☐ CLAIMS-MADE ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: <br> ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | **AUTOMOBILE LIABILITY** <br> ☐ ANY AUTO <br> ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS <br> ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR <br> ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** <br> ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N <br> (Mandatory in NH) <br> If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Excess D&O | | | 60173B120ASP | 04/20/12 | 12/29/12 | Aggregate Limit | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
**Certificate Holder will receive written notice in the event the above policy is cancelled.**

| CERTIFICATE HOLDER |    OFFIWI1 | CANCELLATION |
|---|---|---|
| Office of the United <br> States Trustee <br> Attn: James O'Malley <br> 844 King St, #2207, Box 35 <br> Wilmington, DE 19899-0035 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. <br><br> AUTHORIZED REPRESENTATIVE <br> *Timothy P Fitzpatrick* |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

 **ACORD**

# CERTIFICATE OF LIABILITY INSURANCE

REVST-1    OP ID: SC

DATE (MM/DD/YYYY)
**12/14/12**

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER<br>Todd Associates, Inc.<br>23825 Commerce Park, Suite A<br>Beachwood, OH 44122<br>Timothy P. Fitzpatrick | 440-461-1101<br>440-446-0192 | CONTACT<br>NAME: Spankie Carolanne | | |
|---|---|---|---|---|
| | | PHONE (A/C, No, Ext): 440-995-4224 | | FAX (A/C, No): 440-446-0192 |
| | | E-MAIL ADDRESS: spankie@toddassociates.com | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | | INSURER A : Federal Insurance Co./Chubb | | 20281 |
| INSURED        Ascalon Enterprises LLC<br>Revstone Industries LLC<br>Spara LLC<br>21177 Hilltop<br>Southfield, MI 48034 | | INSURER B : | | |
| | | INSURER C : | | |
| | | INSURER D : | | |
| | | INSURER E : | | |
| | | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | | REVISION NUMBER: |
|---|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY**<br>☐ COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS-MADE  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY**<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS  ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS  ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR<br>☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  ☐<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | | | | ☐ WC STATU-TORY LIMITS  ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | ExecutiveRiskMgmt | | | 8211-0568 | 12/29/11 | 12/29/12 | Aggregate Limit | 5,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
**Certificate Holder will receive written notice in the event the above policy is cancelled.**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| OFFIWI1<br><br>Office of the United<br>States Trustee<br>Attn: James O'Malley<br>844 King St, #2207, Box 35<br>Wilmington, DE 19899-0035 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Timothy P. Fitzpatrick* |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)        The ACORD name and logo are registered marks of ACORD

**ACORD**    REVST-1    OP ID: SC

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/14/12 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER  440-461-1101<br>Todd Associates, Inc.  440-446-0192<br>23825 Commerce Park, Suite A<br>Beachwood, OH 44122<br>Timothy P. Fitzpatrick | CONTACT NAME: Spankie Carolanne | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): 440-995-4224 | | FAX (A/C, No): 440-446-0192 |
| | E-MAIL ADDRESS: scarolanne@toddassociates.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Federal Insurance Co./Chubb | | 20281 |

| INSURED  Ascalon Enterprises LLC<br>Revstone Industries LLC<br>Spara LLC<br>21177 Hilltop<br>Southfield, MI 48034 | INSURER B : |
|---|---|
| | INSURER C : |
| | INSURER D : |
| | INSURER E : |
| | INSURER F : |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liab | | | 82251145 | 02/17/12 | 12/29/12 | Aggregate Limit | 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
**Certificate Holder will receive written notice in the event the above policy is cancelled.**

| CERTIFICATE HOLDER | OFFIWI1 | CANCELLATION |
|---|---|---|
| Office of the United States Trustee<br>Attn: James O'Malley<br>844 King St, #2207, Box 35<br>Wilmington, DE 19899-0035 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE  *Timothy P. Fitzpatrick* |

© 1988-2010 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

# Exhibit C

**Evidence of Bank Accounts**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC,[1] | Case No. 12-13262 (BLS) |
| Debtor. | |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS

The above-captioned debtor and debtor in possession (the "**Debtor**") submits this motion for interim and final orders pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions (the "**Motion**").[2] In support of its Motion, the Debtor respectfully states as follows:

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's Chapter 11 case in this district is proper pursuant to 28 U.S.C.

---

[1]    The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]    Capitalized terms used but not otherwise defined herein have the meaning attributed to them in the *Declaration of Jay N. Brown in Support of First Day Motions* filed contemporaneously herewith.

§§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory

predicates for the relief sought hereby are Sections 105(a), 345, and 363 of the Bankruptcy Code,

as well as Rule 6003 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules.

## II.   **PROCEDURAL STATUS**

2.      On December 3, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition

for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court

for the District of Delaware (the "**Bankruptcy Court**").

3.      The Debtor continues to operate its businesses as a debtor in possession pursuant

to Sections 1107(a) and 1108 of the Bankruptcy Code.  The Office of the United States Trustee

for the District of Delaware (the "**U.S. Trustee**") has not yet appointed any official committees

in this case, and no request has been made for the appointment of a trustee or an examiner.

