# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC,[1] | Case No. 12-13262 (BLS) |
| Debtor. | **Objections Due: TBD**<br>**Hearing Date: TBD** |

### EXPEDITED MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER, PURSUANT TO FED. R. BANKR. P. 2004 AND DEL. BANKR. L.R. 2004-1, DIRECTING GEORGE HOFMEISTER TO PRODUCE DOCUMENTS AND TO APPEAR FOR DEPOSITION UPON ORAL EXAMINATION

The Official Committee of Unsecured Creditors (the "Committee") of Revstone Industries, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, respectfully files this expedited[2] motion (the "Motion"), pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of the Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order directing George Hofmeister to: (i) produce documents within his possession, custody, or control that are responsive to the categories set forth on the document request attached hereto as <u>Exhibit A</u> (the "Document Request"), and (ii) be available for deposition regarding the topics raised herein and in the Document Request in this District on a date that is mutually convenient for Mr. Hofmeister and

---

[1] The Debtor in this case is Revstone Industries, LLC (Tax I.D. No. 26-3837222).
[2] The Committee has filed a motion contemporaneously herewith seeking a modest reduction in time to allow this motion to be heard at the regularly scheduled omnibus hearing on Wednesday, January 9, 2013.

proposed counsel for the Committee, but by no later than January 23, 2013. In support of the Motion, the Committee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. According to the Declaration of Jay N. Brown in Support of First Day Pleadings (Docket No. 10) (the "Declaration"), the Debtor was formed in December 2008. Declaration ¶ 7. It is governed by an operating agreement (as amended, the "Operating Agreement") with the Scott R. Hofmeister Irrevocable Trust, the Megan G. Hofmeister Irrevocable Trust, and the Jamie S. Hofmeister Irrevocable Trust (collectively, the "Hofmeister Children's Trusts"). Id. On or about July 1, 2011, the Hofmeister Children's Trusts each assigned their membership interests in the Debtor to Ascalon Enterprises, LLC ("Ascalon"). Id. The membership interests in Ascalon are, in turn, owned by the Hofmeister Children's Trusts. See Exhibit A to the Declaration, attached hereto as Exhibit B. The upstream organizational structure is depicted as follows:



2.  In furtherance of its fiduciary obligations, the Committee is conducting an investigation of the Debtor's assets and business, which includes, but is not limited to, the relationship between the Debtor entity and non-debtor entities, transactions by and between the Debtor entity and non-debtor entities, and asset transfers and/or financial obligations by and between the Debtor and non-debtor entities.

3.  The Committee's responsibility to ensure that all of the Debtor's assets are used in a manner that will maximize recoveries for general unsecured creditors makes it appropriate and necessary for the Committee to investigate these areas, as well as all potential assets and sources of recovery for the estate.  Upon information and belief, Mr. Hofmeister is the Chairman of the Debtor and controls each of the non-debtor entities identified on Exhibit B.  One potential area the Committee has identified for investigation is the flow of funds from and between the Debtor and various non-debtor entities, including those identified on Exhibit B.  Mr. Hofmeister is the hub of not only the Debtor but also all other affiliated entities throughout the organizational charts, making it imperative that he provide testimony and documents related to the Debtor's transactions and assets.  Through counsel, he has refused to provide documents or testimony on a non-compulsory basis, thus necessitating this motion.

**BACKGROUND**

A. <u>The Bankruptcy Case</u>

4. On December 3, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor continues to operate its business and manage its property as debtor in possession.

5. On December 17, 2012, the Office of the United States Trustee appointed the Committee pursuant to Bankruptcy Code section 1102(a)(1). The Committee selected and authorized the employment of Womble Carlyle Sandridge & Rice, LLP as its counsel and FTI Consulting, Inc. as its financial advisor.

6. To date, no trustee or examiner has been appointed in the Debtor's bankruptcy case (the "Debtor's Chapter 11 Case").

B. <u>The Limbright Case</u>

7. Prior to the Petition Date, Mr. Hofmeister was found to be the alter ego of the Hofmeister Children's Trusts and was found to have used various trusts upon which he maintained control to fraudulently transfer assets. Specifically, on November 14, 2011, the United States District Court for the Eastern District of Kentucky, Central Division (the "Kentucky District Court") held (granting a motion for summary judgment) that (i) George and Kay Hofmeister (collectively, the

