1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   Case No. 13-10472(KJC)

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   GEOKINETICS, INC.,

8

9           Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                          United States Bankruptcy Court

14                          824 North Market Street

15                          Wilmington, Delaware

16

17                          March 12, 2013

18                          1:02 PM

19

20

21  B E F O R E :

22  HON KEVIN J. CAREY

23  U.S. BANKRUPTCY JUDGE

24

25  ECR OPERATOR:  AL LUGANO

1   HEARING re Debtor's Motion for Joint Administration of Their

2   Cases for Procedural Purposes Only

3

4   HEARING re Debtor's Employee Wages and Benefits Motion

5

6   HEARING re Debtor's Motion for an Interim Order Determining

7   Adequate Assurance of Payment for Future Utility Services

8

9   HEARING re Debtor's Motion for Authorization to Pay Certain

10  Taxes

11

12  HEARING re Debtor's Motion to Continue Insurance Coverage

13  and Maintain Funding for the Insurance Broker

14

15  HEARING re Debtor's Request to Seek an Interim and Final

16  Order Establishing Notification and Hearing Procedures with

17  Respect to the Transfer of or Claims for Worthlessness with

18  Respect to Certain Equity Security Interests

19

20  HEARING re Debtor's Motion for entry of an Order Extending

21  Time to File Statements of Financial Affairs

22

23  HEARING re Critical Vendor's Motion

24

25  HEARIN re Critical Foreign Vendor's Motion

1    HEARING re Shipper's and Warehouse Motion

2

3    HEARING re Debtor's Motion for Authorization to Prepare a

4    single List of Creditors

5

6    HEARING re Debtor's Request to Establish a Bar Date

7

8    HEARING re Debtor's Motion for an Order Authorizing but not

9    Directing the Debtors to Redact Portions of Their Schedules

10   and Statements and to File Portions of Their List of

11   Creditors and Other Pleadings and Document Under Seal to

12   Protect Confidential Commercial Information

13

14   HEARING re Debtor's Motion for Authority to Continue Use of

15   the Existing Cash Management System as Modified

16

17   HEARING re Debtor's Motion for Interim and Final Post-

18   Petition Financing for Authority to Use Cash Collateral

19

20   HEARING re Debtor's Application for Entry of an Order

21   Appointing GSG as Claims and Noticing Agent Pursuant to 28

22   U.S.C. 156, Bankruptcy Code § 105(a), and Local Bankruptcy

23   Rule 2002

24

25   HEARING re Debtor's Request for Entry or an Order Scheduling

Page 4

1   a Combined Hearing to Approve the Adequacy of the Disclosure

2   Statement and Confirmation of the Plan and the Adequacy of

3   our Prepetition Solicitation Procedures, Setting Deadlines

4   Related to these Procedures for Objecting to the Adequacy of

5   the Disclosure Statement, Confirmation of the Plan, and the

6   Prepetition Solicitation Procedures, Approving the Form and

7   Notice and Manner of the Combined Hearing and the

8   Commencement of the Cases, and Directing the Office of the

9   U.S. Trustee Not to Convene a Meeting of Creditors and

10  Equity Holders

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Dawn South

1   A P P E A R A N C E S :

2   RICHARDS, LAYTON & FINGER, P.A.

3       Attorneys for the Debtor

4       One Rodney Square

5       920 North King Street

6       Wilmington, DE 19081

7

8   BY:  PAUL N. HEATH, ESQ.

9       L. KATHERINE GOOD, ESQ.

10      TYLER D. SEMMELMAN, ESQ.

11

12   AKIN GUMP STRAUSS HAUER & FELD LLP

13      Attorneys for the Debtor

14      1700 Pacific Avenue

15      Suite 4100

16      Dallas, TX 75201-4624

17

18   BY:  SARAH A. SCHULTZ, ESQ.

19      MICHAEL HAYNES, ESQ.

20      SARAH J. CROW, ESQ.

21

22

23

24

25

1  BROWN RUDNICK

2      Attorneys for Whitebox

3      Seven Times Square

4      New York, NY 10036

5

6  BY:  ROBERT STARK, ESQ.

7      STEVE LEVINS, ESQ.

8

9  WOMBLE CARLYLE SANDRIDGE & RICE, LLP

10      Attorney for Whitebox

11      222 Delaware Avenue

12      Suite 1501

13      Wilmington, DE 19081

14

15  BY:  STEVEN K. KORTANEK, ESQ.

16

17  KAYE SCHOLER

18      Attorney for Canton Fitzgerald Securities

19      425 Park Avenue

20      New York, NY 10022-3598

21

22  BY:  SCOTT TALMADGE, ESQ.

23

24

25

1    POTTER ANDERSON CORROON LLP

2         Attorney for Carter Fitzgerald Securities

3         Hercules Plaza

4         1313 North Market Street, 6th Floor

5         Wilmington, DE 19081

6

7    BY:  ETTA MAYERS, ESQ.

8

9    UNITED STATES DEPARTMENT OF JUSTICE

10        Attorney for the U.S. Trustee

11        844 King Street

12        Suite 2207

13        Wilmington, DE 19801

14

15   BY:  RICHARD L. SCHEPACARTER, ESQ.

16

17   MASLON EDELMAN BORMAN & BRAND

18        Attorney for U.S. Bank National Association, as Trustee

19        90 S. 7th Street

20        Minneapolis, MN 55402

21

22   BY:  CLARK WHITMORE, ESQ.

23

24

25

1   PACHULSKI STANG ZIEHL & JONES

2        Attorney for American Securities

3        919 North Market Street

4        17th Floor

5        Wilmington, DE 19081

6

7   BY:  LAURA DAVIS JONES, ESQ.

8

9   FRIED FRANK

10       Attorneys for Opportunities Advisors

11       One New York Plaza

12       New York, NY 10004

13

14   BY:  JENNIFER L. RODBURG, ESQ.

15        RICHARD SLIVINSKI, ESQ.

16

17   DORSEY & WHITNEY LLP

18       Attorney for U.S. Bank as Indenture

19       300 Delaware Avenue

20       Suite 1010

21       Wilmington, DE 19801

22

23   BY:  ROBERT MALLARD, ESQ.

24

25

1                    P R O C E E D I N G S

2            MR. HEATH:  Good morning, Your Honor.  Paul Heath

3    of Richards, Layton & Finger on behalf of debtors.

4            First, Your Honor, thank you for accommodating our

5    request for a first day hearing this afternoon.

6            I'd like to make a few brief introductions.  With

7    me in the courtroom are Sarah Schultz, Michael Haynes, and

8    Sarah Crow of Akin Gump, counsel to the debtors in these

9    cases.  And Your Honor has signed orders admitting all three

10   pro hac vice, so thank you for that.

11           Additionally we are joined in the courtroom by

12   several members of the debtor's management team.  Today we

13   have David Crowley (ph), CEO and president.  Gary L. Pitman

14   (ph), the CFO.  Glen Snezick (ph) the treasurer.  And also

15   in the courtroom with us today is a member of the board and

16   chairman of the restructuring special committee, Mr. Gary M.

17   Pitman (ph).  And finally Mr. Jay Johnson of Rothschild, the

18   debtor's proposed financial advisor.

19           Your Honor, we've been communicating with

20   Mr. Schepacarter over the past couple of days, and I'm

21   pleased to report that except with respect to one additional

22   proffer that we will make in connection with the redaction

23   of confidential information motion, that we stand here on an

24   uncontested basis.  So the good news is we're essentially

25   uncontested except for that proffer.  And the bad news is we

1    have a lot of first days.

2             So I'll turn the podium over to Ms. Schultz and

3    she can start with those.

4             THE COURT:  Very well.

5             MS. SCHULTZ:  Good afternoon, Your Honor, again

6    for the record, Sarah Schultz, Akin Gump Strauss Hauer &

7    Feld proposed counsel to the debtors in these matters.

8             Your Honor, I thought that it might be helpful to

9    provide you with just a brief background of sort of the

10   case, how we got here, what this company does, and how we

11   think we're going to get in and out of here very quickly.

12            Your Honor, the debtors are a Houston-based full

13   service, global provider of seismic data, acquisition

14   processing, and integrated resource geoscience services for

15   the oil and natural gas.  And what does that mean in plain

16   English?  In plain English means that they provide their

17   clients with seismic data that helps them to identify where

18   oil, natural gas, and other resources are located.

19            In addition the debtors license to their clients

20   from their multi-client library certain of their seismic

21   data.

22            In addition to the (indiscernible - 1:05:17) that

23   are before Your Honor today the debtors also have a number

24   of affiliated entities worldwide.  As I'm sure you can

25   imagine many of the projects that the debtors work on occur

1    all over the world wherever oil exploration happens to be

2    hot at that time.

3             The debtors and their affiliated entities for the

4    nine months totaling -- ending September 30th of 2012

5    generated total revenues of approximately $440 million, and

6    although they believe that the long-term growth in the

7    energy industry will result in an increased demand for their

8    services by oil and gas companies at this time they are

9    unable to met all of their debt service requirements, which

10   is what brought us here.

11            Specifically the debtors have two prepetition

12   secured facilities.  They have a$ 50 million revolving

13   credit facility and a $300 million debt issuance, that is

14   $300 million worth of notes.  These two entities are secured

15   by the same collateral package, they share a pari passu;

16   however, pursuant to an intercreditor agreement the lenders

17   under the revolver have a first out right.

18            In December of 2012 the debtors were unable to

19   make their semiannual interest payment to the noteholders.

20   In an effort to restructure their debt in a consensual

21   manner they reached out to their stakeholders, this include

22   the lenders under the credit facility, the noteholders,

23   they've got several series of preferred shareholders, they

24   reach out to them as well.  And the culmination of these

25   negotiations resulted in what we're here before -- here

1    today with, which was a prepackaged plan of reorganization

2    that was initially supported pursuant to our plan support

3    agreement by more than 70 percent of the senior noteholders

4    and majority of the preferred equity holders.  Once we went

5    out to the parties under a solicitation for our prepack we

6    actually got an acceptance rate that was significantly

7    higher than that.

8              The plan that we are proposing that we filed on

9    our petition date and that was solicited prepetition

10   proposes to pay the revolving credit facility in full.  It

11   proposes that the senior notes, the $300 million piece, will

12   be converted into common equity in the reorganized company.

13             General unsecured creditors under our proposed

14   plan are going to be paid in full either in the ordinary

15   course of business during the short time that we anticipate

16   being in Chapter 11 or on the effective date of a plan.

17             The Series B and Series C preferred shareholders,

18   which are the top two of the three series of preferred

19   shareholders, will receive their pro rata share of a

20   $6 million cash payment, and the Series D shareholders and

21   our common equity will be eliminated.

22             The debtors are proposing to financial their

23   restructuring with a DIP of up to $25 million.  The DIP

24   facility is being backstopped in the first instance by our

25   two largest noteholders, American Securities and Gates

1   Capital; however, all senior noteholders who are accredited

2   and have at least $1 million worth of notes as of the

3   petition date have the option to participant in the DIP on a

4   pro rata basis.

5           At the conclusion of the case, if our plan is

6   confirmed, the DIP is going to be repaid through conversion

7   into equity, which obviously will be a very good thing for

8   the debtors with respect to liquidity.

9           We commenced with the support of our -- majority

10  of our noteholders and our major preferred shareholder

11  solicitation for this plan on February 7th.  The

12  solicitation closed on March 8th, which provided us we

13  believe for a substantial window for all parties to receive

14  notice.  And as evidenced by the voting certification, which

15  we also filed on the petition date, the plan is overwhelming

16  accepted by 95 plus percent in amount and 84 plus percent in

17  number of our noteholders and 100 percent of your voting

18  prefers shareholders.

19          Your Honor, with that backdrop of the case and

20  sort of why we're here I would propose that we move forward

21  with our first day pleadings and I'll cede the podium to

22  Ms. Crow who's going to present the first few pleadings for

23  us.

24          THE COURT:  Very well.

25          MS. SCHULTZ:  Thank you, Your Honor.

1            MS. CROW:  Good afternoon, Your Honor, Sarah Crow,

2    Akin Gump Strauss Hauer & Feld on behalf of the debtors.

3            I'll be addressing the first three motions on our

4    agenda today.

5            The first is the debtor's motion for joint

6    administration of their cases for procedural purposes only.

7            Your Honor, each of the debtors are very closely

8    related affiliates, we expect that many of the matters that

9    will arise during these cases will affect multiple debtors.

10            Unless the Court has any questions about the

11    motion it's very standard relief for cases of this type, and

12    we would ask Your Honor to enter an order jointly

13    administering the cases for procedural purposes.

14            THE COURT:  All right.  I don't have any

15    questions, but I'll ask for the record does anyone else wish

16    to be heard in connection with joint administration?  I hear

17    no response.

18            MS. CROW:  Would you like me to approach with a

19    copy of the proposed order now?

20            THE COURT:  Yeah, let me ask, are there black

21    lines of any of the orders?

22            MS. CROW:  Yes, there are black lines of several

23    of the orders, not on this particular one.

24            THE COURT:  Okay.  Well, let's do them one at a

25    time then.

1           MS. CROW:  Okay.

2           THE COURT:  Thank you.

3      (Pause)

4           THE COURT:  That order has been signed.

5           MS. CROW:  Thank you, Your Honor.

6           Item number 2 on the agenda is the debtor's

7    employee wages and benefits motion.

8           Your Honor, it is critical to the success of these

9    cases and to the debtor's businesses that their employees,

10   including domestic employees, expats, and third country

11   nationals are impacted as minimally as possible by these

12   proceedings.

13          This is an operating company and the debtor's

14   employees are essential to operations and to preservation of

15   value.

16          Accordingly, by this motion the debtors seek

17   authority to continue to pay their employees and contractors

18   in the ordinary course.  The debtor's next payroll goes out

19   on the 15th of this month, so at the end of this week.

20          In addition the debtors seek authority to allow

21   employees to use their vacation time and accrued time off.

22          The debtors are also seeking authority to maintain

23   their standard benefit packages.  I don't think there's

24   anything in the benefits package that is unusual or would be

25   unexpected for a company of this type.  For example, medical

1    benefits, life insurance, and a 401(k), among other things.

2              Additionally, I would note that the U.S. Trustee

3    had a couple of comments to this motion which are addressed

4    in a redline of the proposed interim order.

5              May I approach with a black line?

6              THE COURT:  Yes.  Thank you.

7              Let me just ask, are you offering the Pitman first

8    day declaration in support of this and the other first day

9    relief that's being requested?

10             MS. CROW:  We are, Your Honor.

11             THE COURT:  Is there any objection to the

12   admission of that declaration at docket number 16?  I hear

13   no response.  It's admitted without objection.

14        (Debtor's Exhibit admitted)

15             THE COURT:  All right.  Let me take a look at the

16   black line.

17        (Pause)

18             THE COURT:  Okay.  I see that the final hearing

19   date has been inserted for April 3 at 2 p.m., which was a

20   day and time given to you by chambers.

21             MS. CROW:  In addition, Your Honor, on page 2 of

22   the order, paragraph 2, the last clause of that paragraph

23   says, "Provided further the Court shall consider the

24   debtor's request to pay the unpaid crew bonuses at the final

25   hearing."

1             THE COURT:  Okay.  Thank you.

2             Does anyone else wish to be heard in connection

3    with the wage motion?  I hear no response.  I don't have any

4    questions.

5             MS. CROW:  Thank you, Your Honor.

6             THE COURT:  That order has been signed.

7             MS. CROW:  Item number 3 on the agenda is the

8    debtor's motion for an interim order determining adequate

9    assurance of payment for future utility services.

10             The debtors have proposed procedures offering

11   adequate assurance in the form of a deposit of $75,000,

12   which is equal to two weeks of utility services on average.

13             Your Honor, the procedures proposed in the motion

14   are typical of those normally approved in this jurisdiction.

15             Specifically in addition to the adequate assurance

16   deposit the procedures provide notice to all utility

17   providers and a right to request additional assurance if

18   they believe the deposit does not adequately protect their

19   interests.

20             With that, Your Honor, unless you have any

21   questions we would ask that you enter the interim order.

22             THE COURT:  I don't.  Does anyone else wish to be

23   heard in connection with the utility motion?  I hear no

24   response.

25             MS. CROW:  May I approach?

Page 18

1          THE COURT:  You may.

2     (Pause)

3          THE COURT:  That order has been signed.

4          MS. CROW:  Thank you, Your Honor.

5          I'll cede the podium to Mr. Heath.

6          MR. HEATH:  Once again for the record, Your Honor,

7     Paul Heath of Richards, Layton.

8          Item number 4 on the agenda is the debtor's motion

9     for authorization to pay certain taxes.

10         Pursuant to this motion the debtors seek interim

11    authorization to pay certain sales and use, income,

12    property, and other taxes.

13         Your Honor, we believe the failure to pay the

14    amounts requested may result in substantial penalties and

15    liens, personal liability for officers and directors, and

16    potentially render the debtors unable to operate their

17    businesses.

18         We believe the relief requested is reasonable and

19    consistent with relief routinely granted in this district

20    and necessary to avoid immediate and irreparable harm, and

21    therefore satisfies the requirements of Bankruptcy Rule

22    6003.

23         Once again, Your Honor, we're only seeking interim

24    relief pursuant to this order, and the interim order does

25    provide for a cap of $60,000.

1          And unless Your Honor has any questions we would

2     ask that you approve the relief requested.  The order is

3     unchanged.

4          THE COURT:  I do not have any questions, but I'll

5     ask for the record, does anyone else wish to be heard in

6     connection with the tax motion?  I hear no response.

7          MR. HEATH:  May I approach, Your Honor?

8          THE COURT:  You may.  Thank you.

9      (Pause)

10          THE COURT:  That order has been signed.

11          MR. HEATH:  Thank you, Your Honor.

12          The next item on the agenda, item number 5, is the

13     debtor's motion to continue insurance coverage and maintain

14     funding for the insurance broker.

15          Pursuant to this motion the debtors seek interim

16     authority to continue their insurance coverage and maintain

17     funding for their insurance broker, and that's described in

18     detail in the motion.

19          In the ordinary course of their operations the

20     debtors maintain a full complement of insurance policies

21     including general liability, automobile liability, workers'

22     compensation, property damage and liability, fiduciary

23     liability, and director's and officer's liability.

24          The coverage is divided into three broad license.

25     Domestic, foreign, and worldwide.  And the debtors have

1   insurance premium financing arrangements in place for

2   several of the policies as detailed in the motion and employ

3   Marsh, USA as insurance broker to assist with the

4   procurement and negotiation of the policies.

5           The debtors request authority to continue their

6   insurance coverage, make annual and monthly premium payments

7   in the ordinary course of business, make monthly payments

8   under premium financing arrangements in the ordinary course

9   of business, pay deductibles as necessary, and maintain the

10  funding for their broker.

11          And once again, Your Honor, we're only seeking

12  interim relief today.  We believe that the relief requested

13  is reasonable and consistent with relief routinely granted

14  in this district and necessary to avoid immediate and

15  irreparable harm, and therefore satisfies the requirements

16  of Bankruptcy Rule 6003.

17          Your Honor, we did have one change to the form of

18  order.  We've added a cap to the interim order limiting the

19  amounts that can be paid under the interim order to

20  $500,000.

21          Unless Your Honor has any questions we would ask

22  that you approve the relief requested.  I do have a black

23  line of the form of order and a clean one.

24          THE COURT:  All right.  Does anyone else wish to

25  be heard in connection with this motion?  I hear no

1    response.  I don't have any questions.

2              MR. HEATH:  May I approach, Your Honor?

3              THE COURT:  You may.

4              MR. HEATH:  Thank you.

5         (Pause)

6              MR. HEATH:  Referring to the black line of the

7    order, Your Honor, you can see that we've added new

8    paragraph 7, which provides for the cap under the interim

9    order.

10             THE COURT:  I see that.  The order has been

11   signed.

12             MR. HEATH:  Your Honor, I have a couple of

13   additional motions that I'm handling today, they're not in

14   order.  So with the Court's permission I'd like to while I'm

15   at the podium handle items number 7 and 11.

16             THE COURT:  Okay.

17             MR. HEATH:  Item number 7 on the agenda is the

18   debtor's motion for entry of an order extending time to file

19   statements of financial affairs.

20             Pursuant to the motion the debtors request an

21   extension of the time to file their SOFAs and a complete

22   waiver of the obligation to file the SOFAs if the debtors

23   confirm their plan before the expiration of the requested

24   extension.

25             Your Honor, the debtors have filed their

1    schedules, so to be clear, this motion only relates to the

2    SOFAs.  And I'm happy to address any questions the Court may

3    have.  We believe this relief again is consistent with

4    relief routinely granted in prepackaged cases.

5             THE COURT:  No, I did see from a review of the

6    docket that the schedules had been filed.  I don't have any

7    questions.  Let me ask, does anyone else wish to be heard in

8    connection with this motion?  I hear no response.

9             MR. HEATH:  The form of order is unchanged, Your

10   Honor.  If I may approach?

11            THE COURT:  You may.

12       (Pause)

13            THE COURT:  This order has been signed.

14            MR. HEATH:  Thank you.

15            Turning next to item number 11 on the agenda, we

16   have the debtor's motion for authorization to prepare a

17   single list of creditors.

18            Your Honor, a recent local rule revision,

19   specifically Local Rule 2002-1(f)(5), requires debtors in

20   jointly administered cases to maintain a separate creditor

21   matrix for each debtor.

22            It's my understanding that this local rule was

23   added and adopted at the request of the clerk's office,

24   because in certain circumstances one or more of debtors in a

25   jointly administered case may convert their cases to

1   Chapter, 7 if there's only one global creditor list the

2   clerk's office is then burdened with providing notice to all

3   of those creditors in the converted cases and therefore may

4   incur an expense that's unnecessary if some subset of those

5   creditors are only creditors of the converted debtor.

6        Your Honor, given the prepackaged nature of these

7   cases we're requesting relief from that local rule.  We've

8   styled it consistent with our SOFA relief that we'll have a

9   waiver of the local rule requirement to the extent we

10  confirm our cases by a date certain.

11       We have added language to the order at the request

12  of Mr. Schepacarter to make it clear that if any cases

13  convert prior to the expected confirmation date we would

14  need to comply with the requirements of the local rule.

15       So unless Your Honor has any questions I do have a

16  clean and a black line.

17       THE COURT:  I do not have any questions.  Does

18  anyone else wish to be heard in connection with this motion?

19  I hear no response.

20       MR. HEATH:  May I approach?

21       THE COURT:  You may.

22       THE COURT:  Thank you.

23    (Pause)

24       MR. HEATH:  Your Honor, referring to the black

25  line that I've handed you, we've added the language in

1    paragraph 2 at the request of Mr. Schepacarter to make it

2    clear that if a case converts prior to the expected

3    confirmation date that we'll comply with the local rule.

4            THE COURT:  I see that.  The order has been

5    signed.

6            MR. HEATH:  Thank you, Your Honor.

7            I'll turn the podium over to Mr. Haynes.

8            MR. HAYNES:  Good morning, Your Honor, Michael

9    Haynes with Akin Gump Strauss Hauer & Feldman on behalf of

10   the debtors.

11           I'll be handling three motions today.  That's the

12   critical vendor's motion, which is agenda item 8.  The

13   credibility of the witnessal foreign vendor's motion, which

14   is agenda item 9.  And shipper's motion, which is agenda

15   item 10.  For the Court's information none of these orders

16   have been changed from the proposed order.

17           With respect to critical vendors.  As described in

18   Mr. Pitman's affidavit the debtor's operations are highly

19   technical and rely on very specialized equipment.

20           One of the most important components of their

21   business is safety, not just from personal safety, but also

22   environmental, operational.  And with this -- excuse me --

23   in this industry customer safety ratings are very important,

24   therefore there's only a very small pool of creditors -- or

25   of vendors that are able to service the debtors.  For

1    example, helicopter services or large ocean vessels that can

2    lay grids on the ocean floor.

3            The debtors assert that these vendors cannot be

4    replaced if they cease providing services and failure to

5    provide payment on prepetition claims to these entities

6    could result in immediate and irreparable harm to the

7    estate.

8            Therefore the debtors are requesting permission to

9    pay up to $8.7 million capped to critical vendors.

10           THE COURT:  And?

11           MR. HAYNES:  Additionally, Your Honor, landowner

12   is well within this motion subject to a cap of $500,000.

13           As you would see in the motion to perform on-shore

14   services the debtors have to lay a grid on landowner's

15   property, need to pay permitting fees, as well as any damage

16   reimbursements to fences, stock tanks, things like that.

17           Therefore, the debtors request authority to pay up

18   to $500,000 of prepetition claims for landowners.

19           THE COURT:  Thank you.  Does anyone else wish to

20   be heard in connection with the critical vendor motion?  I

21   hear no response.  I do not have any questions.

22           MR. HAYNES:  May I approach, Your Honor?

23           THE COURT:  Yes.  Thank you.

24       (Pause)

25           THE COURT:  That order has been signed.

1          MR. HAYNES:  Thank you, Your Honor.

2          Next on the list is foreign vendors.

3          With the foreign vendors the evidence in

4    Mr. Pitman's affidavit is the same with one additional

5    wrinkle.

6          The foreign vendors in Angola and Bangladesh, in

7    addition to normal circumstances that give rise to critical

8    vendor, there are also certain political and social economic

9    conditions in those countries such that collection measures

10   are not as civil as they are in the United States.

11         THE COURT:  Maybe they're more effective, I don't

12   know.

13      (Laughter)

14         MR. HAYNES:  Perhaps, Your Honor.

15         Based on that the debtors assert that it would be

16   necessary to pay up to $1 million for foreign vendors in

17   these foreign countries to avoid immediate and irreparable

18   harm both to the estate and potentially to employees of the

19   debtors.

20         THE COURT:  Does anyone else wish to be heard in

21   connection with the foreign vendor motion?  I hear no

22   response.  I don't have any questions.

23         MR. HAYNES:  May I approach?

24         THE COURT:  You may.  Thank you.

25      (Pause)

1          THE COURT:  That order has been signed.

2          MR. HAYNES:  Thank you, Your Honor.

3          Finally on the shipper's and warehouse motion,

4    that is agenda item 10, referring to paragraphs 133 through

5    139 of the declaration.

6          As discussed, the debtor's operations are highly

7    equipment intensive and much of that equipment is moved

8    through common carriers or airlines, et cetera, and housed

9    in both foreign and domestic warehouses.

10          Additionally, the equipment is worked on by

11    various mechanics, each of whom would have we believe under

12    state law a right to assert a lien, either an M&M lien or a

13    warehousemen's lien or a shipper's lien, et cetera.

14          And so the debtors are requesting permission to

15    pay up to $750,000 on any of the shippers, warehousemen, or

16    miscellaneous lien claimants who would have the ability to

17    withhold and prevent the debtors from having access to from

18    their equipment.

19          THE COURT:  Does anyone else wish to be heard in

20    connection with this motion?  I hear no response.  I don't

21    have any questions.

22          MR. HAYNES:  May I approach?

23          THE COURT:  You may.

24       (Pause)

25          MR. HAYNES:  That is all I have, and Ms. Schultz

1    will take us through the balance of today's agenda, Your

2    Honor.

3            THE COURT:  All right, thank you.

4            MS. SCHULTZ:  Again for the record, Your Honor,

5    Sarah Schultz, Akin Gump Strauss Hauer & Feldman, proposed

6    counsel for the debtors and debtors in possession.

7            Your Honor, if we might I'd like to go back to

8    agenda item number 6, which is the debtor's request to seek

9    an interim and final order establishing notification and

10   hearing procedures with respect to the transfer of or claims

11   for worthlessness with respect to certain equity security

12   interests.

13           Your Honor, this transfer restriction motion seeks

14   to protect the debtor's approximately $300 million of net

15   operating losses, which translates into a potential tax

16   savings for the debtors of approximately $115 million.

17           As I know Your Honor is aware under applicable

18   internal revenue code provisions the debtors are permitted

19   to carry forward certain net operating losses provided

20   however that there are not certain changes of control.

21           We are seeking by this motion not to necessarily

22   stop parties from making a transfer, but simply seeking to

23   establish a notice procedure process whereby before a party

24   can make a transfer that would cause them under the tax code

25   to trigger negative -- a negative effect on the debtor's net

1    operating losses that we would get notice of it and we would

2    have an opportunity to come before Your Honor and to

3    establish how that transfer would harm the estate.

4              We believe that without these transfer restriction

5    notification -- without this process that the estate could

6    be irreparably harmed and therefore we meet the requirements

7    under Rule 6003.

8              Your Honor, we have not been asked to make any

9    changes with respect to the order, and unless the Court has

10   questions we would respectfully ask that you enter this

11   order.

12             THE COURT:  I don't have any questions, but I'll

13   ask for the record, does anyone wish to be heard in

14   connection with this trading motion?

15             MS. SCHULTZ:  May I approach?

16             THE COURT:  You may.  Thank you.

17        (Pause)

18             THE COURT:  That order has been signed.

19             MS. SCHULTZ:  Thank you, Your Honor.

20             Next I'd like to move to agenda item number 12.

21   This is the debtor's request to establish a bar date.

22             By the bar date motion, Your Honor, the debtors

23   are seeking to establish a general bar date of April 8th,

24   2005 (sic), a governmental bar date of September 13th, and a

25   rejection bar date of the later of either the general bar

1   date, a date provided by the order of this Court authorizing

2   the rejection of any executory contracts or unexpired

3   leases, or if no date is provided 30 calendar days after the

4   entry of an order.

5           Your Honor, in connection with this request the

6   debtors propose to provide personalized service of proof of

7   claim forms through their proposed claims and noticing

8   agent, GCG, to each creditor listed on their schedules of

9   assets and liabilities, which as I know Your Honor is aware

10  we've already filed.

11          The debtors recognize that establishing a bar date

12  in connection with a first day is a little bit unusual;

13  however, in the context of a prepackaged case where each

14  debtor has already filed their schedules, the debtors don't

15  believe that establishing a bar date at this juncture will

16  prejudice the other parties in interest.

17          Further, as a condition to the effective date

18  under our plan we have to establish the amount of all claims

19  against the debtors as less than $85.7 million, therefore in

20  order to do this we have to have a bar date.  We'd like to

21  give parties as much time as possible to file their proofs

22  of claim.  And so we believe establishing the bar date on

23  the first day will allow us to have a full bar date period

24  as opposed to coming before you at second day hearings and

25  asking you to shorten that period of time.

1        Your Honor, for these reasons we would

2    respectfully request that you enter an order granting this

3    motion.

4        THE COURT:  I see that as part of the relief

5    requested you've asked for a shortening of the time for

6    service on creditors with foreign addresses.

7        When is it -- assuming I were to sign this order

8    -- you would expect to send the notice out?

9        MS. SCHULTZ:  GCG is already ready to go, assuming

10   that you're prepared to sign this, and we believe that we

11   can have service starting in two days.

12       THE COURT:  All right.  Does anyone else wish to

13   be heard in connection with the bar date motion?  I hear no

14   response.

15       MS. SCHULTZ:  Okay.  Your Honor, this order

16   remains unchanged.  May I approach?

17       THE COURT:  You may.  Thank you.

18     (Pause)

19       THE COURT:  That order has been signed.

20       MS. SCHULTZ:  Thank you, Your Honor.

21       Next I'd like to move to the motion that

22   Mr. Heath referred to earlier which is agenda item 13, the

23   debtor's motion for an order authorizing but not directing

24   the debtors to redact portions of their schedules and

25   statements and to file portions of their list of creditors

1    and other pleadings and documents under seal to protect

2    confidential commercial information.

3              As Your Honor is aware the debtors have already

4    filed their schedules of assets and liabilities.  Consistent

5    with the relief requested in this motion the filed versions

6    of the debtor's schedules redact the names of the debtor's

7    customers as well as the names of two of the debtor's

8    agents.  These are our agents in Mexico and our agents in

9    Angola.

10             Your Honor, the debtors contend that this

11   information constitutes commercial information as such term

12   is defined in Section 107(b) of the Bankruptcy Code, and

13   confidential research, development, or commercial

14   information as such term is used in Bankruptcy Rule 9018

15   which implements 1007(b).

16             Your Honor, we understand from the United States

17   Trustee that he would like us to put on some additional

18   information with respect to this, and in support of our

19   assertions I would like to proffer the testimony of Mr. Gary

20   L. Pitman.

21             THE COURT:  All right.

22             MS. SCHULTZ:  Your Honor, Mr. Pitman is in the

23   courtroom and if called today he would testify that he is

24   the chief financial officer of Geokinetics, Inc.

25             In that capacity Mr. Pitman is familiar with the

1    debtor's business operations, their contracts to provide

2    services to customers, and the general nature of the oil and

3    gas exploration industry.

4            Oil and gas exploration is an exceptionally

5    competitive industry and the location of where certain

6    companies are conducting exploration operations is highly

7    confidential.  Oil and gas companies protect this

8    information because it's a very capital intensive process.

9            The companies must determine the ownership of the

10   minerals, which is oftentimes severed from the ownership of

11   the surface estates, enter into lease agreements with these

12   parties, conduct seismic operations, and drill exploration

13   wells, among numerous other activities before they can begin

14   to operate and actually draw any cash or capital from a

15   producing well.

16           If the information related to where these

17   companies were operating was not confidential the companies

18   -- other companies can simply wait for their competitor to

19   perform all of the activities already mentioned and then

20   lease the surrounding mineral estates without incurring the

21   risk borne by the company that's performing the initial

22   exploration.

23           The import of the confidentiality of this

24   information is supported by the fact that in many states,

25   including Alaska, California, North Dakota, and Texas,

1    exploration companies are granted a period of time anywhere

2    from six months to five years to delay disclosure of

3    information that might potentially disclose where

4    exploration is occurring.

5            In the ordinary course of the debtor's businesses

6    the debtors have information from their customers that may

7    be revealed by virtue of their contracts that would show

8    where their customers are working.

9            Additionally, the contracts that the debtors enter

10   into with respect to the use of their data with their

11   customers often includes a confidentiality provision whereby

12   the parties agree to keep the license agreement existence

13   and its terms confidential.  This is critical because the

14   disclosure of the license agreement would in turn disclose

15   where these customers are operating.

16           It's essential to the debtor's successful

17   reorganization that the identities of the companies with

18   whom the debtors enter into license agreements remain

19   confidential.  Public disclosure of these customers'

20   identities would harm the debtor's estates in several ways.

21   Most importantly disclosure of the companies' identities

22   will harm their relationship with their customers and

23   preclude the acquisition of new customers because the

24   license agreements were executed with the express

25   understanding that their existence and terms would remain

1   confidential.

2           The debtors also believe that the disclosure of

3   customer identities would place the debtor's competitors at

4   a competitive advantage and allow competitors to undermine

5   the debtor's relationships with their customers by

6   contacting them in an attempt to lure them away.

7           In connection with the redaction of the schedules

8   for the customer-related information the debtors would note

9   that in many instances there are multiple contracts with a

10  single client.  So while it may look like the debtors have

11  redacted ten different contracts, there are ten contracts

12  all with a single customer.

13          In addition the debtors have -- are seeking

14  authority to redact the names of their Mexican agent and

15  their agent in Angola.

16          Again, this is also critical because in the oil

17  and gas industry and particularly in these foreign

18  jurisdictions it's not unusual for one of the debtor's

19  competitors to attempt to utilize their agent with respect

20  to getting licenses to try to lure the debtor's customers

21  away or gain confidential information.

22          Your Honor, that would conclude the proffered

23  testimony of Mr. Pitman.

24          THE COURT:  Does anyone wish to cross-examine

25  Mr. Pitman?  I hear no response.

1           MS. SCHULTZ:  Your Honor, the debtors are

2     cognizant of their obligations with respect to transparency

3     during the Chapter 11 process; however, in this instant case

4     disclosing the names of the customers has the potential to

5     destroy the debtor's ability to procure new customers and to

6     continue as an ongoing business concern.

7           Were that to happen we would go from a consensual

8     prepack as we stand here before you today that provides for

9     the payment in full of the prepetition credit facility,

10    provides for payment in full for our unsecured creditors,

11    provides for payment in full to our employee obligations and

12    a distribution to our senior preferred shareholders or the

13    equitization of the bonds to a Chapter 7 most likely.

14          The likelihood that this would happen we believe

15    is further heightened by the fact that much of the debtor's

16    business is conducted outside the United States where quite

17    frankly it will be substantially more difficult for the

18    debtors to take advantage of the protections that we here in

19    the Bankruptcy Court take for granted.  For example, the

20    automatic stay and our ability to require a customer to

21    continue to do business with us while we're in bankruptcy.

22          When viewed through this lens, Your Honor, the

23    debtors would submit that it's clearly appropriate to

24    protect the names of the debtor's customers and their

25    foreign agents as commercial information under Section

1    107(b) of the Bankruptcy Code.

2              THE COURT:  Let me ask this, and I don't know how

3    likely it is that some party other than the debtor here

4    would file a motion which would need to be noticed, but I

5    assume if that were to happen and the parties whose

6    addresses are redacted would need to receive notice of

7    something that it's anticipated that the claims agent and

8    noticing agent would give that notice.

9              MS. SCHULTZ:  That's correct, Your Honor.

10             THE COURT:  All right.  Does anyone else wish to

11   be heard in connection with this motion?  I hear no

12   response.

13             MS. SCHULTZ:  Thank you, Your Honor.  May I

14   approach with the order?

15             THE COURT:  You may.  Thank you.

16        (Pause)

17             THE COURT:  That order has been signed.

18             MS. SCHULTZ:  Thank you, Your Honor.

19             Next we'd like to move to agenda item number 14,

20   which is the debtor's motion for authority to continue use

21   of the existing cash collateral -- or cash management system

22   as modified.

23             Your Honor, the debtors utilize a complex central

24   cash management system to collect, transfer, and distribute

25   cash generated and utilized by their business operations.

1    It facilitates the cash monitoring, forecasting, reporting

2    on behalf of the debtor, and enables them to maintain

3    control over the administration of their approximately 70

4    bank accounts located at banks and other financial

5    institutions.

6            We provided a list of the bank accounts, I'm not

7    going to go through them unless Your Honor has specific

8    questions, but in general the debtor's accounts consist of a

9    centralized operating account that's used to fund virtually

10   all of the foreign and domestic operations.

11           And the one thing that I would note with respect

12   to that centralized account, Your Honor, I know we keep

13   coming back to Angola and Bangladesh and how they're kind of

14   special because collection measures are a little bit

15   different there.

16           One of the things that the debtors have

17   implemented in order the protect the cash that's generated

18   by their branches that operate in Angola and Bangladesh --

19   and I say branches because these are not separate legal

20   subsidiaries, these are branches of a U.S. debtor entity --

21   is that the cash that's generated by those contracts is paid

22   directly into the debtor's central cash management account

23   in the United States, and then as these two branches require

24   cash for operations, either the debtors pay it directly on

25   their behalf or they pay it into one of the Angola and/or

1    Bangladesh local accounts and then it's distributed outward.

2    And the reason we do that is quite simply because

3    repatriation of cash from those countries is difficult at

4    best and the debtor is trying to avoid having cash get stuck

5    there.

6            Your Honor, at the request of the U.S. Trustee

7    with respect to those two accounts we're going to propose

8    putting a cap in our -- in our order granting the continued

9    use of our cash management system such that no more than

10   $1.2 million would go to Angola and Bangladesh on a monthly

11   basis during the course of the case.

12           Your Honor, in addition to the operating account

13   we've got sort of the regular payroll type accounts,

14   collateral accounts with our various lenders.  We also

15   maintain crew accounts for each of our crews.  These

16   accounts are used for funding the needs for the crews while

17   they're in the service, including per diem and other general

18   expenses.

19           Your Honor, there's a final type of account that

20   I'd like to highlight for our multi-client accounts, and I

21   highlight that only because part of our joint venture

22   agreement with a number of entities the debtor has

23   maintained multi-client accounts.  These accounts are really

24   trust accounts where cash is advanced from our partner and

25   then as we perform services the debtor gets a right to

1    withdraw that cash as you would in a typical joint venture

2    account in a regular oil and gas arrangement.

3              So I highlight that only to note that while these

4    accounts -- while the debtor's name is on these accounts and

5    they're included these are really accounts that are trust

6    accounts and that money is not earned by the debtor until

7    its performed certain services under these joint venture

8    agreements.

9              Your Honor, in addition the U.S. Trustee had made

10   a note that in the September 30th, 2012 10-Q the debtors had

11   noted that there was a material weakness with respect to

12   certain of its financial reporting that asked us to disclose

13   on the record and make a representation that we do not

14   anticipate or have any reason to believe that we'll be

15   required to restate their financial statements as a result

16   thereof.

17             Your Honor, with that the debtors believe that

18   entry of this order is in the ordinary course and consistent

19   with the relief that we would typically see in this

20   jurisdiction, and would respectfully ask that you enter an

21   order approving our motion to continue our cash management

22   system.

23             THE COURT:  Does anyone else wish to be heard in

24   connection with the cash management motion?  I hear no

25   response.  I don't have any questions.

1              MS. SCHULTZ:  Okay.

2         (Pause)

3              MS. SCHULTZ:  Your Honor, there are just a couple

4    of changes.

5              As I noted in paragraph 3 of the black line you

6    can see that we've added the clause to limit the amount of

7    cash on a monthly basis that would be transferred to Angola

8    and to Bangladesh.

9              And then you can see on page 3 at the end of

10   paragraph 4 and paragraph 5 we've added some language that I

11   believe is fairly typical in this jurisdiction to provide

12   that we'll maintain accurate and detailed records of all

13   intercompany transfers.

14             THE COURT:  All right, thank you, I see that.

15   That order has been signed.

16             MS. SCHULTZ:  Thank you, Your Honor.

17             Your Honor, the next motion, and I'm pleased to

18   tell you is an uncontested motion after a late night last

19   night, is the debtor's motion for interim and final post-

20   petition financing for authority to use cash collateral.

21             Your Honor, as set forth in the motion the debtors

22   are seeking approval to borrow up to $25 million on a

23   secured basis with up to $15 million of it being made

24   available in connection with the interim order.

25             The proposed DIP facility is secured by a lien on

1    substantially all of the debtor's assets.  This is the same

2    pool of collateral that secures the $50 million revolving

3    credit facility and the $300 million worth of notes.

4         This lien is being sort of slid in between those

5    two, if you will, so that it will be junior to the credit

6    facility and senior to the notes.

7         Your Honor, as I noted in my opening statement any

8    accredited investor who holds $100 million -- I'm sorry --

9    $1 million worth of notes as of the petition date had the

10   opportunity to participate in the proposed loan, they simply

11   need to contact the DIP agent within five days of entry of

12   this order.  That information with respect to who they need

13   to contact, who they need to reach out was in our original

14   disclosure state, which was received by all the noteholders,

15   so we believe that they've all had adequate time to process

16   their opportunity and to reach out, and in fact several have

17   reached out and do intend to participate.

18        Your Honor, to insure sufficient capital for the

19   debtors during the course of the case the debtor's largest

20   noteholders have agreed to backstop this DIP facility.  So

21   even if there is a hiccup and for some reason someone who

22   wants to participate doesn't make good on their payment

23   obligation upon a funding request the cash will be available

24   for the debtors.

25        The proposed DIP bears an interest rate of nine

1    and two quarters percent -- or nine and a quarter percent,

2    which we believe is fairly market.

3              As set forth in the affidavit of Mr. Pitman the

4    debtors were unable to procure financing on an unsecured

5    basis, nor were they able to secure financing on a junior

6    basis.  They went out to the market, they spoke to a large

7    number of parties, and in fact began the process of

8    negotiating DIP term sheets with several parties.

9              After they had completed those negotiations and

10   they began to review the various term sheets they concluded

11   that the DIP that is before you today presented the most

12   favorable borrowing terms available to the debtor when taken

13   as a whole.

14             Importantly, while the other financing required

15   repayment in cash this financing will be repaid if our plan

16   is confirmed with equity in the reorganized company which

17   will provide for a stronger company as we exit Chapter 11.

18             And also importantly this was the only financing

19   that provided for consensual priming of the liens that

20   secure the senior notes.

21             Your Honor, it would have a detrimental impact on

22   the debtor's business if they were unable to access both the

23   cash collateral as proposed in the motion as well as the DIP

24   facility as the debtors would be unable to meet their

25   obligations to employees, vendors, customers, which would

1    cause a rapid decline in the debtor's business.

2           In connection with the negotiation of the order,

3    Your Honor, it became apparent that the debtor's prepetition

4    credit agent would like to make a reservation of rights with

5    respect to their ability to assert certain claims.

6           As you may or may not have noted in the order we

7    have provided -- the debtors have stipulated to the amount

8    of the claim of both the noteholders and the credit -- the

9    revolving credit lenders as of the petition date.  And I

10   believe that Mr. Stark wanted to make a reservation with

11   respect to --

12           MR. STARK:  Good afternoon, Your Honor, Robert

13   Stark from Brown Rudnick on behalf of White Box Advisor, the

14   agent for the prepetition revolving facility.

15           I was intending actually to do this in connection

16   with the plan procedures, but I can do it now if it pleases

17   the Court.

18           We had a disagreement with the debtor and the

19   other parties, the backstop parties, in connection with the

20   funding of the plan about the calculation of our claim.

21   There's attributes of our claim that we think is -- enables

22   a larger claim amount of repayment right and is otherwise

23   reserved under the specific terms of the plan.

24           It's not really an issue so to speak for the

25   financing, it's an issue to be dealt with at plan time or

1    before.  And as I was chatting with Ms. Schultz and others

2    before the hearing I think we'll be able to come up with a

3    procedure specific to Your Honor's preferences for us to

4    have that issue resolved.  It's not an evidentiary issue,

5    it's a legal issue, and we'll present it to Your Honor

6    expeditiously before or at confirmation and deal with it

7    then.

8              But I think once Your Honor hears the argument

9    you'll determine what we do if the plan provides for a

10   determination of that and the issue will be resolved, but

11   not necessarily in connection with financing.

12             THE COURT:  All right, thank you.

13             Mr. Stark, you've been here so much lately should

14   we just give you your own chair somewhere?

15             MR. STARK:  Your Honor, it's an honor that you

16   keep signing pro hacs.  Thank you.

17        (Laughter)

18             MS. SCHULTZ:  Your Honor, with that the debtors

19   would respectfully request that you enter an order approving

20   their use of cash collateral in their DIP on an interim

21   basis.

22             THE COURT:  The financing documents were

23   extensive, and I pawed my way through them, but I was unable

24   to locate the fee letter for the DIP facility.

25             MS. SCHULTZ:  Counsel to the -- counsel to the DIP

1    agent is here in the courtroom and I'll let him address

2    that.

3              THE COURT:  All right.

4              MR. TALMADGE:  Your Honor, Scott Talmadge from

5    Kaye Scholer.  I have local counsel with me today, Etta

6    Mayers from Potter Anderson & Caroom to move for my

7    admission pro hac vice.  If Your Honor wants to do that in

8    advance of my speaking or not.

9              THE COURT:  Go ahead, proceed.

10             MR. TALMADGE:  Thank you, Your Honor.

11             Your Honor, not surprisingly our fees that the

12   client charges are we view them as confidential information.

13   We can make the fee letter available to Your Honor as well

14   as to the U.S. Trustee, and if Your Honor wants it to be

15   part of the record in the case the debtor can make a motion

16   to file it under seal, but we certainly can make that

17   available to you and the U.S. Trustee if Your Honor so

18   desires.

19             THE COURT:  Well, I won't require it, and

20   sometimes that process is undertaken, but I have this way of

21   doing things that I don't approve things I don't see.

22             MR. TALMADGE:  I understand, Your Honor.

23             THE COURT:  So if you have a copy I'd like to take

24   a look at it now.

25             MR. TALMADGE:  Certainly, Your Honor.

1          THE COURT:  Before I sign any order.

2          MR. SCHEPACARTER:  Good afternoon, Your Honor,

3   Richard Schepacarter for the United States Trustee.

4          I was unaware that they were seeking to even put

5   this under seal or not disclose it, as I also had to look at

6   the documents sort of on relatively short notice.

7          I would object to it being sealed and I would

8   object to it being held confidential.  At the very least

9   we've been able to resolve these issues by the fee letter

10  that the total amount of fees being disclosed basically in

11  open court so that the mechanics of it and how they got to

12  the making of the sausage, so to speak, is not disclosed,

13  but to the extent that the final product, the total amount

14  of fee that is are charged is disclosed.

15         THE COURT:  Well, if I understand the submissions

16  correctly this is the only fee that's being charged in

17  connection with this financing, so that process might not be

18  appropriate for this situation.

19         But here's what I'll do.  Let's -- I just would

20  like to read it so I know what I'm being asked to approve,

21  and if the U.S. Trustee wishes further steps I'll leave it

22  to you to try to work out with the lender between now and

23  the final hearing.  How's that?

24         MR. SCHEPACARTER:  That's fine, Your Honor.

25         THE COURT:  Okay.

1           MR. TALMADGE:  Your Honor, I only have one copy

2   with me today, so unless someone else in the courtroom --

3           THE COURT:  Show it to the U.S. Trustee first if

4   you would.

5           MR. TALMADGE:  Sure.  Thank you.

6       (Pause)

7           MR. TALMADGE:  May I approach, Your Honor?

8           THE COURT:  You may.  Let me just take a quick

9   look.  Thank you.

10      (Pause)

11          THE COURT:  All right.  Would you like it back

12  again?

13          MR. TALMADGE:  If Your Honor wants just take it.

14          THE COURT:  I don't need to keep it, I've read it,

15  and I thank you.

16          MR. TALMADGE:  Thank you.

17          THE COURT:  Okay.  Does the debtor has anything

18  further in support of the financing motion?

19          MS. SCHULTZ:  No, Your Honor.

20          THE COURT:  Does anyone else wish to be heard in

21  connection with this motion?  I hear no response.

22          MS. SCHULTZ:  Your Honor, may I approach, we do

23  have a black line for this one?

24          THE COURT:  Yes.

25      (Pause)

1          MS. SCHULTZ:  Okay.  Your Honor, as you can see on

2     page 3 in the first (i) in the hole of the redline, and

3     we've tabbed your copy for you, we added some language to

4     specify that the liens and claims will have the priority set

5     forth therein.

6          Your Honor, on page 6 of the black line in

7     Section C we added some additional language to clarify

8     changing the word "including" to "which term shall include."

9          On page 8 we added today's hearing date in the

10    second full paragraph.

11         Your Honor, on page 11, (iii) in the hole, we

12    removed the brackets from the claim amounts that I

13    referenced previously and we fixed the amount of the

14    existing credit agreement debt so that it was consistent

15    with that which was recorded by the other agent.

16         Your Honor, on page 12 at the top we included the

17    indenture trustee and the senior noteholders in the

18    reservation of rights.

19         Your Honor, on page 16 on the carryover paragraph

20    we corrected -- there had been a defined term that had been

21    misused there and it should be lower case debtor in

22    possession financing.

23         Your Honor, on page 24 we corrected the reference

24    there from the existing credit agreement lenders to the

25    collateral trustee.

1           On page 28 we just clarified the language there

2    that this would terminate upon a termination of the DIP

3    facility our right to use cash collateral would terminate.

4           Your Honor, on page 32 at the top we clarified

5    that this was the priming of the existing lien securing the

6    senior note debt.

7           Your Honor, on page 36 -- and this is the first

8    substantive comment -- the first inclusion of the counsel

9    for the existing lend -- credit agreement lenders is

10   obviously not (indiscernible - 1:57:16) substantive because

11   we were going to pay their fees no matter what as part of

12   their adequate protection, but we also added a reporting

13   obligation.  So the debtors are going to continue to provide

14   the prepetition agent with the reports that they were

15   entitled to receive under their prepetition facility.

16          In addition, Your Honor, on the next page you'll

17   see in Section E we've added a waiver of claims.  This

18   waiver mirrors the waiver that's also being provided to the

19   noteholders with respect to any claims that the debtors may

20   have arising out of the existing credit facility.

21          Your Honor, on page 43 at the request of the U.S.

22   Trustee we've expanded the language that deals with

23   challenge rights.  Previously it just said creditors'

24   committee, they asked us to include any official equity

25   committee as well.  So we've added that.  And then you'll

1    see the carry forward into the next paragraph changing it to

2    statutory committees.

3                THE COURT:  Let me ask you to pause for a

4    moment --

5                MS. SCHULTZ:  Uh-huh.

6                THE COURT:  -- and allow me to ask the U.S.

7    Trustee, does the U.S. Trustee intend to invite the

8    formation of the committee in this case?

9                MR. SCHEPACARTER:  Your Honor, what we've done is

10   in this case, because it's a prepackaged case, we have just

11   sent out -- hopefully sent out -- sent out solicitation

12   notices -- letters to the top 20 creditors who are listed

13   asking them for a response within 10 days of today.  Once we

14   get a response then we'll act accordingly at that point.

15   But we're not actually holding -- excuse me -- not actually

16   holding a formation meeting at this time.

17               THE COURT:  Thank you.

18               MR. SCHEPACARTER:  Thank you.

19               MS. SCHULTZ:  Okay.  Your Honor, on page 45, this

20   is new paragraph 20, we've added a DIP lender reporting

21   obligation which simply provide that any party who is a DIP

22   lender has the right upon request to receive any of the

23   reports that we tender to the DIP agent from the DIP agent.

24   This is to insure that they're able to get access to those,

25   subject of course to the execution of an appropriate

1    confidentiality agreement.

2            On page 46 -- and this is sort of an important

3    change, we made it at the last minute and you'll see why

4    it's important in a minute -- but certain of the noteholders

5    may hold -- may have held on the petition date $1 million

6    between various affiliated funds, and we wanted to make sure

7    that to the extent that you had a noteholder that had

8    100,000 in one fund, 900,000 in another but they are

9    affiliated entities, would still have the opportunity to

10   participate in the DIP.

11           So what we've provided here is that if a

12   noteholder together with its affiliated held $1 million of

13   notes of the petition date then they would be entitled to

14   participate in the DIP.

15           Importantly, however, Your Honor, we have 1100

16   noteholders with 70 plus percent held of our notes held by

17   two.  You can do the math.  We have a whole bunch of little

18   noteholders out there.

19           And so in order to control for that and to avoid

20   having an administrative nightmare frankly for our DIP agent

21   what we've provided in new footnote 3 is that to the extent

22   that these noteholders want to participate in that manner

23   they need to designate one noteholder to be their eligible

24   DIP lender and they can participate out from that -- from

25   that lender.

1           And the reason I say that's important is this

2     change flows through to the exhibit to the credit facility,

3     and we can turn that relatively quickly, but this was a

4     change that was agreed to very late last night and so we

5     haven't had a chance to push it through into the credit

6     facility yet.

7           Also you'll see on that page that we have

8     indicated the date by which these parties must advise the

9     noteholder that they want to participate.  Five days from

10    today actually put us on a Sunday, and so to avoid that we

11    pushed it forward to Monday the 18th, and then just deleted

12    the parenthetical language because we felt like it would be

13    a little bit confusing.

14           THE COURT:  All right.  Let me ask this, is there

15    any potential for disagreement over who's an affiliate?

16           MS. SCHULTZ:  I don't think so, Your Honor.

17           Okay.  On page 47 with respect to the collateral

18    rights, Your Honor, we have expanded to include the

19    prepetition and post-petition liens of the collateral agent

20    in favor of the existing credit lenders and the senior

21    noteholders in the collateral right section.

22           And you can also see that we've modified on the

23    carryover of that paragraph to provide that if something

24    happens the proceeds go to the debtor to be held in trust

25    until further order of this Court or distribution under this

1   interim order.  We think that that's -- because of the

2   unique way in which this financing is being slid between

3   these two securities that that's probably the fairest and

4   best way to do it.  So if there is a reason to make a

5   distribution it's either going to happen pursuant to this

6   order or another order by Your Honor.

7              On page 49, Your Honor, we've added some

8   additional clarifying language with respect to a

9   subordination of the DIP liens.

10             THE COURT:  Is there a typographical error in the

11  language in the bottom of the paragraph that's been added?

12  Should that say 25A?

13             MS. SCHULTZ:  Yes, Your Honor, it should.

14             THE COURT:  Okay.

15             MS. SCHULTZ:  And I think it should say paragraph.

16             THE COURT:  All right.

17             MS. SCHULTZ:  Thank you, Your Honor.

18             THE COURT:  Shall I mark that in the original?

19             MS. SCHULTZ:  Yeah.

20             THE COURT:  Okay.  Is paragraph capitalized or

21  not?

22             MS. SCHULTZ:  Yes, I believe it is.  Apologies,

23  Your Honor, we were moving fairly quickly to try to get to

24  an --

25             THE COURT:  It's okay.

1           MS. SCHULTZ:  -- uncontested hearing.

2           Okay.  Then on page 52, Your Honor, we've added

3    the date for the final hearing of April 3rd at 2 p.m., which

4    is the date that we were provided by your chambers.

5           THE COURT:  That's correct.

6           MS. SCHULTZ:  And then on page 54, paragraph 35

7    we've added the contact information for the Office of the

8    United States Trustee.

9           THE COURT:  All right.  Does the debtor have

10   anything further in support of the financing?

11          MS. SCHULTZ:  Oh, Your Honor, they're pointing out

12   to me -- thank you -- that on page 53 we've got a paragraph

13   numbering bust as well.

14          In paragraph 32 it should be paragraph -- it

15   should reference paragraph 32 as opposed to paragraph 31 in

16   the waiver paragraph.

17          THE COURT:  Well, I'm looking at the clean copy in

18   paragraph 32 and it refers only to paragraph 32.

19          MS. SCHULTZ:  Okay.  I'm being advised that it had

20   been corrected in the clean.

21          THE COURT:  Okay.

22          MS. SCHULTZ:  So we don't have a numbering bust.

23          Your Honor, that would conclude the debtor's

24   evidence in support of the entry of the order with respect

25   to the use of cash collateral and the DIP.

1          THE COURT:  All right, thank you.  Does anyone

2     else wish to be heard in connection with financing or wish

3     to review the most recently revised proposed order who

4     hasn't yet had the opportunity to do that?  I hear no

5     response.

6          Based upon the record that's been made I'm

7     prepared to grant the relief that's been requested.

8          MS. SCHULTZ:  But, Your Honor, the only question I

9     would have, we're happy to move forward with the form of the

10    documents that are attached, but we do have to make --

11    there's two small changes to reflect the April 3rd date and

12    to reflect the affiliating language in that agreement before

13    execution.

14         We can do that this afternoon and send you over a

15    new copy for signature or we can move forward with the form

16    that we've provided you.

17         THE COURT:  Is there a provision that -- in the

18    financing agreement and in the order for making of non-

19    material changes without further Court order?

20         MS. SCHULTZ:  Yes, there is, Your Honor.

21         THE COURT:  I'm content to have the changes made

22    on that -- under that basis.

23         MS. SCHULTZ:  Okay.  Thank you, Your Honor.

24         THE COURT:  All right.  And with that I've signed

25    the order.

1          MS. SCHULTZ:  Thank you, Your Honor.

2          Next on the agenda is agenda item number 16.  This

3    is the debtor's application for entry of an order appointing

4    GCG as claims and noticing agent pursuant to 28 U.S.C. 156,

5    Bankruptcy Code Section 105(a) and Local Bankruptcy Rule

6    2002.

7          Your Honor, we've submitted in support of the

8    retention of GCG as our claims and noticing agent the

9    declaration of Ms. Angela Ferante (ph), the vice president

10   of GCG.

11         This application pertains only to the work that is

12   to be delegated to the clerk of court under 28 U.S.C.

13   156(c).  It does not pertain to the balance of the work that

14   you'd normally hear on a second day hearing.  We've

15   segregated their application and we'll ask you to consider

16   that work at the April 3rd hearing.

17         Your Honor, we believe that the application

18   complies with the protocol for employment of the claims and

19   noticing agent.  We've solicited and reviewed a total of

20   four proposals.  GCG's rates were competitive and consistent

21   with all the other proposals.  GCG was selected to -- also

22   selected to solicit the prepackaged plan, which includes

23   publicly traded securities.  Because they were also selected

24   to do this we believe that economies of scale make it

25   significantly beneficial to the debtor's estates to utilize

1    GCG in this capacity.

2           We're proposing that they would be paid monthly

3    upon submission of invoices to the debtors, the United

4    States Trustee, and the consenting noteholders.

5           Your Honor, with respect to administrative and

6    claims control they're proposing to charge between 45 and

7    $50 an hour, and their highest level of (indiscernible -

8    2:07:37) with respect to this work is $295 an hour.

9           The proposed order contains the United Artist

10   indemnity limitations, which are consistent with this

11   jurisdiction, and they also provide that GCG will continue

12   serving even if not paid, provided however that they may

13   seek expedited relief from this Court to seek providing

14   services in the event of non-payment.

15          THE COURT:  Does anyone else wish to be heard in

16   connection with this application?  I hear no response.  I

17   don't have the any questions.

18          MS. SCHULTZ:  May I approach, Your Honor?

19          THE COURT:  You may.  Thank you.

20      (Pause)

21          THE COURT:  Okay.  I need an order with only --

22   with type on only one side.

23          MS. SCHULTZ:  Oh.

24          THE COURT:  Do you have that?

25      (Pause)

1          MS. SCHULTZ:  Here it is.

2          THE COURT:  It's all right.  Thank you.

3          MS. SCHULTZ:  I have a lot of paper today.

4          THE COURT:  That order has been signed.

5          MS. SCHULTZ:  Your Honor, the last item on the

6    agenda is agenda item number 17.

7          Your Honor, this is the debtor's request for entry

8    of an order scheduling a combined hearing to approve the

9    adequacy of the disclosure statement and confirmation of the

10   plan and the adequacy of our prepetition solicitation

11   procedures, setting deadlines related to these procedures

12   for objecting to the adequacy of the disclosure statement,

13   confirmation of the plan, and the prepetition solicitation

14   procedures, approving the form and notice and manner of the

15   combined hearing and the commencement of the cases, and

16   directing the office of the U.S. Trustee not to convene a

17   meeting of creditors and equity holders.

18         Your Honor, as previously noted on February 10th

19   of 2013 the debtors commenced solicitation of the

20   prepackaged plan of reorganization.  We established

21   March 8th as the deadline by which completed ballots had to

22   be received.

23         The solicitation packages were distributed to

24   holders of claims and senior equity interest holders under

25   the plan.  We didn't solicit votes from the credit agent.

1    We also did not solicit votes from our unsecured creditors

2    because they're going to be satisfied in full under the

3    plan.  And we did not solicit votes from those parties who

4    will receive no distribution under the plan.

5            The voting classes overwhelming accepted the plan.

6    As I noted previously Class IV accepted the plan with more

7    than 95 percent an amount and 84 percent in number voting to

8    accept the plan and with Class VII unanimously voting to

9    support the plan.

10           In light of this and other -- in light of the

11   overwhelming support the debtors believe that a streamline

12   confirmation process is appropriate in this case and we are

13   requesting that this Court set a confirmation hearing for

14   April 25th in connection with this case.

15           We're requesting that the deadline for parties to

16   object to the plan and the disclosure statement be set at

17   April 12th.

18           We're proposing that we will provide notice to the

19   parties both direct notice -- it'll be a combined notice

20   that will notify them of all of the dates related to

21   objecting to the disclosure statement as well as to

22   confirmation, as well as notifying them of commencement of

23   this case.

24           We believe that it's appropriate to do that all in

25   one notice, that way they get everything, they'll read it

1   hopefully.  As a -- I know, hopefully.  As opposed to

2   sending them multiple things from the Bankruptcy Court that

3   we think will just start to confuse everybody.

4          We also propose that we will do a publication

5   notification of both the commencement of the case as well as

6   publication notification of the related confirmation dates.

7          THE COURT:  Where do you intend publish these

8   notices?

9          MS. SCHULTZ:  In the Houston Chronicle and in the

10  New York Times, Your Honor.

11         Your Honor, we're not seeking that you approve,

12  you know, the procedures that we use with respect to the

13  disclosure statement, obviously today just to set those

14  dates that we have proposed.

15         Your Honor, with that the debtors would request

16  that you enter an order scheduling our combined hearing and

17  approving the affiliated dates in the notice.

18         THE COURT:  All right.  Does anyone else wish to

19  be heard in connection with this motion?  I hear no

20  response.  I don't have any questions.

21         April 25th at 10 o'clock.

22         MS. SCHULTZ:  Okay.  May I approach, Your Honor?

23         THE COURT:  Yes.

24         MS. SCHULTZ:  So, Your Honor, we just had a few

25  things that we filled in in this.  We filled in the proposed

1    hearing date, we've also filled in Your Honor's name on

2    page 3.

3              On page 4, Your Honor, we just had a slip that we

4    included the GCG language in this order.  It was an old

5    form.  And so we've gone ahead and deleted that because we

6    obviously have a separate order.

7              And then, Your Honor, the Office of the United

8    States Trustee asked us to shorten the period of time for

9    which we're seeking a waiver for the 341 meeting from 90

10   days to 60 days, which the debtors were happy to do.

11             THE COURT:  All right.  That order has been

12   signed.

13             MS. SCHULTZ:  Thank you, Your Honor.

14             That concludes everything that we had on our

15   agenda today unless the Court or another party has something

16   that they wish to address.

17             THE COURT:  Only one thing.  Sometimes in prepacks

18   no claims bar date notice -- or claims bar date is sought by

19   the debtor.  Here the government bar date of course extends

20   to September I think it is.

21             MS. SCHULTZ:  Uh-huh.

22             THE COURT:  What -- what activity, if any, do you

23   anticipate, assuming without deciding of course that the

24   debtor is able to proceed along the path that its set for

25   itself here, would you anticipate occurring post-

1    confirmation in court?

2           MS. SCHULTZ:  I think that, you know, we might

3    have some claim objections that would occur, and then

4    obviously in any clean up that we would have to do post-

5    confirmation with respect to claims to the extent that we

6    disagree with them that are filed by the government.

7           But, Your Honor, the debtors are -- they're

8    current on their taxes and so we don't really anticipate

9    that being a significant problem.

10          THE COURT:  And how much time, assuming all -- if

11   all goes as the debtor and its allies would like -- will

12   there be between the date of confirmation and effective

13   date?

14          MS. SCHULTZ:  I think we're thinking about 14

15   days.

16          THE COURT:  Okay.  And does the plan provide that

17   post effective date professional fees would not come before

18   the Court?

19          MS. SCHULTZ:  Post effective date it provides that

20   professional fees would not come before the Court.

21          THE COURT:  Okay.

22          MS. SCHULTZ:  To be honest with you I'd have to

23   look and see what it provides between the confirmation date

24   and the effective date.

25          THE COURT:  Okay.  I ask that because in cases of

1    any size I would normally appoint a fee auditor.

2              MS. SCHULTZ:  Uh-huh.

3              THE COURT:  But in prepacks if we're just one and

4    done I won't do that.  But because there was this extended

5    period of time during which post-confirmation activity might

6    occur I thought I'd ask the question.  But let me know at

7    the final hearing.  If we're one and done that's fine,

8    otherwise I may consider appointment of a fee auditor.

9              MS. SCHULTZ:  Okay.

10             THE COURT:  Okay?  Is there anything further for

11   today?

12             MS. SCHULTZ:  Not from the debtors, Your Honor.

13             THE COURT:  All right.  Just so that everyone has

14   that comfort these orders will be docketed today.

15             Thank you all very much.  That concludes this

16   hearing.  Court will stand adjourned.

17             MS. SCHULTZ:  Thank you, Your Honor.

18        (Whereupon these proceedings were concluded at 2:15 PM)

19

20

21

22

23

24

25

Page 65

1                    E X H I B I T S

2    PARTY      NO    DESCRIPTION           ID.        EVID.

3    Debtor           Declaration of

4                     Mr. Pitman            --          16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 66

**I N D E X**

**RULINGS**

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Debtor's Motion for Joint Administration of Their Cases for Procedural Purposes Only | 15 | 4 |
| Debtor's Employee Wages and Benefits Motion | 17 | 6 |
| Debtor's Motion for an Interim Order Determining Adequate Assurance of Payment for Future Utility Services | 18 | 3 |
| Debtor's Motion for Authorization to Pay Certain Taxes | 19 | 10 |
| Debtor's Motion to Continue Insurance Coverage and Maintain Funding for the Insurance Broker | 21 | 10 |
| Debtor's Request to Seek an Interim and Final Order Establishing Notification and Hearing Procedures with Respect to the Transfer of or Claims for Worthlessness with Respect to Certain Equity Security Interests | 29 | 18 |

Page 67

1

2    Debtor's Motion for entry of an Order

3    Extending Time to File Statements of

4    Financial Affairs                              22        13

5

6    Critical Vendor's Motion                       25        25

7

8    Critical Foreign Vendor's Motion               27         1

9

10   Shipper's and Warehouse Motion                 28        23

11

12   Debtor's Motion for Authorization to Prepare

13   a single List of Creditors                     24         4

14

15   Debtor's Request to Establish a Bar Date       31        19

16

17   Debtor's Motion for an Order Authorizing but

18   not Directing the Debtors to Redact Portions

19   of Their Schedules and Statements and to File

20   Portions of Their List of Creditors and Other

21   Pleadings and Document Under Seal to Protect

22   Confidential Commercial Information            37        17

23

24

25   Debtor's Motion for Authority to Continue Use

Page 68

1   of the Existing Cash Management System as

2   Modified                                    41        15

3

4   Debtor's Motion for Interim and Final

5   Post-Petition Financing for Authority to Use

6   Cash Collateral                             56        24

7

8   Debtor's Application for Entry of an Order

9   Appointing GSG as Claims and Noticing Agent

10  Pursuant to 28 U.S.C. 156, Bankruptcy Code

11  § 105(a), and Local Bankruptcy Rule 2002    59         4

12

13  Debtor's Request for Entry or an Order

14  Scheduling a Combined Hearing to Approve the

15  Adequacy of the Disclosure Statement and

16  Confirmation of the Plan and the Adequacy of

17  our Prepetition Solicitation Procedures,

18  Setting Deadlines Related to these Procedures

19  for Objecting to the Adequacy of the

20  Disclosure Statement, Confirmation of the

21  Plan, and the Prepetition Solicitation

22  Procedures, Approving the Form and Notice

23  and Manner of the Combined Hearing, and the

24  Commencement of the Cases and Directing the

25  Office of the U.S. Trustee Not to Convene

Page 69

1     a Meeting of Creditors and Equity Holders     62        11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3   I, Dawn South, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8

9   AAERT Certified Electronic Transcriber CET**D-408

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  March 13, 2013

18

19

20

21

22

23

24

25