**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al., [1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF THE DEBTORS TO EMPLOY AND RETAIN HURON CONSULTING
SERVICES LLC TO: (I) PROVIDE A CHIEF RESTRUCTURING OFFICER AND
ADDITIONAL PERSONNEL FOR THE DEBTORS PURSUANT TO 11 U.S.C. § 363(B),
*NUNC PRO TUNC* TO JANUARY 17, 2013; AND
(II) PROVIDE FINANCIAL ADVISORY SERVICES TO THE DEBTORS PURSUANT
TO 11 U.S.C. § 327(A), *NUNC PRO TUNC* TO THE PERIOD BETWEEN
DECEMBER 17, 2013 AND JANUARY 16, 2013**

The above-captioned debtors (collectively, the "Debtors"), hereby move the Court

for the entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the United States

Code (the "Bankruptcy Code") (a) authorizing the Debtors to retain Huron Consulting Services

LLC (including its agents and independent contractors, "Huron"), pursuant to the terms and

conditions of that certain letter agreement between Huron and the Debtors dated January 17,

2013 (the "Engagement Letter"),[2] as further modified herein, to (i) provide John C. DiDonato

("Mr. DiDonato") as Chief Restructuring Officer ("CRO") of the Debtors, (ii) provide Laura

Marcero ("Ms. Marcero") as Deputy Chief Restructuring Officer ("DCRO"), (iii) provide John

Owens ("Mr. Owens") as Executive Vice President ("EVP") and (iv) provide additional

personnel (the "Additional Personnel")[3] to provide restructuring support to the Debtors, in each

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] A copy of the Engagement Letter is attached hereto as Exhibit A.

[3] Huron reserves the right to modify its staffing throughout the course of these chapter 11 cases, subject to the terms of the Engagement Letter and any order approving this Application.

instance <u>nunc</u> <u>pro</u> <u>tunc</u> as of January 17, 2013; (b) authorizing the employment and retention of

Huron as financial advisor to the Debtors, <u>nunc</u> <u>pro</u> <u>tunc</u> to the period between December 17,

2012 and January 16, 2013; and (c) granting certain related relief. In support of this Motion, the

Debtors rely upon the declaration of Mr. DiDonato, a Managing Director of Huron

(the "<u>DiDonato Declaration</u>") attached hereto as <u>Exhibit B</u> and incorporated herein by reference,

and respectfully represent as follows:

### Jurisdiction

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this

matter is proper in this district pursuant to 28 U.S.C. § 1409.

2.      The statutory predicates for the relief requested herein are §§ 105(a),

327(a), 330, 331 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and

Rules 2014, 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

### Background

3.      On December 3, 2012, Debtors Revstone Industries, LLC and Spara, LLC

commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy

Code. On January 7, 2013, Debtors Greenwood Forgings, LLC and US Tool and Engineering,

LLC commenced their cases by filing voluntary petitions for relief under chapter 11 of the

Bankruptcy Code. The Debtors have continued in the possession of their property and have

continued to operate and manage their business as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

4.      On December 18, 2012 the United States Trustee appointed an Official

Committee of Unsecured Creditors (the "Committee") in the cases of Revstone Industries, LLC

2

and Spara, LLC. No committee has been appointed in the cases of Greenwood Forgings, LLC and US Tool and Engineering, LLC. No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

5.      The Debtors and their affiliates (collectively referred to herein as the "Company") are premier designers and manufacturers of highly engineered components for automotive and other industrial sectors focusing on case and formed metals, tooling, and high-performance products and processes. The Company is also a premier designer, manufacturer and supplier of components for the global aerospace, energy, military, defense and transportation industries. Certain affiliates specialize in thermoform plastics, forging, casting, fabricating and molding of various types of ferrous and non-ferrous metals, as well as the performance of precision machining and fabrication.

6.      The factual background relating to the commencement of the chapter 11 case of Revstone Industries, LLC is set forth in detail in the Declaration of Jay N. Brown in Support of First Day Pleadings (the "Brown Declaration") filed on December 3, 2012 and incorporated herein by reference.

## Huron's Engagement and Qualifications

7.      Huron was originally retained shortly after the filing of the Revstone and Spara cases to provide financial advisory services in support of the Debtors' obligations as chapter 11 debtors-in-possession. Under the dynamic circumstances of these cases, the Debtors have determined that obtaining the ongoing services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance their ability to (a) operate and meet their administrative obligations in these cases and (b) preserve and maximize the value of their assets pending any sale. As such, the Debtors have chosen to utilize Huron personnel as appropriate and have appointed Mr. DiDonato of Huron, to the position of CRO, Ms. Marcero of

3

Huron as DCRO, and Mr. Owens of Huron to the position of EVP, subject to the Court granting this Motion. Specifically, as set forth in the Engagement Letter, the Debtors (a) retained Huron on or about December 17, 2012 to provide financial advisory services to the Debtors and (b) appointed Mr. DiDonato, Ms. Marcero and Mr. Owens on January 17, 2013 to provide interim management services to the Debtors in their respective positions of officers of the Debtors.

8.      Huron has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, Huron has provided (a) restructuring and turnaround advisory services to clients including NUMMI; Kazi Foods of Michigan, New York, New Jersey, Maryland and Florida; Forum Health; Lacks; and Lifecare; and (b) financial advisory services to the lenders or unsecured creditors of such companies as RG Steel, LLC, Metaldyne; and Indalex Aluminum Solutions.

9.      Further, as a result of prepetition work performed on behalf of the Debtors, Huron has acquired significant knowledge of the Debtors and their business and is now familiar with the Debtors' financial affairs, debt structure, operations and related matters. Likewise, in providing financial advisory services to the Debtors since on or about December 17, 2012, Huron's professionals have worked closely with the Debtors' management and other advisors. Accordingly, Huron has developed relevant experience regarding the Debtors that will assist it in providing effective and efficient services to the Debtors in these cases.

10.     As such, the Debtors believe that Huron is well qualified and able to advise them in a cost-effective, efficient and timely manner. The Debtors have been advised by Huron that it will endeavor to coordinate with the other professionals retained in these

4

bankruptcy cases to eliminate unnecessary duplication or overlap of work. Therefore, the

Debtors submit that the retention and employment of Huron is in the best interests of their

estates, creditors and other stakeholders in these cases.

### Services to Be Provided by Huron

11.     Consistent with the terms of the Engagement Letter, Mr. DiDonato as

CRO, Ms. Marcero as DCRO, Mr. Owens as EVP, and the Additional Personnel are charged

with assisting the Debtors and performing various operational, administrative and financial

responsibilities and activities arising in connection with these chapter 11 cases. More

specifically, but without limitation, the anticipated services include the following:

- Compiling data and documents necessary to support the Company in its bankruptcy proceeding.

- Negotiating and documenting the terms of a debtor-in-possession and other financing arrangements.

- Compiling data and analyses information necessary to meet the reporting requirements that will be mandated by the bankruptcy process; and assisting with other aspects of managing the interactions with major constituents, including covenant compliance, communications, preparation for meetings and follow up on requests.

- Compiling data and analyses necessary to meet the requirements and requests of various parties related to the Company's restructuring and reorganization.

- Compiling and formatting data and analyses necessary to meet the financial reporting requirements mandated by the bankruptcy code and the US Trustee's office.

- Developing plans to address creditor requirements and interfacing with creditors and their financial advisors.

- Assisting management with the on-going forecasting of the Company's cash flows and its operations and monitoring and analyzing operational and financial condition.

- Advising the Restructuring Committee of the Board of Members, or comparable independent governing body established by an amended Operating Agreement (the, "Board"), on restructuring, reorganization, and bankruptcy matters.

- Advising on communication plans for various stakeholders including customers,

suppliers, employees, and the community.

- Addressing operational challenges that arise due to the bankruptcy filing and the bankruptcy process.

- Preparing for court hearings, for the argument of motions and other matters, and providing expert testimony as required.

- Developing a plan of reorganization or liquidation, and supporting documents.

- Supervising and advising the Company on the sale of operating and non-operating assets as directed by the Company's fiduciaries.

- Performing any other restructuring management duties relating to role as CRO, DCRO and EVP as directed by the Company's fiduciaries.

12.     Upon the Court's approval of the proposed retention, Mr. DiDonato as CRO, Ms. Marcero as DCRO, Mr. Owens as EVP will continue to report to, and to act under the direction, control and guidance of, the Debtors' Board of Managers , subject to removal and/or termination thereby.

## Huron's Fees

13.     As set forth in the Engagement Letter, fees in connection with this Engagement (other than those related to the financial advisor position), will be based upon the time incurred by the Huron staff serving as temporary employees of the Company providing the Services, multiplied by Huron's standard hourly rates illustrated below:

| Individual | Hourly Rate |
|---|---|
| John C. DiDonato (CRO) | $750 |
| Laura Marcero (Deputy CRO) | $700 |
| John Owens (EVP) | $565 |
| Jason Kirshner | $350 |

14.     Huron will bill the Additional Personnel on an hourly basis based on the actual hours worked, for additional work performed at the following hourly billing rates (which may be subject to adjustment from time to time):

6

| Title | Hourly Rate |
|---|---|
| Managing Director | $675 - $750 |
| Sr. Director and Director | $535 - $620 |
| Manager | $420 - $450 |
| Associate | $350 |
| Analyst | $250 |

15.     Travel time during which no work is performed shall be itemized separately and billed at fifty percent (50%) of regular hourly rates.  Hourly rates are generally revised periodically.

16.     Huron does not provide any assurance regarding the outcome of its work and its fees will not be contingent on the results of such work.

17.     Payment of all fees is due and payable monthly by wire transfer.

18.     In addition to the fees outlined above, Huron will bill the Debtors weekly for reimbursement of reasonable direct expenses incurred on the Debtors' behalf during the engagement.  Direct expenses include reasonable and customary out-of-pocket expenses arising directly from the engagement, such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

19.     Notwithstanding anything to the contrary in the Engagement Letter, Huron is not seeking any "success," deferred, "back end" or similar fees from the Debtors for this engagement.

## Retainer – Cash on Account

20.     Prior to their retention, the Debtors provided Huron with a retainer of $200,000.00 (the "Retainer").  The Retainer shall be credited against any amounts due at the termination of the Engagement Letter and returned to the Debtors upon the satisfaction of all obligations owed to Huron thereunder.

DOCS_DE:185408.2 73864-001

**Reporting Requirements – Interim Management Services**

21.    Because Huron is not being employed for its interim management services as a professional under section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "J. Alix Protocol") (the "Protocol"), Huron intends to file with the Court and serve on the Debtors, the U.S. Trustee and the Official Committee of Unsecured Creditors appointed in these cases (the "Committee" and, together with the Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and functions filled by all Huron personnel assigned to this engagement.  The Staffing Report (and Huron's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

22.    In addition, Huron will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis.  The Compensation Reports would summarize the service provided, identify the compensation earned, itemize expenses incurred and provide for an objection period. All such compensation would be subject to review by this Court if an objection is filed.

**Compensation – Financial Advisory Services**

23.    With regard to the financial advisory services provided during the period between December 17, 2012 and January 16, 2013, Huron will seek payment of fees for the services rendered pursuant to the Engagement Agreement and be compensated in accordance with sections 330 and 331 of the Bankruptcy Code.  Huron will also seek reimbursement for reasonable out-of-pocket expenses incurred in connection with this engagement, including,

8

without limitation, reasonable attorneys' fees, travel and lodging expenses, word processing charges, messenger services, duplicating services, facsimile expenses and other customary expenditures.

24.    The Debtors understand that Huron intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of this Court for all financial advisory services performed and expenses incurred during the period between December 17, 2012 and January 16, 2013.  Huron will file an interim fee application, and shall file a final fee application as required by the Local Rules and orders of this Court.  The Debtors and Huron understand that the Office of the United States Trustee shall retain the right to object to Huron's interim and final fee applications related to such financial advisory services.

25.    Huron shall bill the Debtors for financial advisory services at the same hourly rates described above.  The overall compensation structure proposed by Huron is comparable to compensation generally charged by financial advisors of similar stature to Huron for comparable engagements, both in and out of court.  Huron's restructuring expertise, as well as its capital markets knowledge and financing skills, were important factors in Huron's determination of the amount of its hourly rates for financial advisory services.

**Indemnification and Liability Limitation Provisions**

26.    Based on its prior discussions and agreements with the Office of the United States Trustee in other cases in this District, and its expectations regarding certain modifications the United States Trustee will request to the Engagement Agreement, Huron agrees that the order approving Huron's employment contain the following modifications to the terms in Huron's Engagement Agreement:

9

(a)     Paragraph 2 of the General Business Terms of the Engagement Agreement is modified as follows:  the heading "Independent Contractor" is hereby replaced with the heading "No Agency" and the phrase "an independent contractor and" is hereby deleted from the first sentence of that paragraph.

(b)     Subject to the provisions of subparagraph (d) beneath, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, Huron in accordance with the General Business Terms of the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Huron's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Court.

(c)     Notwithstanding any indemnification provisions of the General Business Terms of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Huron or provide reimbursement to Huron (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Huron's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors or Committee allege the breach of Huron's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (d), beneath, to be a claim or expense for which Huron should not receive indemnity or reimbursement under the terms of the Agreement, as modified by this Order.

(d)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Huron believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, Huron must file an application therefore in this Court, and the Debtors may not pay any such amounts to Huron before the entry of an order by this Court approving the payment.  This subparagraph (d) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Huron for indemnification or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Huron.

(e)     In the event that Huron seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Huron's own monthly fee statement and

10

shall be subject to the same payment procedures applicable to professionals in these cases.

(f)     Paragraph 9 of the Engagement Agreement's General Business Terms shall apply solely to claims of Huron and the Debtors or Committee against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Huron's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.  Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

(g)     Paragraph 12(d) of the Engagement Agreement's General Business Terms, relating to arbitration in the event a dispute arises between the Debtors or Committee and Huron, is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court, or the United States District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

## Huron's Disinterestedness

27.     To the best of the Debtors' knowledge, information, and belief, and based upon the DiDonato Declaration, Huron is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code.

28.     As described in detail in the DiDonato Declaration, Huron has, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings.  However, Huron may have represented certain of the Debtor's creditors or other parties in interest in matters wholly unrelated to this Chapter 11 case.  Except as may be described in the DiDonato Declaration, Huron does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or these estates.

11

## Legal Basis for Relief Requested

### *The Debtors Have Exercised Their Sound and Prudent Business Judgment*

29.     Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

30.     The retention of corporate officers, including in conjunction with the retention of associated turnaround and advisory firms to provide related services, is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. See, e.g., In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel); In re Archbrook Laguna Holdings LLC, No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); In re Calpine Corp., No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and chief financial officer pursuant to section 363 of the Bankruptcy Code).

DOCS_DE:185408.2 73864-001

31.     Entry into the Engagement Letter and retaining Huron to provide Mr. DiDonato as CRO, Ms. Marcero as DCRO, Mr. Owens as EVP, and to provide the Additional Personnel, upon the terms set forth in the Engagement Letter, this Motion and any order approving this Motion, would enable the Debtors most efficiently administer these cases, address operational issues arising in chapter 11 and preserve and maximize the value of their estates. The Debtors require the assistance of qualified and experienced personnel to assist in these matters. Thus, the Debtors believe that it would be in their best interests and in the best interests of their respective estates, their creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective as of the Petition Date.

32.     The Debtors believe that Huron's fee structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to Huron for comparable engagements. In addition, given the numerous issues Huron may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), Huron's commitment to the variable level of time and effort necessary to address all such related issues as they arise and the market prices for Huron's services for engagements of this nature in an out-of-court context, the Debtors believe that the Huron fee arrangement is fair and reasonable.

*The Proposed Retention Comports with the Bankruptcy Code and the Protocol*

33.     Huron will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because the Debtors are seeking to retain Huron, a CRO, a DCRO and an EVP pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, Huron is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, the Debtors request that fees and expenses of Huron incurred in the performance of the interim management services be treated as an administrative

expense of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business, without the need for Huron to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

34.    In addition, because the Debtors are not seeking to retain Huron as a professional under section 327 of the Bankruptcy Code for interim management services, there is no requirement that Huron, Mr. DiDonato, Ms. Marcero, Mr. Owens or any of the Additional Personnel be disinterested to be retained to provide interim management services.  Nevertheless, as detailed above in support of Huron's retention to provide financial advisory services in these cases, to the best of the Debtors' knowledge, information and belief based on the DiDonato Declaration, Huron does not have or represent any interest adverse to the Debtors' estates or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason. Additional information about Huron's connections to parties in interest in these cases is described in the DiDonato Declaration.

***Huron's Retention as Financial Advisor During the Period Between December 17, 2013 and January 16, 2013 is Appropriate Pursuant to Section 327***

35.    Under §§ 327 and 328 of the Bankruptcy Code, a trustee, debtor in possession and committee appointed under § 1102 of the Bankruptcy Code may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist such parties in carrying out their duties under the Bankruptcy Code.

36.    Specifically, § 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

14

may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

        37.     11 U.S.C. § 327(a). Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. Proc. 2014.

        38.     As detailed above and in the DiDonato Declaration, the Debtors satisfy the standards of Rule 2014 for the retention of Huron as financial advisor in these cases for their work during the period between December 17, 2012 and January 16, 2013. Upon the filing of the Revstone and Spara cases, the Debtors were in immediate need of a financial advisor with the depth of experience provided by Huron. The services provided by Huron during the period (many of which will continue to be provided by Mr. DiDonato, Ms. Marcero and Mr. Owens in as officers to the Debtors, and by the Additional Personnel) were critical in stabilizing the company and permitting the Debtors to focus upon their goals in these chapter 11 cases. The compensation structure and engagements terms described above are comparable to compensation and engagement terms required by financial advisors of similar stature to Huron for comparable engagements.

        39.     The Debtors request approval of the employment of Huron *nunc pro tunc* to the period between December 17, 2012 and January 16, 2013. Such relief is warranted by the extraordinary circumstances presented by this case. The Third Circuit has identified "time

DOCS_DE:185408.2 73864-001

pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.

See, Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also, In re Indian River

Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), app. dismissed, 909 F.2d 1406 (3d Cir. 1990). The

complexity and intense activity that have characterized this case have necessitated that the

Debtors and Huron  focus their immediate attention on time-sensitive matters, and promptly

devote substantial resources to the affairs of the Debtors pending submission and approval of this

Application.

***The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code***

40.     Additionally, the Court's general equitable powers codified in

section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein.

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or

judgment that is necessary to carry out the provisions of this title." See 11 U.S.C. § 105(a); see

also United States v. Energy Resources Co., 495 U.S. 545, 549 (1990); In re Continental

Airlines, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements

courts' specifically enumerated bankruptcy powers by authorizing orders necessary or

appropriate to carry out provisions of the Bankruptcy Code."); Adelphia Communications Corp.

v. The American Channel (In re Adelphia Communications Corp.), 345 B.R. 69, 85 (Bankr.

S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to

maintain its own jurisdiction and to facilitate the reorganization process.").

## No Prior Request

41.     No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

16

## Notice

42.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Debtors' prepetition secured lenders; (iii) counsel to the Committee; and (iv) those parties that have requested service under Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

DOCS_DE:185408.2 73864-001

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C, (a) granting the relief sought herein and (b) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  February ___, 2013

Revstone Industries, LLC et al.

Daniel V. Smith
Secretary