IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 12-13262 (BLS) |

**EMERGENCY MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PROHIBITING SPOLIATION AND PRESERVING EVIDENCE**

The Official Committee of Unsecured Creditors (the "Committee") of Revstone Industries, LLC ("Revstone"), one of the debtors and debtors-in-possession in the above captioned jointly administered cases (the "Debtors"), by and through its proposed undersigned counsel, hereby moves (the "Motion"), on an emergency basis, for entry of an order prohibiting spoliation and requiring the Debtors to preserve all physical and electronic evidence, particularly in light of the filing of the Committee's Motion for Appointment of Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 1104(a)(1) and 1104(a)(2) (the "Trustee Motion) (Docket No. 163). In support of this Motion, the Committee respectfully represents the following:

## BACKGROUND

I. **General Case Background**

1. On December 3, 2012 (the "Petition Date"), Revstone filed a

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

2. On December 17, 2012, the Office of the United States Trustee appointed the Committee pursuant to Bankruptcy Code section 1102(a)(1). The Committee selected and authorized the employment of Womble Carlyle Sandridge & Rice, LLP as its counsel and FTI Consulting, Inc. as its financial advisor.

3. To date, no trustee or examiner has been appointed in any of the above-captioned bankruptcy cases. On February 5, 2013, the Committee filed the Trustee Motion. The Trustee Motion is pending.

## II.    Filing of Related Cases

4. On the Petition Date, Spara, LLC, an entity related to Revstone, filed a petition under chapter 11 of the Bankruptcy Code.

5. On January 7, 2013, Revstone's indirect subsidiaries Greenwood Forgings, LLC and US Tool & Engineering, LLC also filed petitions under chapter 11 of the Bankruptcy Code, without any advance notice to the Committee.

6. On February 6, 2013, this Court entered an order authorizing the joint administration of the four (4) above-referenced cases (Docket No. 173).

## III.    Changes in Debtors' Management

7. On February 13, 2013, the Debtors filed their Motion to Employ and Retain Huron Consulting Services LLC to (I) Provide a Chief Restructuring Officer and Additional Personnel for the Debtors Pursuant to 11 U.S.C. § 363(b), Nunc Pro Tunc to January 17, 2013; and (II) Provide Financial Advisory Services to

2

the Debtors Pursuant to 11 U.S.C. § 327(a), Nunc Pro Tunc to the Period Between December 17, 2012 and January 16, 2013 (Docket No. 198) (the "Huron Retention Motion"). By the Huron Retention Motion, the Debtors seek, inter alia, approval nunc pro tunc to January 17, 2013 to provide a management team to the Debtors consisting of Mr. John DiDonato as Chief Restructuring Officer, Ms. Laura Marcero as Deputy Chief Restructuring Officer, Mr. John Owens as Executive Vice President, and additional personnel (the "Additional Personnel").

8.  The Debtors also have appointed two "independent" managers: Mr. Richard E. Newsted and Mr. James Shein.[2] However, the independent board of managers' authority is so limited in scope as to render any independence meaningless in significant respects. For instance, the Debtor's Second Amended and Restated Operating Agreement (the "Current Operating Agreement") provides that Ascalon, LLC, which is Revstone's parent and is under Mr. Hofmeister's control, is a member of the Debtor. Current Operating Agreement, § 3.1. The Current Operating Agreement provides for the creation of a Board of Managers consisting of at least three (3) members, two (2) of whom are to be Independent Managers. Id. at § 5.2. However, the Current Operating Agreement sets forth strict limitations on the powers of the Board of Managers:

> 5.15  Limitation of Authority. Notwithstanding anything in this Agreement to the contrary, the Board of Managers may not cause the Company to do any of the following without the consent of

---

[2] Under the Current Operating Agreement (defined below), an "Independent Manager" need not necessarily be independent of Mr. Hofmeister. See Current Operating Agreement § 1.6(g).

holders of a Majority in Interest:

    (a)    Amend the Certificate of Formation;

    (b)    Approve a merger to which the Company is a party or a plan or agreement providing for a membership interest exchange;

    (c)    Approve or authorize the sale, lease or exchange of all or substantially all of the Company's property and assets;

    (d)    Approve or authorize the dissolution of the Company or a revocation of a dissolution; or

    (e)    Amend this Agreement.

Id. at § 5.15.

9. Thus, under the terms of the Current Operating Agreement, existing equity remains in control of efforts to sell substantially all of the assets of Revstone and the other Debtors. Importantly, such equity also controls whether and in what manner the Debtors will obtain secured financing for their bankruptcy cases. Any debtor-in-possession loan that provides for liens on substantially all of the Debtors' assets faces the same restrictions as a sale of substantially all of the Debtors' assets. Such decisions remain firmly in the hands of equity, i.e., Mr. Hofmeister through Revstone's direct and indirect parents, Ascalon and the Children's Trusts.

10. Finally, Mr. Hofmeister still controls the Debtors' purse strings. Among other things, the Debtors provided to the Committee a resolution dated January 25, 2013 that shows that Mr. DiDonato, Ms. Marcero, and Mr. Owens are

now authorized persons to enter into certain banking transactions for the Debtor. However, there is no evidence that Mr. Hofmeister has been divested of that same authority.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

12.   The predicates for the relief requested herein are sections 102 105(a) of the Bankruptcy Code and Rules 7026 et seq. of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

13.   The Committee respectfully seeks entry of an order, substantially in the form attached hereto and as more particularly specified therein, (i) requiring the Debtors to preserve documents (the "Documents")[3] that are vital to these cases and this Court's determination of the Trustee Motion; (ii) permitting the Committee to take possession of copies of Documents; and (iii) prohibiting the spoliation of evidence in the Debtors' possession. To ensure that evidence is preserved, the Committee requests that:

>    a. the Committee be given immediate access to the Debtors' computer systems to make copies of any Documents, Communications,[4] and electronic data on those systems as a safeguard against alteration and

---

[3] As defined in the attached proposed order granting the Motion.
[4] As defined in the attached proposed order granting the Motion.

    spoliation, with such copies to be made by imaging, mirroring or other appropriate means, by qualified personnel with relevant information systems expertise.

  b. remote access to the Debtors' computer systems of anyone other than Mr. DiDonato, Ms. Marcero, Mr. Owens, and the Additional Personnel be prohibited pending until such time as the Trustee Motion has been adjudicated; for the avoidance of any doubt, this provision would require that Mr. Hofmeister's access to the Debtors' computer systems be prohibited;

  c. the Debtors be required to suspend their Document retention and destruction policies or practices, if any, and require the Debtors and all employees and agents thereof to preserve and maintain without any alteration all electronic records and other Documents under the care, custody or control of the Debtors unless and until further ordered by this Court;

  d. with respect to retention and maintenance of any storage media for ESI, including but not limited to any hard drives, servers, optical media, tape drives, external drives, and storage media of any nature, the Debtors and non-Debtor affiliates shall prevent against the loss of any such hardware until further ordered, whether such hardware is leased or owned by the Debtors and non-Debtor affiliates. Prior to the proposed return to any leased hardware, the Debtors and non-Debtor affiliates shall provide ten (10) days notice to the Committee and the U.S. Trustee and shall allow imaging or mirroring of any such storage media associated with such equipment.

  e. the Debtors be required to furnish, within two weeks of the date of entry of any order granting this Motion, a certification that these policies have been implemented, and that all Documents and ESI backup are being preserved and not overwritten.

Based on the heightened risk of evidence spoliation outlined below, and the extensive record of Mr. Hofmeister's malfeasance described in the Trustee Motion,

this relief is both warranted and urgently needed.

### BASIS FOR RELIEF

14. It is "well established that the duty to preserve evidence arises when a party reasonably anticipates litigation. [O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." In re Global Technovations, Inc., 431 B.R. 739, 780 (Bankr. E.D. Mich. 2010) (internal citation omitted); see also Micron Technology, Inc. v. Rambus Inc., 645 F.3d 1311, 1320 (Fed. Cir. 2011) (stating that "[t]he duty to preserve evidence begins when litigation is 'pending or reasonably foreseeable.'") (citing Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). Indeed, a party who fails to preserve evidence when that obligation arises may be sanctioned for that failure. See Magnetar Technologies Corp. v. Six Flags Theme Park Inc., C.A. No. 07–127–LPS–MPT, 2012 WL 3609715, *7 (D. Del. Aug. 22, 2012)

15. It is not sufficient, however, merely to intend to preserve evidence. That intention must be "followed up with concrete actions reasonably calculated to ensure that relevant materials will be preserved." Jones v. Bremen High School Dist. 228, No. 08 C 3548, 2010 WL 2106640, *6 (N.D. Ill. 2010).

16. This Court has inherent authority to enter an order requiring preservation of evidence. See, e.g., Friedman v. Nevada, Case No. 07–00338–LRH–VPC, 2011 WL 2969812, *2 (D. Nev. July 20, 2011); Pueblo of Laguna v. U.S., 60 Fed. Cl. 133, 135 (Fed. Cl. 2004). This inherent authority is consistent with a

bankruptcy court's broad equitable authority under Bankruptcy Code section 105(a), which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17. Here, there is no question that the obligation to preserve evidence has arisen. While it may be that the filing of these bankruptcy cases triggered that obligation, the filing of the Trustee Motion has certainly created a contested mater that is an actual pending litigation requiring the preservation of evidence relating to the Trustee Motion and the bankruptcy cases.

18. Electronic evidence in the Debtor's control is subject to quickly being altered and deleted. Absent Court action, this evidence is subject to spoliation at any time. See Dell Inc. v. BelgiumDomains, LLC, No. Civ. 07–22674, 2007 WL 6862341, *2 (S.D. Fla. Nov. 21, 2007) (stating that evidence in "electronic form [is] subject to quick, easy, untraceable destruction."). Therefore, the Committee has an immediate and significant concern that spoliation of electronic evidence may be not only a risk, but a reality.

19. The Debtors are only four (4) of myriad debtor and non-debtor entities that have operated under the absolute control of Mr. Hofmeister, save for the recent steps on his part to install new individuals in management roles alongside him. Under Mr. Hofmeister's control, the Debtors, their related entities, and their pension plans have been used as instrumentalities to siphon assets to the detriment of their creditors, and even each other, all to enrich Mr. Hofmeister and his family.

20. For example, a United States District Court Judge recently held

that Mr. Hofmeister and his wife are alter egos of three (3) trusts that were established for the benefit of their children, and that the trusts – the same trusts that own the Debtor's parent entity – were used to avoid payment to their judgment creditors, evidencing an "actual intent to defraud creditors" by using the trusts to loot Mr. Hofmeister's companies through at least the year 2010. Limbright v. Hofmeister, C.A. No. 09-107 (KSF), 2011 U.S. Dist. LEXIS 131373, *29 (E.D. Ky. Nov. 14, 2011).

21. In an action pending in the Circuit Court for the County of Grand Traverse, Michigan (the "Michigan Court"), captioned Boston Finance Group v. Power-Tec Manufacturing, LLC, Case No. 12-29875-CK (Circ. Ct. Mich., Cty. of Grand Traverse) (the "Boston Finance Action"), the plaintiff, Boston Finance Group, LLC ("Boston Finance") was awarded a significant judgment against Revstone and a group of other Hofmeister entities that Revstone and its co-defendants failed to satisfy. Thereafter, the Michigan Court granted a motion to appoint a receiver for Revstone, immediately after which Revstone commenced its bankruptcy case.

22. The United States Department of Labor (the "DOL") has filed a complaint (the "DOL Complaint") against Mr. Hofmeister for alleged misuse of pension funds of the employees of Metavation, a downstream subsidiary of Revstone. In response, Mr. Hofmeister invoked the Fifth Amendment right against self-incrimination to avoid answering the complaint, noting that he is the subject of a criminal investigation regarding the matters set forth in the complaint. See Solis v. Hofmeister, C.A. No. 12-250 (KKC) (E.D. Ky.) (the "DOL Action"), Answer to

DOL Complaint, page 1 [Docket No. 21]. The misconduct alleged in the DOL Complaint, and likely in the related criminal investigation as well, tie to at least two debtors – Revstone and Greenwood – because Mr. Hofmeister indirectly used them as counterparties of the allegedly improper financing transactions with pension assets.

23. The Committee's concerns about spoliation of evidence, viewed in light of these events, are well-founded. Mr. Hofmeister has engaged in conduct relating to his businesses for which he has been accused of civil liability – and, in fact, has been found civilly liable. Now that he is under criminal investigation by the DOL and has asserted his Fifth Amendment rights in response to the DOL Complaint, the stakes have never been higher for Mr. Hofmeister. Accordingly, there is every reason to be concerned that Mr. Hofmeister, either personally or by directing others, may well seek to conceal or destroy evidence in possession of the Debtors relating to his many legal problems, all of which bear on the Trustee Motion. Therefore, this Motion should be granted.

24. In determining to grant such relief, a court should consider whether "(1) there is a legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence; (2) such concerns outweigh any harm to the defendants that may result from a preservation order; and (3) defendants will not be unduly burdened by such an order." <u>TracFone Wireless, Inc. v. King Trading, Inc.</u>, No. 3-08-CV-0398-B, 2008 WL 918243, *1 (N.D. Tex. Mar. 13, 2008) (granting plaintiffs' emergency ex parte

motion to preserve evidence and for expedited discovery).

I. **The Committee Has a Legitimate Concern that the Debtors Are Not Preserving Evidence.**

25. There is no question that the Committee has a "legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence." There is an extensive history of fraud at the highest levels of management of the Debtors. Equally troubling is that, despite multiple requests for assurances that evidence is being preserved, the Debtors have not provided such assurances.

26. Now that Huron and Mr. DiDonato have taken over the management of the Debtors, there is no reason for anyone other than those employees of Huron who are being provided to the Debtors to manage the Debtors to have remote access to the Debtors' data systems. Therefore, this Court should order that remote access to the Debtors' computer systems by anyone other than Mr. DiDonato, Ms. Marcero, Mr. Owens, and the Additional Personnel should be prohibited pending until such time as the Trustee Motion has been adjudicated.

27. Despite the Committee's requests that the Debtors work with the Committee to preserve information such as by taking protective images of computer systems, the Debtors have only partially responded to these requests. The Debtors' advisors have represented that a litigation hold has been put in place, but no written evidence has been provided of the scope of the hold throughout the Debtors' businesses. Moreover, even if a litigation hold is in place, the Committee has no

reason to believe that it would be honored by Mr. Hofmeister and certain of those around him. Mr. Hofmeister still remains in place on the Debtors' boards, despite the structure of independent managers and the Huron management teams. Accordingly, extra layers of assurances about the preservation and integrity of the Debtors' records are needed.

28. Where prepetition fraud in management is reasonably suspected – or, as here, established – these remedies are appropriate and warranted. For instance, in In re Exaeris, Inc., (Case No. 07-10887 (KG)), this Court ordered a similar remedy to protect the collateral of secured lender Westernbank Puerto Rico ("Westernbank"). See Final Order (I) Authorizing the Use of Cash Collateral (II) Granting Adequate Protection to Westernbank Puerto Rico as the Prepetition Lender, (III) Authorizing Further Postpetition Financing, (IV) Granting Liens and Superpriority Administrative Expense Status and (V) Modifying Automatic Stay (the "Westernbank Order") (Case No. 07-10887 (KG), Docket No. 46), attached hereto as Exhibit A.

29. In Exaeris, upon the filing of the bankruptcy cases of debtors Exaeris, Inc. and Inyx USA, Ltd. ("Inyx"), Westernbank filed an Emergency Motion for Adequate Protection and to Use Collateral (the "Westernbank Emergency Motion"). In the Westernbank Emergency Motion, Westernbank detailed the extensive fraud at the management of Inyx. As a result of this fraud, before the bankruptcy cases were filed, Westernbank caused Inyx to be placed in administration proceedings in the United Kingdom and filed a RICO complaint against several

members of Inyx's management. Approximately one (1) month into the Exaeris and Inyx cases, the Court granted a motion of the United States Trustee to appoint a chapter 11 trustee under Bankruptcy Code section 1104.

30. Before the appointment of the chapter 11 trustee, this Court granted emergency relief to Westernbank, as set forth in the Westernbank Order. In particular, the Court ordered that "the Debtors are prohibited from carrying out any document retention and destruction policies or practices, if any, and requiring the Debtors and all employees and agents thereof to preserve and maintain without any alteration all electronic records and other documents under the care, custody or control of the Debtors unless and until further ordered by this Court." Westernbank Order, ¶ 4. The Westernbank Order also expressly authorized Westernbank's professionals to image key computers at the Debtor's offices. Id., ¶ 6.

31. As in Exaeris and Inyx, there are allegations and findings of extensive pre-petition fraud involving management of the Debtors. Mr. Hofmeister remains on the Board of Managers of the Debtors and has not been quarantined from the Debtors' businesses so as to provide any level of assurance that his influence is not still present and that he has not been disabled from causing damage to the businesses, including by the destruction of physical and electronic evidence, including the Documents. Indeed, Mr. Hofmeister and those close to him may have every incentive to destroy evidence that they would prefer never to see the light of day. Accordingly, similar relief is warranted and required here.

## II. The Committee's Concerns Outweigh Any Harm to the Defendants That May Result From a Preservation Order.

32. No harm will come to the Debtors if this Motion is granted. Instead, entry of an order granting this Motion will have the salutary effect of helping to ensure the integrity and preservation of the Debtors' records. Compliance with this order would have no effect on the operations of the Debtors, such as they are. Revstone is a holding company with no operations that may be impaired by entry of such an order. US Tool has ceased operations. Greenwood is also winding down its operations – a process that is only expected to continue for another five (5) weeks. If the Committee is given the right to copy the Debtors' Documents and electronic media to preserve their contents, no harm will befall the Debtors. The interests of the Committee are aligned with the best interests of the Debtors' estates in these cases. Among other things, the Committee is not a competitor of the Debtors such that the Debtors would suffer some harm if the Committee comes into possession of copies of the Debtors' files.

## III. The Defendants Will Not Be Unduly Burdened by Any Such Order.

33. There will be minimal inconvenience to the Debtors from complying with a preservation order. Moreover, any burden is created by the Debtors. They have left Mr. Hofmeister in a position to continue to exert his influence over the companies. Also, the Debtors have not responded to the Committee's appropriate and well-founded requests for information about the preservation of records. That refusal has left the Committee with little choice other

than to seek the Court's assistance to ensure that estate records are not being compromised or destroyed.

### IV. Meet and Confer Efforts

34. Prior to filing this motion, the Committee began an effort to meet and confer with Debtors' counsel to seek agreement on a form of consent preservation order. The Committee will continue such efforts to further the goal of reaching consent, or narrowing the scope of any disputed issues.

### CONCLUSION

35. As set forth herein, there is a real and immediate concern that important evidence is at risk of spoliation. Accordingly, the Committee respectfully requests that this Motion be granted.

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto (i) granting the Motion; and (ii) granting the Committee such other and further relief as is just.

| | |
|---|---|
| Dated: February 21, 2013 | **WOMBLE CARLYLE SANDRIDGE & RICE, LLP** |
| | /s/ Steven K. Kortanek |
| | Steven K. Kortanek (Del. Bar. No. 3106) |
| | Mark L. Desgrosseilliers (Del. Bar No. 4083) |
| | Matthew P. Ward (Del. Bar No. 4471) |
| | 222 Delaware Avenue, Ste. 1501 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 252-4320 |
| | Facsimile: (302) 661-7738 |
| | E-mail: skortanek@wcsr.com |
| | E-mail: mdesgrosseilliers@wcsr.com |
| | E-mail: maward@wcsr.com |
| | |
| | Proposed Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC |