IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-13262 (BLS)<br><br>(Jointly Administered)<br><br><br><br>Related Docket Nos.: 182, 184 & 274<br>Related Docket Nos. in Case No. 13-10027(BLS):<br>3, 4, 5, 6, 8, 14, 15, 16, 17, 20, 36 & 53 |

**AMENDED OMNIBUS OBJECTION OF BOSTON FINANCE GROUP, LLC TO ENTRY OF FINAL ORDERS ON DEBTOR'S FIRST DAY MOTIONS**

Boston Finance Group, LLC ("**BFG**"), by and through its undersigned counsel, files this objection (the "**Objection**") to entry of final orders with respect to certain motions filed by Greenwood Forgings, LLC ("**Greenwood**" or the "**Debtor**"), one of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"). In support of the Objection, BFG respectfully represents as follows:

**LIMITED BACKGROUND**

1. On January 7, 2013 (the "**Petition Date**"), Greenwood filed a voluntary petition for relief (the "**Greenwood Chapter 11 Case**") under Chapter 11 of the Bankruptcy Code.

2. On January 9, 2013 Greenwood filed the following motions (collectively, the "**First Day Motions**"): (i) Motion for Interim and Final Orders Authorizing Debtor to (I) Maintain Existing Cash Management System and Bank Account, (II) Continue Use of Existing

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

EAST\55035310.4

Checks and Business Forms, (III) Obtain Limited Waiver of Section 345(B), and (IV) Continue Intercompany Transactions [Docket No. 3] (the "**Cash Management Motion**"); (ii) Motion of Debtor for Interim and Final Order Under Section 105, 363, and 507 of the Bankruptcy Code (I) Authorizing Payment of Prepetition Wages, Salaries, and Employee Benefits, (II) Authorizing Continuation of Employee Benefit Plans and Programs Postpetition, and (III) Directing All Banks to Honor Prepetition Checks for Payment or Prepetition Employee Obligations [Docket No. 4] (the "**Employee Wages Motion**"); (iii) Motion for Authorization to (I) Continue Prepetition Insurance Program and (II) Pay any Prepetition Premiums and Related Obligations [Docket No. 5] (the "**Insurance Motion**"); (iv) Motion for an Interim and Final Order to (I) Prohibit Utility Companies from Discontinuing, Altering, or Refusing Service, (II) Deem Utility Companies Adequately Assured of Future Payment, and (III) Establish Procedures for Determining Requests for Additional Adequate Assurance [Docket No. 6] (the "**Utilities Motion**"); and (v) Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. Sections 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. Section 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. Section 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 8] (the "**Bridgeport Cash Collateral Motion**").

    3.     On January 10, 2013, this Court held a hearing on shortened notice (the "**First Day Hearing**") to consider interim relief on the First Day Motions filed by Greenwood. At the First Day Hearing, the Court granted the First Day Motions on an interim basis, subject to a final hearing. With respect to the Bridgeport Cash Collateral Motion, the Court granted the motion over BFG's objection on an interim basis, subject to further interim and final hearings.

4. On January 14, 2013, this Court entered the Interim Order (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§ 105 And 363(c)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. § 361; And (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. § 362 [Docket No. 20] (the "**Bridgeport First Interim Cash Collateral Order**").

5. On January 21, 2013, Greenwood filed the Declaration of David Jaeger Regarding Debtor's Proposed Budget In Support of Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. Sections 105 and 363(C)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. Section 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. Section 362 and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 [Docket No. 37], attaching a budget for Greenwood's operating expenses (the "**Budget**").

6. On January 22, 2013, this Court held a second interim hearing (the "**Second Interim Hearing**") on the Bridgeport Cash Collateral Motion. At the Second Interim Hearing, the Court indicated that a third interim hearing would be appropriate with respect to Greenwood's use of cash collateral.

7. On January 25, 2013, this Court entered the Interim Order (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. Sections 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. Section 361; and (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. Section 362 [Docket No. 53] (the "**Second Interim Bridgeport Cash Collateral Order**," and together with the First Interim Bridgeport Cash Collateral Order, the "**Cash Collateral Orders**").

8.   On February 6, 2013, on motion of the Debtors, this Court entered an order directing joint administration of the Debtors' Chapter 11 cases for procedural purposes only [Docket No. 73].

9.   No trustee, examiner or statutory committee has been appointed in the Greenwood Chapter 11 Case.

10.  At the time of the filing of this Objection, the Debtor has not filed any monthly operating report and has not filed its schedules of assets and liabilities or statement of financial affairs. Furthermore, at the Second Interim Hearing, the Debtor did not introduce into the record evidence of its operating performance postpetition.

11.  A hearing on the First Day Motions to consider further interim relief on the Bridgeport Cash Collateral Motion and final relief on the other First Day Motions has been scheduled for February 21, 2013 (the "**Final Hearing**").

## OMNIBUS OBJECTION

12.  Based on the minimal information available regarding Greenwood's operations and given that Greenwood has not secured (or even sought approval for) financing to fund its postpetition operations, Greenwood does not appear to be operating on a cash flow positive basis following the Petition Date. Accordingly, entry of final orders on the First Day Motions is not appropriate at this time. Indeed, whether the Greenwood Chapter 11 Case should continue to be administered under chapter 11 should be closely examined by the Court.

13.  Counsel to Greenwood represented at the First Day Hearing that Greenwood's weekly operating expenses were approximately $100,000 per week. This amount is further detailed and supported in the Budget filed by Greenwood prior to the Second Interim Hearing. Counsel to Greenwood represented at the First Day Hearing that, as of the filing of its petition

for relief, Greenwood had no cash with which to operate. As this Court may recall, Greenwood's need for extraordinary emergency relief was due to its inability to make any payments, including employee payroll, following the Petition Date, because it had no cash on hand and its sole source of cash is collection of its accounts receivable subject to the security interests of Bridgeport Capital Funding, LLC ("**Bridgeport**") and BFG. The orders granting the First Day Motions on an interim basis contemplated, and in the case of the Utilities Motion even directed, immediate payments by Greenwood in excess of $250,000.

14. Although Greenwood has not provided information on the collection of accounts receivable following the Petition Date, based on information provided by Bridgeport, postpetition collections through the close of business on February 4, 2013 total approximately $744,000. Pursuant to the Interim Cash Collateral Orders, only half of those receivables would have been turned over to Greenwood. As a result, Greenwood has had only approximately $372,000 in cash with which to fund the prepetition obligations it is authorized to pay, the required utility deposits and its postpetition operating expenses.

15. By the Final Hearing, more than six weeks will have passed since the Petition Date, meaning Greenwood will have aggregated approximately $600,000 in postpetition operating expenses and has been authorized to pay up to $250,000 in prepetition and deposit obligations. Greenwood will have generated a postpetition operating deficit of in excess of $500,000 and likely is not keeping up with its postpetition payroll and tax obligations. It is extremely likely that Greenwood's estate is administratively insolvent.

16. On Thursday, January 31, 2013, BFG sent to Greenwood a request for documents and information. A copy of the transmittal and attachments are attached hereto as **Exhibit "A"** and made a part hereof. On February 7, 2013, on a "confidential, professionals' eyes only"

basis, Greenwood produced to BFG the following scant documents: (i) August through December, 2012 Bank of America bank statements; (ii) the physical inventory dated as of December 21, 2012 (reflecting total WIP and finished goods of approximately $35,000); (iii) two schedules of payables as of the Petition Date; (iv) the lease for the facility with the pension plans as landlord; (v) a schedule of receivables dated as of February 6, 2013, attached as **Exhibit "B"** attached hereto and made a part hereof (reflecting approximately $372,000 of receivables, despite representations to this Court that as of the Petition Date the Debtor's estate included approximately $1.2 million of receivables, $372,000 of which were subject to the factoring agreement with Bridgeport, and reflecting postpetition receivables totaling approximately $102,000 with an order of $6,500 for one customer and $96,000 net of a $14,000 credit memo for a second customer, and reflecting lengthy payment terms); (vi) the Trial Balance for the four months ending November 30, 2012; (vii) a document entitled "Payroll Detail" that lacks any identifying information; and (viii) the schedule of utilities attached to the Utilities Motion. Among other things, the Debtor failed to produce an updated budget extending at least 13 weeks, a detailed listing of receivables that existed on the dates BFG served its writs of garnishments, or any other information that would permit BFG and this Court to discern the status of the Debtor's postpetition operations. To date, Huron Consulting and the Debtor have made no attempt to make themselves available to BFG or its financial advisor in order that additional information or explanations may be obtained. BFG will continue to press for more information and likely will seek a conference with the Court prior to the currently scheduled Final Hearing.

17. Furthermore, it appears that neither Greenwood nor any of the other Debtors have made any progress on obtaining debtor in possession financing to fund their postpetition operations and administrative expenses. Nevertheless, BFG submitted a proposed term sheet for

debtor in possession financing to both Greenwood's original and substitute counsel, seeking a request from Debtor for financing. BFG was informed that the Debtors would be seeking financing on a global basis. Moreover, despite BFG requesting that the CRO and financial advisors to the Debtors or other appropriate professionals present their financing solicitation materials to BFG so that BFG may consider providing global debtor in possession financing, as of the time of filing this Objection, BFG has received no such contact or information. As a result, BFG can only assume that the Debtors have not made substantial progress on obtaining financing or are otherwise unprepared to present a business plan or other proposal appropriate to obtain such financing. Indeed, as a result BFG questions whether Debtors have even solicited financing from any source.

18. Until Greenwood, along with the other Debtors in these jointly administered cases, are able to correct their current financial difficulties, whether through debtor in possession financing or any other alternative, BFG submits that this Court should defer entering any final orders with respect to the relief requested in the First Day Motions. Instead, BFG submits that this Court should enter only further interim orders that grant solely the limited relief necessary to prevent immediate and irreparable harm to Greenwood and its estates. While BFG recognizes that it is certainly in no one's interest to prevent Greenwood or any of the Debtors from operating their businesses because of the considerable impact on employees and all the Debtors' creditors, it is likewise necessary to ensure that the interests of both pre and postpetition creditors are being appropriately protected.

## CONCLUSION

WHEREFORE, BFG respectfully requests, in light of this Objection, that this Court deny entry of final orders with respect to the First Day Motions pending a further hearing and grant such other and further relief as this Court deems just and proper.

Dated: February 11, 2013
      Wilmington, Delaware

/s/Stuart M. Brown
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
**DLA PIPER LLP (US)**
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
      craig.martin@dlapiper.com

-and-

Gregg M. Galardi (DE 2991; NY 4535506)
Sarah E. Castle (NY 4932240)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregg.galardi@dlapiper.com
      sarah.castle@dlapiper.com

*Counsel to Boston Finance Group, LLC*