IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | Case No. 12-13262 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Numbers: 240 and 241** |

**LIMITED OBJECTION OF BOSTON FINANCE GROUP, LLC TO (I) APPLICATION OF US TOOL & ENGINEERING, LLC PURSUANT TO SECTIONS 327(a) OF THE BANKRUPTCY CODE, RULES 2014 AND 6005 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURES AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN AUCTIONEER TO THE DEBTOR, AND (II) MOTION OF US TOOL & ENGINEERING, LLC PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE FOR AUTHORITY TO (a) CONDUCT AN AUCTION FOR PERSONAL PROPERTY ASSETS, AND (b) SELL ASSETS TO THE SUCCESSFUL BIDDERS AT AN AUCTION FREE AND CLEAR OF ALL ENCUMBRANCES**

Boston Finance Group, LLC ("**BFG**"), by and through its undersigned counsel, hereby files this limited objection to (i) Application Of US Tool & Engineering, LLC Pursuant To Sections 327(a) Of The Bankruptcy Code, Rules 2014 And 6005 Of The Federal Rules Of Bankruptcy Procedures And Local Rule 2014-1 For Authorization To Employ And Retain Auctioneer To The Debtor ("**Auctioneer Application**") [D.I. 240],[2] and (ii) Motion Of US Tool & Engineering, LLC Pursuant To Sections 105(a) And 363 Of The Bankruptcy Code For Authority To (A) Conduct An Auction For Personal Property Assets, And (B) Sell Assets To The Successful Bidders At An Auction Free And Clear Of All Encumbrances ("**Sale Motion**") [D.I. 241]. In support of the Reply, BFG respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] Unless otherwise indicated, all docket references are to the docket in Case No. 12-13262(BLS).

## LIMITED BACKGROUND

1.    On January 7, 2013 (the "**Petition Date**"), US Tool & Engineering, LLC (the "Debtor") filed a voluntary petition for relief (the "**US Tool Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

2.    On February 4, 2013, BFG filed in the US Tool Case its Motion for Modification of the Automatic Stay and for Adequate Protection (the "**Adequate Protection Motion**") [Related Case No. 13-10028, D.I. 21]. Attached to the Adequate Protection Motion were BFG's loan and security agreement and financing statements perfecting BFG's interest in Debtor's interest in the furniture, fixtures, machinery and equipment ("**FF&E Collateral**") that is the subject of the Sale Motion, which loan and security documents are incorporated herein as though set forth at length below.

3.    A hearing on the Adequate Protection Motion ("**Adequate Protection Hearing**") was scheduled on February 21, 2013.

4.    On February 19, 2013, the Debtor filed its Objection of US Tool and Engineering, LLC to Boston Finance Group, LLC's Motion for Modification of the Automatic Stay and for Adequate Protection (the "**US Tool Objection**") [D.I. 220].

5.    On February 19, 2013, the Official Committee of Unsecured Creditors (the "Committee") filed the Limited Objection of the Official Committee of Unsecured Creditors to Boston Finance Group, LLC's Motion for Modification of the Automatic Stay and for Adequate Protection (the "**Committee Limited Objection**") [D.I. 218].

6.    The Auctioneer Application and the Sale Motion were filed during the evening of February 20, 2013. At the Adequate Protection Hearing BFG agree to adjourn such hearing to the date of the hearing on the Auctioneer Application and the Sale Motion, March 1, 2013.

## LIMITED OBJECTION

### A.    Auctioneer Application - Terms

7.    Through the Auctioneer Application, the Debtor seeks to engage Myron Bowling Auctioneers, Inc. ("**Bowling**"); Utica Leaseco, LLC ("**Utica**"); PPL Group LLC ("**PPL**"), and Maynard Industries (1991) Inc. ("**Maynard**" and together with Bowling, Utica and PPL, the "**Auctioneer**").

8.    The terms of the engagement include the Auctioneer's guaranty of net proceeds of $600,000 to the Debtor's estate, reimbursement of $50,000 of expenses, proceeds in excess of $650,000, excluding buyer's premium, to be split 90/10 in favor of Debtor's estate.  The buyer's premium is proposed to be 15% on sales onsite and 18% for internet sales ("**Buyer's Premium**").  Further, Debtor proposes to surcharge the proceeds to pay for the expenses of the sale for rent, utilities, and taxes.

9.    The Auctioneer Application is silent on the terms applicable to a credit bid by BFG to purchase the FF&E Collateral.  BFG submits that a Buyer's Premium of 15% on a credit bid is excessive under all circumstances, including the circumstances where BFG may submit a bulk credit bid.  BFG believes that the Buyer's Premium on a credit bid should not exceed 5% as a fair representation of BFG's anticipated costs in connection with a UCC Article 9 public sale.  Accordingly, the Buyer's Premium proposed is excessive in the context of a bulk credit bid.

10.    A sampling of auctioneer fees and buyer's premiums charged in similar cases in Delaware demonstrates that the Buyer's Premium is above market.  *See* the chart attached hereto as Exhibit "A" and incorporated herein (setting forth a compilation of publically available information from other auctions of machinery and equipment).  It appears that the majority of

auctioneers charge a buyer's premium of 10%. Accordingly, the Buyer's Premium proposed is excessive.

11.    The Auctioneer Application does not limit the reimbursement of expenses to the reasonable and actual expenses incurred by the Auctioneer or require the Auctioneer to provide a detailed budget in advance or accounting after the fact of such expenses. Expenses representing approximately 8.5% of the guaranteed proceeds is excessive in light of the fact that the FF&E Collateral is situated in one location and comprises less than 50 lots.

### B.    Auctioneer Application - Disclosures

12.    Each of Bowling, Utica, PPL and Maynard provided a declaration of disinterestedness in support of the Auctioneer Application.

13.    Bowling represents in its declaration that Bowling may have represented non-Debtor affiliates, including (i) a purchase lease back agreement for the assets of Contech Castings, LLC on November 30, 2012; (ii) a secured party sales agreement with Power-Tec on January 9, 2013; and (iii) "in regards to Utica Leaseco, LLC only – a purchase lease back agreement for the assets of Arete Interlock, LLC." The disclosure is inadequate.

14.    Contech Castings, LLC is believed to be a valuable asset of Revstone Industries, LLC ("**Revstone**"), an affiliated Debtor of the Debtor. Bowling's participation in a transaction that could and should be the subject of an investigation by the Official Committee of Unsecured Creditors appointed in the Revstone case requires that Bowling disclose much more than a four word description and date of the transaction. Among other things, Bowling should disclose by what party it was engaged, the parties to the transaction and the size and terms of the transaction.

15.     Similarly, respecting the Power-Tech secured party sale, Bowling must disclose whether it was engaged by the secured creditor or Power-Tec, the identity of the secured creditor and the terms.

16.     It is not clear why Bowling, PPL and Maynard each make a disclosure phrased as "in regards to Utica Leaseco, LLC only". It has the appearance that each is making a disclosure for Utica, however, "Auctioneer" is defined in the respective declarations as only the party making the declaration. Accordingly, each must disclose on what basis it has knowledge of the Utica transaction and whether that disclosure represents the sole Utica transaction with affiliated non-debtor entities.

17.     The declaration of David K. Levy of Utica is even more suspect and wanting for disclosure. First, under the heading Qualification of the Auctioneer, the Utica declaration begins by describing Bowling's experience, rather than Utica's. The rest of the declaration appears to identical to the Bowling declaration as well, except with respect to the disclosure of transactions with affiliated non-debtors where to the language "in regards to Utica Leaseco, LLC only" is omitted. Utica should be called upon the make the same disclosures required in paragraph 16 above.

18.     Furthermore, upon information and belief, Utica's disclosures are incomplete. Timco, LLC is or was an affiliate of Revstone and the Debtor. Timco, LLC was a debtor in a chapter 7 case pending in the United States Bankruptcy Court for the Eastern District of Michigan at number 11-44445-mbm. Donald B. Lifton was the chairman of Timco, LLC and is the co-chairman of Revstone.

19.     The statement of financial affairs filed in the Timco, LLC case in response to question 10a discloses that Utica purchased Timco, LLC's machinery and equipment and leased

it back to Timco, LLC in consideration of payment of $680,000 on December 18, 2010 and a month later all of the remaining assets of Timco, LLC were sold to Brownstone Plastics, LLC for $10 dollars and assumption of liabilities. The Asset Purchase Agreement between Timco, LLC and Brownstone Plastics, LLC was signed by George Hofmeister as chairman.

20.     Kenneth A. Nathan, Trustee for the chapter 7 estate of Timco, LLC commenced an adversary proceeding against Brownstone Plastics, LLC, which adversary is now pending before the United States district Court for the Eastern District of Michigan at number 4:13-cv-10034-MAG-MAR, as the reference was withdrawn effective in January 2013. In his complaint, Trustee Nathan alleges that Brownstone Plastics, LLC failed to pay the assumed liabilities, including obligations owing to Metavation in the amount of $1,090,316.13, Revstone in the amount of $1,295,752.31 and the subordinated secured promissory note to Metavation, LLC Pension Plan in the amount of $1,090,316.13, as well as trade payables owing to Aarkel Tool & Die of approximately $40,000. BFG is without knowledge whether Brownstone Plastics, LLC remains an operating entity, retains the equipment purchased by Utica or continues to pay Utica on the lease back of the equipment.

21.     Trustee Nathan also commenced an adversary proceeding against Utica, alleging that Utica was the transferee of a fraudulent transfer, having purchased Timco, LLC's machinery and equipment appraised at auction value of approximately $900,000 and fair market value of in excess of $1.3 million, for only $625,000. This adversary proceeding against Utica was settled with Utica having to pay additional consideration of $125,000, which brings the total consideration to $805,000 for machinery and equipment appraised as having an auction value of approximately $900,000. *See In re Timco, LLC*, E.D. Mich. Case No. 11-44445-mbm, docket number 76, filed May 16, 2012.

22.     To say the least, the timing of the Utica and Brownstone transactions appear suspect and Utica should be required to disclose all facts pertinent to the transactions and current status.

23.     BFG reserves all rights further to object to the Auctioneer Application should such disclosures not be made or should they disclose that the Auctioneer is not disinterested.

**C.     Sale Motion**

24.     BFG also asserts limited objections to the Sale Motion.

25.     The Debtor proposes that all expenses incurred by the Debtor's estate directly related to the sale be charged against BFG's FF&E Collateral.

26.     The Auctioneer has not provided a budget for expenses anticipated to be incurred by the Auctioneer in connection with the sale of the FF&E Collateral.  Accordingly, BFG cannot ascertain and this Court cannot pass on the reasonableness of the budget before the expenses are incurred.

27.     In addition, the Debtor proposes to surcharge the FF&E Collateral for expenses relating to the premises, including, rent, utilities and insurance.  The Sale Motion does not disclose the deadline when bidders must remove the FF&E Collateral from the premises.  Consequently, BFG cannot ascertain the extent or reasonableness of its exposure for such expenses.

28.     The Sale Motion makes no mention of the Auctioneer requiring bidders and their riggers to demonstrate adequate insurance to cover personal and physical casualty that may be experienced by the bidders during the auction or by the premises in connection with the removal of the FF&E Collateral.  The terms of the auction and qualifications of bidders should include such requirements.

29.     The Sale Motion fails to explain how bidders bidding on line and bidders onsite participate in the auction simultaneously.  The Sale Motion and procedures should make such disclosures.

30.     The Sale Motion is silent with respect to BFG's ability to participate in the auction by submitting a bulk credit bid or by submitting a credit bid with respect to each lot. BFG's right to credit bid pursuant to section 363(k) of the Bankruptcy Code should not be impaired, and BFG does not consent to a sale process that does not expressly contain BFG's right to credit bid.

31.     The equipment list attached to the Sale Motion as Exhibit "B" is deficient.  Item listed as 39 is not property of the estate.  Rather, it is property of BFG.  Attached hereto as Exhibit "B" and incorporated herein is a copy of a bill of sale for item 39 to BFG.

32.     Furthermore, the equipment list omits many items believed to be among the FF&E Collateral.  Attached hereto as Exhibit "C" and incorporated herein is a list of additional FF&E Collateral that BFG could not otherwise ascertain was included on the Debtor's schedule.

33.     BFG reserves all rights further to object to the Sale Motion should the terms and conditions of the proposed auction and sale not be responsive to BFG's objections and concerns in a manner acceptable to BFG.

34.     Furthermore, should the Auctioneer fail adequately or refuse to make additional disclosures, or modify the terms of their engagement, or should the Auctioneer or the Debtor refuse to permit BFG to credit bid, then BFG opposes the Auctioneer Application and Sale Motion and seeks entry of an order on its Adequate Protection Motion, granting termination of the stay as to BFG pursuant to section 362(d)(2) based upon Debtor's admissions that it lacks

equity in the FF&E Collateral and the FF&E Collateral is not necessary to an effective reorganization.

WHEREFORE, BFG respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit "D", denying the Auctioneer Application and the Sale Motion, unless Bowling and Utica make such other and further disclosures as may be required by the Court, and the Auctioneer and Debtor modify the terms and conditions, and budgeted expenses of the sale and auction in a manner and amount reasonably acceptable to BFG, or in the alternative, BFG seeks entry of an order granting the Adequate Protection Motion, and granting such other and further relief as this Court deems just and proper.

Dated:  February 27, 2013

/s/Stuart M. Brown
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
**DLA PIPER LLP (US)**
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
        craig.martin@dlapiper.com

-and-

Gregg M. Galardi (DE 2991; NY 4535506)
Sarah E. Castle (NY 4932240)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email: gregg.galardi@dlapiper.com
        sarah.castle@dlapiper.com

*Counsel to Boston Finance Group, LLC*