IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 12-13262 (BLS)<br><br>Objections Due: March 12, 2013 at 4:00 p.m. (ET)<br>Hearing Date: March 19, 2013 at 2:00 p.m. (ET)<br><br>Related Docket No. 302 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE DEBTORS PURSUANT TO SECTIONS 105(a), 327, 328 AND 330 OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN, EMPLOY AND COMPENSATE CERTAIN PROFESSIONALS UTILIZED BY THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS**

The Official Committee of Unsecured Creditors (the "Committee") of Revstone Industries, LLC ("Revstone"), one of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby objects (the "Objection") to the motion of the Debtors pursuant to sections 105(a), 327, 328, and 330 of 11 U.S.C. §§ 101-1532 (as amended, and applicable to these bankruptcy cases, the "Bankruptcy Code") for the entry an order authorizing the Debtors to retain, employ, and compensate certain professionals utilized by the Debtors in the ordinary course of business (Docket No. 302) (the "Motion"). In support of this Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

## PRELIMINARY STATEMENT

1.  Pursuant to the Motion, the Debtors seek court authorization to employ and compensate certain professionals utilized in the ordinary course of the Debtors' business. The Debtors' ordinary course of business is, however, limited to the business of two holding companies (Revstone and Spara), a company in liquidation (US Tool), and a company currently in the process of shuttering its operations (Greenwood Forgings).

2.  The Committee does not object to the retention of ordinary course professionals that are providing services to the Debtors, to the extent that the Debtors can demonstrate that such services continue to be necessary for the Debtors and to the extent that the Debtors can demonstrate how the Debtors intend to pay for such services.[2] The Committee does, however, object to the Debtors compensating professionals for services that are being provided to non-Debtors.

3.  In light of the ongoing lack of transparency in these bankruptcy cases, and the lack of any substantial business operations by the Debtors, it is unclear what role the majority of the proposed ordinary course professionals continue to have with respect to the Debtors and why it is necessary for the Debtors (as opposed to their

---

[2]    To date, although the bankruptcy cases of Revstone and Spara have been pending for in excess of ninety (90) days and the Debtors will soon face significant payment obligations for, among other things, (i) professional fees and expenses for those of the Debtors' professionals whose retentions this Court ultimately approves and (ii) the Committee and its professionals, no motion has been filed seeking approval of any debtor-in-possession financing. Nor, other than certain limited and summary information provided to the Committee's professionals, have the Debtors kept the Committee sufficiently apprised of any progress that the Debtors may be making towards obtaining such financing. Among other things, the Debtors have refused to date to provide information to the Committee and its professionals such as any term sheets that prospective lenders may have provided to date to the Debtors.

non-debtor parent or subsidiary entities) to engage such ordinary course professionals in these bankruptcy cases.

4. Equally as importantly, the Motion improperly seeks to facilitate the payment of compensation to an ordinary course professional whose employment ultimately is rejected by the Court. Specifically, as noted below, the Motion provides that if the retention of an ordinary course professional is not approved by the Court, the professional still may apply to the Court for compensation pursuant to Bankruptcy Code sections 330 and 331 for work performed post-petition and prior to the Court's denial of the employment. Such relief would contravene the express language of Bankruptcy Code section 330, which limits compensation under that section to professionals that have been retained pursuant to Bankruptcy Code section 327 or 1103.

5. For each of these reasons, and as explained more thoroughly below, the Committee respectfully requests that the Motion be denied or that, if the Motion is granted, any order granting the Motion contain the modifications and additional disclosures requested by the Committee herein.

## OBJECTION

6. By the Motion, the Debtors seek approval for the employment and compensation of ordinary course professionals that are to render services to the Debtors. However, the Motion is flawed in numerous respects.

**A.     The Debtors Fail To Identify the Particular Entity for Which Services Will Be Rendered, and to Explain why Such Services are Necessary.**

7. The Motion suggests that the retention and payment to the professionals is necessary because "[t]he operation of the Debtors' businesses" would otherwise "be severely hindered." Motion ¶ 13. However, the Debtors' business is

limited to the business of two holding companies (Revstone and Spara), a company in liquidation (US Tool), and a company currently in the process of shuttering its operations (Greenwood Forgings). The Motion fails to explain why the retention of the multitude of ordinary course professionals identified in the Motion is necessary for the Debtors in these circumstances.

8.   It is also unclear whether the ordinary course professionals will be rendering services to the Debtors or instead rendering services to the Debtors' non-debtor parent or subsidiary entities. The Committee maintains that professionals should not be compensated from the Debtors' estates for non-Debtor work. The Debtors have failed to provide sufficient detail regarding the services to be performed by such professionals to permit the Committee's professionals to uncover this critical information through their own efforts (as the Committee's professionals have been compelled to do repeatedly in these bankruptcy cases). The Debtors should be required to provide detailed information about the specific work performed by each of the ordinary course professionals, and the specific Debtor on whose behalf such work is done, to permit an equitable allocation of any fees and expenses incurred amongst the estates and between Debtors and non-Debtors.

9.   The Debtors' failure to provide sufficient information about the anticipated work of the proposed ordinary course professionals, and to identify the entity for which such services will be rendered, is particularly problematic in the case of the Debtors' proposed litigation professionals. The Debtors do not identify the litigation in which the proposed ordinary course professionals are involved. Moreover, in light of the automatic stay, and the dearth of any motions for relief from the stay (at least for the

purpose of continuing pre-petition litigation), it appears completely unnecessary to retain such professionals in this instance and at this stage of the bankruptcy cases. To the extent that the Debtors are permitted to retain such professionals in the ordinary course, the Debtors should be required to provide (a) the case name, (b) the case number, and (c) the jurisdiction for each case involving a litigation professional (in addition to the estimate of monthly fees and total case fees anticipated for each professional as set forth below).

10. Even with such information, the Debtors' proposed ordinary course professionals present other concerns for the Committee. By way of example, the Debtors propose to retain Kenneth R. Beams. However, Mr. Beams currently represents the Debtors' parent company, Ascalon Enterprises, LLC ("Ascalon"), in these bankruptcy cases. Mr. Beams should not be paid by the Debtors for such work for Ascalon.

11. The Debtors also seek to retain and employ Hinckley Allen Snyder LLP as litigation counsel in Connecticut. However, Revstone and Spara's Statements of Financial Affairs reveal that the only lawsuit filed against these two Debtors in Connecticut was administratively dismissed following Revstone's bankruptcy filing on December 4, 2012 (See Case No. 12-13262-BLS, Docket No. 129; Case No. 12-13263-BLS, Docket No. 40). Moreover, although at the time of the filing of this Objection, Greenwood and US Tool have not yet filed their respective Statements of Financial Affairs, the Committee understands that the operations of those two entities have been limited to South Carolina and Michigan, respectively. Accordingly, there should presumably be little need for litigation counsel in Connecticut to represent such entities.

12. Similarly, the Debtors seek to retain and employ Strasburger & Price, LLP as litigation counsel in Texas. Here again, the Revstone and Spara Statements

of Financial Affairs list only two cases in Texas, both of which have already been reduced to judgment. Presumably these judgments can be addressed through any claims process in such bankruptcy cases. Moreover, in Canada, where the Debtors seek to employ two law firms, Feige Nawrock LLP and Chaitons, LLP, as litigation counsel, the only available Statements of Financial Affairs show no pending proceedings in Canada against either Spara or Revstone, and the Committee understands that US Tool and Greenwood did not have operations in Texas or Canada.

**B.    The Court Should Not Permit Ordinary Course Professionals Whose Retention Is Denied to Be Compensated Pursuant to Bankruptcy Code Section 330 and 331.**

13.    The Motion improperly seeks to facilitate the payment of compensation to an ordinary course professional whose employment ultimately is rejected by the Court. Specifically, the Motion states:

> If, after a hearing, the retention of an Ordinary Course Professional is not approved, such professional may still apply to this Court, pursuant to sections 330 and 331 of the Bankruptcy Code, for compensation for all work performed on behalf of the Debtors from the Petition Date through the date of an order denying such retention.

Motion, at p. 8 n.4.

14.    Such relief would contravene the express language of Bankruptcy Code section 330, which limits compensation under that section to professionals that have been retained pursuant to Bankruptcy Code section 327 or 1103. Specifically, Bankruptcy Code section 330 provides procedures pursuant to which "the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 . . . ." 11 U.S.C. § 330(a)(1).

15. Moreover, this provision in effect would allow the ordinary course professional to be paid for approximately six months (or more) of work notwithstanding the fact that their retention was rejected by the Court. In particular, the Motion proposes the following time frame for the approval of retention and payment of ordinary course professionals:

- Court enters an order approving the Motion
- Professional files and serves an affidavit within 28 days following the order
- Parties in interest have 7 days to object
- Parties have 21 days to attempt to resolve the objection
- If not resolved, the matter is scheduled by the Debtors for a hearing[3]

See Motion, at pp. 7-8. Here, an order on the Motion will be entered at the earliest following the March 19, 2013 hearing. Affidavits could be filed as late as mid-April, with objections due a week later, and the parties having until mid-May to attempt to resolve such objections. The matter would then be scheduled for a subsequent hearing, at the earliest in late May (if not later) – approximately six months after the commencement of Revstone's bankruptcy case.

16. The Committee maintains that these proposed procedures, pursuant to which an ordinary course professional whose retention is ultimately rejected by the Court may still be compensated for six months (or more) of work, in disregard of the express terms of the Bankruptcy Code, is improper and should not be condoned by the Court.

---

[3] The Committee maintains that, in the event of an unresolved objection to the proposed retention of an ordinary course professional, the matter should be scheduled for the next omnibus hearing date, or alternatively either the Debtors OR the objecting party may request a hearing, rather than the scheduling of the matter being placed in the Debtors' sole control.

C.  **The Debtors Fail to Provide Information Regarding the Estimated Amount and Source of Payment to the Professionals.**

17. The Motion's proposed payment procedures would allow the Debtors to pay one hundred percent (100%) of the fees and expenses of each ordinary course professional upon submission to, and approval by, the Debtors of an appropriate billing statement. However, the Motion does not include any estimate of the amount of fees that each ordinary course professional will incur, nor does it identify the source of payment for such professionals. The Debtors appear to have no means for paying the professionals already retained in these bankruptcy cases, let alone the additional professionals proposed through the Motion. The Debtors' continued failure to provide sufficient information about the proposed ordinary course professionals, and more globally about the status of the Debtors' efforts to obtain debtor-in-possession financing and of various pending sale processes, among other things, is problematic.

18. At a minimum, the Debtors should be required to provide an estimate of the monthly fees for each ordinary course professional, as well as the total fees anticipated for each such professional during the course of these bankruptcy cases. Without that information, the Committee cannot evaluate the propriety of the proposed monthly caps of $25,000 per professional and $100,000 for all ordinary course professionals in light of the particular facts and circumstances of these bankruptcy cases.

19. In light of the failure of the Debtors to date to file monthly operating reports and in light of the informational void in which the Committee and its professionals have been left, the Committee respectfully requests that the Court require that the Debtors make such fundamental disclosures, at a minimum, before the Court enters any order on the Motion.

D.  **The Court Should Require Additional Disclosures Regarding the Proposed Work of the Debtors' PBGC Counsel.**

20. The Committee has additional concerns regarding the Debtors' intention to retain and employ Keightley & Ashner LLP as "PBGC counsel." Motion at Exhibit A. On March 1, 2013, the Pension Benefit Guaranty Corporation (the "PBGC") filed a complaint (the "PBGC Complaint") seeking to terminate the pension plans of one of Revstone's non-debtor subsidiaries, Metavation, LLC, in the United States District Court for the Eastern District of Michigan (the "PBGC Action"). A copy of the PBGC Complaint is attached hereto as Exhibit A.

21. The PBGC Complaint alleges that the assets of the two pension plans for which Metavation is the sponsor are collectively valued at $46 million. However, the PBGC Complaint further alleges that as much as $35 million of the purported assets are in the form of notes and loans to entities affiliated with the Debtors, which may, in some instances, have little or no value. The underfunding may represent a significant liability to Revstone, because the PBGC has taken the position that minimum funding requirements are joint and several liabilities of the plan's contributing sponsor and each member of its controlled group. If Revstone is found to be a member of a "controlled group" in common with the pension plans, then Revstone and other members of the controlled group could be liable for any obligations with respect to the pension plans. See ERISA §§ 302(c)(11)(B); IRC § 412(c)(11)(B).[4]

22. The recent PBGC Complaint is in addition to the complaint filed by the United States Department of Labor (the "DOL"), filed in the United States District Court for the Eastern District of Kentucky, styled Solis v. Hofmeister, case number

---

[4] The Committee reserves its right to contest PBGC's position in any proceeding.

12-250 (KKC) (the "DOL Action"). In response to the DOL Action, Mr. Hofmeister invoked his Fifth Amendment right against self-incrimination to avoid answering the complaint, noting that he is the subject of a criminal investigation regarding the matters set forth in the complaint. See Answer to DOL Complaint, page 1 (Docket No. 21 in the DOL Action), a copy of which is attached hereto as Exhibit B.

23. The Committee has repeatedly expressed its grave concerns regarding the allegations in the DOL Complaint and regarding Mr. Hofmeister's need to invoke his Fifth Amendment rights in response to such complaint. These concerns have only been further heightened by the filing of the PBGC Complaint. Therefore, in connection with the Debtors' proposed retention of an ordinary course professional to address these issues, the Committee and other parties-in-interest should be provided with more information about the services to be rendered by "PBGC counsel" than a "brief statement of the services rendered." Specifically, the Debtors should provide the Committee and other parties-in-interest information about the scope of proposed PBGC counsel's services, an estimated budget for those services, and the proposed allocation of such services between and among the Debtors and their non-Debtor affiliates.

## RESERVATION OF RIGHTS

24. The Committee expressly reserves its right to present additional arguments at any hearing in connection with the Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Court (a) sustain this Objection, (b) deny the Motion or, at a minimum, modify any relief granted with respect to the Motion as set forth herein, and (c) grant the Committee such further relief as is appropriate under the circumstances.

Dated: March 12, 2013                    WOMBLE CARLYLE SANDRIDGE
                                                                                         & RICE, LLP

/s/ Matthew P. Ward
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Steven K. Kortanek (Del. Bar No. 3106)
Matthew P. Ward (Del. Bar No. 4471)
222 Delaware Avenue, Ste. 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: skortanek@wcsr.com
E-mail: maward@wcsr.com

Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC

WCSR 7688931