# EXHIBIT A

## Document Requests

## DEFINITIONS

The definitions of terms provided by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, where applicable, are incorporated herein by reference.

As used herein, the term "communication" means all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in the actual or constructive control or custody of BFG and any of its current or former affiliates, representatives and advisors, specifically including Lexington Logistics, LLC f/k/a Spara Logistics, LLC ("Lexington").

As used herein, the term "document" means any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001, Bankruptcy Rule 7034 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) inter-office memoranda, notes to file, facsimile transmissions, financial statements, bank statements, charts, appraisal reports, and other data compilations, in the actual or constructive control or custody of BFG and any of its current or former affiliates, representatives and advisors, specifically including Lexington.

As used herein, the term "Golden Declaration" means the Declaration of Jonathan Golden in support of the Stay Relief Motion.

As used herein, the phrase "relating to" means consisting of, referring to, reflecting or being legally, logically, or factually connected in any way with the subject matter.

As used herein, the term "Stay Relief Motion" refers to the *Boston Finance*

*Group, LLC's Motion for Modification of the Automatic Stay and for Adequate Protection* [Docket No. 33], filed on January 10, 2013 in this case.

The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; and the word "any" means "any and all"; the word "including" means "including without limitation."

Instructions

If any portion of any document is responsive to any request, then the entire document must be produced. Documents shall be produced in the order in which they are found or kept in your files and shall not be shuffled or otherwise rearranged. Documents that are found stapled, clipped, or otherwise fastened or filed together shall be produced in such form.

If information stored in, or accessible through, computer or other data retrieval system is produced, it must be accomplished by instructions and all other materials necessary to use or interpret such data.

If any document responsive to these requests is withheld by reason of a claim of privilege, work product, or other ground of non-production, at the time that documents are produced, identify the document, specify the nature and basis of claimed privilege or other ground of non-production, indicate the paragraph(s) of this request to which such document relates.

If any documents called for by any request herein has been destroyed, lost, discarded, or otherwise not capable of being produced, at the time that documents are produced, identify such document; identify any person who has possession, custody, or control of the document; indicate the paragraph(s) of this request to which such document relates; and set forth

the circumstances under which the document was destroyed or discarded or as an explanation of why the document is not capable of being produced.

This request shall be deemed continuing in character, so as to require further and supplemental production if additional documents are obtained or become accessible after the time of initial production.

Unless otherwise noted below, the time period covered by this request is <u>January 1, 2012</u> through the present.

## DOCUMENT REQUESTS

1. The operating agreement and any other corporate governance documents of Lexington, including minute books and board presentations.

2. The current organizational structure for Lexington.

3. All documents relating to the monthly, quarterly, and annual financial performance of Lexington, including balance sheets, cash flow statements, income statements, bank statements, audit reports of Lexington and cash flow statements for months December 2012 to February 2013 that compare actual cash flow to projected cash flow (if available).

4. All documents relating to 2011 and 2012 actual sales by customer, product or margin.

5. All documents related to Lexington's accounts payable at month end from September 2012 to February 2013, including a list of vendors that are current cash on delivery or cash in advance.

6. All documents related to Lexington's accounts receivable at month end from September 2012 to February 2013.

7. All documents relating to the business plans, financial projections, and forward-looking materials for Lexington including the current 13-week cash flow report, the complete 2013 business plan for Lexington (by month, if available), the 2013 sales forecast (booked and potential) and the 2014-2015 business plan for Lexington.

8. All documents related to booked and potential business for years 2013 through 2015.

9. All documents related to the capital expenditure plan for years 2013 through 2015.

10. All documents relating to any litigation claims that Lexington may have against third parties.

11. All documents relating to any valuation, appraisal, or analysis of Lexington's assets, including any litigation claims that Lexington may have against third parties.

12. All documents received or prepared by BFG relating to Lexington or the Debtor.

13. All documents relating to the claims of Fifth Third Bank, as Agent ("Fifth Third") against Lexington, including the Lexington Fifth Third Loan Agreement, as such term is defined in paragraph 21 of the Stay Relief Motion, and the previous three borrowing base reports with all attachments provided to Fifth Third by Lexington.

14. All documents relating to BFG's claims against the Debtor, including the Spara Loan, the Spara Promissory Note, the Revstone Guaranty, the Spara Pledge Agreement, the Warrant, and the Master Agreement, as such terms are defined in paragraphs 10 through 15 of the Stay Relief Motion, and any forbearance agreements related to the documents.

15. All documents relating to the statement in paragraph 2 of the Golden Declaration that "Lexington confronts significant liquidity issues almost daily that threaten its ability to operate long-term."

16. All documents relating to the statement in paragraph 3 of the Golden Declaration that "Although BFG has been successful in obtaining over $1 million in funding for Lexington from its own sources and from Fifth Third, it is clear that a significantly larger infusion of cash is necessary to fund ongoing operations."

17. All documents relating to the statement in paragraph 5 of the Golden Declaration that "the amount due to BFG from Spara is approximately $7 million."

18. All documents relating to the statement in paragraph 6 of the Golden Declaration that "BFG's good faith estimate of the fair market value of BFG's collateral is less

than $7 million. BFG bases its estimate on its perception of a market multiple of year to date EBITDA reflected in the Spara Report."

19. All documents relating to BFG's Complaint filed, and the Judgment obtained, in the Circuit Court for the County of Grand Traverse, Michigan against the Debtor and certain affiliates, as referenced in paragraph 16 of the Stay Relief Motion.

20. All documents relating to BFG's exercise of its rights and remedies against the Debtor or its affiliates, including exercising voting rights of the Debtor, installing BFG as manager of Lexington, appointing certain new officers of Lexington, and exercising BFG's option to purchase a ten percent (10%) interest in Lexington, as referenced in paragraphs 17 and 18 of the Stay Relief Motion.

21. All documents relating to BFG's belief stated in paragraph 23 of the Stay Relief Motion and paragraph 4 of the Golden Declaration that "Fifth Third asserts that Lexington is indebted to Fifth Third in an amount in excess of $24 million."

22. All documents relating to a potential bankruptcy proceeding, receivership, or assignment for the benefit of creditors involving Lexington.

23. All documents relating to BFG's assertion in paragraph 26 of the Stay Relief Motion that "BFG believes that Fifth Third and BFG are willing to restructure Lexington's obligations and otherwise work with Lexington to enhance its liquidity and provide

access to capital, but both Fifth Third and BFG are unwilling to move forward at this time given the uncertainty of the impact of the Spara Chapter 11 Case on Lexington."

24. All documents relating to a sale of the Debtor's membership interest in Lexington or the Procedures, as such term is defined in paragraph 27 of the Stay Relief Motion.

25. All documents relating to BFG's belief stated at paragraph 41 of the Stay Relief Motion that Lexington's operating results and liquidity concerns "yields a value substantially less than Lexington's obligations to Fifth Third . . . ."

26. All documents relating to Lexington's tax attributes, including but not limited to net operating losses, tax credits, and built-in-losses, and their value.

27. All documents relating to the debt capacity of Lexington or the minimum level of cash needed for the operations of Lexington.

28. All documents relating to the existence or potential existence of any pre- or postpetition breaches under the Debtors' or Lexington's loan documents.

29. All documents relating to reinstatement, restructuring, or refinancing of Lexington's debt obligations.

30. All documents relating to any offer or expression of interest by any party to acquire, merge, refinance or extend credit to Lexington or any other restructuring of Lexington.

31. All documents relating to any efforts to market or sell Lexington or any of its material assets, or to refinance the obligations of Lexington, or to extend credit to Lexington.

32. All documents prepared, relied upon or otherwise considered by BFG in preparing or analyzing the value of the Debtor or Lexington or any of their respective assets, including (i) the enterprise value of the Debtor or Lexington, (ii) any valuation analyses, appraisals, conclusions or reports, (iii) the list of companies used in any comparable companies analysis and the valuation multiples derived for each of the comparable companies; (iv) the list of transactions used in any precedent transactions analysis and the valuation multiples derived for each of the comparable transactions; (v) the range of terminal multiples used in any discounted cash flow analysis and the basis for the selection of such multiples; (vi) the key steps and assumptions in determining valuation, and (vii) the rationale for any valuation conclusion or estimate.

33. All documents relating to comparisons of actual performance of Lexington against budget for the previous two years and latest year-to-date period, including variances related to (i) volume, (ii) pricing, (iii) gross margin, and (iv) fixed costs.

34. All documents relating to capital expenditures by Lexington, including a breakdown of maintenance versus discretionary items.

35. All minute books (directors', members', managers' and shareholders' meetings) of BFG relating to the Debtor or Lexington, together with the minutes of executive and other committees and any board or committee presentations.

36. All monthly, quarterly, annual and interim reports to shareholders, members or affiliates of BFG relating to the Debtor or Lexington.

37. All communications relating to the documents requested in Requests 1 through 36 above.

38. All communications between BFG and Lexington.

39. All communications between BFG and the Debtor.

40. All communications between BFG and Fifth Third relating to the Debtor or Lexington.

41. All communications between BFG and any other parties or representatives, or internally within BFG, not otherwise addressed above relating to the Debtor or Lexington.