## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | Case No. 12-13262 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: March 19, 2013 at 10:00 a.m.<br>Objection Deadline: March 18, 2013 at 12:00 p.m.<br>Related Docket No. 356 |

### OBJECTION OF BOSTON FINANCE GROUP, LLC TO
### EXPEDITED MOTION OF DEBTOR SPARA, LLC FOR ENTRY OF ORDER
### DIRECTING THE EXAMINATION OF SANDEEP GUPTA, JOHN FERNANDO AND
### BOSTON FINANCE GROUP, LLC PURSUANT TO BANKRUPTCY RULE 2004

Boston Finance Group, LLC ("BFG"), by and through its undersigned counsel, files this objection (the "Objection") to the *Expedited Motion of Debtor Spara, LLC for Entry of Order Directing the Examination of Sandeep Gupta, John Fernando and Boston Finance Group, LLC Pursuant to Bankruptcy Rule 2004* (the "2004 Motion"). In support of this Objection, BFG respectfully represents as follows:

### PRELIMINARY STATEMENT

Spara's asserted basis for its 2004 Motion is to obtain information about Lexington Logistics, LLC ("Lexington"), so that Spara can determine whether Spara should take actions to maximize the value of Spara's membership interest in Lexington. Spara's actions before this Court and throughout these cases, however, do not support its purported cause. The 2004 Motion can serve no legitimate purpose. Even if Spara had all of the information it seeks, there is nothing Spara can do to maximize the value of Lexington, because Spara has no voting rights

---

[1]    The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

over Lexington.  All Spara can do to maximize value is to sell its interest through a public auction and in order to accomplish that all Spara needs is financial information form Lexington, and nothing from BFG.  As more fully described below, Lexington has provided Spara with financial information and BFG provided Spara with the contact information for the officers of Lexington.  Instead of utilizing the information already made available to it and rather than seeking the information directly from Lexington, Spara has instead determined to bring the 2004 Motion on an expedited basis on false pretenses and to engage in tactics to harass BFG and interfere with Lexington's new management.[2]

Bankruptcy Rule 2004 entitles Spara to examine the "acts, conduct, or property or the liabilities and financial condition of the debtor" or "any matter which might affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004.  First, Lexington is not a debtor, therefore, the first clause of Rule 2004 is inapplicable..  Second and most importantly, given that Spara has yet to demonstrate a reorganization purpose or the capital to take any action to maximize the value of Lexington and, therefore, at this time it is unlikely that Spara's interest in Lexington will have any meaningful effect on the administration of Spara's estate.   In fact, any impact by Lexington will certainly be exceeded by the waste in estate resources used to harass BFG, Mr. Fernando and Mr. Gupta.  For these reasons and the reasons more fully explained below, the 2004 Motion should be denied.

---

[2]    On November 6, 2012, BFG exercised its rights under that certain Pledge Agreement made by Spara to vote the membership interests in Lexington.  As of November 6, 2012, BFG appointed John Fernando as president of Lexington.  As of February 27, 2013, Mr. Fernando resigned as president of Lexington and was succeeded by Michael Ceming.  Sandeep Gupta is a financial advisor hired by Lexington at the request of Lexington's senior secured lender and with the senior secured lender's consent was appointed chief restructuring officer of Lexington on February 27, 2013 (collectively, the "Reorganization").  On February 28, 2013, BFG provided Spara with copies of the Reorganization documents, however, Spara failed to bring these facts to the Court's attention either in the context of its motion to expedite the 2004 Motion or the 2004 Motion.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Debtors, their estates and these contested

matters pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28

U.S.C. §§ 1408 and 1409.  These contested matters are core proceedings pursuant to 28 U.S.C.

§§ 157.

## OBJECTION

### A.      BFG and Its Officers Are No Longer In Control of Lexington

2.      On December 12, 2012, at Lexington's senior secured creditor's request,

Lexington retained Novo Turnaround Advisory Group, Inc. ("NTA") to provide financial

advisory and consulting services to Lexington.  On February 27, 2013, Lexington and NTA

agreed to adjust their relationship by appointing NTA's principal, Sandeep Gupta, as the chief

restructuring officer ("CRO") of Lexington.  At the same time, Lexington appointed Michael

Ceming as president of Lexington.  Lexington's senior secured creditor consented to these

appointments.  Shortly following Mr. Gupta's appointment as CRO, on February 27, 2013, Leo

J. Govoni, John Fernando, Jonathan Golden, Howard Harris, and Anthony Janicki, resigned their

positions as chair and officers of Lexington.  (*See* Lexington Logistics, LLC Unanimous Written

Consent of Sole Member, dated February 27, 2013 at ¶4, attached as **Exhibit 1**.)  As of February

27, 2013, Sandeep Gupta was CRO and Michael J. Ceming was President of Lexington.  (*See Id.*

at ¶5.)  These facts were known to Spara prior to filing the 2004 Motion.

3.      BFG and the BFG appointed officers were involved in the management of

Lexington only for the brief period between November 2012 to February 2013.  As a result of

their resignations, neither BFG nor Mr. Fernando currently have access to the broad categories of

current and historic financial, corporate and operational data requested by the 2004 Motion.

BFG does not remain "in effective operational control of Lexington," as Spara alleged. (2004 Motion at ¶13.)

4.      Further, Spara's 2004 Motion requests information beginning from January 1, 2012, nine months prior to BFG's exercise of control, and in some instances financial data from 2011 (*see* 2004 Motion Discovery Request No. 4), a time period during which Spara and its Hofmeister-appointed officers were in exclusive control of Lexington. Thus, information and documents created by Lexington and Spara relating to Lexington as far back as 2011 should already be in Spara's possession.

5.      BFG sent Spara a copy of the Reorganization documents on February 28, 2013 and, therefore, Spara was well aware that BFG and Mr. Fernando no longer have control over Lexington as of the date it filed the 2004 Motion. (*See* Letter dated February 28, 2013 from J. Golden to D. Smith, J. DiDanato and A. Kornfeld, attached as **Exhibit 2**.) Thus, for Spara to go fishing for documents and testimony concerning Lexington's value and direct requests for oral deposition and document requests to BFG and Mr. Fernando and not Lexington, at this juncture, is fishing in the wrong stream and can be intended only to harass BFG and its officers.

**B.      The 2004 Motion Violates the Agreement Between Spara and BFG to Withdraw the Stay Relief Motion and All Related Discovery**

6.      Another important detail left out of Spara's 2004 Motion is that the discovery requests made in the 2004 Motion are virtually identical to the discovery requests Spara agreed to withdraw on March 11, 2013, the day before it filed the 2004 Motion.

7.      On January 22, 2013, Spara served BFG with requests for document production in connection with the issues raised by BFG's Stay Relief Motion filed on January 10, 2013. (*See* Debtor's First Request for Production of Document Requests to Boston Finance Group, LLC, attached as **Exhibit 3**.) On January 31, 2013, Spara noticed Jonathan Golden, John Fernando

and Leo Govoni (Lexington's previous Chairman) for depositions. (*See* Case No. 12-13263, D.I. 30 and 31.) On February 1, 2013, Spara also noticed a deposition for an expert of BFG. (See Case No. 12-13263, D.I. 65.)

8.      Based on subsequent discussions between BFG and Spara, BFG agreed to withdraw the Stay Relief Motion and filed its withdrawal. (*See* D.I. 369.) In exchange, on March 11, 2013, counsel to Spara agreed "that all pending discovery requests shall be deemed withdrawn" but reserved its right "to seek similar discovery in different contexts." (*See* Email dated March 11, 2013 at 10:45 a.m. from T. Cairns to S. Brown, attached as **Exhibit 4**.)

9.      The very next day, Spara filed its 2004 Motion attaching discovery requests that virtually mirror the discovery requests it agreed to withdraw the day before, seeking the very same information – valuation-related information – from BFG and Mr. Fernando. (*See* Chart comparing January 22, 2013 requests for production of documents and Discovery Requests attached to 2004 Motion, attached as **Exhibit 5**.) Thus, at the time counsel to Spara agreed to withdraw its pending discovery requests and notices of deposition, it was preparing to assert the exact same discovery demands against BFG the very same day.

10.     Additionally, if Spara genuinely believed that it was appropriately raising the discovery issues in a wholly different context, it would presumably have tailored its requests differently and sought such discovery against Lexington, or provided such reasoning in its 2004 Motion. Not only did it fail to provide any explanation, because there is obviously nothing "different" about this context, it omitted these facts entirely.

C.      **Spara Has Never Conferred With Mr. Gupta, Lexington's CRO**

11.     Another important fact left out by Spara is that in response to Spara's document requests, on March 9, 2013, counsel to BFG reminded Spara's counsel, Alan Kornfeld, that Mr. Gupta had been appointed as CRO of Lexington and provided Mr. Kornfeld with Mr. Gupta's

email address. (See email dated March 9, 2013, 1:25 p.m. from G. Galardi to A. Kornfeld, attached as **Exhibit 6**.)

12.    Despite having access to Mr. Gupta, an officer of Lexington, BFG has been advised that Spara never contacted Mr. Gupta regarding these discovery requests and instead continues to harass BFG and its officers by requesting information that is already in the possession of Spara or that Lexington has already provided to Spara or that Spara should obtain directly form Lexington.

13.    A Rule 2004 examination may not be used to "harass, abuse or inquire into irrelevant matters, and examinations should not be overly disruptive or costly." In re Lufkin, 255 B.R. 204, 209 (Bankr. E.D. Tenn. 2000). Again, Spara's choice to file the expedited 2004 Motion before even contacting Mr. Gupta to discuss one of its premises for filing the motion to expedite the 2004 Motion, namely the foreclosure by Lexington's senior secured creditor or any of its document requests, amounts to abuse of its right to discovery and unnecessary disruption and harassment of BFG.[3]  (2004 Motion at ¶13.)

14.    More importantly, Spara has provided no justification why it is entitled to depose Mr. Gupta, rather than seek directly from such lender a statement of the lender's present intent. If such lender has no present intent to foreclose, then this entire fishing expedition is for naught. In fulfilling his obligations as CRO to Lexington, Mr. Gupta is bound by the terms of his engagement with Lexington and the terms of Lexington's operating agreement. Spara does not make any allegations that Mr. Gupta is not adequately performing those obligations, or that he is taking any action adverse to Lexington's interests. Similarly, it is unclear what Spara expects to learn from the oral deposition of BFG or Mr. Fernando that is not already in its possession or has

---

[3]    BFG understands that Lexington has engaged counsel, Paul Lucey. BFG further understands that Mr. Lucey reached out to Spara's counsel on March 15, 2013, but Spara's counsel never responded to Mr. Lucey.

not already been provided by BFG or Lexington. Accordingly, the 2004 Motion should be denied as it is premature and filed in contravention of the meet and confer prerequisites of the Local Rules.

> **D.    Lexington Has Already Provided Adequate Financial Information to Spara and Subjecting BFG and Mr. Fernando, and Mr. Gupta, CRO of Lexington to Further Discovery Amounts to Harassment**

15.    Contrary to Spara's allegation that "BFG has not provided documents responsive to the Debtor's discovery", Lexington, through its officers appointed by BFG, has already provided Spara many of the documents requested in the 2004 Motion. (2004 Motion at ¶13.) Spara's focus on BFG rather than Lexington is telling; Spara intends to harass BFG through the 2004 Motion, rather than use the process for legitimate purposes.

16.    Spara's document requests from BFG on February 27, 2013, included the following documents: (1) Original credit agreement, (2) Forbearance agreement, (3) at least three Borrowing Base Reports (4) All supporting detail to borrowing base reports, (5) Updated 13-week cash flow projections, (6) 13 week cash flow actuals, (7) Accounts Payable, (8) List of Cash on Delivery/Cash in Advance vendors, (9) Accounts Receivable, (10) Updated 2013 plan, by month, (11) 2014 – 2015 plan, (12) 2011 and 2012 actual sales by customer, product, and margin, (13) 2013 sales forecast, booked and potential (14) 2014-2106 booked business and potential business, (15) 2013-2015 capex plan, and (16) current organization structure. BFG is not certain how most of this information will permit Spara to ascertain what actions it needs to take to maximize the value of Lexington, when Spara lacks any resources to take any actions at all.

17.    After the February 6, 2013 hearing on BFG's Stay Relief Motion, counsel to and principals of Spara, BFG and Lexington met to discuss the issues raised in the Stay Relief Motion. The next day, on February 7, 2013, Lexington through BFG provided Spara and its

counsel with financial information, including copies of the following documents: 1) Lexington Balance Sheet, as of 12/31/12; 2) Lexington Income Statement, as of 12/31/12; 3) Lexington Statement of Cash Flow, as of 12/31/12; 4) Lexington 13 week cash flow; and 5) a copy of Lexington's extant funding request made to Fifth Third Bank, dated January 24, 2013, which attached a 13 week cash flow projection from 1/25/13 to 4/19/13. (*See* Email dated February 7, 2013 at 11:11 a.m. from S. Brown to A. Kornfeld and L. Jones, attached as **Exhibit 7**.) Furthermore, during the parties' meeting, Spara acknowledged that it possesses information respecting damages assessments relative to the pending Lexington customer litigation about which this Court has been advised.[4]

18.    Although the scope of a Rule 2004 examination may be broad, it is not without limits. "[A] Rule 2004 examination must be both relevant and reasonable," and it "should not encompass matters that will be unduly burdensome to the [examinee] and duplicative of previously furnished information." In re Symington, 209 B.R. 678, 684 (D. Md. 1997); *see also* In re Washington Mut. Inc., 408 B.R. 45, 50 (D. Del. Bankr. 2009)("There are, however, limits to the use of Rule 2004 examinations...[i]t may not be used for purposes of abuse or harassment...")(internal citations omitted).   The document requests made by the 2004 Motion are duplicative of the documents already given to Spara and the requests of BFG Spara agreed to withdraw.  Further, the documents produced to Spara provide current and adequate information for Spara to determine the value of Lexington.

19.    Any information respecting the extent of the senior secured creditor's claim and lien should be sought directly from such lender.  To the extent Spara believes there are defenses

---

[4]    Due to the confidentiality of these documents, copies are not attached here, but will be provided to the Court upon request.

to or claims against such lender, then similarly, Spara should seek relevant discovery from such lender.

## CONCLUSION

20.    BFG is not the proper party from which Spara should be seeking discovery to obtain information about Lexington, so that Spara can determine whether Spara should take actions to maximize the value of Spara's membership interest in Lexington.  Spara knew that BFG was not in control of Lexington and, therefore, not the appropriate party, before filing the 2004 Motion and before seeking expedited consideration of the 2004 Motion.  Spara was provided with the contact information for the officer of Lexington to whom Spara should have directed its inquiry and with whom Spara should have conducted its meet and confer prior to the submission of the 2004 Motion and filing the motion to expedite the hearing on the 2004 Motion. Spara knows the contact information for the representatives of Lexington's senior secured lender and could have verified with such lender its intent to foreclose and the timing, if at all.  Spara did not seek to investigate or confirm its speculative allegations before filing the 2004 Motion. Spara conveniently omitted all these facts from its 2004 Motion.

21.    Accordingly, the 2004 Motion should be denied.  Nevertheless, should Spara seek information from the lender or Lexington, if at all, and be frustrated in its lawful efforts or proper purposes, then Spara should come back to this Court and explain the circumstances of its frustration.  Harassing BFG and its representatives would not be a legal effort or a proper purpose.

[Space Left Intentionally Blank]

WHEREFORE, for the reasons stated in this Objection, Boston Finance Group, LLC respectfully requests that this Court deny the 2004 Motion and grant such other and further relief as this Court deems just and proper.

Dated: March 18, 2013
Wilmington, Delaware

/s/Stuart M. Brown
Stuart M. Brown (DE 4050)
R. Craig Martin (DE 5032)
**DLA PIPER LLP (US)**
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
        craig.martin@dlapiper.com

-and-

Gregg M. Galardi (DE 2991; NY 4535506)
Sarah E. Castle (NY 4932240)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregg.galardi@dlapiper.com
        sarah.castle@dlapiper.com

*Counsel to Boston Finance Group, LLC*