IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al., [1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Docket Ref Nos. 8, 20, 53, 264, 406** |

**FIFTH INTERIM ORDER (A) AUTHORIZING DEBTOR GREENWOOD FORGINGS, LLC TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105 AND 363(c)(2); (B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361; AND (C) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

THIS MATTER came before the Court on **April 2, 2013 at 10:30 a.m.** upon the Debtor's Motion For Interim And Final Orders: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§ 105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. § 361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "***Motion***") [ECF. No. 8] pursuant to which the Debtor, Greenwood Forgings, LLC, seeks entry of a fifth interim order (the "***Fifth Interim Cash Collateral Order***") authorizing the use of Cash Collateral[2]. On January 14, 2013, the Court entered the First Interim Order: (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "***First Interim Cash Collateral Order***") [ECF No. 20]. On January 25, 2013, the Court entered the Second

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

Interim Order:  (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362; And (D) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001 (the "*Second Interim Cash Collateral Order*") [ECF No. 53].  On February 22, 2013, the Court entered the Third Interim Order:  (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; and (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362 (the "*Third Interim Cash Collateral Order*") [ECF No. 264].  On March 19, 2013, the Court entered the Fourth Interim Order:  (A) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. §§105 And 363(C)(2); (B) Granting Adequate Protection Pursuant To 11 U.S.C. §361; and (C) Modifying The Automatic Stay Pursuant To 11 U.S.C. §362 (the "*Fourth Interim Cash Collateral Order*") [ECF No. 406].

## RECITALS/FINDINGS OF FACT

A.    The Debtor has requested from Bridgeport Capital Funding, LLC ("*Bridgeport*") and Boston Finance Group LLC ("*BFG*") the use of Cash Collateral as set forth in the Motion (the "*Cash Collateral*") and Bridgeport is willing to give such consent, subject to the terms and conditions set forth in this Fifth Interim Cash Collateral Order. Absent authority to use Cash Collateral, Debtor will not have sufficient available sources of working capital to preserve the value of its assets.  The ability of the Debtor to obtain sufficient working capital and liquidity through the use of Cash Collateral as set forth in this Fifth Interim Cash Collateral Order is vital to the preservation and maintenance of the value of the Debtor's assets.  Accordingly, the Debtor has an immediate need to obtain authorization to use Cash Collateral in order to, among other things, preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as

2

defined under Section 541 of the Bankruptcy Code, the "*Estate*") in order to maximize the recovery to all creditors of the Estate.

B.     Bridgeport has a first priority secured lien on all of the Debtor's assets, including without limitation, furniture, fixtures and equipment, inventory, accounts receivable and/or accounts, products and proceeds thereof, now existing and hereafter arising, wherever located, including without limitation, the Cash Collateral, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment (collectively, the "*Collateral*").

C.     Subject to the Lien Challenge, as defined below, BFG asserts a first priority lien on the Debtor's machinery and equipment and proceeds thereof.  Subject to the Lien Challenge, as defined below, BFG asserts a second priority lien on certain of the Debtor's Cash Collateral.

D.     The terms of this Fifth Interim Cash Collateral Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for transactions of this type, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of this Fifth Interim Cash Collateral Order have been negotiated in good faith and at arms' length by and among the Debtor, on one hand, and Bridgeport and BFG, on the other hand, with all parties being represented by counsel.  Any consent to the use of Cash Collateral under the terms of this Fifth Interim Cash Collateral Order shall be deemed to have been given in good faith by Bridgeport as that term is used in Section 364(e) of the Bankruptcy Code.  This Fifth Interim Cash Collateral Order, as with the preceding interim cash collateral orders, is entered over the objection of BFG.

3

E.     The continued use of Cash Collateral by the Debtor is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (a) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (b) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

F.     Sufficient cause exists for immediate entry of this Fifth Interim Cash Collateral Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections that were made to the Debtor's use of cash collateral (to the extent such objections have not been overruled or withdrawn) are hereby overruled.

Based upon the foregoing, and for the reasons stated on the record, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.     The relief requested in the Motion is Granted, on an interim basis, as provided in this Fifth Interim Cash Collateral Order.  The Recitals are hereby incorporated by reference herein.

2.     **Authorization to Use Cash Collateral**. Subject to the terms and conditions of this Fifth Interim Cash Collateral Order, the Debtor shall be and hereby is authorized to use on an interim basis, until May 31, 2013 (the "***Termination Date***"), the Cash Collateral up to (i) with respect to expenses budgeted or paid during the week ending March 30, 2013 for payroll and health insurance including any outstanding checks, $12,500, (ii) with respect to the period beginning as of April 3, 2013 and ending May 31, 2013, the aggregate amount of $218,381. Further, all disbursements shall be made in accordance with the budget provided to BFG and

4

Bridgeport (except that no professional fees shall be paid). Nothing in this Fifth Interim Cash Collateral Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Fifth Interim Cash Collateral Order.

3.     **Bridgeport Replacement Liens**.  As adequate protection for the diminution in value of its interests in the Prepetition Collateral, including Cash Collateral, on account of the Debtor's use of such Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, Bridgeport is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral, including without limitation, to the extent of any diminution in value of its interests in the Prepetition Collateral (the "***Bridgeport Replacement Lien***"); provided, however, that the Bridgeport Replacement Lien shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against Bridgeport or the proceeds of any such causes of action. The Bridgeport Replacement Lien shall have the same priority as Bridgeport's liens as of the Petition Date, senior to all other security interests in, liens on, or claims against any of the Collateral, including without limitation, the Cash Collateral, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment.

4.     **BFG Replacement Liens**.  As adequate protection for the diminution in value of its asserted interest in the Cash Collateral, on account of the Debtor' use of the Cash Collateral, and the imposition of the automatic stay, to the extent of its interest in Cash Collateral, if any, BFG is hereby granted pursuant to Sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in the Debtor's accounts

and the proceeds thereof, including without limitation, to the extent of any diminution in value of its asserted interests in the Cash Collateral (the "*BFG Replacement Lien*"), subject to the *Bridgeport Replacement Lien* (the priority of the BFG Replacement Lien and Bridgeport Replacement Lien shall both have the same priority that existed prepetition) and other lien priorities; provided, however, that the BFG Replacement Lien shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against BFG or the proceeds of any such causes of action; provided further, however, that nothing herein shall prejudice BFG from seeking further adequate protection with respect to the Debtor's use, sale, or lease of its machinery and equipment or for the Debtor's use of the Cash Collateral. The *BFG Replacement Lien* shall have the same priority as BFG's asserted interest in Cash Collateral as of the Petition Date.

     5.     **Bridgeport's and BFG's Additional Adequate Protection**. In exchange for Bridgeport's pending consent for the Debtor to use Cash Collateral and as ordered by the Court respecting BFG, the Debtor has agreed to grant Bridgeport and BFG the following as additional adequate protection of its interests in the Prepetition Collateral (the "*Additional Adequate Protection*"):

     a.     **Replacement Liens:**

     The *Bridgeport Replacement Liens* and the *BFG Replacement Liens* shall be provided to Bridgeport and BFG, respectively, and are governed as set forth in paragraphs (3) and (4) above.

     b.     **Section 507(b) Priority Claims:**

     As further adequate protection for the diminution in value of Bridgeport's security interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtor's use of such Prepetition Collateral (including Cash Collateral), and the imposition of the automatic stay, this Fifth Interim Cash Collateral Order grants to Bridgeport, for the benefit of itself, as and to the extent provided by Section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code

to the extent of any diminution in value of Bridgeport's interests in the Prepetition Collateral (the "**Bridgeport Adequate Protection Super-priority Claim**"); provided, however, that the Bridgeport Adequate Protection Super-priority Claims shall not extend to any causes of actions commenced, or that may be commenced, pursuant to chapter 5 of the Bankruptcy Code against Bridgeport or the proceeds of the foregoing. The Bridgeport Adequate Protection Super-priority Claim shall have priority over all administrative expense claims and unsecured claims against Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

     c.    **Adequate Protection Payments:**

As further adequate protection, the Fifth Interim Cash Collateral Order authorizes and directs the Debtor to provide adequate protection to Bridgeport in the form of Adequate Protection Payments as part of Cash Collateral in an amount not to exceed the total amount that Bridgeport is owed under the Agreement by the Debtor (the "*Reserve*"). Any funds received by Bridgeport with respect to Accounts (accounts receivable) of the Debtor in excess of the Reserve shall be promptly disbursed by Bridgeport to the Debtor and shall be treated as cash collateral for purposes of this Fifth Interim Cash Collateral Order. The Debtor and Bridgeport will use their best efforts to reconcile Bridgeport's final claim and remit any excess Reserves promptly to the Debtor by the Termination Date.

     d.    **Additional Adequate Protection:**

Bridgeport and BFG reserve the right to seek additional forms of adequate protection, including for BFG the right to seek a Section 507(b) Superpriority claim subject, however, to the **Bridgeport Replacement Lien** (the priority of any Superpriority claim and the Bridgeport Replacement Lien shall both have the same priority that existed prepetition) and other lien priorities, any objections by any party-in-interest, including, without limitation, the Debtor, any Unsecured Creditor Committee (the "*Committee*") that may be appointed in this Chapter 11 case and/or the U.S. Trustee.

As additional adequate protection, the Debtor shall:

     1.    On or before April 15, 2013, file either (a) a motion seeking approval of a sale of substantially all assets of the Debtor to a stalking horse bidder, subject to overbid, but without need for Court approval of formal bidding procedures, or (b) a motion seeking the approval of bidding procedures on an expedited basis, scheduling an auction, and seeking approval of the sale of substantially all of the Debtor's assets, among other related relief. The Debtor shall request that the pension plans permit the real estate and improvements owned by the pension plans and leased by the Debtor to be marketed and offered for sale together with the assets of the Debtor. In any case, the Debtor shall schedule a sale hearing on or about May 24, 2013;

     2.    On or before April 25, 2013, in the case of option (b) in the foregoing subsection (1) above, obtain an order from the Court approving the bidding procedures, scheduling an auction, and scheduling a sale hearing, and granting other related relief; and

     3.    On or before May 31, 2013, consummate the sale of substantially all assets of the estate.

7

4.        Debtor's failure to perform in accordance with sub-paragraphs 1, 2 or 3 above, without BFG's prior written consent, shall constitute a default, resulting in the immediate occurrence of the Termination Date.   All rights of the Debtor to seek further use of cash collateral following the occurrence of the Termination Date are preserved, as are all rights of BFG to contest such request and to seek any other or further relief.

6.        **Section 506(c) Claims**. Subject to a final order, no costs or expenses of administration which have or may be incurred in the Case at any time shall be charged against Bridgeport or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Bridgeport and no such consent shall be implied from any other action, inaction or acquiescence by Bridgeport.

7.        **Collateral Rights**. Until all of the Prepetition Bridgeport Obligations shall have been indefeasibly paid and satisfied in full, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral without further order of the Court, except as otherwise provided in this Fifth Interim Cash Collateral Order.

8.        **Disposition of Collateral**. Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral in any way inconsistent with the terms and conditions of this Fifth Interim Cash Collateral Order without the prior written consent of Bridgeport and BFG (and no such consent shall be implied, from any other action, inaction or acquiescence by Bridgeport and BFG) and an order of this Court, except for sales of Debtor's Inventory in the ordinary course of its business or as approved by orders of the Bankruptcy Court entered prior to the date hereof.

9.        **Bridgeport's Reservation of Rights**. The terms, conditions and provisions of this Fifth Interim Cash Collateral Order are in addition to and without prejudice to the rights of Bridgeport to pursue any and all rights and remedies under the Bankruptcy Code, the prepetition Bridgeport Factoring Agreement, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection,

8

to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

10.    **BFG's Reservation of Rights**. The terms, conditions and provisions of this Fifth Interim Cash Collateral Order are in addition to and without prejudice to the rights of BFG to pursue any and all rights and remedies under the Bankruptcy Code, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Cash Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

11.    **Binding Effect**. The provisions of this Fifth Interim Cash Collateral Order, the Super-priority Claims and any and all rights, remedies, privileges and benefits in favor of any of Bridgeport and BFG or acknowledged in this Fifth Interim Cash Collateral Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Fifth Interim Cash Collateral Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissal of the Case.

12.    Any order dismissing the Case under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that Bridgeport's and BFG's liens and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Prepetition Bridgeport Obligations and all obligations owed to BFG are indefeasibly paid and satisfied in full.

13.    Subject to the Lien Challenge as to BFG, as defined below, in the event this Court modifies any of the provisions of this Fifth Interim Cash Collateral Order following the entry thereof, (a) such modifications shall not affect the rights or priorities of Bridgeport and BFG pursuant to this Fifth Interim Cash Collateral Order with respect to the Collateral or any portion of the Prepetition Bridgeport Obligations or any portion of the obligations owed to BFG which arises or is incurred or is advanced prior to such modifications, and (b) this Fifth Interim Cash Collateral Order shall remain in full force and effect except as specifically amended or modified.

14.    With the understanding that the Debtor disputes that BFG has any interest in the Cash Collateral that is subject to any protection under the Bankruptcy Code and with the express reservation of rights of the Debtor to challenge BFG's asserted interest in the Cash Collateral, this Fifth Interim Cash Collateral Order shall be binding upon the Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of the any Debtor. This Fifth Interim Cash Collateral Order shall also inure to the benefit of Bridgeport and BFG and their respective successors and assigns.

15.    **Objections Overruled**. All objections to the entry of this Fifth Interim Cash Collateral Order are, to the extent not withdrawn, hereby overruled; provided, however, BFG's objections and responses to the Motion shall be deemed filed with respect to Debtor's use of

DOCS_SF:82861.5 73864/001

Cash Collateral following the Termination Date and BFG shall not be required to file any further objection or other response to the Motion. Notwithstanding this, any Official Committee (if appointed) and any other party in interest granted standing by the Court shall have until: (a) **April 6, 2013** as to BFG's asserted liens in the Debtor's furniture, fixtures and equipment identified in any UCC-1 financing statement duly recorded by BFG against the Debtor, and (b) **June 7, 2013** as to BFG's asserted liens in any other Collateral, including Cash Collateral (the foregoing items (a) and (b) together constitute the *"Challenge Period"*), to commence, as appropriate, a contested matter or adversary proceeding raising an objection or challenge to the validity, priority, and extent of BFG's asserted interest in the Collateral (the *"Lien Challenge"*). For the avoidance of doubt, the Challenge Period set forth herein as to BFG supersedes the Challenge Period set forth in the First Interim Cash Collateral Order, Second Interim Cash Collateral Order, Third Interim Cash Collateral Order and Fourth Interim Cash Collateral Order (the Challenge Period as to Bridgeport set forth in such prior orders has expired). If no such adversary proceeding is timely commenced as of such date then, without further order of the Court, the claims, liens and security interests of BFG and BFG's assertion that it has an interest in the Collateral, including without limitation Cash Collateral, subject to a further determination as to the value of BFG's interest in Cash Collateral, shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Case and any subsequent chapter 7 case and shall not be subject to challenge by any party in interest as to validity, priority or otherwise. Further, any trustee appointed or elected in this Chapter 11 Case shall, until the expiration of the period provided herein for asserting Lien Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of

11

the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in this Fifth Interim Cash Collateral Order.

16.    **Further Hearing**. A further Hearing before this Court on the *Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. §361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. §362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**Motion**"), pursuant to Bankruptcy Rule 4001(c)(2) shall be scheduled for **a date and time prior to May 31, 2013** (the "***Further Cash Collateral Hearing***"). The Debtor shall, within three (3) business days of the entry of this Fifth Interim Cash Collateral Order by the Court and the scheduling of the Further Cash Collateral Hearing, serve by overnight mail copies of this Fifth Interim Cash Collateral Order to the Noticed Parties, as defined in the Motion and any other party that has requested notice in this Case as of the date of entry of this Order.  Any party in interest objecting to the relief sought at the Further Cash Collateral Hearing shall serve and file written objections that conform to the applicable Bankruptcy Rules and Local Rules, which objections shall be served upon (a) the U.S. Trustee: 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Jane M. Leamy, Esq.); (b) counsel to the Debtors: Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), (Attn: Laura Davis Jones, Esq.); (c) counsel for Bridgeport: Genovese, Joblove & Battista, P.A., 200 E. Broward Blvd, Ste 1110, Ft. Lauderdale, Florida 33301 (Attn: Barry P. Gruher, Esq.) and Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801 (Attn: Patrick J. Reilley, Esq.) and (d) counsel for BFG: DLA Piper LLP, 919 North Market

DOCS_SF:82861.5 73864/001

Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) and shall be filed

with the Clerk of the United States Bankruptcy Court for the District of Delaware, no later than

five (5) business days prior to the further hearing at 4:00 p.m. prevailing Eastern time.

Dated: April ___, 2013.

HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

13