# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, <u>et al</u>.,[1]<br><br>Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 12-13262 (BLS)<br><br>**Related Docket No. 102** |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF REVSTONE INDUSTRIES, LLC TO PROPOSED INTERCOMPANY TRANSFERS

The Official Committee of Unsecured Creditors (the "Committee") of Revstone Industries, LLC ("Revstone"), by and through its undersigned counsel, hereby objects to certain anticipated transfers proposed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to paragraph 18 of the Final Order Authorizing Debtor to (I) Maintain Existing Cash Management System and Bank Account, (II) Continue Use of Existing Checks and Business Forms, (III) Obtain Limited Waiver of Section 345(b), and (IV) Continue Intercompany Transactions (Docket No. 102) (the "Cash Management Order"). In support, the Committee respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

**FACTUAL BACKGROUND**

**I.     General Case Background**

1. On December 3, 2012 (the "Petition Date"), Revstone filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

2. On December 17, 2012, the Office of the United States Trustee appointed the Committee pursuant to Bankruptcy Code section 1102(a)(1). The Committee selected and authorized the employment of Womble Carlyle Sandridge & Rice, LLP ("Womble") as its counsel and FTI Consulting, Inc. ("FTI") as its financial advisor.

3. To date, no trustee or examiner has been appointed in any of the above-captioned bankruptcy cases. The Committee's motion to appoint a Chapter 11 trustee remains pending.

**II.    Filing of Related Cases**

4. On the Petition Date, a related entity, Spara, LLC ("Spara"), filed a petition under chapter 11 of the Bankruptcy Code.

5. On January 7, 2013, Greenwood Forgings, LLC ("Greenwood") and US Tool & Engineering, LLC ("US Tool") also filed petitions under chapter 11 of the Bankruptcy Code.

6. On February 6, 2013, this Court entered an order authorizing the joint administration of the four (4) above-referenced cases (Docket No. 173).

### III. The Revstone Cash Management Order

7. On January 10, 2013, the Court entered the Cash Management Order. The Cash Management Order requires Revstone, among other things, to:

> provide counsel and the financial advisors for the Committee with five (5) business days' prior written notice with respect to (i) any payments by [Revstone], or any of its direct or indirect subsidiaries, to, on behalf of, or for the benefit of Mr. or Mrs. George Hofmeister. . . .

Cash Management Order ¶ 18.

8. Thereafter, the Debtors have provided the Committee's financial advisors with notice of certain proposed transfers on a weekly basis. On April 11, 2013, the Debtors provided the Committee's financial advisors with notice of Revstone's intent to transfer funds to or on behalf of George Hofmeister, including a proposed payment to Sheldon Toll, Mr. Hofmeister's personal attorney, presumably pursuant to an indemnity provision under the operating agreement. The exact amount of the proposed transfer is unclear, but it appears to be over $17,000. The remaining proposed reimbursement was for expenses incurred by Mr. Hofmeister in connection with his attendance at a tradeshow.

## OBJECTION[2]

### A. The Proposed Indemnification Payment Must Result From A Covered Matter To Be Reimbursable

9. The Debtors propose to pay Mr. Toll, on behalf of Mr. Hofmeister, at least $17,000 for legal fees as an indemnity obligation of Revstone. The Committee requested additional information regarding the proposed transfer. Based on the representations made and/or documentation provided to the Committee to date, it is unclear under which operating agreement's indemnity provision the payment is being made.[3] However, under the Second Amended and Restated Operating Agreement dated January 17, 2013, for Revstone, Mr. Hofmeister is only entitled to indemnification for "Covered Matters." Covered Matters include matters that result from an actual or threatened action, suit, or proceeding by reason of the person's role as a Manager or officer of Revstone. Operating Agreement § 10.1. Moreover, only reasonable expenses for Covered Matters may be paid or reimbursed. Id.

10. The Committee requested additional information regarding the proposed indemnification transfer to determine whether it was related to a Covered

---

[2] Additionally, to the extent it is determined that Mr. Toll's retention is within the scope of the Court's Order Pursuant to Sections 105(a), 327, 328 and 330 of the Bankruptcy Code Authorizing the Debtors to Retain, Employ and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business (Docket No. 416) (the "OCP Order"), the Debtors and Mr. Toll should be required to comply with the terms of the OCP Order prior to receiving any compensation from the Debtors.

[3] The Committee reserves all rights to raise additional objections in the extent the operative indemnification provision differs from the provision contained in the Second Amended and Restated Operating Agreement.

Matter and whether it was reasonable. In response to the information request, Mr. Toll represented to the Committee that approximately $3,500 of the proposed reimbursement arose from Mr. Hofmeister's objection to the retention of Womble as counsel to the Committee. The remaining reimbursement relates to Mr. Hofmeister's objection to the Committee's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 2004 and Del. Bankr. L.R. 2004-1 Directing Hofmeister to Produce Documents and to Appear for Deposition Upon Oral Examination (Docket No. 75) (the "2004 Motion") and Mr. Hofmeister's compliance with the order granting the 2004 Motion.

11. Mr. Hofmeister's objection to the retention objection is not a Covered Matter and any related expenses should not be paid by the estate. These expenses did not arise "from an actual or threatened action, suit, or proceeding by reason of [Mr. Hofmeister's] role as a Manager or officer of Revstone." The objection was filed by Mr. Hofmeister individually, not the Debtors. The objection was a pleading propounded by Mr. Hofmeister rather than defensive act taken by Mr. Hofmeister, and was not a response to any actual or threatened litigation. Further, the retention objection was not commenced as a result of Mr. Hofmeister's role as a manager or officer of Revstone. Accordingly, the fees related to the objection to Womble's retention are not compensable indemnity obligations.

12. In order to be a reimbursable indemnity obligation, the proposed expenses must also be reasonable. To determine the reasonableness of the

proposed reimbursement, at a minimum, time records that include the amount of time spent on a matter, amount billed, and a description of the task completed are required. This information was not provided to the Committee, and therefore, the Committee is unable to ascertain whether the proposed reimbursement of more than $17,000 in legal fees is reasonable.

**B.     Mr. Hofmeister Must Prove That The Proposed Indemnification Payment Is An Administrative Expense**

13.     Even if the expenses result from Covered Matters and are reasonable, they must be entitled to administrative priority to be paid prior to payment of administrative and other higher priority claims. It is the proponent's burden to establish entitlement to an administrative expense. See, e.g. In re Smith Corona Corp., 210 B.R. 243, 245 (Bankr. D. Del. 1997) (stating that burden is on movant to establish entitlement to administrative expense). In order to be an administrative expense of the estate, the expenses must an "actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). "For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession ....[and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." In re O'Brien Environmental Energy, Inc., 181 F.3d 527, 532–33 (3d Cir. 1999), citing Cramer v. Mammoth Mart, Inc., (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976).

14. Mr. Hofmeister has not satisfied his burden of demonstrating entitlement to reimbursement for the indemnification claim as an administrative expense. The proposed reimbursement for the expenses related to Mr. Hofmeister's objection to Womble's retention does not arise from a transaction with the debtors-in-possession and did not benefit the estates. Similarly, the expenses that were incurred in connection with responding to and complying with the 2004 Motion were not a result of transactions with the Debtors. The 2004 Motion was directed to Mr. Hofmeister based on his pre-petition conduct and focused on topics related to such pre-petition conduct. Indemnification obligations that arise from pre-petition conduct are not entitled to priority as an administrative expense. See, e.g., In re Summit Metals, Inc., 379 B.R. 40, 56 (Bankr. D. Del. 2007) (denying for administrative expense priority for indemnification claim where litigation from which such claim arose was based upon pre-petition conduct); In re Mid–American Waste Sys., Inc., 228 B.R. 816, 821–22 (Bankr. D. Del. 1999) (refusing to award administrative expense status for indemnification claims arising from securities litigation, which arose pre-petition out of the applicants' pre-petition conduct).

**C.     The Proposed Expenses Must Be Properly Allocated Between The Entities Benefitting From The Incurred Expenses**

15. If Mr. Hofmeister is otherwise able to demonstrate entitlement to reimbursement for his indemnification claim, any such claim, together with Mr. Hofmeister's other approved expense reimbursements, must be allocated between the Debtors that benefitted from the expenses. In addition to the indemnification claim,

Mr. Hofmeister is seeking reimbursement for expenses incurred in connection with his attendance at a tradeshow. It is unclear how Revstone benefitted from any of the proposed expense reimbursements, including Mr. Hofmeister's attendance at the tradeshow.

16. All approved expense reimbursements should be allocated between the Debtor and non-Debtor entities that benefitted from the conduct giving rise to the expense. Rather than allocating these proposed expenses, the Debtors have proposed that Revstone provide the reimbursement, regardless of whether Revstone is the beneficiary of the incurred expense. Accordingly, these proposed expenses, together with any future proposed expense reimbursements, must be allocated to the entity for whose benefit Mr. Hofmeister incurred the expense and should be paid by such entity. Revstone's creditors should not suffer the burden of paying expenses incurred for the benefit of other Debtor and non-Debtor entities.

**D.     The Proposed Expense Reimbursements Should Be Paid, If Allowed As Administrative Expense Claims, Only Pursuant To A Confirmed Plan**

17. To date, a number of applications for compensation have been filed by professionals for the Committee or the Debtors. Moreover, the Committee expects that additional fee applications will continue to be filed in the bankruptcy cases as retained professionals incur fees and expenses on behalf of their clients.

18. Among others, Huron Consulting Services, LLC ("Huron") has filed its staffing report for the period between January 17, 2013 and March 31, 2013. As set forth in such reports, to date, Huron appears to have accrued in excess

of approximately $3.2 million in fees and expenses. Additionally, the Committee's professionals, including undersigned counsel for the Committee, have filed applications for fees and expenses incurred between December 2012 and February 2013. Not counting the fees and expenses incurred to date by the Debtors' counsel, the fees and expenses for Committee professionals and for Huron exceed $4.2 million.

19. Bankruptcy Code section 1129(a)(9) requires that allowed administrative expense claims be paid upon the effective date of a plan. See 11 U.S.C. § 1129(a)(9). However, there is no requirement in the Bankruptcy Code, or otherwise, that allowed administrative expense claims be paid on an interim basis. Indeed, this Court and other courts have held that the timing of payment of allowed administrative expense claims resides within the discretion of the bankruptcy court. In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005). In making the determination of whether to require the immediate payment of allowed administrative expense claims, bankruptcy courts generally consider: (i) prejudice to the debtor; (ii) hardship to the claimant; and (iii) potential detriment to other creditors. Id.

20. In this case, the current proposed payments to Mr. Hofmeister together with any future payments to or for the benefit of Mr. Hofmeister arising from the alleged indemnification rights that he may have against one or more of the Debtors, should be withheld until (i) such claims are allowed by this Court as

administrative expenses and (ii) it is evident that the Debtors are able to satisfy all administrative expenses in full.  Otherwise, other holders of allowed administrative claims may be harmed by the receipt by Mr. Hofmeister, and/or his counsel (directly or indirectly) of more than what may be their respective pro rata share of funds available at the end of these bankruptcy cases to distribute to holders of allowed administrative expense claims.  In the event of such unequal distributions, the Debtors would similarly face harm because the Debtors would need to initiate expensive clawback litigation to obtain funds that ultimately may prove to be unrecoverable.  In contrast, Mr. Hofmeister suffers little harm from receiving the same treatment as other similarly situated creditors.

21.     By this Objection, in short, the Committee requests that the Court require Mr. Hofmeister to establish that any claims for which he seeks reimbursement, pursuant to the Cash Management Order or otherwise, (a) are properly administrative expense claims and (b) are, in fact, administrative expense claims that may be asserted against the Debtors.  To the extent that Mr. Hofmeister can establish his entitlement to payment of these reimbursement requests as administrative expenses of one or more of the Debtors, such claims must thereafter be allocated amongst the Debtors receiving any benefit from such claims.  Finally, in light of the amount of professional fees and expenses and other administrative expense claims that have already accrued, and the other administrative expense claims, including additional significant professional fees and expenses, that are likely

to accrue during the course of these bankruptcy cases, the Committee further requests that the Court order that no payments for any administrative expense claims be made to Mr. Hofmeister (or any professionals acting on his behalf) unless and until a plan (or plans) of reorganization have been confirmed and become effective.

WHEREFORE**,** for all of the foregoing reasons, the Committee respectfully requests that the Debtors (i) not pay the proposed indemnification expenses; (ii) delay current and future proposed expense reimbursements until they have been properly allocated to the entity that derived benefits from the expense; (iii) direct that expense reimbursements be paid by the entity that derived the benefit from the expense; and (iv) delay payment of any current and future proposed expense reimbursement until after it has been determined that the Debtors are able to satisfy present and future administrative expenses in full.

Dated: April 23, 2013     **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

    */s/ Ericka F. Johnson*
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Matthew P. Ward (Del. Bar No. 4471)
Ericka F. Johnson (Del. Bar No. 5024)
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
Telephone:  (302) 252-4320
Facsimile:  (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com

Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC