IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**APPLICATION OF GREENWOOD FORGINGS, LLC FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ANGLE ADVISORS LLC AS INVESTMENT BANKERS FOR GREENWOOD FORGINGS, LLC NUNC PRO TUNC TO APRIL 4, 2013**

Greenwood Forgings, LLC, a debtor and debtor-in-possession (the "Debtor" or "Greenwood") in the above-captioned bankruptcy proceeding, files this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), authorizing the employment and retention of Angle Advisors LLC ("Angle") as investment banker to Greenwood, effective nunc pro tunc to April 4, 2013 (as defined below), in accordance with the terms and conditions set of that certain engagement letter, dated as of May 2, 2013, (the "Engagement Letter"), as Exhibit 1 annexed to Exhibit A attached hereto. In support of this Application, Greenwood submits the Declaration of Clifton H. Roesler, a Managing Director of Angle (the "Roesler Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtor respectfully states as follows.

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4. Greenwood seeks entry of the Order authorizing the employment and retention of Angle as its investment banker in accordance with the terms and conditions of the Engagement Letter, effective nunc pro tunc to April 4, 2013.

## Background

5. On December 3, 2012, Debtors Revstone Industries, LLC ("Revstone") and Spara, LLC ("Spara") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 7, 2013, Greenwood and US Tool & Engineering, LLC ("US Tool", with Revstone, Spara and Greenwood, collectively, the "Debtors") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have

continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the Revstone case. No committee has been appointed in the cases of Spara, Greenwood and US Tool. No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

7. Prior to its chapter 11 filing, Greenwood was a designer and manufacturer of aluminum forgings to the automotive and powersports markets. Severe liquidity constraints leading up to the Chapter 11 filing resulted in Greenwood losing most of its customers and revenue. In the early period subsequent to the chapter 11 filing, Greenwood found itself with only two customers who shortly thereafter announced their intention to find a new supplier. In the interim period, Greenwood negotiated customer accommodations with the two remaining customers to cover all interim operating expenses to allow Greenwood to continue operating while completing the customer production runs. Greenwood ceased all production and the two remaining customers withdrew from the Greenwood facility on or about the week ending March 16, 2013 and the facility was idled by the week ending March 30. Greenwood continues to employ the former plant manager who is providing security and showing the facility to parties interested in buying the assets/business.

8. In order to maximize the value of the assets for the benefit of all constituents, the Debtors continue to market the assets of Greenwood (the "Greenwood Assets"), and intend to go forward with a sale to the highest or best bidder(s).

### Services to Be Provided

9. On April 4, 2013, Angle commenced its engagement as investment banker to Greenwood. Pursuant to the Engagement Letter, Angle will act as Greenwood's investment banker with respect to identifying and consummating a Strategic Transaction[2], as well as assist in the development and drafting of the documents related to the foregoing.

10. Consistent with the Engagement Letter, Greenwood proposes to retain Angle to render, among other things, the following investment banking services with respect to a Strategic Transaction (the "Strategic Transaction Services"):[3]

    a. Identify and contact qualified and logical acquirers for Greenwood;

    b. Assist Greenwood in coordinating site visits for interested buyers;

    c. Assist with the development and presentation of requested information and responding to inquiries

    d. Assist Greenwood and its professionals in preparing for and responding to inquiries by qualified acquirers;

    e. Solicit and develop competitive offers;

    f. Support the negotiation and structuring of a Strategic Transaction

---

[2] Capitalized terms not otherwise defined herein shall have their meaning ascribed to them in the Engagement Letter.

[3] The listed services are a summary of the Strategic Transaction Services that Angle may provide to Greenwood. See the Engagement Letter for a full description of the Strategic Transaction Services. To the extent there is any inconsistency, the Engagement Letter controls.

g.   Assist with such other details, and provide such other services, as may be necessary to consummate a Strategic Transaction involving Greenwood during the Authorized Period.

11.   If Greenwood requests that Angle perform services not contemplated by the Engagement Letter, Angle and Greenwood will agree, in writing, on the terms for such services and seek the Court's approval thereof.

### Angle's Qualifications

12.   Angle is an international investment banking firm with offices in North America, Europe and Asia.  Angle has expertise in mergers and acquisitions, private capital raising and financial analytical services across a broad range of industries, including, but not limited to, aerospace and defense, automotive, metals, chemicals, energy, information technology and industrial components and capital equipment and machinery.  Angle is a leading advisor to public and private companies that require strategic and investment banking services in both the sale of assets and the acquisition of target entities as well as all parties in interest involved in financially distressed companies, both in and outside of bankruptcy.  Angle has expediently acquired a deep understanding of Greenwood's financial history, business, operations, and liquidity since its engagement that will enable it to efficiently complete a Strategic Transaction.

13.   Angle has provided services similar to or the same as the Strategic Transaction Services by acting as the exclusive investment banker and financial advisor to, among others, Parts Finishing Group, Masco Corporation, Robert Bosch GmbH, Sealant

Equipment & Engineering, Inc., AP Exhaust Technologies and BorgWarner. Angle has also provided services similar to or the same as the Strategic Transaction Services to debtors and other constituencies in numerous automotive supplier chapter 11 cases, including, among others: Delphi Automotive Systems, Blackhawk Plastics, Inc., and Metal Forming Technologies, Inc.

### No Duplication of Services

14.     Greenwood believes that the Strategic Transaction Services provided by Angle will not duplicate the services that other professionals will be providing to Greenwood in these chapter 11 cases. Specifically, Angle will carry out unique functions directly related to the Strategic Transaction and will use reasonable efforts to coordinate with Greenwood and its professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

### Professional Compensation

15.     Angle will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with Greenwood's chapter 11 case in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines"), and any other applicable procedures and orders of the Court, and consistent with the proposed compensation set forth in the Engagement Letter.

16.     Investment bankers such as Angle do not typically charge for their services on an hourly basis. Instead, they customarily charge a monthly advisory fee plus

additional fees that are contingent upon the occurrence of a specified type of transaction. In the instant matter, Angle is not charging a monthly fee. The Engagement Letter sets forth the transaction-based fees together with per diem's for the preparation and attendance at court hearings that are to be payable to Angle.

17. As set forth more fully in the Engagement Letter, and subject thereto, Angle will be compensated as follows (the "Fee Structure"):

    a. Stalking Horse Bonus – In the event that a stalking horse asset purchase agreement is accepted and signed by Chief Restructuring Officer within sixty (60) days of the Information being approved for release to interested buyers, Greenwood shall pay Angle a stalking horse bonus of $25,000.

    b. Transaction Fee — Pursuant to the Engagement Letter, Greenwood shall pay Angle the Transaction Fee (from the closing proceeds) equaling $250,000 plus 2.5% of the Total Consideration in each Strategic Transaction exceeding $2.5 million upon the closing of any Strategic Transaction.

    c. Court Related Fees – A daily fee of $2,500 (charged in half day increments) for Court appearances and testimony, including reasonable preparation and travel.

18. Angle's investment banking capabilities, as well as its ability to expediently get up to speed and complete a Strategic Transaction, were important factors to Greenwood in determining the Fee Structure. Greenwood believes that the Fee Structure is comparable to those generally charged by investment banking firms of similar stature to Angle for comparable engagements, both in and out of bankruptcy proceedings. Greenwood also

believes that the Fee Structure reflects a reasonable transaction fee, which is tied to the consummation and closing of the transactions and services contemplated by Greenwood and Angle in the Engagement Letter. The number of hours to be worked, the value of the results to be achieved, and the ultimate benefit to Greenwood of work performed by Angle in connection with this engagement were unknown by Greenwood at the time the Engagement Letter was negotiated. All of these variables were taken into account in setting the above fees. Greenwood also acknowledges that the Fee Structure was agreed upon by the parties in anticipation that a substantial commitment of professional time and effort would be required of Angle and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for Angle and (b) the actual time and commitment required of Angle to perform services related to the Strategic Transaction may vary substantially from week to week and month to month.

### Record Keeping

19. It is not the general practice of investment banking firms, including Angle, to keep detailed time records similar to those customarily kept by attorneys. Because Angle does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals, Angle should, pursuant to Local Rule 2016-2(d), be excused from compliance with such requirements. Instead, Angle should be required only to maintain time records in half-hour increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of Greenwood.

## Indemnification and Contribution Provisions

20. Greenwood agreed to certain indemnification and contribution provisions described in Exhibit A to the Engagement Letter (the "Indemnification Provisions"). The Indemnification Provisions provide that Greenwood will (a) indemnify, defend and hold harmless Angle and its control persons, officers, directors, employees, agents, and affiliates in those capacities (each an "Indemnified Party") from and against any losses, claims, damages or liabilities, or actions in respect thereof (including any of the foregoing asserted by Greenwood), to which such Indemnified Party may become subject in connection with the services rendered by Angle pursuant to the Engagement Agreement to which the indemnification agreement forms a part (collectively, a "Claim") and (b) reimburse promptly each Indemnified Party for any professional time, legal or other expenses incurred by such Indemnified Party in connection with investigating, preparing for, or defending any such Claim as such expenses are incurred regardless of whether an Indemnified Party is a party in such claim. However, Greenwood shall not be liable in any such case if a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted from an Indemnified Party's bad faith, willful misconduct or gross negligence.

21. In addition, if the Indemnification Provisions are held to be unavailable or insufficient, the Engagement Letter allocates contribution obligations based on the relative benefits and faults of Angle and Greenwood together with any other equitable considerations.

22. The rights to indemnity and contribution set forth in the Engagement Letter shall survive any termination or expiration of this Agreement or the consummation, termination, or abandonment of any Strategic Transaction, and shall not limit any other rights that an Indemnified Party may have at law or otherwise.

23. Greenwood believes the Indemnification Provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for investment banking firms such as Angle for engagements both out of court and in chapter 11. The terms of the Engagement Letter were fully negotiated between Greenwood and Angle at arm's length.

### Angle's Disinterestedness

24. To the best of the Greenwood's knowledge, information, and belief, and except to the extent disclosed herein and in the Roesler Declaration, Angle: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors, their creditors, and shareholders for the matters for which Angle is to be employed; and (c) has no connection to the Debtors, their creditors, shareholders, or related parties herein except as disclosed in the Roesler Declaration.

25. As of the Petition Date, Angle does not hold a prepetition claim against the Debtors for services rendered.

26. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Angle's retention are discovered or arise, Angle

will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Basis for Relief

27. Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Additionally, section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of investment banking firms on more flexible terms that reflect the nature of their services and market conditions.

28. The Court's approval of Angle's retention in accordance with the terms and conditions of the Engagement Letter is warranted. First, the requirements of section 327 of the Bankruptcy Code are satisfied.[4] Angle is needed to identify and complete a Strategic

---

[4] Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code. Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts

Transaction on behalf of Greenwood and has spent a significant amount of time and effort in a short timeframe analyzing Greenwood's operations so that it may locate interested parties and structure a Strategic Transaction. Angle has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. Angle has become familiar with Greenwood's business operations, capital structure, financing documents, and other material information and is able to assist Greenwood in the consummation of a Strategic Transaction. Greenwood believes that Angle is well qualified to provide its services in a cost-effective, efficient, and timely manner. Furthermore, as detailed above, Angle does not hold or represent an interest adverse to these estates and is disinterested.

29. Second, Greenwood believes that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee Structure reflects Angle's commitment to the variable level of time and effort necessary to perform services set forth in the Engagement Letter, Angle's particular expertise, and the market prices for Angle's services for engagements of this nature both out of court and in a chapter 11 context.

30. As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co., 123 F.3d 861 (5th Cir. 1997):

---

showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above. 11 Fed. R. Bankr. P.2014. Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Roesler Declaration attached hereto.

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted). Owing to this inherent uncertainty, courts in this and other jurisdictions have approved similar arrangements to the Fee Structure under section 328 of the Bankruptcy Code. See, e.g., In re Vertis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (approving a flexible fee structure and engagement letter under section 328 on the grounds that both were reasonable); In re Neb. Book Co., No. 11-12005 (PJW); (Bankr. D. Del. Aug. 10, 2011) (same); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011) (same); In re Local Insight Media Holdings, Inc., No. 10-13677 (KG) (Bankr. D. Del. Dec. 20, 2010) (same); In re Landsource Cmtys. Dev. LLC, No. 08-11111 (KJC) (Bankr. D. Del. Aug. 27, 2008) (same); see also In re AMR Corp., No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 26, 2012) (same); In re United Retail Grp., Inc., No. 12-10405 (SMB) (Bankr. S.D.N.Y. Feb. 23, 2012) (same).

31. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code which provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly

> basis, *on a fixed or percentage fee* basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This change makes clear that debtors are able to retain a professional on a fixed fee basis with bankruptcy court approval, such as provided for in the Fee Structure.

32. Also, notwithstanding the foregoing, under the Order, the U.S. Trustee retains all rights to object to Angle's fee application (including expense reimbursement) on all grounds, including the reasonableness standard provided for in section 330 of the Bankruptcy Code.

33. Third, the Indemnification Provisions are reasonable under the circumstances and reflect market conditions, and accordingly should be approved under section 328 of the Bankruptcy Code. See, e.g., In re United Artists Theatre Co. v. Walton, No. 01-1351, 315 F.3d 217 (3rd Cir. 2003) (approving indemnification for investment banker and financial advisor where the indemnity clause, including a carve out for gross negligence, was "reasonable" and therefore, permissible under the Bankruptcy Code). Courts in this jurisdiction have approved similar provisions to the Indemnification Provisions in other large chapter 11 cases. See, e.g., In re Vertis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (approving an indemnification provision the court deemed reasonable and reflective of market conditions); In re Neb. Book Co., No. 11-12005 (PJW); (Bankr. D. Del. Aug. 10, 2011) (same); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011) (same); In re Local Insight Media Holdings, Inc., No. 10-13677 (KG) (Bankr. D. Del. Dec.

20, 2010) (same); In re Aventine Renewable Energy Holdings, Inc., No. 09-11214 (KG) (Bankr. D. Del. June 24, 2009) (same).

34.     Fourth, nunc pro tunc relief is warranted and bankruptcy courts may approve a professional's valuable services, as rendered here, retroactively. Angle has provided, and will continue to provide, valuable services to Greenwood regarding the Strategic Transaction. See In re Arkansas, 798 F. 2d 645 (3d Cir. 1986) (holding that bankruptcy courts have the power to grant retroactive approval of the employment of professionals under their broad equity power); In re Singson, 41 F.3d 316 (7th Cir. 1994) (rejecting the "extraordinary circumstance" requirement for granting nunc pro tunc relief); In re Atkins, 69 F.3d 970 (9th Cir. 1995) (stating that bankruptcy courts "possess the equitable power to approve retroactively a professional's valuable but unauthorized services" by granting nunc pro tunc relief); In re Jarvis, 53 F.3d 416 (1st Cir. 1995) (holding that post facto applications for professional services are allowed under section 327(a) of the Bankruptcy Code).

35.     Courts routinely grant nunc pro tunc relief in this jurisdiction. See, e.g., In re Vertis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (granting nunc pro tunc relief); In re WP Steel Venture LLC, No. 12-11661 (KJC) (Bankr. D. Del. Sept. 18, 2012) (same); In re Ritz Camera & Image, L.L.C., No. 12-11868 (KG) (Bankr. D. Del. July 27, 2012) (same); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011) (same); In re Local Insight Media Holdings, Inc., No. 10-13677 (KG) (Bankr. D. Del. Jan. 24, 2011) (same).

### Notice

36. Greenwood has provided notice of this application to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel to the Debtors' prepetition secured lenders; (iii) counsel to the Committee; and (iv) those parties that have requested service under Bankruptcy Rule 2002.

37. Greenwood submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, Greenwood respectfully requests that the Court enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as the Court deems appropriate.

                        Greenwood Forgings, LLC

                        */s/ James M. Lukenda*

Dated: May 3, 2013
      Wilmington, Delaware       By:   James Lukenda
                                                Title  Deputy Chief Restructuring Officer