# EXHIBIT A

## Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF ANGLE ADVISORS LLC AS INVESTMENT BANKERS TO
GREENWOOD FORGINGS, LLC <u>NUNC PRO TUNC</u> TO APRIL 4, 2013**

Upon the application (the "Application") of Greenwood Forgings, LLC ("Greenwood" or the "Debtor") for entry of this Order[2] authorizing Greenwood to employ and retain Angle Advisors LLC ("Angle") as investment bankers, effective <u>nunc pro tunc</u> to April 4, 2013, all as more fully set forth in the Application; and upon the Declaration of Clifton H. Roesler in support of the Application; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that Greenwood's notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Application is GRANTED.

2. Greenwood is authorized, effective nunc pro tunc to April 4, 2013, to employ and retain Angle as an investment banker in accordance with the terms and conditions set forth in the Application and the Engagement Letter attached hereto as Exhibit 1, subject to the terms of this Order.

3. The terms of Angle's Engagement Letter are approved and Angle shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable orders of this Court.

4. Notwithstanding the preceding paragraph of this Order and any provision to the contrary in the Application or the Engagement Letter, the U.S. Trustee shall have the right

to object to Angle's request for compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; provided, however, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria.

5. In light of the services to be provided by Angle and the compensation structure in the Engagement Letter, Angle and its professionals shall be excused from: (a) the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, and the U.S. Trustee Guidelines and (b) conforming with a schedule of hourly rates for its professionals. Instead, notwithstanding that Angle does not charge for its services on an hourly basis, Angle will nonetheless maintain records (in summary format) of its services rendered for Greenwood, including descriptions of those services, the time expended in providing those services in half-hour increments, and the individuals who provided those services. Angle will present such records together with any fee applications filed with this Court.

6. Angle and its Indemnified Persons shall not be entitled to any indemnification pursuant to the terms of the Engagement Letter for any claims, liabilities, losses, expenses, and damages incurred by the Indemnified Persons resulting from the bad faith, willful misconduct or gross negligence of an Indemnified Person.

7.  The indemnification provisions set forth in the Engagement Letter are approved, subject during the pendency of these cases to the following:

a.  Subject to the provisions of subparagraphs (b) and (c) below, Greenwood is authorized to indemnify, and shall indemnify, Angle for any claims arising from, related to, or in connection with the services to be provided by Angle as specified in the Application, but not for any claim arising from, related to, or in connection with Angle's postpetition performance of any other services other than those in connection with the engagement, unless such postpetition services and indemnification therefore are approved by this Court; and

b.  Greenwood shall have no obligation to indemnify Angle for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Angle's bad faith, willful misconduct or gross negligence, (ii) settled prior to a judicial determination as to Angle's bad faith, willful misconduct or gross negligence, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Angle is not entitled to receive indemnity under the terms of the Application; and

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Angle believes that it is entitled to the payment of any amounts by Greenwood on account of the Greenwood's indemnification obligations under the Application, including, without limitation, the advancement of defense

costs, Angle must file an application in this Court, and Greenwood may not pay any such amounts to Angle before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Angle for indemnification, and not as a provision limiting the duration of Greenwood's obligation to indemnify Angle.

8. Notwithstanding any provision in the Engagement Letter to the contrary, the contribution obligations of the Indemnified Parties (as such term is defined in the Engagement Letter) shall not be limited to the aggregate amount in excess of the amount of fees actually received by Angle from Greenwood pursuant to the Engagement Letter, this Order, or subsequent orders of this Court.

9. To the extent requested in the Application, Angle is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d).

10. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11. Greenwood is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

Dated: _____, 2013
Wilmington, Delaware

_____
Honorable Brendan L. Shannon
United States Bankruptcy Judge

# EXHIBIT 1

## Engagement Letter

**ANGLE ADVISORS**
── INVESTMENT BANKING ──

700 East Maple Road, 4th Floor
Birmingham, MI 48009 USA

www.angleadvisors.com

+1 800.690.1750 | +1 248.605.9550

---

May 2, 2013

Greenwood Forgings LLC
John DiDonato
Chief Restructuring Officer
2250 Thunderstick Drive
Suite 1203
Lexington, KY 40505

Dear Mr. DiDonato:

      This letter Agreement (the "Agreement") confirms the engagement of Angle Advisors LLC ("Angle") by Greenwood Forgings LLC (the "Company" or "Greenwood") as investment banker for the exploration, development and completion of various Strategic Transactions (as defined herein) with respect to Greenwood during the Authorized Period (as defined herein).

1.    <u>Assignment Scope</u>:    Angle will use its commercially reasonable best efforts, acting under your direction and supervision in your capacity as Chief Restructuring Officer ("CRO") of the Company, during the Authorized Period to expedite handling of this engagement, targeting an initial 30 day period for creating and generating as much interest as possible in a Strategic Transaction. Our services will include certain agreed-upon procedures, which may include any or all of the following, each at the direction of the CRO:

    (a)    Identify and contact qualified and logical acquirers for Greenwood as a re-start-ready business unit or valuable assets, then assist or contribute to the development and demonstration of the Company's value with Information that may be disclosed in written or oral forms;

    (b)    Assist the Company in coordinating site visits for interested buyers;

    (c)    assist with the development and presentation of requested information and responding to inquiries;

    (d)    assist the Company and its specialist advisors (e.g. CRO, accountants, tax advisors and attorneys) in preparing for and responding to inquiries by qualified acquirers;

    (e)    Solicit and develop competitive offers;

    (f)    support the negotiation and structuring of a Strategic Transaction by the CRO and the independent managers of the Company, and, at the CRO's direction and request, meet with the Company's board of managers and/or its restructuring committee to discuss Strategic Transaction options related to Greenwood, and

    (g)    assist with such other details, and provide such other services, as may be necessary to consummate a Strategic Transaction involving Greenwood during the Authorized Period.

In order to coordinate most effectively our efforts together to effect a transaction satisfactory to the parties, the Company will promptly inform Angle of any inquiry they may receive concerning the potential purchase of the Business. Also, during the period of our engagement, the Company agrees to coordinate with Angle any discussions looking toward a Strategic Transaction involving Greenwood. Please note that any written or oral advice provided by Angle in connection with our engagement is exclusively for the information of the CRO, independent managers, senior management and advisors (including counsel) of the Company, and may not be disclosed to any third party or circulated or referred to publicly without our prior written consent.

2.   Fees and Expenses: In connection with Angle's engagement and performance of the services stated above, the Company shall:

(i)   pay Angle for any testimony or court time (including for reasonable preparation and travel) if requested by the CRO, Bankruptcy Court, or under the indemnification provisions of this letter an additional daily amount of $2,500 per day (in half-day increments),

(ii)  pay Angle a stalking horse bonus of $25,000 in the event of a stalking horse asset purchase agreement accepted and signed by the CRO within 60 days of the Information being approved for release to interested buyers, and

(iii) pay Angle a Transaction Fee (the "Transaction Fee") equaling $250,000 plus 2.5% of the Total Consideration in a Strategic Transaction exceeding $2.5 million.

The Transaction Fee shall be paid simultaneous with the closing of a Strategic Transaction (out of closing proceeds) and the Company agrees it shall make payment of Angle's Reasonable Expenses and Transaction Fees upon closing for a Strategic Transaction.

3.   Definitions:

"Authorized Period" shall mean the period starting on April 4, 2013 and ending on the earlier of (i) April 4, 2014 (or such later date as the parties agree in writing), (ii) the closing date of a Strategic Transaction, or (iii) the date of Angle's receipt of written notice that the Company has terminated this Agreement. The end of the Authorized Period is referred to as "Termination." A Strategic Transaction Fee shall still be owed following Termination if a Strategic Transaction initiated by Angle is consummated during the first twelve months following Termination.

"Information" shall mean information shared between the Company, Angle and pre-approved prospective acquirers of the Company in connection with a Strategic Transaction. The Company agrees to apply its reasonable commercial efforts to timely furnish Angle with such reasonable Information as Angle and the CRO deem reasonable, customary or necessary to facilitate a potential Strategic Transaction, which Angle shall similarly protect by requiring prospective acquirers to enter into Non-Disclosure Agreements in a form acceptable to the Company. Angle acknowledges that the Company may limit the disclosure of proprietary information to prospective strategic acquirers to limit the potential harm to the Company. The Company will reasonably endeavor to provide Angle with access to its managers, executives, directors, specialist advisors, legal counsel, lenders and other representatives (collectively, the "Representatives") when requested and reasonable. It is hereby agreed and understood that Angle will rely solely upon such Information as supplied by the Company and its Representatives without assuming any responsibility for independent investigation, verification or audit thereof. All non-public Information concerning the Company that is given to Angle by the Company or the Representatives is confidential, shall not be disclosed and will be used solely for the performance of Angle's services hereunder and will be treated confidentially until the

Company gives its express written consent to the disclosure or use of such Information. Except as otherwise required by law, Angle will neither disclose its engagement nor any related confidential Information to any third party without the express written consent of the Company. If Angle is requested to render a formal opinion on the Information described herein from a financial point of view regarding any Strategic Transaction described in this Agreement then the nature, scope and fees associated with Angle's analysis and opinion, as well as the form and substance of our opinion shall be: (a) such as Angle deems appropriate, (b) subject to separate fees, and (c) shall be covered under a separate and subsequent letter agreement. Notwithstanding anything to the contrary contained herein, nothing herein shall limit or modify Angle's obligations under its existing Confidentiality Agreement dated April 4, 2013between Angle and Revstone Transportation LLC.

"Reasonable Expenses" shall mean reimbursements to Angle for its reasonable out-of-pocket expenses as may be incurred executing its services hereunder. Unless otherwise agreed by the Company in writing, the amount of out-of-pocket expenses attributable to non-travel related expenses shall not exceed $35,000, and all expenses shall be reimbursed on a direct pass-through basis. No single expense greater than $2,500 shall be incurred without the express prior approval of the CRO.

"Strategic Transaction" shall mean each or any business transaction where Greenwood is involved in a sale, merger, consolidation, spin-off, management buy-out, reorganization, plant-sale or other business combination pursuant to which its shares or a substantial portion of assets are sold, transferred, assigned or exchanged by the Company for cash, debt, securities, assumption of liabilities or contingent payments from any third party.

"Total Consideration" shall mean the purchase price defined in each stock or asset sale agreement relating to Greenwood (or other such value-transfer agreements as may support a Strategic Transaction). For the avoidance of doubt, Total Consideration shall include the amount of liabilities or debt assumed by a Strategic Transaction counter-party provided such liabilities are expressly described as having been assumed by the buyer in the purchase agreement. Total Consideration excludes cash consideration and the value of other accommodations provided by key constituents, such as the domestic OEMs to facilitate a sale. For purposes of computing any fees payable to Angle hereunder, non-cash consideration shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for the five trading days prior to the closing of the Strategic Transaction; and (b) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Company and Angle. If such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of Angle's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are actually received.

4.      Further Agreements:

Angle represents that to the best of its knowledge and information, it neither holds nor represents any interest adverse to the Company nor does it have any conflict of interest with respect to the proposed engagement, it does not and shall not represent any party with an interest adverse to the Company during the Authorized Period and no agreement exists (or promises will be made) to share any compensation received by Angle for services it renders hereunder with any other person or entity.

This Agreement is subject to the entry of an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") authorizing the retention of Angle and approving the terms and conditions of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Company agrees to file such request and use its reasonable efforts to file a motion requesting court approval of Angle's engagement and this Engagement Letter on the terms and conditions provided herein, and made effective as of the earlier of April 4, 2013 or the date the Bankruptcy Court authorizes the retention of Angle on the terms set forth herein, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. The Company agrees that its motion will seek Bankruptcy Court approval and authorization of this agreement subject only to the subsequent review by the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and not under Section 330 of the Bankruptcy Code. Angle will have no obligation to provide any services under this Agreement if the terms of this Agreement are not approved, or modified to the satisfaction of all parties and approved, by an order of the Bankruptcy Court, in form and substance reasonably acceptable to Angle.

Notice given pursuant to any of the provisions of this Agreement shall be given in writing and shall be sent by overnight courier or personally delivered (a) if to the Company, to John DiDonato at the address listed above; and (b) if to Angle, to its offices at the address listed in the header, to the attention of: Clifton H. Roesler, Managing Director.

No advice or opinion rendered by Angle, whether formal or informal, may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without our prior written consent, which may not be unreasonably withheld. Since Angle will be acting on behalf of the Company in connection with its engagement hereunder, the Company has entered into a separate letter agreement providing for the indemnification by the Company of Angle and certain related persons and entities, a copy of which is attached hereto as Exhibit A. The indemnification provided by the Company to Angle shall conform to the terms of indemnification approved by the Bankruptcy Court in the order approving the retention of Angle.

This Agreement shall remain in full force and effect between Angle and the Company. Each of Angle and the Company agrees that while other duties apply, neither party has entered into a fiduciary duty with respect to the others' stockholders, officers, employees or directors as a result of this Agreement. This Agreement may not be amended or modified except in writing signed by each of the parties hereto. Each party consents to personal jurisdiction, service and venue in the Bankruptcy Court with respect to any legal suit or proceeding arising with respect to this Agreement. Any dispute arising from the interpretation, validity or performance of this agreement or any of its terms and provisions shall be brought in the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement or the indemnification, which shall remain in full force and effect. Each party represents and warrants that it has all the requisite power and authority to enter into this Agreement and Exhibit A attached hereto and the transactions contemplated herby. Each party further represents and warrants that is Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each the parties hereto and constitutes the legal, valid and binding agreement therefor, enforceable in accordance with its terms.

The Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Agreement.

Very truly yours,

Clifton H. Roesler
Managing Director

Accepted and agreed to on behalf of the Company as of the date first written above:

Signed: _____   Dated: _____

Greenwood Forgings, LLC
By:    John DiDonato
       Chief Restructuring Officer

We are delighted to accept this engagement and look forward to working with you on this assignment. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Agreement.

                Very truly yours,

                Clifton H. Roesler
                Managing Director

Accepted and agreed to on behalf of the Company as of the date first written above:

Signed: _____  Dated: 5/2/13

Greenwood Forgings, LLC
By:  ~~John DiDonato~~ JAMES M. LUKENDA
DEPUTY Chief Restructuring Officer

RE: INDEMNIFICATION OF ANGLE ADVISORS LLC

May 2, 2013

Mr. DiDonato:

    Recognizing that transactions of the type contemplated by this Agreement sometimes result in litigation or threatened litigation, the Company agrees to indemnify, defend and hold harmless Angle and its control persons, officers, directors, employees, agents, and affiliates in those capacities (each an "Indemnified Party") from and against any losses, claims, damages or liabilities, or actions in respect thereof (including any of the foregoing asserted by the Company), to which such Indemnified Party may become subject in connection with the services rendered by Angle pursuant to the Engagement Agreement to which this indemnification agreement forms a part (collectively, a "Claim"). The Company agrees to reimburse promptly each Indemnified Party for any Professional Time, legal or other expenses incurred by such Indemnified Party in connection with investigating, preparing for, or defending any such Claim as such expenses are incurred regardless of whether an Indemnified Party is a party in such claim; provided, however, that the Company shall not be liable in any such case if a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted from an Indemnified Party's bad faith, willful misconduct or gross negligence. If the Company so elects, the Company may assume the defense of such Claim, including the employment of counsel reasonably acceptable to Angle and the Company shall pay the fees, expenses, and disbursements of such counsel. If the Company elects to assume such defense, the Company shall not be liable to any Indemnified Party under these indemnification provisions for any legal or other expenses subsequently incurred by the Indemnified Party in connection with such defense, other than reasonable and necessary out-of-pocket costs of investigation. In the event that outside counsel to Angle reasonably determines that having separate counsel would be appropriate under the circumstances due to actual or potential conflicts of interest, then Angle may employ separate counsel reasonably acceptable to the Company to represent and defend Angle in any Claim. If Angle so employs separate counsel, the Company will not be required to pay the fees and disbursements of more than one counsel for any Indemnified Party, including without limitation, Angle, in any jurisdiction in any single action or proceeding. Separate counsel retained by Angle shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company. The Company shall be liable for any settlement of any Claim against any Indemnified Party made with the Company's prior written consent.

    If the Indemnification provided for herein is unavailable or insufficient to hold harmless an Indemnified Party with respect to any Claim, then the Company and such Indemnified Party shall contribute to the amount paid or payable by such Indemnified Party as a result of such Claim in such proportion as is appropriate to reflect (i) the relative benefits received from the transaction by the Indemnified Party on the one hand and the Company on the other, (ii) the relative fault of the Company on the one hand and the Indemnified Party on the other, and (iii) any other relevant equitable considerations. The "relative benefits" received by the Company on the one hand and the Indemnified Party on the other shall be

deemed to be in the same proportion as the aggregate consideration paid or payable in connection with the transaction bears to the total fee actually received by Angle in connection with the Agreement. Notwithstanding the foregoing, the Company expressly agrees that Angle shall not be required to contribute any amount pursuant to this paragraph in excess of the amount of fees paid or payable to Angle hereunder (excluding reimbursable expenses) unless such damages or contributions have been approved by Angle in a settlement or a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted from an Indemnified Party's bad faith, willful misconduct or gross negligence. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

If any action, suit, proceeding, or investigation is commenced as to which an Indemnified Party proposes to demand indemnification, it shall notify the Company with reasonable promptness; provided that any failure or delay by an Indemnified Party to notify the Company shall not relieve the Company from its obligations hereunder except to the extent the Company is prejudiced thereby. The Company shall not settle any litigation relating to Angle's engagement hereunder unless such settlement includes an express release of the Indemnified Parties with respect to all claims asserted in such litigation, such release to be set forth in an instrument signed by all parties to such settlement. The rights to indemnification and contribution contained in this Agreement shall survive any termination or expiration of this Agreement or the consummation, termination, or abandonment of any Strategic Transaction, and shall not limit any other rights that an Indemnified Party may have at law or otherwise.

Agreed as of the date above by:

Greenwood Forgings, LLC
By: ~~John DiDonato~~ JAMES M. LUKENDA
DEPUTY Chief Restructuring Officer

Angle Advisors LLC
Clifton H. Roesler
Managing Director

deemed to be in the same proportion as the aggregate consideration paid or payable in connection with the transaction bears to the total fee actually received by Angle in connection with the Agreement. Notwithstanding the foregoing, the Company expressly agrees that Angle shall not be required to contribute any amount pursuant to this paragraph in excess of the amount of fees paid or payable to Angle hereunder (excluding reimbursable expenses) unless such damages or contributions have been approved by Angle in a settlement or a court of competent jurisdiction shall have determined by a final judgment that such Claim resulted from an Indemnified Party's bad faith, willful misconduct or gross negligence. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

If any action, suit, proceeding, or investigation is commenced as to which an Indemnified Party proposes to demand indemnification, it shall notify the Company with reasonable promptness; provided that any failure or delay by an Indemnified Party to notify the Company shall not relieve the Company from its obligations hereunder except to the extent the Company is prejudiced thereby. The Company shall not settle any litigation relating to Angle's engagement hereunder unless such settlement includes an express release of the Indemnified Parties with respect to all claims asserted in such litigation, such release to be set forth in an instrument signed by all parties to such settlement. The rights to indemnification and contribution contained in this Agreement shall survive any termination or expiration of this Agreement or the consummation, termination, or abandonment of any Strategic Transaction, and shall not limit any other rights that an Indemnified Party may have at law or otherwise.

Agreed as of the date above by:

_____
Greenwood Forgings, LLC
By:    John DiDonato
       Chief Restructuring Officer

Angle Advisors LLC
Clifton H. Roesler
Managing Director