## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| | ) |
| REVSTONE INDUSTRIES, LLC, *et al.*,[1] | ) Case No. 12-13262 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Ref. D.I. 558** |
| | ) **Objection Deadline: May 21, 2013 at 4:00 p.m. (ET)** |
| | ) **Hearing: May 28, 2013 at 10:00 a.m. (ET)** |

## OBJECTION OF HILLSDALE HOURLY PENSION PLAN AND HILLSDALE SALARIED PENSION PLAN TO DEBTOR GREENWOOD FORGING LLC'S SALE MOTION AND PROPOSED SALE ORDER

Hillsdale Hourly Pension Plan and Hillsdale Salaried Pension Plan (the "**Plans**")

hereby file this objection (the "**Objection**") to Debtors' *Motion for an Order*

*(A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtor*

*Greenwood Forgings, LLC Outside the Ordinary Course of Business; (B) Authorizing the*

*Sale of Greenwood's Assets Free and Clear of All Liens, Claims, Encumbrances and*

*Interests Pursuant to Sections 363(b), (f), and (m) of the Bankruptcy Code;*

*(C) Authorizing the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases; and (D) Granting Related Relief* (the "**Sale Motion**") and the attached

proposed sale order (the "**Proposed Sale Order**"). [D.I. 558]. The Plans further object

to Greenwood's Bid Procedures Motion [D.I. 474] and Bid Procedures Order [D.I. 497].

In support of their Objection, the Plans state as follows.

---

[1]       The Debtors in these chapter 11 cases are: Revstone Industries, LLC ("**Revstone**"), Spara, LLC ("**Spara**"), Greenwood Forgings, LLC ("**Greenwood**"), and U.S. Tool & Engineering, LLC ("**U.S. Tool**") (collectively, the "**Debtors**").

## I.    PRELIMINARY STATEMENT

1.    The Plans' hold a first-priority security interest in Greenwood's inventory and proceeds thereof. Although Bridgeport Capital Funding, LLC ("**Bridgeport**") at one time held a first-priority security interest in all of Greenwood's assets, Bridgeport agreed to subordinate its security interest in Greenwood's inventory and proceeds thereof to the security interest of MIDS, LLC ("**MIDS**") and MIDS' assigns. MIDS then assigned its security interest to the Plans. [2] The initial Cash Collateral pleadings filled by Greenwood did not recognize the security interest of the Plans in the inventory. Moreover, Bridgeport filed pleadings apparently mistakenly asserting that it held a first-priority security interest in all of Greenwood's assets. [Case No. 13-10027, D.I. 39]. Boston Finance Group, LLC ("**BFG**") asserted a first-priority security interest in Greenwood's machinery and equipment pursuant to a subordination agreement and an alleged interest in Greenwood's accounts receivable pursuant to a garnishment. [3] BFG's alleged interest in accounts receivable, however, arose later in time than the Plans' perfected security

---

[2] The Plans did not file a UCC-3 financing statement evidencing the subordination agreement, however, and counsel for Bridgeport was apparently not made aware of the subordination agreement. That the Plans' did not file a UCC-3 financing statement does not affect the validity of the subordination agreement between Bridgeport and the Plans. *See, e.g., Am. Honda Fin. Corp. v. A. Angelle, Inc. (In re A. Angelle, Inc.)*, 230 B.R. 287, 301 (Bankr. W.D. La. 1998); *Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 131 (Mich. App. 1999). The Plans UCC-1, which was filed on September 9, 2010, is attached as Exhibit C to the Plans' *Motion of Hillsdale Salaried Pension Plan and Hillsdale Hourly Pension Plan to Vacate or Amend the Interim Cash Collateral Orders* (the "**Motion to Vacate**"), filed contemporaneously herewith.

[3] The relative priority between Bridgeport and BFG as to the accounts receivable is contested by those parties. *See Boston Finance Group LLC's Expedited Motion for Adequate Protection* [Case No. 13-10027, D.I. 25] and *Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral* [Case No. 13-10027, D.I. 39]. As discussed below, BFG claims an interest in Cash Collateral by virtue of certain garnishments issued prior to the Petition Date(s) in these cases. Regardless of whether the garnishment created some sort of interest in the Debtors' accounts receivable under applicable law, those interests, if any, would be subordinate to the Plans' prior-perfected security interest in inventory and the proceeds thereof (which would include Greenwood's accounts receivable). As to the Greenwood Debtor, then, the Plans would have priority to inventory and its proceeds (including accounts receivable and cash derivative thereof) over any putative interest of BFG.

interest. The Plans' security interest in accounts receivable that are proceeds of inventory is therefore senior to BFG's alleged interest.  Accordingly, the Plans object to the sale of Greenwood's assets to the extent that Greenwood seeks to sell estate assets, including inventory and proceeds thereof, without offering the protection to the Plans' security interest that is afforded by the Bankruptcy Code and long-standing precedent.  Because the Plans' hold a first-priority security interest in Greenwood's inventory, any sale order entered pursuant to section 363(f) of the Bankruptcy Code must acknowledge the Plans' security interest and transfer that security interest to the sale proceeds arising from inventory and proceeds of inventory.[4]  Further, all sale proceeds should be reserved by the Debtors until the Court resolves all outstanding priority disputes.

## II.    JURISDICTION

2.      This Court has jurisdiction over the subject matter of this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (M), (N), and (O).  Venue in this Court is proper under 28 U.S.C. § 1409.

## III.    BACKGROUND

### A. The Debtors' Bankruptcy Cases

3.      Revstone and Spara filed Chapter 11 petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on December 3, 2012. On January 7, 2013 (the "**Petition Date**"), Greenwood and U.S. Tool also filed Chapter 11 petitions in this Court.  On February 6, 2013 the Court entered an *Order Authorizing*

---

[4] The sale may exclude accounts receivable and cash.  To the extent that occurs, the Plans reserve their rights in the unsold assets that secure the Plans' claims.

*Joint administration of Related Chapter 11 Cases for Procedural Purposes Only.* [D.I. 173]. All cases are now jointly administered.

4. The Debtors continue to operate their business and manage their properties as debtors-in-possession, and continue to use the Premises.

5. On March 13, 2013, Greenwood filed its *Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "**Schedules**"). [D.I. 365]. According to the Schedules, Greenwood held inventory with a value of $35,225.54 as of December 21, 2012. Although possessing approximately $35,000 in inventory, Greenwood stated that it held nearly $900,000 in accounts receivable.

6. On Schedule D of its Schedules, Greenwood listed the Plans as holding one secured claim for $1,600,000 and another secured claim for $1,750,000.

7. On April 12, 2013, Debtors filed their *Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor Greenwood Forgings, LLC; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Certain Expense Reimbursements Provisions and Breakup Fee; and (E) Granting Other Related Relief* (the "**Bid Procedures Motion**"). [D.I. 474].

8. On April 17, 2013, the Court entered an *Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor Greenwood Forgings, LLC; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure*

*Amounts; (D) Approving Certain Expense Reimbursements Provisions and Breakup Fee;*

*and (E) Granting Other Related Relief* (the "**Bid Procedures Order**"). [D.I. 497].

9.    On April 19, 2013, Greenwood filed its *Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned* (the "**Notice**") [D.I. 510], informing non-debtor counterparties to unexpired leases with Greenwood that Greenwood may assume and assign certain leases to a potential purchaser of its assets in a sale under section 363 of the Bankruptcy Code.

10.    On May 7, 2013, Debtors filed the Sale Motion.  Appended to the Sale Motion was a proposed order (which may be viewed somewhat as a "template") that contains a number of provisions that are inconsistent with the rights of the Plans in their capacities as secured creditors and as landlords.  Those objections are described more fully below.

11.    As further explained below, none of these pleadings references the Plans' security interest in Greenwood's inventory and proceeds thereof.  Moreover, the Proposed Sale Order purports to impact or impair the rights of the Plans as landlords under section 365 of the Bankruptcy Code and the applicable Lease.[5]

**B.  Events Preceding the Debtors' Bankruptcy Cases**

12.    Before the Debtors filed their bankruptcy cases, Contech Forgings, LLC[6] entered into a promissory note with MIDS on July 27, 2010.  Under the promissory note, MIDS agreed to extend Contech a loan in the amount of $1,600,000 (the "**First Note**").

---

[5] "Lease" is defined in the Plans' *Objection to Proposed Cure Amount Set Forth In Greenwood Forgings, LLC's Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned,* filed contemporaneously herewith.

[6] On or about April 3, 2012, Contech Forgings, LLC changed its name to Greenwood Forgings, LLC ("**Greenwood**").

Pursuant to a security agreement (the "**Security Agreement**") between the parties dated July 27, 2010, the First Note was secured by a security interest in all of Contech's inventory and proceeds thereof.[7]

13.    As of July 26, 2010, Bridgeport Capital Funding, LLC ("**Bridgeport**") claims that it held a security interest in all of Greenwood's property, as evidenced by a UCC-1 financing statement filed on July 26, 2010.

14.    On July 27, 2010, Bridgeport, MIDS, and Contech entered into a subordination agreement (the "**Subordination Agreement**") whereby Bridgeport agreed to subordinate its security interest in Greenwood's inventory to the security interest held by MIDS and MIDS' successors and assigns.[8]

15.    MIDS assigned the First Note and the corresponding security interest to the Plans on July 27, 2010.

16.    On September 9, 2010, MIDS filed a UCC-1 financing statement in the State of Delaware, evidencing a security interest in all of Greenwood's inventory and proceeds thereof.  This UCC-1 financing statement was later amended to name the Plans as the secured party.[9]

17.    On January 3, 2011, MIDS and Contech entered into a second promissory note whereby MIDS loaned $1,750,000 to Contech (the "**Second Note**").  The Second Note was secured by a security interest in all of Contech's inventory and proceeds thereof.

---

[7] The First Note, the Second Note (defined below), and Security Agreement are attached as **Exhibit A** to the Plans' *Motion to Vacate*, filed contemporaneously herewith.

[8] The Subordination Agreement is attached as **Exhibit B** to the Plans' *Motion to Vacate*, filed contemporaneously herewith.

[9] The Plans' UCC-1 financing statement is attached as **Exhibit C** to the Plans' *Motion to Vacate*, filed contemporaneously herewith.

01:13629483.1

18.    MIDS assigned the Second Note and the corresponding security interest to the Plans on January 3, 2010.

### C. Factual Mistakes about the Security Interests in Greenwood's Assets

19.    On January 9, 2013, Greenwood filed *Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**Cash Collateral Motion**"). [Case No. 13-10027, D.I. 8].

20.    In its Cash Collateral Motion, Greenwood states that Bridgeport "has a lien on all of the Debtor's receivables and cash collateral," and this lien is later explained to be first-priority lien. [Case No. 13-10027, D.I. 8 ¶¶ 4-5].

21.    Bridgeport filed its *Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral* ("**Bridgeport's Cash Collateral Objection**")[10] on January 21, 2013. [ Case No. 13-10027, D.I. 39]).

---

[10] Bridgeport asserted that it held a "first priority secured lien… on all of the Accounts, including without limitation, the Debtor's furniture, fixtures and equipment, inventory, products and proceeds thereof, and other assets of the Estate, now existing and hereafter arising, wherever located, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment…." (Bridgeport's Cash Collateral Objection at ¶ 7).  Bridgeport did acknowledge a subordination agreement with BFG as to Greenwood's machinery and equipment. (*Id.* at ¶ 11).  Bridgeport did not recognize the senior security interest of MIDS—and now the Plans—in Greenwood's inventory and proceeds thereof.  On January 18, 2013, BFG filed its *Objection by Boston Finance Group LLC to Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* ("**BFG's Cash Collateral Objection**"). [Case No. 13-10027, D.I. 36].  On February 19, 2013, Greenwood its *Reply of Greenwood Forgings, LLC in Support of Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11*

22.    Because Greenwood was apparently unaware of the Plans' security interest, the Sale Motion and Proposed Sale Order do not reference the Plans' security interest or otherwise address the priority of the Plans' security interest relative to Bridgeport's security interest or BFG's alleged interests in Cash Collateral.

## IV.    OBJECTION

**A. Any Order Authorizing the Sale of the Greenwood Assets Must Adequately Protect the Security Interest of the Plans and Must Further Prohibit Distributions Pending Resolution of the Priority Disputes.**

23.    The Subordination Agreement gives the Plans a first-priority security interest in Greenwood's inventory and proceeds thereof. Although the Plans did not file a UCC-3 evidencing the Subordination Agreement, that fact does not affect the validity of the Subordination Agreement between Bridgeport and the Plans. *See, e.g., In re A. Angelle*, 230 B.R. at 301; *Conagra*, 237 Mich. App. at 131. *See also*, footnote 2, *supra.*

24.    Any Sale Order entered by the Court that approves and authorizes the sale of Greenwood's assets must protect the Plans' security interest. The Proposed Sale Order does not currently protect the Plans' first-priority security interest in inventory and proceeds thereof.

25.    While the Plans do not oppose the sale of Greenwood's assets in concept, the Plans oppose the sale insofar as Greenwood seeks to sell their assets without providing for the Plans' first-priority security interest in inventory and proceeds thereof to attach to the corresponding sale proceeds. The Plans further oppose the sale insofar as the Proposed Sale Order does not provide that the Debtors will reserve the sale proceeds

---

*U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**Greenwood Reply**"). [D.I. 219]. In the Greenwood Reply, Greenwood states that "Bridgeport asserts a senior lien on all of the Debtor's other assets, which lien is subordinate to BFG only as to certain machinery and equipment." (Greenwood Reply at ¶ 5).

until the Court resolves all outstanding priority disputes between the Plans, Bridgeport, and BFG.  For these reasons, the Plans object to the Sale Motion and Proposed Sale Order.  The Plans further object to the Bid Procedures Motion and Bid Procedures Order to the extent the relief granted therein also fails to adequately protect the Plans' security interest.

26.    Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of liens when certain conditions thereunder are met.  Section 363(f) is limited, however, by section 363(e), which provides that:

> On request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

27.    Compliance with section 363(e) of the Bankruptcy Code requires that that any liens against the debtor's assets are protected in a sale under section 363(f).  Liens are properly protected when they attach "to the cash proceeds of the Sale...in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale...."  *In re Accredited Home Lenders Holding Co.*, 2010 WL 2821965, at *4 (Bankr. D. Del. Jan. 28, 2010).  "The commonly accepted method for adequate[ly] protecting a secured creditor when a sale is authorized under § 363(f) is to order the liens to attach to the proceeds of the sale."  *In re Collins*, 180 B.R. 447, 452-53 (Bankr. E.D. Va. 1995).  The essential protection provided by transferring liens to proceeds of an insolvency sale precedes section 363(e) of the Bankruptcy Code and has long been recognized by the Supreme Court.  *See Markey v. Langley*, 92 U.S. 142, 155 (U.S. 1876); *Van Huffel v. Harkelrode*, 284 U.S. 225, 228 (1931) (upholding a sale made pursuant to

an order of the bankruptcy court that directed that all liens be marshalled; that the property be sold free of all encumbrances; and that the rights of all lien holders be transferred to the proceeds of the sale).  Consequently, the Court should not approve a section 363(f) sale motion that does not provide for secured creditors' liens to attach to sale proceeds.

28.    Here, Greenwood's Sale Motion and Proposed Sale Order make no mention of the Plans' security interest in Greenwood's inventory and proceeds thereof. Nor do the Sale Motion and Proposed Sale Order otherwise provide for the protection of the Plans' security interest by confirming that the security interest will attach to sale proceeds.  For this reason, the Plans' security interest is not adequately protected in the sale of Greenwood's assets under section 363(f) of the Bankruptcy Code.  Accordingly, the Court should either prohibit the sale or condition it on Greenwood's applying the Plans' security interest to the sale proceeds from the inventory (and proceeds of inventory) and holding the sale proceeds in trust until all priority disputes are resolved.

29.    The Plans recognize that there may be little current value in Greenwood's inventory at present.  The Plans intend to investigate the extent of their collateral and respectfully ask that the Court protect the Plans' rights until all priority disputes are resolved.

30.    Moreover, the Plans request that if an order is entered granting the Sale Motion, that the order include language that requires the sale proceeds to be held in trust until the outstanding priority disputes between the Plans, Bridgeport, and BFG are resolved.  In this respect, the Plans propose that the order contain the following language:

> Until such date as this Court or an appellate court enters a final, non-appealable order resolving all disputes on the relative priority of security

01:13629483.1

interests held by Hillsdale Hourly Pension Plan and Hillsdale Salaried Pension Plan, Bridgeport Capital Funding, LLC, and Boston Finance Group, LLC (collectively, the "**Parties**"), all proceeds from the sale of collateral in which any of the aforementioned parties asserts a security interest will be held in trust by the Debtor for the benefit of the party in whose favor this Court or an appellate court finally resolves the priority disputes.  The Debtor may distribute the respective sale proceeds from collateral in which the aforementioned Parties assert security interests only upon entry of a final, non-appealable order resolving all disputes on the relative priority of security interests.  The Parties' security interests shall attach to all proceeds of the sale of Greenwood's assets and shall have the validity and priority determined by the Court or an appellate court.[11]

## B. The Sale Order Impairs and Modifies the Rights of the Plans, and as a Result, Violates Section 365 of the Bankruptcy Code.

31.    In addition to the failure to comport with and recognize the security interest of the Plans in the inventory and the proceeds thereof, the Proposed Sale Order violates the rights of the Plans as landlords.[12]  For example, "finding" R at page 7 of the Proposed Sale Order purports to sell the Greenwood assets "free and clear of any lien... interest..." (Proposed Sale Order at ¶ R; *see also* proposed order at ¶ T referencing the "attachment" of Liens to the proceeds).  Paragraph 11 of the Proposed Sale Order further provides that the sale of Greenwood's assets (which could arguably include the interest in the Lease) would be free and clear under section 363(f) of the Bankruptcy Code. (Proposed Sale Order at ¶ 11; *see also* ¶ T).  The interest of the Plans as landlords in the

---

[11] Counsel for the Plans has communicated with counsel for Greenwood relative to the language to be added to a Proposed Sale Order to address the concerns of the Plans.  While counsel for the respective parties are discussing any such language, the parties have not yet reached resolution and, as a result, the Plans have filed this Objection for this reason, among others.  Counsel for the Plans will continue to discuss acceptable language with counsel for Greenwood and may well be in a position to reach resolution prior to the adjourned hearing date of May 30, 2013.

[12] The Plans note that Greenwood filed on May 19, 2013 a *Notice of Selection of Stalking Horse Bidder* [D.E. 585] selecting American Axle & Manufacturing, Inc. ("AAM") as the stalking horse bidder. A proposed Asset Purchase Agreement between Greenwood and AAM was also provided.  The Asset Purchase Agreement proposes that AAM will purchase the real property subject to the Lease in addition to certain personal property of Greenwood.  To the extent this proposed sale occurs and the real property is sold, the Plans recognize that their objections may become moot.  The Plans nonetheless assert their objections to protect their interests and reserve their rights in the event that the proposed sale with AAM is not closed.

01:13629483.1

Lease (and the underlying leased property) is not such that could be properly addressed in a section 363 sale—such as, for example, a lien—and thus the Debtors' proposal to sell any interest in the lease or the real property "free and clear" is without basis under section 363(f). *See In re Patriot Place, Ltd.*, 486 B.R. 773, 815-817 (Bankr. W.D. Tex. 2013); *but cf. In re Qualitech Steel, Inc.*, 327 F.3d 537, 548 (7th Cir. 2003) (noting that the parties did not dispute that section 363(f) had been met). At bottom, the free and clear concept cannot apply to the interest of the Plans as landlords in the Lease and the underlying fee simple interest in the real property subject to the Lease.

32.    The Assumed contracts provisions at paragraphs 19 through 27 of the Proposed Sale Order are similarly flawed. For example, paragraph 22 simply provides that the Debtor shall promptly pay or cause to be paid the cure costs. (Proposed Sale Order at ¶ 22). This is incorrect. 11 U.S.C. § 365(b)[13]; *See also In re Entertainment, Inc.*, 223 B.R. 141, 150-52 (Bankr. N.D. Ill. 1998). As a condition of assumption, the cure costs (and the Plans have objected to the cure costs in a separate pleading) should be paid, indefeasibly, in cash. *Id.* The only exception to this condition is if Greenwood provides adequate assurance of prompt cure, which has not occurred. Moreover, paragraph 22 fails to acknowledge the ongoing indemnity obligations of the Debtors as being assumed and assigned to the Purchaser-Assignee. (Proposed Sale Order at ¶ 22). As explained in the Cure Objection, a potential Assignee takes all obligations *cum onere* and, as a result, the cure must contemplate the obligation of the Assignee to undertake all obligations, matured or unmatured, liquidated or unliquidated, disputed or undisputed, fixed or contingent, as of the date of assignment. Moreover, paragraph 23 similarly

---

[13] Section 365(b)(1)(A) of the Bankruptcy Code provides that "the [debtor] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor]— (A) cures, or provides adequate assurance that the [debtor] will promptly cure...."

purports to "bar" and "estop" any further claims against the Debtors or the Purchasers. (Proposed Sale Order at ¶ 23). This in inconsistent with section 365(b)(2) and the indemnity claims must be addressed in the Proposed Sale Order.

33.    Finally, paragraph 31 of the Proposed Sale Order addressing "assumed obligations" also violates the rights of the Plans as Landlords to Greenwood. The language in paragraph 31 purports to enjoin certain actions and purports to preclude the assertion of claims against, for example, the Purchaser-Assignee. (Proposed Sale Order at ¶ 31; *see also* ¶ 33 relating to limitations of obligations). Any indemnity and other obligations of the terms of the Lease must be characterized as an Assumed Obligation such that the Purchaser-Assignee is fully obligated in respect of any indemnity obligation out of the Lease for claims, facts, circumstances or otherwise arising prior to or after the Petition Date and prior to or after the Closing Date.

**C. Further Reservation of Rights**

34.    As of the date of the filing of this Objection, the Plans are aware that by Third Notice of Extension of Bid Deadline and Notice of Change of Date and Time of Commencement of Auction (D.I. 591), the Debtors have extended the "Bid Deadline" to May 24, 2013 at 4:00 p.m. (Eastern Time) and have extended the date of the Auction (to the extent Debtors receive more than one Qualified Bid), to May 29, 2013 at 10:00 a.m. (Eastern Time). Given the fact that the outlines of a transaction have not yet been made clear, the Plans reserve all rights to object to the final transaction proposed by the Debtors (which apparently might occur at the May 30, 2013 hearing). The Plans further reserve all rights with respect to the supposedly "termination" of the Lease in connection with the transaction with AAM. The Plans reserve the right to file proofs of claim and to address the issue that termination is distinct from rejection under the Bankruptcy Code (11 U.S.C.

§ 365(b)) and, as a result, the Plans will be entitled to assert claims for damages accordingly. Given the fluid nature of the sale process, the Plans reserve all rights in respect of the proposed sale of the Greenwood assets and reserve the right to file additional pleadings or to argue at the hearing (to the extent it goes forward) on May 30, 2013.

## V.    CONCLUSION

**WHEREFORE**, the Plans respectfully request that the Court either deny the Sale Motion or condition its granting the Sale Motion on Greenwood's proper protection of the Plans' security interest in inventory by transferring the Plans' security interest to any sale proceeds arising from Greenwood's inventory or proceeds of inventory. In addition, the Plans respectfully request the Court deny approval of the Proposed Sale Order absent the modification of the Sale Order to fully address the interest of the Plans under the Lease to the extent the Lease is assumed and assigned to the Purchaser-Assignee.


Date:    May 21, 2013
         Wilmington, Delaware

                         YOUNG CONAWAY STARGATT & TAYLOR, LLP

                            _/s/ Kenneth J. Enos_____
                            Joel A. Waite, Esq. (No. 2925)
                            Kenneth J. Enos. Esq. (No. 4544)
                            Rodney Square
                            1000 North King Street
                            Wilmington, DE 19801
                            Telephone:  (302) 571-6600
                            Facsimile:  (302) 571-1253
                            jwaite@ycst.com
                            kenos@ycst.com

                            -and-

01:13629483.1

ALSTON & BIRD LLP
Dennis J. Connolly, Esq. (*pro hac vice pending*)
Georgia Bar No. 182275
Kevin M. Hembree, Esq.
Georgia Bar. No. 157405
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
dennis.connolly@alston.com
kevin.hembree@alston.com

*Counsel to Hillsdale Hourly Pension Plan*
*and Hillsdale Salaried Pension Plan*