IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | Case No. 12-13262 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 28, 2013 at 10:00 a.m.<br>Related Docket Nos.: 474, 496, 558 |

**OBJECTION OF BOSTON FINANCE GROUP, LLC TO (I) DEBTORS' MOTION FOR SALE OF THE ASSETS OF DEBTOR GREENWOOD FORGINGS, LLC AND (II) DEBTORS' APPLICATION TO RETAIN ANGLE ADVISORS**

Boston Finance Group, LLC ("**BFG**"), by and through its undersigned counsel, hereby files this objection (the "**Objection**") to (i) the motion of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtor Greenwood Forgings, LLC Outside the Ordinary Course of Business; (B) Authorizing the Sale of Greenwood's Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code; (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief [Docket No. 558] and Notice Of Selection Of Stalking Horse Bidder In Connection With The Sale Of The Assets Of Debtor Greenwood Forgings, LLC [Docket No. 585] (the "**Sale Motion**") and (ii) Application Of Greenwood Forgings, LLC For Entry Of An Order Authorizing The Employment And Retention Of Angle Advisors LLC As Investment Bankers For Greenwood

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtors' federal tax identification numbers are as follows: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

Forgings, LLC *Nunc Pro Tunc* To April 4, 2013 [Docket No. 553 ] ("**Angle Application**"). In support of this Objection, BFG respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Sale Motion, Angle Application and this Objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Sale Motion, Angle Application and this Objection are core proceedings pursuant to 28 U.S.C. § 157.

## LIMITED BACKGROUND

2. On December 3, 2012, Debtors Revstone Industries, LLC ("**Revstone**") and Spara, LLC ("**Spara**") each filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On January 7, 2013 (the "**Petition Date**"), Debtors Greenwood Forgings, LLC ("**Greenwood**") and US Tool & Engineering, LLC ("**US Tool**") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their properties and control of their businesses pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On December 18, 2012 the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") in the case of Revstone. No official committee has been appointed in the cases of Spara, Greenwood or US Tool. No trustee or examiner has been appointed in any of the Debtors' cases.

4. On February 6, 2013, this Court entered an order permitting the Debtors' cases to be jointly administered solely for procedural purposes.

5. Since the Petition Date, this Court has entered five interim orders authorizing Greenwood to use cash collateral in which BFG holds an interest, culminating on April 8, 2013,

with this Court's entry of the *Fifth Interim Order (A) Authorizing Debtor Greenwood Forgings, LLC to Use Cash Collateral Pursuant to 11 U.S.C §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; and (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362* [Docket No. 459] (the "**Fifth Interim Cash Collateral Order**"). The prior four interim cash collateral orders, together with the Fifth Interim Cash Collateral Order (collectively to be referred to as the "**Cash Collateral Orders**") were entered on the following dates: January 14, 2013 [Related Case No. 13-10027, Docket No. 20]; January 25, 2013 [Related Case No. 13-10027, Docket No. 53]; February 22, 2013 [Main Case No. 12-13262, Docket No. 264]; and March 19, 2013 [Main Case No. 12-13262, Docket No. 406], respectively.

6. As of the Greenwood Petition Date, Greenwood was operating its business in the ordinary course.

7. As of the Greenwood Petition Date, BFG held a claim against Greenwood in an amount not less than $4.8 million, which claim is secured by a perfected, unavoidable, first-priority lien on furniture, fixtures, machinery and equipment, and a perfected, unavoidable, second priority lien on certain accounts, including, without limitation, accounts owing to Greenwood by certain non-debtor affiliates of Greenwood.[2] No objections to such liens were filed prior to expiration of the challenge period set forth in the Fifth Interim Cash Collateral Order on April 6, 2013. Fifth Interim Cash Collateral Order at ¶ 15.

8. Shortly following the Greenwood Petition Date, given Greenwood's representations that it was facing liquidity constraints, BFG provided Greenwood with a proposed term sheet for debtor in possession financing to ensure that Greenwood would be able

---

[2] At the time of the filing of this Objection, the Bridgeport secured claim should have been satisfied and its lien released by virtue of payment in full and establishment of contingency reserves; however, the docket does not reflect the status of the Debtors' reconciliation of the claim of Bridgeport. Upon satisfaction of Bridgeport's claim and lien, BFG's second priority lien becomes a first priority lien.

to continue operating in the ordinary course and to preserve the going concern value of Greenwood's business.

9. The Debtors refused to respond to BFG's proposed DIP financing term sheet, determining rather that Greenwood would enter into a wind down mode in connection with the entry of the third interim cash collateral order. The Debtors have represented that they entered into wind down agreements with certain of their customers, which agreements were not disclosed to or approved by the Court and have not been disclosed to BFG.[3] Greenwood currently is not operating, has no customers and has no commitments from any customer to return business to Greenwood or any purchaser of Greenwood's assets, to the significant detriment of the estate.

10. As a result of the Debtors' determination to wind down Greenwood's operations, BFG's interest in property of the estate was materially impaired and further materially diminished as a result of Greenwood's use of BFG's cash collateral over BFG's objection.[4]

11. On April 12, 2013, the Debtors filed the *Debtors' Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor Greenwood Forgings, LLC, (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto, (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts, (D) Approving Certain Expense Reimbursement Provisions and Breakup Fee, and (E) Granting Other Related Relief* [Docket No. 474] (the "**Bid Procedures Motion**"),[5] including proposed procedures (the

---

[3] In the Bid Procedures Motion, the Debtors state that "Greenwood negotiated customer accommodations with the two remaining customers to cover all interim operating expenses." Bid Procedures Motion at ¶9.

[4] "This Fifth Interim Cash Collateral Order, as with the preceding interim cash collateral orders, is entered over the objection of BFG." Fifth Interim Cash Collateral Order at ¶ D.

[5] All capitalized terms used but not defined herein shall have the meanings set forth in the Bid Procedures Motion.

"**Bid Procedures**") for the disposition of substantially all of Greenwood's assets (the "**Greenwood Assets**").

12. On April 17, 2013, the Court granted the Bid Procedures Motion [Docket No. 498], setting (i) a deadline for designation of a stalking horse bidder (the "**Stalking Horse Deadline**") on May 10, 2013 at 5:00 p.m.; (ii) a bid deadline (the "**Bid Deadline**") on May 17, 2013 at 4:00 p.m.; and a sale hearing on May 28, 2013 at 10:00 a.m.

13. On May 7, 2013, the Debtors filed the Sale Motion.

14. Since this Court granted the Bid Procedures Motion, the Debtors have four times extended the Stalking Horse Deadline and twice extended the Bid Deadline, the last such extension occurred on May 16, 2013, when Debtors filed the *Extension of Stalking Horse Bid Deadline to May 19, 2013 at 5:00 PM and Second Notice of Extension of Bid Deadline to May 22, 2013 at 4:00 PM* [Docket No. 579] (the "**Fourth Extension**"). The prior three extensions were filed on the following dates: May 3, 2013 [Docket No. 552]; May 7, 2013 [Docket No. 557]; and May 10, 2013 [Docket No. 568], respectively.

15. As currently fixed by the Fourth Extension, the Stalking Horse Deadline was May 19, 2013 at 5:00 p.m. and the Bid Deadline is May 22, 2013 at 4:00 p.m. The Debtors have indicated further extensions have been sought for the Bid Deadline, the Auction and the Sale Hearing.

16. On May 19, 2013, the Debtors filed the Notice of Selection of Stalking Horse Bidder in Connection with the Sale of the Assets of Debtor Greenwood Forgings, LLC [Docket No. 585] (the "**Stalking Horse Notice**"), pursuant to which the Debtors identified the stalking horse bidder as American Axle & Manufacturing, Inc. (the "**Stalking Horse Bidder**"), and submitted a proposed Asset Purchase Agreement (the "**Stalking Horse APA**") with a purchase

price of $2.5 million (the "**Purchase Price**"), a proposed break-up fee of $75,000, and a minimum overbid of $100,000 greater than the combination of the Purchase Price and the proposed break-up fee (the "**Stalking Horse Protections**").

17. The Fifth Interim Cash Collateral Order provides that consent for Greenwood's use of cash collateral will expire on May 31, 2013 (the "**Termination Date**"), and requires that on or before the Termination Date the Debtors must consummate a sale of substantially all of Greenwood's assets. *See* Fifth Interim Cash Collateral Order, at ¶¶2, 5(d).

## OBJECTION

18. BFG submits this Objection to address the following issues presented by the Sale Motion, the Angle Application and the Stalking Horse Notice: (1) the proposed order approving the sale fails to provide for distribution of the sale proceeds directly to BFG from the closing of the sale; and (2) certain issues raised by the proposed form of Asset Purchase Agreement attached to the Stalking Horse Notice and thereby the Stalking Horse Protections encapsulated therein. By this Objection, BFG does not object to the retention of Angle or the payment of the fees contemplated by the Angle Application. To the extent, however, that the Debtors seek to pay fees to Angle and the Debtors' other advisors from the proceeds of the sale of the Greenwood Assets prior to payment in full of BFG, BFG does not consent to such payments and accordingly objects to any such relief.

### I. SALE PROCEEDS

19. By the Sale Motion, Greenwood is seeking this Court's authorization, following the Auction, to sell substantially all of its assets to the Stalking Horse Bidder or the successful bidder at the Auction. The assets being sold are subject to the perfected, first priority lien of BFG and, absent payment in full of the amounts due to BFG, may not be sold without BFG's

consent. The Stalking Horse Bidder has submitted a bid for the Greenwood Assets in the amount of $2.5 million, which is far short of the total outstanding amount due to BFG. At this time it is unclear whether Greenwood will be successful in achieving bids for the Greenwood Assets that are sufficient to pay in full the amount outstanding to BFG.

20. Although the Sale Motion provides that the proceeds of the sale will be distributed to BFG in part, with any remaining proceeds distributed to Greenwood's estate, Sale Motion at ¶ 7(viii), the proposed order accompanying the Sale Motion fails to include specific authorization and direction to do so. Further, notwithstanding that distribution of proceeds to a secured lender at closing is typical in sale orders of this type, neither the Sale Motion nor the proposed order provide a timeframe in which Greenwood will distribute the proceeds to BFG, contrary to the adequate protection offered by the Debtors under the Fifth Interim Cash Collateral Order.

21. BFG does not consent to the sale of the Greenwood Assets at this time without assurances that 100% of the sale proceeds will be distributed at closing to BFG. BFG's consent to the sale is necessary, unless the sale results in proceeds distributable to BFG in an amount in excess of its claim and lien on the Greenwood Assets. BFG's grant of consent to the sale of the Greenwood Assets is premised on receiving distribution of the proceeds contemporaneous with closing on the sale.

22. If the Auction does not result in sufficient proceeds to pay in full BFG's claim and Greenwood chooses not to sell the Greenwood Assets under the condition that all proceeds are to be payable to BFG, BFG will withhold its consent to the sale. In such event, Greenwood would be left with the sole alternative of abandoning the assets, thereby permitting BFG to foreclose and dispose of the Greenwood Assets in the manner it chooses. Accordingly, until

such time as Greenwood obtains a sale price in excess of BFG's secured claim, it is not permitted to withhold the proceeds of the sale without BFG's consent.

23.   Moreover, BFG understands that Greenwood intends to seek authority to retain a portion of the proceeds as a holdback for expenses that may be surcharged against the Greenwood Assets, BFG's collateral, under Bankruptcy Code section 506(c), including the fees and expenses incurred by not only Angle, but also the Debtors' counsel and the Debtors' financial advisors. Such a hold back is neither permitted under the Bankruptcy Code nor appropriate in the circumstances.

24.   Bankruptcy Code section 506(c) provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c). Where a secured creditor refuses to consent to a carve-out from its collateral for the payment of expenses and professional fees, the trustee must meet the requirements of Bankruptcy Code section 506(c) in order to charge the collateral for expenses associated with preserving and disposing of the property securing an allowed secured claim. See, e.g., In re JER/Jamison Mezz Borrower II, LLC, 461 B.R. 293, 307 (Bankr. D. Del. 2011) ("There is no guarantee that administrative claims can be paid in a bankruptcy case from encumbered funds absent consent of the secured lender, a finding that the secured lender is adequately protected or a finding that the administrative claimant provided a benefit to the secured lender.").

25.   Throughout Greenwood's chapter 11 case, BFG has repeatedly refused to consent to any carve-out from its collateral for the payment of professional fees. Accordingly, in order to provide for the payment of Angle's or any other professionals' fees from the proceeds of the Greenwood Assets, Greenwood must demonstrate that such costs and expenses were reasonable

and necessary. See, e.g., In re Mech. Maint., 128 B.R. 382, 389 (E.D.Pa. 1991) ("In order for a secured creditor to be charged with expenses under 506(c), a three part test must be satisfied. It must be shown that (1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefited from the expenses."). Moreover, such fees and expenses may only be charged against the collateral to the extent they provided a benefit to the secured creditor. See United Jersey Bank v. Miller (In re C.S. Assocs.), 29 F.3d 903, 906-908 (3d Cir. 1994) (holding that a party seeking recovery under 506(c) must "demonstrate a direct benefit to the secured creditor"). Accordingly, Greenwood must demonstrate not only that any fees to be charged to the Greenwood Assets were reasonable and necessary, but also benefited BFG. To date, Greenwood has provided no evidence to meet its burden.

26.  Further, were Greenwood to recover expenses associated with disposing of the Greenwood Assets, the benefit would be returned to the Greenwood estate and is not collected for the benefit of specific creditors. Accordingly, any amounts recovered for disposition of the Greenwood Assets would still be subject to distribution in accordance with the Bankruptcy Code. As BFG maintains a superpriority claim under section 507(b) for the diminution in value of its collateral (consisting of both the Greenwood Assets and Greenwood's depleted accounts and the cash proceeds thereof), which superpriority claim has priority over all other administrative claims, BFG will be the sole beneficiary of any amounts recovered from the collateral.

27.  Bankruptcy Code section 507(b) provides in relevant part as follows:

> If a trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of [section 507] arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title,

> then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b). Section 507(a)(2) provides the priority for administrative claims allowable under section 503(b), such as fees payable to Angle and the Debtors' other professionals. Claims arising under Bankruptcy Code section 507(b) are entitled to "super-priority" over all other administrative claims arising under Bankruptcy Code section 503(b) having priority under section 507(a)(2). Accordingly, a claim arising under section 507(b) has priority over all other administrative claims, including the fees and expenses Greenwood seeks to charge against the Greenwood Assets sale proceeds. In re Mary Holder Agency, Inc., No. 11-34280 MBK, 2012 WL 4434362 (Bankr. D.N.J. Sept. 24, 2012) (stating that super priority under 507(b) is intended to "compensate the secured claimant for the difference between the adequate protection provided by the debtor and any actual decrease in the value of the collateral occurring during the pendency of the bankruptcy action" and "is an attempt to codify a statutory failsafe system in recognition of the ultimate reality that protection in previously determined the 'indubitable equivalent' ... may later prove inadequate") (citing In re Carpet Ctr. Leasing Co., Inc., 4 F.3d 940, 941 (11th Cir.1993)); see also 4 Collier on Bankruptcy ¶ 503.05[3], p. 503-24 (16th ed. rev. 2013).

28. Pursuant to the Cash Collateral Orders, including, without limitation, the Fifth Interim Cash Collateral Order, BFG is entitled to a section 507(b) superpriority claim for the diminution in value resulting from (i) Greenwood's use of BFG's cash collateral, and (ii) the imposition of the stay and Greenwood's determination not to accept DIP financing to maintain the going concern value of Greenwood's business, instead electing to wind down Greenwood's business then seek to dispose of the Greenwood Assets other than as a going concern. Fifth Interim Cash Collateral Order at ¶ 5(d). Over the course of the administration of the estate under the Cash Collateral Orders, Greenwood was permitted to use more than $1 million of BFG's cash

collateral.[6] Accordingly, BFG maintains a superpriority claim under section 507(b) for amounts in excess of $1 million and would be the sole beneficiary of any and all amounts recovered under a surcharge to BFG's remaining collateral.

29.     Therefore, it is not appropriate to permit Greenwood to withhold distribution of the Greenwood Assets sale proceeds, or any portion thereof, unless BFG is paid in full. Furthermore, Greenwood, by the Angle Application, should not be permitted to seek payment of the Angle fees from such sale proceeds unless BFG is paid in full and such holdback and payments are made exclusively out of excess proceeds.

30.     Finally, BFG reserves its right to object to any fee Angle seeks to collect from any of the Debtors based on value attributable to a sale of the real property owned by the Pension Plans and leased by Greenwood.

31.     Furthermore, to the extent the Auction results in a sale of the Greenwood Assets for a price that is ultimately insufficient to pay BFG's secured claims in full, BFG reserves its rights to assert any and all claims against Greenwood and its various professionals for the failure to properly administer this case which resulted in a significant loss of value to BFG and possibly other creditors.

## II.    STALKING HORSE APA

32.     The Stalking Horse APA presents the following issues:

- Section 1.1.5: Transfer of the insurance policies without a concurrent assumption of liabilities leaves the estate unreasonably uninsured for all losses;
- Sections 1.1 and 1.2: Accounts are neither listed as purchased nor excluded assets. They should be excluded assets and the agreement should provide Greenwood access to the books and records necessary to collect or sell and assign the accounts;

---

[6] Although BFG was granted replacement liens on incoming receivables of Greenwood, given Greenwood's decision to wind down operations and cease creating new receivables, BFG was left without any property on which to attach replacement liens and, therefore, the purported adequate protection provides has failed in its entirety.

- Section 2.3: This section contemplates an allocation of value among the assets being sold without input from BFG. Any allocation agreed without input by BFG should not be binding on BFG, as assets beyond just BFG's collateral are included in this sale;

- Section 4.2.5: Condition that no litigation is pending or threatened is too broad and should be limited to entry of an order preventing consummation of transaction;

- Section 4.2.7 and 4.2.8: Condition that real estate purchase agreement be signed contemporaneous with closing is unreasonable in light of the delay in the sale hearing to 5/30 and closing by 5/31;

- Other parties bidding must have same opportunities to purchase realty at same price on same terms as that afforded to the Stalking Horse;

- Section 8.1(vi): Timing of applicability of this paragraph is ambiguous; it should be clarified so that it is limited to solely following closing on the sale;

- Section 8.1: As drafted, the language is ambiguous as to whether the Stalking Horse bid is the backup bid no matter how many other higher and better offers are received at the Auction including from the Buyer. This should be revised to clarify that Stalking Horse bid is solely eligible to act as the backup bidder, subject to the other auction procedures approved by this Court and at the highest bid submitted by Buyer;

- Section 8.2: Inappropriately seeks to grant the Stalking Horse the right to prime BFG's lien on the proceeds with respect to the proposed breakup fee. Without modification of the other issues raised herein, BFG will not consent to such priming. With modification, BFG may consent to a carve-out from the proceeds for the breakup fee, if triggered;

- Section 9.1: Covenant to continue operating in ordinary course of business should be clarified to recognize that Greenwood is not operating;

- Section 10.1.8 and 10.10.10: Contradict the language set forth in section 8.1. These sections should be limited to Greenwood's right to terminate if the Stalking Horse bid is not successful or is not triggered to act as the back-up bid and only upon closing of the sale to the highest bidder;

- Section 11.12: Should include a proviso limiting representation of obligation to pay Angle to make clear that any and all fees paid to Angle are subject to Bankruptcy Court approval and will not be paid in excess of amounts approved after notice and a hearing;

- Section 11.15: Assignment under this paragraph should require that the Buyer remain liable notwithstanding such assignment.

33.    For the above reasons, BFG objects to approval of the Stalking Horse Protections and, until such issues are resolved, does not consent to sale of the Greenwood Assets on the terms set forth in the Stalking Horse Notice.

## CONCLUSION

WHEREFORE, Boston Finance Group, LLC respectfully requests that this Court (i) deny the Sale Motion unless modified as requested herein, (ii) deny the bid protections, including the proposed breakup fee, set forth in the Stalking Horse Notice, (iii) deny the Angle Application to the extent Greenwood seeks to pay fees and expenses incurred by Angle prior to payment in full of BFG, and (iv) grant such other and further relief as this Court deems just and proper.

Dated: May 21, 2013
      Wilmington, Delaware

/s/Stuart M. Brown
Stuart M. Brown (DE 4050)
**DLA PIPER LLP (US)**
919 N. Market Street, 15th Floor
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com

-and-

Gregg M. Galardi (DE 2991; NY 4535506)
Sarah E. Castle (NY 4932240)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: gregg.galardi@dlapiper.com
      sarah.castle@dlapiper.com

*Counsel to Boston Finance Group, LLC*