UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| ) | |
| REVSTONE INDUSTRIES, LLC, *et al.*,[1] ) | Case No. 12-13262 (BLS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | Re: Docket Nos. 8, 20, 53 (in 13-10027) |
| ) | and 264, 406 & 459 (in 12-13262) |
| ) | Hearing Date: To Be Determined |
| ) | Objections Due: To Be Determined |

**MOTION OF HILLSDALE SALARIED PENSION PLAN AND
HILLSDALE HOURLY PENSION PLAN TO VACATE OR AMEND
THE INTERIM CASH COLLATERAL ORDERS**

Hillsdale Hourly Pension Plan and Hillsdale Salaried Pension Plan (the "**Plans**") hereby file this motion (the "**Motion**") to vacate or amend the Interim Cash Collateral Orders (as defined below) pursuant to Federal Rule of Civil Procedure 60(b).[2] In support of their Motion, the Plans state as follows.

I.    PRELIMINARY STATEMENT

1.    The Plans' hold a first-priority security interest in Greenwood's inventory and proceeds thereof that is not addressed in the Interim Cash Collateral Orders, apparently due to a mistake of fact. Although Bridgeport Capital Funding, LLC ("**Bridgeport**") at one time held a first-priority security interest in all of Greenwood's assets, Bridgeport agreed to subordinate its security interest in Greenwood's inventory

---

[1] The Debtors in these chapter 11 cases are: Revstone Industries, LLC ("**Revstone**"), Spara, LLC ("**Spara**"), Greenwood Forgings, LLC ("**Greenwood**"), and U.S. Tool & Engineering, LLC ("**U.S. Tool**") (collectively, the "**Debtors**").

[2] Fed. R. Civ. P. 60(b) is applicable in this proceeding through Federal Rule of Bankruptcy Procedure 9024. To the extent that Rule 60(b) is not applicable on the basis that the Cash Collateral Orders are merely "interim," then the Plans request that the Court deny any further orders authorizing the use of cash collateral and deny any protections that would be afforded to Bridgeport (as defined below) or BFG (as defined below) in respect of their priority which might arise by virtue of the orders becoming final until such time as the Court adjudicates the respective rights of the parties upon full presentation of the facts and circumstances relating to the parties' interests in the assets of Greenwood.

01:13630081.1

and proceeds thereof to the security interest of MIDS, LLC ("**MIDS**") and MIDS' assigns. MIDS then assigned its security interest to the Plans. The Plans did not file a UCC-3 financing statement evidencing the subordination agreement,[3] however, and counsel for Bridgeport was apparently not made aware of the subordination agreement. The Debtors initial pleadings did not reference or address the interest of the Plans in the inventory and proceeds thereof. Bridgeport filed pleadings mistakenly asserting that it held a first-priority security interest in all of Greenwood's assets. ([Case No. 13-10027, D.I. No. 39]. Boston Finance Group, LLC ("**BFG**") also asserted a first-priority security interest in Greenwood's machinery and equipment pursuant to a subordination agreement and an alleged interest in Greenwood's accounts receivable pursuant to a garnishment.[4] BFG's alleged interest in the accounts receivable, however, arose after the Plans' security interest was perfected. The Plans' security interest in accounts receivable and cash that constitute proceeds of inventory is therefore senior to BFG's alleged interest. Consequently, the Interim Cash Collateral Orders entered by the Court do not protect the Plans' security interest in Greenwood's inventory and proceeds thereof, as is required pursuant to sections 363 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"). For these reasons, the Interim Cash Collateral Orders should be vacated or

---

[3] That the Plans' did not file a UCC-3 financing statement does not affect the validity of the subordination agreement between Bridgeport and the Plans. *See, e.g., Am. Honda Fin. Corp. v. A. Angelle, Inc. (In re A. Angelle, Inc.)*, 230 B.R. 287, 301 (Bankr. W.D. La. 1998); *Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 131 (Mich. App. 1999).

[4] The relative priority between Bridgeport and BFG as to the accounts receivable is contested by those parties. *See Boston Finance Group LLC's Expedited Motion for Adequate Protection* [Case No. 13-10027, D.I. 25] and *Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral* [Case No. 13-10027, D.I. 39]. As noted in the Plans' Objection to the Sale Order (filed contemporaneously herewith), the Plans hold a prior perfected security interest in the inventory and all proceeds thereof (including accounts receivable and cash) relative to the putative interest of BFG arising under the garnishments it claims to have filed prepetition. No funds should be distributed to any of the creditors until the Court adjudicates the referenced priority disputes.

amended pursuant to Federal Rule of Civil Procedure 60(b).[5] In the alternative, the Interim Cash Collateral Orders should be amended pursuant to the Court's inherent powers to amend interlocutory orders.

## II.    JURISDICTION

2.    This Court has jurisdiction over the subject matter of this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (M), (N), and (O). Venue in this Court is proper under 28 U.S.C. § 1409.

## III.    FACTUAL BACKGROUND

### A. The Debtors' Bankruptcy Cases.

3.    Revstone and Spara filed Chapter 11 petitions for relief under the Bankruptcy Code on December 3, 2012. On January 7, 2013 (the "**Petition Date**"), Greenwood and U.S. Tool also filed Chapter 11 petitions in this Court. On February 6, 2013 the Court entered an *Order Authorizing Joint administration of Related Chapter 11 Cases for Procedural Purposes Only*. [D.I. 173). All cases are now jointly administered.

4.    The Debtors continue to operate their business and manage their properties as debtors-in-possession, and continue to use the Premises.

5.    On March 13, 2013, Greenwood filed its *Schedules of Assets and Liabilities and Statement of Financial Affairs* (the "**Schedules**"). [D.I. 365]. According to the Schedules, Greenwood held inventory with a value of $35,225.54 as of December

---

[5] Hereinafter referred to as Rule 60(b). Federal Rules of Bankruptcy Procedure are hereinafter referred to as the Bankruptcy Rules.

21, 2012. Although possessing approximately $35,000 in inventory, Greenwood stated that it held nearly $900,000 in accounts receivable.

6. On Schedule D of its Schedules, Greenwood listed the Plans as holding one secured claim for $1,600,000 and another secured claim for $1,750,000.

7. On April 12, 2013 Debtors filed their *Motion for Entry of an Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor Greenwood Forgings, LLC; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Certain Expense Reimbursements Provisions and Breakup Fee; And (E) Granting Other Related Relief* (the "**Bid Procedures Motion**"). [D.I. 474].

8. On April 17, 2013, the Court entered an *Order (A) Approving Bid Procedures for the Sale of the Assets of Debtor Greenwood Forgings, LLC; (B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts, Including Notice of Proposed Cure Amounts; (D) Approving Certain Expense Reimbursements Provisions and Breakup Fee; And (E) Granting Other Related Relief* (the "**Bid Procedures Order**"). [D.I. 497].

9. On April 4, 2013, Greenwood filed its *Notice to Counterparties to Executory Contracts and Unexpired Leases that May Be Assumed and Assigned* (the "**Notice**") [D.I. 510], informing non-debtor counterparties to unexpired leases with Greenwood that Greenwood may assume and assign certain leases to a potential purchaser of its assets in a sale under section 363 of the Bankruptcy Code.

10. On May 7, 2013, Debtors filed a *Motion for an Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtor Greenwood Forgings, LLC Outside the Ordinary Course of Business, (B) Authorizing the Sale of Greenwood's Assets Free and Clear of All Liens, Encumbrances and Interests Pursuant to Sections 363(b) (f) and (m) of the Bankruptcy Code; (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* (the "**Sale Motion**") and the attached proposed sale order (the "**Proposed Sale Order**"). [D.I. 558.]

11. As further explained below, none of these pleadings references the Plans' security interest in Greenwood's inventory and proceeds thereof.

B. **Events Preceding the Debtors' Bankruptcy Cases.**

12. Before the Debtors filed their bankruptcy cases, Contech Forgings, LLC[6] entered into a promissory note with MIDS on July 27, 2010. Under the promissory note, MIDS agreed to extend Contech a loan in the amount of $1,600,000 (the "**First Note**"). Pursuant to a security agreement (the "**Security Agreement**") between the parties dated July 27, 2010, the First Note was secured by a security interest in all of Contech's inventory and proceeds thereof. The First Note, the Second Note (defined below), and the Security Agreement are attached hereto as **Exhibit A**.

13. As of July 26, 2010, Bridgeport held a security interest in all of Greenwood's property, as evidenced by a UCC-1 financing statement filed on July 26, 2010.

---

[6] On or about April 3, 2012, Contech Forgings, LLC changed its name to Greenwood Forgings, LLC ("**Greenwood**").

14. On July 27, 2010, Bridgeport, MIDS, and Contech entered into a subordination agreement (the "**Subordination Agreement**") whereby Bridgeport agreed to subordinate its security interest in Greenwood's inventory to the security interest held by MIDS and MIDS' successors and assigns. The Subordination Agreement is attached hereto as **Exhibit B**.

15. MIDS assigned the First Note and the corresponding security interest to the Plans on July 27, 2010.

16. On September 9, 2010, MIDS filed a UCC-1 financing statement in the State of Delaware, evidencing a security interest in all of Greenwood's inventory and proceeds thereof. This UCC-1 financing statement was later amended to name the Plans as the secured party. The Plans' UCC-1 is attached hereto as **Exhibit C**.

17. On January 3, 2011, MIDS and Contech entered into a second promissory note whereby MIDS loaned $1,750,000 to Contech (the "**Second Note**"). The Second Note was secured by a security interest in all of Contech's inventory and proceeds thereof.

18. MIDS assigned the Second Note and the corresponding security interest to the Plans on January 3, 2010.

C. **Factual Mistakes about the Security Interests in Greenwood's Assets.**

19. On January 9, 2013, Greenwood filed *Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final*

*Hearing Pursuant to Bankruptcy Rule 4001* (the "**Cash Collateral Motion**"). [Case No. 13-10027, D.I. 8].

20. In its Cash Collateral Motion, Greenwood states that Bridgeport "has a lien on all of the Debtor's receivables and cash collateral," and this lien is later explained to be first-priority lien. [Case No. 13-10027, D.I. 8 at ¶¶ 4-5].

21. Because Greenwood was apparently unaware of the Plans' security interest, Greenwood's pleadings do not reference the Plans' security interest or otherwise address the priority of the Plans' security interest relative to Bridgeport's security interest or BFG's alleged interest in cash collateral.

22. Bridgeport filed its *Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral* ("**Bridgeport's Cash Collateral Objection**")[7] on January 21, 2013. [Case No. 13-10027, D.I. 39]. Bridgeport did not

---

[7] Bridgeport asserted that it held a "first priority secured lien… on all of the Accounts, including without limitation, the Debtor's furniture, fixtures and equipment, inventory, products and proceeds thereof, and other assets of the Estate, now existing and hereafter arising, wherever located, subject only to any applicable agreements for the subordination of Bridgeport's lien interests that may exist with respect to machinery and equipment…." (Bridgeport's Cash Collateral Objection at ¶ 7). Bridgeport did acknowledge a subordination agreement with BFG as to Greenwood's machinery and equipment. (*Id.* at ¶ 11). On January 16, 2013, Boston Finance Group LLC filed *Boston Finance Group LLC's Expedited Motion for Adequate Protection* (the "**Adequate Protection Motion**"). [Case No. 13-10027, D.I. 25]. In its Adequate Protection Motion, BFG asserts a security interest in Greenwood's machinery and equipment and, pursuant to garnishments served between August 31, 2012 and September 11, 2012, alleges an interest in certain accounts receivable. (Adequate Protection Motion at ¶ 19). The Adequate Protection Motion did not recognize the Plans' security interest in Greenwood's inventory and proceeds thereof. On January 18, 2013, BFG filed its *Objection by Boston Finance Group LLC to Debtor's Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* ("**BFG's Cash Collateral Objection**"). [, Case No. 13-10027, D.I. 36]. Bridgeport filed its *Response and Opposition by Bridgeport Capital Funding, LLC to Boston Finance Group, LLC's (I) Expedited Motion for Adequate Protection and (II) Objection to Debtor's Motion for Interim and Final Orders Authorizing Debtor to Use Cash Collateral* ("**Bridgeport's Cash Collateral Objection**")[7] on January 21, 2013. [Case No. 13-10027, D.I. 39]. On February 19, 2013, Greenwood its *Reply of Greenwood Forgings, LLC in Support of Debtor's*

recognize the Plans' security interest in Greenwood's inventory and proceeds thereof, including accounts receivable and Cash Collateral.

23. On January 14, 2013, this Court entered the *Interim Order (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; and (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362* (the "**First Interim Cash Collateral Order**"). The First Interim Cash Collateral Order does not reference or otherwise protect the Plans' security interest in Greenwood's inventory and proceeds thereof.

24. On January 25, 2013, the Court entered the Second Interim Cash Collateral Order. [Case No. 13-10027, D.I. 53]. On February 22, 2013, the Court entered the Third Interim Cash Collateral Order. [D.I. 264]. On March 19, 2013, the Court entered the Fourth Interim Cash Collateral Order. [D.I. 406]. On April 8, 2013, the Court entered the Fifth Interim Cash Collateral Order. (D.I. 459). (the First, Second, Third, Fourth, and Fifth Cash Collateral Orders are collectively the "**Interim Cash Collateral Orders**"). (D.I. 459).

25. None of the Interim Cash Collateral Orders references or provides for adequate protection for the Plans' security interest in Greenwood's inventory and proceeds thereof.

---

*Motion for Interim and Final Orders: (A) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2); (B) Granting Adequate Protection Pursuant to 11 U.S.C. § 361; (C) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "**Greenwood Reply**"). [D.I. 219]. In the Greenwood Reply, Greenwood states that "Bridgeport asserts a senior lien on all of the Debtor's other assets, which lien is subordinate to BFG only as to certain machinery and equipment." (Greenwood Reply at ¶ 5).

## IV. ARGUMENT AND BASIS FOR RELIEF

26. The Plans request that the Court either vacate or amend the Interim Cash Collateral Orders in order to protect the Plans' security interest, as necessary.

27. The statutory predicate for the relief sought herein are sections 363 and 552 of the Bankruptcy Code as well as Rule 60(b). In the alternative, the statutory predicate for the relief sought herein is the Court's inherent powers to amend non-final orders.

### A. The Priority of the Plans' Security Interest.

28. As demonstrated above, the Plans hold a perfected security interest in Greenwood's inventory and proceeds thereof as of September 9, 2010. The security interest remains perfected (1) in proceeds of inventory and (2) proceeds of inventory proceeds—i.e., payments made on accounts receivable that arose from the sale of inventory.[8] Nevada Revised Statute ("**N.R.S.**") § 104.9315(4)(a) & (b); *In re Airport Inn Assoc., Ltd.*, 132 B.R. 951, 957 (Bankr. D. Colo. 1990) (explaining that a payment on an account receivable is a proceed of that account).

29. In accordance with the Subordination Agreement, which is governed by Nevada law, the Plans' security interest in inventory and proceeds of inventory is senior to Bridgeport's security interest in the same. Subordination agreements are enforceable as contractual obligations in bankruptcy to the extent enforceable under applicable non-bankruptcy law.[9] 11 U.S.C. § 510(a) ("A subordination agreement is enforceable in a

---

[8] In accordance with N.R.S. § 104.9315(4)(a), the Plans filed a financing statement covering the original collateral; the proceeds are collateral in which a security interest may be perfected by filing a financing statement in Delaware; and the proceeds were not acquired with cash collateral. Additionally, in accordance with N.R.S. § 104.9315(4)(b), the Plans security interest continues to be perfected in identifiable cash proceeds.

[9] *See also Rainier Nat'l Bank v. Roderick Timber Co. (In re Roderick Timber Co.)*, 881 F.2d 1084, *2 (9th Cir. 1989); *In re Smith*, 77 B.R. 624, 626-27 (Bankr. N.D. Ohio 1987).

case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."). Nevada's Uniform Commercial Code ("**UCC**") provides that "[t]his article does not preclude subordination by agreement by a person entitled to priority." N.R.S. § 104.9339; *Owens-Corning Fiberglass Corp. v. Texas Commerce Bank N.A.*, 104 Nev 556, 559-60 (Nev. 1988). Thus, the Plans hold a first-priority security interest in inventory and proceeds of inventory pursuant to the Subordination Agreement.

30. The senior priority of the Plans' security interest in accounts receivable may be subject to Bridgeport's control over those accounts. The Plans continue to investigate facts on this issue.

31. Regardless of the relative priority of the Plans' security interest as to Bridgeport, the Plans' hold a senior security interest relative to BFG with respect to Greenwood's inventory and proceeds thereof, including accounts receivable and cash. The Plans' security interest was perfected on September 9, 2010. BFG's garnishments were served between August 31, 2012 and September 11, 2012. (BFG's Adequate Protection Motion at ¶ 19). Consequently, the Plans' security interest was undoubtedly perfected prior in time to BFG's alleged interest. Between a perfected security interest and a garnishment lien, the general rule of first to file or perfect controls; thus, a *prior* perfected security interest will take priority over a later perfected garnishment lien. U.C.C. § 9-322(a). *See also Michigan Tractor and Mach. Co. v. Elsey*, 216 Mich. App. 94, 97 (Mich. Ct. App. 1996) (analyzing Michigan's version of the UCC and ruling that "one who becomes a lien creditor after another's security interest is perfected is subordinate to that perfected security interest."); *Bowlen v. F.D.I.C.*, 815 P.2d 1013, 1015

(Colo. App. 1991) (analyzing Colorado law and stating that "[a]s between a prior perfected security interest and a lien creditor, the prior perfected security interest is superior."). The Plans' security interest in Greenwood's inventory and proceeds thereof is therefore senior to BFG's alleged interest in Greenwood's accounts receivable and proceeds thereof.

### B. The Plans' Rights Pursuant to Sections 363 and 552.

#### i. *The Plans' Perfected Security Interest Is Preserved under Section 552*

32. Section 552(a) of the Bankruptcy Code deems security interests in after-acquired property to be generally unenforceable following the commencement of a bankruptcy case. 11 U.S.C. § 552(a). Section 552(b) of the Bankruptcy Code qualifies this mandate, however, by protecting security interests in after-acquired property if the security interest is entered into before the commencement of the case and the security interest extends to proceeds, product, offspring, or profits. Section 552(b) of the Bankruptcy Code provides that:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and *to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case* to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (emphasis added). Because the Plans' had a properly perfected security interest before the commencement of Greenwood's (and the other Debtors') bankruptcy filings and because such security interest extended to proceeds and products

of inventory, the Plans' security interests continues as a valid security interest in bankruptcy pursuant to section 552(b). Therefore, the Plans have a properly perfected security interest in (1) Greenwood's inventory, (2) the postpetition proceeds arising from sale of that prepetition inventory, and (3) the postpetition proceeds arising from prepetition proceeds of inventory (i.e., postpetition payments on prepetition accounts receivable that arose from the sale of inventory).

    ii.    *Section 363(a) Forbids Greenwood's Use of the Plans' Cash Collateral*

33.    The Plans have a properly perfected security interest in proceeds generated from prepetition inventory and prepetition accounts receivable that arose from inventory sales. The income stream arising from the Greenwood's sale of inventory and collection of accounts receivable constitutes the Plans' Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code. *See In re Ed Woods Livestock, Inc.*, 172 B.R. 294, 296-97 (Bankr. D. Neb. 1994).

34.    Section 363 of the Bankruptcy Code provides, in relevant part:

> (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity of than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . . whether existing before or after the commencement of the case under this title.
>
> (c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless--
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

\* \* \* \*

>(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.
>
>\* \* \* \*
>
>(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).
>
>\* \* \* \*
>
>(o) In any hearing under this section--
>
>(1) the trustee has the burden of proof on the issue of adequate protection; and
>
>(2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

11 U.S.C. § 363. In accordance with section 363(c), Greenwood is not permitted to use or pledge revenues that constitute the Plans' Cash Collateral without (1) the Plans' consent or (2) the establishment of measures ensuring the adequate protection of the Plans' interests.

35. A debtor has the burden to establish that a lienholder is adequately protected as a precondition to using its cash collateral. *See In re Grant Broad. of Philadelphia, Inc.*, 71 B.R. 376, 386 (Bankr. E.D. Pa.), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987). While the Bankruptcy Code does not expressly define "adequate protection," section 361 of the Bankruptcy Code states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. §

361. The last possibility is regarded as a "catch-all," allowing courts discretion in fashioning the protection provided to a secured party. For this reason, determinations of whether there is adequate protection are made on a case by case basis. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 563 (3d Cir. 1994).

36. Greenwood never made a request to the Plans for authority to use the Plans' cash collateral, and the Plans have not consented to such use. Further, as of the filing of this Motion, Greenwood has not offered to make, nor has it made, any adequate protection payments to the Plans. Greenwood is therefore using the Plans' cash collateral in violation of the Bankruptcy Code's clear restrictions.

37. While the Court has authorized Greenwood's use of cash collateral through the Interim Cash Collateral Orders, the Court did so without being apprised of the Plans' security interest. The Interim Cash Collateral Orders were therefore entered on a mistake of material fact.

### C. The Interim Cash Collateral Orders Should Be Vacated or Amended.

38. This Court has authority to vacate or amend the Interim Cash Collateral Orders.

39. First, pursuant to Rule 60(b)(1) and (6), incorporated here by Bankruptcy Rule 9024, the Court,

> On motion and just terms, may relief a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> \*\*\*
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(B). Bankruptcy courts have employed Rule 60(b) as the procedural basis for motions that seek to vacate or amend an interim cash collateral order. *In re LTV*

*Steel Company, Inc.*, 274 B.R. 278, 282 (Bankr. N.D. Ohio 2001) (construing creditor's motion to modify an interim cash collateral order as a motion brought under Rule 60(b)); *In re Tek-Aids Indus., Inc.*, 145 B.R. 253, 258 n.5 (Bankr. N.D. Ill. 1992) (applying Rule 60(b) and noting that "[t]he Draft Interim Cash Collateral Orders are final orders. Each order fixed rights and determined liens for a discrete period of time.").

40. In the alternative, if the Court were to determine that Rule 60(b) is inapplicable, the Court may modify the Interim Cash Collateral Orders pursuant to either section 105(a) of the Bankruptcy Code or the Court's inherent powers to amend interlocutory orders. *U.S. v. Jerry*, 487 F.2d 600 (3d Cir. 1973) ("so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."); *Wanamaker v. Columbian Rope Co.*, 907 F. Supp. 522, 527 (N.D.N.Y. 1995), *aff'd*, 108 F.3d 462 (2d Cir. 1997).

41. As to Rule 60(b)(1) and (6), a mistake of fact resulting from a party's failure to disclose a key fact to the court is sufficient cause for a court to reconsider a judgment. *See Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 527, 577 (D.C. Cir. 1980). A court is not "powerless to correct errors into which it is led by the parties' failure to make the key facts known. When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(B)(6) is proper even though the original failure to present that information was inexcusable." *Id.*; *and see In re Integrated Health Services, Inc.*, (Bankr. D. Del Oct 10, 2000) (noting that the fee procedures order at issue

could be modified by Rule 60(b) because the "facts [had] changed" and creditors were adversely affected).

42.     The Plans are not taking the position that there was an intentional misstatement of the relative priorities of the creditors as to the inventory collateral or as to any other consequence of the use of cash collateral. That said, the currently-entered Interim Cash Collateral Orders do not recognize the Plans' security interest, nor do those orders address and protect the Plans' security interest in that cash collateral. In particular, even though the inventory as of the Petition Date was relatively modest in value (the Schedules show a book value of approximately $35,000), none of the parties' submissions to the Court address the relative priorities as to proceeds (including accounts receivable and cash) existing on Greenwood's Petition Date and generated thereafter in respect of Bridgeport and, particularly, BFG.

43.     The Plans are aware that the currently applicable Fifth Interim Order terminates the Debtors' authority to use cash collateral on May 31, 2013. The Plans have not sought to interfere with the potential for the closing of the transaction on or before May 31, 2013 (assuming it proceeds). That said, the Plans reserve all their rights to object to any further uses of Cash Collateral if a motion seeking the extension of the Fifth Interim Order (or the entry of a Proposed "Sixth" Interim Order) is filed by the Debtors.

44.     Given the contemporaneous liquidation of Greenwood and the sale of its assets pursuant to the Sale Motion and Proposed Sale Order, the Plans suggest the following remedy: the Court terminate the Debtors' authorization to use Cash Collateral from and after the closing date of the sale (assuming closing on May 31, 2013) and further prohibit the disposition of any of the proceeds of the sale, along with the

disposition of any of the existing accounts receivable and cash (along with all other intangible assets) so as to preserve those assets pending the resolution of the parties' priority disputes. The Plans are aware of the "Challenge Deadline" of June 7, 2013 with respect to BFG's asserted liens and any other collateral, including cash collateral, as required and set forth in the Fifth Interim Cash Collateral Order. [D.I. 459]. The Plans intend to initiate an adversary proceeding seeking a resolution and declaration of the priority disputes and challenging the putative priority of BFG in any of the "Other Collateral" or cash collateral. The Plans have not yet set a hearing on this Motion as the Plans believe that the most efficient way to adjudicate the issues raised in this Motion, as well as in the to-be-filed adversary proceeding, would be to consolidate matters so as to allow discovery to occur (to the extent necessary) in a consolidated fashion and to allow the Court to adjudicate the rights of the parties based on the Interim Orders of the arguments in respect of the Motion and the adversary proceeding.

## V.   CONCLUSION

**WHEREFORE**, the Plans respectfully request that the Court either vacate or amend the Interim Cash Collateral Orders pursuant to Rule 60(b) in such a manner as will adequately protect the Plans' security interest in Greenwood's inventory and proceeds thereof, in accordance with sections 363 and 552 of the Bankruptcy Code.

Dated: May 21, 2013  
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Kenneth J. Enos_  
Joel A. Waite (No. 2925)  
Kenneth J. Enos (No. 4544)  
Rodney Square  
1000 North King Street  
Wilmington, Delaware 19801  
Telephone:   (302) 571-6600  
Facsimile:   (302) 576-1253  

-and-

ALSTON & BIRD LLP  
Dennis J. Connolly, Esq. (pro hac vice pending)  
Georgia Bar No. 182275  
Kevin M. Hembree, Esq.  
Georgia Bar No. 157405  
1201 Peachtree Street  
Atlanta, Georgia 30309-3424  
Telephone:   (404) 881-7000  
Facsimile:   (404) 881-7777  

_Counsel to Hillsdale Hourly Pension Plan_  
_And Hillsdale Salaried Pension Plan_