# EXHIBIT A

# [First Note, Second Note, and Security Agreement]

PROMISSORY NOTE

**Principal Amount: $1,600,000**                                    **July 27, 2010**

      For value received, Contech Forgings, LLC, a Delaware limited liability company, whose address is 1508 Highway 246 South, Greenwood, SC 29646 (the "Maker"), jointly and severally, promises to pay to the order of **MIDS, LLC**, a Delaware limited liability company, whose address is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505 ("Payee"), in lawful money of the United States of America, without defense, setoff or counter claim, the principal sum of One Million Six Hundred Thousand Dollars ($1,600,000) with interest thereon at twelve (12%) percent/annum pursuant to the terms and conditions set forth in this Note. This Note is secured by the inventory described on the attached Exhibit "A". The term "Note" refers to this Promissory Note.

      **1. Payment of Principal and Interest**. Principal and interest under this Note shall be payable as follows:

      a.    Interest shall accrue at twelve (12%) percent/annum on the outstanding principal amount of the Note so long as no Event of Default (as defined below) has occurred, and shall be payable on the 15th of each Month, calculated to be Sixteen Thousand Dollars ($16,000) per month based upon the original principal amount of One Million Six Hundred Thousand Dollars ($1,600,000), until the entire principal balance is repaid. Upon any Event of Default, interest shall accrue (to the extent permitted by law) at the rate of an additional five percent (5%) on the unpaid principal amount of this Note outstanding from time to time for the period beginning on the date on which such Event of Default occurs and ending on the date on which such Event of Default ceases to exist. Interest shall be computed on the basis of the actual number of days elapsed and a 360-day year.

      b.    On July 27, 2013 (the "Maturity Date") Maker shall pay in full all amounts owing under this Note.

      c.    For purposes of this Note, any day that is not a Saturday, Sunday, or other day in which banks in Lexington, Kentucky are required to be closed is a "Business Day".

      d.    All or any portion of the principal due under this Note may be prepaid at any time without penalty.

      e.    If Maker fails to pay when due any payment of interest or principal on this Note and such failure continues for ten days after the due date, Maker shall pay a late fee equal to $100.

      **2. Events of Default**. The occurrence of any one or more of the following events with respect to Maker is an event of default ("Event of Default"):

      a.    If Maker fails to pay when due any payment of interest or principal on this Note and such failure continues for thirty days after the due date;

      b.    If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors ("Bankruptcy Law"), Maker (i) commences a voluntary case or proceeding; (ii) consents to the entry of an order for relief against it in an involuntary case; (iii) consents to the appointment of a trustee, receiver, assignee, liquidator or similar

{*}1

official; (iv) makes an assignment for the benefit of its creditors; or (v) admits in writing its inability to pay its debts as they become due; or

      c.      If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case; (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties; or (iii) orders the liquidation of Maker, and in each case the order or decree is not dismissed within 60 days.

      **3. Remedies.** Upon the occurrence of an Event of Default, unless all Events of Default have been cured or waived by Payee, Payee may, at its option and by written notice to Maker, (i) declare the entire unpaid principal balance of this Note immediately due and payable regardless of any prior forbearance and (ii) exercise any and all rights and remedies available to it. Maker hereby waives presentment for payment, protest, notice of protest, notice of nonpayment and diligence in bringing suit. Maker agrees to pay all costs of collection, including reasonable attorney's fees, if a default occurs under this Note.

      **4. Information.** Payee may review Maker's financial records at any time upon reasonable notice to Maker.

      **5. Security.** This Note is fully secured by the Inventory set forth on Exhibit "A" and any replacements thereto and Maker hereby grants to Payee its successors and assigns a purchase money security interest in the Inventory and any and all proceeds thereof. This clause is intended by the parties to be a granting clause under the Uniform Commercial Code and serve as a security agreement for all purposes thereunder. Payee may file any and all financing statements and other documents with the appropriate agencies to perfect this security interest, provided, however, that the failure to file any such documents shall not affect the security granted herein. It is the full intent of the parties that the Inventory that is the security for this note shall be bought, sold and rotated as part of the ordinary business practices of the Maker.

      **6. Miscellaneous.**

      a.      **Notices.** Any notice under this Note must be in writing. Any notice delivered as provided in this Section is effective upon receipt by a party. A party may change its notice address by notice to the other party. All notices must be delivered personally, by facsimile, or by registered or certified mail, return receipt requested, postage prepaid, as follows:

            If to Maker:    Contech Forgings, LLC
                            21177 Hilltop Drive
                            Southfield, MI
                            Attention:  Roger Goldbaum
                            Fascimile: (248) 351-1005

            If to Payee:    MIDS, LLC
                            2250 Thunderstick Drive, Suite 1203
                            Lexington, KY 40505
                            Attention:  General Counsel
                            Facsimile: (859) 294-9568

      b.      **Waiver.** None of the provisions of this Note may be waived except in writing. A Party may enforce any provision of this Note even if it has not previously enforced that provision or any other provisions of this Note.

{*}2

        c.       **Captions.** The captions set forth in this Note are for convenience only and are not considered as part of this Note, nor affect in any way the meaning of the terms and provisions hereof.

        d.       **Successors and Assigns.** The terms and conditions of this Note inure to the benefit of and will be binding upon the respective successors and permitted assigns of the parties. Maker may not, without the express written consent of Payee, assign this Note.

        e.       **Counterparts.** This Note may be executed in more than one counterpart, each of which will for all purposes be deemed to be an original and all of which will constitute one and the same Note. A signature to this delivered by telecopy or other electronic means is valid.

        f.       **Governing Law.** This Note must be interpreted, construed and governed by the laws of the State of Kentucky, without regard to principles of conflict of laws.

       IN WITNESS WHEREOF, the undersigned has executed and delivered this Note the day and year above written.

                         Contech Forgings, LLC

                         By:     David Jaeger
                         Its:     President

# EXHIBIT A

All inventory of debtor, and all proceeds and products thereof.

{*}

PROMISSORY NOTE

**Principal Amount: $1,750,000**                                             **January 3, 2011**

For value received, Contech Forgings, LLC, a Delaware limited liability company, whose address is 1508 Highway 246 South, Greenwood, SC 29646 (the "Maker"), jointly and severally, promises to pay to the order of **MIDS, LLC**, a Delaware limited liability company, whose address is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505 ("Payee"), in lawful money of the United States of America, without defense, setoff or counter claim, the principal sum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) with interest thereon at twelve (12%) percent/annum pursuant to the terms and conditions set forth in this Note. This Note is secured by the inventory described on the attached Exhibit "A". The term "Note" refers to this Promissory Note.

**1. Payment of Principal and Interest**. Principal and interest under this Note shall be payable as follows:

a.      Interest shall accrue at twelve (12%) percent/annum on the outstanding principal amount of the Note so long as no Event of Default (as defined below) has occurred, and shall be payable on the 15th of each Month, calculated to be Sixteen Thousand Dollars ($17,500) per month based upon the original principal amount of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000), until the entire principal balance is repaid. Upon any Event of Default, interest shall accrue (to the extent permitted by law) at the rate of an additional five percent (5%) on the unpaid principal amount of this Note outstanding from time to time for the period beginning on the date on which such Event of Default occurs and ending on the date on which such Event of Default ceases to exist. Interest shall be computed on the basis of the actual number of days elapsed and a 360-day year.

b.      On January 3, 2014 (the "Maturity Date") Maker shall pay in full all amounts owing under this Note.

c.      For purposes of this Note, any day that is not a Saturday, Sunday, or other day in which banks in Lexington, Kentucky are required to be closed is a "Business Day".

d.      All or any portion of the principal due under this Note may be prepaid at any time without penalty.

e.      If Maker fails to pay when due any payment of interest or principal on this Note and such failure continues for ten days after the due date, Maker shall pay a late fee equal to $350.

**2. Events of Default**.   The occurrence of any one or more of the following events with respect to Maker is an event of default ("Event of Default"):

a.      If Maker fails to pay when due any payment of interest or principal on this Note and such failure continues for thirty days after the due date;

b.      If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal or state law relating to insolvency or relief of debtors ("Bankruptcy Law"), Maker (i) commences a voluntary case or proceeding; (ii) consents to the entry of an order for relief against it in an involuntary case; (iii) consents to the appointment of a trustee, receiver, assignee, liquidator or similar official; (iv) makes an assignment for the benefit of its creditors; or (v) admits in writing its inability to pay its debts as they become due; or

{*}1

c.      If a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that (i) is for relief against Maker in an involuntary case; (ii) appoints a trustee, receiver, assignee, liquidator or similar official for Maker or substantially all of Maker's properties; or (iii) orders the liquidation of Maker, and in each case the occurrence of an order or decree is not dismissed within 60 days.

3. **Remedies**. Upon the occurrence of an Event of Default, unless all Events of Default have been cured or waived by Payee, Payee may, at its option and by written notice to Maker, (i) declare the entire unpaid principal balance of this Note immediately due and payable regardless of any prior forbearance and (ii) exercise any and all rights and remedies available to it. Maker hereby waives presentment for payment, protest, notice of protest, notice of nonpayment and diligence in bringing suit. Maker agrees to pay all costs of collection, including reasonable attorney's fees, if a default occurs under this Note.

4. **Information**. Payee may review Maker's financial records at any time upon reasonable notice to Maker.

5. **Security.** This Note is fully secured by the Inventory set forth on Exhibit "A" and any replacements thereto and Maker hereby grants to Payee its successors and assigns a purchase money security interest in the Inventory and any and all proceeds thereof. This clause is intended by the parties to be a granting clause under the Uniform Commercial Code and serve as a security agreement for all purposes thereunder. Payee may file any and all financing statements and other documents with the appropriate agencies to perfect this security interest, provided, however, that the failure to file any such documents shall not affect the security granted herein. It is the full intent of the parties that the Inventory that is the security for this note shall be bought, sold and rotated as part of the ordinary business practices of the Maker.

6. **Miscellaneous.**

a.      **Notices**. Any notice under this Note must be in writing. Any notice delivered as provided in this Section is effective upon receipt by a party. A party may change its notice address by notice to the other party. All notices must be delivered personally, by facsimile, or by registered or certified mail, return receipt requested, postage prepaid, as follows:

|  |  |
|---|---|
| If to Maker: | Contech Forgings, LLC |
| | 21177 Hilltop Drive |
| | Southfield, MI |
| | Attention:  Roger Goldbaum |
| | Fascimile: (248) 351-1005 |
| | |
| If to Payee: | MIDS, LLC |
| | 2250 Thunderstick Drive, Suite 1203 |
| | Lexington, KY 40505 |
| | Attention:  General Counsel |
| | Facsimile: (859) 294-9568 |

b.      **Waiver**. None of the provisions of this Note may be waived except in writing. A Party may enforce any provision of this Note even if it has not previously enforced that provision or any other provisions of this Note.

c.      **Captions**. The captions set forth in this Note are for convenience only and are not considered as part of this Note, nor affect in any way the meaning of the terms and provisions hereof.

        d.      **Successors and Assigns.** The terms and conditions of this Note inure to the benefit of and will be binding upon the respective successors and permitted assigns of the parties. Maker may not, without the express written consent of Payee, assign this Note.

        e.      **Counterparts.** This Note may be executed in more than one counterpart, each of which will for all purposes be deemed to be an original and all of which will constitute one and the same Note. A signature to this delivered by telecopy or other electronic means is valid.

        f.      **Governing Law.** This Note must be interpreted, construed and governed by the laws of the State of Kentucky, without regard to principles of conflict of laws.

       IN WITNESS WHEREOF, the undersigned has executed and delivered this Note the day and year above written.

Contech Forgings, LLC

By:   David Jaeger
Its:    President

## EXHIBIT A

All inventory of debtor, and all proceeds and products thereof.

## COMMERCIAL SECURITY AGREEMENT

This Commercial Security Agreement ("**Agreement**") is made July 27, 2010 between Contech Forgings, LLC, a Delaware limited liability company ("**Borrower**"), and MIDS, LLC, a Delaware limited liability company ("**Secured Party**") (**collectively, the "Parties"**).

### RECITALS

A.      Concurrent with the execution of this Agreement, Borrower entered into a Secured Promissory Note dated the same date as this Agreement ("**Note**").

B.      Pursuant to the terms of the Note, Borrower has granted a security interest in certain collateral to Secured Party, and the Parties wish to further document the terms and conditions of that security interest by entering into this Agreement.

**Borrower and Secured Party agree as follows:**

1.      **Definitions.** As used in this Agreement, the following definitions (in addition to other terms and provisions set forth in Article IX of the Michigan Uniform Commercial Code, M.C.L. 440.9101, et seq.) shall apply:

      a.      **Collateral.** The collateral ("**Collateral**") shall consist of the following:

          (1)      All of Borrower's Inventory as set forth on Exhibit A hereto, and

          (2)      To the extent not listed above as original Collateral, proceeds and products of the foregoing, including all Inventory repossessed or returned, and, in addition, as used in this Agreement, Inventory includes goods held for sale or lease or furnished or to be furnished under contracts of service, or goods being processed for sale in Borrower's business, as now or later conducted, including raw materials, work in process, finished goods, and materials and supplies used or consumed in Borrower's business.

      b.      **Note.** The Note executed in connection with the indebtedness incurred by Borrower and owed to Secured Party pursuant to the terms of the Note executed on the same date as this Agreement in the principal amount of $1,600,000 which Secured Party acknowledges and confirms is owing to Secured Party without any setoff, counterclaim or deduction of any kind ( "**Note**").

      c.      **Obligations.**      This Agreement secures the following (collectively, "**Obligations**"):

          (1)      All of the unpaid principal of and accrued interest on the Note and any and all extensions, renewals, supplements, modifications or future advances;

          (2)      All other amounts due Secured Party from time to time under, arising out of, or in connection with the Note (including any and all extensions, renewals,

[*]

modifications or future advances), such loan or loans evidenced by those documents or any other related documents (including this Agreement), including all interest, costs, expenses, and attorneys' fees that may be paid or incurred by Secured Party in the administration and collection of any Obligations, and in the protection, maintenance, and disposition of any Collateral;

(3)    All the unpaid principal of and accrued interest on any and all other loans and extensions of credit that may later be made or granted to Borrower by Secured Party; and

(4) Any of the foregoing that arises after the filing of a petition by or against Borrower under the Bankruptcy Code, even if the obligations due do not accrue because of the automatic stay under the Bankruptcy Code Section 362 or otherwise.

    d.    **Term.**    A period of time ("**Term**") commencing on the date of this Agreement and terminating on the date when all Obligations owed by Borrower to Secured Party have been satisfied ("**Termination Date**").

    e.    **UCC.**  Any term used in the Uniform Commercial Code that is now in effect as of the date of this Agreement in the State of Michigan ("**UCC**") and not defined in this Agreement has the meaning given to the term in the UCC.

    2.    **Perfection of Security Interests.**

        a.    **Filing of Financing Statement.**

(1)    Borrower authorizes Secured Party to file financing statements ("**Financing Statements**") describing the Collateral with all applicable authorities.

        b.    **Possession.**

(1)    Borrower shall have possession of the Collateral if Secured Party chooses to perfect Secured Party's security interest by possession or control in addition to the filing of a Financing Statement.

(2)    Whenever the Collateral is in the possession of a third party, Borrower shall join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that the third party is holding the Collateral for the benefit of Secured Party.

        c.    **Control.**  Borrower shall cooperate at all times with Secured Party in obtaining control with respect to Collateral.

    3.    **Covenants, Warranties, and Representations of Borrower.**  As an inducement to Secured Party to make loans to Borrower, Borrower covenants, represents, and warrants to Secured Party the following:

{*}

     a.     **Title to and transfer of Collateral.** Except as set forth in Paragraph 7 of this Agreement, Borrower has rights in or the power to transfer the Collateral and its title to the Collateral free of all adverse claims, liens, security interests and restrictions on transfer or pledge except as created by this Agreement.

     b.     **Location of Collateral.** Except as set forth in this Agreement, Borrower shall maintain the Collateral at and shall not remove the Collateral from Borrower's address without the prior written consent of Secured Party. Borrower shall promptly notify Secured Party in writing of any change in the location of any place of business or establishment of any new place of business of Borrower.

     c.     **Organization and Name.** Borrower is duly organized and operating a business under the laws of the State of Delaware; Borrower's exact legal name is as set forth in this Agreement; and, further, until the Obligations are paid in full, Borrower agrees that Borrower will:

     (1)     Preserve its existence in good standing and not, in one transaction or a series of related transactions, merge into or consolidate with any other entity, or sell all or substantially all of Borrower's assets;

     (2)     Not change Borrower's name without providing Secured Party with 30 days' prior written notice; and

     (3)     Not change its location as that term is defined in the UCC.

     d.     **Use.** The Collateral shall be used primarily for Borrower's business and in compliance with the rules and regulations promulgated by any applicable authority.

     e.     **Records.** Borrower shall at all times during this Agreement keep accurate and complete records of the Collateral and will, at any time at Secured Party's request, deliver to Secured Party a schedule specifically identifying all of the Collateral.

     f.     **Taxes and charges.** Borrower will promptly pay when due all taxes, assessments or other charges lawfully levied or assessed on the Collateral before they become delinquent and penalties accrue, except to the extent that they are being contested in good faith by appropriate proceedings, but only after written notice is given by Borrower to Secured Party.

     g.     **Insurance.** Borrower will keep the Collateral continuously insured with insurance carriers in amounts and against risks consistent with Borrower's current business practices.

     h.     **Indemnification.** Borrower agrees to indemnify and hold harmless Secured Party from any loss or damage caused by the Collateral or its use. Borrower shall give notice to Secured Party of any damage to the Collateral in excess of $50,000 occasioned by any cause.

{*}

i.     **Impairment of Collateral**.  Borrower will maintain the Collateral in good condition and repair, except for ordinary wear and tear.

j.     **Priority of Security Interest**.  This Agreement, once executed and perfected by the filing of the Financing Statements, shall constitute a first position, valid, legal and effective enforceable perfected lien and security interest in the Collateral.

4.     **Events of Default**.  Borrower shall be in default under this Agreement on the occurrence of any of the following events if such event is not cured within 10 days of receipt of notice from Secured Party (each of which may be referred to as an "**Event of Default**"):

a.     The occurrence of a default or an event of default or a breach of a warranty or representation under any of the following:

(1)     This Agreement, or

(2)     The Note

b.     Borrower's failure to comply with any of the provisions of, or the incorrectness of any representation or warranty contained in this Agreement or the Note.

c.     Borrower voluntarily or involuntarily becomes subject to any proceeding under (i) the Bankruptcy Code or (ii) any similar remedy under state statutory or common law;

d.     Borrower fails to comply with or becomes subject to any administrative or judicial proceeding under any federal, state, or local asset forfeiture or similar law which can result in the forfeiture of property;

e.     Secured Party receiving at any time following the date of this Agreement an SOS Report indicating that Secured Party's security interest is not prior to all other security interests or other interests reflected in the SOS Report.

5.     **Default Costs**.  Should an Event of Default occur, and Borrower has not cured the default within any applicable cure period, Borrower shall pay to Secured Party all costs reasonably incurred by Secured Party for the purpose of enforcing the Secured Party's rights pursuant to this Agreement, including:

a.     Costs of foreclosure;

b.     Costs of obtaining money damages; and

c.     A reasonable fee for the services of attorneys employed by Secured Party for any purpose related to this Agreement or the Obligations including, without limitations, consultation, drafting documents, sending notices, or instituting, prosecuting, or defending litigation or arbitration.

{*}

6.    **Remedies Upon Default**.  Upon any Event of Default and Borrower's failure to cure the default within any applicable cure period, Secured Party may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce or satisfy any Obligations then owing, whether by acceleration or otherwise.

7.    **Miscellaneous**.

a.    **Assignment**.

(1)    This Agreement shall bind and shall inure to the benefit of the parties and the heirs, executors, administrators, successors and assigns of Secured Party and shall bind all persons who become bound as a Borrower to this Agreement.

(2)    Secured Party does not consent to any assignment by Borrower except as expressly provided in this Agreement.

(3)    Secured Party may assign its rights and interests under this Agreement. If an assignment is made, Borrower shall render performance under this Agreement to the assignee. Borrower waives and will not assert against any assignee any claims, defenses or setoffs which Borrower could assert against Secured Party except defenses which cannot be waived.

b.    **Severability**.  Should any provision of this Agreement be found to be void, invalid or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall only affect the provisions found to be void, invalid, or unenforceable and shall not affect the remaining provisions of this Agreement.

c.    **Notices**.  Any notices required by this Agreement shall be deemed to be delivered when a record has been either (a) actually received by the intended recipient via the Unites States Post Office or other delivery service capable of providing signed verification of delivery, (b) received by facsimile transmission, (c) received through the Internet, or (d) when personally delivered.

d.    **Headings**.  Section headings used in this Agreement are for convenience only. They are not a part of this Agreement and shall not be used in construing it.

e.    **Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the state of Michigan.  Notwithstanding the foregoing, the parties consent to the jurisdiction in the state of Michigan and to venue in Oakland County, Michigan. The parties waive all claims of improper venue or *forum nonconveniens*.

f.    **Integration and Modifications**.

(1)    This Agreement and the Note are the entire agreement of Borrower and Secured Party concerning its subject matter; and

{*}

(2)    Any modification to this Agreement must be made in writing and signed by both parties.

g.    **Waiver**.  Any party to this Agreement may waive the enforcement of any provision to the extent the provision is for the party's benefit.

h.    **Further Assurances**.  Borrower agrees to execute any further documents and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted in this Agreement, to maintain the second priority of the security interests or to effectuate the rights granted to Secured Party in this Agreement.

i.    **Prevailing Party**.  The prevailing party in any litigation involving this Agreement shall be entitled to recover, in addition to any other relief obtained, the costs and expenses, including reasonable attorneys' fees and expenses, incurred by the prevailing party.

**[The remainder of this page is intentionally blank.]**

{*}

The parties have signed this Agreement on the date first written on Page 1.

BORROWER:

Contech Forgings, LLC

By:_____
    David Jaeger
Its: President

SECURED PARTY:

MIDS, LLC,

By:_____
    Robert Michael Carr
Its: Vice President of Logistics

{*}

The parties have signed this Agreement on the date first written on Page 1.

BORROWER:

Contech Forgings, LLC

By: _____
    David Jaeger
Its: President


SECURED PARTY:

MIDS, LLC


By: _____
    Robert Michael Carr
Its: Vice President of Logistics

## EXHIBIT A

### Inventory

All inventory of Borrower at the following locations:

1. 1508 Highway 246 South, Greenwood, SC 29646

2. 101 Joe Bernat, Greenwood, SC 29646

{*}

## EXHIBIT A

**Inventory**

All inventory of debtor, and all proceeds and products thereof.

The parties have signed this Agreement on the date first written on Page 1.

BORROWER:

Contech Forgings, LLC

By:_____
   David Jaeger
Its: President

SECURED PARTY:

MIDS, LLC

By:_____
   Robert Michael Carr
Its: Vice President of Logistics

{*}

The parties have signed this Agreement on the date first written on Page 1.

BORROWER:

Contech Forgings, LLC

By:_____
        David Jaeger
Its: President

SECURED PARTY:

MIDS, LLC

By:_____
        Robert Michael Carr
Its: Vice President of Logistics

{*}