**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 12-13262 (BLS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 239, 238, 364, 524, 559, 561** |
| In re:<br>GREENWOOD FORGINGS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-10027 (BLS)<br><br>**Related Docket Nos. 3, 14, 31** |

**FINAL ORDER AUTHORIZING DEBTOR GREENWOOD FORGINGS, LLC TO (I) MAINTAIN EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNT, (II) CONTINUE USE OF EXISTING CHECKS AND BUSINESS FORMS, (III) OBTAIN LIMITED WAIVER OF SECTION 345(B), AND (IV) CONTINUE INTERCOMPANY TRANSACTIONS**

Upon the motion (the "**Motion**")[2] of Greenwood Forgings, LLC (the "**Debtor**") for an order pursuant to Sections 105(a), 345, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") authorizing the Debtor to (i) maintain its existing cash management system and bank account, (ii) continue use of existing checks and business forms, (iii) obtain a limited waiver of

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Section 345(b) of the Bankruptcy Code, and (iv) continue intercompany transactions; and the Court having reviewed the Motion and the Jaeger Declaration; and upon entry of an order approving the relief requested in the Motion on an interim basis [Case No. 13-00027, Docket No. 14] (the "**Interim Order**"); and upon consideration of the objection of the Official Committee of Unsecured Creditors of Revstone Industries, LLC (the "**Committee**") to entry of a final order on the Motion [Docket No. 239] and the Committee's objections to certain proposed intercompany transfers pursuant to the Interim Order [Docket Nos. 238, 364, 524, 551] (collectively, the "**Committee Objections**"); and upon consideration of the replies of George S. Hofmeister [Docket No. 559] and Revstone Industries, LLC, et al. [Docket No. 561] to certain of the Committee Objections; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on a final basis, as set forth herein.

2. The Debtor is authorized to continue to use its existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions and entities participating in the Cash Management System, except as modified by this Order. In connection with the ongoing utilization of the Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3. The Debtor is authorized to (a) designate, maintain, and continue the Bank Account and Payroll Account (collectively, the "**Accounts**") in existence as of the Petition Date, with the same account numbers and document forms as are currently employed, (b) if necessary, open new accounts wherever they are needed, whether or not such banks are designated depositories in the District of Delaware, (c) deposit funds in, and withdraw funds from, the Accounts by all usual means, including checks, wire transfers, automated clearinghouse transfers, drafts or other items presented, issued, or drawn on the Accounts, (c) pay ordinary course fees in connection with the Accounts, including any fees arising prior to the Petition Date, (d) perform its obligations under the documents and agreements governing the Accounts, and (e) treat the Accounts for all purposes as accounts of the Debtor in its capacity as debtor in possession; provided, however, that the Debtor may only open new Accounts with institutions that agree to be bound by the terms of this Order and, in particular, the Cash Management System. The Debtor is further authorized to close Accounts in the ordinary course of business.

4. Pursuant to Local Rule 2015-2(a), the Debtor is authorized to continue to use its existing correspondence and business forms, checks and documents related to the Accounts without alteration or change and without the designation "Debtor in Possession" or a "debtor in possession case number" imprinted upon them; provided, however, that once the Debtor's prepetition check stock runs out, the Debtor will obtain new stock reflecting its status as debtor in possession and setting forth the corresponding case number; provided, further, that, with respect to checks which the Debtor or its agents print themselves (if any), the Debtor shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order. To the extent the Debtor opens or closes Accounts, it shall provide prompt notice to the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") and

any official committees appointed in this Chapter 11 case. Any new check stock used by the Debtor shall contain the designation "Debtor in Possession."

5. The Debtor is authorized to continue to utilize all third-party providers necessary for the administration of its Cash Management System.

6. *Nunc pro tunc* to the Petition Date, and subject to the terms of this Order, the Bank and Ceridian are authorized and directed to continue to administer, service, and maintain the Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for fees), and to honor any and all checks, wire transfers, automated clearinghouse transfers, electronic funds transfers, or other items presented, issued, or drawn on the Accounts; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers or other items presented, issued, or drawn on the Accounts prior to the Petition Date shall be honored.

7. To the extent the Bank and/or Ceridian maintains a disbursement account, the Bank and/or Ceridian shall implement reasonable handling procedures designed to effectuate the terms of this Order. To the extent the Bank and/or Ceridian implement such handling procedures and then honors a prepetition check, wire transfer, automated clearinghouse transfer or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtor, (b) in the good-faith belief that the Court has authorized such prepetition check, wire transfer, automated clearinghouse transfer, electronic funds transfer, or other item to be honored, or (c) as a result of a good faith error made despite implementation of such handling procedures, the Bank and/or Ceridian shall not be deemed to be liable to the Debtor or its estate or otherwise in violation of this Order.

4

8. Subject to the provisions of this Order, the Bank and Ceridian are authorized and directed to honor all representations from the Debtor as to which checks, wire transfers, automated clearinghouse transfers, or other items should be honored or dishonored.

9. To the extent the Bank and/or Ceridian are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtor shall use its good-faith efforts to cause the execution of a Uniform Depository agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order. The U.S. Trustee's right to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee is fully reserved.

10. The Debtor is authorized to implement such reasonable changes to the Cash Management System as the Debtor may deem necessary or appropriate, including, without limitation, closing any of the accounts or opening any additional accounts following the Petition Date (the "**New Accounts**"), wherever the Debtor deems that such accounts are needed or appropriate, and whether or not the banks in which the accounts are opened are designated depositories in the District of Delaware; <u>provided, however,</u> that the Debtor shall open any New Account only at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement. Notwithstanding the foregoing, any New Account that the Debtor opens will be (a) with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC and (b) designated a "Debtor in Possession" account by the relevant bank. The New Accounts shall be subject to the rights, obligations, and relief granted in this Order. The Debtor shall provide the U.S. Trustee and any statutory committee appointed in this

Chapter 11 case with prompt notice of any New Accounts that are opened. The Bank is authorized to honor the Debtor's requests to open or close (as the case may be) any account.

11. To the extent necessary to execute the Cash Management System and manage the day-to-day business practices of the Debtor, the Debtor is authorized to continue to participate in Intercompany Transactions in the ordinary course of business. The Debtor shall maintain records with respect to all transfers of cash so that all Intercompany Transactions may be easily ascertained, traced, and recorded properly on applicable intercompany accounts. Nothing herein shall prejudice any party's right to later challenge any Intercompany Transactions.

12. The Debtor is hereby ordered to maintain records of any and all intercompany transfers, transfers to non-Debtors, and transfers to non-Debtor affiliates, and to provide counsel and the financial advisors to the Committee with a copy of such records within ten (10) business days of the entry of this Order with respect to any payments made pursuant to the related Interim Order and within ten (10) business days of such payments being made with respect to any such future payments.

13. Subject to the resolution provided in this paragraph, the Debtor is hereby ordered to provide counsel and the financial advisors for the Committee with five (5) business days' prior written notice with respect to (i) any payments by the Debtor, or any of its direct or indirect subsidiaries, to, or on behalf of, or for the benefit of Mr. or Mrs. George Hofmeister, Revstone Tool & Engineering, LLC, Revstone Industries, LLC, Ascalon Enterprise, LLC, the Hofmeister Family Trust, the Scott R. Hofmeister Family Trust, the Megan G. Hofmeister Family Trust, the Jamie S. Hofmeister Family Trust, or any Hofmeister-related entity (including any entities owned by the trusts and any affiliate of the Debtor and any other direct or indirect parent or any other brother or sister company) not otherwise identified on the organizational chart submitted

6

with the Brown Declaration in Support of the First Day Pleadings, (ii) any payments by the Debtor, or any of its direct or indirect subsidiaries, to be made outside of the United States, or (iii) any Intercompany Transactions between the Debtor and its affiliates other than trade-related or management fee-related Intercompany Transactions.  At such time, the Debtor also shall provide the business rationale along with appropriate supporting documentation with respect to any such payment.  The Debtor shall be authorized to pay for expenses incurred by George Hofmeister in support of the Debtor's business (the "**Hofmeister Business Expenses**") without further notice to the Committee provided that (a) the Hofmeister Business Expenses are expressly authorized by the Chief Restructuring Officer and (b) the amount of the Hofmeister Business Expenses paid each month does not exceed $10,000.  Furthermore, the Debtor is authorized to pay the legal expenses of George Hofmeister for all defense and discovery costs related to the *Committee's Motion for Entry of an Order Pursuant to Fed. R. Bankr. P. 2004 and Del. Bankr. L.R. 2004-1 Directing Hofmeister to Produce Documents and to Appear for Deposition Upon Oral Examination* [Docket No. 75] (the "**2004 Motion**").  The Debtor shall not pay the legal expenses of George Hofmeister for defense and discovery costs related to the *Objection to George S. Hofmeister to Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Section 328(a) and 1103 Authorizing and Approving the Employment and Retention of Womble Carlyle Sandridge & Rice, LLC as Counsel Nunc Pro Tunc to December 17, 2012* [Docket No. 145] (the "**Hofmeister Objection**") absent further order of this Court or agreement among George Hofmeister, the Debtors and the Committee. The rights of George Hofmeister, the Debtors and the Committee related to payment of indemnification of legal fees and expenses for the Hofmeister Objection are hereby reserved.

DOCS_DE:185960.11 73864/001

14. The Debtor shall not be required to provide prior notice for payments to be made by the Debtor for employee health benefit plans sponsored by Ascalon Enterprises, LLC ("**Ascalon**"). However, the Debtor shall provide a record of all payments by the Debtor to Ascalon for the health benefit plans provided to the Debtor's employees within ten (10) business days of the entry of this Order with respect to any payments made pursuant to the related Interim Order and within ten (10) business days of such payments being made with respect to any such future payments. Such payment record shall include identification of any account at any bank or financial institution used by Ascalon in connection with the health benefit plans provided to the Debtor's employees. Additionally, the Debtor shall provide a record of all payments made by Ascalon to health benefit providers on behalf of the Debtor's employees within ten (10) business days of the entry of this Order with respect to any payments made pursuant to the related Interim Order and monthly with respect to any such future payments. Such payment record shall include only the check number for each payment, the payee for each payment, and amount of the payments, and shall not include any information that may identify the Debtor's employee seeking payment pursuant to a health benefit claim.

15. The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the Motion or otherwise deemed waived.

16. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Rule 6004(a) of the Federal Rules of Bankruptcy Procedure and the Local Rules are satisfied by such notice.

17. Notwithstanding Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

18. Service of a copy of this Order on the Bank and Ceridian shall constitute notice by the Debtor to such entity to designate the Accounts as debtor in possession accounts, and the Accounts shall be so deemed debtor in possession accounts without further action required.

19. The Committee Objections are hereby resolved pursuant to this Order.

20. The Debtor is hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

21. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: June 28, 2013

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

DOCS_DE:185960.11 73864/001