IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| METAVATION, LLC, | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF METAVATION, LLC FOR ORDER UNDER 11 U.S.C. §§ 105, 363, 503(b), 1107 AND 1108 AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) CONTINUED USE OF EXISTING BUSINESS FORMS, (III) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (IV) CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS, AND (V) WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS**

Metavation, LLC, a debtor and debtor-in-possession herein ("Metavation" or the "Debtor"), hereby moves the Court for entry of an order under 11 U.S.C. §§ 105, 363, 503(b), 1107 and 1108, authorizing (i) the maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions, (ii) the continued use of existing business forms, (iii) the continued use of the existing cash management system for the Debtor, (iv) the continued performance of intercompany transactions, and (v) a limited waiver of 11 U.S.C. section 345(b) deposit and investment guidelines (the "Motion"). In support

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

of its Motion, the Debtor respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction to consider and determine this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 345(b), 363, 503(b), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

3. On December 3, 2012, Debtors Revstone Industries, LLC and Spara, LLC commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 7, 2013, Debtors Greenwood Forgings, LLC and US Tool and Engineering, LLC commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Pursuant to the Order Authorizing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only (Docket No. 173) (the "Existing Joint Administration Order"), the chapter 11 cases of Revstone Industries, LLC, Spara, LLC, Greenwood

Forgings, LLC and US Tool and Engineering, LLC (the "Original Debtors") are jointly administered and are consolidated for procedural purposes.

5. On December 18, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in the case of Revstone Industries, LLC. No committee has been appointed in the cases of Spara, LLC Greenwood Forgings, LLC and US Tool and Engineering, LLC. No trustee or examiner has been appointed in any of the Original Debtors' chapter 11 cases.

6. On the date hereof (the "Metavation Petition Date"), Metavation filed a voluntary petition in the Court for relief under chapter 11 of the Bankruptcy Code. Metavation continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in Metavation's chapter 11 case. As of the date hereof, no creditors' committee has been appointed in the Metavation chapter 11 case.

7. The factual background relating to the commencement of the chapter 11 case of Revstone Industries, LLC is set forth in detail in the *Declaration of Jay N. Brown in Support of First Day Pleadings* (the "Brown Declaration") filed on December 3, 2012, and incorporated herein by reference. The factual background relating to the commencement of the chapter 11 case of Metavation, LLC is set forth in detail in the *Declaration of John C. DiDonato in Support of Metavation, LLC Petition and First Day Motions* (the "DiDonato Declaration") filed concurrently herewith and incorporated herein by reference.

DOCS_DE:187516.9 73864/002

8.  Metavation, LLC (the "Company") is a Michigan-based manufacturer of precision machined components and assemblies, including dampers, engine components, knuckles, and driveline products for the automotive industry. Metavation specializes in designing and manufacturing dampers that are included on original equipment manufacturers' ("OEMs") engine platforms. The Company also has rapid development capabilities to produce "solution" dampers to correct driveline and powertrain noise vibration and harshness ("NVH") issues. The Company serves many of the largest automotive customers, suppliers, and platforms. The Company's major OEM customers include General Motors and Chrysler. Metavation's Tier I supplier customers include American Axle, Dana Automotive, and J.G. Kern. These long-standing relationships have led the Company to a dominant market position in the U.S. crankshaft damper market. Metavation operates from four, modernized facilities located in central Michigan. The Company begins its manufacturing process by developing the rubber component at the Hillsdale, MI facility, and then sends the rubber component to Mt. Pleasant, MI or Vassar, MI facility for machining and/or assembly.

### Relief Requested

9.  By this Motion, the Debtor seeks authorization (1) to maintain its existing bank accounts and to pay any prepetition routine banking fees imposed by the financial institutions where the Debtor's bank accounts are maintained, (2) to continue to use its existing check stock and business forms until exhausted, (3) to continue to use its existing cash management system, (4) to continue performance of intercompany transactions, and (5)

for a limited waiver of the deposit and investment guidelines imposed under section 345(b) of the Bankruptcy Code.

### The Debtor's Cash Management System

10. The Debtor's cash management system (the "Cash Management System") is a network of a lockbox and three bank accounts that facilitates the timely and efficient collection, management, and disbursement of funds used in the Debtor's business. Because of the nature of the Debtor's operations and the disruption that would result if the Debtor was forced to close its existing accounts, it is critical that the Cash Management System remain in place.

11. The Debtor maintains a lockbox and three bank accounts at Wells Fargo Bank, N.A. ("Wells Fargo") that comprises the Cash Management System.[2] A listing of the Debtor's bank accounts (together, the "Bank Accounts") is attached hereto as **Exhibit A**. A diagram summarizing the role of each of the Bank Accounts in the Cash Management System is attached hereto as **Exhibit B**.

12. Collections. Collections from revenues consist of check and wire payments made by the Debtor's customers. Customer payments made by check are sent to the lockbox (the "Lockbox") established for the Debtor and maintained by Wells. Checks sent into the Lockbox are deposited by Wells Fargo on a daily basis into the Debtor's depository account ("Concentration Account"). Customer payments by wire transfer are

---

[2] The Debtor also maintains a bank account at County National Bank, account number xxxxxx1734, that contains employee vending machine funds (the "Vending Machine Account"). The Vending Machine Account is not part of the Cash Management System.

made directly to the Concentration Account. Available funds are swept from the Concentration Account by Wells Fargo each morning and applied as a payment against the Debtor's outstanding amounts then due under the prepetition loan facility to Wells Fargo.

13. <u>Operating Account</u>. The operating account ("<u>Operating Account</u>") consists of funds advanced by Wells Fargo as additional loans under the prepetition loan facility. These funds are then used to process wire payments to trade vendors and for other expenses, including wire transfers to the payroll account maintained by the Debtor's payroll processor, Ceridian Corporation ("<u>Ceridian</u>"), and to make advances to the Disbursement Account to clear payments made by check

14. <u>Disbursements</u>. The Debtor issues payments by check from its disbursement account (the "<u>Disbursement Account</u>"). Funds are automatically transferred from the Operating Account as checks previously issued are presented to Wells Fargo for payment. No balance is maintained in the Disbursement Account with funds advanced from the Disbursement Account only as necessary to clear checks.

15. Approximately $1.3 million to $2.2 million flows through the Cash Management System on a weekly basis. Fluctuations are primarily due to scheduled payroll payments and payments to the Debtor's suppliers and vendors. As of the Petition Date, the Debtor has approximately $157,390.83 in cash or cash equivalents in its Operating Account and $40,269.58 in cash or cash equivalents in its Concentration Account.

## The Court Should Authorize the
## Debtor to Maintain Their Existing Bank Accounts

16. The United States Trustee for the District of Delaware has established certain operating guidelines for a debtor in possession. One such provision requires a chapter 11 debtor in possession to open new bank accounts and close all existing accounts. The United States Trustee Guidelines also require that the new bank accounts only be opened with certain financial institutions designated as authorized depositories by the United States Trustee. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

17. The Debtor seeks a waiver of the United States Trustee's requirement that the Bank Accounts be closed and new postpetition bank accounts be opened at depositories authorized by the United States Trustee. If strictly enforced in this case, the United States Trustee's requirement would cause a severe disruption in the Debtor's activities and would impair the Debtor's ability to operate under chapter 11.

18. Maintenance of the Bank Accounts will greatly facilitate the Debtor's operations in chapter 11. As noted above, all revenues and income realized by the Debtor ultimately flows into the Operating Account and are disbursed through the interlinked Disbursement Account. If the Bank Accounts were closed, the Debtor would have to open new accounts and then attempt to arrange alternative electronic and manual payment procedures for payments into and out of the Debtor's accounts, which would completely

disrupt the flow of postpetition receipts and disbursements. In addition, closing the Bank Accounts would require the Debtor to cancel and reinstitute wire transfer instructions which would be difficult to modify under exigent circumstances. These disruptions would severely impact and could irreparably harm the Debtor's ability to operate their business at this critical juncture.

19. To avoid disruptions and delays in the operation of the Debtor's business, the Debtor should be permitted to maintain its existing Bank Accounts and, if necessary, to open new accounts as debtor in possession accounts or to close any unneeded existing accounts.

20. To guard against improper transfers resulting from the postpetition honoring of prepetition checks, the Debtor will promptly notify Wells Fargo not to honor checks drawn on the Debtor's accounts before the Petition Date, except upon limited Court-approved exceptions. Subject to a prohibition against honoring prepetition checks or offsets without specific authorization from this Court, the Debtor requests that it be authorized to maintain and continue the use of these accounts in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period.

21. If the relief requested herein is granted, the Debtor will not pay, and Wells Fargo will be required not to pay, any debts incurred before the Petition Date, other than as specifically authorized through this Motion or otherwise ordered by the Court.

## The Court Should Authorize the Debtor to
## Continue Its Existing Cash Management System

22. The Debtor hereby seeks authority to continue to use its Cash Management System, as such system may be modified pursuant to the requirements of any Court-approved cash collateral order, and related order of this Court.

23. For the reasons set forth above, the Debtor's Cash Management System constitutes an essential business practice and was created and implemented by the management of the Debtor in the exercise of its business judgment. The widespread use of this particular Cash Management System, moreover, is attributable to the numerous benefits it provides, including the ability to (a) process and timely pay expenses; (b) allow a mechanism for deposits from revenues; (c) ensure cash availability; (d) control and monitor corporate funds; and (e) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. In addition, preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that would inevitably be associated with a substantial disruption of the Cash Management System will facilitate and enhance the Debtor's efforts to continue to operate postpetition. Moreover, the Debtor submits that the relief requested is consistent with the relief provided to a debtor in a number of other cases pending in this District.

## The Court Should Grant the Debtor Authority to Use
## Existing Business Forms and Checks to the Limited Extent Requested Below

24. To minimize expense to their estates, the Debtor also requests authority (i) to continue to use all correspondence and business forms (including, but not limited to letterhead, purchase orders, invoices, etc.) until such time as the Debtor can effectuate any

necessary changes to their computer-generated forms in order to add the "debtor in possession" label, and (ii) to continue using their existing check stock without reference to their "debtor in possession" status until new check stock can be generated, provided that the Debtor shall add the "debtor in possession" designation to any new checks produced after the depletion of the existing stock. The Debtor's business and correspondence forms are produced internally. With respect to these forms, the Debtor requests that it be allowed to continue to use its existing forms, provided that they add the "debtor in possession" labels to forms that are ordered once the existing stock is depleted.

### The Debtor Should Be Authorized to Continue Its Intercompany Arrangements

25. Prior to the Petition Date, the Debtor and the Original Debtors engaged in intercompany financial transactions in the ordinary course of business (collectively, the "Intercompany Transactions"), and as part of the Debtor's and Original Debtors' consolidated Cash Management System. The Debtor requests authority to continue performing Intercompany Transactions in the ordinary course of business without need for further Court order.

26. At any given time, there may be balances due and owing between the Debtor and Original Debtors. These balances represent extensions of intercompany credit made in the ordinary course of business and are an essential component of the Cash Management System. The Debtor maintains records of these transfers of cash and can ascertain, trace and account for these Intercompany Transactions. The Debtor, moreover,

will continue to maintain such records, including records of all current intercompany accounts receivable and payable.

### The Court Should Grant a Limited § 345(b) Waiver
### on an Interim Basis Subject to Final Approval

27. The Debtor seeks a limited waiver of section 345(b) of the Bankruptcy Code. The waiver would permit the Debtor to maintain its Bank Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever the funds on deposit exceed the amount permitted under section 345(b). The Debtor believes that its Bank Accounts are (a) covered by FDIC insurance and contain amounts which are within the limits of such insurance, and/or (b) with financial institutions which have standing collateralization agreements with the office of the United States Trustee. To the extent needed for a particular Bank Account, the Debtor will work with the various financial institutions to put acceptable collateralization agreements in place or otherwise satisfy the requirements of the Bankruptcy Code. As noted above, the Debtor's Bank Accounts may, at certain times, contain cash in excess of the FDIC insurance limits.

### Authority for the Requested Relief

A. The Continued Use of the Debtor's Routine Cash Management System, Bank Accounts and Business Forms is Essential to the Debtor's Operations, and Approval to Maintain the Status Quo is Routinely Granted Under Bankruptcy Code Sections 363 and 105

28. Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems, and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, the chapter 11 case involves affiliated entities

with complex financial affairs. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtor and forty-three (43) of its subsidiaries "to continue to consolidate the management of its cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not Debtor." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtor to utilize its prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

29. Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticabilities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

30. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *Medical Malpractice Ins. Ass'n. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2nd Cir. 1997). Included within the purview of section 363(c) is a Debtor's ability to continue the "routine transactions" necessitated by a Debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtor seeks authority under section 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to its Cash Management System as described above.

31. Additionally the Court may exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Continuing the Debtor's Cash Management System without interruption is vital to the success of these chapter 11 cases.

32. In other cases in this District, including in the Original Debtors' bankruptcy proceedings, this Court has granted relief similar to that requested in this Motion. *See, e.g., In re Revstone Industries, LLC, et al.*, Case No. 12-13262 (BLS) (Bankr. D. Del. January 10, 2013), *In re Latham International, Inc., et al.*, Case No. 09-14490 (SS) (Bankr.

D. Del. December 23, 2009), *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019 (KJC) (Bankr. D. Del November 20, 2009), *In re Filene's Basement, Inc., et al.*, Case No. 09-11525 (MFW) (Bankr. D. Del. May 5, 2009).

33. It is well within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System and Bank Accounts, and to authorize the Debtor's continued use of their existing business forms, including, but not limited to, purchase orders, letterhead, envelopes, promotional materials, checks, and business forms, without reference to the Debtor's debtor in possession status, substantially in the forms existing immediately before the Petition Date, at least until such existing business forms are exhausted and replacement forms with the "debtor in possession" designation are obtained.

**B.     An Interim Waiver of Section 345(b) to Allow the Debtor to
        Continue to Use Its Bank Accounts Without the Need for Posting
        a Bond or Providing Other Security is Appropriate**

34. The Debtor seeks an interim waiver of section 345(b) of the Bankruptcy Code subject to final approval. The waiver would permit the Debtor to maintain their Bank Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever the funds on deposit exceed the amount permitted under section 345(b), while the Debtor takes steps to comply with the requirements of the Bankruptcy Code. The Debtor believes that its Bank Accounts are (a) covered by FDIC insurance and contain amounts which are within the limits of such insurance and/or (b) with financial institutions which have standing collateralization agreements with the office of the United

States Trustee (the "OUST"). With regard to any Bank Account that does not conform with the requirement of section 345(b), the Debtor will work with the Banks to either (a) put acceptable collateralization agreements in place subject to the reasonable consent of the OUST or, (b) if that is not practicable, will move the funds in these accounts to a new or existing bank account that satisfies the requirements of the Bankruptcy Code within sixty (60) days of the Petition Date subject to the Debtor's right to seek additional time. As noted above, the Bank Accounts may, at certain times, contain cash in excess of the FDIC insurance limits.

35. For the foregoing reasons, it is critical that the Debtor continues to utilize its existing Cash Management System and continue to use its existing business forms as set forth herein, without disruption. Accordingly, it is appropriate and entirely consistent with applicable provisions of the Bankruptcy Code and case law for the Court to approve the Debtor's centralized Cash Management System in its current form and grant a waiver of the requirements of section 345(b) of the Bankruptcy Code on an interim basis pending a final hearing.

**C.   The Debtor Should Be Permitted to Continue
Intercompany Transactions in the Ordinary Course of Business**

36. Throughout the reorganization process, it will be critically important that the Debtor be allowed to maintain its intercompany practices with the Original Debtors and its affiliates. As noted above, continuation of the Intercompany Transactions is important to the Debtor's efforts to operate its businesses in the ordinary course.

37. Thus, the Debtor respectfully requests authority to continue performing Intercompany Transactions in the ordinary course of business without need for further Court order. Courts have routinely granted such authority in other complex, multi-debtor chapter 11 cases for similar reasons. *See, e.g., In re Latham International, Inc., et al.*, Case No. 09-14490 (SS) (Bankr. D. Del. December 23, 2009), *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019 (KJC) (Bankr. D. Del November 20, 2009), *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. July 17, 2009); *In re Source Interlink Companies, Inc.*, Case No. 09-11424 (KG) (Bankr. D. Del. April 30, 2009); *In re Nobex Corporation*, Case No. 05-20050 (MFW) (Bankr. D. Del., Dec. 6, 2005); *In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Nov. 8, 2005); *In re W. R. Grace & Co.*, Case No. 01-01139 (Bankr. D. Del. Apr. 2, 2001); *In re Montgomery Ward Holding Corp.*, Case No. 97-01409 (PJW) (Bankr. D. Del. July 8, 1997); *In re Mid-Valley. Inc.*, Case No. 03-35592 (JKF) (Bankr. W.D. Pa. June 8, 2004) (interim order authorizing Debtor to continue to engage in intercompany agreements in the ordinary course of business).

**Bankruptcy Rules 6003 and 6004**

38. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described more fully above, and as supported by the DiDonato Declaration, and to the extent that the relief requested herein implicates Rule 6003(b), the Debtor submits that

the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

39. Finally, to implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

### Notice

40. Notice of this Motion has been given to the following or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtor's prepetition and postpetition secured lenders; (iii) the Pension Benefit Guaranty Corporation; (iv) the Debtor's major OEM customers: General Motors and Chrysler; (v) Dayco Products, LLC and Dayco Products S.A. de C.V., the stalking horse purchaser for the Debtor's assets; and (vi) the Official Committee of Unsecured Creditors in the case of Revstone Industries, LLC. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtor will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

41. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, and grant such other further relief as the Court deems appropriate.

Dated: July 22, 2013                                          PACHULSKI STANG ZIEHL & JONES LLP

                                                              /s/ Laura Davis Jones
                                                              Laura Davis Jones (Bar No. 2436)
                                                              David M. Bertenthal (CA Bar No. 167624)
                                                              Timothy P. Cairns (Bar No. 4228)
                                                              Colin R. Robinson (Bar No. 5524)
                                                              919 N. Market Street, 17th Floor
                                                              Wilmington, DE 19801
                                                              Telephone: 302/652-4100
                                                              Facsimile: 302/652-4400
                                                              Email: ljones@pszjlaw.com
                                                                     dbertenthal@pszjlaw.com
                                                                     tcairns@pszjlaw.com
                                                                     crobinson@pszjlaw.com

                                                              [Proposed] Counsel for Debtor and Debtor-in-Possession