IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Revstone Industries, LLC, et al.,[1] | : | Case No. 12-13262 (BLS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Related Docket No. 796** |
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Metavation, LLC, | : | Case No. 13-11831 (BLS) |
| | : | |
| Debtor. | : | Joint Administration Requested |
| | : | |
| | : | **Related Docket No. 17** |
| | : | |
| | : | **Obj. Due: 8/2/13** |
| | : | **Hrg. Date: 8/7/13 at 10:00 a.m.** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF REVSTONE INDUSTRIES, LLC, TO METAVATION, LLC'S MOTION FOR ORDER: (A) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S OPERATING ASSETS; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED THERETO; (C) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS; (D) APPROVING PAYMENT OF A BREAK-UP FEE AND EXPENSE REIMBURSEMENT; AND (E) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of

Revstone Industries, LLC ("Revstone") hereby asserts its objection (the "Objection")

---

[1] The debtors in these chapter 11 bankruptcy cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

to the Motion (Metavation Docket No. 17; Revstone Docket No. 796) (the "Bid

Procedures Motion") of Metavation, LLC ("Metavation") for the entry of an order

approving certain bid and other procedures in connection with the proposed sale of

substantially all of Metavation's assets and the assets of a non-Debtor affiliate Eptec

S.A. de C.V. ("Eptec Mexico").  In support of its Limited Objection, the Committee

respectfully states the following:

**BACKGROUND**

A.    **The Bankruptcy Cases**

1.    On December 3, 2012 (the "Petition Date"), Revstone and

Spara, LLC, each filed a voluntary petition for relief under chapter 11 of 11 U.S.C.

§§ 101-1532 (as amended and applicable to these bankruptcy cases, the "Bankruptcy

Code") in the United States Bankruptcy Court for the District of Delaware (the

"Court").

2.    Since the Petition Date, Greenwood Forgings, LLC, US Tool

& Engineering, LLC, and Metavation, which are indirect subsidiaries of Revstone,

have also filed petitions under chapter 11 of the Bankruptcy Code.

3.    The Debtors are operating their businesses as debtors-in-

possession pursuant to Bankruptcy Code sections 1107 and 1108.  To date, no trustee

or examiner has been appointed.

4.    On December 17, 2012, the Office of the United States

Trustee for the District of Delaware appointed the Committee pursuant to

Bankruptcy Code section 1102(a)(1).

**B.**     **The Metavation Bidding Procedures and Sale Motions**

5.     Metavation filed its petition for relief under chapter 11 of the Bankruptcy Code on July 22, 2013.

6.     Metavation filed the Bid Procedures Motion on July 23, 2013. Also on July 23, Metavation filed its Motion for Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); (C) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365; and (D) Granting Related Relief (Metavation Docket No. 18; Revstone Docket No. 797) (the "Sale Motion").

7.     On July 24, 2013, the Court held a hearing (the "First Day Hearing") during which the Court considered the "first day" motions filed by Metavation.  During the First Day Hearing, the Court scheduled a hearing on the Bid Procedures Motion for August 6, 2013, and a hearing on the Sale Motion for August 21, 2013.

8.     On August 1, 2013, the Office of the United States Trustee held a meeting for the purpose of forming an official committee of unsecured creditors in the Metavation bankruptcy case.  No committee has been formed to date in Metavation.

3

## LIMITED OBJECTION

### I.    The Committee Has Standing To Object.

9.    As a preliminary matter, and because issues have been raised by Metavation in this case, the Committee has standing to appear and be heard on this matter.  See, e.g., Unofficial Committee of Zero Coupon Noteholders v. Grand Union Co., 179 B.R. 56, 59(D. Del. 1995) (reversing decision of bankruptcy court to strike objections of group of debtor parent company bondholders to subsidiary debtor's proposed bankruptcy financing).  In Grand Union, the Delaware Bankruptcy Court accepted the arguments of a debtor, the Grand Union Co. ("Grand Union") that a committee (the "Bondholders' Committee") of bondholders of its parent company, Grand Union Capital Corporation ("Grand Union Capital"), lacked standing to appear in the subsidiary debtor's case because the Bondholders' Committee was not a party in interest in such case under Bankruptcy Code section 1109(b).  Id. at 57-58. The Bankruptcy Court, therefore, granted Grand Union's motion to strike the Bondholders' Committee's objection to Grand Union's proposed debtor-in-possession and exit financing.

10.    In reversing the decision of the Delaware Bankruptcy Court, the United States District Court for the District of Delaware (the "Delaware District Court") adopted the broad Amatex definition of party in interest under Bankruptcy Code section 1109(b) "as one who 'has a sufficient stake in the proceedings so as to require representation.'"  Id. at 58 (quoting In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985)).  The Delaware District Court did not even require that the

bondholders on the Bondholders' Committee be creditors or shareholders of Grand
Union, only that such bondholders "show a sufficient stake to require
representation." Id. at 59.  Because the bondholders had a "practical stake in the
outcome of [Grand Union's bankruptcy] . . . proceedings," Judge McKelvie
determined that such bondholders had standing to appear and be heard in the
subsidiary bankruptcy case.  Id.

        11.    In this instance, Revstone has a claim against Metavation and
Revstone's estate may also obtain a recovery through its equity interest in
Metavation's non-debtor parent company if there is sufficient value to allow
recovery for equity of Metavation.  Accordingly, the Committee's constituents, the
unsecured creditors of Revstone, have a practical stake in the Metavation bankruptcy
case.  Moreover, like the members of the Bondholders' Committee in Grand Union,
the interests of Revstone and the interests of the unsecured creditors of Revstone are
not similar.  First, the relationship between Revstone and its unsecured creditors is
by definition that of debtor and creditor.  Moreover, like the parent and subsidiary in
Grand Union, Metavation and Revstone share common officers and managers.
Finally, as noted above, the Office of the United States Trustee has declined to
appoint an official committee of unsecured creditors for Metavation at this point.
Therefore, none of the parties involved have "interests similar to those of" the
unsecured creditors of Revstone, and the Committee should be permitted to speak for
such creditors in the Metavation bankruptcy cases.

II.     **The Bid Procedures Should Not Be Approved Unless Modified As Requested By The Committee.**

12.     The Committee does not object to the establishment of bidding procedures in connection with the sale of the assets of debtor Metavation.  However, the Bid Procedures Motion, and the proposed bidding procedures that are the subject of that motion (the "Bid Procedures"), contain provisions that unreasonably exclude input from any official committee (whether by the Committee, which as the stakeholder for Metavation's indirect parent, Revstone, has an interest in ensuring maximum value is realized, or by an official committee of unsecured creditors for Metavation, to the extent that one is appointed in Metavation's case).  The terms of the Bid Procedures appear to be an attempt by Metavation to control the sale process without permitting any meaningful oversight and transparency that is fundamental to the bankruptcy process.  The Bid Procedures should be amended to allow for notice, oversight, and input from the Committee in order to ensure that the interests of Metavation's creditors, including its indirect parent Revstone (which entity has an unsecured claim against Metavation totaling several million dollars), are adequately protected through the current proposed sale process.

13.     Additionally, one aspect of the sales process, found in the proposed purchase agreement, should be modified in order to ensure that Metavation's estate does not suffer waste when a qualified buyer is willing to close on a transaction, as set forth below.

### A.    Metavation Should Not Be Permitted to Exclude a Committee from All Aspects of the Proposed Bid Procedures

14.    One purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.  See In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); In re E-Z Serve Convenience Stores, Inc., 289 B.R. 45, 54 (Bankr. M.D.N.C. 2003) (denying approval of sale on grounds that auction procedures were "unfair and inequitable").

15.    Here, rather than serve that purpose, Metavation's proposed Bid Procedures exclude any committee from almost all aspects of the proposed sale process.  Specifically, Metavation has not provided, and does not propose to provide, any committee with consultation rights regarding any of the following:

- Determining whether a bidder is a Qualified Bidder (Bid Procedures Motion ¶ 27(c) & (d))

- Selecting the highest and best offer (Id. ¶ 27(d) & (g))

16.    In an effort to promote an open, fair, and reasonable process, the Bid Procedures should be amended to (i) include the Committee as a notice party, including notice regarding Potential Bidders, Qualified Bidders, bids received, selection of a Stalking Horse Purchaser, the Stalking Horse Bid, and the Successful Bidder;[2] and (ii) provide the Committee with consultation rights and input into the selection of Qualified Bidders and the selection of the Successful Bidder.

---

2    Notification should include all documents provided to Metavation or its professionals by the Potential Bidders, Qualified Bidders, and the Stalking Horse Bidder.

**B.      Metavation's Right to Terminate the Sale Should Be Modified.**

17.     The Committee also has concerns with one aspect of the proposed sale process and the stalking horse agreement.  Specifically, the Agreement (as defined in the Bid Procedures Motion, and a copy of which was attached to the Sale Motion), through a series of provisions, provides that in the event that Metavation does not receive a release from the PBGC, then Metavation may terminate the purchase agreement, but Metavation will then be obligated to reimburse the successful bidder its expenses up to $1 million.

18.     One of the conditions precedent to Metavation's performance is Metavation obtaining a release from the PBGC.  In particular, the Agreement states:

> Conditions Precedent to the Performance by Sellers.  The obligations of Sellers to consummate the transactions contemplated by this Agreement are subject to the satisfaction, on or before the Closing Date, of the following conditions, any one or more of which may be waived by Sellers in its sole discretion:
> …
> (i) PBGC Release.   Sellers have received in writing (in a form reasonably acceptable to Sellers) the PBGC Seller Release.

Agreement § 10.1(i).[3]

---

3 1.     The term PBGC Seller Release is defined as follows:

> "PBGC Seller Release" means an agreement between the PBGC and Sellers whereby PBGC agrees that it will not (i) seek to enjoin the consummation of the transactions contemplated by this Agreement or (ii) assert after the Closing against Sellers or their ERISA Affiliates any claim over or otherwise in respect of the Acquired Assets.

Agreement § 13.1, at p. 68.

19.    In the event that this condition precedent is not satisfied,

Metavation has the right to terminate the Agreement.  In particular, the Agreement

provides:

> Termination Rights.  This Agreement may be terminated at any time
> before Closing:
> …
> (d) by Sellers:
> …
> (vii) in the event that:
> (a) the condition set forth in Section 10.1(i) has not been satisfied or
> waived by Sellers . . . ; or
> (b) Sellers have received written notice from the PBGC that Sellers
> will not obtain the PBGC Seller Release, thereby causing the
> condition in Section 10.1(i) not to be satisfied, and Sellers have not
> waived such condition . . . .

Agreement § 11.2(d)(vii), at pp. 54-55.

20.    Finally, the Agreement provides that, in the event that the

Agreement is terminated pursuant to the foregoing termination provision, Metavation

is obligated to reimburse buyer for its expenses up to $1 million.  In particular, the

Agreement provides:

> Payment of Buyers' Expenses/PBGC Release.  In the event that
> Sellers terminate this Agreement pursuant to Section 11.2(d)(vii),
> Sellers shall promptly pay to an account designated in writing by
> Buyers a sum equal to the reasonable fees and expenses incurred by
> Buyers and their affiliates in connection with the transactions
> contemplated by this Agreement and supported by written invoices,
> which amount shall not exceed One Million Dollars ($1,000,000) in
> the aggregate (such fee, the "Fee and Expense Reimbursement"), with
> Buyers' right under this Section 11.6 constituting Buyers' sole and
> exclusive remedy by reason of any termination pursuant to (or
> deemed to be pursuant to) Section 11.2(d)(vii) . . . .

Agreement § 11.6.

21.    The Committee objects to these provisions, which effectively give Metavation a termination right that would unnecessarily burden Metavation's estate with up to $1 million in additional liabilities when a qualified buyer is ready and willing to close on the sale transaction.  In short, this termination right is not supportable as a reasonable exercise of Metavation's business judgment nor is the fee payable pursuant to section 11.6 of the Agreement appropriate under the O'Brien standard.

22.    Initially, it is the failure of the Seller, not the Stalking Horse Bidder to obtain a release from the PBGC that triggers the right of the Seller to terminate the Agreement.  Moreover, the PBGC Seller Release that specifically triggers this release is, as the name implies, a release of the Seller of the PBGC. Presumably the concerns of the Stalking Horse Bidder with respect to potential liability to the PBGC are addressed through the entry of a sale order by this Court. If the Seller is unable to obtain such a release, then the Seller can terminate the Agreement and strip the Metavation estate and Metavation's creditors, including the PBGC and Revstone, of $1 million.  Thus, if Metavation exercises this right it will be faced with (i) no sale, (ii) the likely breach of its debtor-in-possession financing, (iii) the likely breach of its accommodation agreements with its customers, (iv)  no settlement with the PBGC, and (v) the loss of $1 million from its estate.  The Committee leaves Metavation to its proof that such a result is in the best interests of the Metavation estate and/or that the inclusion of this right in the Agreement was a

reasonable exercise of Metavation's business judgment, but believes that Metavation cannot meet this burden.

23.     Moreover, even assuming Metavation can establish that including these provisions in the Agreement was a reasonable exercise of Metavation's business interest and in the best interests of Metavation's estate, which it cannot do, Metavation cannot establish that the payment of the Fee and Expense Reimbursement in the event of the Seller's termination pursuant to section 11.2(d)(vii) meets the requirements established by the United Courts of Appeals for the Third Circuit in <u>Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.)</u>, 181 F.3d 527 (3rd Cir. 1999).  Specifically, as the Third Circuit held in <u>O'Brien</u>, "[t]he allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate . . . the business judgment rule should not be applied as such in the bankruptcy context." <u>Id.</u> at 535.

24.     In <u>O'Brien</u>, the Third Circuit denied a break-up fee where the proposed purchaser could not demonstrate that such fee was "actually necessary to preserve the value of the estate." <u>Id.</u> at 537-39.  However, the Third Circuit noted that a break-up fee might be appropriate if the break-up fee were necessary to induce a bidder to bid on the assets, to set a floor price for the assets that might serve as a "catalyst  to higher bids", or by increasing the likelihood that the price at which the debtor is sold will reflect its true worth, among other things. <u>Id.</u> at 537.  None of

these justifications is present in this case.  Indeed, form the review of the Bid Procedures Motion, the proposed Bid Procedures, and the Agreement, it appears that the Seller, i.e., Metavation, not the Buyer is insisting on the section 11.2(d)(vii) termination right and that the resulting improper termination fee imposed by section 11.6 of the Agreement is not an inducement for the Buyer to purchase the assets. Accordingly, as set forth herein, the Court should not approve either the termination right in section 11(d)(vii) of the Agreement or the corresponding termination fee in section 11.6 of the Agreement.

      **C.**      **The Proposed Sale Objection Deadline Should be Modified**

      25.      The Bid Procedures Motion proposes an auction date of two business dates prior to the sale hearing. Bid Procedures Motion, at ¶ 27(f). The Committee reserves the right to object to the selection of the Successful Bidder and the terms of that bidder's offer following the Auction.  Without knowing the identity of the Successful Bidder and the terms of that bidder's offer prior to the objection deadline, the Committee would be prejudiced by having inadequate information to evaluate the proposed sale.

                  **RESERVATION OF RIGHTS**

      26.      The Committee reserves its right to raise further objections to the Bid Procedures Motion at the time of the hearing.

WHEREFORE, for all of the foregoing reasons, the Committee respectfully requests that this Court enter an order (i) sustaining this Limited Objection, (ii) modifying the Bid Procedures as requested herein, and (iii) granting the Committee such additional relief as is just and proper.

Dated: August 2, 2013                    **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Mark L. Desgrosseilliers
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Matthew P. Ward (Del. Bar No. 4471)
Ericka F. Johnson (Del. Bar No. 5024)
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
Telephone:  (302) 252-4320
Facsimile:  (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com

Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC

13