IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 12-13262 (BLS)<br><br>**Related Docket Nos. 775, 780** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO (I) DISCLOSURE STATEMENT IN RESPECT OF
CHAPTER 11 PLAN OF REORGANIZATION OF REVSTONE
INDUSTRIES, LLC, AND (II) REVSTONE'S SOLICITATION
PROCEDURES MOTION**

The Official Committee of Unsecured Creditors (the "Committee") of

Revstone Industries, LLC ("Revstone"), one of the above-captioned debtors and

debtors-in-possession, by and through its undersigned counsel, hereby objects (the

"Objection") to the Disclosure Statement in Respect of Chapter 11 Plan of

Reorganization for Revstone Industries, LLC (Docket No. 775) (the "Revstone

Disclosure Statement"), and to the Debtor's Motion for the Entry of an Order: (I)

Approving the Disclosure Statement; (II) Scheduling the Confirmation Hearing; (III)

Approving the Form and Manner of Notice of the Confirmation Hearing; (IV)

Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject

the Chapter 11 Plan of Reorganization for Revstone Industries, LLC dated July 22,

---

[1]     The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450).  The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

2013, Including (A) Establishing a Record Date and Approving Procedures for Distributing Solicitation Packages; (B) Approving the Form and Content of the Debtor's Proposed Solicitation Package, Including Ballots; (C) Establishing a Voting Deadline for Receipt of Ballots; and (D) Approving Procedures for Tabulating Acceptances and Rejections of the Plan; (V) Establishing the Deadline and Procedures for Filing Objections to Confirmation of the Plan; and (VI) Granting Related Relief (Docket No. 780) (the "Solicitation Motion").  In support of the Objection, the Committee states as follows:

## BACKGROUND

**A.      Revstone's Bankruptcy Case**

1.      On December 3, 2012 (the "Revstone Petition Date"), Revstone and Spara, LLC, each filed a voluntary petition for relief under chapter 11 of 11 U.S.C. §§ 101-1532 (as amended and applicable to these bankruptcy cases, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      Since the Petition Date, Greenwood Forgings, LLC, US Tool & Engineering, LLC, and Metavation, LLC ("Metavation"), which are indirect subsidiaries of Revstone, have also filed petitions under chapter 11 of the Bankruptcy Code.  Metavation filed its petition for relief on July 22, 2013 (the "Metavation Petition Date").

3.     On December 17, 2012, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee in Revstone's case pursuant to Bankruptcy Code section 1102(a)(1).

4.     Revstone is operating its business as debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.  To date, no trustee or examiner has been appointed in any of the debtors' bankruptcy cases.

**B.     The Credit Agreement**

5.     On July 23, 2010, Wells Fargo Capital Finance, LLC ("Wells") entered into a credit agreement (the "Credit Agreement") for credit facilities (the "Pre-Petition Facilities") with four of Revstone's current and former affiliates: (1) Contech Castings, LLC ("Contech"); (2) Metavation; (3) MPI, LLC ("MPI"); and (4) MW Texas Die Casting, Inc. ("Texas Die" and, collectively, the "Obligors").  See Disclosure Statement, § III.D.

6.     The obligations of the Obligors under the Pre-Petition Facilities are secured by (i) certain guarantees of 11 other Revstone affiliates, and (ii) a Security Agreement, originally entered into on or about July 23, 2010, by the Obligors, which creates liens on, and security interests in, substantially all of the unencumbered assets of the Obligors.  Id. § III.D.

7.     To further secure the Pre-Petition Facilities, on or about July 23, 2010, Revstone entered into (i) a Limited Recourse Guaranty and (ii) a Pledge and Security Agreement in which Revstone pledged its membership interest in its direct subsidiary, Revstone Transportation, LLC ("Revstone Transportation") (the

parent of Contech, Metavation, and Texas Die, and, at the time, of MPI[2]).  Id. §

III.D.

**C.    The Wells Claim**

8.    On January 16, 2013, Revstone filed its schedules of assets

and liabilities pursuant to Bankruptcy Rule 1007 (Docket No. 128) (the

"Schedules").

9.    Wells is the only creditor listed on Schedule D as holding a

secured claim (the "Wells Claim") against Revstone.  See Docket No. 128, Schedule

D.  The Wells Claim is identified as a $17,284,622.10 contingent claim secured by

"100% stock in Revstone Transportation, LLC."  Id.

10.    On April 23, 2013, the Court entered an order (Docket No.

523) (the "Bar Date Order") establishing June 28, 2013, as the deadline for filing

proofs of claim against Revstone with respect to claims that arose prior to the

Revstone Petition Date (the "Bar Date").

11.    Wells was served with notice of the Bar Date deadline.  See

Affidavit of Armando Zubiate, Docket No. 545.  However, Wells did not file a proof

of claim prior to the Bar Date.

12.    Upon information and belief, Wells was paid in full out of the

proceeds received from the sale of Contech, which closed on or about August 2,

2013.

---

[2]    MPI was sold prior to the Revstone Petition Date.

**D.      Exclusivity and the Competing Plans of Reorganization**

13.      On April 1, 2013, the Debtors filed a motion to extend the period under Bankruptcy Code section 1121(b) during which the Debtors had the exclusive right to file a chapter 11 plan, and to extend the period under Bankruptcy Code section 1121(c)(3) during which the Debtors had the exclusive right to solicit acceptances of a chapter 11 plan.  The Committee thereafter raised certain objections to the Debtors' requested extension.

14.      On May 16, 2013, the Bankruptcy Court entered a modified order (the "Exclusivity Order") (Docket No. 578) granting the Debtors' motion, subject to limitations granting potential termination of exclusivity in favor of the Committee.  Specifically, the Court's order provided that, in the event that the Debtors breached any of the Milestones (as defined in the Confidential Settlement Communication filed under seal at Docket No. 573), and failed to cure any such breach within the grace period provided in the Confidential Settlement Communication following receipt of a notice from the Committee asserting such breach, the Debtors' exclusive periods to file and solicit acceptances of a chapter 11 plan shall terminate with respect to the Committee upon expiration of the grace period without cure of the breach by the Debtors, and the Committee shall have the immediate right to file and solicit acceptances of a plan of reorganization.

15.      The Debtors subsequently breached one or more of the Milestones and failed to cure such breach. Accordingly, in accordance with the terms

of the Exclusivity Order, upon such failure to cure any such breach, the Committee

had the immediate right to file a plan of reorganization.

16.     On July 8, 2013, the Committee filed its proposed Plan of

Reorganization of the Official Committee of Unsecured Creditors of Revstone

Industries, LLC, along with an accompanying disclosure statement (Docket No. 736)

and solicitation motion (Docket No. 737).

17.     Subsequently, on July 22, 2013, Revstone filed its Solicitation

Motion and the Revstone Disclosure Statement, along with its accompanying

Chapter 11 Plan of Reorganization for Revstone Industries, LLC (Docket No. 774)

(the "Revstone Plan").

## PRELIMINARY STATEMENT

18.     It is within this Court's discretion to deny approval of a

disclosure statement if the accompanying plan is unconfirmable on its face.  See In re

Am. Capital Equip., LLC, 688 F.3d 145, 154 (3d Cir. 2012) ("'[i]t appears to be

within the discretion of the bankruptcy court to withhold approval of a disclosure

statement if the accompanying plan is unconfirmable'"); Alexander Props., LLC v.

Patapsco Bank, 883 F. Supp. 2d 552, 554, 560-61 (D. Md. 2012) (bankruptcy court

correctly declined to approve debtor's disclosure statement because plan was not

confirmable); In re Arnold, 471 B.R. 578, 586 (Bankr. C.D. Cal. 2012) (appropriate

to deny approval of disclosure statement where plan is unconfirmable on its face).

For the reasons set forth below, the Plan is patently unconfirmable and, therefore, the

Court should not approve Revstone's Disclosure Statement.

19.     Additionally, the Court must focus on the adequacy of the disclosures themselves, and determine whether such disclosures are adequate within the meaning of Bankruptcy Code section 1125(a).  See In re E. Me. Elec. Coop., 125 B.R. 329, 333 (Bankr. D. Me. 1991).  Here, the Revstone Disclosure Statement fails this test, as explained below.  See infra Part V.

**OBJECTION**

I.     **THE REVSTONE PLAN IS UNCONFIRMABLE BECAUSE IT CONTAINS OVERLY BROAD RELEASES.**

20.     Bankruptcy Code section 1129(a)(1) provides that a plan may be confirmed only if it "complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1).  As explained below, the Revstone Plan does not comply with the "applicable provisions" of the Bankruptcy Code found in section 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).

21.     Here, the Revstone Plan releases non-Debtor parties in violation of that section, and accordingly, is patently unconfirmable.  As one example, the Revstone Plan proposes to release Revstone's claims against its directors and officers.  The Revstone Plan provides:

> As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtor, for itself and the Estate, hereby irrevocably, unconditionally and generally releases (i) the Debtor's present and former officers, managers, attorneys, professionals and other agents, including, without limitation, the Debtor's Chief Restructuring Officer and Messrs. James Shein and Richard Newsted,

the independent managers on the Board of Managers of the Debtor (in their respective capacity as managers of the Debtor, including in their respective role as the sole members of the Restructuring Committee of the Debtor's Board of Managers), other than the George Hofmeister Parties, and (ii) the Creditors' Committee and its authorized professionals (collectively, the "Released Parties"), from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, based on or relating to in any way the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, arising prior to the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Released Parties that constitutes willful misconduct or gross negligence. For the avoidance of doubt, the scope of the release provided under this Section X.D does not cover any of the George Hofmeister Parties.

Revstone Plan § X.D.

22.     In addition, under the terms of the Revstone Plan, the Debtor's creditors (to the extent that they consent) release their claims against the Debtor's directors and officers. Specifically, the Revstone Plan states:

As of and subject to the occurrence of the Effective Date, for good and valuable consideration, each Creditor (the "Creditor-Releasors") that affirmatively elects to grant this release by checking the appropriate box on the Ballot provided to such Creditor-Releasor in connection with solicitation of such Creditor-Releasor's vote to accept or to reject the Plan, for itself and its respective Representatives, shall, by virtue of its affirmative election, be deemed to have completely, conclusively, unconditionally and irrevocably released the Debtor, the Estate and their respective Representatives other than the George Hofmeister Parties (the "Released Debtor Parties") from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, based on or relating to in any way the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, arising prior to the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the

Released Debtor Parties that constitutes willful misconduct or gross negligence; provided, however, that the foregoing shall not constitute a waiver or release of any right of the Holder of an Allowed Claim to payment under the Plan on account of such Allowed Claim.

Id. § X.E.

23.      In addition, the Revstone Plan proposes to obtain releases from all of the Debtor's non-debtor affiliates for the Restructuring Committee:

Except as otherwise specifically provided in the Plan, for good and valuable consideration, as of the Effective Date, the non-Debtor corporate affiliates identified in Schedule 1 attached hereto (the "Releasor Affiliates") [to come] shall conclusively, absolutely, unconditionally, irrevocably and forever release and discharge the members of the Restructuring Committee (solely acting in such capacity) and the Restructuring Committee's Representatives (solely acting in the capacity as a Representative of the Restructuring Committee) from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities whatsoever, arising prior to the Effective Date and directly or indirectly arising from or relating to, in whole or in part, the Debtor and/or the Chapter 11 Case.

Id. § X.F.

24.      Such broad releases against third parties, including the Debtor's present and former officers, managers, attorneys, professionals, and other agents – including the Debtor's Chief Restructuring Officer and independent managers – are improper and violate Bankruptcy Code section 524(e). See, e.g., Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 214 (3d Cir. 2000) (rejecting proposed release of debtor's directors and officers in plan); In re Exide Techs., 303 B.R. 48, 73-75 (Bankr. D. Del. 2003) (rejecting proposed release in plan by debtor of lenders, directors, and officers, and rejecting proposed exculpation provision in plan that would effectuate release by non-consenting

9

creditors of lenders, directors, and officers); In re Genesis Health Ventures, Inc., 266

B.R. 591, 608-09 (Bankr. D. Del. 2001) (holding that plan's provisions providing for

third party releases of senior lenders and directors and officers must be stricken); see

also Washington Mutual, 442 B.R. at 349-350 (finding no basis for debtors to release

directors and officers or any professionals, current or former, because there was no

showing of a substantial contribution having been made by them to obtain such

releases); In re Zenith Electronics Corp., 241 B.R. 92, 110-11 (Bankr. D. Del. 1999)

(holding that releases of non-derivative third-party claims against a non-debtor

cannot be confirmed without satisfying a five part test which considers the necessity

of the release).

25.     As set forth above, the Revstone Plan violates the provisions

of the Bankruptcy Code and is not confirmable.  The Court, therefore, should not

approve the Revstone Disclosure Statement.

## II.     THE REVSTONE PLAN IMPERMISSIBLY EXCULPATES CERTAIN THIRD PARTIES.

26.     The Revstone Plan also exculpates numerous parties, by

providing as follows:

> As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, the Debtor and (i) its Representatives (solely acting in the capacity as a Representative of the Debtor) other than the George Hofmeister Parties, (ii) the members of the Creditors' Committee (solely acting in such capacity), and (iii) the Creditors' Committee's Representatives (solely acting in the capacity as a Representative of the Creditors' Committee), shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the

> formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Case up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct. For the avoidance of doubt, the scope of the exculpation provided under this Section X.C does not cover any of the George Hofmeister Parties.

Id. § X.C.

27.     Here, the Debtor's "Representatives" that are exculpated by the terms of the Revstone Plan are defined to include: "present and former officers, directors, managers, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such." Id. II.B. Thus, even former officers and directors, other than the "George Hofmeister Parties" are proposed to be exculpated.

28.     Such broad exculpation is not appropriate. An exculpation clause at most "must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the committee and its members, and the debtor's directors and officers." In re Wash. Mut., Inc., 442 B.R. at 314, 350-51 (Bankr. D. Del. 2011); accord In re Tribune Co., 464 B.R. at 126, 189 (Bankr. D. Del. 2011) (holding that exculpation clause "must exclude non-fiduciaries"); In re PTL Holdings LLC, Case No. 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D.

Del. Nov. 10, 2011) (sustaining U.S. Trustee's objection to the exculpation clause, stating that "the exculpation clause here must be reeled in to include only those parties who have acted as estate fiduciaries and their professionals"); compare In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000) (the committee, its members, and estate professionals may be exculpated under a plan for their actions in the bankruptcy case, except for willful misconduct or gross negligence).  Moreover, there is no requirement that even such estate fiduciaries receive exculpation.

29.     Thus, the Revstone Plan is not confirmable on this basis as well, and the Court should deny approval of the Revstone Disclosure Statement.

## III.    THE REVSTONE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE.

30.     The Revstone Plan also fails to comply with the absolute priority rule.  The Bankruptcy Code provides that a plan normally may be confirmed if it meets certain requirements, including that each and every class either accepts the plan or does not suffer any impairment under the plan.  See 11 U.S.C. § 1129(a)(8) ("The court shall confirm a plan only if all of the following requirements are met: . . . (8) With respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan.").

31.     In the event not all impaired classes of claims vote to accept the plan, the Bankruptcy Code provides an alternative regime for confirmation, commonly referred to as "cram down."  A court may confirm such a plan so long as the plan is, among other things, fair and equitable.  See id. § 1129(b)(1) ("[I]f all of

the applicable requirements of subsection (a) of this section other than paragraph (8) are met[, the court] shall confirm the plan notwithstanding the requirements of such paragraph if the plan . . . is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan").

32.    To meet the "fair and equitable" requirement, the plan must, among other things, comply with the "absolute priority rule."[3]  Specifically, each creditor in any dissenting class must either receive the full value of the allowed amount of its claim or no creditors in junior classes may receive any distribution. See 11 U.S.C. § 1129(b)(2)(B)(ii) (requiring that for "a plan [to] be fair and equitable with respect to a class" for purposes of cram down, it must be the case that "the plan provides that each holder of a claim of such class receive . . . the allowed amount of such claim" or, alternatively, "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . . ."); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 518 (3d Cir. 2005) (affirming denial of confirmation because plan violated absolute priority rule).

33.    Here, the Revstone Plan fails to comply with the absolute priority rule.  Specifically, all general unsecured claims are classified either as Class 5 General Unsecured Claims or Class 4 Convenience Claims, each of which are

---

[3]    The Committee concedes that the absolute priority rule applies only in the event that the cram down regime is used.  However, the Committee maintains that, upon information and belief, Revstone will need to rely upon the cram down regime because at least one impaired class of claims will not vote to approve the Revstone Plan.

impaired under the Revstone Plan. See Revstone Plan, § IV.B (stating that "Class 4 is Impaired" and "Class 5 is Impaired").

34.    Notwithstanding that Classes 4 and 5 are impaired under the Revstone Plan, such plan provides property for a class that is junior in priority to Classes 4 and 5, namely, the equity holder of Revstone. First, the Revstone Plan allows such equity holder to retain its equity interest, albeit rights with respect to such equity interest shall be "suspended." See Revstone Plan § IV.B ("Class 6 consists of all Interests in the Debtor. All legal, equitable, and contractual rights to which each Holder of Allowed Interests in the Debtor is entitled shall be suspended until such time that Creditors have been paid in full in accordance with this Plan. If and when all Creditors' Allowed Claims have been satisfied in full, all rights of the Holders of Interests in the Debtor under applicable Delaware law will be reinstated.").[4]

35.    Importantly, under the Revstone Plan, the management of reorganized Revstone will continue under the same individuals that the equity holder has currently selected, or individuals that are selected by such existing management. Specifically, the Chief Restructuring Officer remains in place following confirmation of the Plan. See id. § VI.B ("From and after the Effective Date, the Reorganized Debtor shall be controlled by the Chief Restructuring Officer under the supervision of the Reorganized Debtor's board of managers as of the Effective Date (the

---

[4]    It is unclear to the Committee what is intended by the provision that such equity "shall be suspended" and what the Debtor envisions for reinstatement of such equity rights in the event all Allowed Claims are satisfied in full.

'Reorganized Board'). The persons to serve on the Reorganized Board shall be identified in the Plan Supplement. Any vacancy on the Reorganized Board shall be filled by a person selected by the remaining managers or by the Bankruptcy Court.").

36.    For each of these reasons, the holder of Revstone's membership interest is receiving certain favorable treatment, and retaining rights with respect to its membership interest, notwithstanding that general unsecured creditors are impaired under the Revstone Plan. Because the Revstone Plan fails to comply with the absolute priority rule and disregards the requirements of Bankruptcy Code section 1129(b), the Court should not approve the Revstone Disclosure Statement.

## IV.    THE REVSTONE PLAN IMPROPERLY CLASSIFIES WELLS' ALLEGED CLAIM IN A SEPARATE CLASS.

37.    The Revstone Plan defines the term "Wells Claim" as "any Claim asserted by Wells against the Debtor that is secured by the Debtor's pledge of its interests in non-debtor Revstone Transportation, LLC and other assets of non-Debtor affiliates." Id. § II.B. Pursuant to the Revstone Plan, Revstone has classified Wells' alleged claim within its own class. See id. § IV.B(3) (classifying Wells' claim).

38.    For the reasons set forth below, the Committee maintains that the classification of Wells' claim is improper, and that the Revstone Plan is not confirmable as a result.

15

A.    **The Revstone Plan Need Not Separately Classify Wells' Claim, as Wells Does Not Have a Claim.**

39.    As a preliminary matter, the Committee maintains that the classification of Wells' claim is unnecessary because, upon information and belief, the prepetition loans made by Wells to Revstone and certain of its affiliates have been paid off from the proceeds received from the Contech Sale. Accordingly, Revstone is no longer indebted to Wells for prepetition amounts owed.

40.    Moreover, as noted above, the Schedules list the Wells Claim as contingent. Accordingly, Wells was required to file a proof of claim in order to assert its claim. See Fed. R. Bankr. P. 3003(c)(2) ("Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule.").

41.    Wells, despite having received notice of the Bar Date Order, did not file a proof of claim by the Bar Date. Accordingly, any claim by Wells would be time barred. Consequently, Wells is not entitled to vote on the Revstone Plan. Specifically, the Bar Date Order provides that any creditor that does not file a proof of claim on or before the Bar Date "shall be **forever barred** from voting on any plan of reorganization" filed in the Debtor's bankruptcy case. Bar Date Order, at p. 2; see also Fed. R. Bankr. P. 3003(c)(2) ("[A]ny creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and

distribution."). For this reason as well, it is improper for the Revstone Plan to

classify Wells in its own class.

> **B.     Even if Wells Was Not Paid and Held a Claim, the Claim is Not an Impaired Claim that is Entitled to Vote on the Revstone Plan.**

42.     Had Wells not been paid off from the Contech Sale, Wells

might still hold a lien on Revstone's membership interest in Revstone

Transportation, notwithstanding its failure to file a proof of claim. Specifically,

Bankruptcy Code section 506(d) provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless –
>
> (1)     Such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2)     Such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).  Wells did not file a proof of claim under section 501, and the

Wells Claim therefore falls within the second exception to Bankruptcy Code section

506(d).  Because Wells may retain its lien, the Wells Claim is not impaired under

Bankruptcy Code section 1124, and Class 3 should not be entitled to vote on the

Revstone Plan.

> **C.     The Wells Claim Is Improperly Classified.**

43.     Bankruptcy Code section 1123(a)(4) requires that a plan

"provide the same treatment for each claim or interest of a particular class, unless the

holder of a particular claim or interest agrees to a less favorable treatment of such

17

particular claim or interest." See John Hancock Mut. Life Ins. Co. v. Route 37 Bus.

Park Assocs., 987 F.2d 154, 158-59 (3d Cir. 1993) (citations omitted) (separate

classification of similar claims permitted in cram-down case only when classes

receive materially differing treatment); see also Phoenix Mut. Life Ins. Co. v.

Greystone III Joint Venture (In re Greystone III Joint Venture), 995 F.2d 1274, 1278

(5th Cir. 1991), cert. denied, 506 U.S. 821 (1992) ("[Claims] which share common

priority and rights against the debtor's estate, should be placed in the same class.").

44.    Under the Plan, Class 2 Miscellaneous Secured Claims may be

paid, have their collateral returned, or receive other agreed upon treatment. Revstone

Plan § IV.B(2). Similarly, the Class 3 Wells Claim may either be paid, have their

collateral returned, or receive other agreed upon treatment. Id. § IV.B(3).

Additionally, Class 2 Miscellaneous Secured Claims may "be reinstated and

Unimpaired in accordance with section 1124," and similarly, Class 3 Wells Claims

may "have left unaltered the legal, equitable, and contractual rights to which such

Claim entitles the Holder of such Claim." Id. § IV.B(2), (3). Accordingly, there is

no basis for separately classifying the Wells Claims. The classification of the Wells

Claim in its own class constitutes impermissible gerrymandering which renders the

Revstone Plan patently unconfirmable; as a result, the Court should reject the

Revstone Disclosure Statement.

## V.    THE REVSTONE DISCLOSURE STATEMENT CONTAINS INADEQUATE DISCLOSURES.

45.    Not only did Revstone propose a patently unconfirmable plan, as set forth above, the Revstone Disclosure Statement fails to provide "adequate information" within the meaning of Bankruptcy Code section 1125(a), and therefore the Revstone Disclosure Statement should not be approved.  That section states:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(a).  Bankruptcy courts have an independent obligation to determine whether a disclosure statement satisfies this test.  In re E. Me. Elec. Coop., 125 B.R. 329, 333 (Bankr. D. Me. 1991).

46.    The Revstone Disclosure Statement fails to disclose who will serve on the Reorganized Board (as defined in the Revstone Plan) and also fails to disclose how such board members will be chosen.  See Revstone Plan § VI.B.

47.    Revstone has access to information that until recently has been denied to the Committee, including recovery analyses, actual sources and uses from consummated sales, and projected sources and uses from anticipated sales.

Notwithstanding this access, remarkably, the Revstone Disclosure Statement fails to set forth any of the following:

- Estimated Allowed Administrative Expenses

- Estimated Allowed Tax Claims

- Estimated Allowed Priority Non-Tax Claims

- Estimated Allowed Convenience Claims

- Estimated Recovery Percentage for Allowed Convenience Claims

- Estimated Allowed General Unsecured Claims

- Estimated Recovery Percentage for Allowed General Unsecured Claims

48.     In addition, as noted above, the Revstone Plan proposes that the rights of the existing equity holder of Revstone shall be "suspended." See Revstone Plan § IV.B.  However, neither the Revstone Disclosure Statement nor the Revstone Plan explain the phrase "shall be suspended" means and what the Debtor envisions for reinstatement of such equity rights.

49.     The Revstone Disclosure Statement further fails entirely to inform creditors and others voting on the Revstone Plan how such plan addresses the existing pension plans of certain affiliates of Revstone, including, but not limited to, the Hillsdale Hourly Pension Plan, the Hillsdale Salaried Pension Plan, the Revstone Casting Fairfield GMP Local 359 Pension Plan, and the Fourslides, Inc. Pension Plan.  Specifically, the Revstone Disclosure Statement does not address whether such plans will be terminated or will continue post-Effective Date.  Nor does it address

how the Revstone Plan will treat any claim by the PBGC or such plans in connection
with such post-Effective Date operations, if indeed such plans continue post-
Effective Date.

       50.     As noted above, Revstone has also failed to disclose any
consideration received or to be received by its estate in connection with the
substantial releases and exculpation offered under the Revstone Plan. Finally, the
Revstone Disclosure Statement also must be revised to make adequate disclosures
regarding recent sales that have closed or that have been proposed for assets of
affiliates of Revstone. For these reasons as well, the Committee respectfully
requests that the Court deny the Solicitation Motion.

## RESERVATION OF RIGHTS

       51.     All confirmation objection points are expressly reserved to the
confirmation hearing. The Committee further expressly reserves the right to
supplement and amend this Objection, seek discovery with respect to the same, and
introduce evidence at any hearing relating to the Revstone Disclosure Statement, the
Solicitation Motion, and this Objection. Further, the Committee reserves the right to
respond to, further object to, or join in any objection or argument made by any
person relating to the Revstone Disclosure Statement or the Solicitation Motion.

WHEREFORE, for all of the foregoing reasons, the Committee respectfully requests that this Court enter an Order denying approval of the Revstone Disclosure Statement and the Solicitation Motion, and granting the Committee such further relief as is just and proper.

Dated: August 19, 2013

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Matthew P. Ward (Del. Bar No. 4471)
Ericka F. Johnson (Del. Bar No. 5024)
222 Delaware Avenue, Ste. 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: maward@wcsr.com
E-mail: erjohnson@wcsr.com

Counsel for the Official Committee of Unsecured Creditors of Revstone Industries, LLC