**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) (Jointly Administered) |
| REVSTONE INDUSTRIES, LLC, *et al.*,[1] | ) Case No. 12-13262 (BLS) |
| Debtors. | ) Related Docket Nos.: 775, 780, 939 |

**JOINDER OF THE PENSION BENEFIT GUARANTY**
**CORPORATION TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS OF REVSTONE INDUSTRIES, LLC TO**
**(I) DISCLOSURE STATEMENT IN RESPECT OF CHAPTER 11 PLAN OF**
**REORGANIZATION OF REVSTONE INDUSTRIES, LLC, AND**
**(II) REVSTONE'S SOLICITATION PROCEDURES MOTION**

The Pension Benefit Guaranty Corporation ("PBGC"), by and through its undersigned counsel, hereby joins ("Joinder") in the Objection of the Official Committee of Unsecured Creditors of Revstone Industries, LLC ("UCC Objection") to the Disclosure Statement in Respect of Chapter 11 Plan of Reorganization ("Plan") for Revstone Industries, LLC (Docket No. 775) (the "Disclosure Statement"), and to the Debtor's Motion for the Entry of an Order: (I) Approving the Disclosure Statement; (II) Scheduling the Confirmation Hearing; (III) Approving the Form and Manner of Notice of the Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Chapter 11 Plan of Reorganization for Revstone Industries, LLC dated July 22, 2013, Including (A) Establishing a Record Date and Approving Procedures for Distributing Solicitation Packages; (B) Approving the Form and Content of the Debtor's Proposed Solicitation Package, Including Ballots; (C)

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone, Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of Debtors' headquarters and the service address for each Debtor is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

Establishing a Voting Deadline for Receipt of Ballots; and (D) Approving Procedures for Tabulating Acceptances and Rejections of the Plan; (V) Establishing the Deadline and Procedures for Filing Objections to Confirmation of the Plan; and (VI) Granting Related Relief (Docket No. 780) (the "Solicitation Motion").  In support of the Joinder, PBGC respectfully represents as follows:

## BACKGROUND

1. PBGC is a United States government agency that administers the nation's pension insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1301-1461.  When an underfunded pension plan is terminated, PBGC typically becomes trustee of the plan and, subject to certain statutory limitations, pays the plan participants and their beneficiaries guaranteed benefits from its insurance funds.

2. The sponsor of a pension plan and members of its controlled group are financially responsible for the pension plan.  The responsibilities of the plan sponsor and controlled group members to a pension plan include, *inter alia*, (1) paying the statutorily required minimum funding contributions to the pension plan; (2) paying statutory premiums to PBGC; and (3) paying any unfunded benefit liabilities to PBGC if the pension plan terminates.  These obligations include termination premiums in the amount of $1,250 per pension plan participant per year for three years ("Termination Premiums").[2]  These liabilities of the plan sponsor and controlled group members with regard to the pension plan are joint and several.

3. Revstone Industries, LLC ("Revstone") is a controlled group member of the sponsors of four defined benefit plans that are covered by PBGC's insurance program.  The plans

---

[2] Termination Premiums are a post-confirmation liability of the reorganized debtor to PBGC pursuant to 29 U.S.C. § 1306(a)(7) resulting from the termination of the Pension Plans.

are the Hillsdale Hourly Pension Plan, the Hillsdale Salaried Pension Plan, the Revstone Casting Fairfield GMP Local 359 Pension Plan, and the Fourslides, Inc. Pension Plan (collectively, the "Pension Plans"). The Pension Plans are covered by the federal pension plan termination insurance program established under Title IV of ERISA.

4. PBGC is the federal government agency that regulates the termination of defined-benefit pension plans under Title IV of ERISA and guarantees the payment of pension benefits up to statutory limits in those pension plans. The Pension Plans are currently underfunded by approximately $47 million[3] on a termination basis. If the Pension Plans were to terminate, PBGC would have the largest unsecured claim in the Revstone bankruptcy case.

## JOINDER

5. For the reasons set forth in the UCC Objection to the Disclosure Statement, PBGC objects to the Disclosure Statement.

## ADDITIONAL OBJECTIONS

**I.     The Disclosure Statement contains inadequate disclosures about the status of the Pension Plans and PBGC's claims, the single largest liability of the Revstone estate.**

6. This Court should not approve the Disclosure Statement because it fails to provide any, let alone sufficient, information to creditors about how the Debtor will address the Pension Plans. Specifically, the Disclosure Statement does not address whether the Pension Plans will remain ongoing or be terminated, or the potential costs associated with either of those scenarios. If Revstone intends for the Pension Plans to remain ongoing, the Disclosure Statement needs to inform creditors about the ongoing cost of paying the statutorily required minimum funding

---

[3] The Department of Labor has filed complaints in the United States District Court for the Eastern District of Kentucky against George Hofmeister, the Pension Plans, and other parties alleging fiduciary breaches causing the Pension Plan losses totaling approximately $41 million ("DOL Complaints"). As alleged in the DOL complaints, a significant portion of the assets of the Pension Plans are in the form of loans and notes to entities in the controlled group, and the value of those assets is difficult to ascertain and may, in some cases, be as low as zero. Consequently, the assets available to provide benefits under the Pension Plans are likely overstated, and the underfunding understated, by an unknown amount.

contributions to the Pension Plans and the required insurance premiums to PBGC. If Revstone intends for the Pension Plans to be terminated, the Disclosure Statement needs to address how the reorganized debtor will pay for the Termination Premiums, which is a post-emergence obligation, in addition to the PBGC claims that will mature as a result of termination of the Pension Plans.

7. Additionally, this Court should not approve the Disclosure Statement because it fails to provide sufficient information to creditors about PBGC's claims. The Disclosure Statement does not disclose the nature or estimated amounts of PBGC's claims, despite PBGC being the single largest unsecured creditor with claims currently estimated at $47 million[4] for the unfunded benefit liabilities of the Pension Plans and an additional $6.9 million for Termination Premiums.

## II. The Plan is unconfirmable because it contains releases and exculpatory provisions for third parties that are prohibited under ERISA.

8. This Court should not approve the Disclosure Statement because the Plan contains releases and exculpatory provisions prohibited under ERISA, thus violating statutory law and making the Plan unconfirmable. Regardless of whether the Pension Plans remain ongoing or are terminated, no party can be released from any duties and obligations that currently exist or may arise under ERISA. Additionally, no party, including a third party, can be released from any claims that PBGC or the Pension Plans may have, including claims relating to fiduciary breach.

## III. The Plan is unconfirmable because it provides for an improper degree of control over the reorganized debtor by current managers and no control to creditors who are the rightful owners entitled to control.

9. The Court should not approve the Disclosure Statement because the Plan is not fair and equitable and, thus, not confirmable, as it allows for current managers to exercise control

---

[4] As mentioned above, this underfunding estimate is may be understated.

over the reorganized debtor, while the Debtor's creditors receive less than full recovery on their claims. Additionally, the Plan provides that as of the Effective Date[5], the Creditors' Committee will be dissolved and that the reorganized debtor may pay all reasonable Plan expenses without further notice to creditors or the approval of this Court. The creditors are the proper recipients of the Debtor's equity and should have the control over its management and operations. Providing all control to existing managers and no control whatsoever to the creditors is improper and results in a Plan that is not fair and equitable.

**IV.    The Plan violates 11 U.S.C. § 1126(g).**

10.    The Plan fails to comply with the rules for acceptance of a plan under the Bankruptcy Code. 11 U.S.C. § 1126(g) provides that "a class is deemed *not* to have accepted the plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests" (emphasis added). Under the Plan, all general unsecured claims ("GUCs") are classified as either "Class 5 General Unsecured Claims" or "Class 4 Convenience Claims", and both classes are impaired under the Plan.[6] Despite the impairment of Classes 4 and 5, the Plan provides for the equity holder of Revstone, a class junior in priority to Classes 4 and 5, to retain its interest and, thus, receive favorable treatment. As long as the GUCs, are impaired, the junior class of equity holder of Revstone, which is not entitled to retain any interest or property under the Plan, is a class that should be deemed to have rejected the Plan, in accordance with 11 U.S.C. § 1126(g).

---

[5] All capitalized terms not herein defined shall have the meaning ascribed to them in the Disclosure Statement.
[6] *See* Plan, § IV.B.

**RESERVATION OF RIGHTS**

11.     PBGC expressly reserves its right to further object to the Disclosure Statement and Solicitation Motion and raise additional arguments at any hearing to consider the Disclosure Statement and Solicitation Motion.

**CONCLUSION**

**WHEREFORE**, in consideration of this Joinder and the UCC Objection, PBGC respectfully requests that this Court enter an order denying approval of the Disclosure Statement and the Solicitation Motion, and granting PBGC any and all relief as this Court deems just and proper.

Dated: August 19, 2013
        Washington, D.C.

Respectfully Submitted,

/s/ Desiree M. Amador
ISRAEL GOLDOWITZ
Chief Counsel
KAREN L. MORRIS
Deputy Chief Counsel
KARTAR S. KHALSA
Assistant Chief Counsel
DESIREE M. AMADOR
CASSANDRA B. CAVERLY
M. KATHERINE BURGESS
Attorneys
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street NW, Suite 340
Washington, DC 20005
Telephone: (202) 326-4020
Facsimile: (202) 326-4112
amador.desiree@pbgc.gov