IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, <u>et al.</u>,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: TBD** |

## <u>FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR REVSTONE INDUSTRIES, LLC</u>

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
Timothy P. Cairns (Bar No. 4228)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Revstone Industries, LLC

Dated: August 20, 2013

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................. 1

II. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, AND GOVERNING LAW ................................................................. 2

    A.    Rules of Interpretation, Computation of Time, and Governing Law ..................... 2

    B.    Defined Terms ................................................................. 3

III. TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ....................... 18

    A.    Introduction ................................................................. 18

    B.    Administrative Expenses ................................................................. 19

    C.    Tax Claims ................................................................. 20

IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS 21

    A.    Summary ................................................................. 21

    B.    Classification and Treatment of Claims and Interests ........................... 22

V. ACCEPTANCE OR REJECTION OF PLAN ................................................................. 26

    A.    Identification of Unimpaired Classes ................................................................. 26

    B.    Identification of Impaired Classes ................................................................. 26

    C.    Classes Permitted and Not Permitted to Vote ................................................................. 27

    D.    Effect of Non-Voting ................................................................. 27

    E.    Nonconsensual Confirmation ................................................................. 28

    F.    Postpetition Interest ................................................................. 28

VI. MEANS FOR IMPLEMENTATION OF THE PLAN ................................................................. 28

    A.    Continued Corporate Existence and Vesting of Assets ........................... 28

    B.    Corporate Action ................................................................. 29

    C.    Source of Funding ................................................................. 34

    D.    Retained Rights of Action of the Debtor ................................................................. 34

    E.    Interests in Affiliates and Subsidiaries ................................................................. 35

    F.    Payment of Plan Expenses ................................................................. 35

G.    Dissolution of Creditors' Committee ....................................................... 35

H.    Final Decree ............................................................................................. 35

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 36

A.    Rejection of Executory Contracts and Unexpired Leases ....................... 36

B.    Bar Date for Rejection Damages ............................................................ 37

VIII. DISTRIBUTIONS AND RELATED MATTERS ............................................... 37

A.    Dates of Distribution .............................................................................. 37

B.    Cash Distributions .................................................................................. 38

C.    Rounding of Payments ........................................................................... 38

D.    Disputed Claims ..................................................................................... 38

E.    Undeliverable and Unclaimed Distributions .......................................... 39

F.    Compliance with Tax Requirements ...................................................... 40

G.    Record Date in Respect to Distributions ................................................ 41

H.    Reserves ................................................................................................. 41

IX. LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES ........ 41

A.    Litigation; Objections to Claims; Objection Deadline ........................... 41

B.    Temporary or Permanent Resolution of Disputed Claims ...................... 42

C.    Setoffs ................................................................................................... 43

D.    Preservation of Retained Rights of Action ............................................ 44

X. RELEASES, INJUNCTIONS AND EXCULPATION PROVISIONS ..................................... 45

A.    Injunctions ............................................................................................. 45

B.    Discharge of the Debtor ......................................................................... 46

C.    Exculpation ............................................................................................ 46

D.    Debtor's Release of CRO, Independent Managers, and Other Parties ................. 47

E.    Release by Opt-In Creditors ................................................................... 49

F.    Release by Debtor's Non-Debtor Affiliates of the Restructuring Committee ...... 50

XI. NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL .............. 51

DOCS_LA:269961.7 73864/001

XII. EXEMPTION FROM CERTAIN TRANSFER TAXES ....................................... 51

XIII. RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS ................... 52

    A.    Retention of Jurisdiction ............................................................ 52

    B.    Miscellaneous Matters ............................................................. 55

XIV. CONDITIONS TO EFFECTIVENESS ......................................................... 60

XV. EFFECT OF CONFIRMATION ................................................................. 61

    A.    Binding Effect of Confirmation ................................................. 61

    B.    Good Faith ............................................................................ 62

    C.    No Limitations on Effect of Confirmation ................................... 62

XVI. MODIFICATION OR WITHDRAWAL OF PLAN .......................................... 62

    A.    Modification of Plan ............................................................... 62

    B.    Withdrawal of Plan ................................................................. 63

XVII. CONFIRMATION REQUEST ................................................................. 63

DOCS_LA:269961.7 73864/001

Debtor and debtor in possession Revstone Industries, LLC hereby proposes the

following *First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC*

pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.  Capitalized

terms used in this Plan shall have the meanings set forth in Article II hereof.

## I.

## <u>INTRODUCTION</u>

The Plan effectuates a reorganization of the Debtor.  Under the Plan, the Debtor

will be revested with all of its assets, including interests in various non-debtor subsidiaries, and

such assets either will be liquidated or retained for the benefit of creditors under the supervision

of the Chief Restructuring Officer.  It is expected that the Debtor's principal secured creditor,

Wells, which asserts a lien upon the Debtor's membership interests in Revstone Transportation,

LLC and certain other assets of non-Debtor affiliates, will be paid in full on or before the

Effective Date from the proceeds of the disposition of certain assets of the direct and indirect

subsidiaries of Revstone Transportation, LLC.

Under the Plan, all holders of allowed administrative expenses and allowed

priority claims against the Debtor will be paid in full on the Effective Date out of cash on hand

(unless, as provided in the Plan, the Debtor elects to  provide payment over time as to Allowed

Tax Claims).  Holders of allowed non-priority general unsecured claims, including intercompany

claims, will receive their respective pro rata share of available net proceeds of the Debtor's assets

(after the payment of or reserve for higher priority claims) after the Effective Date.  All

membership interests in the Debtor, and any associated management rights held by interest

holders, will be suspended pending payment in full on account of all Allowed Claims and

Administrative Expenses (unless the applicable Creditor agrees to other treatment).

The Disclosure Statement, distributed with this Plan, contains a discussion of the

Debtor's history, a summary of the Debtor's assets and liabilities, a summary of what Holders of

Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan,

and a summary of the procedures and voting requirements necessary for Confirmation of the

Plan.  The Disclosure Statement is intended to provide Holders of Claims and Interests with

information sufficient to enable such Holders to vote on the Plan.  All Claim Holders entitled to

vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before

voting to accept or reject this Plan.  No solicitation materials, other than the Disclosure

Statement and related materials transmitted therewith and approved by the Bankruptcy Court,

have been authorized for use in soliciting acceptance or rejection of this Plan.

**II.**

**DEFINED TERMS, RULES OF INTERPRETATION,<br>COMPUTATION OF TIME, AND GOVERNING LAW**

**A.**     <u>**Rules of Interpretation, Computation of Time, and Governing Law**</u>

For purposes of the Plan: (a) whenever from the context it is appropriate, each

term, whether stated in the singular or the plural, shall include both the singular and the plural,

and pronouns stated in the masculine, feminine or neuter gender shall include the masculine,

feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release,

indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such

2

terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of the Plan or any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.  <u>Defined Terms</u>

The following definitions shall apply to capitalized terms used in the Plan:

3

1.     "Administrative Expense" means an unpaid administrative expense of the

kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against the Debtor,

including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estate

of the Debtor, including wages, salaries, or commissions for services rendered after the

commencement of the Chapter 11 Case, (ii) compensation and reimbursement of expenses of

professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of

the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Bankruptcy Court,

and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930, including the

fees, if any, due to the United States Trustee.

2.     "Administrative Expense Objection Deadline" has the meaning ascribed to

this term set forth in Section XIII.B.3 of this Plan.

3.     "Allowed" means with respect to any Claim, Administrative Expense or

Interest, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor

in its Schedules as other than disputed, contingent or unliquidated which has not been superseded

by a filed proof of claim and which scheduled Claim has not been amended; (b) a Claim or

Administrative Expense that has been allowed by a Final Order; (c) a Claim that is allowed by

the Reorganized Debtor, as the case may be, on or after the Effective Date and, if and to the

extent necessary, approved by the Bankruptcy Court; (d) a Claim or Administrative Expense that

has been timely filed by the applicable Bar Date for which no objection has been filed by the

applicable Objection Deadline or the Administrative Expense Objection Deadline; or (e) a Claim

or Administrative Expense that is allowed pursuant to the terms of this Plan.

4

4.    "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under chapter 5 of the Bankruptcy Code or applicable federal or state law and the proceeds thereof.

5.    "Ballot" means the form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

6.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

7.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Case or any part thereof.

8.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

9.    "Bar Date" means (i) June 28, 2013 for General Unsecured Claims and those Administrative Expenses covered by the Bar Date Order, (ii) July 8, 2013 for Claims of Governmental Units; or (iii) such other date as the Bankruptcy Court may set by Order for other Administrative Expenses or any other Claims not covered in the Bar Date Order.

DOCS_LA:269961.7 73864/001

10.    "Bar Date Order" means the Order of the Bankruptcy Court at docket number 523 in the Chapter 11 Case. "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

12.    "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

13.    "Chapter 11 Case" means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date and pending before the Bankruptcy Court.

14.    "Chief Restructuring Officer" means John C. DiDonato, or any successor thereto appointed pursuant to the Reorganized Debtor Operating Agreement.

15.    "Claim" means any claim against the Debtor within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

16.    "Claims Agent" means Rust Consulting/Omni Bankruptcy in its capacity as claims agent for the Debtor.

17.    "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

18.    "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

6

19.     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

20.     "Confirmation Hearing" means the hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

21.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor.

22.     "Consummation" means substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

23.     "Convenience Claim" means any Claim against the Debtor that would otherwise be a General Unsecured Claim but for the fact that the Claim is Allowed in an amount that is greater than $0 and less than or equal to $50,000 or for which the Creditor elects (pursuant to the appropriate election on the Ballot for Class 4 or other written instrument submitted and satisfactory to the Debtor) to reduce the Allowed amount of its Claim to $50,000; *provided, however*, that a Claim may not be sub-divided into multiple Claims of $50,000 or less for purposes of receiving treatment as a Convenience Claim.

24.     "Creditor"means any Person who is the Holder of a Claim or an Administrative Expense against the Debtor.

25.     "Creditor-Releasor" has the meaning ascribed to this term set forth in Section X.E of this Plan.

7

26.    "Creditors' Committee" means the Official Committee of Unsecured Creditors of the Debtor appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

27.    "Debtor" means Revstone Industries, LLC, either in its capacity as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Case or otherwise from and after the Effective Date.

28.    "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that is either a Disputed Claim, or it is determined that the Claim, Interest, Administrative Expense or portion thereof is not allowed under the Bankruptcy Code by any of a Final Order, the Plan, or a stipulation or settlement with the Debtor.

29.    "Disclosure Statement" means the *Disclosure Statement in Respect of Chapter 11 Plan of Reorganization for Revstone Industries, LLC,* as may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

30.    "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection filed by the Objection Deadline or the Administrative Expense Objection Deadline, as applicable, or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest or Administrative Expense is on appeal; (ii) a Claim, on account of which a proof of Claim was filed or which has been otherwise asserted, (a) for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a lower amount, with a differing

8

classification, or as disputed, contingent, or unliquidated, and (b) which has not been allowed

either by a Final Order, the Plan, or under a stipulation or settlement with the Debtor or the

Reorganized Debtor; (iii) any contingent or unliquidated Claim; or (iv) a Claim that is not

Allowed.

      31.    "Distributable Assets" means, except as otherwise noted below, any and

all real or personal property of the Debtor of any nature, including, without limitation, any real

estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases,

licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory,

accounts, chattel paper, Cash (including Cash that may be upstreamed to the Debtor or the

Reorganized Debtor by the Debtor's direct and indirect subsidiaries and other corporate

affiliates, derived from the sale or other disposition of such entities' assets), deposit accounts,

reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of

Action, books and records, any other general intangibles of the Debtor, and any and all proceeds

of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or

unliquidated, matured or unmatured, or fixed or contingent), including, without limitation,

property of the Estate within the scope of section 541 of the Bankruptcy Code.  Notwithstanding

the foregoing, the term "Distributable Assets" does not include any property that has been

abandoned by the Estate pursuant to a Final Order of the Bankruptcy Court.

      32.    "Effective Date" means the first Business Day after the Confirmation Date

immediately following the first day upon which all of the conditions to the occurrence of the

Effective Date have been satisfied or waived in accordance with the Plan.

9

33. "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

34. "Equity Security" means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

35. "Estate" means the estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

36. "Federal Judgment Rate" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

37. "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

38. "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Case or, in the case of a proof of claim, delivered to the Claims Agent.

39. "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified, supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally

10

decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

40.    "Final Resolution Date" means the date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

41.    "General Unsecured Claim" means a Claim against the Debtor other than (a) an Administrative Expense, (b) a Tax Claim, (c) a Priority Non-Tax Claim, (d) a Miscellaneous Secured Claim, (e) a Wells Claim, or (f) a Convenience Claim.  For the avoidance of doubt, a General Unsecured Claim includes any intercompany claims asserted against the Debtor by any affiliates of the Debtor.

42.    "George Hofmeister Parties" means (i) George Hofmeister, (ii) George Hofmeister's immediate and extended family members, (iii) The Megan G. Hofmeister Irrevocable Trust, (iv) The Scott R. Hofmeister Irrevocable Trust, (v) The Jamie S. Hofmeister Irrevocable Trust, (vi) Ascalon Enterprises, LLC, and (vii) each of the foregoing party's respective affiliates, successors or assigns (other than the Debtor and its direct and indirect subsidiaries).

43.    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

44.    "Holder" means the beneficial owner of any Claim, Interest, or Administrative Expense.

45.    "Huron" means Huron Consulting Services LLC.

46. "Huron Parties" means those employees and other personnel of Huron, who have been or may be provided by Huron prior to the Effective Date to provide services and support to the Debtor, including, without limitation, John DiDonato in his capacity as Chief Restructuring Officer of the Debtor, Laura Marcero in her capacity as Deputy Chief Restructuring Officer, James Lukenda as Deputy Chief Restructuring Officer, John Owens as Executive President, Brian Linscott as Chief Financial Officer, Geoffrey Frankel as Vice President, and John Hemingway as Assistant Treasurer.

47. "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

48. "Interest" means (i) any Equity Security, including all membership interests, shares or similar securities, whether or not transferable or denominated "stock" and whether issued, unissued, authorized or outstanding; (ii) any warrant, option, or contractual right to purchase, sell, subscribe or acquire such Equity Securities at any time and all rights arising with respect thereto; and (iii) any similar interest in the Debtor.

49. "IRS" means the Internal Revenue Service.

50. "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

51. "Miscellaneous Secured Claim" means any Secured Claim other than a Wells Claim.

52. "Net Distributable Assets" means the Distributable Assets of the Debtor from and after the Effective Date, once such assets have been reduced to Cash, net of amounts

12

necessary to fund the payment of Allowed Administrative Expenses, Tax Claims, Priority Non-

Tax Claims, and Plan Expenses of the Debtor and/or reserves established for any of the

foregoing, and excluding those Distributable Assets of the Debtor that are subject to any Liens

until such time that such Liens are satisfied in full.

   53. "Non-Professional Administrative Expense Account" has the meaning

ascribed to this term in Section III.B of this Plan.

   54. "Objection Deadline" means the deadline to object to Claims and/or

Interests specified in Article IX.A of the Plan, as may be extended pursuant thereto.

   55. "Person" means an individual, partnership, corporation, limited liability

company, business trust, joint stock company, trust, unincorporated association, joint venture,

governmental authority, governmental unit or other entity of whatever nature.

   56. "Petition Date" means December 3, 2012, the date on which the Debtor

filed its petition for relief under chapter 11 of the Bankruptcy Code.

   57. "Plan" means this First Amended Chapter 11 Plan of Reorganization for

Revstone Industries, LLC, as may be amended or modified from time to time.

   58. "Plan Expenses" means the expenses incurred or payable by the

Reorganized Debtor following the Effective Date (including the reasonable fees and costs of

attorneys and other professionals) relating to implementation of the Plan, for the purpose of (i)

prosecuting the Retained Rights of Action, (ii) resolving Claims and effectuating distributions to

Creditors under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Case,

or (iv) undertaking any other matter relating to the Plan.

59.     "Plan Supplement" means the supplement to the Plan to be Filed by the

Debtor with the Bankruptcy Court, which supplement shall contain forms of certain substantially

final documents required for the implementation of the Plan, no later than ten (10) days prior to

the Confirmation Hearing.

60.     "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to

the extent entitled to priority under section 507(a) of the Bankruptcy Code.

61.     "Pro Rata" means proportionately, so that with respect to any distribution,

the ratio of (a) (i) the amount of property to be distributed on account of a particular Claim or

particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the

same as the ratio of (b) (i) the amount of property to be distributed on account of all Claims or

groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims

sharing in such distribution.

62.     "Professional Fee Account" has the meaning ascribed to this term in

Section XIII.B.2 of this Plan.

63.     "Professional Fee Claim" shall mean an Administrative Expense of a

Professional Person for compensation for services rendered and reimbursement of costs,

expenses or other charges incurred on or after the Petition Date and on or before the Effective

Date.

64.     "Professional Person" shall mean Persons retained or to be compensated

pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code.

65.     "Record Date" means the Effective Date.

14

66.    "Released Parties" has the meaning ascribed to this term set forth in Section X.D of this Plan.

67.    "Releasor Affiliates" has the meaning ascribed to this term set forth in Section X.F of this Plan.

68.    "Releasor Debtor Parties" has the meaning ascribed to this term set forth in Section X.E of this Plan.

69.    "Reorganized Board" means the Reorganized Debtor's board of managers, as defined in Section VI.C of the Plan.

70.    "Reorganized Debtor" means the Debtor on and after the Effective Date.

71.    "Reorganized Debtor Operating Agreement" means the Debtor's operating agreement, as it is amended and restated upon the Effective Date in accordance with this Plan.

72.    "Restructuring Committee" means the Restructuring Committee of the Board of Managers of the Debtor, currently comprised of James B. Shein and Richard E. Newsted, who are the two independent managers of the Debtor's Board of Managers.

73.    "Retained Rights of Action" means all Rights of Action belonging to the Debtor as of the Effective Date, including, without limitation, Avoidance Claims (including those disclosed in the Schedules), but excluding those Rights of Action specifically released under the Plan.  The Retained Rights of Action include, without limitation, any and all rights of the Debtor to pursue any Rights of Action against third parties disclosed or referenced in the Schedules.

74.    "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action (including, without limitation, Avoidance Claims), suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person, and any proceeds thereof, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to Claims or Interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all claims or rights under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553, all fraudulent-conveyance and fraudulent-transfer laws, all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, all preference laws, the Uniform Fraudulent Transfer Act (as it may have been codified in any particular jurisdiction), the Uniform Fraudulent Conveyance Act (as it may have been codified in any particular jurisdiction), and all similar laws and statutes; (6) claims for tax refunds; and (7) any other claims which may be asserted against affiliates, insiders and/or any other third parties.

75.    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

76.    "Secured Claim" means any Claim of any Person (i) that is secured by a Lien on property in which the Debtor or its Estate has an interest, which Lien is valid, perfected and enforceable and not subject to avoidance under applicable law or by reason of a Final Order but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or (ii) to the extent that such Person has a valid right of setoff under section 553 of the Bankruptcy Code.

77.    "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

78.    "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

79.    "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (including the Bar Date Order), or has otherwise been deemed timely filed by a Final Order of the Bankruptcy Court.

DOCS_LA:269961.7 73864/001

80.     "Unclaimed Property" means all Cash deemed to be "Unclaimed Property" pursuant to Article VIII.E of the Plan.

81.     "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

82.     "Wells" means Wells Fargo Capital Finance, LLC, and any successors thereto or assigns thereof.

83.     "Wells Claim" means any Claim asserted by Wells against the Debtor that is secured by the Debtor's pledge of its interests in non-debtor Revstone Transportation, LLC and other assets of non-Debtor affiliates.

## III.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS

**A.     Introduction**

As required by the Bankruptcy Code, Administrative Expenses and Tax Claims are not placed into voting Classes. Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute or agreement of the parties. All postpetition payments by or on behalf of the Debtor in respect of an Administrative Expense or Tax Claim shall either reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of any Allowed amount thereof; provided that the method of application that is most beneficial to the Debtor's Estate shall be employed.

**B.**    **Administrative Expenses**

Under the Plan, on or as soon as practicable after the Effective Date (to the extent payable on the Effective Date), each Holder of an Allowed Administrative Expense against the Debtor will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash from the Reorganized Debtor equal to the full amount of such Allowed Administrative Expense, unless such Holder and the Debtor have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that, unless otherwise agreed by the Reorganized Debtor, (a) requests for payment of all Administrative Expenses must be Filed and served as described in Article XIII.B.3 of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of Professional Persons as set forth in Article XIII.B.2 and 3 of the Plan; provided further, however, that no interest or penalties of any nature shall be paid in respect of an Allowed Administrative Expense.

As of the Effective Date, the Reorganized Debtor shall maintain a segregated reserve Cash account (the "Non-Professional Administrative Expense Account") for the purpose of funding future payments on account of asserted, accrued and estimated Administrative Expenses that have not yet been Allowed or are otherwise not yet payable as of the Effective Date, to the extent such Administrative Expenses later become Allowed or otherwise payable, in an aggregate amount to be determined by the Debtor in its business judgment, after consultation with the Creditors' Committee.  A separate reserve account for the payment of Professional Fee Claims shall be established by the Reorganized Debtor as provided in Section XIII.B.2 below.

19

Notwithstanding any of the foregoing, if an Administrative Expense represents an obligation incurred in the ordinary course of business, such Administrative Expense will be paid in the ordinary course by the Reorganized Debtor in accordance with the terms of the particular transaction and/or applicable agreement.

C.    **Tax Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against the Debtor will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Tax Claim, Cash from the Reorganized Debtor equal to the portion of the Allowed Tax Claim due and payable on or prior to the Effective Date according to applicable non-bankruptcy law; provided, however, the Debtor may in its discretion elect to make, pursuant to section 1129(a)(9)(C), regular quarterly installment payments in Cash of a total value, as of the Effective Date, equal to the amount of the Allowed Tax Claim over a period ending not later than five years after the Petition Date together with interest for the period after the Effective Date at the rate determined under non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject at the sole option of the Reorganized Debtor to prepay the entire amount of the Allowed Tax Claim. Any Allowed Tax Claim (or portion thereof) against the Debtor not yet due and payable as of the Effective Date will be paid by the Reorganized Debtor no later than when due and payable under applicable non-bankruptcy law without regard to the

20

commencement of the Chapter 11 Case; provided that upon request of the Reorganized Debtor, the Bankruptcy Court shall determine the amount of any Disputed Claim for, or issues pertaining to, a Tax. Any Holder of a Tax Claim may agree to accept different treatment as to which the Reorganized Debtor and such Holder have agreed upon in writing.

**IV.**

**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

**A.**     **Summary**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of Claims and/or Interests as set forth below. Administrative Expenses and Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.

B.      **Classification and Treatment of Claims and Interests**

    The treatment of each Class of Claims and/or Interests is set forth below.  Unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Debtor shall determine whether a postpetition payment by or on behalf of the Estate in respect of a Claim either (x) shall reduce the Allowed amount thereof or (y) shall reduce the amount to be paid under the Plan in respect of any Allowed amount thereof by considering which method is most advantageous to the Debtor's Estate.

    1.  **Class 1 – Priority Non-Tax Claims**

      a.  <u>Classification</u>:  Class 1 consists of all Priority Non-Tax Claims against the Debtor.

      b.  <u>Treatment</u>:  At the election of the Reorganized Debtor, the Holder of each Priority Non-Tax Claim against the Debtor shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, (a) a Cash payment from the Reorganized Debtor equal to the Allowed amount of such Claim, or (b) such other treatment as otherwise agreed by the Holder of such Claim and the Debtor or Reorganized Debtor.

      c.  <u>Impairment/Voting</u>:  Class 1 is Unimpaired.  Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    **Class 2 – Miscellaneous Secured Claims**

a.    Classification:  Class 2 consists of all Miscellaneous Secured

Claims (if any such Claims exist) against the Debtor.  Although all Miscellaneous Secured

Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous

Secured Claim, to the extent secured by a Lien on any property or interest in property of the

Debtor different from that securing any other Miscellaneous Secured Claim, shall be treated as

being in a separate sub-Class for the purpose of receiving distributions under the Plan.

b.    Treatment:  Except to the extent that a holder of an Allowed

Miscellaneous Secured Claim has been paid by the Debtor, in whole or in part, prior to the

Effective Date, on the Effective Date, at the option of the Debtor, (i) each Allowed

Miscellaneous Secured Claim shall be reinstated and Unimpaired in accordance with section

1124 of the Bankruptcy Code or (ii) each holder of an Allowed Miscellaneous Secured Claim

shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such

Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed

Miscellaneous Secured Claim, (y) surrender of the collateral securing such Claim or (z) such

other treatment as may be agreed to by the holder and the Debtor or Reorganized Debtor.  The

Debtor shall inform each holder of a Miscellaneous Secured Claim of the treatment of such

Creditor's Secured Claim prior to the Confirmation Hearing.

c.    Impairment/Voting:  Class 2 is Impaired.  Holders of Claims in

Class 2 are entitled to vote to accept or reject the Plan.

3.    **Class 3 – Wells Claims**

23

a.      Classification:  Class 3 consists of all Wells Claims.

b.      Treatment:  On or as soon as practicable after the Effective Date, each Holder of a Wells Claim shall, on account of such Claim, at the election of the Reorganized Debtor, and as the sole distribution or dividend by the Reorganized Debtor or its Estate under this Plan on account of such Wells Claim, either:  (i) receive the full amount of its Secured Claim from the net proceeds of the collateral securing its Claim; (ii) have surrendered to such Holder, without representation or warranty, the collateral securing its Claim; or (iii) have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim. Any Holder of a Wells Claim may agree to accept different treatment as to which the Reorganized Debtor and such Holder have agreed upon in writing.  The Debtor anticipates that the Wells Claims shall be paid in full prior to the Effective Date outside of the Plan, and thus, in such case, there would be no outstanding Claim in Class 3 entitled to payment under the Plan.

c.      Impairment/Voting:  Class 3 is Impaired.  Holder(s) of Claims in Class 3 are therefore entitled to vote to accept or reject the Plan.

**4.      Class 4 – Convenience Claims**

a.      Classification:  Class 4 consists of all Convenience Claims.

b.      Treatment:  On or as soon as practicable after the later of (i) the Effective Date, and (ii) ten (10) Business Days after the date on which such Claim becomes an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive, on account of such Claim, as the sole distribution or dividend by the Reorganized Debtor or its Estate under this Plan on account of such Convenience Claim, Cash equal to twenty percent

24

(20%) of the Allowed amount of such Claim, as calculated without interest from the Petition

Date.  If and to the extent that a Creditor's Claim is above $50,000 and the Creditor desires to

reduce the Allowed amount of its Claim to $50,000 and have its Claim treated as a Convenience

Claim, said Creditor must make the appropriate election on the Class 4 Ballot or other written

instrument submitted and satisfactory to the Debtor.

   c. <u>Impairment/Voting</u>:  Class 4 is Impaired.  Holders of Claims in

Class 4 are therefore entitled to vote to accept or reject the Plan.

  **5.** **<u>Class 5 – General Unsecured Claims</u>**

   a. <u>Classification</u>:  Class 5 consists of all General Unsecured Claims

against the Debtor.

   b. <u>Treatment</u>:  On or as soon as practicable after the Effective Date,

each Holder of an Allowed General Unsecured Claim shall receive, as the sole distribution by the

Reorganized Debtor or its Estate under this Plan on account of such General Unsecured Claim, a

Pro Rata share (calculated as a percentage of all Allowed General Unsecured Claims) of the Net

Distributable Assets of the Debtor up to the full Allowed amount of such General Unsecured

Claim.  Holders of Allowed General Unsecured Claims will not be entitled to the payment of

postpetition interest under the Plan unless the rights of the Holders of Interests in the Debtor are

reinstated pursuant to Section IV.B.6 below; only if such reinstatement occurs, then Holders of

Allowed General Unsecured Claims shall receive such interest at the Federal Judgment Rate, to

the extent required under the Bankruptcy Code.

c.    Impairment/Voting: Class 5 is Impaired. Holders of Claims in Class 5 are therefore entitled to vote to accept or reject the Plan.

6.    **Class 6 – Interests in the Debtor**

a.    Classification: Class 6 consists of all Interests in the Debtor.

b.    Treatment: All legal, equitable, and contractual rights to which each Holder of Allowed Interests in the Debtor is entitled shall be suspended until such time that all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan. If and when all Creditors' Allowed Claims and Administrative Expenses have been satisfied in such manner, all rights of the Holders of Interests in the Debtor under applicable Delaware law will be reinstated.

c.    Impairment/Voting: Class 6 is Impaired. Holders of Interests in Class 6 are therefore entitled to vote to accept or reject the Plan.

## V.

## ACCEPTANCE OR REJECTION OF PLAN

A.    **Identification of Unimpaired Classes**

The following Class is Unimpaired under the Plan: Class 1 – Priority Non-Tax Claims

B.    **Identification of Impaired Classes**

The following Classes of Claims and Interests are Impaired under the Plan.

1.    Class 2 – Miscellaneous Secured Claims

DOCS_LA:269961.7 73864/001

2.    Class 3 – Wells Claims

3.    Class 4 – Convenience Claims

4.    Class 5 – General Unsecured Claims

5.    Class 6 – Interests in the Debtor

## C.    <u>Classes Permitted and Not Permitted to Vote</u>

Class 1 is Unimpaired.  Holders of Claims in such Class are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.  Classes 2 through 6 are Impaired.  Holders of Claims and Interests in Classes 2 through 6 are permitted to vote to accept or reject the Plan.  The Debtor reserves all of its rights with respect to all Claims classified by the Debtor.

An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## D.    <u>Effect of Non-Voting</u>

If no Holder of a Claim or Interest eligible to vote in a particular Class timely votes to accept or reject the Plan, the Debtor may seek to have the Plan deemed **accepted** by the Holders of such Claims or Interests in such Class for purposes of section 1129(b) of the Bankruptcy Code.

**E.**    **Nonconsensual Confirmation**

In the event any Class of Claims or Interests votes to reject the Plan, the Debtor requests that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**F.**    **Postpetition Interest**

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent that the Holder of a Claim has the benefit of a Lien on assets that exceed the value of such Claim or the Plan expressly provides for postpetition interest on account of such Claim.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**    **Continued Corporate Existence and Vesting of Assets**

On and after the Effective Date, subject to the requirements of the Plan, the Reorganized Debtor will continue to exist as a separate limited liability company and shall retain all of the powers of limited liability companies under applicable non-bankruptcy law, and without prejudice to any right to amend its operating agreement, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtor and its Estate, including any interests in subsidiaries and any Retained Rights of Action of the Debtor, will vest in the Reorganized

DOCS_LA:269961.7 73864/001

Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests. Neither

the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of

applicable non-bankruptcy law shall cause a dissolution of the Debtor, which shall be continued

as a limited liability company following the Effective Date.

On and after the Effective Date, subject to the requirements of the Plan, the

Reorganized Debtor shall be permitted to conduct its business, reconcile Claims, use and dispose

of assets, prosecute litigation, and otherwise take any and all actions reasonably necessary to

implement the Plan without supervision by the Bankruptcy Court and free of any restrictions

under the Bankruptcy Code or the Bankruptcy Rules. The Reorganized Debtor shall be

authorized, without limitation, to use and dispose of the Distributable Assets of the Debtor and

its Estate, to investigate and pursue any Retained Rights of Action of the Debtor as the

representative of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code,

to acquire and dispose of other property, and to otherwise administer its affairs.

## B.    Corporate Action

On the Effective Date, the matters under the Plan involving or requiring limited

liability company action of the Debtor, including but not limited to actions requiring a vote or

other approval of the board of directors, shareholders, managers or members of the Debtor or the

execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have

been authorized by the Confirmation Order and to have occurred and be in effect from and after

the Effective Date without any further action by the Bankruptcy Court or the officers, directors,

managers or members of the Debtor.

The Reorganized Debtor Operating Agreement shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. The Debtor may execute and/or file the Reorganized Debtor Operating Agreement with the Delaware Secretary of State and other state governmental authorities having jurisdiction over the Debtor as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate the terms of such Reorganized Debtor Operating Agreement.

On the Effective Date, the Debtor's operating agreement shall be deemed replaced and amended by the Reorganized Debtor Operating Agreement, which shall be in full force and effect from and after the Effective Date.

C.      **Corporate Governance**

From and after the Effective Date, and except as otherwise set forth in the Reorganized Debtor Operating Agreement, the business, affairs and operation of the Reorganized Debtor shall be under the management of, and all decisions on behalf of the Reorganized Debtor may be made by, the Chief Restructuring Officer, who shall report to and be subject to oversight and removal by the Reorganized Debtor's board of managers, as reconstituted as of the Effective Date pursuant to the terms of the Plan. In the event of any disputes between the Chief Restructuring Officer and the Reorganized Board, such dispute will be resolved by the Bankruptcy Court. Without limitation to the foregoing, the Chief Restructuring Officer shall be authorized to appoint such officers of the Reorganized Debtor with such duties and responsibilities as he may deem necessary and appropriate in furtherance of the

30

affairs of the Reorganized Debtor; provided, however, that no George Hofmeister Party may serve as an officer of the Reorganized Debtor.

On the Effective Date, each member of the Board of Managers of the Debtor shall be deemed to have resigned, the Restructuring Committee shall be dissolved, and a new Board of the Managers (the "Reorganized Board") shall be constituted and formed. The Reorganized Board shall consist of the members of the Creditors' Committee or their designees and the Chief Restructuring Officer as ex officio member of the Reorganized Board; provided however, no George Hofmeister Party shall serve on the Reorganized Board. The specific individuals proposed to serve on the Reorganized Board shall be disclosed in the Plan Supplement. Any actions taken by the vote or written consent of a majority of the Reorganized Board shall be deemed to constitute an action by the Reorganized Board. Each manager shall serve on the Reorganized Board until the death, disability, or resignation of such manager or until entry of an order of the Bankruptcy Court for a final decree closing the Chapter 11 Case. Any vacancy on the Reorganized Board created by the death, disability or resignation of a manager may be filled by the remaining members of the Reorganized Board (regardless of whether less than a majority) or by order of the Bankruptcy Court if no agreement can be reached, provided that no George Hofmeister Party may serve as a manager. There shall be customary indemnification by the Reorganized Debtor of the Reorganized Board, as well as the Reorganized Debtor's officers as of the Effective Date, as to be set forth in the Reorganized Debtor Operating Agreement.

On the Effective Date, the limited liability company agreement of the Debtor shall be amended and restated substantially in the form set forth in the Plan Supplement and, as so

31

amended and restated, shall constitute the limited liability company agreement of the

Reorganized Debtor.  The Reorganized Debtor Operating Agreement shall contain the following

provisions (which shall remain in effect until such time as an order by the Bankruptcy Court for

a final decree in the Chapter 11 Case has been entered):  (i) a prohibition on the taking of any

action on behalf of the Reorganized Debtor by any member thereof or the participation by any

such member in the management of the business, affairs or operations of the Reorganized

Debtor; (ii) a prohibition on service by any George Hofmeister Party as a manager or officer of

the Reorganized Debtor; (iii) a provision authorizing the Chief Restructuring Officer, subject to

the oversight of the Reorganized Board, to approve any sale, lease, or exchange of all or

substantially all of the Reorganized Debtor's properties and assets, any merger or dissolution of

the Reorganized Debtor, any dissolution of the Reorganized Debtor, or any other action

contemplated under the Plan, any of which actions may be taken without the consent of any

member of the Reorganized Debtor; (iv) a prohibition on any amendment or modification of the

certificate of formation of the Reorganized Debtor or the Reorganized Debtor Operating

Agreement, other than with the express prior approval by a majority of the members of the

Reorganized Debtor, which amendment or modification has a material adverse effect upon any

membership interest held by a member of the Reorganized Debtor; (v) a prohibition on any

amendment or modification of the certificate of formation of the Reorganized Debtor or the

Reorganized Debtor Operating Agreement, other than with the express prior approval by the

Bankruptcy Court, which amendment or modification, either affects any of corporate governance

provisions of any such instrument or is otherwise inconsistent with any express provisions of the

32

Plan; and (vi) such other provisions as may be necessary or appropriate to ensure consistency with or to fully implement or effectuate the provisions of the Plan.

**D.    Chief Restructuring Officer Duties**

Subject to the terms of the Reorganized Debtor Operating Agreement, the Chief Restructuring Officer shall be tasked with maximizing the value of the Debtor's assets, reconciling Claims, making distributions to Creditors in accordance with the Plan, satisfying Post-Effective Date obligations of the Reorganized Debtor, and taking other actions in order to implement the Plan, all without need for approval of the Bankruptcy Court or notice to Creditors.

The Reorganized Debtor Operating Agreement shall provide customary terms for the management of the Reorganized Debtor by the Chief Restructuring Officer with appropriate oversight by the Reorganized Board, subject to the resolution of any disputes by the Bankruptcy Court, including, without limitation, the powers and authority of the Chief Restructuring Officer to do the following without further order, Court approval or notice unless expressly required otherwise under the Plan: (i) manage, withdraw, and administer funds of the Reorganized Debtor, cause to have distributions made pursuant to the Plan, and incur obligations for expenses in connection with the management and liquidation of the Reorganized Debtor's assets; (ii) have marketed and negotiate, enter into and have performed agreements for the sale or other disposition of the Reorganized Debtor's assets; (iii) engage professionals, employees and other agents (including, in the Chief Restructuring Officer's discretion, current general bankruptcy counsel to the Debtor) to assist the Chief Restructuring Officer with respect to his or her responsibilities; (iv) on behalf of the Reorganized Debtor, prosecute, compromise and/or settle

33

claims and causes of action and objections to Claims; (v) execute any documents relating to the

foregoing on behalf of the Reorganized Debtor; and (vi) exercise such other powers and

authority as may be necessary and proper to carry out the provisions of the Plan (provided that

such other powers and authority are not inconsistent with the Plan or the terms of the

Reorganized Debtor Operating Agreement).

E.    **Source of Funding**

The source of all distributions and payments under this Plan will be the

Distributable Assets and the proceeds thereof, including, without limitation, the Debtor's Cash

on hand and proceeds from the sale or other disposition of the remaining property of the Debtor

and prosecution of Retained Rights of Action.

F.    **Retained Rights of Action of the Debtor**

Unless a Right of Action of the Debtor (including the right to object to any Claim

asserted against the Estate) is, in writing, expressly waived, relinquished, released, assigned,

compromised, or settled in the Plan, or in a Final Order, all rights of the Estate from and after the

Effective Date with respect to the Retained Rights of Action are expressly preserved for the

benefit of, assigned to, and fully vested in, the Reorganized Debtor.

The Reorganized Debtor shall have standing as the representative of the Debtor's

Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue, or decline to pursue,

the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment

of the Debtor.  The Reorganized Debtor may settle, release, sell, assign, otherwise transfer, or

34

compromise, Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court.

**G.**    **Interests in Affiliates and Subsidiaries**

As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Reorganized Debtor shall retain any stock or interests that it may hold in its affiliates or subsidiaries and retain any rights to which such stock or interests may be entitled under applicable law with respect to such shares or other interests.  After the Effective Date, the Reorganized Debtor may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**H.**    **Payment of Plan Expenses**

The Reorganized Debtor may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court.

**I.**    **Dissolution of Creditors' Committee**

As of the Effective Date, the Creditors' Committee shall be dissolved. Notwithstanding such dissolution, the Creditors' Committee's professionals may seek payment of any unpaid Administrative Expenses pursuant to the Plan.

**J.**    **Final Decree**

At any time following the Effective Date, the Reorganized Debtor shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code.

# VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases:  (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) that are listed for assumption by the Debtor as of the Effective Date in a Plan Supplement to be filed and served on affected non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to the Effective Date; (iv) that constitute contracts of insurance in favor of, or that benefit, the Debtor or the Estate; or (v) that were previously sold, conveyed or otherwise assigned pursuant to Final Order, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Without limiting the foregoing, the indemnification obligations in favor of the Debtor's independent managers and applicable Huron Parties shall be assumed as of the Effective Date, and all other pre-Effective Date indemnification obligations of the Debtor shall be deemed rejected as of the Effective Date to the extent that such obligations are contained in executory contracts within the meaning of section 365 of the Bankruptcy Code, but only to the extent not inconsistent with any existing insurance obligations.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions or rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

DOCS_LA:269961.7 73864/001

B.      **Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor or its Estate unless a proof of Claim is Filed and served on the Debtor and its counsel within thirty (30) days after the earlier of (a) Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims, subject to the provisions of the Plan.

## VIII.

## DISTRIBUTIONS AND RELATED MATTERS

A.      **Dates of Distribution**

The sections of the Plan on treatment of Administrative Expenses, Claims, and Interests specify the times for distributions.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, by the Reorganized Debtor (or its agent) on the immediately following Business Day.  Distributions due on the Effective Date will be paid on such date or as soon as practicable thereafter, provided that if other provisions of the Plan require the surrender of securities or establish other conditions precedent to receiving a distribution, the distribution may be delayed until such surrender occurs or conditions are satisfied.

If, under the terms of the Plan, the resolution of a particular Disputed Claim (*e.g.*, it is Disallowed) entitles other Holders of Claims to a further distribution, either (a) the

37

Reorganized Debtor may make such further distribution as soon as practicable after the

resolution of the Disputed Claim or (b) if the further distribution is determined in good faith by

the Reorganized Debtor to be less than $100 for any Creditor, then, in order to afford an

opportunity to minimize costs and aggregate such distributions, the Reorganized Debtor may

make such further distribution any time prior to sixty (60) days after the Final Resolution Date or

with the next distribution, in the discretion of the Reorganized Debtor.

**B.    Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or

wire transfer from a domestic bank, at the option of the Reorganized Debtor, except that Cash

payments made to foreign Creditors may be made in such funds and by such means as are

necessary or customary in a particular foreign jurisdiction.

**C.    Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the

actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the

extent Cash remains undistributed as a result of the rounding of such fraction to the nearest

whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

**D.    Disputed Claims**

Notwithstanding all references in the Plan to Claims that are Allowed, solely for

the purpose of calculating the amount or number of distributions to be made on account of

Allowed Claims or Allowed Administrative Expenses under the Plan, such calculations shall be

made as if each Disputed Claim were an Allowed Claim or Allowed Administrative Expense,

except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be

Allowed or authorized or otherwise determines the amount or number which would constitute a

sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by

the Reorganized Debtor), such amount or number as determined by the Bankruptcy Court shall

be used for calculations as to such Disputed Claim.

All distributions due in respect of a Disputed Claim shall be held and not made

pending resolution of the Disputed Claim.

If an objection to a Disputed Claim is withdrawn, resolved by agreement, or

determined by Final Order, the distributions due on account of any resulting Allowed Claim or

Allowed Administrative Expense shall be made by the Reorganized Debtor.  Such distribution

shall be made within forty-five (45) days of the date that the Disputed Claim becomes an

Allowed Claim or Allowed Administrative Expense or as soon thereafter as reasonably

practicable.  No interest shall be due to a Holder of a Disputed Claim based on the delay

attendant to determining the allowance of such Claim, Interest or Administrative Expense.

**E.    Undeliverable and Unclaimed Distributions**

If any distribution under the Plan is returned to the Reorganized Debtor as

undeliverable or the check or other similar instrument or distribution by the Reorganized Debtor

remains uncashed or unclaimed, as applicable, for ninety (90) days, such Cash shall be deemed

to be Unclaimed Property.  Upon property becoming Unclaimed Property, it immediately shall

be revested in the Reorganized Debtor.

DOCS_LA:269961.7 73864/001

Once there becomes Unclaimed Property for a Holder, no subsequent distributions for such Holder which may otherwise be due under the Plan will accrue or be held for such Holder, provided that, if the applicable agent is notified in writing of such Holder's then-current address and status as a Holder under the Plan, thereafter, the Holder will become entitled to its share of distributions, if any, which first become due after such notification.

**F.    Compliance with Tax Requirements**

The Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.

In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Reorganized Debtor shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received, the Reorganized Debtor may, in its sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received; provided, however, that Reorganized Debtor shall not be obligated to liquidate any securities to perform such withholding.

40

G.    **Record Date in Respect to Distributions**

Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the same as the Record Date.

H.    **Reserves**

In making any distributions in respect of Claims under this Plan, the Reorganized Debtor shall reserve an appropriate and adequate amount of Cash on account of any unresolved Disputed Claims.  The Reorganized Debtor shall make a corrective distribution following the successful resolution of any Disputed Claim on the next regularly scheduled distribution date.

## IX.

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

A.    **Litigation; Objections to Claims; Objection Deadline**

Except as may be expressly provided otherwise in the Plan, the Reorganized Debtor shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of Tax issues and liabilities.

As of the Effective Date, the Reorganized Debtor shall have exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims; provided, however, parties in interest may file objections to Claims to the extent permitted by Bankruptcy Code section 502(a).  Unless another date is established by the Bankruptcy Court *sua sponte* (which may so act without notice or hearing) or is established by other provisions of

41

the Plan, any objection to a Claim or Interest shall be filed with the Bankruptcy Court and served

on the Person holding such Claim or Interest within one hundred eighty (180) days after the

Effective Date (as may be extended pursuant to this Section, the "Objection Deadline"), provided

that the Reorganized Debtor may seek extension(s) thereof subject to Bankruptcy Court approval

and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule

2002.

        In addition to any other available remedies or procedures with respect to Tax

issues or liabilities or rights to Tax refunds, the Reorganized Debtor, at any time, may utilize

(and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any Tax

issue or liability or right to a Tax refund relating to an act or event occurring prior to the

Effective Date; or (2) any Tax liability or right to a Tax refund arising prior to the Effective

Date.  If the Reorganized Debtor utilizes section 505(b) of the Bankruptcy Code: (1) the

Bankruptcy Court shall determine the amount of the subject Tax liability or right to a Tax refund

in the event that the appropriate governmental entity timely determines a Tax to be due in excess

of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a

discharge of Tax liability in accordance with section 505(b) of the Bankruptcy Code, the

Reorganized Debtor shall be entitled to such discharge which shall apply to any and all Taxes

relating to the period covered by such return.

**B.**    **Temporary or Permanent Resolution of Disputed Claims**

        The Reorganized Debtor may request, at any time prior to the Effective Date or

on and after the Effective Date, that the Bankruptcy Court estimate any contingent or

42

unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any party has previously objected to such Disputed Claim.  The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning any objection to the Disputed Claim.  If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount would constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed Claim, the Reorganized Debtor may elect from and after the Effective Date to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim.  In addition, the Reorganized Debtor may resolve or adjudicate any Disputed Claim from and after the Effective Date in the manner in which the amount of such Claim, Interest or Administrative Expense and the rights of the Holder of such Claim, Interest or Administrative Expense would have been resolved or adjudicated if the Chapter 11 Case had not been commenced.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

**C.**     **Setoffs**

The Reorganized Debtor may, but shall not be required to, setoff against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim that the

43

Reorganized Debtor may have against such Holder, unless otherwise agreed to in writing by such Holder and the Reorganized Debtor.

**D.    Preservation of Retained Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor and its successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Retained Rights of Action and the Confirmation Order shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Rights of Action. Absent such express waiver or release, the Reorganized Debtor or its successors or assigns shall have standing as the representatives of the Debtor's Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to pursue Retained Rights of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor (or its successors or future assigns). The Retained Rights of Action may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

Absent an express waiver or release set forth in the Plan, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Reorganized Debtor from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Retained Rights of Action and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Rights of Action upon or after Confirmation or Consummation.

44

**X.**

**RELEASES, INJUNCTIONS AND EXCULPATION PROVISIONS**

**A.**    **Injunctions**

    **1.**    **Generally**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Case pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, seeking to hold (i) the Reorganized Debtor or its Estate, or (ii) the property of the Debtor or its Estate, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

    **2.**    **Injunction Related to Rights of Action and Claims, Administrative Expenses and Interests**

*Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest or other debt or liability against or in the Debtor are permanently enjoined from taking any of the following actions against property of the Debtor or its Estate or the Reorganized Debtor on account of all or such portion of any such Claims, Administrative Expenses, Interests, debts or liabilities: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or*

45

*enforcing any lien or encumbrance; and (d) commencing or continuing, in any manner or in any*

*place, any action that does not comply with or is inconsistent with the provisions of the Plan.*

## B.    Discharge of the Debtor

Except as otherwise provided in the Plan or in the Confirmation Order, rights

afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in

complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever

against the Debtor or any of its assets or properties.  Upon the Effective Date, the Debtor shall be

deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any

and all Claims, including, without limitation, demands and liabilities that arose before the

Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the

Bankruptcy Code, whether or not (a) a Claim based upon such debt is Allowed under section 501

of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under section 502 of

the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted this Plan.

## C.    Exculpation

As of and subject to the occurrence of the Effective Date, for good and valuable

consideration, including the consideration provided under the Plan, (i) the Debtor, (ii) the

Debtor's independent managers, Messrs. James Shein and Richard Newsted (solely in their

respective capacity as managers of the Debtor, including in their respective role as the members

of the Restructuring Committee), (iii) the Debtor's current attorneys and other professionals

(solely in their respective capacity as professionals of the Debtor), (iv) the attorneys and

professionals retained by the Restructuring Committee (solely in their capacity as such), (v) the

Huron Parties (solely with respect to services rendered for the Debtor, including as officers,

representatives, professionals for, and/or agent of the Debtor), (vi) the former and current

members of the Creditors' Committee (solely acting in such capacity), (vii) the Creditors'

Committee's attorneys and other Professional Persons (solely acting in the capacity as

professionals of the Creditors' Committee), and (viii) the respective successors or assigns of the

foregoing parties, shall neither have nor incur any liability to any Person or Entity for any act

taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the

formulation, preparation, dissemination, implementation, administration, Confirmation or

Consummation of the Plan or any contract, instrument, waiver, release or other agreement or

document created or entered into, in connection with the Plan, or any other act taken or omitted

to be taken in connection with the Chapter 11 Case up to and including the Effective Date;

provided, however, that the foregoing provisions of this subsection shall have no effect on the

liability of any Person or Entity that results from any such act or omission that is determined in a

Final Order to have constituted gross negligence, willful misconduct or fraud.  For the avoidance

of doubt, the scope of the exculpation provided under this Section X.C does not cover any of the

George Hofmeister Parties and the former and current officers and managers of the Debtor (other

than the Debtor's independent managers and applicable Huron Parties expressly exculpated

above).

**D.**   **Debtor's Release of CRO, Independent Managers, Creditors' Committee and Other**
       **Parties**

As of and subject to the occurrence of the Effective Date, for good and valuable

consideration, the Debtor, for itself and the Estate, hereby irrevocably, unconditionally and

47

generally releases (i) the Debtor's independent managers, Messrs. James Shein and Richard

Newsted (solely in their respective capacity as managers of the Debtor, including in their

respective role as the members of the Restructuring Committee), (ii) the Debtor's current

attorneys and other professionals (solely in their respective capacity as professionals of the

Debtor), (iii) the attorneys and professionals retained by the Restructuring Committee (solely in

their capacity as such), (iv) the Huron Parties (solely with respect to services rendered for the

Debtor, including as officers, representatives, professionals for, and/or agent of the Debtor), (v)

the former and current members of the Creditors' Committee (solely acting in such capacity),

(vi) the Creditors' Committee's attorneys and other Professional Persons (solely acting in the

capacity as professionals of the Creditors' Committee), and (vii) the respective successors or

assigns of the foregoing parties (collectively, the "Released Parties"), from any and all claims,

obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown,

foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in

law or equity or otherwise, based on or relating to in any way the Debtor, the Chapter 11 Case,

the Plan or the Disclosure Statement, other than claims or liabilities arising out of or relating to

any act or omission of the Released Parties that constitutes willful misconduct, gross negligence

or fraud; provided that such released claims, obligations, rights, suits, damages, causes of action,

and liabilities relate to (a) acts or omissions on or after the Petition Date and prior to the

Effective Date or (b) prepetition acts or omissions relating to the commencement of the Chapter

11 Case; provided further that the foregoing release shall be without prejudice to any objections

to claims, including counter-claims or setoffs, relating to Claims asserted by any of the Released

Parties against the Debtor that the Debtor or the Reorganized Debtor may assert against the

Released Parties.  For the avoidance of doubt, the scope of the release provided under this

Section X.D does not cover any of the George Hofmeister Parties and the former and current

officers and managers of the Debtor (other than the Debtor's independent managers and

applicable Huron Parties expressly released above).

**E.    Release by Opt-In Creditors**

   **As of and subject to the occurrence of the Effective Date, for good and**

**valuable consideration, each holder of a Claim (the "Creditor-Releasors") that**

**affirmatively elects to grant this release by checking the appropriate box on the Ballot**

**provided to such Creditor-Releasor in connection with solicitation of such Creditor-**

**Releasor's vote to accept or to reject the Plan, for itself and its respective present or former**

**officers, directors, managers, shareholders, trustees, partners and partnerships, members,**

**agents, employees, representatives, attorneys, accountants, professionals, and successors or**

**assigns, in each case solely in their capacity as such, shall, by virtue of its affirmative**

**election, be deemed to have completely, conclusively, unconditionally and irrevocably**

**released (i) the Debtor, (ii) the Estate, (iii) the Debtor's independent managers, Messrs.**

**James Shein and Richard Newsted (solely in their respective capacity as managers of the**

**Debtor, including in their respective role as the members of the Restructuring Committee),**

**(iv) the Debtor's current attorneys and other professionals (solely in their respective**

**capacity as professionals of the Debtor), (v) the attorneys and professionals retained by the**

**Restructuring Committee (solely in their capacity as such), (vi) the Huron Parties (solely**

49

with respect to services rendered for the Debtor, including as officers, representatives, professionals for, and/or agent of the Debtor), (vii) the former and current members of the Creditors' Committee (solely acting in such capacity), (viii) the Creditors' Committee's attorneys and other Professional Persons (solely acting in the capacity as professionals of the Creditors' Committee), and (ix) the respective successors or assigns of the foregoing parties (the "Released Debtor Parties"), from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, based on or relating to in any way the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, arising prior to the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Released Debtor Parties that constitutes willful misconduct or gross negligence; provided, however, the foregoing shall not constitute a waiver or release of any right of the Holder of an Allowed Claim to payment under the Plan on account of such Allowed Claim.  For the avoidance of doubt, the Released Debtor Parties do not include any of the George Hofmeister Parties and the former and current officers and managers of the Debtor, other than the Debtor's independent managers and applicable Huron Parties described above.

F.     Release by Debtor's Non-Debtor Affiliates of the Restructuring Committee

Except as otherwise specifically provided in the Plan, for good and valuable consideration, as of the Effective Date, all of the non-debtor, direct or indirect corporate subsidiaries of the Debtor (the "Releasor Affiliates") shall conclusively, absolutely,

50

unconditionally, irrevocably and forever release and discharge the members of the

Restructuring Committee (solely acting in such capacity) and the Restructuring

Committee's attorneys and other professionals (solely acting in the capacity as a

professional of the Restructuring Committee) from any and all claims, obligations, rights,

suits, damages, causes of action, and liabilities whatsoever, arising prior to the Effective

Date and directly or indirectly arising from or relating to, in whole or in part, the Debtor

and/or the Chapter 11 Case.  For the avoidance of doubt, the Releasor Affiliates do not

include Spara, LLC, Greenwood Forgings, LLC, US Tool & Engineering, LLC and

Metavation, LLC.

## XI.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtor does not charge any rates for purposes of section 1129(a)(6) that are

regulated by any governmental regulatory commission with jurisdiction under applicable non-

bankruptcy law.

## XII.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtor

pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance

fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage

recording tax or other similar Tax or governmental assessment.

51

# XIII.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

### A.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the

Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and any

of the proceedings related to the Chapter 11 Case pursuant to section 1142 of the Bankruptcy

Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other

applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the

purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing,

the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)    establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(2)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)    resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

(4)    ensure that distributions to Holders of Allowed Claims, Administrative Expenses or Interests are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

(5)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason reversed, stayed, revoked, modified, supplemented or amended;

(7)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(8)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order,

(10)    consider and act on the compromise and settlement of any Claim against, or Retained Right of Action of the Reorganized Debtor;

(11)    decide or resolve any Retained Rights of Action under the Bankruptcy Code;

DOCS_LA:269961.7 73864/001

(12)    enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Reorganized Debtor wherever located;

(13)    hear and decide any objections to Claims brought by the Reorganized Debtor;

(14)    hear and decide any litigation, including any Avoidance Claims, brought by the Reorganized Debtor;

(15)    hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Case, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtor;

(16)    determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(17)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Case or the Plan;

(18)    remand to state court any claim, cause of action, or proceeding involving either of the Debtor that was removed to federal court, in whole or in part in reliance upon 28 U.S.C. § 1334;

(19)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(20)    determine any other matter not inconsistent with the Bankruptcy Code; and

(21)    enter an order or final decree concluding the Chapter 11 Case.

DOCS_LA:269961.7 73864/001

**B.    Miscellaneous Matters**

    **1.    Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

    **2.    Services by and Fees for Professionals and Certain Parties**

Notwithstanding any other provision herein, Professional Fee Claims shall be paid in accordance with the terms of the order(s) authorizing such payments as promptly as possible on the Effective Date for any outstanding amounts due as of the Effective Date, and as soon as practicable thereafter as such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional.

Prior to or on the Effective Date, the Reorganized Debtor shall establish an escrow account (the "Professional Fee Account") for the purpose of funding future payments on account of accrued and estimated Professional Fee Claims (estimated up to the Effective Date) that will not have been paid on the Effective Date as provided in the preceding sentence, in an aggregate amount to be determined by the Debtor in its business judgment, after consultation with the Creditors' Committee. From and after the Effective Date, the Professional Fee Account shall be free and clear of all Liens and Claims and any other interests and encumbrances.

From and after the Effective Date, the Reorganized Debtor shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Reorganized Debtor.

DOCS_LA:269961.7 73864/001

3.    **Bar Date for Administrative Expenses**

Requests for payment of all Administrative Expenses, other than for those for which a Bar Date was previously set or for which a request and/or proof of Claim has previously been Filed, must be Filed and served on the Reorganized Debtor and the United States Trustee by no later than thirty (30) days after the Effective Date.  The Reorganized Debtor shall have until ninety (90) days after the Effective Date to bring an objection to a Timely Filed request for payment of an Administrative Expense (as may be extended pursuant to this Section, the "Administrative Expense Objection Deadline"), provided that the Reorganized Debtor may seek extension(s) thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.  Nothing in the Plan shall prohibit the Reorganized Debtor from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Case, but after the Effective Date, the Reorganized Debtor's obligation to pay an Administrative Expense will depend upon the claimant's compliance with this Section and such Administrative Expense being Allowed under the provisions of the Plan.

Notwithstanding the foregoing provisions of this Section XIII.B.3, but except as may be expressly provided in other Sections of the Plan, Professional Persons requesting compensation or reimbursement of expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, a Fee Application for final allowance of compensation and reimbursement of expenses in accordance with the various orders of the Bankruptcy Court establishing procedures for submission and review of such

56

applications; provided that, if no last date is set in such procedures for filing such applications, they must be filed no later than sixty (60) days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court.

4.     **Notices**

All notices and requests in connection with the Plan shall be in writing and shall be hand delivered or sent by mail addressed to:

> PACHULSKI STANG ZIEHL & JONES LLP
> Attn:   Laura Davis Jones, Esq.
>             David M. Bertenthal, Esq.
>             Maxim B. Litvak, Esq.
>             Timothy P. Cairns, Esq.
> 919 North Market Street, 17th Floor
> Wilmington, DE 19899
> Telephone:  (302) 652-4100
> Facsimile: (302) 652-4400

All notices and requests to any Person of record holding any Claim, Administrative Expense or Interest shall be sent to such Person at the Person's last known address or to the last known address of the Person's attorney of record.  Any such Person may designate in writing any other address for purposes of this Section of the Plan, which designation will be effective on receipt.

5.     **Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

6.     **Severability of Plan Provisions**

57

If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

### 7.    No Waiver

Neither the failure of the Debtor to list a Claim in the Debtor's Schedules, the failure of the Debtor to object to any Claim or Interest for purposes of voting, the failure of the Debtor to object to a Claim, Administrative Expense or Interest prior to Confirmation or the Effective Date, the failure of the Debtor to assert a Retained Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtor or any other party with respect to a Claim, Administrative Expense, Interest or Retained Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Reorganized Debtor or its successors, before or after solicitation of votes on the Plan or before or

58

after Confirmation or the Effective Date to (a) object to or examine such Claim, Administrative Expense or Interest, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

### 8.    Inconsistencies

In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

### 9.    U.S. Trustee Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date.  From and after the Effective Date, the Reorganized Debtor shall pay the fees assessed against its Estate until such time as the particular Chapter 11 Case is closed, dismissed or converted.  In addition, the Reorganized Debtor shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or converting the Chapter 11 Case.

### 10.    Plan Supplement

No later than ten (10) days prior to the Confirmation Hearing, the Debtor shall File with the Bankruptcy Court the Plan Supplement, which shall contain such substantially final agreements, other documents and information as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Claims Agent.

DOCS_LA:269961.7 73864/001

11.    **Preservation of Insurance**

The Debtor's release from and payment of Claims as provided in the Plan shall

not diminish or impair the enforceability of any insurance policy that may cover any Claims,

including, without limitation, any Claims on account of the Debtor's officers or managers.

12.    **Waiver of Stay**

The Debtor requests as part of the Confirmation Order a waiver from the

Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent

applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

13.    **Choice of Law**

Except to the extent a rule of law or procedures is supplied by federal law

(including but not limited to the Bankruptcy Code and the Bankruptcy Rules), this Plan shall be

governed by, and construed in accordance with, the laws of the State of Delaware applicable to

contracts executed in and to be performed in that State.

## XIV.

## CONDITIONS TO EFFECTIVENESS

The Plan will not be consummated and the Effective Date will not occur unless

and until (A) the Confirmation Order is in a form acceptable to the Debtor; (B) all documents to

be provided in the Plan Supplement are in form and substance acceptable to the Debtor; (C) the

Confirmation Order shall be a Final Order; (D) the Debtor determines in its reasonable business

judgment that it has sufficient Cash to pay all Allowed Administrative Expenses, Allowed Tax

Claims and Allowed Priority Non-Tax Claims, as of the Effective Date, to the extent the holders

thereof are entitled to payment as of such date under the Plan, and (E) the Debtor determines in its reasonable business judgment, after consultation with the Creditors' Committee, that the Debtor has sufficient Cash to pay all asserted, accrued and estimated Administrative Expenses that have not yet been Allowed or are otherwise not yet payable as of the Effective Date but which such Administrative Expenses are anticipated to be later Allowed or otherwise payable (which Cash is to be held in the Non-Professional Administrative Expense Account and the Professional Fee Account, as applicable).  Any of the foregoing conditions, other than conditions (D) and (E), may be waived by the Debtor and such waiver shall not require any notice, Bankruptcy Court order, or any further action; provided, however, in the event there is a dispute between the Debtor and the Creditors' Committee in respect to condition (E), the parties shall present the dispute to the Court for adjudication prior to the occurrence of the Effective Date.

**XV.**

**EFFECT OF CONFIRMATION**

**A.**   **Binding Effect of Confirmation**

Confirmation will bind the Debtor, all Holders of Claims, Administrative Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the Plan.

61

**B.**    **Good Faith**

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been

proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code;

and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance,

sale, or purchase of a security offered or sold under the Plan have been in good faith and in

compliance with applicable provisions of the Bankruptcy Code.

**C.**    **No Limitations on Effect of Confirmation**

Nothing contained in the Plan will limit the effect of Confirmation as described in

section 1141 of the Bankruptcy Code.

**XVI.**

**MODIFICATION OR WITHDRAWAL OF PLAN**

**A.**    **Modification of Plan**

The Debtor may seek to amend or modify the Plan at any time prior to its

Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise

permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code,

except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein,

the Debtor reserves the right to amend the terms of the Plan or waive any conditions to its

Confirmation, effectiveness or consummation, if the Debtor determines that such amendments or

waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

After Confirmation of the Plan, but prior to the Effective Date, the Debtor may,

pursuant to section 1127 of the Bankruptcy Code, seek to modify the Plan.  After the Effective

62

Date, the Reorganized Debtor may apply to the Bankruptcy Court to remedy defects or

omissions in the Plan or to reconcile inconsistencies in the Plan.

**B.**      **Withdrawal of Plan**

The Debtor reserves the right to revoke and withdraw the Plan at any time prior to

the Effective Date, in which case the Plan will be deemed to be null and void.  If the Debtor

revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then:  (i)

the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the

Plan (if any), assumption or rejection of executory contracts or unexpired leases affected by the

Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and

void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any

Claims or Interests or Claims by the Debtor against any other Entity; (b) prejudice in any manner

the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement,

offer or undertaking of any sort by the Debtor or any other Entity.

## XVII.

## CONFIRMATION REQUEST

The Debtor requests that the Bankruptcy Court confirm the Plan and that it do so,

if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection

of the Plan by any Impaired Class.

DOCS_LA:269961.7 73864/001

August 20, 2013

_____
John C. DiDonato
Chief Restructuring Officer of Revstone Industries, LLC

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Maxim B. Litvak (CA Bar No. 215852)
Timothy P. Cairns (Bar No. 4228)
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware  19899-8705
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:        ljones@pszjlaw.com
               dbertenthal@pszjlaw.com
               mlitvak@pszjlaw.com
               tcairns@pszjlaw.com

Counsel to Revstone Industries, LLC,
Debtor and Debtor in Possession

64