IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Objection Deadline: December 4, 2013, at 4:00 p.m. (prevailing Eastern time)
Hearing: December 11, 2013, at 10:00 a.m. (prevailing Eastern time)

# DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE TIME PERIODS DURING WHICH THE DEBTORS HAVE THE EXCLUSIVE RIGHT TO FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the "Motion") the Court for the entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), (a) further extending the period under section 1121(b) of the Bankruptcy Code during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") and (b) extending the period under section 1121(c)(3) of the Bankruptcy Code during which the Debtors have the exclusive right to solicit acceptances of a chapter 11 plan (the "Exclusive Solicitation Period," together with the Exclusive Filing Period, the "Exclusive Periods"). This is the third request by the Debtors for an extension of the Exclusive Periods. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

## Jurisdiction and Venue

1. The Court has jurisdiction over this Motion under 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L), and (O). Venue of the Debtors' chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Section 1121(d) of the Bankruptcy Code provides the basis for the relief requested herein.

## Background

3. On December 3, 2012, Debtors Revstone Industries, LLC ("Revstone") and Spara, LLC ("Spara") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 7, 2013, Debtors Greenwood Forgings, LLC ("Greenwood") and US Tool and Engineering, LLC ("US Tool") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

4. On December 18, 2012 the United States Trustee appointed an Official Committee of Unsecured Creditors in the case of Revstone Industries, LLC (the "Revstone Committee"). No committee has been appointed in the cases of and Spara, LLC, Greenwood

---

[2] On July 22, 2012, Debtors' affiliate Metavation, LLC ("Metavation") commenced its cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Metavation chapter 11 case is not administratively consolidated with the Debtors' cases.

Forgings, LLC and US Tool and Engineering, LLC. No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

5. The Debtors and their affiliates (collectively referred to herein as the "Company") are premier designers and manufacturers of highly engineered components for automotive and other industrial sectors focusing on case and formed metals, tooling, and high-performance products and processes. The Company is also a premier designer, manufacturer and supplier of components for the global aerospace, energy, military, defense and transportation industries. Certain affiliates specialize in thermoform plastics, forging, casting, fabricating and molding of various types of ferrous and non-ferrous metals, as well as the performance of precision machining and fabrication.

6. The Court has extended the Debtors' Exclusive Periods on two previous occasions. On May 16, 2013, the Court entered the *Order (I) Granting Debtors' Motion for an Order Extending the Time Periods During Which the Debtors Have the Exclusive Right to File a Plan and Solicit Acceptances Thereof and (II) Resolving the Motion of Official Committee of Unsecured Creditors for the Appointment of a Chapter 11 Trustee* [Docket No. 578] (the "First Extension Order"). On August 19, 2013, the Court entered the *Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Time Periods During Which the Debtors Have the Exclusive Right to File a Plan and Solicit Acceptances Thereof* [Docket No. 935] (the "Second Extension Order"). Pursuant to the Second Extension Order, the Debtors were granted an extension of their Exclusive Filing Period for proposing a plan through

and including October 31, 2013, and an extension of their Exclusive Solicitation Period for obtaining acceptances of a proposed plan through and including December 31, 2013.

### The Filing of the Competing Plans

7.      The First Extension Order provided that the extension of the Exclusive Periods as to the Revstone Committee would immediately terminate in the event that the Debtors breached any of the Milestones (as defined in the Confidential Settlement Communication filed under seal at Docket No. 573), and failed to cure any such breach within the grace period provided in the Confidential Settlement Communication following receipt of a notice from the Revstone Committee asserting such breach. On June 5, 2013, the Revstone Committee delivered a notice asserting a breach of certain Milestones to the Debtors.[3] The Debtors failed to cure such breach and, on June 19, 2013, the Exclusive Periods terminated as to the Revstone Committee.

8.      On July 8, 2013, the Revstone Committee filed its *Disclosure Statement with Respect to Plan of Reorganization of the Official Committee of Unsecured Creditors of Revstone Industries, LLC* [Docket No. 736] (the "Revstone Committee's Disclosure Statement"). On August 28, 2013, the Revstone Committee filed its *Notice of Filing of Redacted Disclosure Statement with Respect to First Amended Plan of Reorganization of the Official Committee of Unsecured Creditors of Revstone Industries, LLC* [including Redacted Amended Disclosure Statement, attached as Exhibit 1 thereto, First Amended Plan of Reorganization of the Official Committee of Unsecured Creditors of Revstone Industries, LLC attached as Appendix A thereto,

---

[3] The Debtors received additional notices of default from the Revstone Committee on June 16, 2013 and July 16, 2013.

and Redacted Liquidation Analysis, attached as Appendix B thereto] [Docket No 983] (the <u>Revstone Committee's First Amended Disclosure Statement</u>").

9. On July 22, 2013, Debtor Revstone Industries, LLC filed its *Chapter 11 Plan of Reorganization of Revstone Industries, LLC* [Docket No. 774] (the "<u>Debtor's Plan</u>") and the related *Disclosure Statement in Respect of Chapter 11 Plan of Reorganization of Revstone Industries, LLC* [Docket No. 775] (the "<u>Debtor's Disclosure Statement</u>"). On August 20, 2013, the Debtor filed its *First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC* [Docket No. 949] (the "<u>Debtor's First Amended Plan</u>"); and *Notice of Filing of Blackline First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC* [Docket No. 950]. On August 28, 2013, the Debtor filed its: (i) *First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC, as Modified* [Docket No. 985] (the "<u>Debtor's First Amended Plan</u>"); (ii) *Notice of Filing of Blackline First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC, as Modified* [Docket No. 986]; (iii) *Amended Disclosure Statement in Respect of First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC, as Modified* [Docket No. 987] (the "<u>Debtor's First Amended Disclosure Statement</u>"); and (iv) *Notice of Filing of Blackline Amended Disclosure Statement in Respect of First Amended Chapter 11 Plan of Reorganization for Revstone Industries, LLC, as Modified* [Docket No. 988].

10. Revstone and the Revstone Committee have engaged in negotiations related to the competing plans of reorganization. Revstone's goal in these negotiations is to

develop a single, confirmable plan acceptable to both the Debtors and the Revstone Committee. Revstone and the Revstone Committee have adjourned their requests for a hearing to approve the Debtor's First Amended Disclosure Statement and the Revstone Committee's First Amended Disclosure Statement on several previous occasions. The hearing to seek approval of both disclosure statements is currently scheduled for November 13, 2013.

### Relief Requested

11. By this Motion, as to all parties except for the Revstone Committee, the Debtors seek to further extend (a) the Exclusive Filing Period from the current October 31, 2013 deadline through and including January 31, 2014 and (b) the Exclusive Solicitation Period from the current December 31, 2013 deadline through and including March 31, 2014. The Debtors further request that the extension be without prejudice to the Debtors' right to seek additional extensions of the Exclusive Periods for cause in accordance with section 1121(d).

### Basis for Relief

12. Section 1121(d) of the Bankruptcy Code grants the Court authority to extend the Exclusive Periods "for cause" after notice and a hearing. 11 U.S.C. § 1121(d). Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997). *See also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D. N.Y. 1987) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 231 (1978), *reprinted in* 1978, U.S.C.C.A.N. 5963, 6190); *In re Public Serv. Co. of N. H.*, 88 B.R. 521, 534 (Bankr. D. N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility").

13.     To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., In re McLean Indus., Inc.*, 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D. N.Y. 1987). The decision to extend a debtor's exclusive periods to file a plan and solicit acceptances thereof is committed to the sound discretion of the bankruptcy court, based upon the facts and circumstances of each particular case. *See, e.g., First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

14.     Courts have relied on a variety of factors when determining whether cause exists for an extension of a debtor's exclusive periods to file a plan and solicit acceptances thereof, any of which may provide sufficient grounds for extending those periods. These factors include (a) the size and complexity of the case, (b) the necessity of sufficient time to negotiate and prepare adequate information, (c) the existence of good faith progress toward reorganization, (d) whether the debtor is paying its debts as they come due, (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan, (f) whether the debtor has made progress in negotiating with creditors, (g) the length of time the case has been pending, (h) whether the debtor is seeking the extension to pressure creditors, and (i) whether unresolved contingencies exist. *See, e.g., In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex 1996); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Texaco, Inc.*, 76 B.R. at 327. However, the identified criteria are only factors, not all of which

are necessarily relevant in every case. *See In the Matter of Federated Department Stores and Allied Stores Corporation*, 1990 Bankr. Lexis 711, *6 (Bankr. S.D. Ohio 1990). Moreover, no one factor is dispositive, and the Court is not restricted to counting factors. *Dow Corning*, 208 B.R. at 669.

15. Cause exists in the chapter 11 cases for extending the Exclusive Periods as requested in this Motion, as several of the above-noted factors are present. Since the commencement of the chapter 11 cases, the Debtors have:

- Obtained important first day orders in the Revstone and Greenwood cases authorizing the Debtors to (i) continue their existing cash management system, (ii) pay certain prepetition claims of employees and maintain the related benefit programs, (iii) maintain their insurance programs; and (iv) provide adequate assurance to their utility providers to insure continuity of service throughout the chapter 11 cases;

- Appointed John D. DiDonato of Huron Consulting Services, LLC, as Chief Restructuring Officer and additional Huron personnel as officers of the Company to assist with restructuring activities;

- Appointed two independent managers to the boards of each of the Debtors and created an independent restructuring committee consisting the independent managers to address all decisions regarding the Debtors' chapter 11 cases and the restructuring efforts of Revstone, Spara, and their subsidiaries, including asset sales;

- Responded to numerous document and information requests from the Revstone Committee and Boston Finance Group ("BFG") related to Company operations, potential asset sales, DIP financing, retention of professionals, and other matters;

- Responded to numerous objections from the Revstone Committee and BFG to administrative motions related to retention of professionals;

- Conducted extensive discovery and engaged in a hearing regarding a challenge to the Debtors' retention of Huron to provide interim management services and to serve as Chief Restructuring and other necessary officers and support staff;

- Developed alternatives for the auction of assets of US Tool, negotiated the retention of an auctioneer for the assets, litigated BFG's relief from stay motion seeking to foreclose on US Tool assets and cooperated with BFG to support the auction of the US Tool assets;

- Analyzed and addressed issues with respect to pending litigation and strategies to maximize recoveries to the estates;

- Developed detailed financial projections and scenarios for the Debtors' business operations;

- Negotiated and entered into consensual extension of the Exclusive Periods with the Committee as described above;

- Continued efforts to investigate sources of potential DIP financing in the case of Spara, LLC;

- Continued cooperation with the Committee and other interested parties, assisted with requests and sharing for production of documents and financial data from the Debtors;

- Consented to the foreclosure of the assets of US Tool to permit an orderly liquidation for the benefit of US Tool creditors and partial satisfaction of BFG's secured claim;

- Completed the marketing, auction and sale of the assets of Greenwood, and negotiated with BFG for an agreement that permitted an immediate distribution of proceeds to BFG in partial satisfaction of BFG's secured claim;

- Upon passing of the bar date, began process of reviewing and analyzing the claims received;

- Conducted extensive negotiations with the Pension Benefit Guaranty Corporation to attempt to reach resolution of claims filed by the PBGC in these cases; and

- Drafted and presented a detailed disclosure statement and plan of reorganization for the Debtor Revstone Industries, LLC.

- Addressed numerous issues with their suppliers, customers and vendors to ensure that the Debtors continue to operate in chapter 11.

16. More recently, after filing their second motion to extend their Exclusive Periods on July 30, 2013, the Debtors have accomplished the following in each of their cases:

A. **Revstone Industries, LLC**

17. Revstone has engaged in extended negotiations with the Revstone Committee to attempt to develop a plan of reorganization that harmonizes Revstone's proposed plan with the plan filed by Revstone Committee. A hearing to consider the competing disclosure statements filed in support of the plans by Revstone and the Revstone Committee was originally scheduled for August 21, 2013. Rather than push forward with competing disclosure statements, Revstone and the Revstone Committee agreed to adjourn the hearing and attempt to resolve any differences. The hearing to consider the disclosure statements is currently scheduled for November 13, 2013.

18. In addition to activities related to its proposed plan and disclosure statement, Revstone has engaged in the following activities since July 30, 2013:

- Acting through its subsidiary Revstone Transportation, LLC, Revstone, in turn acting in its capacity as sole member, negotiated and closed the sale of Contech Castings, LLC. The proceeds of the Contech sale were used, in part, to satisfy significant claims (asserted on an administrative basis as to debtor entities) asserted by the Hillsdale Hourly Pension Plan and Hillsdale Salaried Pension Plan against Revstone and other members of the pension plan controlled group (including Contech)

- Opposed the Revstone Committee's efforts to obtain standing to prosecute the intercompany claims of Revstone in the chapter 11 case of its subsidiary, Metavation, LLC (including opposition to motion to expedite)

- Negotiated with significant OEM customers and developed a sale transaction support agreement whereby the OEM customers contributed significant resources to support the successful sale of Revstone subsidiary Metavation, LLC. Obtained court approval of the sale transaction support agreement over the objections of the Revstone Committee, BFG and the PBGC

- Opposed Revstone Committee appeal of the Bankruptcy Court's approval of the sale transaction support agreement

- Retained ordinary course professionals to wind down a German subsidiary and advise Revstone on various tax matters; obtained Court approval for the retentions over the objection of Revstone Committee

- Finalized a settlement with Ford whereby the estate received a $2,000,000 cash payment in return for a release of claims against Ford; obtained Court approval of the 9019 settlement over the objection of the PBGC

- Investigated payments made by Revstone and subsidiaries to parent Ascalon Enterprises for employee health insurance

- Continued negotiations with the PBGC to resolve funding obligations of the controlled group of various existing pension plans

B.   **Spara, LLC**

19.   Spara continued its previous efforts to obtain financing to permit an effective reorganization of the Spara family of companies. Spara also continued its ongoing efforts to market and sell certain of its subsidiary companies to support the reorganization, and commenced an investigation of the former officers of its wholly-owned subsidiary. Specifically, Spara recently performed the following in its case:

- Solicited financing proposals from numerous potential lenders in an effort to obtain financing for the Spara estate

- Successfully prosecuted a motion for a 2004 investigation of the former officers of Lexington Logistics, LLC; obtained limited approval for investigation over the objection of BFG, the employer of the former officers

- Objected to the administrative claim filed by BFG and commenced discovery in support of its objection

- Continued negotiations with the PBGC to resolve funding obligations of the controlled group of various existing pension plans

- Continued work with Spara subsidiaries to develop an operating and restructuring plan to support Spara reorganization

### C. <u>Greenwood Forgings, LLC</u>

20. On May 30, 2013, the Court ordered the sale of substantially all of the assets of the Greenwood estate. The order authorizing the sale incorporated an agreement between Greenwood and BFG pursuant to which the net sale proceeds were distributed to BFG except for the sum of $575,000, which BFG agreed would be retained by the Greenwood estate in satisfaction of its surcharge claim under section 506(c). After the closing of the sale, Greenwood has worked to resolve and reconcile remaining administrative claims against the estate with the goal of distributing the remaining estate funds. The recent efforts of Greenwood in support of this goal have included the following:

- Negotiated with the Hillsdale pension plans regarding the value of its alleged secured claims against the Greenwood estate. Also negotiated with Hillsdale regarding the value of its administrative claims (negotiations continuing).

- Opposed BFG's motion to convert the Greenwood case to a case under chapter 7 of the Bankruptcy Code.

- Reviewed numerous administrative claims filed against the Greenwood estate to evaluate the feasibility of a plan of liquidation

- Continued to collect outstanding deposits owed to Greenwood

### D.    US Tool & Engineering, LLC

21.    On February 4, 2013, BFG filed the *Boston Finance Group, LLC's Motion for Modification of the Automatic Stay and for Adequate Protection* [Case No. 13-10028, Docket No. 21] seeking, *inter alia*, relief from stay to foreclose on the collateral securing a loan to US Tool. US Tool and BFG agreed to the disposition of BFG's collateral and BFG agreed to reduce its unsecured deficiency claim against US Tool and Revstone by $675,000. The assets were sold at auction by BFG on April 16, 2013 for $631,305 net of expenses.

22.    While the assets of US Tool have been sold through foreclosure, Debtor US Tool has actively worked to investigate various causes of action against former officers in an effort to maximize potential recoveries for creditors. US Tool has performed the following activities in support of its investigation

- Obtained court authority to investigate the possibility that former officer Patrick O'Mara was working with an affiliate of BFG while still employed as president of US Tool, in possible violation of his fiduciary duties to US Tool, raising in turn the possibility that BFG aided and abetted any such violation.

- Served document requests and reviewed numerous documents produced by O'Mara and BFG affiliate Seaboard Manufacturing

- Successfully opposed BFG motion to convert US Tool case to a case under Chapter 7 of the Bankruptcy Code

- Opposed Patrick O'Mara's motion for 2004 investigation of Revstone and US Tool

23. The Debtors have made significant progress in the chapter 11 cases; however, significant tasks lie ahead and certain contingencies remain, warranting an extension of the Exclusive Periods. As evidenced by Revstone's Plan, the Debtors have developed a comprehensive plan for the restructuring of the assets of Debtor Revstone Industries, LLC. In the near future, the Debtors intend to continue their negotiations with the Revstone Committee and move toward their ultimate goal of confirmation of the Revstone reorganization. The Debtors will continue the analysis of the claims received to identify those that require objection and to incorporate certain aspects of that review in the Debtor's Disclosure Statement, and will work to finalize the liquidation analysis and other financial projections in support of the Debtor's Plan.

24. The Debtors have acted in good faith to maximize the value of their estates for the benefit of all creditors. The Debtors and their professionals continue to expeditiously move these cases forward. At this time, it would not be prudent for the Debtors to abandon their exclusivity rights. Accordingly, by this Motion, the Debtors seek to extend their Exclusive Periods, without prejudice to the Debtors' right to request further extensions of the Exclusive Periods.

25. The extensions of the Exclusive Periods sought herein will not harm or prejudice the Debtors' creditors or other parties in interest in these chapter 11 cases and will, in the Debtors' opinion, further the intent of section 1121 of the Bankruptcy Code, which is to afford the Debtors a meaningful and reasonable opportunity to complete the Sale Process and

negotiate with their creditors regarding a potential plan. These chapter 11 cases do not bear characteristics that would justify the denial of an extension of the exclusive periods. *See, e.g., In re Gagel & Gagel*, 24 B.R. 674 (Bankr. S.D. Ohio 1982) (denying extension of exclusivity period because extension would be fruitless); *Dow Corning*, 208 B.R. at 670 (stating that an extension of the exclusive period should be denied if debtor appeared to be attempting to delay the administration of the bankruptcy case). The Debtors are not seeking the extensions to delay administration of their cases or to pressure creditors to accept unsatisfactory plans. On the contrary, these requests are intended to facilitate an orderly, efficient, and cost-effective plan process for the benefit of all creditors.

   26. Moreover, the Debtors submit that the requested extensions are reasonable and relatively modest. Courts in this District have, on numerous occasions, granted extensions of exclusivity in similar chapter 11 cases. *See, e.g. In re Point Blank Solutions, Inc., et al.*, Case No. 09-14019 (PJW) (Bankr. D. Del. June 27, 2011) (granting fourth motion to extend exclusivity period); *In re Champion Enterprises, Inc., et al.*, Case No. 09-14019 (KG) (Bankr. D. Del. May 13, 2010) (same), *In re Western Nonwovens, Inc., et al.*, Case No. 08-11435(PJW) (Bankr. D. Del. Aug. 11, 2009) (same); *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. February 5, 2007) (granting motion to extend exclusivity periods); *In re Global Home Products LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. Sept. 5, 2006) (same).

27. Accordingly, the Debtors submit that the further extension of the Exclusive Periods requested herein is reasonable and appropriate under the circumstances and should be granted as being in the best interests of the Debtors' estates and creditors.

### Notice

28. Notice of this Motion has been given to the following parties or to their counsel: (i) the Office of the United States Trustee; (ii) the Debtors' pre-petition secured lenders; (iii) counsel to the Official Committee of Unsecured Creditors of Revstone Industries, LLC; and (iv) parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. Pursuant to Del. Bankr. LR 2002-1(e), the Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

29. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of an Order, substantially in the form attached hereto, extending the Debtors' Exclusive Filing Period through and including January 31, 2014 the Debtors' Exclusive Solicitation Period through and including March 31, 2014 and for such other and further relief as this Court deems appropriate.

Dated: October 31, 2013

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       dbertenthal@pszjlaw.com
       tcairns@pszjlaw.com

Counsel for the Debtors and Debtors in Possession