IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket No. 1169** |

Objection Deadline: December 4, 2013 at 4:00 p.m. (prevailing Eastern time)
Hearing Date: December 11, 2013 at 10:00 a.m. (prevailing Eastern time)

**DEBTORS' OPPOSITION TO MOTION OF HOMER W. MCCLARTY, TRUSTEE FOR EQUITY SECURITY HOLDERS OWNING 100% OF DEBTORS, REVSTONE INDUSTRIES, LLC, AND SPARA, LLC, AND THEIR WHOLLY-OWNED SUBSIDIARIES, TO EMPLOY AND RETAIN RAMAEKERS GROUP, LLC TO PROVIDE A PERSON RESPONSIBLE FOR THE DEBTORS-IN-POSSESSION AND ADDITIONAL PERSONNEL FOR THE DEBTORS PURSUANT TO 11 U.S.C. § 363(b), AND TO TERMINATE THE ORDER [DOC 428] EMPLOYING HURON CONSULTING SERVICES LLC**

Debtors and debtors-in-possession Revstone Industries, LLC ("Revstone"), Spara, LLC ("Spara"), Greenwood Forgings, LLC ("Greenwood") and US Tool and Engineering, LLC ("US Tool") file this Opposition to the *Motion of Homer W. McClarty, Trustee for Equity Security Holders Owning 100% of Debtors, Revstone Industries, LLC, and Spara, LLC, and Their Wholly-Owned Subsidiaries, to Employ and Retain Ramaekers Group, LLC to Provide a Person Responsible for the Debtors-in-Possession and Additional Personnel for the Debtors*

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

DOCS_LA:273682.2 73864/001

*Pursuant to 11 U.S.C. § 363(b), and to Terminate the Order [Doc 428] Employing Huron Consulting Services LLC* [Docket No. 1169] (the "Motion"), and represents as follows:

1. The movant, Homer W. McClarty ("McClarty"), represents that he is the trustee of trusts that are identified collectively as the "Hofmeister Children's Trusts" (the "Trusts"), that the Trusts own 100% of the equity of non-debtor Ascalon Enterprises, LLC ("Ascalon"), that Ascalon owns 100% of the equity of Revstone and Spara, LLC ("Spara"), and that Ascalon has retained Lawrence J. Ramaekers ("Ramaekers") to be the "person responsible for the Debtors-in-Possession." Motion at 2. McClarty requests that the Court enter an order: (1) employing The Ramaekers Group, LLC ("TRG") to provide the services of Ramaekers and three additional TRG employees pursuant to section 363 of the Bankruptcy Code; and (2) terminating the services of Huron Consulting Services LLC ("Huron"), which presently provides Revstone and affiliates with a Chief Restructuring Officer, John C. DiDonato (the "CRO") and other management personnel. While the Motion is unclear, it appears that the relief may be sought as to each of the four debtors in these jointly administered cases, in addition to TPOP, LLC, f/k/a Metavation, LLC, the debtor in Case No. 13-11831 (collectively, the "Debtors").[2]

2. Transparently, the Motion is an effort by the Debtors' former President and chairman, George S. Hofmeister ("Hofmeister") to reassert control over the Debtors, out of concern that the Debtors, under the direction of their independent CRO, will reach a resolution of these cases that is not to his liking. There is no substantive basis, however, for the relief he

---

[2] The Motion was also filed as Docket No. 311 in the TPOP case, which is not jointly administered with these cases. This Opposition is being filed separately in the TPOP case.

seeks. First, the Motion is brought by a party without standing. Only the Debtors have authority to move to employ or terminate professionals. Second, Section 363 cannot be used to circumvent the requirement that professionals be disinterested, which TRG clearly is not. Third, the Motion offers no legal basis for vacating the order authorizing Huron's employment.

3. McClarty offers no legal basis, and the Debtors are unaware of any legal basis, upon which McClarty, as a trustee of an indirect equity holder of the Debtors, might have standing to ask the Court to approve the employment of TRG by the Debtors, and to terminate the employment of the Debtors' CRO and Huron, over the objections of the Debtors. The Trusts do not even hold equity interests in the Debtors. Ascalon is the equity holder of Revstone and Spara, and a Revstone non-debtor subsidiary, Revstone Tool & Engineering, LLC, is the equity holder of US Tool and Greenwood. Even if a debtor's equity holder had standing to act in the stead of a debtor, the moving party here is not the equity holder.

4. In footnote 2, McClarty states that, as trustee of the equity holders of Ascalon, he adopted a resolution on November 18, 2013 (i) removing Hofmeister from all positions, (ii) giving Ramaekers the title of President of Ascalon, and (iii) appointing Ramaekers as a member of the Boards of Managers of Revstone and Spara. He states further that in connection with this Motion, Ramaekers resigned his position as President of Ascalon, presumably in an effort to claim disinterestedness (though he argues it is unnecessary).

5. It is unclear whether the footnote is intended to state a basis for the authority of either McClarty or Ramaekers to act for Revstone and Spara. If so, it fails. First, even if McClarty's putative appointment of Ramaekers to the Boards of Revstone and Spara was

valid (it was not), there is no explanation how that would give either McClarty or Ramaekers authority to act unilaterally on behalf of the Debtors, either to employ Ramaekers and TRG or to terminate the CRO and Huron, without the support of the two existing members of the Boards of Managers, Richard Newsted and James Shein.

6.     In any event, the appointment of Ramaekers to the Boards of Managers of Revstone and Spara was facially invalid. The Boards each consist of Mr. Newsted and Mr. Shein. Hofmeister's resignations created a vacancy on each of the Boards. Although Ascalon is the sole member of Revstone and Spara, it had no authority under the LLC operating agreements (the "LLC Agreements") to fill the vacancy. Under Delaware law, members of limited liability companies have voting rights only to the extent provided in the LLC Agreements. 6 Del. C. § 18-302(a). Under the LLC Agreements of Revstone and Spara (attached hereto as Exhibits A and B, respectively), although the sole member has the right in principle under § 5.3 to elect a Manager, such right is expressly made subject to Section 5.6, which provides that "[v]acancies [on the Board of Managers]. . . may be filled by the Board of Managers, by the affirmative vote of a majority of all the Managers remaining in office (if the Managers remaining in office constitute a quorum) or by the Members (if the Managers remaining in office constitute less than a quorum)." Because Mr. Newsted and Mr. Shein constitute a quorum under § 5.10 of the LLC Agreements of Revstone and Spara, vacancies on the Board of Managers may be filled only by the Board of Managers, and not by Ascalon.

7.     Furthermore, the LLC Agreements have bankruptcy-specific provisions that expressly prevent Hofmeister (through McClarty) from exerting the control he seeks to

- 4 -

exercise here. Section 5.5 of the LLC Agreements provides: "During the pendency of the Chapter 11 Case a Manager may only be removed *by vote of the Board of Managers*, with or without cause, at a special meeting of the Board of Managers called for the purpose of removing such Manager." Nor do the LLC Agreements permit Ascalon to increase or decrease the number of Managers: section 5.2 provides that during the pendency of the Chapter 11 Case, "the number of Managers may be increased or decreased from time to time and shall be determined *by the Board of Managers* . . ." Still further, section 6.13 of the LLC Agreements provide that, subject to the oversight of the Restructuring Committee, the CRO has the power and authority to make all "Bankruptcy Decisions," which include filing chapter 11 cases, chapter 11 case administration, operation and management, management of subsidiaries, marketing and sale of assets, borrowing of funds, and directing professionals, among others. In short, McClarty has no power to appoint Ramaekers to the Board of Managers of either Revstone or Spara or to usurp the authority of the CRO and Restructuring Committee over employment decisions.

        8.     *Arguendo*, even if McClarty had standing to seek this relief, the Motion would still fail. Ramaekers was retained by Ascalon and appointed as its President. McClarty concedes, as he must, that Ramaekers and TRG are not disinterested and so would be barred from employment if section 327 applied. Therefore, he contends that Ramaekers and TRG can be employed under section 363 as non-professionals, without satisfying section 327's disinterestedness requirement or filing fee applications. He invokes the "Jay Alix Protocol" as a basis for TRG's employment and compensation, and cites cases in which he states that crisis managers have been hired as non-professionals under section 363(b), without identifying orders

or docket entries that might guide the parties and the Court to specific information about the particular engagements that were purportedly approved on that basis.

9. The vigorous objections in these cases to the Debtors' retention of Mr. DiDonato as CRO and the employment of Huron as financial advisors attests to the requirement of this Court that such persons and entities be employed as professionals under section 327. *See also In re Trico Marine Services, Inc.*, Case No. 10-12653 (BLS), 2010 WL 8033209 (Bankr. D. Del. Aug. 25, 2010) (in which this Court found CRO and crisis managers to be disinterested and approved their employment under section 327). There is no question that the services to be provided by Ramaekers and TRG are the same as those provided by DiDonato and Huron, inasmuch as McClarty cites duplication of effort as the basis for his request that Huron's employment be terminated. *See In re First Merchants Acceptance Corp.*, 1997 WL 873551 *4 (D. Del. Dec. 15, 1997) ("Although other entities performing these types of functions have been referred to as "managers" or "management consultants," courts examining the duties of these entities have concluded that they fall within the ambit of Section 327."). Certainly, CROs and financial advisors fall squarely within the parameter for "professionals" described in *In re American Tissue, Inc.*, 331 B.R. 169, 173 (Bankr. D. Del. 2005).[3]

---

[3] "In making the determination of whether an entity or person is a "professional," courts have stated that the following factors should be considered: 1) whether the employee controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization, 2) whether the employee is involved in negotiating the terms of a Plan of Reorganization; 3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; 4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate; 5) the extent of the employee's involvement in the administration of the debtor's estate; and 6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term." *Id.*

10.    Furthermore, the Jay Alix Protocol requires, *inter alia*, that a CRO be retained by an <u>independent board of directors</u>. (Art. I, Sec. D) Ramaekers and TRG were handpicked by McClarty (or more likely, by Hofmeister), not by the Debtors' Boards of Managers. Thus, even if this Court were to consider using the Jay Alix Protocol as a rationale for employing a CRO and/or financial advisors under section 363(b), it would not apply here, as the most basic counterweight to any loosening of the requirement of disinterestedness -- approval by an independent board -- is lacking. The Jay Alix Protocol also does not permit a firm to act both as CRO and as financial advisors, and maintains in effect all section 327 disclosure requirements.[4]

11.    Finally, McClarty asks that the CRO's and Huron's employment be terminated in order to avoid duplication of the work to be performed by Ramaekers and TRG. He offers no statutory or other legal support for the existence of a right of a party other than the Debtors to terminate the employment of the Debtors' professionals on such a basis.

12.    The motivation for the Motion is clear. Although Hofmeister has now resigned from all positions of authority over the Debtors, he is fearful that the Debtors' independent CRO and independent managers will attempt to resolve these cases through compromise with the Debtors' largest creditors on a basis that he believes is not in his interests.

---

[4] While the Jay Alix Protocol may be used to overcome minor conflicts, it does not write out the disinterestedness requirement altogether. *Cf. In re Mirant Corp.*, 354 B.R. 113, 127 n. 29 (Bankr. N.D. Tex. 2006), ("The UST and other parties acquiesced in this method of retention (which was intended to avoid application to AP of the disinterestedness test of 11 U.S.C. § 101(14) due to AP's personnel serving as officers of Debtors). The court is not satisfied that use of Code § 363 is appropriate for such a purpose, but need not here reach that issue."). Ramaekers and TRG do not have a technical conflict based on the structure of their engagement, but a glaring lack of disinterestedness based on their retention by an equity holder with interests that are potentially directly adverse to the interests of the estates.

DOCS_LA:273682.2 73864/001

Thus he directed McClarty to attempt to insinuate a new management team into the cases that he believes will be more responsive to equity. Unfortunately for Hofmeister, there is absolutely no legal basis for this maneuver.

**WHEREFORE**, for all of the foregoing reasons, the Debtors request that the Motion be denied, and that the Court grant such other relief as it deems appropriate.

Dated: December 4, 2013                PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
_____
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          tcairns@pszjlaw.com
          crobinson@pszjlaw.com

Counsel to the Debtors and Debtors in Possession