IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, *et al.*,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related Docket No. 1436, 1437, 1439,** |
| | ) | **1444, 1446, 1449** |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TPOP, LLC,[2] | ) | Case No. 13-11831 (BLS) |
| | ) | |
| Debtor. | ) | **Related Docket No. 454, 455, 457,** |
| | ) | **461, 463, 466** |

**DEBTORS' OBJECTION TO: (I) EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF REVSTONE INDUSTRIES, LLC, TO CONTINUE OR ADJOURN THE CURRENTLY SCHEDULED MAY 6, 2014 HEARING AND RELATED DEPOSITIONS;
AND (II) EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO COMPEL DISCOVERY RESPONSES FROM <u>REVSTONE INDUSTRIES, LLC</u>**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this Objection to: (a) the Emergency Motion of the Official Committee of Unsecured Creditors of Revstone Industries, LLC to Continue or Adjourn the Currently Scheduled May 6, 2014 Hearing and Related Depositions With Respect to the Motion of Revstone Industries, LLC and TPOP, LLC For Order Purusant to 11 U.S.C. Sections 105 and 363 and Bankruptcy Rule 9019 Authorizing and Approving Settlement Agreement with Pension

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for the Debtors is 230 N. Limestone St., Ste. 100, Lexington, KY 40507.

[2] The Debtor in this chapter 11 case is TPOP, LLC f/k/a Metavation, LLC and the last four digits of the Debtor's federal tax identification numbers is 5884. The location of the Debtor's headquarters is 230 N. Limestone St., Ste. 100, Lexington, KY 40507.

Benefit Guaranty Corporation (the "Emergency Motion"); and (b) the Emergency Motion of the Official Committee of Unsecured Creditors to Compel Discovery Responses from Revstone Industries, LLC (the "Motion to Compel, together with the Emergency Motion, the "Motions").[3] In response to the Motions, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  On January 28, 2014, during a telephonic hearing before this Court, counsel for BFG stated: "I tend to agree on the fact that **settlement negotiations are documents that should not be produced.**" *See* Transcript of Hearing dated January 28, 2014, at pg. 16 (emphasis added) (excerpt attached hereto as Exhibit A). Now the Committee and BFG seek the production of the Debtors settlement communications with the Pension Benefit Guaranty Corporation ("PBGC") related to the settlement agreement between the Debtors and the PBGC (the "PBGC Settlement"). The Motions should be denied for the following reasons:

    a.  First, the thousands of emails that constitute the settlement communications between the Debtors and PBGC are not discoverable under Federal Rule of Evidence 408, which provides that evidence of conduct or statements made in compromise negotiations is inadmissible.

    b.  Second, once the Debtors and the PBGC reached agreement regarding the terms of the settlement on January 30, 2014, the Debtors and the PBGC shared a common interest with respect to obtaining approval of the settlement. Pursuant to that common interest the information the parties shared in furtherance of obtaining approval of the settlement is

---

[3] Boston Finance Group, LLC ("BFG") filed joinders to the Motions.

protected from discovery by the common interest privilege. See *In re Tribune Co.*, 2011 WL 386827, *4 (Bankr. D.Del. Feb. 3, 2011) (holding that debtors, committee and lenders settlement communications related to approval of plan of reorganization were protected from discovery by the common interest doctrine).

    c. Third, even if the Debtors-PBGC communications were discoverable – which they are not – documents that embody the give and take that was part and parcel of the long and protracted Debtors-PBGC negotiation have no relevance to whether the settlement that is embodied in the Settlement Agreement before the Court is "fair and equitable" to the Debtors' estates and falls above "the lowest point in the range of reasonable litigation possibilities." Those questions are answered only by reference to the terms of the PBGC Settlement itself, not by reference to the parties' extensive negotiations. Terms and discussions regarding terms that did not make it into the final Settlement Agreement simply do not matter.

    d. Fourth, the privilege logs prepared by the Debtors and the PBGC are legally sufficient. Both privilege logs are "category privilege logs." The Debtors and the PBGC each produced a category privilege log that identifies the individuals that sent and received the email communications that were withheld from production, the time period the messages were sent and the basis of the privilege. Courts have held that similar category privilege logs are acceptable where, as here, preparation of a detailed privilege log for thousands of documents would serve no useful purpose. *See, e.g.*, *United States of America v. Magnesium Corp. of America*, 2006 WL 1699608, *5 (D. Utah June 14, 2006) (no detailed privilege log was necessary where the documents to be logged would be in the thousands, in part because it "seem[ed] clear that most of the documents [generated since the commencement of the litigation]

3

. . .would be protected from disclosure by the work product privilege, the attorney-client privilege, or the joint defense privilege").

2. Finally, BFG and the Committee have already filed the following pleadings opposing the Settlement: (a) BFG's forty-four page Preliminary Objection filed on February 18, 2014 [Docket No. 1334]; (b) the Committee's twenty-eight page Joinder and Supplemental Objection to the BFG Preliminary Objection [Docket No. 1376]; (c) BFG's twenty-five page First Supplement to the Preliminary Objection [Docket No. 1377] and (d) the Committee's twenty-six page Objection to the Debtors' motion to approve the PBGC Settlement [Docket No. 1378]. The Committee and BFG's voluminous pleadings opposing the 9019 Motion demonstrate that: (a) their primary grounds for opposing the settlement are legal in nature; and/or (b) they already know the facts that they view as necessary to prepare oppositions to the 9019 Motion. As a result, any claim by the Committee and/or BFG that somehow they have been prejudiced by lack of access to privileged settlement communications is specious.

## THE MOTIONS SHOULD BE DENIED

A. **The Debtors' Settlement Communications Are Not Discoverable**

   **(1)   The Settlement Communications Are Not Discoverable Under Federal Rule Of Evidence 408**

3. The settlement communications between the Debtors and PBGC are protected from disclosure by Federal Rule of Evidence 408. Federal Rule of Evidence 408 provides, in relevant part, that evidence of "conduct or a statement made during compromise negotiations about the claim" is inadmissible. *See* Fed. R. Evid. 408; *see also Young v. Vernon Allsteel Press Co.*, 539 F. Supp. 193, 196 (E.D. Pa. 1982) ("It is well established that statements made for purposes of settlement negotiations are inadmissible."). Both the United States Supreme Court

4

and the Third Circuit Court of Appeals recognized long ago that allowing a party's settlement offer to be used against it in litigation would chill settlement negotiations and undermine the federal policy favoring settlement of disputes. *See West v. Smith*, 101 U.S. 263, 273 (1879) (noting that "[o]ffers of compromise to pay a sum of money by the way of compromise, as a general rule, are not admissible against the party making the offer"); *Outlook Hotel Co. v. St. John*, 287 F. 115, 117 (3d Cir. 1923) ("If every offer to buy peace could be used as evidence against him who presents it, then the policy of the law which favors the settlement of disputes would never be attained."). Rule 408, enacted in 1975, codified and indeed expanded the common-law rule in many jurisdictions and excludes from evidence "all statements made in the course of settlement negotiations." *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988).

4. The Debtors' settlement communications with the PBGC fall under the protection of Fed. R. Evid. 408. The settlement communications were made in furtherance of resolving the PBGC's claims against the estates. The Committee's and BFG's demands for production of the settlement communications should be denied.

**(2)  The Settlement Communications Are Protected By The Common-Interest Privilege**

5. The "common-interest privilege" permits parties with different attorneys to communicate with each other for the purpose of coordinating legal activities. *In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). To invoke this protection, the parties must establish each of the following elements: (i) the communication was made by separate parties in the course of a matter of common interest, (ii) the communication was designed to further that effort, and (iii) the privilege was not otherwise waived. *In re Leslie Controls, Inc.*, 437 B.R. 493,

496-98 (Bankr. D. Del. 2010); *In re Tribune Company*, 2011 WL 386827 *4 (Bankr. D. Del. Feb. 3, 2011).

6. The common-interest privilege is not (i) limited to communications among co-defendants to on-going litigation or (ii) dependent upon pending litigation. Instead, the doctrine applies whenever the communication is made to facilitate the rendition of legal services to each of the clients involved in the conference. *Tribune*, at *4. A complete unity of interests is not necessary. In fact, the parties whose communications are protected from discovery by the common interest privilege can be adverse in substantial respects, and even anticipate that they might sue each other in the future. *Id*.

7. This Court's decision in *Tribune* is instructive. In *Tribune*, the court held that the debtors, committee, and lenders had a common interest of approving their settlement and confirming the plan, thereby resolving the legal disputes between and among them. *Tribune*, *4. The fact that the debtors and committee had a common interest to maximize distributions and the lenders had a divergent interest to pay as little as possible was not relevant. *Id*.

8. Once the PBGC and the Debtors reached agreement regarding the terms of the their settlement, they shared a common interest in having that settlement be approved. Like in *Tribune*, the communications between the Debtors and PBGC were made to further the parties' respective interest in settlement. Similarly, that the Debtors may seek to resolve the PBGC claims for as small amount as possible and the PBGC seeks to obtain the highest amount possible, is not relevant. Both have a common interest in approving their settlement that will not only resolve the PBGC claims but provide for distributions to the estate's creditors through a

plan. Accordingly, the settlement communications between the Debtors and PBGC are protected by the common-interest privilege and are not required to be produced to the Committee or BFG.

9. In sum, the communications between the Debtors and the PBGC that occurred on January 30, 2014 and afterwards, are protected from discovery by the common interest privilege.[4]

### B. The Settlement Communications Are Not Relevant

10. The settlement communications are not relevant to determination of whether the PBGC Settlement should be approved. The settlement communications, which number in the thousands, reflect the normal ebb and flow of two parties attempting to reach a settlement.

11. The details of the Debtors' protracted negotiations with the PBGC as reflected in the settlement communications are not pertinent to whether the PBGC Settlement meets the applicable legal standard for approval of settlements pursuant to Bankruptcy Rule 9019. The answer as to whether the Settlement Agreement is "fair and equitable" and meets the "lowest point in the range of litigation possibilities" is dependent on the terms of the Settlement Agreement. Thousands of email communications between the Debtors and PBGC will not answer the legal question at issue and are not needed.

### C. The Debtors' Privilege Logs Are Legally Sufficient

12. The Committee argues that it is entitled to another form of privilege log because:

> "[t]he Committee cannot evaluate the validity of the argument of both Revstone and the PBGC that the common interest privilege

---

[4] The Committee does not appear to dispute that the Debtors' communications with counsel are protected by the attorney-client privilege and are not discoverable. The Debtors reserve all rights to respond to any attempts by the Committee or BFG to compel the production of attorney-client communications.

7

> protects substantially all of the otherwise responsive documents and information that the PBGC and Revstone have, unless and until both the PBGC and Revstone have complied with Federal Rule 26(b)(5)."

Emergency Motion at ¶ 13.

13. The category privilege log that the Debtors provided is acceptable. The privilege log identifies who exchanged the email communications, the time period in which the communications took place and the privilege bases asserted to withhold the communications from production. Courts have held that category logs are appropriate if a document-by-document listing would be unduly burdensome and a more detailed description would be of no material benefit in assessing whether the privilege claim is well grounded. *See S.E.C. v. Thrasher*, 1996 WL 125661, *1-3 (S.D.N.Y. Mar. 20, 1996) (although typically a privilege log must identify each withheld document and provide basic information, "courts retain some discretion to permit less detailed disclosure in appropriate cases"); *See also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (permitting party to submit category log in order to "lessen the burden posed by reviewing and recording a large quantity of protected communications"); *Fifty–Six Hope Road Music, Ltd. v. Mayah Collections, Inc.,* 2007 WL 1726558 at *8 (D.Nev. June 11, 2007) (permitting category privilege log where emails numbered in hundreds or thousands and "requiring Plaintiffs to provide a privilege log for each privileged email communication would be unduly burdensome and not serve the legitimate purposes of discovery under Fed. R. Civ. Pro. 26."); *In re Imperial Corp. of America,* 174 F.R.D. 475, 478–79 (S.D.Cal.1997) (authorizing category privilege log where document-by-document log would have been "unreasonable and unduly burdensome" given that there were thousands if not

millions of documents that were subject to attorney-client privilege or work-product protection). Additionally, as noted above, courts have found that category privilege logs are more than adequate where substantial amounts of documents would be protected from disclosure by the work-product privilege, the attorney-client privilege, or the common-interest privilege. *Magnesium Corp.*, 2006 WL 1699608, *5.

14. In this matter, a document-by-document privilege log would not only be unduly burdensome but would not add any material benefit. The Debtors' privilege log demonstrates that the documents that were withheld from the production are protected from discovery by Fed. R. Evid. 408, the common-interest privilege and/or the attorney-client privilege. The production of a document-by-document privilege log would require the review of over ten thousand emails. The process to review and catalog that amount of emails would take several weeks and result in significant costs to the estate. More detailed disclosure is unnecessary, would be unduly burdensome and is a complete waste of estate resources.

### D. Denying Production Of The Privileged Settlement Communications Does Not Prejudice The Committee Or BFG

15. Combined the Committee and BFG submitted pleadings in opposition to the PBGC Settlement that exceed one-hundred pages. The Committee and BFG's pleadings demonstrate that their grounds for opposition are rooted in legal arguments and that they both possessed the sufficient factual details necessary to support the legal positions they asserted. A fishing expedition into thousands of privileged email communications will serve no useful purpose other than to delay the resolution of the PBGC Settlement.

16. In sum, the fundamental legal question at issue is whether the Debtors' proposed settlement with the PBGC is "fair and equitable" to the Debtors' estates and falls far above "the lowest point in the range of reasonable litigation possibilities." The Debtors will demonstrate at the PBGC Settlement hearing that the answer to both of these questions is in the affirmative.

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that this Court enter an order denying the Motions.

Dated: April 20, 2014

PACHULSKI STANG ZIEHL & JONES LLP

/s/Colin R. Robinson
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 190063)
David M. Bertenthal (CA Bar No. 167624)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
         akornfeld@pszjlaw.com
         dbertenthal@pszjlaw.com
         crobinson@pszjlaw.com

Counsel to Debtors and Debtors in Possession

# EXHIBIT A

DOCS_DE:192784.4 73864-001

```
 1                     UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF DELAWARE
 2

 3   IN RE:                           )   Case No. 12-13262(BLS)
                                      )   Chapter 11
 4   REVSTONE INDUSTRIES, LLC,        )
      et al.                          )
 5                                    )   Courtroom No. 1
             Debtors.                 )   824 Market Street
 6                                    )   Wilmington, Delaware 19801
                                      )
 7                                    )   January 28, 2014
                                      )   01:00 P.M.
 8
                              TRANSCRIPT OF HEARING
 9                   BEFORE HONORABLE BRENDAN L. SHANNON
                        UNITED STATES BANKRUPTCY JUDGE
10
     TELEPHONIC APPEARANCES:
11
     For the Debtors:        Pachulski Stang Ziehl & Jones, LLP
12                           By:  ALAN KORNFELD, ESQ.
                             919 North Market Street
13                           Wilmington, Delaware 19801
                             (302) 652-4100
14

15   For BFG:                DLA PIPER, LLP
                             By:  GREGG GALARDI, ESQ.
16                           1251 Avenue of the Americas
                             New York, New York 19801
17                           (212) 335-4640

18
     ECRO:                   DANA MOORE
19
     Transcription Service:  Reliable
20                           1007 N. Orange Street
                             Wilmington, Delaware 19801
21                           Telephone:  (302) 654-8080
                             E-Mail: gmatthews@reliable-co.com
22

23   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
24

25
```

1  would request that that is going to be the issue that the
2  parties submit letter briefs to the Court about the propriety
3  of that type of discovery.  And certainly if Mr. Galardi is
4  arguing that that type of discovery is appropriate, I am sure
5  he will address the chilling factor that that type of
6  discovery would have on any parties ability in any case to
7  freely negotiate a consensual settlement.
8              MR. GALARDI:  Your Honor, I think we are fine.  I
9  think the normal rules and this will lead nicely into the
10 next issue, is if you are going to produce discovery and you
11 are going to withhold documents, regardless of whether it is
12 because of privilege or because of settlement conversations,
13 it is quite simple that the federal rules require that you
14 provide a privilege lock or you put forth the other basis for
15 why you are withholding the documents.
16             I have been in Mr. Kornfeld's position before.  I
17 tend to agree on the fact that settlement negotiations are
18 documents that should not be produced.  I would only request
19 that he identify those documents because that does not, you
20 know, what he may judge as the settlement documents or
21 background documents or what he may judge as privileged
22 documents are not, necessarily, what the Court would judge or
23 what we would judge, and we have the right to challenge it.
24 But I think that an obligation in the first instance is to
25 produce those documents he is willing to produce, and those

1  We stand in recess.
2          MR. KORNFELD:  Thank you, Your Honor.
3     (Court Adjourned).

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Mary Zajaczkowski                              February 5, 2014
Mary Zajaczkowski, CET**D-531                           Date