## Exhibit A

## Bidding Procedures

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES
## FOR THE SALE OF THE SHARES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale (the "Sale") of all of the Shares (the "Shares") of Revstone Wallaceburg Canada Inc., incorporated under the *Canada Business Corporations Act* ("RWCI"), owned by Revstone Industries, LLC, a Delaware limited liability company ("Revstone" or the "Debtor"), which is a debtor and debtor-in-possession in the above-captioned chapter 11 case pending in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under Case No. 12-13262. Pursuant to the Bidding Procedures Order (defined below), the Bankruptcy Court has approved Zynik Capital Corporation ("Zynik") as the stalking horse bidder (the "Stalking Horse Bidder") for the Shares, as set forth more fully in that certain Share Purchase Agreement dated March 13, 2014 (the "Agreement").[2]

On April 21, 2014, the Debtor filed *Revstone Industries, LLC's Motion For Order: (A) Approving Bid Procedures For The Sale Of Equity Interest In Revstone Wallaceburg Canada Inc ; (B) Scheduling An Auction And Hearing To Consider The Sale And Approve The Form And Manner Of Notice Related Thereto; (C) Approving Payment Of A Break-Up Fee;And (D) Granting Related Relief* [Docket No. --] (the "Bidding Procedures Motion"), and *Revstone Industries, LLC's Motion for Order (A) Approving Share Purchase Agreement and Authorizing the Sale of Assets Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f) and 363(m); and (C) Granting Related Relief* [Docket No. --] (the "Sale Motion"). On April ___, 2014, the Bankruptcy Court entered an order approving the Bidding Procedures set forth herein (the "Bidding Procedures Order"). The Bidding Procedures Order also set __:__ _.m. (prevailing Eastern Time) on _____ __, 2014

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each of the Debtors is 2250 Thunderstick Dr., Suite 1203, Lexington, KY 40505.

[2] The Agreement, without schedules and exhibits, is attached as Exhibit A to the Sale Motion (as defined herein). All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

as the date the Bankruptcy Court will conduct a sale hearing (the "Sale Hearing"). At the Sale Hearing, the Debtor shall seek entry of an order from the Bankruptcy Court authorizing and approving the sale of the Shares to the Stalking Horse Bidder or another Qualified Bidder(s) (as defined below) that the Debtor determines to have made the highest or best offer for the Shares (the "Successful Bidder").

**Assets to Be Sold**

The Debtor is offering for sale One-Hundred Percent (100%) of the Shares. A bidder's offer should propose a contemplated transaction involving the acquisition of all or substantially all of the Shares. Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement all of the Debtor's right, title and interest in and to the Shares subject thereto shall be sold free and clear of any Liens, Claims, interests and encumbrances (other than Permitted Liens and/or except as otherwise provided in the Agreement) (collectively, the "Liens, Claims and Encumbrances") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Shares with the same validity and priority as such Liens, Claims and Encumbrances applied against the Shares.

**The Bidding Process**

The Debtor and its advisors, in consultation with the Official Committee of Unsecured Creditors appointed in the case of Revstone Industries, LLC (the "Revstone Committee") and the Pension Benefit Guaranty Corporation ("PBGC"), shall (i) determine whether any person is a Qualified Bidder, (ii) coordinate the efforts of Qualified Bidders in conducting their due diligence investigations, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase the Shares (collectively, the "Bidding Process").

**Participation Requirements**

Any person that may be interested in all or portions of the Shares (a "Potential Bidder") must deliver to the Debtor, at the addresses specified below (unless a particular document has been previously delivered or the Debtor waives a particular requirement), not later than five (5) business days before the Bid Deadline (defined below):

i. An executed confidentiality agreement ("Confidentiality Agreement") in form and substance acceptable to the Debtor;

ii. identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction;

iii. written disclosure of any connections or agreements with the Debtor, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder, and/or any officer, director, manager or direct or indirect equity security holder of the Debtor;

iv. a letter of indication stating that such bidder is prepared to enter into a legally binding share purchase agreement or similar agreement for the acquisition of such

        Shares on terms and conditions no less favorable in the aggregate to the Debtor than the terms and conditions contained in the Agreement, indicating (a) that such bidder will post the required Bid Deposit (defined below), and (b) total cash consideration expected to be provided to the Debtor at Closing; and

v.      sufficient information, as may be requested by the Debtor in its discretion, to allow the Debtor to determine that the bidder has the operational and financial capability to close a sale of the Shares (which may include, but is not limited to, a bank account statement showing the ability of a Potential Bidder to pay cash for the Shares, current audited financial statements (or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Debtor) of the Potential Bidder or those entities that will guarantee in full the payment obligations of the Potential Bidder, proof of any debt or equity funding commitments that are needed to close the contemplated transaction, and/or operational information).

As provided below, only Potential Bidders who satisfy the foregoing requirements may participate in the due diligence process.

    A "Qualified Bidder" is a Potential Bidder that delivers the documents and information described in subparagraphs (i) – (v) above and who satisfies the following additional requirement, as to be determined by the Debtor in its discretion, subject to consultation with the Revstone Committee and PBGC:

- The Debtor has determined the Potential Bidder is reasonably likely (based on, among other things, operational and financial information submitted by the Potential Bidder, the Potential Bidder's operational and financial capability to close a sale of the Shares, experience, and other non-monetary considerations, such as ability to obtain any required regulatory approvals, including, if applicable, under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR")), to submit a bona fide offer, and be able to consummate a sale if selected as the Successful Bidder (as defined below).

As set forth further below, only a Qualified Bidder may submit a Qualified Bid, and the Qualified Bidder's bid must meet certain requirements as described below to constitute a Qualified Bid. So long as it is not in breach of the Agreement, the Stalking Horse Bidder shall be deemed a Qualified Bidder.

    Not later than three (3) business days after a Potential Bidder delivers all of the materials and information that may be required by the Debtor in preceding subparagraphs (i) through (v) above, the Debtor shall determine, subject to consultation with the Revstone Committee and PBGC, and shall notify the Potential Bidder upon such determination, if such Potential Bidder is a Qualified Bidder.

**Due Diligence**

    Only Qualified Bidders are eligible to receive due diligence access and/or certain non-public information. If the Debtor determines that a Potential Bidder no longer constitutes a

DOCS_DE:191369.3 73864/001

Qualified Bidder, then such Potential Bidder's access to due diligence or other non-public information shall terminate. The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders or Qualified Bidders in connection with the sale of the Shares.

Notwithstanding the foregoing, neither the Debtor nor its representatives shall be obligated to furnish information of any kind to any person that the Debtor determines not to be a Qualified Bidder. The Debtor will afford any Qualified Bidder the time and opportunity to conduct reasonable due diligence; provided, however, that the Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.

**Bid Deadline**

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid and the Required Bid Materials (defined below) to (i) the Debtor, Revstone Industries, LLC, c/o Huron Consulting Group, 900 Wilshire Drive, Troy, Michigan 48084 (Attn: John C. DiDonato, jdidonato@huronconsultinggroup.com & Laura Marcero, lmarcero@huronconsultinggroup.com); (ii) counsel to the Debtor, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, facsimile: 302-652-4400 (Attn: Laura Davis Jones & David Bertenthal, ljones@pszjlaw.com & dbertenthal@pszjlaw.com); and (iii) investment banker to the Debtor, Stout Risius Ross Advisors, LLC, 4000 Town Center, 20th Floor, Southfield, Michigan 48075 (Attn: Michael D. Benson, mbenson@srr.com), not later than 4:00 p.m. (prevailing Eastern time) on the date that is two business days before the Auction or three calendar days before the Auction, whichever is later (the "Bid Deadline").

**Bid Requirements**

All bids, other than the Stalking Horse Bid, shall be in writing and include the following terms, conditions, information and documents (the "Required Bid Materials"):

    i.    A Qualified Bid must have similar or better terms and conditions as the Stalking Horse Bid (as determined by the Debtor in its business judgment), with higher or better consideration by having an aggregate value (as determined by the Debtor in its discretion) of not less than (x) the sum of (i) $14,100,000.00, and (ii) $500,000 (which amount is the Break-Up Fee (defined below) plus an initial bid increment of $150,000.00, followed by additional bid increments of $50,000;[3] provided, however, that each Qualified Bid must provide for the payment of the Break-Up Fee in cash upon the closing of the applicable transaction; provided, however, in its discretion, the Debtor may aggregate bids and consider other value provided to the Debtor's estate in connection with a bid to determine the highest or otherwise best bid (the "Minimum Bid Amount"). A Qualified Bid should propose a

---

[3] Currency denominations are in Canadian dollars and all amounts reflected in the Agreement and all exhibits and schedules thereto refer to Canadian dollars unless otherwise specified.

4

contemplated transaction involving all or substantially of the Shares, provided, however, that the Debtor, in its discretion, may consider proposals for less than substantially all the Shares; provided further that the Debtor will evaluate all bids, in its sole discretion, to determine whether such bid or combination of bids maximizes the value of the Debtor's estate as a whole.

ii. A letter stating and agreeing that the Qualified Bidder's offer is irrevocable until the earlier of (i) the second business day after the Shares on which the Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales or (ii) up to and including the close of business on the date that is three (3) Business Days after the Termination Date, and that such offer will serve as a Back-Up Bid if so selected by the Debtor.

iii. An executed copy of a share purchase agreement and a redline of a Qualified Bidder's proposed share purchase agreement reflecting variations from the Agreement (the "Marked Agreement"). All Qualified Bids must provide (a) a commitment to close within the same (or shorter) time period set forth in the Agreement; (b) a representation that the Qualified Bidder will, if applicable, (1) make all necessary filings under the HSR or any other applicable similar regulatory filing, and pay the fees associated with such filings and (2) submit all necessary filings under HSR (or similar regulatory filing) within the same (or shorter) time period, if any, set forth in the Agreement.

iv. A cash deposit in the amount of $500,000, in the form of a wire transfer, certified check or such other form acceptable to the Debtor (the "Bid Deposit"), which shall be placed in an escrow account or other segregated account acceptable to the Debtor, the "Escrow Account").

v. A representation of the Qualified Bidder and written evidence acceptable to the Debtor that the bidder has the financial wherewithal to consummate the proposed transaction, provided that if a bid is based partly or completely on financing, written evidence of the commitment for financing and the appropriate contact information for such financing source must be provided unless waived by the Debtor.

vi. The Qualified Bid shall not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment, and shall include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Shares prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Shares in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Shares, the financial performance of the Shares, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Marked Agreement.

5

vii.  The Qualified Bid shall not contain any due diligence, financing, or regulatory contingencies of any kind (other than a condition that any applicable waiting period under HSR (if applicable) shall have expired or been terminated), though the bid may be subject to the satisfaction of specific conditions in all material respects at Closing.

viii. The Qualified Bid shall fully disclose the identity of each entity that will be bidding for the Shares or otherwise participating in connection with such bid, and the complete terms of any such participation.

ix.   The Qualified Bid shall state that the offering party consents to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated transaction documents.

x.    The Qualified Bid shall provide that the Qualified Bidder shall be bound as a "Back-Up Bidder" as provided below.

xi.   The Qualified Bid shall include evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted purchase agreement of the bidder.

A Qualified Bid received from a Qualified Bidder that includes all of the Required Bid Materials to the satisfaction of the Debtor in its discretion, subject to consultation with the Revstone Committee and PBGC and is received by the Bid Deadline is a "Qualified Bid." The Debtor reserves the right to determine the value of any Qualified Bid, and which Qualified Bid (or combination of Qualified Bids) constitutes the highest or best offer (subject to Bankruptcy Court approval). The Debtor shall notify the Stalking Horse Bidder within twenty-four (24) hours after the Bid Deadline if one or more Qualified Bids are received and the identity of the Qualified Bidders making any such Qualified Bids, and shall provide the Stalking Horse Bidder with a copy of any Marked Agreement constituting a Qualified Bid.

**Back-up Bidder**

If an Alternative Transaction is selected by the Debtor and approved by the Bankruptcy Court, the Agreement or any higher or otherwise better bid by the Stalking Horse Bidder at the Auction that is accepted by the Debtor as the highest or otherwise best bid that is not the Successful Bid ("Superseding Agreement") shall not terminate by reason of the Debtor's pursuit of an Alternative Transaction, or if another Qualified Bidder submitted another higher or otherwise better bid at the Auction, such Qualified Bidder's agreement shall not terminate, and the Agreement, the Superseding Agreement or such Qualified Bidder's agreement, as the case may be, shall constitute a "back-up bid" (with respect to the Stalking Horse Bidder, to the extent provided in the Agreement or Superseding Agreement) which shall remain open for acceptance by the Debtor up to and including the close of business on the date that is three (3) Business Days after the Termination Date (the "Back-Up Period").

## No Qualified Bids

If no Qualified Bid is submitted by the Bid Deadline, no Qualified Bid is deemed by the Debtor as a higher or otherwise better bid than the Stalking Horse Bid or all Qualified Bids that have been submitted have been withdrawn by the Bid Deadline or prior to the Auction Date (defined below), then the Debtor may, in its discretion, cancel the Auction and accept the Stalking Horse Bid (in which case, the Successful Bid shall be the Stalking Horse Bid, and the Successful Bidder shall be the Stalking Horse Bidder).

## The Auction

If a Qualified Bid other than that submitted by the Stalking Horse Bidder has been received by the Debtor by the Bid Deadline, the Debtor may conduct an auction (the "Auction") of the Shares. The Debtor shall provide the Qualified Bidders that submitted Qualified Bids with a copy of the share purchase agreement(s) relating to the other Qualified Bids at least twenty-four (24) hours prior to the Auction. The Auction shall be conducted at the offices of Pachulski, Stang, Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899 (the "Auction Site") at 10:00 a.m. (prevailing Eastern time) on _____, 2014 (the "Auction Date"), or such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction as set forth above.

The Auction shall be governed by the following procedures:

i. All Qualified Bids made at the Auction shall be made and received on an open basis, and all material terms of each subsequent bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the opening bid, all subsequent bids, and the Successful Bid.

ii. The Stalking Horse Bidder and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative.

iii. Representatives of (1) the Debtor, (2) the Revstone Committee (3) the Stalking Horse Bidder, (4) other Qualified Bidders, (5) the PBGC and (6) customers of the Debtor shall be entitled to be present at the Auction. Creditors of the Debtor may attend the Auction pursuant to Local Rule 6004(c)(ii)(C). Creditors wishing to attend the Auction should provide written notice of intent to attend to the Debtor no later than 12:00 p.m. on the day preceding the Auction.

iv. Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Pursuant to Local Rule 6004-1 (c)(ii)(B), the Stalking Horse Bidder and each Qualified Bidder participating at the auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

v.  Bidding shall commence at the amount of the Qualified Bid deemed by the Debtor to be the highest or otherwise best bid submitted by the Qualified Bidders prior to the Auction, which Qualified Bid shall be provided to all Qualified Bidders prior to the Auction.

vi.  Subsequent bids shall be in increments as determined by the Debtor, but not less than $50,000.00, and such incremental consideration for each overbid must be in cash or other value acceptable to the Debtor in its discretion (the "Minimum Bid Increment"). The Debtor will take into account the Break-Up Fee (defined below) in each round of bidding by the Stalking Horse Bidder.

vii.  The Auction shall continue until the Debtor determines, subject to consultation with the Revstone Committee and the PBGC, and subject to Bankruptcy Court approval, that the Debtor has received (a) the highest or otherwise best Qualified Bid or Bids for the Shares (as determined by the Debtor) from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at the Auction (the "Successful Bid(s)"), and (b) the next highest or otherwise best offer or offers for the Shares (as determined by the Debtor) (the "Back-Up Bid").

The Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith. After closing of the Auction, but prior to the Sale Hearing, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) were made. Bids made after the close of the Auction shall not be considered by the Debtor. At the Sale Hearing, the Debtor shall present the Successful Bid(s) and Back-Up Bid(s) to the Bankruptcy Court for approval.

**Break-Up Fee Reimbursement**

To compensate the Stalking Horse Bidder (i) for performing the substantial due diligence and incurring the expenses necessary and (ii) entering into the Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process and (iii) to provide an incentive to participate in a competitive process, subject to the terms of the Agreement, the Debtor has agreed to pay the Stalking Horse Bidder a break-up fee in the amount of $500,000 under Sections 6.9(c) of the Agreement (the "Break-Up Fee"). The Debtor will take into account the Break-Up Fee in each round of bidding.

The Break-Up Fee was a material inducement for, and a condition of, the Stalking Horse Bidder's entry into the Agreement. The Break-Up Fee shall be payable as set forth herein, in the Bidding Procedures Order, and in the Agreement.

**Acceptance of Qualified Bids**

The Debtor shall sell the Shares to any Successful Bidder (or the party(ies) who submitted the Back-Up Bid(s) ("Back-Up Bidder(s)") should such bidder become the Successful Bidder as described below) only upon the approval of such bidder's bid by the Bankruptcy Court

8

after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

**Sale Hearing**

A Sale Hearing is scheduled for _____ .m. (prevailing Eastern Time) on _____, 2014, in the Bankruptcy Court, in each case unless otherwise continued by the Debtor in accordance with these Bidding Procedures. Objections to the Sale must be filed on or before _____, 2014. Following the approval of the sale of all or substantially all of the Shares to any Successful Bidder at the Sale Hearing, if the Successful Bidder fails to consummate an approved sale within the time period set forth in the applicable asset purchase agreement, the Debtor shall be authorized, but not required, to deem the Back-Up Bid, as identified at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized to consummate the sale with the Back-Up Bidder submitting such bid without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until three (3) business days after the Termination Date (as defined in the Agreement).

**Return of Bid Deposits**

The Bid Deposits shall not be subject to the claims, liens, security interests, or encumbrances of Debtor's creditors. The Bid Deposits of Qualified Bidders (others than the Stalking Horse Bidder) shall be disbursed from the Escrow Account only as follows: (i) if the Qualified Bidder becomes the Successful Bidder, its Bid Deposit will be released to the Debtor or applied as provided under any asset purchase agreement between the Debtor and such Successful Bidder, and (ii) if such Qualified Bidder is not the Successful Bidder at the Auction, then its Bid Deposit shall treated as set forth below. The Bid Deposit of the Stalking Horse Bidder shall be disbursed as provided for under the Agreement.

Other than the Bid Deposits of the Successful Bidder(s) and the Back-Up Bidder(s), Bid Deposits of all other Qualified Bidders shall be returned as soon as practicable after entry of the order approving the sale of the Shares. In addition to any other remedies available to the Debtor, the Debtor may retain the Bid Deposit of any Qualified Bidder who breaches or fails to perform any of its obligations pursuant to these Bidding Procedures or its Qualified Bid. The treatment of the Stalking Horse Bidder's Bid Deposit by the Debtor shall be in accordance with the terms of the Agreement governing such Bid Deposit.

**"As Is, Where Is"**

The sale of the Shares shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder.

**Free and Clear of Liens**

To the extent provided in the Agreement or another Successful Bidder's asset purchase agreement and subject to the approval of the Bankruptcy Court, all of the Debtor's right, title and interest in and to the Shares subject thereto shall be sold free and clear of Liens, Claims and

9

Encumbrances in accordance with Bankruptcy Code § 363(f), with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Shares.

**Modifications**

Notwithstanding anything to the contrary provided herein, the Debtor shall have the right to amend the rules set forth herein for the bidding/auction process or impose such other terms and conditions for the bidding/auction process which the Debtor determines, in its business judgment, will better promote the goals of the bidding/auction process and the discharge of the Debtor's fiduciary duties and which are not inconsistent with any Bankruptcy Court order, including the Bidding Procedures Order; provided, however, that nothing in these Bidding Procedures should be construed to permit the Debtor to (i) accept any Qualified Bid that does not, subject to the terms hereof, equal or exceed the Minimum Bid Amount, or (ii) impose any terms and conditions upon the Stalking Horse Bidder that are contradictory to or in breach of the terms of the Agreement.

**Miscellaneous**

The Auction and Bidding Procedures are solely for the benefit of the Debtor's estate and the Stalking Horse Bidder, and nothing contained in the Bidding Procedures Order or Bidding Procedures shall create any rights in any other person or bidder (including without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Bidding Procedures Order.

Except as provided in the Bidding Procedures Orders and Bidding Procedures, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order.