**EXHIBIT 1**

**Term Sheet**

## Global Resolution Term Sheet

1.      BFG Spara GUC recovery: BFG claim at Spara deemed satisfied in full once $7.3 M paid; $7.3 M paid upon Court approval of the settlement.

2.      BFG Plan settlement payment. $500 K as an allowed administrative expense at Spara, $700k as an allowed administrative expense at Revstone, payable in full upon the effective date of the Plan.

3.      BFG Revstone Unsecured Claim: BFG shall have an allowed unsecured claim at Revstone Industries in the amount of $8.5 million (the "Allowed BFG Revstone Claim"). BFG agrees to waive any recovery from (i) the Revstone Unsecured Guarantee Reserve and (ii) the Revstone GUC's portion of a $2M carveout from litigation proceeds to be released by the PBGC with respect to the PBGC's rights in such litigation proceeds (the "PBGC Carve Out Proceeds") on account of the Allowed BFG Revstone Claim but shall be entitled to receive distributions made to unsecured creditors of Revstone in excess of the Revstone Unsecured Guarantee Reserve and the GUC's portion of the PBGC Carve Out Proceeds in the percentage as agreed between the Committee and BFG.

4.      Litigation Trust: Parties to agree upon appropriate budgeting/fee arrangements with respect to post effective date prosecution of litigation.

5.      Participation in Litigation Trust; Debtors, UCC and PBGC to agree in good faith upon allocation of litigation proceeds between Revstone Industries and SPARA.

6.      TPOP, Spara and other non-Revstone Industries Debtors: Existing management by CRO team and CRO stays in place post effective date.

7.      Pending Litigation; All litigation with respect to the Debtors, the UCC, BFG and the PBGC ceases/all objections are dropped including with respect to Revstone plan confirmation.

8.      Releases and exculpation; releases and exculpation consistent with Debtors' filed plan at Revstone.

9.      This Term Sheet: (a) incorporates the attached consensual resolution terms among the Debtors, PBGC and the UCC; (b) is subject to final approval by the PBGC; and (c) is subject to final documentation materially consist with this term sheet and otherwise reasonably acceptable to the parties and Court approval.

10.     BFG and the UCC shall support the Debtors' efforts to confirm a Plan (or Plans) consistent with this agreement.

11.     To the extent BFG acquires any other claims in any of the Debtors' bankruptcy cases, the terms hereof shall apply in all respects with regard to such claim(s), if any.

12.     If not executed by PBGC by 4p.m. Eastern on Monday, April 28, 2014, this Term Sheet shall have no further force and effect.

_____
Debtors Keystone Industries, et al.
by John D Donato, Chief Restructuring Officer
By: _____
Its: _CHIEF RESTRUCTURING OFFICER_

_____
Boston Financial Group
By: **JONATHAN GOLDEN**
Its **VICE PRESIDENT**

_____
Official Committee of Unsecured
Creditors
By: _MARK L. DESGROSSEILLIERS_
Its: _COUNSEL FOR THE COMMITTEE_

_____
Pension Benefit Guaranty Corp.
By: _SANFORD RICH_
Its: _CNR_

**Consensual Resolution Terms to Global Resolution Term Sheet**
**May 1, 2014**

| | |
|---|---|
| **PBGC Allowed Claim and Recovery** | • Allowed Claim of $95 million.<br>• Target recovery of $77 million with minimum of $75 M.  First $2.0 million of litigation proceeds which otherwise would have been distributed to the PBGC, instead payable to Revstone estate, $1.5 million apportioned to administrative creditors and $500,000 to non-BFG general unsecured creditors. See attached modified Funding Schedule, which is incorporated herein.  All other litigation proceeds available to the estate will be split 75% to the administrative claimants and 25% to general unsecured creditors.  The general unsecureds' allocation to be agreed upon between BFG and the Committee. |
| **Baseline Revstone GUC Recovery** | • See attached modified Funding Schedule. |
| **Downside Protection (relative to estate funding baseline)** | • $3.0 million PBGC carve out from non-debtors' sale proceeds ($3.0 million equates to 12.4% on an estimated claims pool of $24.1 million) that provides up-front recovery to Revstone non-BFG general unsecured creditors pursuant to the Plan (the "Revstone Unsecured Guarantee Reserve").  TPOP would file a stand-alone plan.<br>• To the extent permissible under applicable law, the carve out will only be made available under the Plan to the class of Revstone general unsecured creditors provided the class votes in favor of the plan.<br>• Downside allocated 75% to Revstone general unsecured creditors / 25% to administrative claimants subject to the $3.0 million PBGC carve out of proceeds for non-BFG general unsecured creditors.<br>• General unsecured creditors would not recover additional dollars beyond the $3.0 million carve out until the administrative creditors recover $14.845 million.  See attached modified Funding Schedule. $3.0 million carve out shall be made available for distribution upon the effective date of the Plan. |
| **Upside Potential From Non-Litigation Assets (relative to estate funding baseline)** | • First $2.0 million of upside from non-litigation assets allocated 75% to administrative claimants / 25% to general unsecured creditors.<br>• Additional upside allocated 50% to administrative claimants / 50% to general unsecured creditors. |
| **Debtors' Professionals Revstone Recovery** | • 15% permanent reduction in Revstone fees (Huron and PSZJ).<br>• Any deduction in fees through objection to fee application and/or fee examiner review would be credited against the agreed upon 15% reduction, as well as the expected fees to be deferred. |

| **Committee Professionals Revstone Recovery** | • Consensual substantial contribution claim for Committee counsel (WCSR) against TPOP in the amount of [$200,000].<br>• 15% permanent reduction in claims of WCSR.<br>• Any deduction in fees through objection to fee application and/or fee examiner review would be credited against the agreed upon 15% reduction, as well as the expected fees to be deferred. |
|---|---|
| **Intercompany Resolution** | • In connection with the effective date of the Plan, the Debtors and the Committee will agree upon an appropriate resolution of intercompany issues, including allocation of related proceeds. |
| **Plan Post-Effective Date Governance** | • One manager appointed by Committee.  The Committee designee may not be BFG.<br>• One manager appointed by PBGC.<br>• Third manager who is mutually agreed upon by the Committee and the PBGC jointly.  If no such agreement can be reached, the Committee and the PBGC will each provide the name of their choice as the third manager and the CRO will select the third manager from these two names.<br>• Except as noted below, manager-level decisions will be made by majority vote of the managers. |
| **Plan Post-Effective Date Management** | • John DiDonato to remain the Revstone CRO.<br>• The CRO can be replaced for cause, by unanimous vote of the post-effective board of managers.  The parties will agree upon an appropriate allocation of responsibilities among professionals following the effective date of the Plan.  The Committee will have responsibility for addressing Revstone general unsecured creditor claims.<br>• Plan post-effective date governance only applies to Revstone.  All non Revstone debtors are expected to retain existing management following the effective date of the Plan. |
| **Plan Post-Effective Date Reserve Funding** | • $750,000 for Revstone, subject to a budget with any excess remaining to be contributed to the Revstone litigation trust. |
| **Litigation Trust Governance** | • One trust committee member appointed by Committee.  The Committee designee may be BFG.<br>• One trust committee member appointed by PBGC.<br>• Third trust committee member who is mutually agreed upon by the Committee and the PBGC jointly.  If no such agreement can be reached, the Committee and the PBGC will each provide two names for their choice as the third committee member and the Bankruptcy Court will select the third manager from these four names.<br>• Trust committee decisions will be made by majority vote of the trust committee members. |

| Litigation Trust Funding | • Single litigation trust to be established. Total litigation reserve funding of $1.0 million. See attached modified Funding Schedule. |
|---|---|
| Litigation Trust Causes of Action | • Allocation of proceeds of causes of action between Revstone and Spara estates will be addressed by consensual agreement amongst the Debtors and the Committee in connection with the effective date of the Plan. |
| PBGC Participation in Litigation Trust | • After first $2.0 million of litigation proceeds otherwise payable to PBGC as addressed in "PBGC Allowed Claim and Recovery" above, litigation proceeds to be split 50% to the estates / 50% to PBGC, up to the full recovery on PBGC's allowed claim, except for claims held by the Pension Plans.<br>• Subject to PBGC Agreement:<br>PBGC will bring all causes of action held by the Pension Plan, even if another party "finds" the claim. Any recovery realized from claims held by the Pension Plans (i.e., claims arising under ERISA) will go to PBGC as statutory trustee for the Pension Plans. In that event, an equal amount of subsequent recoveries on non-Pension Plan claims will go to the estate, up to the amount of recovery realized by PBGC on the Pension Plan claim. Thereafter, recoveries on non-Pension Plan claims will be split 50/50 as described in the first point above.<br>• PBGC will respond to Committee request regarding questioned assets recoveries. |
| Releases and Exculpation | • Outstanding Plan issues (e.g., releases and exculpation for professionals and independent managers) to be consistent with the plan previously filed by Revstone. |
| TPOP and Other Non-Revstone Debtors | • See response above to "Plan Post-Effective Date Management" limited to TPOP and Spara. |
| Pending Litigation | • All litigation ceases/all objections are dropped in connection with the Debtors' bankruptcy proceedings.<br>• To the extent there are fee objections remaining from third parties, funds for payment of such fees would be appropriately reserved. |
| Plan Process | • The Parties will move forward expeditiously to obtain Bankruptcy Court approval of the PBGC settlement, as modified hereby and by the global resolution term sheet, and to execute a plan confirmation process.<br>• The Parties will use best efforts to obtain confirmation of the plan by end of July 2014, subject to Court's availability and timing of approval of the settlement. |