4.      A description of the Debtor's businesses, capital structure, and the circumstances

leading to the Chapter 11 filing is set forth in the Declaration of Jay N. Brown in Support of

Chapter 11 Petition and First Day Motions (the "**Brown Declaration**") filed contemporaneously

herewith and incorporated herein by reference.

## III.   **RELIEF REQUESTED**

5.      By this Motion, the Debtor seeks interim and final orders authorizing the Debtor

to (i) maintain its existing cash management system and bank account, (ii) continue use of

existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the

Bankruptcy Code, and (iv) continue intercompany transactions.

703997156
RLF1 7673029v.1

## IV.    BASIS FOR RELIEF

### A.    The Debtor Should Be Authorized to Continue to Use Its Existing Cash Management System

6.      Before the commencement of this case, the Debtor and the Affiliates, in the ordinary course of business, used an integrated, centralized cash management system to collect, transfer and disburse funds and to accurately record all such transactions as they were made (the "**Cash Management System**").

7.      The Cash Management System includes the necessary accounting controls to enable the Debtor to trace funds through the system and to ensure that all transactions are adequately documented and readily ascertainable. Employees of the Debtor and certain of the Affiliates maintain the books and records and document and journalize transactions, including, but not limited to, intercompany transactions, with particularity. Postpetition, the Debtor will continue to maintain detailed records reflecting all such transfers of funds or transactions.

8.      The Debtor maintains a single bank account (the "**Bank Account**"). The Bank Account is a general account with Bank of America (the "**Bank**"):

| Bank | Location | Account Number | Account Type |
|---|---|---|---|
| Bank of America | Troy, MI | ******5954 | General Account |

9.      The Debtor neither collects nor disburses funds through its Bank Account beyond nominal amounts from time to time. As of the morning of the Petition Date, the Bank Account held a balance of $0.00. In connection with the Judgment in favor of Boston Finance Group, LLC ("**BFG**"), and against the Debtor and certain Affiliates (as more particularly described in the Brown Declaration),[3] BFG had requested writs of nonperiodic garnishment upon the Bank, to

---

[3]     *See Boston Fin. Grp., LLC v. Power-Tec Mfg., LLC*, Case No. 12-28975-CK (Mich. Cir. Ct., Grand Traverse Cnty.).

703997156
RLF1 7673029v.1

which the Bank responded with garnishee disclosures.  The Bank Account is not subject to a continuing garnishment.  The Debtor does not maintain any investment accounts.

10.    The Debtor is entitled to receive funds from certain of its Affiliates in consideration of the Debtor's provision of actual, necessary, and reasonable out-of-pocket legal, accounting, insurance, marketing, payroll, general and administrative, and management services, as well as other services of a similar nature (the "**Management Fees**").  The Debtor receives such Management Fees from certain of its Affiliates, such as Metavation, LLC, MW Texas Die Casting, Inc., Contech Castings, LLC, and Eptec S.A. De C.V.

11.    These Affiliates use the Management Fees owed to the Debtor to pay certain obligations of the Debtor, such as payroll, at the Debtor's direction.[4]  The Debtor's payroll processor is Ceridian Corporation ("**Ceridian**").  Ceridian maintains a payroll account on behalf of the Debtor and certain of the Affiliates at the Bank (the "**Payroll Account**"):

| Bank | Location | Account Number | Account Type |
|------|----------|----------------|--------------|
| Bank of America | Concord, CA | ******2709 | Ceridian Payroll Trust |

12.    Each payroll period, the Debtor processes payroll data and submits same to Ceridian, and, at the direction of the Debtor, certain of the Affiliates transfer Management Fees sufficient to cover payroll and ordinary fees of the Payroll Account.  After disbursement, the Payroll Account balance reverts to zero dollars.[5]

---

[4]    Accounts of Affiliates at Wells Fargo, for example, are used to transfer funds into the Payroll Account for the payment of the Debtor's payroll two to three business days before each payroll disbursement date.

[5]    In connection with the Judgment in favor of BFG and against the Debtor and certain Affiliates (as more particularly described in the Brown Declaration), BFG had requested writs of nonperiodic garnishment upon Ceridian, to which Ceridian responded with garnishee disclosures. The Payroll Account is not subject to a continuing garnishment.

4

13.    The Cash Management System nevertheless allows for (a) overall corporate control of funds, (b) certain cash availability when and where needed, and (c) the reduction of administrative costs through a centralized method of coordinating the collection and movement of funds.    The Debtor's transition into Chapter 11 and preservation of the businesses of the Debtor and the Affiliates depend on the ability of the Debtor to maintain and operate the Cash Management System without interruption.

14.    The operation of the businesses of the Debtor and the Affiliates requires that the Cash Management System remain in place during the pendency of this Chapter 11 case. Adopting new cash management systems would be expensive, create unnecessary administrative burdens, and be disruptive to the Debtor's operations.    Moreover, it would be a critical waste of the Debtor's resources to impose a new cash management system.    Consequently, maintenance of the existing Cash Management System is in the best interests of all creditors and other parties in interest.

15.    The Debtor, therefore, requests authority to continue to use its Cash Management System as it may be modified as required in the ordinary course of business and pursuant to the Debtor's sound business judgment.

16.    This Court has routinely granted Chapter 11 debtors authority to continue using their existing cash management systems.    *See, e.g., In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Bankr. D. Del. Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del.

5

June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

17.    The Debtor, therefore, requests authority to continue utilizing its Cash Management System as outlined herein.

**B.    The Debtor Should Be Granted Authority to Maintain Its Existing Bank Account**

18.    In addition, the Debtor requests that the Bank at which the Bank Account is maintained be authorized and directed to continue to administer the Bank Account as such account was maintained prepetition, without interruption and in the usual and ordinary course, and, as applicable, to pay any and all checks, drafts, wires, or automated clearinghouse transfers issued on the Bank Account on account of any claims arising on or after the Petition Date so long as sufficient funds are in such Bank Account.

19.    To effectuate the foregoing, the Debtor requests (i) that the Bank be authorized and directed to honor all representations from the Debtor as to which checks should be honored or dishonored and (ii) that any final payment made by the Bank prior to the Petition Date against the Bank Account, or any instrument issued by the Bank prior to the Petition Date on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

20.    The Debtor also seeks a waiver of the U.S. Trustee's requirement to the extent necessary to allow the Debtor to maintain use of its Payroll Account. The Payroll Account is a zero balance account at the Bank and maintained by Ceridian on behalf of the Debtor and certain Affiliates. Funds are only deposited when and to the extent necessary to meet periodic payroll

703997156
RLF1 7673029v.1

obligations.  For these reasons, the Debtor believes that any funds deposited in the Payroll Account at the Bank will be safe.

21.    The U.S. Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases.  These guidelines require Chapter 11 debtors to, among other things:  (i) close all existing bank accounts and open new debtor in possession bank accounts, (ii) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes, (iii) maintain a separate debtor in possession account for cash collateral, and (iv) obtain checks for all debtor in possession accounts that bear the designation "Debtor-In-Possession," the bankruptcy case number, and the type of accounts.

22.    The Debtor may deposit, withdraw, and otherwise transfer funds to and from the Bank Account by various methods, including check, wire transfer, automated clearinghouse transfer, internal bank transfer, and electronic funds transfer.  The Debtor believes that the Bank Account is held at a financially stable banking institution.

23.    The Debtor seeks a waiver of the U.S. Trustee's requirement that the Bank Account be closed and that new postpetition bank accounts be opened.  The Bank Account and Payroll Account are part of a carefully constructed cash management system that permits the Debtor and the Affiliates to fund their ongoing operations in a streamlined and cost-efficient manner.  In order to ensure as smooth a transition into Chapter 11 as possible with minimal disruption, it is important that the Debtor be permitted to maintain its existing Bank and Payroll Accounts and, when necessary, to open new accounts.

24.    The Debtor represents that if the relief requested in this Motion is granted, it will not pay, and the Bank at which the Bank Account is maintained will be directed not to pay, any

7

debts incurred by the Debtor before the Petition Date other than as authorized by this Court. The Debtor will work closely with the Bank in order to ensure that appropriate procedures are in place to ensure that checks issued before the Petition Date but presented after the Petition Date will not be honored absent approval from this Court.

25.    In other cases of this size in this District, it has been recognized that the strict enforcement of bank account closing requirements may not always serve the rehabilitative purposes of Chapter 11. Accordingly, courts in this District have waived such requirements in many cases. *See, e.g., In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

26.    In sum, the Debtor requests that the Bank Account be deemed a debtor in possession account and that it be authorized, though not directed, to maintain and continue the use of the Bank Account and the Payroll Account in the same manner and with the same account numbers and document forms as those employed during the prepetition period.

## C.    The Debtor Should Be Granted Authority to Continue to Use Existing Business Forms and Checks

27.    In order to minimize expenses to its estate, the Debtor also requests that it be authorized to continue to use all correspondence, business forms (including, but not limited to,

8

letterheads, purchase orders, and invoices) and checks existing immediately before the Petition Date, without reference to the Debtor's status as debtor in possession. The Debtor possesses blank check stock and requests ten (10) days from the date of entry of the proposed interim order appended hereto as **Exhibit A** to conform to the operating guidelines of the U.S. Trustee as to such checks. To the extent the Debtor possesses preprinted check stock and/or business forms stock, in accordance with Local Rule 2015-2(a), upon depletion of such check stock and/or business forms stock, the Debtor will obtain new check stock and/or business forms stock reflecting its status as a debtor in possession.

28.     Parties doing business with the Debtor should generally be aware of its status as debtor in possession as a result of the size of this Chapter 11 case, the notices given in connection therewith, and general press coverage. A requirement that the Debtor change its business forms would be expensive and burdensome to the Debtor's estate.

29.     Courts in this District have routinely granted the same or similar relief to other Chapter 11 debtors. *See, e.g., In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

9

30.    For these reasons, the Debtor requests that it be authorized to use existing checks and business forms without being required to place the legend "Debtor In Possession" on each.

**D.    Cause Exists for Waiving the Investment and Deposit Guidelines of Section 345**

31.    If it is determined that the Debtor's use of the Bank Account does not conform with the approved investment practices identified in Section 345 of the Bankruptcy Code, the Debtor seeks to extend by sixty (60) days the time within which it is required to come into compliance with Section 345 of the Bankruptcy Code or to make such other arrangements as agreed with the U.S. Trustee. If the Debtor determines that it is not able to comply with the requirements of Section 345 of the Bankruptcy Code within the sixty (60) day period, the Debtor will file a motion seeking a modification of such requirements in accordance with Local Rule 2015-2(b).

32.    Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money in a manner that will "yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety. A court may, however, relieve a debtor in possession of the restrictions imposed by Section 345(b) of the Bankruptcy Code for "cause." To the extent necessary, the Debtor believes that "cause" exists to waive the investment and deposit restrictions under Section 345(b) of the Bankruptcy Code. Such relief is especially appropriate here given that the Bank Account holds only a nominal amount of cash at any given time.

10

33.     Courts have granted requests to approve similar relief as requested herein. *See,
e.g.*, *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012);
*In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David
Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's
Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB
Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater
Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*,
Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141
(Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*,
Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

E.    **The Bankruptcy Code Permits the Debtor to Continue Engaging in Intercompany
Transactions**

34.     In the ordinary course of business, the Debtor and the Affiliates engage in
intercompany transactions and transfers among themselves (collectively, the "**Intercompany
Transactions**"). For example, as described herein, the Debtor is entitled to Management Fees
from certain Affiliates for the provision of actual, necessary, and reasonable out-of-pocket legal,
accounting, insurance, marketing, payroll, general and administrative, and management services.
These Affiliates transfer funds attributable to such Management Fees to the Payroll Account to
satisfy the Debtor's payroll expenses.

35.     Each Intercompany Transaction is accounted for through book entries on the
Company's books and records. Such balances may represent extensions of intercompany credit
and/or the performance of necessary and valuable services by one entity for another. To ensure
that the Debtor will not, at the expense of its creditors, fund the operations of other entities, the
Company will continue to maintain records of such transfers if the Court authorizes the

11

continuation of the Intercompany Transactions. Postpetition, the Debtor will maintain detailed records reflecting all such transfers of funds or transactions.

36.    Courts in this District have authorized debtors to continue their prepetition intercompany funding practices after the commencement of Chapter 11 cases. *See, e.g., In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. June 12, 2012); *In re Dallas Stars, L.P.*, Case No. 11-12935 (PJW) (Sept. 19, 2011); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010); *In re AbitibiBowater Inc.*, Case No. 09-11296 (Bankr. D. Del. June 22, 2009) (KJC); *In re Smurfit Container Corp.*, Case No. 09-10235 (Bankr. D. Del. Feb. 23, 2009) (BLS); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 29, 2009) (KJC); *In re LV Liquidation Corp. aka Lillian Vernon Corp.*, Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS).

37.    As noted above, the Debtor and the Affiliates, in the ordinary course of business, may engage in Intercompany Transactions. Thus, the Debtor respectfully submits that court approval of these transactions is not required pursuant to Section 363(c)(1) of the Bankruptcy Code. Nevertheless, out of an abundance of caution, the Debtor seeks court approval of the relief requested herein, in the event this Court finds that the Intercompany Transactions are outside the ordinary course of business.

38.    Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order

12

such transaction under Section 363(b). *See, e.g., The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions"). In the event an order permitting it to continue engaging in the Intercompany Transactions is necessary, the Debtor believes that its business judgment to continue the Intercompany Transactions is sound because, among other reasons discussed herein, the Intercompany Transactions reduce the administrative costs of the Debtor, facilitate the satisfaction of the Debtor's obligations, and are integral to the Debtor's business practices. Thus, the Debtor submits that continuation of its Intercompany Transactions is in the best interests of the Debtor's estate and its creditors.

39.    Courts frequently have authorized debtors to continue their prepetition intercompany practices after commencement of Chapter 11 cases. *See, e.g., In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re Freedom Commc'ns Holdings, Inc.*, Case No. 09-13046 (BLS) (Bankr. D. Del. Sept. 2, 2009); *In re Tribune Co.*, Case No. 08-13141 (Bankr. D. Del. Apr. 30, 2009); *In re Sportsman's Warehouse, Inc.*, Case No. 09-10990 (CSS) (Bankr. D. Del. Mar. 23, 2009); *In re Circuit City Stores, Inc.*, Case No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 10, 2008); *In re Verasun Energy Corp.*, Case No. 08-12606 (BLS) (Bankr. D. Del. Nov. 3, 2008).

**F.    Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived**

40.    The Debtor submits that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and that Bankruptcy Rule 6003 has been satisfied or should be deemed waived. Similarly, and for the same reasons, the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

13

G.    **Reservation of Rights**

41.    The Debtor requests that any relief granted hereunder not be deemed to constitute the postpetition assumption of any executory contract pursuant to Section 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, the relief granted hereunder should not affect the Debtor's right to contest the amount or validity of any claims, in whole or in part. Based on the foregoing, the Debtor submits that the relief requested is necessary and appropriate, in the best interests of its estate and creditors, and should be granted in all respects.

V.    <b>NOTICE AND PRIOR MOTIONS</b>

42.    Notice of this Motion will be given to the following parties in interest (collectively, the "**Initial Notice Parties**"):  (a) the United States Trustee for the District of Delaware; (b) Wells Fargo Capital Finance, LLC ("**Wells Fargo**"); (c) Otterbourg, Steindler, Houston & Rosen, P.C., counsel to Wells Fargo; (d) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; and (e) all other parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(b). Notice of this Motion also will be given to the Bank and Ceridian. The Debtor will serve copies of the Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtor believes that the notice provided is fair and adequate and that no further notice is necessary.

43.    In the event the Court enters an interim order granting this Motion, the Debtor proposes to serve notice of such entry on the Initial Notice Parties, the Bank, and Ceridian. The notice will provide that any objections to the relief granted in the interim order must be filed with the Court and served upon counsel for the Debtor no later than seven (7) days prior to the final hearing to be held on the Motion (the "**Objection Deadline**"). If an objection is timely filed and

14

served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion. If no objections are timely filed and served, the Debtor's counsel will file a certification of counsel to that effect attaching a final form of order.

44.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested by this Motion and such further relief as may be just and necessary under the circumstances.

*[Remainder of page intentionally left blank]*

15

Dated: December 5, 2012
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

MAYER BROWN LLP
Brian Trust
Howard S. Beltzer
Frederick D. Hyman
1675 Broadway
New York, New York  10019-5820
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Proposed Attorneys for the Debtor
and Debtor in Possession*

16

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC,[1] | Case No. 12-13262 (BLS) |
| Debtor. | |

### INTERIM ORDER AUTHORIZING DEBTOR TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS

Upon the motion (the "**Motion**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for an order pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions; and the Court having reviewed the Motion and the Brown Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]     The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED on an interim basis, as set forth herein.

2.     The Debtor is authorized to continue to use its existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions and entities participating in the Cash Management System, except as modified by this Order. In connection with the ongoing utilization of the Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.     The Debtor is authorized to (a) designate, maintain, and continue the Bank Account and Payroll Account (collectively, the "**Accounts**") in existence as of the Petition Date, with the same account numbers and document forms as are currently employed, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) deposit funds in, and withdraw funds from, the Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts or other items presented, issued, or drawn on the Accounts, (c) pay ordinary course fees in connection with the Accounts, including any fees arising prior to the Petition Date, (d) perform its obligations under the documents and agreements governing the Accounts, and (e) treat the Accounts for all purposes as accounts of the Debtor in its capacity as debtor in possession; provided, however, that the Debtor may only open new Accounts with institutions that agree to be bound by the terms of this Order and, in particular, the Cash Management System. The Debtor is further authorized to close Accounts in the ordinary course of business.

2

4.      Pursuant to Local Rule 2015-2(a), the Debtor is authorized to continue to use its existing correspondence and business forms, checks and documents related to the Accounts without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them; provided, however, that once the Debtor's prepetition check stock runs out, the Debtor will obtain new stock reflecting its status as debtor in possession and setting forth the corresponding case number; provided, further, that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.  To the extent the Debtor opens or closes Accounts, it shall provide prompt notice to the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") and any official committees appointed in this Chapter 11 case.  Any new check stock used by the Debtor shall contain the designation "Debtor in Possession."

5.      The Debtor is authorized to continue to utilize all third-party providers necessary for the administration of its Cash Management System.

6.      *Nunc pro tunc* to the Petition Date, and subject to the terms of this Order, the Bank and Ceridian are authorized and directed to continue to administer, service, and maintain the Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for fees), and to honor any and all checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers or other items presented, issued, or drawn on the Accounts prior to the Petition Date shall be honored.

7.      To the extent the Bank and/or Ceridian maintain a disbursement account, the Bank and/or Ceridian shall implement reasonable handling procedures designed to effectuate the terms of this Order. To the extent the Bank and/or Ceridian implement such handling procedures and then honor a prepetition check, wire transfer, automated clearinghouse transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtor, (b) in the good faith belief that the Court has authorized such prepetition check, wire transfer, automated clearinghouse transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, the Bank and/or Ceridian shall not be deemed to be liable to the Debtor or its estate or otherwise in violation of this Order.

8.      Subject to the provisions of this Order, the Bank and Ceridian are authorized and directed to honor all representations from the Debtor as to which checks, wire transfers, automated clearinghouse transfers, or other items should be honored or dishonored.

9.      To the extent the Bank and/or Ceridian are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good faith efforts to cause the execution of a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's right to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee is fully reserved. For banks at which the Debtor holds accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days from the date of entry of this Order, the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification

4

number, and (c) identify each of its accounts held at such bank as being held by a debtor in possession.

10.     The Debtor is authorized to implement such reasonable changes to the Cash Management System as the Debtor may deem necessary or appropriate, including, without limitation, closing any of the accounts or opening any additional accounts following the Petition Date (the "**New Accounts**"), wherever the Debtor deems that such accounts are needed or appropriate, and so long as the banks in which the accounts are opened are designated depositories in the District of Delaware; provided, however, that the Debtor shall open any New Account only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement. Notwithstanding the foregoing, any New Account that the Debtor opens will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank. The New Accounts shall be subject to the rights, obligations, and relief granted in this Order. The Debtor shall provide the U.S. Trustee and any statutory committee appointed in this Chapter 11 case with prompt notice of any New Accounts that are opened.    The Bank is authorized to honor the Debtor's requests to open or close (as the case may be) any account.

11.     To the extent necessary to execute the Cash Management System and manage the day-to-day business practices of the Debtor, the Debtor is authorized to continue to participate in Intercompany Transactions in the ordinary course of business.    The Debtor shall maintain records with respect to all transfers of cash so that all Intercompany Transactions may be easily ascertained, traced, and recorded properly on applicable intercompany accounts.

5

12.     The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the Motion or otherwise deemed waived.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure and the Local Rules are satisfied by such notice.

14.     Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

15.     The Debtor shall serve notice of the Motion (to the extent not already provided) and entry of this Order on the Initial Notice Parties, the Bank, and Ceridian. The notice shall provide that any objections to the relief granted in this Order must be filed with the Court and served on counsel for the Debtor no later than seven (7) days prior to the final hearing with respect to the Motion (the "**Objection Deadline**"). In the event that no objection to this order is received by the Objection Deadline, the Debtor's counsel shall file a certification of counsel to that effect attaching a final form of order. The final hearing with respect to the Motion shall be held on _____, 2012, at ___:___ __.m.

16.     Service of a copy of this Order on the Bank and Ceridian shall constitute notice by the Debtor to such entity to designate the Accounts as debtor in possession accounts, and the Accounts shall be so deemed debtor in possession accounts without further action required.

17.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order. This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective notwithstanding the filing of an objection, pending the entry of a final order by this Court.

6

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order

Dated: December____, 2012
       Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

7

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

REVSTONE INDUSTRIES, LLC,[1]

                Debtor.

Chapter 11

Case No. 12-13262 (BLS)

## FINAL ORDER AUTHORIZING DEBTOR TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS

Upon the motion (the "**Motion**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for an order pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions; and the Court having reviewed the Motion and the Brown Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]      The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED on a final basis, as set forth herein.

2.     The Debtor is authorized to continue to use its existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions and entities participating in the Cash Management System, except as modified by this Order.  In connection with the ongoing utilization of the Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.     The Debtor is authorized to (a) designate, maintain, and continue the Bank Account and Payroll Account (collectively, the "**Accounts**") in existence as of the Petition Date, with the same account numbers and document forms as are currently employed, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) deposit funds in, and withdraw funds from, the Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts or other items presented, issued, or drawn on the Accounts, (c) pay ordinary course fees in connection with the Accounts, including any fees arising prior to the Petition Date, (d) perform its obligations under the documents and agreements governing the Accounts, and (e) treat the Accounts for all purposes as accounts of the Debtor in its capacity as debtor in possession; provided, however, that the Debtor may only open new Accounts with institutions that agree to be bound by the terms of this Order and, in particular, the Cash Management System.  The Debtor is further authorized to close Accounts in the ordinary course of business.

2

4.     Pursuant to Local Rule 2015-2(a), the Debtor is authorized to continue to use its existing correspondence and business forms, checks and documents related to the Accounts without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them; provided, however, that once the Debtor's prepetition check stock runs out, the Debtor will obtain new stock reflecting its status as debtor in possession and setting forth the corresponding case number; provided, further, that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.  To the extent the Debtor opens or closes Accounts, it shall provide prompt notice to the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") and any official committees appointed in this Chapter 11 case.  Any new check stock used by the Debtor shall contain the designation "Debtor in Possession."

5.     The Debtor is authorized to continue to utilize all third-party providers necessary for the administration of its Cash Management System.

6.     *Nunc pro tunc* to the Petition Date, and subject to the terms of this Order, the Bank and Ceridian are authorized and directed to continue to administer, service, and maintain the Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for fees), and to honor any and all checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers or other items presented, issued, or drawn on the Accounts prior to the Petition Date shall be honored.

3

7.      To the extent the Bank and/or Ceridian maintain a disbursement account, the Bank and/or Ceridian shall implement reasonable handling procedures designed to effectuate the terms of this Order. To the extent the Bank and/or Ceridian implement such handling procedures and then honor a prepetition check, wire transfer, automated clearinghouse transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtor, (b) in the good faith belief that the Court has authorized such prepetition check, wire transfer, automated clearinghouse transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, the Bank and/or Ceridian shall not be deemed to be liable to the Debtor or its estate or otherwise in violation of this Order.

8.      Subject to the provisions of this Order, the Bank and Ceridian are authorized and directed to honor all representations from the Debtor as to which checks, wire transfers, automated clearinghouse transfers, or other items should be honored or dishonored.

9.      To the extent the Bank and/or Ceridian are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good faith efforts to cause the execution of a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's right to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee is fully reserved.

10.     The Debtor is authorized to implement such reasonable changes to the Cash Management System as the Debtor may deem necessary or appropriate, including, without limitation, closing any of the accounts or opening any additional accounts following the Petition Date (the "**New Accounts**"), wherever the Debtor deems that such accounts are needed or

704012436
RLF1 7673762v.1

appropriate, and so long as the banks in which the accounts are opened are designated depositories in the District of Delaware; provided, however, that the Debtor shall open any New Account only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement. Notwithstanding the foregoing, any New Account that the Debtor opens will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank. The New Accounts shall be subject to the rights, obligations, and relief granted in this Order. The Debtor shall provide the U.S. Trustee and any statutory committee appointed in this Chapter 11 case with prompt notice of any New Accounts that are opened.  The Bank is authorized to honor the Debtor's requests to open or close (as the case may be) any account.

11.    To the extent necessary to execute the Cash Management System and manage the day-to-day business practices of the Debtor, the Debtor is authorized to continue to participate in Intercompany Transactions in the ordinary course of business.  The Debtor shall maintain records with respect to all transfers of cash so that all Intercompany Transactions may be easily ascertained, traced, and recorded properly on applicable intercompany accounts.

12.    The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the Motion or otherwise deemed waived.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure and the Local Rules are satisfied by such notice.

704012436
RLF1 7673762v.1

14.     Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

15.     Service of a copy of this Order on the Bank and Ceridian shall constitute notice by the Debtor to such entity to designate the Accounts as debtor in possession accounts, and the Accounts shall be so deemed debtor in possession accounts without further action required.

16.     The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order

Dated: December____, 2012
       Wilmington, Delaware

 

                                         THE HONORABLE BRENDAN L. SHANNON
                                         UNITED STATES BANKRUPTCY JUDGE

704012436
RLF1 7673762v.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

REVSTONE INDUSTRIES, LLC,[1]

        Debtor.

Chapter 11

Case No. 12-13262 (BLS)

Re: Docket No. 6

## INTERIM ORDER AUTHORIZING DEBTOR TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS

Upon the motion (the "**Motion**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for an order pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions; and the Court having reviewed the Motion and the Brown Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]    The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222). The location of the Debtor's corporate headquarters and the Debtor's address for service of process is 2250 Thunderstick Dr., Ste. 1203, Lexington, Kentucky 40505.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtor is authorized to continue to use its existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions and entities participating in the Cash Management System, except as modified by this Order.  In connection with the ongoing utilization of the Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.      Except as otherwise provided in this Order, the Debtor is authorized to (a) designate, maintain, and continue the Bank Account and Payroll Account (collectively, the "**Accounts**") in existence as of the Petition Date, with the same account numbers and document forms as are currently employed, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) deposit funds in, and withdraw funds from, the Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts or other items presented, issued, or drawn on the Accounts, (d) pay ordinary course fees in connection with the Accounts, including any fees arising prior to the Petition Date, (e) perform its obligations under the documents and agreements governing the Accounts, and (f) treat the Accounts for all purposes as accounts of the Debtor in its capacity as debtor in possession; provided, however, that the Debtor may only open new Accounts with institutions that agree to be bound by the terms of this Order and, in particular, the Cash Management System.  The Debtor is further authorized to close Accounts in the ordinary course of business.

704012009
RLF1 7673706v.2

4.      Except as otherwise provided in this Order, pursuant to Local Rule 2015-2(a), the Debtor is authorized to continue to use its existing correspondence and business forms, checks and documents related to the Accounts without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them; provided, however, that once the Debtor's prepetition check stock runs out, the Debtor will obtain new stock reflecting its status as debtor in possession and setting forth the corresponding case number; provided, further, that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.  To the extent the Debtor opens or closes Accounts, it shall provide prompt notice to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and any official committees appointed in this Chapter 11 case. Any new check stock used by the Debtor shall contain the designation "Debtor in Possession."

5.      The Debtor is authorized to continue to utilize all third-party providers necessary for the administration of its Cash Management System.

6.      *Nunc pro tunc* to the Petition Date, and subject to the terms of this Order, the Bank and Ceridian are authorized and directed to continue to administer, service, and maintain the Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for fees), and to honor any and all checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers or other items presented, issued, or drawn on the Accounts prior to the Petition Date shall be honored.

3

7.    To the extent the Bank and/or Ceridian maintain a disbursement account, the Bank and/or Ceridian shall implement reasonable handling procedures designed to effectuate the terms of this Order. To the extent the Bank and/or Ceridian implement such handling procedures and then honor a prepetition check, wire transfer, automated clearinghouse transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtor, (b) in the good faith belief that the Court has authorized such prepetition check, wire transfer, automated clearinghouse transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, the Bank and/or Ceridian shall not be deemed to be liable to the Debtor or its estate or otherwise in violation of this Order.

8.    Subject to the provisions of this Order, the Bank and Ceridian are authorized and directed to honor all representations from the Debtor as to which checks, wire transfers, automated clearinghouse transfers, or other items should be honored or dishonored.

9.    To the extent the Bank and/or Ceridian are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good faith efforts to cause the execution of a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's right to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee is fully reserved. For banks at which the Debtor holds accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days from the date of entry of this Order, the Debtor shall (a) contact each bank, (b) provide the bank with the Debtor's employer identification

4

number, and (c) identify each of its accounts held at such bank as being held by a debtor in possession.

10.    The Debtor is authorized to implement such reasonable changes to the Cash Management System as the Debtor may deem necessary or appropriate, including without limitation, closing any of the accounts or opening any additional accounts following the Petition Date (the "**New Accounts**"), wherever the Debtor deems that such accounts are needed or appropriate, and so long as the banks in which the accounts are opened are designated depositories in the District of Delaware; provided, however, that the Debtor shall not open any New Accounts following the Petition Date without further order of the Court; provided, further, that the Debtor shall open any New Account only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.  Notwithstanding the foregoing, any New Account that the Debtor opens will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank. The New Accounts shall be subject to the rights, obligations, and relief granted in this Order.  The Debtor shall provide the U.S. Trustee and any statutory committee appointed in this Chapter 11 case with prompt notice of any New Accounts that are opened.  The Bank is authorized to honor the Debtor's requests to open or close (as the case may be) any account.

11.    To the extent necessary to execute the Cash Management System and manage the day-to-day business practices of the Debtor, the Debtor is authorized to continue to participate in Intercompany Transactions in the ordinary course of business; provided, however, that pending a final hearing on the Motion, the Debtor shall not be entitled to receive Management Fees from its

704012009
RLF1 7673706v.2

Affiliates in excess of $850,000 in the aggregate without further order of the Court. The Debtor shall maintain records with respect to all transfers of cash so that all Intercompany Transactions may be easily ascertained, traced, and recorded properly on applicable intercompany accounts.

12.     The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the Motion or otherwise deemed waived.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure and the Local Rules are satisfied by such notice.

14.     Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

15.     The Debtor shall serve notice of the Motion (to the extent not already provided) and entry of this Order on the Initial Notice Parties, the Bank, and Ceridian. The notice shall provide that any objections to the relief granted in this Order must be filed with the Court and served on counsel for the Debtor no later than seven (7) days prior to the final hearing with respect to the Motion (the "**Objection Deadline**"). In the event that no objection to this order is received by the Objection Deadline, the Debtor's counsel shall file a certification of counsel to that effect attaching a final form of order. The final hearing with respect to the Motion shall be held on January 9, 2012, at 11:00 a.m.

16.     Service of a copy of this Order on the Bank and Ceridian shall constitute notice by the Debtor to such entity to designate the Accounts as debtor in possession accounts, and the Accounts shall be so deemed debtor in possession accounts without further action required.

6

17.    The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.  This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective notwithstanding the filing of an objection, pending the entry of a final order by this Court.

18.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order

Dated: December___, 2012
       Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

7

# **Exhibit D**

**Schedule of Retainers Paid**

In re:  Revstone Industries, LLC          Case No.  12-13262

In re:  Spara, LLC          Case No.  12-13263

Reporting Period:  December 2012

## SCHEDULE OF RETAINER PAID TO PROFESSIONALS
(This schedule is to include each Professional paid a retainer[1])

| Payee | Check Date | Check Number | Name of Payor | Amount | Amount Applied To Date | Balance |
|---|---|---|---|---|---|---|
| Mayer Brown LLP | 12/3/12 | WIRE | HSC Equipment, LLC | $120,000.00[2] | N/A (see footnote 2) | $68,787.00 |
| Mayer Brown LLP | 12/3/12 | WIRE | Contech Castings, LLC | $300,000.00 | $217,964.00 | $82,036.00 |
| Mayer Brown LLP | 12/3/12 | WIRE | Metavation, LLC | $100,000.00 | N/A | $100,000.00[3] |
| Richards, Layton & Finger, P.A. | 12/3/12 | WIRE | HSC Equipment, LLC | $50,000.00 (see footnote 2) | $31,327.39 | $19,885.61 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

[1] All retainers paid to Mayer Brown LLP and Richards Layton & Finger, P.A. constitute evergreen retainers.

[2] Mayer Brown LLP wired the sum of $51,213.00 to Richards, Layton & Finger, P.A., of which $1,213.00 reimbursed Richards, Layton & Finger, P.A. for the payment of a filing fee.

[3] Accordingly, Mayer Brown LLP holds an evergreen retainer in the aggregate amount of $250,823.00.

Form IR-2 (4/07)