"Hofmeisters") were alter egos of the Hofmeister Children's Trusts;[3] (ii) that the Hofmeister Children's Trusts were alter egos of the Hofmeister Family Trust (a separate trust established by George Hofmeister for his children);[4] (iii) that the Hofmeisters were alter egos of the Hofmeister Family Trust;[5] and (iv) that certain transfers caused by Mr. Hofmeister were "made with actual intent to hinder, delay or defraud . . . ."[6]

8.      The Limbright case arose as a result of Mr. Hofmeister's purchase, through Innovative Coating Technology ("ICT") (an entity controlled by Mr. Hofmeister), of the stock of the Limbrights' company, Performance Plastics, Inc. Mr. Hofmeister and his wife personally guaranteed the notes used to purchase the Limbrights' company. ICT subsequently filed bankruptcy and the Limbrights sought to enforce the personal guarantees. Judgments were entered against the Hofmeisters and after non-payment of the judgment, litigation was commenced and a settlement was reached. However, the Hofmeisters still did not pay. In May 2008, the Limbrights initiated supplementary proceedings to add the Hofmeister Children's Trusts as defendants, which proceedings were eventually transferred to the Kentucky District Court.[7]

---

[3] See Limbright v. Hofmeister, Civ. A. No. 5:09-cv-107-KSF, 2011 U.S. Dist. LEXIS 131373, at *9-12 (E.D. Ky. Nov. 14, 2011), attached hereto as Exhibit C.
[4] Id. at *12-14.
[5] Id. at *14-23.
[6] Id. at *28.
[7] The facts stated in paragraph 8 are summarized by the Kentucky District Court at Limbright, 2011 LEXIS 131373, at *2-4.

9. The Kentucky District Court determined that the Hofmeisters used the Hofmeister Children's Trusts, the Hofmeister Family Trust, and the numerous entities owned by the Hofmeister Children's Trusts for their own personal gain.[8] Specifically, these trusts and entities (through the trusts) were regularly used to guarantee Hofmeisters' loans, satisfy Hofmeisters' personal loans and judgments, and fund lavish personal expenses, "including a home valued at $25 million and a reduction of the mortgage thereon."[9]

10. According to the Kentucky District Court, Mr. Hofmeister unquestionably manipulated the Hofmeister Children's Trusts to evade paying the Limbrights. On December 14, 2006, Mr. Hofmeister agreed to settle the Limbright litigation by agreeing to a judgment of $500,000 against the Hofmeister Family Trust. In the four weeks between agreeing to the settlement and execution of the settlement agreement, Mr. Hofmeister caused the Hofmeister Family Trust to transfer 84% of its assets to the Hofmeister Children's Trusts to avoid paying the Limbrights.[10] The Kentucky District Court held that these transfers were fraudulent under Michigan law.[11]

11. The Limbright case was instituted by the Limbright brothers against Mr. Hofmeister in 2001, and continues to this day. The Limbright case is a perfect example as to how Mr. Hofmeister can delay payment of his obligations --

---

[8] Id. at *9-23.
[9] Id. at *19.
[10] Id. at *21-22.
[11] Id. at *28.

even in the face of court orders, damaging decisions, and even settlement agreements.

### C. The Boston Finance Group, LLC Lawsuit

12. Boston Finance Group, LLC ("BFG") commenced an action against the Debtor and various non-debtor entities in Michigan. Boston Fin. Group v. Power-Tec Mfg., LLC, Case No. 12-29875-CK (Circ. Ct. Mich., Cty. of Grand Traverse) (the "Boston Finance Action"). In the Boston Finance Action, plaintiffs were awarded a significant debt judgment against the Debtor and a group of other entities controlled by Mr. Hofmeister that the Debtor and its co-defendants failed to satisfy. As part of its investigation in connection with asset recovery, BFG arranged the voluntary deposition of Nelson Clemmens, the trustee of the Hofmeister Children's Trusts – the ultimate owners of the Debtor. However, when Mr. Clemmens appeared for the deposition, his counsel announced that Mr. Clemmens, while traveling to the deposition, had resigned as trustee rather than answer questions. As a result of this and other failed efforts to obtain financial records and information from the Debtor, BFG filed a motion to appoint a receiver over the Debtor, an order which the Michigan court was about to enter when the Debtor commenced this bankruptcy case.

### D. MPI Products, LLC Sale

13. In the weeks preceding the filing of this case, continuing his practice of disposing of assets to favor certain creditors and defraud others, Mr. Hofmeister completed a transaction for the sale of former affiliate of the Debtor,

MPI Products, LLC ("MPI"). Through this sale, which closed on or about November 15, 2012, MPI was sold and the proceeds distributed to two creditors at the expense of others to whom MPI was indebted. Although the Debtor represented to the court in Michigan that it was exploring a sale of MPI as a means of satisfying BFG's judgment, upon information and belief, none of the proceeds of the sale of MPI were distributed to BFG.

### E. The Document Request

14. Due to Mr. Hofmeister's history of self-interested transactions made to the detriment of creditors, the Committee respectfully submits that sufficient cause exists for the Court to compel Mr. Hofmeister to produce documents on an expedited basis, and to require that Mr. Hofmeister make himself available for deposition by no later than January 23, 2013. The Committee's examination would include questions regarding the topics set forth on Exhibit A attached hereto, including (without limitation) the relationship between and the flow of assets and funds through and from the Debtor to entities controlled by or determined to be the alter egos of Mr. Hofmeister and/or to Mr. Hofmeister himself. In addition, the Committee has questions regarding Mr. Hofmeister's control and management of the Debtor.

15. Given Mr. Hofmeister's history of transferring funds between and from entities he controls for personal gain and his evasion tactics in prior litigation, the Committee cannot delay its efforts to obtain necessary information critical to its ongoing investigation. As explained below, despite the Committee's

efforts to promptly obtain the requested information without judicial intervention, the Committee was compelled to file the Motion. Accordingly, for the reasons set forth below, the Committee respectfully submits that the Motion should be granted.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are Bankruptcy Rule 2004 and Local Rule 2004-1.

## RELIEF REQUESTED

17. By this Motion, the Committee seeks the entry of an order directing Mr. Hofmeister to (i) produce documents within his possession, custody, or control that are responsive to the Document Requests by no later than January 16, 2013, and (ii) appear for oral examination at the offices of Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware or other mutually agreeable location on a date that is mutually convenient for Mr. Hofmeister and proposed counsel for the Committee but by no later than January 23, 2013.

## BASIS FOR RELIEF REQUESTED

18. Rule 2004 of the Bankruptcy Rules provides, in relevant part, as follows:

> (a) *Examination on Motion*. On motion of any party in interest, the court may order the examination of any entity.
>
> (b) *Scope of Examination*. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . [T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given therefor, and any other matter relevant to the case or to the formulation of a plan.
>
> (c) *Compelling Attendance and Production of Documents*. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

Fed. R. Bankr. P. 2004(a), (c), (d).

19.     Accordingly, examinations under Bankruptcy Rule 2004 include within their scope, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtors' estate. See Fed. R. Bankr. P. 2004(b); see also In re Teleglobe Communications Corp., 493 F.3d 345, 354 n.6 (3d Cir. 2007) (Rule

2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate); In re Mattera, No. 05-39171, 2007 Bankr. LEXIS 5008, at *5 (Bankr. D.N.J. June 13, 2007) ("[t]he scope of a Rule 2004 examination 'has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the discovery of fraudulent conduct'").

20.  Courts have consistently recognized the extraordinarily broad scope of an examination under Bankruptcy Rule 2004. See, e.g., Washington Mutual, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (a "Rule 2004 [examination] is commonly recognized as more in the nature of a 'fishing expedition'") (citations omitted); In re 2435 Plainfield Ave., Inc., 223 B.R. 440, 456 (Bankr. D.N.J. 1998) ("[a] Rule 2004 examination has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct"); Jacobson v. Jacobson (In re Lev), Nos. 05-35847, 06-2945, 2008 Bankr. LEXIS 4827, at *9 (Bankr. D.N.J. Jan. 23, 2008) ("Courts, in fact, recognize that Rule 2004 examinations are broad, unfettered and in the nature of fishing expeditions.").

21.  The scope of inquiry under Bankruptcy Rule 2004 is extraordinarily broad because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Recoton Corp., 307 B.R. 751, 755 (S.D.N.Y. 2004). This broad

inquiry extends to third parties: "[b]ecause the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); see also In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. D. Wis. 1984) ("[w]hen there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed"); In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Bankruptcy Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor"). This is because "[t]he clear intent of Rule 2004 . . . is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." In re GHR Cos., Inc., 41 B.R. 655, 660 (Bankr. D. Mass. 1984).

22. Each of the Document Requests seeks information concerning the property, liabilities, and/or financial condition of the Debtor's ultimate parent, which, in turn, concerns the property, liabilities, and/or financial condition of the Debtor, or matters affecting the administration of the Debtor's estate, and as a result, falls squarely within the permissible scope of discovery under Bankruptcy Rule 2004.

23. The Committee is empowered to undertake investigations that could potentially identify claims of the Debtor's estates, and thereby potentially increase recoveries to be obtained by the estate's unsecured creditors.

24. The discovery sought through the Motion is necessary to enable the Committee to understand the relationship between the Debtor and its parent entities. Additionally, the Committee believes that Mr. Hofmeister may have information relevant to the discovery of Debtor's assets and potential causes of action held by the estate.

25. Based on the foregoing, the production of documents by Mr. Hofmeister, and the oral examination of Mr. Hofmeister is not only authorized by Bankruptcy Rule 2004, but is in the best interests of the Debtor's estate and creditors. Indeed, discovery of the information requested is necessary for the Committee to properly discharge its duties under Bankruptcy Code section 1103(c) to investigate all areas that could potentially increase the recovery for the estate's unsecured creditors. The Rule 2004 discovery requested in this Motion will provide the Committee with information it needs from those parties personally possessing such information. Accordingly, the Committee submits that the Motion is proper and the relief requested herein should be granted to permit the Committee to discharge its duties.

## **NOTICE AND PRIOR MOTION**

26. In compliance with Local Rule 2004-1, the Committee sought to obtain certain discovery consensually from Mr. Hofmeister. Specifically, on

December 21, 2012, proposed counsel for the Committee sent a letter to Mr. Hofmeister's counsel, requesting to schedule a meet and confer at a mutually agreeable date and time to discuss the Committee's discovery needs.[12] On December 26, 2012, Mr. Hofmeister's counsel responded to the Committee's letter by requesting a list of the proposed topics for the examination. Proposed counsel for the Committee provided Mr. Hofmeister's counsel with that list on December 28, 2012, and again requested to schedule a meet and confer with Mr. Hofmeister's counsel.

27. On December 31, 2012, Mr. Hofmeister's counsel responded by suggesting to proposed counsel for the Committee that such counsel must first resolve an alleged conflict of interest, and must further obtain an order by this Court authorizing it to act on behalf of the Committee, before Mr. Hofmeister will proceed with discovery.[13] Proposed counsel for the Committee does not believe that any such conflict of interest exists nor does it agree that it must first obtain a Court order authorizing its retention as counsel for the Committee before seeking discovery in this case, through Rule 2004 or otherwise.

28. In light of the foregoing, the Committee has discharged its meet-and-confer obligations as required by Local Rule 2004-1.

---

[12] A copy of the Committee's letter is attached as <u>Exhibit D</u>.

[13] A copy of the electronic correspondence from Mr. Hofmeister's counsel is attached as <u>Exhibit E</u>. In that correspondence, Mr. Hofmeister's counsel references a recent e-mail to proposed counsel for the Committee from James O'Toole, Esq., who is in-house counsel for the Debtor's parent, Ascalon Enterprises, LLC. At the time of Mr. Hofmeister's counsel's December 31, 2012 correspondence, proposed counsel for the Committee had already responded to Ascalon's outside counsel.

29. Notice of this Motion has been provided to: (i) counsel to the Debtor; (ii) the U.S. Trustee; (iii) counsel to Mr. Hofmeister; and (iv) the parties requesting notice under Bankruptcy Rule 2002. The Committee submits that the foregoing constitutes good and sufficient notice and that no other or further notice is required.

30. No previous motion for the relief requested herein has been made by the Committee to this or any other court.

## CONCLUSION

**WHEREFORE** the Committee respectfully requests entry of an Order (I) directing Mr. Hofmeister to (a) produce all documents within his possession, custody, or control that are responsive to the categories set forth on the Document Request attached hereto as <u>Exhibit A</u> by no later than January 16, 2013, and (b) appear for deposition at the law offices of Womble Carlyle Sandridge & Rice LLP, 222 Delaware Avenue, Ste. 1501, Wilmington, Delaware  19801, or other mutually agreeable location, on a date that is mutually convenient for Mr. Hofmeister and proposed counsel for the Committee, but by no later than January 23, 2013, and (II) granting the Committee such further relief as is just.

Dated:  January 2, 2013              **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Matthew P. Ward
Steven K. Kortanek (Del. Bar. No. 3106)
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Matthew P. Ward (Del. Bar No. 4471)
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
Telephone:  (302) 252-4320
Facsimile:  (302) 661-7738
E-mail: skortanek@wcsr.com
E-mail: mdesgrosseilliers@wcsr.com
E-mail: maward@wcsr.com

*Proposed Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC*