## Exhibits E-1 to E-4

**Forms of Amended and Restated Limited Liability Company Agreements**

# Exhibit E-1

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY
# AGREEMENT
# OF
# REVSTONE INDUSTRIES, LLC

This Amended and Restated Limited Liability Company Agreement (this "***Agreement***") of Revstone Industries, LLC (the "***Company***"), is entered into by the signatories hereto (the "***Parties***"), effective as of the __<sup>th</sup> day of _____, 2015 (the "***Effective Date***").

## RECITALS

The Parties hereby acknowledge that:

A.      Each of the Company, Spara, LLC ("***Spara***"), US Tool & Engineering, LLC ("***US Tool***"), Greenwood Forgings, LLC ("***Greenwood***", and together with the Company, Spara, and US Tool, the "***Debtors***") is a Delaware limited liability company and each has been the subject of voluntary chapter 11 proceedings under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as now in effect or hereafter amended, the "***Bankruptcy Code***") before the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

B.      On December 10, 2014, the Debtors filed that certain Debtors' Joint Chapter 11 Plan of Reorganization (as the same may be modified, amended or supplemented from time to time, the "***Plan***"). The Plan provided for a reorganization of the Company and the other Debtors.

C.      On _____, 2015, the Plan was confirmed by order of the Bankruptcy Court (as the same may be modified, amended or supplemented from time to time, the "***Confirmation Order***"). The effective date of the Plan occurred on _____, 2015.

D.      Pursuant to the Plan, (a) all assets of the Company as a Debtor in the Bankruptcy Case, other than any Revstone/Spara Litigation Trust Assets (as such term is defined in the Plan), are deemed to have re-vested in the Company; (b) all right, title and interest of the Company, as a Debtor in the Bankruptcy Case, in or to any Revstone/Spara Litigation Trust Assets have been transferred to the Revstone/Spara Litigation Trust (as such term is defined in the Plan); (c) all rights of Ascalon Enterprises, LLC, a Delaware limited liability company ("***Ascalon***"), as a member of the Company are deemed to be suspended; (d) the Chief Restructuring Officer under the Plan is deemed to be admitted as, and authorized to exercise all of the rights and powers of, the sole member of the Company; (e) the Company is deemed to be governed by a Board of Managers, the members of which have been specified in the Plan Supplement; (f) the power and authority of the Board of Managers is deemed to have been delegated to the Chief Restructuring Officer under the Plan, who is authorized to manage the business and affairs of the Company subject to reporting to and oversight by the Board of Managers; and (g) the Company's limited liability company agreement is required to be replaced and amended by a Reorganized Debtor Operating Agreement for the Company consistent with the terms and conditions set forth in the Plan.

E.      In compliance with the Confirmation Order, the Parties now wish to implement the Plan by adopting this Agreement as the Reorganized Debtor Operating Agreement for the Company.

## AGREEMENT

The Member hereby amends and restates the Company's existing limited liability company agreement in its entirety to read in full as follows:

## ARTICLE I

## ORGANIZATION

1.1     **Formation**.  The Company was organized as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (as amended from time to time, the "***Delaware LLC Act***") by the filing on December 12, 2008 of a Certificate of Formation with the Secretary of State of the State of Delaware (the "***Certificate of Formation***").

1.2     **Name**.  The name of the Company is "Revstone Industries, LLC."  The Company may also conduct its business under one or more assumed names.

1.3     **Purposes**.  Subject in all respects to the terms of the Confirmation Order and the Plan, the purposes for which the Company was formed are to engage in any activity or business within the purposes for which a limited liability company may be formed under the law of the State of Delaware, including, without limitation, the following activities:

(a)     Taking any actions that are necessary or appropriate to cause the Plan to be effectuated as of the Effective Date or that are contemplated by the Plan to be taken on or about the Effective Date, including the payment of any Allowed Administrative Expenses and Priority Non-Tax Claims;

(b)     Preserving, maintaining, repairing, using, transferring, selling, disposing of and liquidating all assets of the Company, including any proceeds thereof, and any and all other assets, rights or privileges of the Company;

(c)     Filing objections to Administrative Expenses, Priority Non-Tax Claims, and Miscellaneous Secured Claims in the Bankruptcy Case, reconciling Administrative Expenses, Priority Non-Tax Claims, and Miscellaneous Secured Claims in the Bankruptcy Case, and exercising rights of set off with respect thereto;

(d)     With respect to any Subsidiary of the Company, exercising all rights and powers under the Plan and under applicable law as the sole member or shareholder of such Subsidiary, including the right to amend the articles or certificate of incorporation, bylaws, articles or certificate of formation, and limited liability company or operating agreement thereof from time to time and to appoint one or more directors or managers thereof;

(e)     Demanding, accepting, and receiving from any Subsidiary any cash or property received by such Subsidiary, gross or net of any expenses of such Subsidiary;

(f)     Opening, making deposits to and withdrawals from, and closing any accounts contemplated by the Plan;

(g)     Establishing any cash reserves contemplated by the Plan and paying all expenses of the Company incurred following the Effective Date;

(h)     Employing, compensating, and paying or reimbursing expenses of the Person serving as the CRO and other Persons or Professionals from any funds of the Company;

(i)     Filing suit or any appropriate motion for relief in the Bankruptcy Court or in any other court of competent jurisdiction on behalf of in or in the name of the Company to resolve any disagreement, conflict, dispute, or ambiguity under the Plan or in connection with the exercise of its rights, powers, or duties;

(j)     Protecting and enforcing the rights to the assets of the Company by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(k)     Causing the Company to make, as provided for in, or contemplated by, the Plan, distributions of Net Distributable Assets;

(l)     Retaining and pay third parties and Professionals pursuant to Section 5.5 of this Agreement;

(m)     Establishing the amount and causing the Company to maintain appropriate insurance coverage;

(n)     Enforcing and exercising all rights and powers of the Company, and performing all duties and obligations, under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(o)     Investing any moneys held as part of the assets of the Company in accordance with the terms of Section 5.6 hereof;

(p)     Electing at any time to abandon any assets of the Company of inconsequential value to the Company;

(q)     Dissolving any Subsidiary of the Company in accordance with the Plan; and

(r)     Closing the Bankruptcy Case and terminating this Agreement.

**1.4**     **Non-Supervision by Bankruptcy Court**.  Subject to the requirements of, and except as otherwise provided in, the Confirmation Order and the Plan, the Company shall be permitted to conduct its business and the activities set forth in Section 1.3, take any and all actions reasonably necessary to implement the Plan, and otherwise administer its affairs without supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

**1.5**     **Duration**.    The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the CRO or (b) the entry of a decree of judicial dissolution  under  section 18-802 of the Delaware LLC Act.

**1.6**     **Offices and Resident Agent**.  The principal office of the Company shall be located at Revstone Industries, LLC, et al., c/o Huron Consulting Services LLC, 900 Wilshire Drive, Suite 270, Troy, MI 48084, or at such place within or without Michigan as the CRO from time to time determines.  The registered office and the resident agent of the Company shall be as designated in the Certificate of Formation or any amendment thereof.

**1.7**     **Limited Liability Company Agreement**.  This Agreement shall be the "limited liability company agreement" of the Company within the meaning of the Delaware LLC Act and the "Reorganized Debtor Operating Agreement" of the Company within the meaning of the Plan.  In the event that any provisions of this Agreement are inconsistent with provisions of the Reorganized Debtor Operating Agreement the Company contemplated by the Plan, the provisions of the Plan shall control.

### ARTICLE II
### BOOKS, RECORDS AND ACCOUNTING

**2.1**     **Books and Records**.  The CRO shall maintain all of the books and records of the Company referenced in section 18-305 of the Delaware LLC Act, to the extent applicable to the Company; provided, however, that the CRO shall not be responsible for the accuracy of any books or records of the Company relating to any period before the date of this Agreement.  Such books and records may be kept at the Company's principal office or such other place(s) as the CRO may designate.

**2.2**     **Accounting**.  The particular accounting methods and principles to be followed by the Company shall be chosen by the CRO.

**2.3**     **Fiscal Year**.  The fiscal year of the Company shall begin on the 1st day of January in each year.  For purposes of Tax reporting, the Company shall file its Tax returns on a calendar year basis.

### ARTICLE III
### MEMBERSHIP, CAPITAL CONTRIBUTIONS AND DISTRIBUTIONS

**3.1**     **Suspension of Membership Interest Rights of Ascalon Enterprises**. By operation of the Plan and Confirmation Order and effective as of the Effective Date, all

Membership Interest Rights of Ascalon Enterprises, LLC have been suspended and shall remain suspended at all times during the Plan Period. At all times during the Plan Period, all Membership Interest Rights shall be held and exercised exclusively by the Chief Restructuring Officer under the Plan, who shall be deemed to be the sole Member of the Company.

**3.2** **Current Members**. All Membership Interest of the Company outstanding as of the Effective Date at all times during the Plan Period shall be deemed to be held by the Chief Restructuring Officer under the Plan, whose address and deemed Membership Interest are set forth on <u>Exhibit A</u>. At all times during the Plan Period, the Chief Restructuring Officer shall be deemed to be the sole Member of the Company. The Company does not have, and shall not be authorized to issue, any non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code.

**3.3** **Additional Members**. No new Membership Interest may be created or issued to any Person except with the express prior written approval of the CRO.

**3.4** **Additional Capital Contributions**. The Member shall not be required to make any additional capital contribution to the Company.

**3.5** **Distributions**. No distributions of the Company shall be made to the Member in respect of the Membership Interest. Net Distributable Assets of the Company shall be distributed only to such Persons, only at such times, and only in such amounts as is provided for under the Plan. The Member shall have a contingent interest in all cash (if any) remaining after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full by the Company (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.

**3.6** **Liability**. Except to the extent provided in the Delaware LLC Act, the Member shall not have any liability for the obligations or liabilities of the Company.

### ARTICLE IV
### BOARD OF MANAGERS

**4.1** **Powers and Responsibilities**. The Company shall have a Board of Managers. Except as otherwise expressly provided in this Agreement, at all times during the Plan Period, all right, power, authority, and responsibility of the Board to manage and direct the business and affairs of the Company shall, to the maximum extent permissible under applicable law, be and remain unconditionally and irrevocably delegated exclusively to, and shall be exercised exclusively by or at the direction of, the CRO. Notwithstanding the foregoing, at all times during the Plan Period the Board shall retain and exercise oversight powers over the CRO and the CRO's management, and direction of the management, of the business and affairs of the Company. Such oversight powers shall include the power to interview, hire, determine the compensation of, appoint, cause the Company to make payments to, remove and terminate the CRO, and to take any and all actions that are related or incidental to the accomplishment of such actions, in each case in accordance with the Plan and this Agreement. Additionally, at all times during the Plan Period, the Board or its designees and representatives (which may include current general bankruptcy counsel to the Creditors' Committee) shall retain the power and

responsibility of handling the reconciliation and payment of Allowed Administrative Expenses, Priority Non-Tax Claims, and Miscellaneous Secured Claims against the Company.

**4.2** **Number and Qualifications**. At all times during the Plan Period, the Board shall consist of three (3) individuals, including the Creditors' Committee Manager, the PBGC Manager, and the Third Party Manager; *provided, however*, notwithstanding any other provision of this Agreement at no time during the Plan Period may any George Hofmeister Party, or BFG or any Affiliate of BFG, be appointed, serve or act as a Manager of the Company or occupy any seat on the Board. Managers need not be Members of the Company or residents of the State of Delaware.

**4.3** **Term**. Each Manager shall hold office and serve until (a) expiration of the Plan Period; (b) dissolution of the Company in accordance with the terms of this Agreement and the Plan; or (c) the death, disability, removal or resignation of such Manager, whichever first occurs.

**4.4** **Resignation**. A Manager may resign by giving written notice to the Company signed by such Manager. A Manager's resignation is effective upon its receipt by the Company or a later time set forth in the notice of resignation.

**4.5** **Removal**. During the Plan Period, (a) the Creditors' Committee Manager shall be subject to removal from time to time, with or without cause, only by the members of the Creditors Committee, as it existed at the time of confirmation of the Plan; (b) the PBGC Manager shall be subject to removal from time to time, with or without cause, only by the PBGC; and (c) the Third Party Manager shall be subject to removal from time to time, with or without cause, only by the mutual agreement of the members of the Creditors Committee, as it existed at the time of confirmation of the Plan, and the PBGC. The Company may continue to regard any Person as a Manager and member of the Board unless and until written notice removing such Person from such capacity is delivered to the Company, which notice is signed by the Person(s) entitled under this Agreement to effect such removal.

**4.6** **Vacancies**. During the Plan Period, (a) any vacancy in the position of Creditors' Committee Manager may be filled only by the members of the Creditors Committee, as it existed at the time of confirmation of the Plan; (b) any vacancy in the position of PBGC Manager may be filled only by the PBGC; and (c) any vacancy in the position of Third Party Manager may be filled only by the mutual agreement of the members of the Creditors Committee, as it existed at the time of confirmation of the Plan, and the PBGC. The Company may continue to regard any vacant seat on the Board as unfilled unless and until written notice filling such vacancy is delivered to the Company, which notice is signed by the Person(s) entitled under this Agreement to fill such vacancy.

**4.7** **Place of Meetings**. The Board may hold meetings that are called by the Board at any location determined by the Board and shall hold meetings called by the CRO at any location determined by the CRO.

**4.8** **Notice of Meetings**. Any meeting of the Board may be held without notice if the place, date and time thereof has been determined by resolution of the Board in

advance. Meetings of the Board may be called by or at the request of the CRO or any Manager on 24 hours' notice by mail or by any other means provided in Section 10.1. The notice must specify the place, date and time of the meeting, but need not specify the business to be transacted at, nor the purpose of, the meeting.

       **4.9**    **Quorum**. At all meetings of the Board, a majority of the members of the Board shall constitute a quorum for the transaction of business. If a quorum is not present at any Board meeting, a majority of the Managers present at the meeting may adjourn the meeting to another time and place without notice other than announcement at the meeting. Any business may be transacted at the adjourned meeting which might have been transacted at the original meeting, provided a quorum is present.

       **4.10**    **Voting**. The vote of a majority of the members of the Board constitutes the action of the Board, except that any removal of the CRO shall require the vote of all of the members of the Board.

       **4.11**    **Telephonic Participation**. Members of the Board may participate in a Board meeting by means of conference telephone or similar communications equipment through which all persons participating in the meeting can communicate with each other. Participation in a meeting pursuant to this Section 4.12 constitutes presence in person at such meeting.

       **4.12**    **Action by Written Consent**. Any action required or permitted to be taken under authorization voted at a Board meeting may be taken without a meeting if, before or after the action, members of the Board then in office consent to the action in writing holding not less than the minimum number of votes that would be necessary to authorize or take action at a meeting at which all Managers of the Board were present and voted. Such consents shall be filed with the minutes of the proceedings of the Board and shall have the same effect as a vote of the Board for all purposes.

       **4.13**    **Compensation**. Members of the Board shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Board, all of which shall be paid by the Company and not by any other Debtors. In addition, members of the Board shall be entitled to compensation, also payable by the Company and not by any other Debtors, for time spent on the Board in an amount up to $400 per hour (not to exceed $15,000 per year per member), but shall not be reimbursed for any fees or expenses of any professional retained by an individual member of the Board. No such payment shall preclude any Manager from serving the Company in any other capacity and receiving compensation for such service.

       **4.14**    **Presumption of Assent**. A Manager who is present at a meeting of the Board at which action on any matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the Secretary of the meeting before the adjournment thereof or shall forward such dissent by registered mail to the Secretary immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Manager who voted in favor of such action.

**4.15    Limitation of Authority.**  The powers and authority of the Managers shall be exercisable only collectively as members of the Board, and no single Manager, acting alone, shall have the power or authority to execute any instrument on behalf or incur any liability or obligation in the name of the Company, or hold himself or herself out as an agent of the Company, or take any other action binding upon on the Company or its assets.  The powers and responsibilities of the Board shall be limited to those set forth in Section 4.1 of this Agreement. Notwithstanding anything in this Agreement to the contrary, except as otherwise expressly provided herein neither the Board nor any Manager shall have the power or authority to manage or direct the management of the business and affairs of the Company, which shall be managed exclusively by or under the direction of the CRO.

**ARTICLE V**
**MANAGEMENT BY CHIEF RESTRUCTURING OFFICER**

**5.1    Management of Company**.  Subject to the oversight powers of the Board, the business and affairs of the Company shall be managed under the direction of the CRO, who shall report to the Board.

**5.2    Authority of CRO.**

(a)    The CRO shall have the rights, powers, and privileges provided for or granted under this Agreement, those provided for or granted under the Confirmation Order and the Plan to the Chief Restructuring Officer of the Company as a Reorganized Debtor, and those provided for or granted under the Delaware LLC Act to the sole and managing member of a Delaware limited liability company.  Except as otherwise provided by this Agreement or as otherwise required by law, the CRO shall have full, complete and exclusive authority, power, and discretion, subject to the oversight powers of the Board, to (a) manage and control the business, property and affairs of the Company, (b) make all decisions regarding those matters, (c) perform any and all other acts or activities customary or incident to the management of the Company's business, properties and affairs, and (d) take any and all actions that are consistent with the terms of the Plan, and any powers reasonably incidental thereto, that the CRO, in the CRO's discretion, deems necessary or appropriate to fulfill the purposes of the Company set forth in Section 1.3 hereof.

(b)    The CRO shall be an Officer of the Company with title of "Chief Restructuring Officer."  As an Officer, the CRO shall have the general duties of supervision and management of the day to day operations of the Company usually vested in the chief restructuring officer of a Delaware limited liability company under a plan of liquidation, subject to the oversight powers of the Board.  Such duties shall include, subject to the terms of the Plan, (a) maximizing the value of the Company's assets, (b) reconciling Administrative Expenses, Priority Non-Tax Claims, and Miscellaneous Secured Claims Claims, (c) making distributions to Creditors in accordance with the Plan, (d) satisfying post-Effective Date obligations of the Company, and (e) taking other actions in order to implement the Plan.  Without limitation to the foregoing, as Chief Restructuring Officer of the Company the CRO shall be responsible for, and have the authority to do, the following (in each case in his sole discretion and subject to the Plan):

(i)    appoint such Officers, agents and employees of the Company as he shall deem necessary;

(ii)    prescribe the powers, duties and compensation of Officers, agents and employees of the Company, and to delegate authority to them, with such Persons to hold office at the discretion and subject to the supervision of the CRO;

(iii)    manage, withdraw, and administer funds of the Company;

(iv)    on behalf and in the name of the Company, engage, retain, pay and reimbursement of the expenses of Professionals (including former general bankruptcy counsel to the Company) from any funds of the Company;

(v)    on behalf of and in the name of the Company, market and negotiate, enter into and perform agreements for the sale, transfer, disposition, or liquidation or other disposition of assets of the Company, whether or not all or substantially all of the Company properties and assets), and approve the terms and conditions of any such transaction;

(vi)    authorize the investment of any moneys held as part of the assets of the Company, including the net proceeds of any sale, transfer, disposition, or liquidation of any assets of the Company, in accordance with the terms of Section 4.6;

(vii)    establish, determine the amounts of, and utilize all reserves for expenses of the Company and pay all expenses of the Company or relating to the assets of the Company;

(viii)    preside at Member meetings, if any;

(ix)    authorize and cause to be made any distributions of Net Distributable Assets of the Company;

(x)    open, maintain, and close checking, savings, and/or other depository accounts on behalf of or in the name of the Company at banks or other financial institutions;

(xi)    purchase and maintain insurance coverage for the Company and any Covered Persons, in such amounts that the CRO shall, in its sole discretion, determine, against any liability that may be asserted against or expenses that may be incurred by that Person in connection with the activities of the Company;

(xii)    make all Tax withholdings, file Tax information returns, and make Tax elections by and on behalf of the Company and file Tax returns for the Company;

(xiii)   address general business issues involving the Company;

(xiv)   authorize the enforcement and exercise by the Company of any of its rights and powers under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(xv)   elect at any time to abandon any assets of the Company of inconsequential value to the Company;

(xvi)   authorize and approve, on behalf of or in the name of the Company, (i) any merger or dissolution of the Company or any Subsidiary of the Company; (ii) any conversion of the Company or any Subsidiary of the Company into another business entity; (iii) the adoption of any plan or agreement providing for an exchange of any equity interests held by the Company; and (iv) any amendment of the Certificate of Formation or this Agreement;

(xvii)   close the Bankruptcy Case and terminate this Agreement;

(xviii)   exercise, on behalf of and in the name of the Company, any other rights, powers or privileges provided or granted to the Company under the Bankruptcy Code, this Agreement, or the Plan; and

(xix)   execute, deliver, acknowledge, file, post, or publish any documents or instruments, and take any other action, that the CRO deems necessary and proper to carry out the provisions of the Plan or the purpose and intent of this Agreement.

(c)   Notwithstanding Section 5.3(b) hereof, during the Plan Period the duties of the CRO shall be focused on the CRO Core Tasks, and during Plan Period shall not include reconciliation or payment of Allowed General Unsecured Claims against the Company, which shall be the responsibility of the Board or its designees and representatives, which may include current general bankruptcy counsel to the Creditors' Committee.

**5.3**   **Signing Authority**.

(a)   The CRO, acting alone, shall have the power and authority to sign, execute, deliver, acknowledge, and/or file, on behalf and in the name of the Company, all deeds, mortgages, bonds, stock certificates, contracts, leases, reports and all other documents or instruments he may deem necessary or proper to be executed in the course of the Company's regular business and he may authorize any Assistant Chief Restructuring Officer or other Officer or agent of the Company to sign, execute, deliver, acknowledge, and/or file such documents or instruments in his place and stead. Any such documents or instruments so signed, executed, delivered, acknowledged, and/or filed, of any type or nature, shall be binding on the Company.

(b)	The CRO or any Officer may certify and authenticate records of the Company to third parties and any third party dealing with the Company, the CRO, the Member, or any Officer may rely upon a certificate signed by the CRO or any Officer as to (i) the identity of the CRO, the Member or any Officer; (ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the CRO, the Member or any Officer or are in any other manner germane to the affairs of the Company; (iii) the Persons who or entities that are authorized to execute and deliver any instrument or document of or on behalf of the Company; or (iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company, the Member, the CRO or any Officer.

5.4	**Non-Supervision by CRO**.  Subject to the oversight powers of the Board and any restrictions expressly imposed by the Plan and the Confirmation Order, the CRO may perform his tasks, and take such other action on behalf or in the name of the Company, without supervision or approval by the Bankruptcy Court or notice to Creditors, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.5	**Professionals**.  The CRO may, but shall not be required to, consult with and retain Professionals deemed by the CRO to have qualifications necessary to assist in the proper administration of the Company.  Except as otherwise provided in the Plan, the CRO may pay such salaries, fees, and expenses of such Persons as he sees fit out of the assets of the Company in the ordinary course of business without further order of any court, including, but not limited to, the Bankruptcy Court.  The same Professional may be retained to represent Affiliates of the Company and/or the Revstone/Spara Litigation Trust (as such term is defined in the Plan) and/or the Official Committee of Unsecured Creditors.

5.6	**Investment and Safekeeping of Assets of the Company**.  The assets of the Company and all moneys and other assets received by the CRO from the assets of the Company or proceeds thereof after payment of expenses shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Creditors, but need not be segregated from other assets of the Company, unless, and then only to the extent, required by law or the Plan.  The CRO shall be under no obligation to produce or obtain income or interest on any assets of the Company.  Any interest or income received shall be used or distributed as provided herein or in the Plan.  Except as otherwise provided by the Plan, the powers of the CRO to invest any moneys held by the CRO, other than those powers reasonably necessary to maintain the value of the assets of the Company and to further the Company's liquidating purpose, shall be limited to powers to invest in temporary, liquid investments such as in demand and time deposits (e.g., short-term certificates of deposit) in banks or other savings institutions or in United States treasury bills or notes.

5.7	**Limitation on Authority**.  Notwithstanding any other provision of this Agreement, the CRO shall not be authorized to, and shall not, (a) during the Plan Period, appoint any George Hofmeister Party or allow any George Hofmeister Party to act as the CRO or other Officer or employee of the Company; or (b) take any action that is inconsistent with the Plan. The CRO shall not take any action that is inconsistent with a direction issued by the Board.

**5.8** **Required Effort**.  The CRO shall not be required to devote all or any specific amount of its time, effort or managerial resources to the affairs of the Company.  The CRO shall be obligated to devote only such time, effort and resources as he deems appropriate for the operation of the Company.

**5.9** **Competing Activities**.  The CRO and any other Officers may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  The CRO and the other Officers shall not be obligated to present any investment opportunity to the Company.  The CRO and the other Officers shall have the right to hold any investment opportunity for their own account or to recommend such opportunity to Persons other than the Company.  The Parties acknowledge that the CRO and the other Officers own, operate, manage or provide services in respect of other businesses, including businesses that may compete with the Company or for the Member's time.  Each Party hereby waives any and all rights and claims which he or she may otherwise have against the CRO and the other Officers as a result of any of such activities.

**5.10** **Transactions between the Company and the Member**.  Notwithstanding that it may constitute a conflict of interest, the CRO and its Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from Persons capable of similarly performing them.

**5.11** **Third Party Recourse**.  Every Person contracting or otherwise dealing with or having any relationship with the Company shall have recourse only to the assets of the Company for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and neither the CRO nor any Officer shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a CRO or Officer.

**5.12** **Limitation on Liability.**

(a) Neither the CRO, nor any Manager, nor the Member, irrespective of the capacity in which such Person  acts, shall be liable to the Company for any Loss incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted in good faith by the CRO, such Manager, or the Member, as the case may be, and no other Covered Person shall be liable to the Company, the CRO, any Manager or the Member for any Loss incurred by reason of any act or omission (whether or not constituting negligence) performed or omitted by the Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on the Covered Person by this Agreement, except that a Covered Person shall be liable for any Loss incurred by reason of the Covered Person's gross negligence and a Covered Person (including the Member) shall be liable for any Loss incurred by reason of the Covered Person's willful misconduct or fraud.

(b)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within the professional or expert competence of that Covered Person, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions might properly be paid.  The foregoing provision shall in no way be deemed to reduce the limitation on liability of the CRO, any Manager or the Member as provided in Section 5.12(a).

(c)     The limitation on liability set forth in Section 5.12(a) hereof shall apply (i) in any context, whether or not in connection with litigation in which any Covered Person is a party and whether or not in connection with the enforcement of this Agreement (including the exculpation provisions hereof), (ii) to any act or omission in the performance or non-performance by any Covered Person of this Agreement, the Plan, or the Confirmation Order, and (iii) to any Loss in any way caused by, relating to, based upon, or arising out of (directly or indirectly) an act or omission by a Covered Person; *provided, however*, that the foregoing limitation on liability shall not apply to any Losses suffered or incurred by any Creditor, the CRO, any Manager or the Member that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or fraud of such Covered Person.

(d)     None of the Covered Persons shall be presumed to be responsible for the acts or omissions of any other Covered Person.  In no event shall any Covered Person be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, irrespective of whether the Covered Person  has been informed of the likelihood of such loss or damages and regardless of the form of action.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity (including such fiduciary duties), are agreed by the Parties to eliminate and replace any other such duties and liabilities (including such fiduciary duties) of the Covered Person, to the maximum extent permissible by law.  To the extent that, at law or in equity, a Covered Person has duties and liabilities (including fiduciary duties) relating to the Company, such Covered Person acting under this Agreement shall not be liable to the Company or the Member for actions or omissions in good faith reliance on the provisions hereof.

(f)     All provisions of this Section shall apply to any former Covered Person for all actions or omissions taken while such Person was a Covered Person to the same extent as if that Person were still a Covered Person.

### 5.13    **Indemnification**.

(a)     To the fullest extent permitted by applicable law, (a) the CRO, the Managers and the Member (irrespective of the capacity in which such Person acts) shall be entitled to indemnification from the Company for any Loss incurred by the CRO or the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted and (b) any other Covered Person shall be entitled to indemnification from the Company for any Loss incurred by that Covered Person by reason of any act or omission (whether or not constituting negligence) performed or omitted by that Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on that Covered Person by this Agreement, except that no Covered Person (other than the CRO, the Managers and the Member, irrespective of the capacity in which such Person acts) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence of such Covered Person and no Covered Person (including the Member) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the willful misconduct of such Covered Person with respect to those acts or omissions; but any indemnity under this Section 5.13 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have any personal liability on account thereof.  This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the CRO or any Manager, or the dissolution of the Company, and shall inure to the benefit of the Indemnified Parties' respective successor, heirs, and assigns.

(b)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred  by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company before the final disposition of the claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay that amount if it shall be determined that the Covered Person is not entitled to be indemnified under this Section.

## ARTICLE VI
## TERM, REMOVAL AND COMPENSATION OF CRO

**6.1     Term of Service**.  Effective on the Effective Date, John C. DiDonato shall be the CRO.  The CRO shall serve until (a) the completion of all the CRO's duties, responsibilities and obligations under this Agreement and the Plan; (b) dissolution of the Company in accordance with the terms of this Agreement and the Plan; or (c) the CRO's resignation, death, incapacity, or removal.

**6.2     Removal of CRO**.  No Person serving as CRO may be removed as CRO except (a) for cause and upon a vote of all of the members of the Board of Managers or (b) by reason of an act or omission by such Person constituting gross negligence or willful misconduct and upon order of the Bankruptcy Court.  No such removal shall have any effect on the CRO's continuing role as Chief Restructuring Officer of any other Debtor.

6.3     **Resignation of CRO**.  The CRO may resign at any time.  In the event of a resignation, the resigning CRO shall render to the Member a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that CRO.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered;  and (iii) the date the accounting described in the preceding sentence is transmitted to the Member by first class mail, postage pre-paid.  In the event of any resignation or termination of the CRO, the Person serving as CRO shall be entitled to any compensation and payment or reimbursement of expenses due, in accordance with Section 6.7 hereof.

6.4     **Appointment of Successor CRO**.  Upon the resignation, death, incapacity, or removal of a CRO, the Bankruptcy Court may appoint the Successor CRO.  Any Successor CRO so appointed, as a condition of such appointment, shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the Successor CRO and all of the Successor CRO's heirs, legal or personal representatives, successors, or assigns.  Notwithstanding the foregoing, during the Plan Period, no George Hofmeister Party shall be appointed or act as CRO or Successor CRO of the Company.

6.5     **Powers and Duties of Successor CRO**.  A Successor CRO shall have all the rights, privileges, powers, and duties of any predecessor CRO under this Agreement and the Plan.

6.6     **Company Continuance**.  The resignation, death, incapacitation, or removal of the CRO shall not cause the dissolution of the Company, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by the predecessor CRO.

6.7     **Compensation of the CRO and Costs of Administration**.  The Person serving as CRO shall receive (i) compensation  for services rendered on behalf of the Company, which compensation shall be paid for such Person's time spent on the Company matters on an hourly basis at the rate that such Person customarily charges for professional services, and (ii) payment or reimbursement for expenses incurred or paid by such Person on behalf of or for the benefit of the Company, which compensation and payment or reimbursement of expenses shall be a charge against and paid out of the Company Assets.  All such compensation and payment or reimbursement of expenses, as well as all costs, expenses, and obligations incurred by the Person serving as CRO (or Professionals who may be employed by the CRO) in administering the Company, in carrying out any responsibilities under this Agreement, or in any manner connected, incidental, or related thereto, shall be paid by the CRO from the assets of the Company prior to any distribution to the Creditors.

## ARTICLE VII
## OFFICERS

7.1     **Officers and Agents**.  The CRO may from time to time appoint such additional Officers and agents as it deems advisable; *provided, however*, that no George Hofmeister Party may serve as an officer of the Reorganized Debtors.  Any number of offices

may be held by the same Person, but an Officer shall not execute, acknowledge or verify an instrument in more than one capacity if the instrument is required by law to be executed, acknowledged or verified by two or more Officers. An Officer has such authority and shall perform such duties in the management of the Company as provided in this Agreement, or as may be determined by resolution of the CRO not inconsistent with this Agreement, and as generally pertain to their offices, subject to the control of the CRO.

7.2  **Compensation**. The compensation of all Officers and employees of the Company shall be fixed by the CRO and no Officer shall be prevented from receiving such compensation by reason of the fact that he or she is also a CRO or a Member.

7.3  **Term**. Each Officer shall hold office for the term for which he or she is elected or appointed and until his or her successor is elected or appointed and qualified, or until his or her death, resignation or removal. The election or appointment of an Officer does not, by itself, create contract rights.

7.4  **Removal**. An Officer elected or appointed by the CRO may be removed by the CRO whenever in its judgment the best interests of the Company would be served thereby. The removal of an Officer shall be without prejudice to his or her contract rights, if any.

7.5  **Resignation**. An Officer may resign by written notice to the Company. The resignation is effective upon its receipt by the Company or at a subsequent time specified in the notice of resignation.

7.6  **Vacancies**. Any vacancy occurring in any office of the Company shall be filled by the CRO.

7.7  **Vice President**. In the absence of the CRO or in the event of his death, inability or refusal to act, the Vice President shall perform the duties of CRO, and when so acting, shall have all the powers of and be subject to all the restrictions upon the CRO. The Vice President shall perform such other duties as from time to time may be assigned to him by the CRO or by the CRO. When more than one Vice President has been selected by the CRO only one Vice Chief President shall be required to be Officer, but only a Vice President who is an Officer may perform the duties of the CRO as provided in this Agreement.

7.8  **Secretary**. The Secretary shall act under the direction of the CRO. The Secretary shall attend all Member meetings, record minutes of the proceedings and maintain the minutes and all documents evidencing Company action taken by written consent of the Member in the Company's minute books. The Secretary shall perform these duties for committees when required. The Secretary shall see to it that all notices of Member meetings are duly given in accordance with applicable law, the Certificate of Formation and this Agreement. The Secretary shall have custody of the Company's seal, if any, and when authorized by the CRO shall affix the seal to any instrument requiring it and attest such instrument.

7.9  **Treasurer**. The Treasurer shall act under the direction of the CRO. The Treasurer shall have custody of the Company funds and securities and shall keep full and accurate accounts of the Company's assets, liabilities, receipts and disbursements in books belonging to the Company. The Treasurer shall deposit all moneys and other valuables in the

name and to the credit of the Company in such depositories as may be designated by the CRO. The Treasurer shall disburse the funds of the Company as may be ordered by the CRO, taking proper vouchers for such disbursements, and shall render to the CRO (at regular meetings or whenever they request it) an account of all his or her transactions as Treasurer and of the financial condition of the Company. If required by the CRO, the Treasurer shall give the Company a bond for the faithful discharge of his or her duties in such amount and with such surety as the CRO prescribes.

        **7.10**    **Assistant Secretaries and Treasurers and Acting Officers**. The Assistant Secretaries and Assistant Treasurers, if any, shall act under the direction of the CRO, the Member and the Officer they assist. In the order of their seniority, the Assistant Secretaries shall, in the absence or disability of the Secretary, perform the duties and exercise the authority of the Secretary. The Assistant Treasurers, in the order of their seniority, shall, in the absence or disability of the Treasurer, perform the duties and exercise the authority of the Treasurer. The CRO shall have the power to appoint any Person to perform the duties of an Officer whenever for any reason it is impracticable for such Officer to act personally. Such acting Officer so appointed shall have the powers of and be subject to all the restrictions upon the Officer to whose office he is so appointed except as the CRO may by resolution otherwise determine.

        **7.11**    **Execution of Instruments**. All checks, drafts or demands for money and notes of the Company shall be signed by the CRO, the Treasurer or such Officer or Officers as the CRO from time to time designates. All funds of the Company not otherwise employed shall be deposited or used as the CRO from time to time designates. All other contracts or instruments in the name of and on the Company's behalf shall be signed by the CRO, or such Officer or Officers or other Person or Persons as the CRO from time to time designates. The CRO may also ratify or confirm the execution or delivery of any check, draft, demand for money, note, or other contract or instruments signed in the name of and on the Company's behalf.

        **7.12**    **Voting of Shares and Securities of Other Companies and Entities**. Subject always to the specific directions of the CRO, (a) any shares or other securities issued by any other corporation and owned or controlled by the Company may be voted at any meeting of security holders of such other corporation by the CRO or by proxy appointed by him, or in the absence of the CRO and his proxy by the Treasurer of the Company or by proxy appointed by him, or in the absence of the CRO and Treasurer, by the Secretary of the Company or by proxy appointed by him. Such proxy or consent in respect to any shares or other securities issued by any other corporation and owned by the Company shall be executed in the name of the Company by the CRO, the Treasurer or the Secretary of the Company without necessity of any authorization by the Member. Any Person or Persons designated in the manner above stated as the proxy or proxies of the Company shall have full right, power and authority to vote the shares or other securities issued by such other corporation and owned by the Company the same as such shares or other securities might be voted by the Company.

# ARTICLE VIII
## MEMBERS

**8.1** **Member**.  The name, address and Membership Interest of the sole Member of the Company is set forth on <u>Exhibit A</u>.  At all times during the Plan Period, the Chief Restructuring Officer shall be deemed to be the sole Member of the Company.

**8.2** **Admission of New Member Prohibited**.  No new Members may be admitted to the Company during the Plan Period.

**8.3** **Payments to Member**.  Except as otherwise specifically provided in this Agreement, no Member is entitled to compensation for acting in the Company business during the Plan Period.  The Company may reimburse the Member and its Affiliates for expenses incurred on behalf of the Company, as approved by the CRO.

**8.4** **Member Have No Managerial Authority**.  During the Plan Period,

    (a)    the Member shall have no power to participate in the management of the business, affairs or operations of the Company; and

    (b)    no Member shall have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, or to render it liable for any purpose.

**8.5** **Voting and Consent Rights**.  During the Plan Period, the Member shall have no voting, approval or consent rights, or rights to information except to the extent required by non-waivable provisions of the Delaware LLC Act.

**8.6** **Member Meetings**.  No meetings of the Member, whether regular or special, are required to be held.  Meetings of the Member may be called on 24 hours' notice in accordance with Section 10.1 by or at the request of the CRO, the Secretary, or the Member. The notice must specify the place, date and time of the special meeting, but need not specify the business to be transacted at, or the purpose of, the meeting.  Meetings of the Member may be held at any location, as determined by the Person or Person(s) calling the meeting. Member may participate in a Member meeting by means of conference telephone or similar communications equipment through which all Persons participating in the meeting can communicate with each other.  Participation in a meeting pursuant to this Section 8.6 constitutes presence in person at such meeting.

**8.7** **Action by Written Consent**.  Any action required or permitted to be taken under authorization voted at a Member meeting may be taken without a meeting if, before or after the action, the Member consents to the action in writing.  Such consents shall be filed with the minutes of the proceedings of the Member or Member committee and shall have the same effect as a vote of the Member for all purposes.

## ARTICLE IX
## DISSOLUTION AND WINDING UP

**9.1** **Dissolution**.  By operation of the Plan and the Confirmation Order, neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any applicable nonbankruptcy law has heretofore caused a dissolution of the Company.  The Company shall dissolve, and its affairs shall be wound up, upon the occurrence of any event that requires the dissolution of the Company under the Plan or the Delaware LLC Act; *provided, however*, upon the occurrence of any event that terminates the continued membership of the Member in the Company, the Company shall not dissolve and the personal representative (as defined in the Delaware LLC Act) of the Member shall agree in writing to continue the Company and to the admission of the personal representative of the Member or its nominee or its designee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the Member in the Company.

**9.2** **Winding Up**.  Upon dissolution, the Company shall cease carrying on its business and affairs and the CRO shall wind up the Company's business and affairs and the liquidation of its assets.  Upon the winding up of the Company, the assets of the Company shall be distributed in accordance with the Plan and applicable law.  Upon the completion of the winding up of the Company, the CRO shall file a certificate of cancellation with the Secretary of State of the State of Delaware canceling the Certificate of Formation, at which time the Company shall terminate.

## ARTICLE X
## GENERAL PROVISIONS

**10.1** **Notice**.  All written notices to Member shall be given personally or by mail (registered, certified or other first class mail, with postage pre-paid), addressed to such Person at the address shown on Exhibit A or at such Member's last known address.  Written notices to any Member may also be delivered by overnight carrier, telegram, telex, telecopy, radiogram, cablegram, facsimile, computer transmission or similar form of communication, addressed to the address referred to in the preceding sentence.  Notices given pursuant to this Section 10.1 shall be deemed to be given when dispatched, or, if mailed, when deposited in a post office or official depository under the exclusive care and custody of the United States postal service.  Notices given by overnight carrier shall be deemed "dispatched" at 9:00 a.m. on the day the overnight carrier is reasonably requested to deliver the notice.  The Company shall have no duty to change the written address of any Member or Officer unless the Secretary receives written notice of such address change.

**10.2** **Articles and Sections**.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The Article and Section headings contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

**10.3** **Entire Agreement**.  This Agreement constitutes the entire operating agreement of the Company.

**10.4** **Termination**.  This Agreement shall terminate and be of no further force or effect upon the filing of a certificate of cancellation cancelling the Certificate of Formation pursuant to Article VIII of this Agreement; *provided, however*, that Sections 5.12 and 5.13 shall survive termination.

**10.5** **Interpretation**.  In the event that any provisions of this Agreement are inconsistent with the Plan, the provisions of the Plan shall control.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.  Words denoting the singular shall include the plural and words denoting the plural shall include the singular.  Words denoting one gender shall include the other gender.  "Including" shall mean "including without limitation" or "including but not limited to." References to approval, consent, discretion or judgment on the part of the CRO shall mean the CRO's sole consent, discretion or judgment, provided the exercise thereof does not constitute gross negligence or willful misconduct.

**10.6** **Governing Law**.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to application of conflict of laws principles.

**10.7** **Amendment**.   This Agreement may be modified, amended or supplemented only by a written instrument executed by the Company and the Member and approval of the Bankruptcy Court; *provided, however*, that the following provisions shall not be amended, and shall remain unmodified and in full force and effect, at all times during the Plan Period:  Section 5.1, Section 5.2, Section 5.3, Section 5.4, Section 5.7, Section 6.4, Section 7.1, Section 8.5, this Section 10.7 and Section 10.10.

**10.8** **Severability**.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against such court's or authority's regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**10.9** **Third Party Beneficiaries**.  Except as otherwise contemplated in Section 5.12 and Section 5.13, this Agreement is intended for the benefit of the Parties and is not intended to create any rights, powers or benefit in favor of any other Persons.

**10.10** **CONSENT TO JURISDICTION**.  **THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF WILMINGTON, DELAWARE, (B) IRREVOCABLY SUBMITS TO THE**

**JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED HEREIN (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY DELAWARE LAW).**

      **10.11** <u>**Definitions**</u>. Unless expressly provided otherwise in the specific context, capitalized terms used herein without definition shall have the meanings, if any, ascribed to such terms in the Plan. The terms set forth below shall have the following meanings when used in this Agreement:

      (a)     *"**Affiliate**"* means, with respect to any Person, a Person who controls such Person, a Person controlled by such Person, or a Person under common control with such Person.

      (b)     *"**Agreement**"* has the meaning set forth in the preamble to this Agreement.

      (c)     *"**Bankruptcy Case**"* means Case No. 12-13262 (BLS) in the Bankruptcy Court.

      (d)     *"**Board**"* means the Board of Managers of the Company.

      (e)     *"**Certificate of Formation**"* has the meaning set forth in Section 1.1.

      (f)     *"**Company**"* has the meaning set forth in the preamble to this Agreement.

      (g)     *"**Covered Person**"* means the CRO, any other Officer, or any director, shareholder, member, Manager, partner, employee, Professional, or expressly authorized agent of the Company.

      (h)     *"**Creditors**"* means the holder of any Allowed Claim against the Company.

      (i)     *"**Creditors' Committee Manager**"* means Thomas W. Janes or any individual appointed by the Creditors Committee as his successor in accordance with the Plan and this Agreement.

(j)  *"CRO"* means John C. DiDonato or any Person appointed as CRO as his successor in accordance with this Agreement.

(k)  *"Delaware LLC Act"* has the meaning set forth in Section 1.1 above.

(l)  *"Effective Date"* has the meaning set forth in the preamble to this Agreement.

(m)  "*Loss*" means any loss, claim, damages, liability, obligation, settlement, judgment, action, cause of action, litigation, mediation, arbitration, proceeding, investigation (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalty, cost, or expense, including fees and disbursements.

(n)  *"Manager"* means any manager of the Company within the meaning of the Delaware LLC Act, and shall include the Creditors' Committee Manager, the PBGC Manager and the Third Party Manager.

(o)  *"Member"* means the sole Member of the Company, which shall be the CRO.

(p)  *"Membership Interest"* means the interest of a Member in the Company.

(q)  *"Membership Interest Rights"* means all rights, powers and privileges and all benefits arising out of or related to the Membership Interest, whether arising under this Agreement, the Delaware LLC Act or otherwise under applicable law, including any and all voting, consent, and approval rights, rights to distributions (liquidating or otherwise), allocations, and other economic benefits, and rights to information and management of the Company.

(r)  *"Officer*" means an officer of the Company.

(s)  *"PBGC Manager"* means James B. Shein or any individual appointed by the PBGC as his or her successor in accordance with the Plan and this Agreement.

(t)  "*Plan Period*" means the period beginning on the Effective Date and ending on the date of the entry of an order of the Bankruptcy Court for a final decree in the Bankruptcy Case.

(u)  "*Professionals*" shall mean attorneys, accountants, appraisers, financial advisers, real estate and other brokers, investment bankers and other professionals.

(v)  *"Third Party Manager"* means Anthony M. Horvat or any individual appointed by mutual agreement of the Creditors' Committee and the PBGC. In the event that the Creditors' Committee and the PBGC are unable to agree upon the

selection of the third member of the Board of Managers, the Creditors' Committee and the PBGC shall each provide the name of their choice as Third Party Manager to the CRO, who shall then select the Third Party Manager from these two names.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first above written.

<u>**THE COMPANY**</u>:

REVSTONE INDUSTRIES, LLC


By:    _____
             John C. DiDonato
Its:    Chief Restructuring Officer


<u>**SOLE MEMBER**</u>:

_____
John C. DiDonato,
Chief Restructuring Officer of the Company under the Plan


*SIGNATURE PAGE TO*
*AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF*
*REVSTONE INDUSTRIES, LLC*

# EXHIBIT A

## SCHEDULE OF MEMBERS

| NAME | ADDRESS | PERCENTAGE INTEREST |
|------|---------|---------------------|
| John C. DiDonato, Chief Restructuring Officer | c/o Huron Consulting Consulting Services LLC 900 Wilshire Drive, Suite 270 Troy, MI 48084 | 100% |

## Exhibit E-2

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY
# AGREEMENT
# OF
# SPARA, LLC

This Amended and Restated Limited Liability Company Agreement (this "***Agreement***") of Spara, LLC (the "***Company***"), is entered into by the signatories hereto (the "***Parties***"), effective as of the __<sup>th</sup> day of _____, 2015 (the "***Effective Date***").

## RECITALS

The Parties hereby acknowledge that:

A.     Each of the Company, Revstone Industries, LLC ("***Revstone***"), US Tool & Engineering, LLC ("***US Tool***"), Greenwood Forgings, LLC ("***Greenwood***", and together with the Company, Revstone, and US Tool, the "***Debtors***") is a Delaware limited liability company and each has been the subject of voluntary chapter 11 proceedings under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as now in effect or hereafter amended, the "***Bankruptcy Code***") before the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

B.     On December 10, 2014, the Debtors filed that certain Debtors' Joint Chapter 11 Plan of Reorganization (as the same may be modified, amended or supplemented from time to time, the "***Plan***").  The Plan provided for a reorganization of the Company and the other Debtors.

C.     On _____, 2015, the Plan was confirmed by order of the Bankruptcy Court (as the same may be modified, amended or supplemented from time to time, the "***Confirmation Order***").  The effective date of the Plan occurred on _____, 2015.

D.     Pursuant to the Plan, (a) all assets of the Company as a Debtor in the Bankruptcy Case, other than any Revstone/Spara Litigation Trust Assets (as such term is defined in the Plan), are deemed to have re-vested in the Company; (b) all right, title and interest of the Company, as a Debtor in the Bankruptcy Case, in or to any Revstone/Spara Litigation Trust Assets have been transferred to the Revstone/Spara Litigation Trust (as such term is defined in the Plan); (c) all rights of Ascalon Enterprises, LLC, a Delaware limited liability company ("***Ascalon***"), as a member of the Company are deemed to be suspended; (d) the Chief Restructuring Officer under the Plan is deemed to be admitted as, and authorized to exercise all of the rights and powers of, the sole member of the Company; (e) the Chief Restructuring Officer under the Plan is deemed to be appointed as sole manager of the Company and in that capacity to authorized to manage the business and affairs thereof; and (f) the Company's limited liability company agreement is required to be replaced and amended by a Reorganized Debtor Operating Agreement for the Company consistent with the terms and conditions set forth in the Plan.

E.    In compliance with the Confirmation Order, the Parties now wish to implement the Plan by adopting this Agreement as the Reorganized Debtor Operating Agreement for the Company.

## AGREEMENT

The Member hereby amends and restates the Company's existing limited liability company agreement in its entirety to read in full as follows:

## ARTICLE I

## ORGANIZATION

**1.1**    **Formation**.    The Company was organized as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (as amended from time to time, the "***Delaware LLC Act***") by the filing on August 2, 2010 of a Certificate of Formation with the Secretary of State of the State of Delaware (the "***Certificate of Formation***").

**1.2**    **Name**.    The name of the Company is "Spara, LLC."  The Company may also conduct its business under one or more assumed names.

**1.3**    **Purposes**.    Subject in all respects to the terms of the Confirmation Order and the Plan, the purposes for which the Company was formed are to engage in any activity or business within the purposes for which a limited liability company may be formed under the law of the State of Delaware, including, without limitation, the following activities:

(a)    Taking any actions that are necessary or appropriate to cause the Plan to be effectuated as of the Effective Date or that are contemplated by the Plan to be taken on or about the Effective Date, including the payment of any Allowed Administrative Expenses and Priority Non-Tax Claims;

(b)    Preserving, maintaining, repairing, using, transferring, selling, disposing of and liquidating all assets of the Company, including any proceeds thereof, and any and all other assets, rights or privileges of the Company;

(c)    Filing objections in the Bankruptcy Case, reconciling Claims in the Bankruptcy Case, and exercising rights of set off with respect thereto;

(d)    With respect to any Subsidiary of the Company, exercising all rights and powers under the Plan and under applicable law as the sole member or shareholder of such Subsidiary, including the right to amend the articles or certificate of incorporation, bylaws, articles or certificate of formation, and limited liability company or operating agreement thereof from time to time and to appoint one or more directors or managers thereof;

(e)    Demanding, accepting, and receiving from any Subsidiary any cash or property received by such Subsidiary, gross or net of any expenses of such Subsidiary;

(f)     Opening, making deposits to and withdrawals from, and closing any accounts contemplated by the Plan;

(g)     Establishing any cash reserves contemplated by the Plan and paying all expenses of the Company incurred following the Effective Date;

(h)     Employing, compensating, and paying or reimbursing expenses of the Person serving as the CRO and other Persons or Professionals from any funds of the Company;

(i)     Filing suit or any appropriate motion for relief in the Bankruptcy Court or in any other court of competent jurisdiction on behalf of in or in the name of the Company to resolve any disagreement, conflict, dispute, or ambiguity under the Plan or in connection with the exercise of its rights, powers, or duties;

(j)     Protecting and enforcing the rights to the assets of the Company by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(k)     Causing the Company to make, as provided for in, or contemplated by, the Plan, distributions of Net Distributable Assets;

(l)     Retaining and pay third parties and Professionals pursuant to Section 4.5 of this Agreement;

(m)     Establishing the amount and causing the Company to maintain appropriate insurance coverage;

(n)     Enforcing and exercising all rights and powers of the Company, and performing all duties and obligations, under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(o)     Investing any moneys held as part of the assets of the Company in accordance with the terms of Section 4.6 hereof;

(p)     Electing at any time to abandon any assets of the Company of inconsequential value to the Company;

(q)     Dissolving any Subsidiary of the Company in accordance with the Plan; and

(r)     Closing the Bankruptcy Case and terminating this Agreement.

**1.4     Non-Supervision by Bankruptcy Court**.  Subject to the requirements of, and except as otherwise provided in, the Confirmation Order and the Plan, the Company shall be permitted to conduct its business and the activities set forth in Section 1.3, take any and all actions reasonably necessary to implement the Plan, and otherwise administer its affairs without

supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

**1.5** **Duration**.  The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the CRO or (b) the entry of a decree of judicial dissolution under section 18-802 of the Delaware LLC Act.

**1.6** **Offices and Resident Agent**.  The principal office of the Company shall be located at Revstone Industries, LLC, et al., c/o Huron Consulting Services LLC, 900 Wilshire Drive, Suite 270, Troy, MI 48084, or at such place within or without Michigan as the Manager from time to time determines.  The registered office and the resident agent of the Company shall be as designated in the Certificate of Formation or any amendment thereof.

**1.7** **Limited Liability Company Agreement**.  This Agreement shall be the "limited liability company agreement" of the Company within the meaning of the Delaware LLC Act and the "Reorganized Debtor Operating Agreement" of the Company within the meaning of the Plan.  In the event that any provisions of this Agreement are inconsistent with provisions of the Reorganized Debtor Operating Agreement the Company contemplated by the Plan, the provisions of the Plan shall control.

**ARTICLE II**
**BOOKS, RECORDS AND ACCOUNTING**

**2.1** **Books and Records**.  The CRO shall maintain all of the books and records of the Company referenced in section 18-305 of the Delaware LLC Act, to the extent applicable to the Company; provided, however, that the CRO shall not be responsible for the accuracy of any books or records of the Company relating to any period before the date of this Agreement.  Such books and records may be kept at the Company's principal office or such other place(s) as the CRO may designate.

**2.2** **Accounting**.  The particular accounting methods and principles to be followed by the Company shall be chosen by the CRO.

**2.3** **Fiscal Year**.  The fiscal year of the Company shall begin on the 1st day of January in each year.  For purposes of Tax reporting, the Company shall file its Tax returns on a calendar year basis.

**ARTICLE III**
**MEMBERSHIP, CAPITAL CONTRIBUTIONS AND DISTRIBUTIONS**

**3.1** **Suspension of Membership Interest Rights of Ascalon Enterprises**.  By operation of the Plan and Confirmation Order and effective as of the Effective Date, all Membership Interest Rights of Ascalon Enterprises, LLC have been suspended and shall remain suspended at all times during the Plan Period.  At all times during the Plan Period, all Membership Interest Rights shall be held and exercised exclusively by the Chief Restructuring Officer under the Plan, who shall be deemed to be the sole Member of the Company.

**3.2     Current Members**.  All Membership Interest of the Company outstanding as of the Effective Date at all times during the Plan Period shall be deemed to be held by the Chief Restructuring Officer under the Plan, whose address and deemed Membership Interest are set forth on <u>Exhibit A</u>.  At all times during the Plan Period, the Chief  Restructuring Officer shall be deemed to be the sole Member of the Company.  The Company does not have, and shall not be authorized to issue, any non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code.

**3.3     Additional Members**.   No new Membership Interest may be created or issued to any Person except with the express prior written approval of the CRO.

**3.4     Additional Capital Contributions**.  The Member shall not be required to make any additional capital contribution to the Company.

**3.5     Distributions**.  No distributions of the Company shall be made to the Member in respect of the Membership Interest.   Net Distributable Assets of the Company shall be distributed only to such Persons, only at such times, and only in such amounts as is provided for under the Plan.  The Member shall have a contingent interest in all cash (if any) remaining after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full by the Company (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.

**3.6     Liability**.  Except to the extent provided in the Delaware LLC Act, the Member shall not have any liability for the obligations or liabilities of the Company.

**ARTICLE IV**
**MANAGEMENT AND CONTROL OF COMPANY**

**4.1     Management of Company**.  Except as otherwise provided by this Agreement or as otherwise required by law, the business and affairs of the Company shall be managed under the direction of the CRO, who shall act as, and have all of the rights, powers, and privileges of, the sole manager of the Company.

**4.2     Authority of CRO.**

(a)     The CRO shall have the rights, powers, and privileges provided for or granted under this Agreement, those provided for or granted under the Confirmation Order and the Plan to the Chief Restructuring Officer of the Company as a Reorganized Debtor, and those provided for or granted under the Delaware LLC Act to the sole and managing member of a Delaware limited liability company.  Except as otherwise provided by this Agreement or as otherwise required by law, the CRO shall have full, complete and exclusive authority, power, and discretion to (a) manage and control the business, property and affairs of the Company, (b) make all decisions regarding those matters, (c) perform any and all other acts or activities customary or incident to the management of the Company's business, properties and affairs, and (d) take any and all actions that are consistent with the terms of the Plan, and any powers reasonably incidental thereto, that the CRO, in the CRO's discretion, deems necessary or appropriate to fulfill the purposes of the Company set forth in Section 1.3 hereof.

(b)     The CRO shall be an Officer of the Company with title of "Chief Restructuring Officer."  As an Officer, the CRO shall have the general duties of supervision and management of the day to day operations of the Company usually vested in the chief restructuring officer of a Delaware limited liability company under a plan of liquidation.  Such duties shall include, subject to the terms of the Plan, (a) maximizing the value of the Company's assets, (b) reconciling Claims, (c) making distributions to Creditors in accordance with the Plan, (d) satisfying post-Effective Date obligations of the Company, and (e) taking other actions in order to implement the Plan.  Without limitation to the foregoing, as Chief Restructuring Officer of the Company the CRO shall be responsible for, and have the authority to do, the following (in each case in his sole discretion and subject to the Plan):

(i)     appoint such Officers, agents and employees of the Company as he shall deem necessary;

(ii)     prescribe the powers, duties and compensation of Officers, agents and employees of the Company, and to delegate authority to them, with such Persons to hold office at the discretion and subject to the supervision of the Chief Restructuring Officer;

(iii)     manage, withdraw, and administer funds of the Company;

(iv)     on behalf and in the name of the Company, engage, retain, pay and reimbursement of the expenses of Professionals (including former general bankruptcy counsel to the Company) from any funds of the Company;

(v)     on behalf of and in the name of the Company, market and negotiate, enter into and perform agreements for the sale, transfer, disposition, or liquidation or other disposition of assets of the Company, whether or not all or substantially all of the Company properties and assets), and approve the terms and conditions of any such transaction;

(vi)     authorize the investment of any moneys held as part of the assets of the Company, including the net proceeds of any sale, transfer, disposition, or liquidation of any assets of the Company, in accordance with the terms of Section 4.6;

(vii)     establish, determine the amounts of, and utilize all reserves for expenses of the Company and pay all expenses of the Company or relating to the assets of the Company;

(viii)     preside at Member meetings, if any;

(ix)     authorize and cause to be made any distributions of Net Distributable Assets of the Company;

(x)     open, maintain, and close checking, savings, and/or other depository accounts on behalf of or in the name of the Company at banks or other financial institutions;

(xi)     purchase and maintain insurance coverage for the Company and any Covered Persons, in such amounts that the CRO shall, in its sole discretion, determine, against any liability that may be asserted against or expenses that may be incurred by that Person in connection with the activities of the Company;

(xii)     make all Tax withholdings, file Tax information returns, and make Tax elections by and on behalf of the Company and file Tax returns for the Company;

(xiii)     address general business issues involving the Company;

(xiv)     authorize the enforcement and exercise by the Company of any of its rights and powers under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(xv)     elect at any time to abandon any assets of the Company of inconsequential value to the Company;

(xvi)     authorize and approve, on behalf of or in the name of the Company, (i) any merger or dissolution of the Company or any Subsidiary of the Company; (ii) any conversion of the Company or any Subsidiary of the Company into another business entity; (iii) the adoption of any plan or agreement providing for an exchange of any equity interests held by the Company; and (iv) any amendment of the Certificate of Formation or this Agreement;

(xvii)     close the Bankruptcy Case and terminate this Agreement;

(xviii)     exercise, on behalf of and in the name of the Company, any other rights, powers or privileges provided or granted to the Company under the Bankruptcy Code, this Agreement, or the Plan; and

(xix)     execute, deliver, acknowledge, file, post, or publish any documents or instruments, and take any other action, that the CRO deems necessary and proper to carry out the provisions of the Plan or the purpose and intent of this Agreement.

### 4.3     **Signing Authority**.

(a)     The CRO, acting alone, shall have the power and authority to sign, execute, deliver, acknowledge, and/or file, on behalf and in the name of the Company, all deeds, mortgages, bonds, stock certificates, contracts, leases, reports and all other documents or instruments he may deem necessary or proper to be executed in the course of the Company's regular business and he may authorize any Assistant Chief

Restructuring Officer or other Officer or agent of the Company to sign, execute, deliver, acknowledge, and/or file such documents or instruments in his place and stead. Any such documents or instruments so signed, executed, delivered, acknowledged, and/or filed, of any type or nature, shall be binding on the Company.

(b)  The CRO or any Officer may certify and authenticate records of the Company to third parties and any third party dealing with the Company, the CRO, the Member, or any Officer may rely upon a certificate signed by the CRO or any Officer as to (i) the identity of the CRO, the Member or any Officer; (ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the CRO, the Member or any Officer or are in any other manner germane to the affairs of the Company; (iii) the Persons who or entities that are authorized to execute and deliver any instrument or document of or on behalf of the Company; or (iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company, the Member, the CRO or any Officer..

**4.4**  **Non-Supervision by CRO**. Subject to any restrictions expressly imposed by the Plan and the Confirmation Order, the CRO may perform his tasks, and take such other action on behalf or in the name of the Company, without supervision or approval by the Bankruptcy Court or notice to Creditors, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**4.5**  **Professionals**. The CRO may, but shall not be required to, consult with and retain Professionals deemed by the CRO to have qualifications necessary to assist in the proper administration of the Company. Except as otherwise provided in the Plan, the CRO may pay such salaries, fees, and expenses of such Persons as he sees fit out of the assets of the Company in the ordinary course of business without further order of any court, including, but not limited to, the Bankruptcy Court. The same Professional may be retained to represent Affiliates of the Company.

**4.6**  **Investment and Safekeeping of Assets of the Company**. The assets of the Company and all moneys and other assets received by the CRO from the assets of the Company or proceeds thereof after payment of expenses shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Creditors, but need not be segregated from other assets of the Company, unless, and then only to the extent, required by law or the Plan. The CRO shall be under no obligation to produce or obtain income or interest on any assets of the Company. Any interest or income received shall be used or distributed as provided herein or in the Plan. Except as otherwise provided by the Plan, the powers of the CRO to invest any moneys held by the CRO, other than those powers reasonably necessary to maintain the value of the assets of the Company and to further the Company's liquidating purpose, shall be limited to powers to invest in temporary, liquid investments such as in demand and time deposits (e.g., short-term certificates of deposit) in banks or other savings institutions or in United States treasury bills or notes.

**4.7**  **Limitation on Authority**. Notwithstanding any other provision of this Agreement, the CRO shall not be authorized to, and shall not, (a) during the Plan Period, appoint any George Hofmeister Party or allow any George Hofmeister Party to act as the CRO or other Officer or employee of the Company; or (b) take any action that is inconsistent with the Plan.

**4.8** **Required Effort**.  The CRO shall not be required to devote all or any specific amount of its time, effort or managerial resources to the affairs of the Company.  The CRO shall be obligated to devote only such time, effort and resources as he deems appropriate for the operation of the Company.

**4.9** **Competing Activities**.  The CRO and any other Officers may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  The CRO and the other Officers shall not be obligated to present any investment opportunity to the Company.  The CRO and the other Officers shall have the right to hold any investment opportunity for their own account or to recommend such opportunity to Persons other than the Company.  The Parties acknowledge that the CRO and the other Officers own, operate, manage or provide services in respect of other businesses, including businesses that may compete with the Company or for the Member's time.  Each Party hereby waives any and all rights and claims which he or she may otherwise have against the CRO and the other Officers as a result of any of such activities.

**4.10** **Transactions between the Company and the Member**.  Notwithstanding that it may constitute a conflict of interest, the CRO and its Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from Persons capable of similarly performing them.

**4.11** **Third Party Recourse**.  Every Person contracting or otherwise dealing with or having any relationship with the Company shall have recourse only to the assets of the Company for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and neither the CRO nor any Officer shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a CRO or Officer.

**4.12** **Limitation on Liability.**

(a) Neither the CRO nor the Member, irrespective of the capacity in which such Person  acts, shall be liable to the Company for any Loss incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted in good faith by the CRO or the Member, as the case may be, and no other Covered Person shall be liable to the Company, the CRO or the Member for any Loss incurred by reason of any act or omission (whether or not constituting negligence) performed or omitted by the Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on the Covered Person by this Agreement, except that a Covered Person (other than the CRO or the Member, irrespective of the capacity in which such Person acts) shall be liable for any Loss incurred by reason of the Covered Person's gross negligence and a Covered Person (including the Member) shall be liable for any Loss incurred by reason of the Covered Person's willful misconduct or fraud.

(b)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within the professional or expert competence of that Covered Person, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions might properly be paid.  The foregoing provision shall in no way be deemed to reduce the limitation on liability of the CRO or the Member as provided in Section 4.12(a).

(c)     The limitation on liability set forth in Section 4.12(a) hereof shall to apply (i) in any context, whether or not in connection with litigation in which any Covered Person is a party and whether or not in connection with the enforcement of this Agreement (including the exculpation provisions hereof), (ii) to any act or omission in the performance or non-performance by any Covered Person of this Agreement, the Plan, or the Confirmation Order, and (iii) to any Loss in any way caused by, relating to, based upon, or arising out of (directly or indirectly) an act or omission by a Covered Person; *provided, however*, that the foregoing limitation on liability shall not apply to any Losses suffered or incurred by any Creditor, the CRO or Member that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or fraud of such Covered Person.

(d)     None of the Covered Persons shall be presumed to be responsible for the acts or omissions of any other Covered Person.  In no event shall any Covered Person be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, irrespective of whether the Covered Person  has been informed of the likelihood of such loss or damages and regardless of the form of action.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity (including such fiduciary duties), are agreed by the Parties to eliminate and replace any other such duties and liabilities (including such fiduciary duties) of the Covered Person, to the maximum extent permissible by law.  To the extent that, at law or in equity, a Covered Person has duties and liabilities (including fiduciary duties) relating to the Company, such Covered Person acting under this Agreement shall not be liable to the Company or the Member for actions or omissions in good faith reliance on the provisions hereof.

(f)     All provisions of this Section shall apply to any former Covered Person for all actions or omissions taken while such Person was a Covered Person to the same extent as if that Person were still a Covered Person.

**4.13** <u>Indemnification</u>.

(a)     To the fullest extent permitted by applicable law, (a) the CRO and the Member (irrespective of the capacity in which such Person acts) shall be entitled to indemnification from the Company for any Loss incurred by the CRO or the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted and (b) any other Covered Person shall be entitled to indemnification from the Company for any Loss incurred by that Covered Person by reason of any act or omission (whether or not constituting negligence) performed or omitted by that Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on that Covered Person by this Agreement, except that no Covered Person (other than the CRO and the Member, irrespective of the capacity in which such Person acts) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence of such Covered Person and no Covered Person (including the Member) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the willful misconduct of such Covered Person with respect to those acts or omissions; but any indemnity under this Section 4.13 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have any personal liability on account thereof.  This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the CRO, or the dissolution of the Company, and shall inure to the benefit of the Indemnified Parties' respective successor, heirs, and assigns.

(b)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred  by a Covered Person in defending any claim, demand,  action, suit or proceeding shall, from time to time, be advanced by the Company before the final disposition of the claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay that amount if it shall be determined that the Covered Person is not entitled to be indemnified under this Section.

## ARTICLE V
## <u>TERM, REMOVAL AND COMPENSATION OF CRO</u>

**5.1**     <u>Term of Service</u>.  Effective on the Effective Date, John C. DiDonato shall be the CRO.  The CRO shall serve until (a) the completion of all the CRO's duties, responsibilities and obligations under this Agreement and the Plan; (b) dissolution of the Company in accordance with the terms of this Agreement and the Plan; or (c) the CRO's resignation, death, incapacity, or removal.

**5.2**     <u>Removal of CRO</u>.  No Person serving as CRO may be removed as CRO except by order of the Bankruptcy Court by reason of an act or omission by such Person constituting gross negligence or willful misconduct.   No such removal shall have any effect on the CRO's continuing role as Chief Restructuring Officer of any other Debtor.

**5.3** **Resignation of CRO**.  The CRO may resign at any time.  In the event of a resignation, the resigning CRO shall render to the Member a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that CRO.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered;  and (iii) the date the accounting described in the preceding sentence is transmitted to the Member by first class mail, postage pre-paid.  In the event of any resignation or termination of the CRO, the Person serving as CRO shall be entitled to any compensation and payment or reimbursement of expenses due, in accordance with Section 5.7 hereof.

**5.4** **Appointment of Successor CRO**.  Upon the resignation, death, incapacity, or removal of a CRO, the Bankruptcy Court may appoint the Successor CRO.  Any Successor CRO so appointed, as a condition of such appointment, shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the Successor CRO and all of the Successor CRO's heirs, legal or personal representatives, successors, or assigns.  Notwithstanding the foregoing, during the Plan Period, no George Hofmeister Party shall be appointed or act as CRO or Successor CRO of the Company.

**5.5** **Powers and Duties of Successor CRO**.  A Successor CRO shall have all the rights, privileges, powers, and duties of any predecessor CRO under this Agreement and the Plan.

**5.6** **Company Continuance**.  The resignation, death, incapacitation, or removal of the CRO shall not cause the dissolution of the Company, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by the predecessor CRO.

**5.7** **Compensation of the CRO and Costs of Administration**.  The Person serving as CRO shall receive (i) compensation  for services rendered on behalf of the Company, which compensation shall be paid for such Person's time spent on the Company matters on an hourly basis at the rate that such Person customarily charges for professional services, and (ii) payment or reimbursement for expenses incurred or paid by such Person on behalf of or for the benefit of the Company, which compensation and payment or reimbursement of expenses shall be a charge against and paid out of the Company Assets.  All such compensation and payment or reimbursement of expenses, as well as all costs, expenses, and obligations incurred by the Person serving as CRO (or Professionals who may be employed by the CRO) in administering the Company, in carrying out any responsibilities under this Agreement, or in any manner connected, incidental, or related thereto, shall be paid by the CRO from the assets of the Company prior to any distribution to the Creditors.

**ARTICLE VI**
**OFFICERS**

**6.1** **Officers and Agents**.  The CRO may from time to time appoint such additional Officers and agents as it deems advisable; *provided, however*, that no George Hofmeister Party may serve as an officer of the Reorganized Debtors.  Any number of offices may be held by the same Person, but an Officer shall not execute, acknowledge or verify an instrument in more than

one capacity if the instrument is required by law to be executed, acknowledged or verified by two or more Officers. An Officer has such authority and shall perform such duties in the management of the Company as provided in this Agreement, or as may be determined by resolution of the CRO not inconsistent with this Agreement, and as generally pertain to their offices, subject to the control of the CRO.

**6.2** **Compensation**. The compensation of all Officers and employees of the Company shall be fixed by the CRO and no Officer shall be prevented from receiving such compensation by reason of the fact that he or she is also a CRO or a Member.

**6.3** **Term**. Each Officer shall hold office for the term for which he or she is elected or appointed and until his or her successor is elected or appointed and qualified, or until his or her death, resignation or removal. The election or appointment of an Officer does not, by itself, create contract rights.

**6.4** **Removal**. An Officer elected or appointed by the CRO may be removed by the CRO whenever in its judgment the best interests of the Company would be served thereby. The removal of an Officer shall be without prejudice to his or her contract rights, if any.

**6.5** **Resignation**. An Officer may resign by written notice to the Company. The resignation is effective upon its receipt by the Company or at a subsequent time specified in the notice of resignation.

**6.6** **Vacancies**. Any vacancy occurring in any office of the Company shall be filled by the CRO.

**6.7** **Vice President**. In the absence of the CRO or in the event of his death, inability or refusal to act, the Vice President shall perform the duties of CRO, and when so acting, shall have all the powers of and be subject to all the restrictions upon the CRO. The Vice President shall perform such other duties as from time to time may be assigned to him by the CRO or by the CRO. When more than one Vice President has been selected by the CRO only one Vice Chief President shall be required to be Officer, but only a Vice President who is an Officer may perform the duties of the CRO as provided in this Agreement.

**6.8** **Secretary**. The Secretary shall act under the direction of the CRO. The Secretary shall attend all Member meetings, record minutes of the proceedings and maintain the minutes and all documents evidencing Company action taken by written consent of the Member in the Company's minute books. The Secretary shall perform these duties for committees when required. The Secretary shall see to it that all notices of Member meetings are duly given in accordance with applicable law, the Certificate of Formation and this Agreement. The Secretary shall have custody of the Company's seal, if any, and when authorized by the CRO shall affix the seal to any instrument requiring it and attest such instrument.

**6.9** **Treasurer**. The Treasurer shall act under the direction of the CRO. The Treasurer shall have custody of the Company funds and securities and shall keep full and accurate accounts of the Company's assets, liabilities, receipts and disbursements in books belonging to the Company. The Treasurer shall deposit all moneys and other valuables in the name and to the credit of the Company in such depositories as may be designated by the CRO.

The Treasurer shall disburse the funds of the Company as may be ordered by the CRO, taking proper vouchers for such disbursements, and shall render to the CRO (at regular meetings or whenever they request it) an account of all his or her transactions as Treasurer and of the financial condition of the Company. If required by the CRO, the Treasurer shall give the Company a bond for the faithful discharge of his or her duties in such amount and with such surety as the CRO prescribes.

**6.10** **Assistant Secretaries and Treasurers and Acting Officers**. The Assistant Secretaries and Assistant Treasurers, if any, shall act under the direction of the CRO, the Member and the Officer they assist. In the order of their seniority, the Assistant Secretaries shall, in the absence or disability of the Secretary, perform the duties and exercise the authority of the Secretary. The Assistant Treasurers, in the order of their seniority, shall, in the absence or disability of the Treasurer, perform the duties and exercise the authority of the Treasurer. The CRO shall have the power to appoint any Person to perform the duties of an Officer whenever for any reason it is impracticable for such Officer to act personally. Such acting Officer so appointed shall have the powers of and be subject to all the restrictions upon the Officer to whose office he is so appointed except as the CRO may by resolution otherwise determine.

**6.11** **Execution of Instruments**. All checks, drafts or demands for money and notes of the Company shall be signed by the CRO, the Treasurer or such Officer or Officers as the CRO from time to time designates. All funds of the Company not otherwise employed shall be deposited or used as the CRO from time to time designates. All other contracts or instruments in the name of and on the Company's behalf shall be signed by the CRO, or such Officer or Officers or other Person or Persons as the CRO from time to time designates. The CRO may also ratify or confirm the execution or delivery of any check, draft, demand for money, note, or other contract or instruments signed in the name of and on the Company's behalf.

**6.12** **Voting of Shares and Securities of Other Companies and Entities**. Subject always to the specific directions of the CRO, (a) any shares or other securities issued by any other corporation and owned or controlled by the Company may be voted at any meeting of security holders of such other corporation by the CRO or by proxy appointed by him, or in the absence of the CRO and his proxy by the Treasurer of the Company or by proxy appointed by him, or in the absence of the CRO and Treasurer, by the Secretary of the Company or by proxy appointed by him. Such proxy or consent in respect to any shares or other securities issued by any other corporation and owned by the Company shall be executed in the name of the Company by the CRO, the Treasurer or the Secretary of the Company without necessity of any authorization by the Member. Any Person or Persons designated in the manner above stated as the proxy or proxies of the Company shall have full right, power and authority to vote the shares or other securities issued by such other corporation and owned by the Company the same as such shares or other securities might be voted by the Company.

**ARTICLE VII**
**MEMBERS**

**7.1** **Member**. The name, address and Membership Interest of the sole Member of the Company is set forth on <u>Exhibit A</u>. At all times during the Plan Period, the Chief Restructuring Officer shall be deemed to be the sole Member of the Company.

**7.2    Admission of New Member Prohibited**.  No new Members may be admitted to the Company during the Plan Period.

**7.3    Payments to Member**.   Except as otherwise specifically provided in this Agreement, no Member is entitled to compensation for acting in the Company business during the Plan Period.   The Company may reimburse the Member and its Affiliates for expenses incurred on behalf of the Company, as approved by the CRO.

**7.4    Member Have No Managerial Authority**.  During the Plan Period,

(a)    the Member shall have no power to participate in the management of the business, affairs or operations of the Company; and

(b)    no Member shall have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, or to render it liable for any purpose.

**7.5    Voting and Consent Rights**.  During the Plan Period, the Member shall have no voting, approval or consent rights, or rights to information except to the extent required by non-waivable provisions of the Delaware LLC Act.

**7.6    Member Meetings**.  No meetings of the Member, whether regular or special, are required to be held.  Meetings of the Member may be called on 24 hours' notice in accordance with Section 9.1 by or at the request of the CRO, the Secretary, or the Member.  The notice must specify the place, date and time of the special meeting, but need not specify the business to be transacted at, or the purpose of, the meeting.  Meetings of the Member may be held at any location, as determined by the Person or Person(s) calling the meeting. Member may participate in a Member meeting by means of conference telephone or similar communications equipment through which all Persons participating in the meeting can communicate with each other. Participation in a meeting pursuant to this Section 7.6 constitutes presence in person at such meeting.

**7.7    Action by Written Consent**.  Any action required or permitted to be taken under authorization voted at a Member meeting may be taken without a meeting if, before or after the action, the Member consents to the action in writing.  Such consents shall be filed with the minutes of the proceedings of the Member or Member committee and shall have the same effect as a vote of the Member for all purposes.

**ARTICLE VIII**
**DISSOLUTION AND WINDING UP**

**8.1    Dissolution**.  By operation of the Plan and the Confirmation Order, neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any applicable nonbankruptcy law has heretofore caused a dissolution of the Company.  The Company shall dissolve, and its affairs shall be wound up, upon the occurrence of any event that requires the dissolution of the Company under the Plan or the Delaware LLC Act; *provided, however*, upon the occurrence of any event that terminates the continued membership of the Member in the Company, the Company shall not dissolve and  the  personal  representative (as defined  in  the Delaware LLC Act) of the Member shall agree in writing to continue the Company and to the

admission of the personal representative of the Member or its nominee or its designee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the Member in the Company.

**8.2** **Winding Up**.  Upon dissolution, the Company shall cease carrying on its business and affairs and the CRO shall wind up the Company's business and affairs and the liquidation of its assets.  Upon the winding up of the Company, the assets of the Company shall be distributed in accordance with the Plan and applicable law.  Upon the completion of the winding up of the Company, the Manager shall file a certificate of cancellation with the Secretary of State of the State of Delaware canceling the Certificate of Formation, at which time the Company shall terminate.

**ARTICLE IX**
**GENERAL PROVISIONS**

**9.1** **Notice**.  All written notices to Member shall be given personally or by mail (registered, certified or other first class mail, with postage pre-paid), addressed to such Person at the address shown on Exhibit A or at such Member's last known address.  Written notices to any Member may also be delivered by overnight carrier, telegram, telex, telecopy, radiogram, cablegram, facsimile, computer transmission or similar form of communication, addressed to the address referred to in the preceding sentence.  Notices given pursuant to this Section 9.1 shall be deemed to be given when dispatched, or, if mailed, when deposited in a post office or official depository under the exclusive care and custody of the United States postal service.  Notices given by overnight carrier shall be deemed "dispatched" at 9:00 a.m. on the day the overnight carrier is reasonably requested to deliver the notice.  The Company shall have no duty to change the written address of any Member or Officer unless the Secretary receives written notice of such address change.

**9.2** **Articles and Sections**.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The Article and Section headings contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

**9.3** **Entire Agreement**.  This Agreement constitutes the entire operating agreement of the Company.

**9.4** **Termination**.  This Agreement shall terminate and be of no further force or effect upon the filing of a certificate of cancellation cancelling the Certificate of Formation pursuant to Article VIII of this Agreement; *provided, however*, that Sections 4.12 and 4.13 shall survive termination.

**9.5** **Interpretation**.  In the event that any provisions of this Agreement are inconsistent with the Plan, the provisions of the Plan shall control.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.  Words denoting the singular shall include the plural and words denoting the plural shall include the singular.  Words denoting one gender shall include the other

gender. "Including" shall mean "including without limitation" or "including but not limited to." References to approval, consent, discretion or judgment on the part of the CRO shall mean the CRO's sole consent, discretion or judgment, provided the exercise thereof does not constitute gross negligence or willful misconduct.

**9.6**     **Governing Law**.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to application of conflict of laws principles.

**9.7**     **Amendment**.  This Agreement may be modified, amended or supplemented only by a written instrument executed by the Company and the Member and approval of the Bankruptcy Court; *provided, however*, that the following provisions shall not be amended, and shall remain unmodified and in full force and effect, at all times during the Plan Period:  Section 4.1, Section 4.2, Section 4.3, Section 4.4, Section 4.7, Section 5.4, Section 6.1, Section 7.5, this Section 9.7 and Section 9.10.

**9.8**     **Severability**.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against such court's or authority's regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**9.9**     **Third Party Beneficiaries**.  Except as otherwise contemplated in Section 4.12 and Section 4.13, this Agreement is intended for the benefit of the Parties and is not intended to create any rights, powers or benefit in favor of any other Persons.

**9.10**     **CONSENT TO JURISDICTION**.  **THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF WILMINGTON, DELAWARE, (B) IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED HEREIN (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO**

EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY DELAWARE LAW).

**9.11** <u>**Definitions**</u>. Unless expressly provided otherwise in the specific context, capitalized terms used herein without definition shall have the meanings, if any, ascribed to such terms in the Plan. The terms set forth below shall have the following meanings when used in this Agreement:

(a) *"Affiliate"* means, with respect to any Person, a Person who controls such Person, a Person controlled by such Person, or a Person under common control with such Person.

(b) *"Agreement"* has the meaning set forth in the preamble to this Agreement.

(c) "*Bankruptcy Case*" means Case No. 12-13263 (BLS) in the Bankruptcy Court.

(d) "*Certificate of Formation"* has the meaning set forth in Section 1.1.

(e) "*Company"* has the meaning set forth in the preamble to this Agreement.

(f) *"Covered Person"* means the CRO, any other Officer, or any director, shareholder, member, manager, partner, employee, Professional, or expressly authorized agent of the Company.

(g) *"Creditors"* means the holder of any Allowed Claim against the Company.

(h) *"CRO"* means John C. DiDonato or any Person appointed as CRO as his successor in accordance with this Agreement.

(i) *"Delaware LLC Act"* has the meaning set forth in Section 1.1 above.

(j) *"Effective Date"* has the meaning set forth in the preamble to this Agreement.

(k) *"Loss"* means any loss, claim, damages, liability, obligation, settlement, judgment, action, cause of action, litigation, mediation, arbitration, proceeding, investigation (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalty, cost, or expense, including fees and disbursements.

(l) *"Member"* means the sole Member of the Company, which shall be the CRO.

(m) *"Membership Interest"* means the interest of a Member in the Company.

(n)  *"**Membership Interest Rights**"* means all rights, powers and privileges and all benefits arising out of or related to the Membership Interest, whether arising under this Agreement, the Delaware LLC Act or otherwise under applicable law, including any and all voting, consent, and approval rights, rights to distributions (liquidating or otherwise), allocations, and other economic benefits, and rights to information and management of the Company.

(o)  *"**Officer**"* means an officer of the Company.

(p)  *"**Plan Period**"* means the period beginning on the Effective Date and ending on the date of the entry of an order of the Bankruptcy Court for a final decree in the Bankruptcy Case.

(q)  *"**Professionals**"* shall mean attorneys, accountants, appraisers, financial advisers, real estate and other brokers, investment bankers and other professionals.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first above written.

**THE COMPANY**:

SPARA, LLC


By: _____
        John C. DiDonato
Its:    Chief Restructuring Officer


**SOLE MEMBER**:

_____
John C. DiDonato,
Chief Restructuring Officer of the Company under the Plan

*SIGNATURE PAGE TO*
*AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF*
*SPARA, LLC*

**EXHIBIT A**

**SCHEDULE OF MEMBERS**

| NAME | ADDRESS | PERCENTAGE INTEREST |
|------|---------|---------------------|
| John C. DiDonato, Chief Restructuring Officer | c/o Huron Consulting Services LLC 900 Wilshire Drive, Suite 270 Troy, MI 48084 | 100% |

## Exhibit E-3

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY
# AGREEMENT
# OF
# GREENWOOD FORGINGS, LLC

This Amended and Restated Limited Liability Company Agreement (this "***Agreement***") of Greenwood Forgings, LLC (the "***Company***"), is entered into by the signatories hereto (the "***Parties***"), effective as of the __<sup>th</sup> day of _____, 2015 (the "***Effective Date***").

## RECITALS

The Parties hereby acknowledge that:

A.      Each of the Company, Revstone Industries, LLC ("***Revstone***"), Spara, LLC ("***Spara***"), US Tool & Engineering, LLC ("***US Tool***", and together with the Company, Revstone, and Spara, the "***Debtors***") is a Delaware limited liability company and each has been the subject of voluntary chapter 11 proceedings under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as now in effect or hereafter amended, the "***Bankruptcy Code***") before the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

B.      On December 10, 2014, the Debtors filed that certain Debtors' Joint Chapter 11 Plan of Reorganization (as the same may be modified, amended or supplemented from time to time, the "***Plan***").   The Plan provided for a reorganization of the Company and the other Debtors.

C.      On _____, 2015, the Plan was confirmed by order of the Bankruptcy Court (as the same may be modified, amended or supplemented from time to time, the "***Confirmation Order***").   The effective date of the Plan occurred on _____, 2015.

D.      Pursuant to the Plan, (a) all assets of the Company as a Debtor in the Bankruptcy Case are deemed to have re-vested in the Company; (b) all rights of Revstone Tool & Engineering, LLC, a Delaware limited liability company ("***Revstone Tool & Engineering***"), as a member of the Company are deemed to be suspended; (c) the Chief Restructuring Officer under the Plan is deemed to be admitted as, and authorized to exercise all of the rights and powers of, the sole member of the Company; (d) the Chief Restructuring Officer under the Plan is deemed to be appointed as sole manager of the Company and in that capacity to authorized to manage the business and affairs thereof; and (e) the Company's limited liability company agreement is required to be replaced and amended by a Reorganized Debtor Operating Agreement for the Company consistent with the terms and conditions set forth in the Plan.

E.      In compliance with the Confirmation Order, the Parties now wish to implement the Plan by adopting this Agreement as the Reorganized Debtor Operating Agreement for the Company.

## AGREEMENT

The Member hereby amends and restates the Company's existing limited liability company agreement in its entirety to read in full as follows:

## ARTICLE I

## ORGANIZATION

**1.1** **Formation**.  The Company was organized as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (as amended from time to time, the "***Delaware LLC Act***") by the filing on May 20, 2010 of a Certificate of Formation with the Secretary of State of the State of Delaware (the "***Certificate of Formation***").

**1.2** **Name**.  The name of the Company is "Greenwood Forgings, LLC."  The Company may also conduct its business under one or more assumed names.

**1.3** **Purposes**.  Subject in all respects to the terms of the Confirmation Order and the Plan, the purposes for which the Company was formed are to engage in any activity or business within the purposes for which a limited liability company may be formed under the law of the State of Delaware, including, without limitation, the following activities:

(a)    Taking any actions that are necessary or appropriate to cause the Plan to be effectuated as of the Effective Date or that are contemplated by the Plan to be taken on or about the Effective Date, including the payment of any Allowed Administrative Expenses and Priority Non-Tax Claims;

(b)    Preserving, maintaining, repairing, using, transferring, selling, disposing of and liquidating all assets of the Company, including any proceeds thereof, and any and all other assets, rights or privileges of the Company;

(c)    Investigating and pursuing any Retained Rights of Action of the Company as the representative of the Company's bankruptcy estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code;

(d)    Filing objections in the Bankruptcy Case, reconciling Claims in the Bankruptcy Case, and exercising rights of set off with respect thereto;

(e)    With respect to any Subsidiary of the Company, exercising all rights and powers under the Plan and under applicable law as the sole member or shareholder of such Subsidiary, including the right to amend the articles or certificate of incorporation, bylaws, articles or certificate of formation, and limited liability company or operating agreement thereof from time to time and to appoint one or more directors or managers thereof;

(f)    Demanding, accepting, and receiving from any Subsidiary any cash or property received by such Subsidiary, gross or net of any expenses of such Subsidiary;

(g)     Opening, making deposits to and withdrawals from, and closing any accounts contemplated by the Plan;

(h)     Establishing any cash reserves contemplated by the Plan and paying all expenses of the Company incurred following the Effective Date;

(i)     Employing, compensating, and paying or reimbursing expenses of the Person serving as the CRO and other Persons or Professionals from any funds of the Company;

(j)     Filing suit or any appropriate motion for relief in the Bankruptcy Court or in any other court of competent jurisdiction on behalf of in or in the name of the Company to resolve any disagreement, conflict, dispute, or ambiguity under the Plan or in connection with the exercise of its rights, powers, or duties;

(k)     Protecting and enforcing the rights to the assets of the Company by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(l)     Causing the Company to make, as provided for in, or contemplated by, the Plan, distributions of Net Distributable Assets;

(m)     Retaining and pay third parties and Professionals pursuant to Section 4.5 of this Agreement;

(n)     Establishing the amount and causing the Company to maintain appropriate insurance coverage;

(o)     Enforcing and exercising all rights and powers of the Company, and performing all duties and obligations, under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(p)     Investing any moneys held as part of the assets of the Company in accordance with the terms of Section 4.6 hereof;

(q)     Electing at any time to abandon any assets of the Company of inconsequential value to the Company;

(r)     Dissolving any Subsidiary of the Company in accordance with the Plan; and

(s)     Closing the Bankruptcy Case and terminating this Agreement.

**1.4     Non-Supervision by Bankruptcy Court**.  Subject to the requirements of, and except as otherwise provided in, the Confirmation Order and the Plan, the Company shall be permitted to conduct its business and the activities set forth in Section 1.3, take any and all actions reasonably necessary to implement the Plan, and otherwise administer its affairs without

supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

**1.5** <u>**Duration**</u>.  The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the CRO or (b) the entry of a decree of judicial dissolution under section 18-802 of the Delaware LLC Act.

**1.6** <u>**Offices and Resident Agent**</u>.  The principal office of the Company shall be located at Revstone Industries, LLC, et al., c/o Huron Consulting Services LLC, 900 Wilshire Drive, Suite 270, Troy, MI 48084, or at such place within or without Michigan as the Manager from time to time determines.  The registered office and the resident agent of the Company shall be as designated in the Certificate of Formation or any amendment thereof.

**1.7** <u>**Limited Liability Company Agreement**</u>.  This Agreement shall be the "limited liability company agreement" of the Company within the meaning of the Delaware LLC Act and the "Reorganized Debtor Operating Agreement" of the Company within the meaning of the Plan. In the event that any provisions of this Agreement are inconsistent with provisions of the Reorganized Debtor Operating Agreement the Company contemplated by the Plan, the provisions of the Plan shall control.

**ARTICLE II**
**BOOKS, RECORDS AND ACCOUNTING**

**2.1** <u>**Books and Records**</u>.  The CRO shall maintain all of the books and records of the Company referenced in section 18-305 of the Delaware LLC Act, to the extent applicable to the Company; provided, however, that the CRO shall not be responsible for the accuracy of any books or records of the Company relating to any period before the date of this Agreement.  Such books and records may be kept at the Company's principal office or such other place(s) as the CRO may designate.

**2.2** <u>**Accounting**</u>.  The particular accounting methods and principles to be followed by the Company shall be chosen by the CRO.

**2.3** <u>**Fiscal Year**</u>.  The fiscal year of the Company shall begin on the 1st day of January in each year.  For purposes of Tax reporting, the Company shall file its Tax returns on a calendar year basis.

**ARTICLE III**
**MEMBERSHIP, CAPITAL CONTRIBUTIONS AND DISTRIBUTIONS**

**3.1** <u>**Suspension of Membership Interest Rights of Revstone Tool & Engineering**</u>. By operation of the Plan and Confirmation Order and effective as of the Effective Date, all Membership Interest Rights of Revstone Tool & Engineering have been suspended and shall remain suspended at all times during the Plan Period.  At all times during the Plan Period, all Membership Interest Rights shall be held and exercised exclusively by the Chief Restructuring Officer under the Plan, who shall be deemed to be the sole Member of the Company.

**3.2** **Current Members**.  All Membership Interest of the Company outstanding as of the Effective Date at all times during the Plan Period shall be deemed to be held by the Chief Restructuring Officer under the Plan, whose address and deemed Membership Interest are set forth on Exhibit A.  At all times during the Plan Period, the Chief  Restructuring Officer shall be deemed to be the sole Member of the Company.  The Company does not have, and shall not be authorized to issue, any non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code.

**3.3** **Additional Members**.   No new Membership Interest may be created or issued to any Person except with the express prior written approval of the CRO.

**3.4** **Additional Capital Contributions**.  The Member shall not be required to make any additional capital contribution to the Company.

**3.5** **Distributions**.  No distributions of the Company shall be made to the Member in respect of the Membership Interest.   Net Distributable Assets of the Company shall be distributed only to such Persons, only at such times, and only in such amounts as is provided for under the Plan.  The Member shall have a contingent interest in all cash (if any) remaining after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full by the Company (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.

**3.6** **Liability**.  Except to the extent provided in the Delaware LLC Act, the Member shall not have any liability for the obligations or liabilities of the Company.

**ARTICLE IV**
**MANAGEMENT AND CONTROL OF COMPANY**

**4.1** **Management of Company**.  Except as otherwise provided by this Agreement or as otherwise required by law, the business and affairs of the Company shall be managed under the direction of the CRO, who shall act as, and have all of the rights, powers, and privileges of, the sole manager of the Company.

**4.2** **Authority of CRO.**

(a)     The CRO shall have the rights, powers, and privileges provided for or granted under this Agreement, those provided for or granted under the Confirmation Order and the Plan to the Chief Restructuring Officer of the Company as a Reorganized Debtor, and those provided for or granted under the Delaware LLC Act to the sole and managing member of a Delaware limited liability company.  Except as otherwise provided by this Agreement or as otherwise required by law, the CRO shall have full, complete and exclusive authority, power, and discretion to (a) manage and control the business, property and affairs of the Company, (b) make all decisions regarding those matters, (c) perform any and all other acts or activities customary or incident to the management of the Company's business, properties and affairs, and (d) take any and all actions that are consistent with the terms of the Plan, and any powers reasonably incidental thereto, that the CRO, in the CRO's discretion, deems necessary or appropriate to fulfill the purposes of the Company set forth in Section 1.3 hereof.

(b)     The CRO shall be an Officer of the Company with title of "Chief Restructuring Officer."   As an Officer, the CRO shall have the general duties of supervision and management of the day to day operations of the Company usually vested in the chief restructuring officer of a Delaware limited liability company under a plan of liquidation.   Such duties shall include, subject to the terms of the Plan, (a) maximizing the value of the Company's assets, (b) reconciling Claims, (c) making distributions to Creditors in accordance with the Plan, (d) satisfying post-Effective Date obligations of the Company, and (e) taking other actions in order to implement the Plan.   Without limitation to the foregoing, as Chief Restructuring Officer of the Company the CRO shall be responsible for, and have the authority to do, the following (in each case in his sole discretion and subject to the Plan):

(i)     appoint such Officers, agents and employees of the Company as he shall deem necessary;

(ii)     prescribe the powers, duties and compensation of Officers, agents and employees of the Company, and to delegate authority to them, with such Persons to hold office at the discretion and subject to the supervision of the Chief Restructuring Officer;

(iii)     manage, withdraw, and administer funds of the Company;

(iv)     on behalf and in the name of the Company, engage, retain, pay and reimbursement of the expenses of Professionals (including former general bankruptcy counsel to the Company) from any funds of the Company;

(v)     on behalf and in the name of the Company, prosecute, compromise and/or settle claims and causes of action and objections to Claims against the Company;

(vi)     on behalf of and in the name of the Company, market and negotiate, enter into and perform agreements for the sale, transfer, disposition, or liquidation or other disposition of assets of the Company, whether or not all or substantially all of the Company properties and assets), and approve the terms and conditions of any such transaction;

(vii)     authorize the investment of any moneys held as part of the assets of the Company, including the net proceeds of any sale, transfer, disposition, or liquidation of any assets of the Company, in accordance with the terms of Section 4.6;

(viii)     establish, determine the amounts of, and utilize all reserves for expenses of the Company and pay all expenses of the Company or relating to the assets of the Company;

(ix)     preside at Member meetings, if any;

(x)  authorize and cause to be made any distributions of Net Distributable Assets of the Company;

(xi)  open, maintain, and close checking, savings, and/or other depository accounts on behalf of or in the name of the Company at banks or other financial institutions;

(xii)  purchase and maintain insurance coverage for the Company and any Covered Persons, in such amounts that the CRO shall, in its sole discretion, determine, against any liability that may be asserted against or expenses that may be incurred by that Person in connection with the activities of the Company;

(xiii)  make all Tax withholdings, file Tax information returns, and make Tax elections by and on behalf of the Company and file Tax returns for the Company;

(xiv)  address general business issues involving the Company;

(xv)  authorize the enforcement and exercise by the Company of any of its rights and powers under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(xvi)  elect at any time to abandon any assets of the Company of inconsequential value to the Company;

(xvii)  authorize and approve, on behalf of or in the name of the Company, (i) any merger or dissolution of the Company or any Subsidiary of the Company; (ii) any conversion of the Company or any Subsidiary of the Company into another business entity; (iii) the adoption of any plan or agreement providing for an exchange of any equity interests held by the Company; and (iv) any amendment of the Certificate of Formation or this Agreement;

(xviii)  close the Bankruptcy Case and terminate this Agreement;

(xix)  exercise, on behalf of and in the name of the Company, any other rights, powers or privileges provided or granted to the Company under the Bankruptcy Code, this Agreement, or the Plan; and

(xx)  execute, deliver, acknowledge, file, post, or publish any documents or instruments, and take any other action, that the CRO deems necessary and proper to carry out the provisions of the Plan or the purpose and intent of this Agreement.

**4.3**  **Signing Authority**.

(a)  The CRO, acting alone, shall have the power and authority to sign, execute, deliver, acknowledge, and/or file, on behalf and in the name of the Company, all

deeds, mortgages, bonds, stock certificates, contracts, leases, reports and all other documents or instruments he may deem necessary or proper to be executed in the course of the Company's regular business and he may authorize any Assistant Chief Restructuring Officer or other Officer or agent of the Company to sign, execute, deliver, acknowledge, and/or file such documents or instruments in his place and stead. Any such documents or instruments so signed, executed, delivered, acknowledged, and/or filed, of any type or nature, shall be binding on the Company.

(b)     The CRO or any Officer may certify and authenticate records of the Company to third parties and any third party dealing with the Company, the CRO, the Member, or any Officer may rely upon a certificate signed by the CRO or any Officer as to (i) the identity of the CRO, the Member or any Officer; (ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the CRO, the Member or any Officer or are in any other manner germane to the affairs of the Company; (iii) the Persons who or entities that are authorized to execute and deliver any instrument or document of or on behalf of the Company; or (iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company, the Member, the CRO or any Officer..

4.4     **Non-Supervision by CRO**.  Subject to any restrictions expressly imposed by the Plan and the Confirmation Order, the CRO may perform his tasks, and take such other action on behalf or in the name of the Company, without supervision or approval by the Bankruptcy Court or notice to Creditors, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.5     **Professionals**.  The CRO may, but shall not be required to, consult with and retain Professionals deemed by the CRO to have qualifications necessary to assist in the proper administration of the Company.  Except as otherwise provided in the Plan, the CRO may pay such salaries, fees, and expenses of such Persons as he sees fit out of the assets of the Company in the ordinary course of business without further order of any court, including, but not limited to, the Bankruptcy Court.  The same Professional may be retained to represent Affiliates of the Company.

4.6     **Investment and Safekeeping of Assets of the Company**.  The assets of the Company and all moneys and other assets received by the CRO from the assets of the Company or proceeds thereof after payment of expenses shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Creditors, but need not be segregated from other assets of the Company, unless, and then only to the extent, required by law or the Plan.  The CRO shall be under no obligation to produce or obtain income or interest on any assets of the Company.  Any interest or income received shall be used or distributed as provided herein or in the Plan.  Except as otherwise provided by the Plan, the powers of the CRO to invest any moneys held by the CRO, other than those powers reasonably necessary to maintain the value of the assets of the Company and to further the Company's liquidating purpose, shall be limited to powers to invest in temporary, liquid investments such as in demand and time deposits (e.g., short-term certificates of deposit) in banks or other savings institutions or in United States treasury bills or notes.

**4.7**     **Limitation on Authority**.     Notwithstanding any other provision of this Agreement, the CRO shall not be authorized to, and shall not, (a) during the Plan Period, appoint any George Hofmeister Party or allow any George Hofmeister Party to act as the CRO or other Officer or employee of the Company; or (b) take any action that is inconsistent with the Plan.

**4.8**     **Required Effort**.  The CRO shall not be required to devote all or any specific amount of its time, effort or managerial resources to the affairs of the Company.  The CRO shall be obligated to devote only such time, effort and resources as he deems appropriate for the operation of the Company.

**4.9**     **Competing Activities**.  The CRO and any other Officers may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  The CRO and the other Officers shall not be obligated to present any investment opportunity to the Company.  The CRO and the other Officers shall have the right to hold any investment opportunity for their own account or to recommend such opportunity to Persons other than the Company.  The Parties acknowledge that the CRO and the other Officers own, operate, manage or provide services in respect of other businesses, including businesses that may compete with the Company or for the Member's time.  Each Party hereby waives any and all rights and claims which he or she may otherwise have against the CRO and the other Officers as a result of any of such activities.

**4.10**     **Transactions between the Company and the Member**.  Notwithstanding that it may constitute a conflict of interest, the CRO and its Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from Persons capable of similarly performing them.

**4.11**     **Third Party Recourse**.  Every Person contracting or otherwise dealing with or having any relationship with the Company shall have recourse only to the assets of the Company for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and neither the CRO nor any Officer shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a CRO or Officer.

**4.12**     **Limitation on Liability.**

(a)     Neither the CRO nor the Member, irrespective of the capacity in which such Person  acts, shall be liable to the Company for any Loss incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted in good faith by the CRO or the Member, as the case may be, and no other Covered Person shall be liable to the Company, the CRO or the Member for any Loss incurred by reason of any act or omission (whether or not constituting negligence) performed or omitted by the Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on the Covered Person by this

Agreement, except that a Covered Person (other than the CRO or the Member, irrespective of the capacity in which such Person acts) shall be liable for any Loss incurred by reason of the Covered Person's gross negligence and a Covered Person (including the Member) shall be liable for any Loss incurred by reason of the Covered Person's willful misconduct or fraud.

(b)      A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within the professional or expert competence of that Covered Person, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions might properly be paid.  The foregoing provision shall in no way be deemed to reduce the limitation on liability of the CRO or the Member as provided in Section 4.12(a).

(c)      The limitation on liability set forth in Section 4.12(a) hereof shall to apply (i) in any context, whether or not in connection with litigation in which any Covered Person is a party and whether or not in connection with the enforcement of this Agreement (including the exculpation provisions hereof), (ii) to any act or omission in the performance or non-performance by any Covered Person of this Agreement, the Plan, or the Confirmation Order, and (iii) to any Loss in any way caused by, relating to, based upon, or arising out of (directly or indirectly) an act or omission by a Covered Person; *provided, however*, that the foregoing limitation on liability shall not apply to any Losses suffered or incurred by any Creditor, the CRO or Member that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or fraud of such Covered Person.

(d)      None of the Covered Persons shall be presumed to be responsible for the acts or omissions of any other Covered Person.  In no event shall any Covered Person be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, irrespective of whether the Covered Person  has been informed of the likelihood of such loss or damages and regardless of the form of action.

(e)      The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity (including such fiduciary duties), are agreed by the Parties to eliminate and replace any other such duties and liabilities (including such fiduciary duties) of the Covered Person, to the maximum extent permissible by law.  To the extent that, at law or in equity, a Covered Person has duties and liabilities (including fiduciary duties) relating to the Company, such Covered Person acting under this Agreement shall not be liable to the Company or the Member for actions or omissions in good faith reliance on the provisions hereof.

(f)     All provisions of this Section shall apply to any former Covered Person for all actions or omissions taken while such Person was a Covered Person to the same extent as if that Person were still a Covered Person.

**4.13     Indemnification**.

(a)     To the fullest extent permitted by applicable law, (a) the CRO and the Member (irrespective of the capacity in which such Person acts) shall be entitled to indemnification from the Company for any Loss incurred by the CRO or the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted and (b) any other Covered Person shall be entitled to indemnification from the Company for any Loss incurred by that Covered Person by reason of any act or omission (whether or not constituting negligence) performed or omitted by that Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on that Covered Person by this Agreement, except that no Covered Person (other than the CRO and the Member, irrespective of the capacity in which such Person acts) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence of such Covered Person and no Covered Person (including the Member) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the willful misconduct of such Covered Person with respect to those acts or omissions; but any indemnity under this Section 4.13 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have any personal liability on account thereof.  This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the CRO, or the dissolution of the Company, and shall inure to the benefit of the Indemnified Parties' respective successor, heirs, and assigns.

(b)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred  by a Covered Person in defending any claim, demand,  action, suit or proceeding shall, from time to time, be advanced by the Company before the final disposition of the claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay that amount if it shall be determined that the Covered Person is not entitled to be indemnified under this Section.

**ARTICLE V**
**TERM, REMOVAL AND COMPENSATION OF CRO**

**5.1     Term of Service**.  Effective on the Effective Date, John C. DiDonato shall be the CRO.  The CRO shall serve until (a) the completion of all the CRO's duties, responsibilities and obligations under this Agreement and the Plan; (b) dissolution of the Company in accordance with the terms of this Agreement and the Plan; or (c) the CRO's resignation, death, incapacity, or removal.

**5.2**     **Removal of CRO**.  No Person serving as CRO may be removed as CRO except by order of the Bankruptcy Court by reason of an act or omission by such Person constituting gross negligence or willful misconduct.  No such removal shall have any effect on the CRO's continuing role as Chief Restructuring Officer of any other Debtor.

**5.3**     **Resignation of CRO**.  The CRO may resign at any time.  In the event of a resignation, the resigning CRO shall render to the Member a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that CRO.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered;  and (iii) the date the accounting described in the preceding sentence is transmitted to the Member by first class mail, postage pre-paid.  In the event of any resignation or termination of the CRO, the Person serving as CRO shall be entitled to any compensation and payment or reimbursement of expenses due, in accordance with Section 5.7 hereof.

**5.4**     **Appointment of Successor CRO**.  Upon the resignation, death, incapacity, or removal of a CRO, the Bankruptcy Court may appoint the Successor CRO.  Any Successor CRO so appointed, as a condition of such appointment, shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the Successor CRO and all of the Successor CRO's heirs, legal or personal representatives, successors, or assigns.  Notwithstanding the foregoing, during the Plan Period, no George Hofmeister Party shall be appointed or act as CRO or Successor CRO of the Company.

**5.5**     **Powers and Duties of Successor CRO**.  A Successor CRO shall have all the rights, privileges, powers, and duties of any predecessor CRO under this Agreement and the Plan.

**5.6**     **Company Continuance**.  The resignation, death, incapacitation, or removal of the CRO shall not cause the dissolution of the Company, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by the predecessor CRO.

**5.7**     **Compensation of the CRO and Costs of Administration**.  The Person serving as CRO shall receive (i) compensation  for services rendered on behalf of the Company, which compensation shall be paid for such Person's time spent on the Company matters on an hourly basis at the rate that such Person customarily charges for professional services, and (ii) payment or reimbursement for expenses incurred or paid by such Person on behalf of or for the benefit of the Company, which compensation and payment or reimbursement of expenses shall be a charge against and paid out of the Company Assets.  All such compensation and payment or reimbursement of expenses, as well as all costs, expenses, and obligations incurred by the Person serving as CRO (or Professionals who may be employed by the CRO) in administering the Company, in carrying out any responsibilities under this Agreement, or in any manner connected, incidental, or related thereto, shall be paid by the CRO from the assets of the Company prior to any distribution to the Creditors.

## ARTICLE VI
## OFFICERS

**6.1** **Officers and Agents**.  The CRO may from time to time appoint such additional Officers and agents as it deems advisable; *provided, however*, that no George Hofmeister Party may serve as an officer of the Reorganized Debtors.  Any number of offices may be held by the same Person, but an Officer shall not execute, acknowledge or verify an instrument in more than one capacity if the instrument is required by law to be executed, acknowledged or verified by two or more Officers.  An Officer has such authority and shall perform such duties in the management of the Company as provided in this Agreement, or as may be determined by resolution of the CRO not inconsistent with this Agreement, and as generally pertain to their offices, subject to the control of the CRO.

**6.2** **Compensation**.  The compensation of all Officers and employees of the Company shall be fixed by the CRO and no Officer shall be prevented from receiving such compensation by reason of the fact that he or she is also a CRO or a Member.

**6.3** **Term**.  Each Officer shall hold office for the term for which he or she is elected or appointed and until his or her successor is elected or appointed and qualified, or until his or her death, resignation or removal.  The election or appointment of an Officer does not, by itself, create contract rights.

**6.4** **Removal**.  An Officer elected or appointed by the CRO may be removed by the CRO whenever in its judgment the best interests of the Company would be served thereby.  The removal of an Officer shall be without prejudice to his or her contract rights, if any.

**6.5** **Resignation**.  An Officer may resign by written notice to the Company.  The resignation is effective upon its receipt by the Company or at a subsequent time specified in the notice of resignation.

**6.6** **Vacancies**.  Any vacancy occurring in any office of the Company shall be filled by the CRO.

**6.7** **Vice President**.  In the absence of the CRO or in the event of his death, inability or refusal to act, the Vice President shall perform the duties of CRO, and when so acting, shall have all the powers of and be subject to all the restrictions upon the CRO.  The Vice President shall perform such other duties as from time to time may be assigned to him by the CRO or by the CRO.  When more than one Vice President has been selected by the CRO only one Vice Chief President shall be required to be Officer, but only a Vice President who is an Officer may perform the duties of the CRO as provided in this Agreement.

**6.8** **Secretary**.  The Secretary shall act under the direction of the CRO.  The Secretary shall attend all Member meetings, record minutes of the proceedings and maintain the minutes and all documents evidencing Company action taken by written consent of the Member in the Company's minute books.  The Secretary shall perform these duties for committees when required.  The Secretary shall see to it that all notices of Member meetings are duly given in accordance with applicable law, the Certificate of Formation and this Agreement.  The Secretary

shall have custody of the Company's seal, if any, and when authorized by the CRO shall affix the seal to any instrument requiring it and attest such instrument.

**6.9** **Treasurer**. The Treasurer shall act under the direction of the CRO. The Treasurer shall have custody of the Company funds and securities and shall keep full and accurate accounts of the Company's assets, liabilities, receipts and disbursements in books belonging to the Company. The Treasurer shall deposit all moneys and other valuables in the name and to the credit of the Company in such depositories as may be designated by the CRO. The Treasurer shall disburse the funds of the Company as may be ordered by the CRO, taking proper vouchers for such disbursements, and shall render to the CRO (at regular meetings or whenever they request it) an account of all his or her transactions as Treasurer and of the financial condition of the Company. If required by the CRO, the Treasurer shall give the Company a bond for the faithful discharge of his or her duties in such amount and with such surety as the CRO prescribes.

**6.10** **Assistant Secretaries and Treasurers and Acting Officers**. The Assistant Secretaries and Assistant Treasurers, if any, shall act under the direction of the CRO, the Member and the Officer they assist. In the order of their seniority, the Assistant Secretaries shall, in the absence or disability of the Secretary, perform the duties and exercise the authority of the Secretary. The Assistant Treasurers, in the order of their seniority, shall, in the absence or disability of the Treasurer, perform the duties and exercise the authority of the Treasurer. The CRO shall have the power to appoint any Person to perform the duties of an Officer whenever for any reason it is impracticable for such Officer to act personally. Such acting Officer so appointed shall have the powers of and be subject to all the restrictions upon the Officer to whose office he is so appointed except as the CRO may by resolution otherwise determine.

**6.11** **Execution of Instruments**. All checks, drafts or demands for money and notes of the Company shall be signed by the CRO, the Treasurer or such Officer or Officers as the CRO from time to time designates. All funds of the Company not otherwise employed shall be deposited or used as the CRO from time to time designates. All other contracts or instruments in the name of and on the Company's behalf shall be signed by the CRO, or such Officer or Officers or other Person or Persons as the CRO from time to time designates. The CRO may also ratify or confirm the execution or delivery of any check, draft, demand for money, note, or other contract or instruments signed in the name of and on the Company's behalf.

**6.12** **Voting of Shares and Securities of Other Companies and Entities**. Subject always to the specific directions of the CRO, (a) any shares or other securities issued by any other corporation and owned or controlled by the Company may be voted at any meeting of security holders of such other corporation by the CRO or by proxy appointed by him, or in the absence of the CRO and his proxy by the Treasurer of the Company or by proxy appointed by him, or in the absence of the CRO and Treasurer, by the Secretary of the Company or by proxy appointed by him. Such proxy or consent in respect to any shares or other securities issued by any other corporation and owned by the Company shall be executed in the name of the Company by the CRO, the Treasurer or the Secretary of the Company without necessity of any authorization by the Member. Any Person or Persons designated in the manner above stated as the proxy or proxies of the Company shall have full right, power and authority to vote the shares

or other securities issued by such other corporation and owned by the Company the same as such shares or other securities might be voted by the Company.

## ARTICLE VII
## MEMBERS

**7.1**     **Member**.  The name, address and Membership Interest of the sole Member of the Company is set forth on <u>Exhibit A</u>.  At all times during the Plan Period, the Chief Restructuring Officer shall be deemed to be the sole Member of the Company.

**7.2**     **Admission of New Member Prohibited**.  No new Members may be admitted to the Company during the Plan Period.

**7.3**     **Payments to Member**.   Except as otherwise specifically provided in this Agreement, no Member is entitled to compensation for acting in the Company business during the Plan Period.   The Company may reimburse the Member and its Affiliates for expenses incurred on behalf of the Company, as approved by the CRO.

**7.4**     **Member Have No Managerial Authority**.  During the Plan Period,

(a)     the Member shall have no power to participate in the management of the business, affairs or operations of the Company; and

(b)     no Member shall have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, or to render it liable for any purpose.

**7.5**     **Voting and Consent Rights**.  During the Plan Period, the Member shall have no voting, approval or consent rights, or rights to information except to the extent required by non-waivable provisions of the Delaware LLC Act.

**7.6**     **Member Meetings**.  No meetings of the Member, whether regular or special, are required to be held.  Meetings of the Member may be called on 24 hours' notice in accordance with Section 9.1 by or at the request of the CRO, the Secretary, or the Member.  The notice must specify the place, date and time of the special meeting, but need not specify the business to be transacted at, or the purpose of, the meeting.  Meetings of the Member may be held at any location, as determined by the Person or Person(s) calling the meeting. Member may participate in a Member meeting by means of conference telephone or similar communications equipment through which all Persons participating in the meeting can communicate with each other. Participation in a meeting pursuant to this Section 7.6 constitutes presence in person at such meeting.

**7.7**     **Action by Written Consent**.  Any action required or permitted to be taken under authorization voted at a Member meeting may be taken without a meeting if, before or after the action, the Member consents to the action in writing.  Such consents shall be filed with the minutes of the proceedings of the Member or Member committee and shall have the same effect as a vote of the Member for all purposes.

## ARTICLE VIII
## DISSOLUTION AND WINDING UP

**8.1** <u>**Dissolution**</u>.  By operation of the Plan and the Confirmation Order, neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any applicable nonbankruptcy law has heretofore caused a dissolution of the Company.  The Company shall dissolve, and its affairs shall be wound up, upon the occurrence of any event that requires the dissolution of the Company under the Plan or the Delaware LLC Act; *provided, however*, upon the occurrence of any event that terminates the continued membership of the Member in the Company, the Company shall not dissolve and the personal representative (as defined in the Delaware LLC Act) of the Member shall agree in writing to continue the Company and to the admission of the personal representative of the Member or its nominee or its designee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the Member in the Company.

**8.2** <u>**Winding Up**</u>.  Upon dissolution, the Company shall cease carrying on its business and affairs and the CRO shall wind up the Company's business and affairs and the liquidation of its assets.  Upon the winding up of the Company, the assets of the Company shall be distributed in accordance with the Plan and applicable law.  Upon the completion of the winding up of the Company, the Manager shall file a certificate of cancellation with the Secretary of State of the State of Delaware canceling the Certificate of Formation, at which time the Company shall terminate.

## ARTICLE IX
## GENERAL PROVISIONS

**9.1** <u>**Notice**</u>.  All written notices to Member shall be given personally or by mail (registered, certified or other first class mail, with postage pre-paid), addressed to such Person at the address shown on Exhibit A or at such Member's last known address.  Written notices to any Member may also be delivered by overnight carrier, telegram, telex, telecopy, radiogram, cablegram, facsimile, computer transmission or similar form of communication, addressed to the address referred to in the preceding sentence.  Notices given pursuant to this Section 9.1 shall be deemed to be given when dispatched, or, if mailed, when deposited in a post office or official depository under the exclusive care and custody of the United States postal service.  Notices given by overnight carrier shall be deemed "dispatched" at 9:00 a.m. on the day the overnight carrier is reasonably requested to deliver the notice.  The Company shall have no duty to change the written address of any Member or Officer unless the Secretary receives written notice of such address change.

**9.2** <u>**Articles and Sections**</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The Article and Section headings contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

**9.3** <u>**Entire Agreement**</u>.  This Agreement constitutes the entire operating agreement of the Company.

**9.4      Termination**.  This Agreement shall terminate and be of no further force or effect upon the filing of a certificate of cancellation cancelling the Certificate of Formation pursuant to Article VIII of this Agreement; *provided, however*, that Sections 4.12 and 4.13 shall survive termination.

**9.5      Interpretation**.    In the event that any provisions of this Agreement are inconsistent with the Plan, the provisions of the Plan shall control.   The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.   Words denoting the singular shall include the plural and words denoting the plural shall include the singular.   Words denoting one gender shall include the other gender.   "Including" shall mean "including without limitation" or "including but not limited to." References to approval, consent, discretion or judgment on the part of the CRO shall mean the CRO's sole consent, discretion or judgment, provided the exercise thereof does not constitute gross negligence or willful misconduct.

**9.6      Governing Law**.    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to application of conflict of laws principles.

**9.7      Amendment**.    This Agreement may be modified, amended or supplemented only by a written instrument executed by the Company and the Member and approval of the Bankruptcy Court; *provided, however*, that the following provisions shall not be amended, and shall remain unmodified and in full force and effect, at all times during the Plan Period:  Section 4.1, Section 4.2, Section 4.3, Section 4.4, Section 4.7, Section 5.4, Section 6.1, Section 7.5, this Section 9.7 and Section 9.10.

**9.8      Severability**.    If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against such court's or authority's regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**9.9      Third Party Beneficiaries**.   Except as otherwise contemplated in Section 4.12 and Section 4.13, this Agreement is intended for the benefit of the Parties and is not intended to create any rights, powers or benefit in favor of any other Persons.

**9.10     CONSENT TO JURISDICTION**.   **THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF WILMINGTON, DELAWARE, (B) IRREVOCABLY SUBMITS TO THE**

**JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED HEREIN (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY DELAWARE LAW).**

**9.11** <u>**Definitions**</u>.  Unless expressly provided otherwise in the specific context, capitalized terms used herein without definition shall have the meanings, if any, ascribed to such terms in the Plan. The terms set forth below shall have the following meanings when used in this Agreement:

(a) *"**Affiliate**"* means, with respect to any Person, a Person who controls such Person, a Person controlled by such Person, or a Person under common control with such Person.

(b) *"**Agreement**"* has the meaning set forth in the preamble to this Agreement.

(c) *"**Bankruptcy Case**"* means Case No. 13-10027 (BLS) in the Bankruptcy Court.

(d) *"**Certificate of Formation**"* has the meaning set forth in Section 1.1.

(e) *"**Company**"* has the meaning set forth in the preamble to this Agreement.

(f) *"**Covered Person**"* means the CRO, any other Officer, or any director, shareholder, member, manager, partner, employee, Professional, or expressly authorized agent of the Company.

(g) *"**Creditors**"* means the holder of any Allowed Claim against the Company.

(h) *"**CRO**"* means John C. DiDonato or any Person appointed as CRO as his successor in accordance with this Agreement.

(i) *"**Delaware LLC Act**"* has the meaning set forth in Section 1.1 above.

(j) *"**Effective Date**"* has the meaning set forth in the preamble to this Agreement.

(k)　　"***Loss***" means any loss, claim, damages, liability, obligation, settlement, judgment, action, cause of action, litigation, mediation, arbitration, proceeding, investigation (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalty, cost, or expense, including fees and disbursements.

(l)　　"***Member***" means the sole Member of the Company, which shall be the CRO.

(m)　　"***Membership Interest***" means the interest of a Member in the Company.

(n)　　"***Membership Interest Rights***" means all rights, powers and privileges and all benefits arising out of or related to the Membership Interest, whether arising under this Agreement, the Delaware LLC Act or otherwise under applicable law, including any and all voting, consent, and approval rights, rights to distributions (liquidating or otherwise), allocations, and other economic benefits, and rights to information and management of the Company.

(o)　　"***Officer***" means an officer of the Company.

(p)　　"***Plan Period***" means the period beginning on the Effective Date and ending on the date of the entry of an order of the Bankruptcy Court for a final decree in the Bankruptcy Case.

(q)　　"***Professionals***" shall mean attorneys, accountants, appraisers, financial advisers, real estate and other brokers, investment bankers and other professionals.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first above written.

<u>**THE COMPANY**</u>:

GREENWOOD FORGINGS, LLC


By: _____
       John C. DiDonato
Its:    Chief Restructuring Officer


<u>**SOLE MEMBER**</u>:

_____
John C. DiDonato,
Chief Restructuring Officer of the Company under the Plan


*SIGNATURE PAGE TO*
*AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF*
*GREENWOOD FORGINGS, LLC*

**EXHIBIT A**

**SCHEDULE OF MEMBERS**

| NAME | ADDRESS | PERCENTAGE INTEREST |
|---|---|---|
| John C. DiDonato, Chief Restructuring Officer | c/o Huron Consulting Services LLC 900 Wilshire Drive, Suite 270 Troy, MI  48084 | 100% |

# Exhibit E-4

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY
# AGREEMENT
# OF
# US TOOL & ENGINEERING, LLC

This Amended and Restated Limited Liability Company Agreement (this "***Agreement***") of US Tool & Engineering, LLC (the "***Company***"), is entered into by the signatories hereto (the "***Parties***"), effective as of the __<sup>th</sup> day of _____, 2015 (the "***Effective Date***").

## RECITALS

The Parties hereby acknowledge that:

A.     Each of the Company, Revstone Industries, LLC ("***Revstone***"), Spara, LLC ("***Spara***"), Greenwood Forgings, LLC ("***Greenwood***", and together with the Company, Revstone, and Spara, the "***Debtors***") is a Delaware limited liability company and each has been the subject of voluntary chapter 11 proceedings under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as now in effect or hereafter amended, the "***Bankruptcy Code***") before the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").

B.     On December 10, 2014, the Debtors filed that certain Debtors' Joint Chapter 11 Plan of Reorganization (as the same may be modified, amended or supplemented from time to time, the "***Plan***"). The Plan provided for a reorganization of the Company and the other Debtors.

C.     On _____, 2015, the Plan was confirmed by order of the Bankruptcy Court (as the same may be modified, amended or supplemented from time to time, the "***Confirmation Order***"). The effective date of the Plan occurred on _____, 2015.

D.     Pursuant to the Plan, (a) all assets of the Company as a Debtor in the Bankruptcy Case are deemed to have re-vested in the Company; (b) all rights of Revstone Tool & Engineering, LLC, a Delaware limited liability company ("***Revstone Tool & Engineering***"), as a member of the Company are deemed to be suspended; (c) the Chief Restructuring Officer under the Plan is deemed to be admitted as, and authorized to exercise all of the rights and powers of, the sole member of the Company; (d) the Chief Restructuring Officer under the Plan is deemed to be appointed as sole manager of the Company and in that capacity to authorized to manage the business and affairs thereof; and (e) the Company's limited liability company agreement is required to be replaced and amended by a Reorganized Debtor Operating Agreement for the Company consistent with the terms and conditions set forth in the Plan.

E.     In compliance with the Confirmation Order, the Parties now wish to implement the Plan by adopting this Agreement as the Reorganized Debtor Operating Agreement for the Company.

## AGREEMENT

The Member hereby amends and restates the Company's existing limited liability company agreement in its entirety to read in full as follows:

## ARTICLE I

## ORGANIZATION

**1.1** **Formation**.  The Company was organized as a Delaware limited liability company pursuant to the Delaware Limited Liability Company Act (as amended from time to time, the "***Delaware LLC Act***") by the filing on December 2, 2010 of a Certificate of Formation with the Secretary of State of the State of Delaware (the "***Certificate of Formation***").

**1.2** **Name**.  The name of the Company is "US Tool & Engineering, LLC."  The Company may also conduct its business under one or more assumed names.

**1.3** **Purposes**.  Subject in all respects to the terms of the Confirmation Order and the Plan, the purposes for which the Company was formed are to engage in any activity or business within the purposes for which a limited liability company may be formed under the law of the State of Delaware, including, without limitation, the following activities:

(a)  Taking any actions that are necessary or appropriate to cause the Plan to be effectuated as of the Effective Date or that are contemplated by the Plan to be taken on or about the Effective Date, including the payment of any Allowed Administrative Expenses and Priority Non-Tax Claims;

(b)  Preserving, maintaining, repairing, using, transferring, selling, disposing of and liquidating all assets of the Company, including any proceeds thereof, and any and all other assets, rights or privileges of the Company;

(c)  Investigating and pursuing any Retained Rights of Action of the Company as the representative of the Company's bankruptcy estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code;

(d)  Filing objections in the Bankruptcy Case, reconciling Claims in the Bankruptcy Case, and exercising rights of set off with respect thereto;

(e)  With respect to any Subsidiary of the Company, exercising all rights and powers under the Plan and under applicable law as the sole member or shareholder of such Subsidiary, including the right to amend the articles or certificate of incorporation, bylaws, articles or certificate of formation, and limited liability company or operating agreement thereof from time to time and to appoint one or more directors or managers thereof;

(f)  Demanding, accepting, and receiving from any Subsidiary any cash or property received by such Subsidiary, gross or net of any expenses of such Subsidiary;

(g)     Opening, making deposits to and withdrawals from, and closing any accounts contemplated by the Plan;

(h)     Establishing any cash reserves contemplated by the Plan and paying all expenses of the Company incurred following the Effective Date;

(i)     Employing, compensating, and paying or reimbursing expenses of the Person serving as the CRO and other Persons or Professionals from any funds of the Company;

(j)     Filing suit or any appropriate motion for relief in the Bankruptcy Court or in any other court of competent jurisdiction on behalf of in or in the name of the Company to resolve any disagreement, conflict, dispute, or ambiguity under the Plan or in connection with the exercise of its rights, powers, or duties;

(k)     Protecting and enforcing the rights to the assets of the Company by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(l)     Causing the Company to make, as provided for in, or contemplated by, the Plan, distributions of Net Distributable Assets;

(m)     Retaining and pay third parties and Professionals pursuant to Section 4.5 of this Agreement;

(n)     Establishing the amount and causing the Company to maintain appropriate insurance coverage;

(o)     Enforcing and exercising all rights and powers of the Company, and performing all duties and obligations, under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(p)     Investing any moneys held as part of the assets of the Company in accordance with the terms of Section 4.6 hereof;

(q)     Electing at any time to abandon any assets of the Company of inconsequential value to the Company;

(r)     Dissolving any Subsidiary of the Company in accordance with the Plan; and

(s)     Closing the Bankruptcy Case and terminating this Agreement.

**1.4     Non-Supervision by Bankruptcy Court**.  Subject to the requirements of, and except as otherwise provided in, the Confirmation Order and the Plan, the Company shall be permitted to conduct its business and the activities set forth in Section 1.3, take any and all actions reasonably necessary to implement the Plan, and otherwise administer its affairs without

supervision by the Bankruptcy Court and free of any restrictions under the Bankruptcy Code or the Bankruptcy Rules.

**1.5** **Duration**.  The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section.  The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the CRO or (b) the entry of a decree of judicial dissolution  under  section 18-802 of the Delaware LLC Act.

**1.6** **Offices and Resident Agent**.  The principal office of the Company shall be located at Revstone Industries, LLC, et al., c/o Huron Consulting Services LLC, 900 Wilshire Drive, Suite 270, Troy, MI 48084, or at such place within or without Michigan as the Manager from time to time determines.  The registered office and the resident agent of the Company shall be as designated in the Certificate of Formation or any amendment thereof.

**1.7** **Limited Liability Company Agreement**.  This Agreement shall be the "limited liability company agreement" of the Company within the meaning of the Delaware LLC Act and the "Reorganized Debtor Operating Agreement" of the Company within the meaning of the Plan.  In the event that any provisions of this Agreement are inconsistent with provisions of the Reorganized Debtor Operating Agreement the Company contemplated by the Plan, the provisions of the Plan shall control.

## ARTICLE II
## BOOKS, RECORDS AND ACCOUNTING

**2.1** **Books and Records**.  The CRO shall maintain all of the books and records of the Company referenced in section 18-305 of the Delaware LLC Act, to the extent applicable to the Company; provided, however, that the CRO shall not be responsible for the accuracy of any books or records of the Company relating to any period before the date of this Agreement.  Such books and records may be kept at the Company's principal office or such other place(s) as the CRO may designate.

**2.2** **Accounting**.  The particular accounting methods and principles to be followed by the Company shall be chosen by the CRO.

**2.3** **Fiscal Year**.  The fiscal year of the Company shall begin on the 1st day of January in each year.  For purposes of Tax reporting, the Company shall file its Tax returns on a calendar year basis.

## ARTICLE III
## MEMBERSHIP, CAPITAL CONTRIBUTIONS AND DISTRIBUTIONS

**3.1** **Suspension of Membership Interest Rights of Revstone Tool & Engineering**.  By operation of the Plan and Confirmation Order and effective as of the Effective Date, all Membership Interest Rights of Revstone Tool & Engineering have been suspended and shall remain suspended at all times during the Plan Period.  At all times during the Plan Period, all Membership Interest Rights shall be held and exercised exclusively by the Chief Restructuring Officer under the Plan, who shall be deemed to be the sole Member of the Company.

**3.2** __Current Members__.  All Membership Interest of the Company outstanding as of the Effective Date at all times during the Plan Period shall be deemed to be held by the Chief Restructuring Officer under the Plan, whose address and deemed Membership Interest are set forth on Exhibit A.  At all times during the Plan Period, the Chief  Restructuring Officer shall be deemed to be the sole Member of the Company.  The Company does not have, and shall not be authorized to issue, any non-voting equity securities within the meaning of section 1123(a)(6) of the Bankruptcy Code.

**3.3** __Additional Members__.   No new Membership Interest may be created or issued to any Person except with the express prior written approval of the CRO.

**3.4** __Additional Capital Contributions__.  The Member shall not be required to make any additional capital contribution to the Company.

**3.5** __Distributions__.  No distributions of the Company shall be made to the Member in respect of the Membership Interest.   Net Distributable Assets of the Company shall be distributed only to such Persons, only at such times, and only in such amounts as is provided for under the Plan.  The Member shall have a contingent interest in all cash (if any) remaining after all Allowed Claims and Administrative Expenses have been paid or otherwise satisfied in full by the Company (unless otherwise agreed to by the applicable Creditor) in accordance with the Plan.

**3.6** __Liability__.  Except to the extent provided in the Delaware LLC Act, the Member shall not have any liability for the obligations or liabilities of the Company.

**ARTICLE IV**
**MANAGEMENT AND CONTROL OF COMPANY**

**4.1** __Management of Company__.  Except as otherwise provided by this Agreement or as otherwise required by law, the business and affairs of the Company shall be managed under the direction of the CRO, who shall act as, and have all of the rights, powers, and privileges of, the sole manager of the Company.

**4.2** __Authority of CRO.__

(a)     The CRO shall have the rights, powers, and privileges provided for or granted under this Agreement, those provided for or granted under the Confirmation Order and the Plan to the Chief Restructuring Officer of the Company as a Reorganized Debtor, and those provided for or granted under the Delaware LLC Act to the sole and managing member of a Delaware limited liability company.  Except as otherwise provided by this Agreement or as otherwise required by law, the CRO shall have full, complete and exclusive authority, power, and discretion to (a) manage and control the business, property and affairs of the Company, (b) make all decisions regarding those matters, (c) perform any and all other acts or activities customary or incident to the management of the Company's business, properties and affairs, and (d) take any and all actions that are consistent with the terms of the Plan, and any powers reasonably incidental thereto, that the CRO, in the CRO's discretion, deems necessary or appropriate to fulfill the purposes of the Company set forth in Section 1.3 hereof.

(b)     The CRO shall be an Officer of the Company with title of "Chief Restructuring Officer."  As an Officer, the CRO shall have the general duties of supervision and management of the day to day operations of the Company usually vested in the chief restructuring officer of a Delaware limited liability company under a plan of liquidation.  Such duties shall include, subject to the terms of the Plan, (a) maximizing the value of the Company's assets, (b) reconciling Claims, (c) making distributions to Creditors in accordance with the Plan, (d) satisfying post-Effective Date obligations of the Company, and (e) taking other actions in order to implement the Plan.  Without limitation to the foregoing, as Chief Restructuring Officer of the Company the CRO shall be responsible for, and have the authority to do, the following (in each case in his sole discretion and subject to the Plan):

(i)     appoint such Officers, agents and employees of the Company as he shall deem necessary;

(ii)     prescribe the powers, duties and compensation of Officers, agents and employees of the Company, and to delegate authority to them, with such Persons to hold office at the discretion and subject to the supervision of the Chief Restructuring Officer;

(iii)     manage, withdraw, and administer funds of the Company;

(iv)     on behalf and in the name of the Company, engage, retain, pay and reimbursement of the expenses of Professionals (including former general bankruptcy counsel to the Company) from any funds of the Company;

(v)     on behalf and in the name of the Company, prosecute, compromise and/or settle claims and causes of action and objections to Claims against the Company;

(vi)     on behalf of and in the name of the Company, market and negotiate, enter into and perform agreements for the sale, transfer, disposition, or liquidation or other disposition of assets of the Company, whether or not all or substantially all of the Company properties and assets), and approve the terms and conditions of any such transaction;

(vii)     authorize the investment of any moneys held as part of the assets of the Company, including the net proceeds of any sale, transfer, disposition, or liquidation of any assets of the Company, in accordance with the terms of Section 4.6;

(viii)     establish, determine the amounts of, and utilize all reserves for expenses of the Company and pay all expenses of the Company or relating to the assets of the Company;

(ix)     preside at Member meetings, if any;

(x)     authorize and cause to be made any distributions of Net Distributable Assets of the Company;

(xi)    open, maintain, and close checking, savings, and/or other depository accounts on behalf of or in the name of the Company at banks or other financial institutions;

(xii)   purchase and maintain insurance coverage for the Company and any Covered Persons, in such amounts that the CRO shall, in its sole discretion, determine, against any liability that may be asserted against or expenses that may be incurred by that Person in connection with the activities of the Company;

(xiii)  make all Tax withholdings, file Tax information returns, and make Tax elections by and on behalf of the Company and file Tax returns for the Company;

(xiv)   address general business issues involving the Company;

(xv)    authorize the enforcement and exercise by the Company of any of its rights and powers under any executory contract or unexpired lease re-vested in the Company pursuant to the Plan, including the right to give any consent, grant any approval, exercise any option, or make any election;

(xvi)   elect at any time to abandon any assets of the Company of inconsequential value to the Company;

(xvii)  authorize and approve, on behalf of or in the name of the Company, (i) any merger or dissolution of the Company or any Subsidiary of the Company; (ii) any conversion of the Company or any Subsidiary of the Company into another business entity; (iii) the adoption of any plan or agreement providing for an exchange of any equity interests held by the Company; and (iv) any amendment of the Certificate of Formation or this Agreement;

(xviii) close the Bankruptcy Case and terminate this Agreement;

(xix)   exercise, on behalf of and in the name of the Company, any other rights, powers or privileges provided or granted to the Company under the Bankruptcy Code, this Agreement, or the Plan; and

(xx)    execute, deliver, acknowledge, file, post, or publish any documents or instruments, and take any other action, that the CRO deems necessary and proper to carry out the provisions of the Plan or the purpose and intent of this Agreement.

## 4.3     **Signing Authority**.

(a)     The CRO, acting alone, shall have the power and authority to sign, execute, deliver, acknowledge, and/or file, on behalf and in the name of the Company, all

deeds, mortgages, bonds, stock certificates, contracts, leases, reports and all other documents or instruments he may deem necessary or proper to be executed in the course of the Company's regular business and he may authorize any Assistant Chief Restructuring Officer or other Officer or agent of the Company to sign, execute, deliver, acknowledge, and/or file such documents or instruments in his place and stead. Any such documents or instruments so signed, executed, delivered, acknowledged, and/or filed, of any type or nature, shall be binding on the Company.

(b)     The CRO or any Officer may certify and authenticate records of the Company to third parties and any third party dealing with the Company, the CRO, the Member, or any Officer may rely upon a certificate signed by the CRO or any Officer as to (i) the identity of the CRO, the Member or any Officer; (ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the CRO, the Member or any Officer or are in any other manner germane to the affairs of the Company; (iii) the Persons who or entities that are authorized to execute and deliver any instrument or document of or on behalf of the Company; or (iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company, the Member, the CRO or any Officer..

4.4     **<u>Non-Supervision by CRO</u>**.  Subject to any restrictions expressly imposed by the Plan and the Confirmation Order, the CRO may perform his tasks, and take such other action on behalf or in the name of the Company, without supervision or approval by the Bankruptcy Court or notice to Creditors, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.5     **<u>Professionals</u>**.  The CRO may, but shall not be required to, consult with and retain Professionals deemed by the CRO to have qualifications necessary to assist in the proper administration of the Company.  Except as otherwise provided in the Plan, the CRO may pay such salaries, fees, and expenses of such Persons as he sees fit out of the assets of the Company in the ordinary course of business without further order of any court, including, but not limited to, the Bankruptcy Court.  The same Professional may be retained to represent Affiliates of the Company.

4.6     **<u>Investment and Safekeeping of Assets of the Company</u>**.  The assets of the Company and all moneys and other assets received by the CRO from the assets of the Company or proceeds thereof after payment of expenses shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Creditors, but need not be segregated from other assets of the Company, unless, and then only to the extent, required by law or the Plan.  The CRO shall be under no obligation to produce or obtain income or interest on any assets of the Company.  Any interest or income received shall be used or distributed as provided herein or in the Plan.  Except as otherwise provided by the Plan, the powers of the CRO to invest any moneys held by the CRO, other than those powers reasonably necessary to maintain the value of the assets of the Company and to further the Company's liquidating purpose, shall be limited to powers to invest in temporary, liquid investments such as in demand and time deposits (e.g., short-term certificates of deposit) in banks or other savings institutions or in United States treasury bills or notes.

**4.7**     **Limitation on Authority**.     Notwithstanding any other provision of this Agreement, the CRO shall not be authorized to, and shall not, (a) during the Plan Period, appoint any George Hofmeister Party or allow any George Hofmeister Party to act as the CRO or other Officer or employee of the Company; or (b) take any action that is inconsistent with the Plan.

**4.8**     **Required Effort**.  The CRO shall not be required to devote all or any specific amount of its time, effort or managerial resources to the affairs of the Company.  The CRO shall be obligated to devote only such time, effort and resources as he deems appropriate for the operation of the Company.

**4.9**     **Competing Activities**.  The CRO and any other Officers may engage or invest in any activity, including without limitation those that might be in direct or indirect competition with the Company.  Neither the Company nor any Member shall have any right in or to such other activities or to the income or proceeds derived therefrom.  The CRO and the other Officers shall not be obligated to present any investment opportunity to the Company.  The CRO and the other Officers shall have the right to hold any investment opportunity for their own account or to recommend such opportunity to Persons other than the Company.  The Parties acknowledge that the CRO and the other Officers own, operate, manage or provide services in respect of other businesses, including businesses that may compete with the Company or for the Member's time.  Each Party hereby waives any and all rights and claims which he or she may otherwise have against the CRO and the other Officers as a result of any of such activities.

**4.10**     **Transactions between the Company and the Member**.  Notwithstanding that it may constitute a conflict of interest, the CRO and its Affiliates may engage in any transaction with the Company so long as such transaction is not expressly prohibited by this Agreement and so long as the terms and conditions of such transaction, on an overall basis, are fair and reasonable to the Company and are at least as favorable to the Company as those that are generally available from Persons capable of similarly performing them.

**4.11**     **Third Party Recourse**.  Every Person contracting or otherwise dealing with or having any relationship with the Company shall have recourse only to the assets of the Company for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and neither the CRO nor any Officer shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a CRO or Officer.

**4.12**     **Limitation on Liability.**

(a)     Neither the CRO nor the Member, irrespective of the capacity in which such Person  acts, shall be liable to the Company for any Loss incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted in good faith by the CRO or the Member, as the case may be, and no other Covered Person shall be liable to the Company, the CRO or the Member for any Loss incurred by reason of any act or omission (whether or not constituting negligence) performed or omitted by the Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on the Covered Person by this

Agreement, except that a Covered Person (other than the CRO or the Member, irrespective of the capacity in which such Person acts) shall be liable for any Loss incurred by reason of the Covered Person's gross negligence and a Covered Person (including the Member) shall be liable for any Loss incurred by reason of the Covered Person's willful misconduct or fraud.

(b)     A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within the professional or expert competence of that Covered Person, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions might properly be paid.   The foregoing provision shall in no way be deemed to reduce the limitation on liability of the CRO or the Member as provided in Section 4.12(a).

(c)     The limitation on liability set forth in Section 4.12(a) hereof shall to apply (i) in any context, whether or not in connection with litigation in which any Covered Person is a party and whether or not in connection with the enforcement of this Agreement (including the exculpation provisions hereof), (ii) to any act or omission in the performance or non-performance by any Covered Person of this Agreement, the Plan, or the Confirmation Order, and (iii) to any Loss in any way caused by, relating to, based upon, or arising out of (directly or indirectly) an act or omission by a Covered Person; *provided, however*, that the foregoing limitation on liability shall not apply to any Losses suffered or incurred by any Creditor, the CRO or Member that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, willful misconduct or fraud of such Covered Person.

(d)     None of the Covered Persons shall be presumed to be responsible for the acts or omissions of any other Covered Person.  In no event shall any Covered Person be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, irrespective of whether the Covered Person  has been informed of the likelihood of such loss or damages and regardless of the form of action.

(e)     The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity (including such fiduciary duties), are agreed by the Parties to eliminate and replace any other such duties and liabilities (including such fiduciary duties) of the Covered Person, to the maximum extent permissible by law.  To the extent that, at law or in equity, a Covered Person has duties and liabilities (including fiduciary duties) relating to the Company, such Covered Person acting under this Agreement shall not be liable to the Company or the Member for actions or omissions in good faith reliance on the provisions hereof.

(f)     All provisions of this Section shall apply to any former Covered Person for all actions or omissions taken while such Person was a Covered Person to the same extent as if that Person were still a Covered Person.

**4.13    Indemnification**.

(a)     To the fullest extent permitted by applicable law, (a) the CRO and the Member (irrespective of the capacity in which such Person acts) shall be entitled to indemnification from the Company for any Loss incurred by the CRO or the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted and (b) any other Covered Person shall be entitled to indemnification from the Company for any Loss incurred by that Covered Person by reason of any act or omission (whether or not constituting negligence) performed or omitted by that Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on that Covered Person by this Agreement, except that no Covered Person (other than the CRO and the Member, irrespective of the capacity in which such Person acts) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the gross negligence of such Covered Person and no Covered Person (including the Member) shall be entitled to be indemnified in respect of any Loss finally determined by a court of competent jurisdiction to have resulted primarily and directly from the willful misconduct of such Covered Person with respect to those acts or omissions; but any indemnity under this Section 4.13 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have any personal liability on account thereof.   This indemnification shall survive the death, dissolution, resignation or removal, as may be applicable, of the CRO, or the dissolution of the Company, and shall inure to the benefit of the Indemnified Parties' respective successor, heirs, and assigns.

(b)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred  by a Covered Person in defending any claim, demand,  action, suit or proceeding shall, from time to time, be advanced by the Company before the final disposition of the claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay that amount if it shall be determined that the Covered Person is not entitled to be indemnified under this Section.

## ARTICLE V
## TERM, REMOVAL AND COMPENSATION OF CRO

**5.1     Term of Service**.  Effective on the Effective Date, John C. DiDonato shall be the CRO.  The CRO shall serve until (a) the completion of all the CRO's duties, responsibilities and obligations under this Agreement and the Plan; (b) dissolution of the Company in accordance with the terms of this Agreement and the Plan; or (c) the CRO's resignation, death, incapacity, or removal.

**5.2    Removal of CRO**.  No Person serving as CRO may be removed as CRO except by order of the Bankruptcy Court by reason of an act or omission by such Person constituting gross negligence or willful misconduct.  No such removal shall have any effect on the CRO's continuing role as Chief Restructuring Officer of any other Debtor.

**5.3    Resignation of CRO**.  The CRO may resign at any time.  In the event of a resignation, the resigning CRO shall render to the Member a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that CRO.  The resignation shall be effective on the later of (i) the date specified in the notice delivered to the Bankruptcy Court; (ii) the date that is thirty days (30) after the date such notice is delivered;  and (iii) the date the accounting described in the preceding sentence is transmitted to the Member by first class mail, postage pre-paid.  In the event of any resignation or termination of the CRO, the Person serving as CRO shall be entitled to any compensation and payment or reimbursement of expenses due, in accordance with Section 5.7 hereof.

**5.4    Appointment of Successor CRO**.  Upon the resignation, death, incapacity, or removal of a CRO, the Bankruptcy Court may appoint the Successor CRO.  Any Successor CRO so appointed, as a condition of such appointment, shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the Successor CRO and all of the Successor CRO's heirs, legal or personal representatives, successors, or assigns.  Notwithstanding the foregoing, during the Plan Period, no George Hofmeister Party shall be appointed or act as CRO or Successor CRO of the Company.

**5.5    Powers and Duties of Successor CRO**.  A Successor CRO shall have all the rights, privileges, powers, and duties of any predecessor CRO under this Agreement and the Plan.

**5.6    Company Continuance**.  The resignation, death, incapacitation, or removal of the CRO shall not cause the dissolution of the Company, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by the predecessor CRO.

**5.7    Compensation of the CRO and Costs of Administration**.  The Person serving as CRO shall receive (i) compensation  for services rendered on behalf of the Company, which compensation shall be paid for such Person's time spent on the Company matters on an hourly basis at the rate that such Person customarily charges for professional services, and (ii) payment or reimbursement for expenses incurred or paid by such Person on behalf of or for the benefit of the Company, which compensation and payment or reimbursement of expenses shall be a charge against and paid out of the Company Assets.  All such compensation and payment or reimbursement of expenses, as well as all costs, expenses, and obligations incurred by the Person serving as CRO (or Professionals who may be employed by the CRO) in administering the Company, in carrying out any responsibilities under this Agreement, or in any manner connected, incidental, or related thereto, shall be paid by the CRO from the assets of the Company prior to any distribution to the Creditors.

# ARTICLE VI
## OFFICERS

**6.1**  **Officers and Agents**.  The CRO may from time to time appoint such additional Officers and agents as it deems advisable; *provided, however*, that no George Hofmeister Party may serve as an officer of the Reorganized Debtors.  Any number of offices may be held by the same Person, but an Officer shall not execute, acknowledge or verify an instrument in more than one capacity if the instrument is required by law to be executed, acknowledged or verified by two or more Officers.  An Officer has such authority and shall perform such duties in the management of the Company as provided in this Agreement, or as may be determined by resolution of the CRO not inconsistent with this Agreement, and as generally pertain to their offices, subject to the control of the CRO.

**6.2**  **Compensation**.  The compensation of all Officers and employees of the Company shall be fixed by the CRO and no Officer shall be prevented from receiving such compensation by reason of the fact that he or she is also a CRO or a Member.

**6.3**  **Term**.  Each Officer shall hold office for the term for which he or she is elected or appointed and until his or her successor is elected or appointed and qualified, or until his or her death, resignation or removal.  The election or appointment of an Officer does not, by itself, create contract rights.

**6.4**  **Removal**.  An Officer elected or appointed by the CRO may be removed by the CRO whenever in its judgment the best interests of the Company would be served thereby.  The removal of an Officer shall be without prejudice to his or her contract rights, if any.

**6.5**  **Resignation**.  An Officer may resign by written notice to the Company.  The resignation is effective upon its receipt by the Company or at a subsequent time specified in the notice of resignation.

**6.6**  **Vacancies**.  Any vacancy occurring in any office of the Company shall be filled by the CRO.

**6.7**  **Vice President**.  In the absence of the CRO or in the event of his death, inability or refusal to act, the Vice President shall perform the duties of CRO, and when so acting, shall have all the powers of and be subject to all the restrictions upon the CRO.  The Vice President shall perform such other duties as from time to time may be assigned to him by the CRO or by the CRO.  When more than one Vice President has been selected by the CRO only one Vice Chief President shall be required to be Officer, but only a Vice President who is an Officer may perform the duties of the CRO as provided in this Agreement.

**6.8**  **Secretary**.  The Secretary shall act under the direction of the CRO.  The Secretary shall attend all Member meetings, record minutes of the proceedings and maintain the minutes and all documents evidencing Company action taken by written consent of the Member in the Company's minute books.  The Secretary shall perform these duties for committees when required.  The Secretary shall see to it that all notices of Member meetings are duly given in accordance with applicable law, the Certificate of Formation and this Agreement.  The Secretary

shall have custody of the Company's seal, if any, and when authorized by the CRO shall affix the seal to any instrument requiring it and attest such instrument.

**6.9** **Treasurer**. The Treasurer shall act under the direction of the CRO. The Treasurer shall have custody of the Company funds and securities and shall keep full and accurate accounts of the Company's assets, liabilities, receipts and disbursements in books belonging to the Company. The Treasurer shall deposit all moneys and other valuables in the name and to the credit of the Company in such depositories as may be designated by the CRO. The Treasurer shall disburse the funds of the Company as may be ordered by the CRO, taking proper vouchers for such disbursements, and shall render to the CRO (at regular meetings or whenever they request it) an account of all his or her transactions as Treasurer and of the financial condition of the Company. If required by the CRO, the Treasurer shall give the Company a bond for the faithful discharge of his or her duties in such amount and with such surety as the CRO prescribes.

**6.10** **Assistant Secretaries and Treasurers and Acting Officers**. The Assistant Secretaries and Assistant Treasurers, if any, shall act under the direction of the CRO, the Member and the Officer they assist. In the order of their seniority, the Assistant Secretaries shall, in the absence or disability of the Secretary, perform the duties and exercise the authority of the Secretary. The Assistant Treasurers, in the order of their seniority, shall, in the absence or disability of the Treasurer, perform the duties and exercise the authority of the Treasurer. The CRO shall have the power to appoint any Person to perform the duties of an Officer whenever for any reason it is impracticable for such Officer to act personally. Such acting Officer so appointed shall have the powers of and be subject to all the restrictions upon the Officer to whose office he is so appointed except as the CRO may by resolution otherwise determine.

**6.11** **Execution of Instruments**. All checks, drafts or demands for money and notes of the Company shall be signed by the CRO, the Treasurer or such Officer or Officers as the CRO from time to time designates. All funds of the Company not otherwise employed shall be deposited or used as the CRO from time to time designates. All other contracts or instruments in the name of and on the Company's behalf shall be signed by the CRO, or such Officer or Officers or other Person or Persons as the CRO from time to time designates. The CRO may also ratify or confirm the execution or delivery of any check, draft, demand for money, note, or other contract or instruments signed in the name of and on the Company's behalf.

**6.12** **Voting of Shares and Securities of Other Companies and Entities**. Subject always to the specific directions of the CRO, (a) any shares or other securities issued by any other corporation and owned or controlled by the Company may be voted at any meeting of security holders of such other corporation by the CRO or by proxy appointed by him, or in the absence of the CRO and his proxy by the Treasurer of the Company or by proxy appointed by him, or in the absence of the CRO and Treasurer, by the Secretary of the Company or by proxy appointed by him. Such proxy or consent in respect to any shares or other securities issued by any other corporation and owned by the Company shall be executed in the name of the Company by the CRO, the Treasurer or the Secretary of the Company without necessity of any authorization by the Member. Any Person or Persons designated in the manner above stated as the proxy or proxies of the Company shall have full right, power and authority to vote the shares

or other securities issued by such other corporation and owned by the Company the same as such shares or other securities might be voted by the Company.

## ARTICLE VII
## MEMBERS

**7.1** **Member**.  The name, address and Membership Interest of the sole Member of the Company is set forth on Exhibit A.  At all times during the Plan Period, the Chief Restructuring Officer shall be deemed to be the sole Member of the Company.

**7.2** **Admission of New Member Prohibited**.  No new Members may be admitted to the Company during the Plan Period.

**7.3** **Payments to Member**.  Except as otherwise specifically provided in this Agreement, no Member is entitled to compensation for acting in the Company business during the Plan Period.  The Company may reimburse the Member and its Affiliates for expenses incurred on behalf of the Company, as approved by the CRO.

**7.4** **Member Have No Managerial Authority**.  During the Plan Period,

(a)     the Member shall have no power to participate in the management of the business, affairs or operations of the Company; and

(b)     no Member shall have any power or authority to bind or act on behalf of the Company in any way, to pledge its credit, or to render it liable for any purpose.

**7.5** **Voting and Consent Rights**.  During the Plan Period, the Member shall have no voting, approval or consent rights, or rights to information except to the extent required by non-waivable provisions of the Delaware LLC Act.

**7.6** **Member Meetings**.  No meetings of the Member, whether regular or special, are required to be held.  Meetings of the Member may be called on 24 hours' notice in accordance with Section 9.1 by or at the request of the CRO, the Secretary, or the Member.  The notice must specify the place, date and time of the special meeting, but need not specify the business to be transacted at, or the purpose of, the meeting.  Meetings of the Member may be held at any location, as determined by the Person or Person(s) calling the meeting. Member may participate in a Member meeting by means of conference telephone or similar communications equipment through which all Persons participating in the meeting can communicate with each other. Participation in a meeting pursuant to this Section 7.6 constitutes presence in person at such meeting.

**7.7** **Action by Written Consent**.  Any action required or permitted to be taken under authorization voted at a Member meeting may be taken without a meeting if, before or after the action, the Member consents to the action in writing.  Such consents shall be filed with the minutes of the proceedings of the Member or Member committee and shall have the same effect as a vote of the Member for all purposes.

## ARTICLE VIII
## DISSOLUTION AND WINDING UP

**8.1**    **Dissolution**.  By operation of the Plan and the Confirmation Order, neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any applicable nonbankruptcy law has heretofore caused a dissolution of the Company.  The Company shall dissolve, and its affairs shall be wound up, upon the occurrence of any event that requires the dissolution of the Company under the Plan or the Delaware LLC Act; *provided, however*, upon the occurrence of any event that terminates the continued membership of the Member in the Company, the Company shall not dissolve and the personal representative (as defined in the Delaware LLC Act) of the Member shall agree in writing to continue the Company and to the admission of the personal representative of the Member or its nominee or its designee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the Member in the Company.

**8.2**    **Winding Up**.  Upon dissolution, the Company shall cease carrying on its business and affairs and the CRO shall wind up the Company's business and affairs and the liquidation of its assets.  Upon the winding up of the Company, the assets of the Company shall be distributed in accordance with the Plan and applicable law.  Upon the completion of the winding up of the Company, the Manager shall file a certificate of cancellation with the Secretary of State of the State of Delaware canceling the Certificate of Formation, at which time the Company shall terminate.

## ARTICLE IX
## GENERAL PROVISIONS

**9.1**    **Notice**.  All written notices to Member shall be given personally or by mail (registered, certified or other first class mail, with postage pre-paid), addressed to such Person at the address shown on Exhibit A or at such Member's last known address.  Written notices to any Member may also be delivered by overnight carrier, telegram, telex, telecopy, radiogram, cablegram, facsimile, computer transmission or similar form of communication, addressed to the address referred to in the preceding sentence.  Notices given pursuant to this Section 9.1 shall be deemed to be given when dispatched, or, if mailed, when deposited in a post office or official depository under the exclusive care and custody of the United States postal service.  Notices given by overnight carrier shall be deemed "dispatched" at 9:00 a.m. on the day the overnight carrier is reasonably requested to deliver the notice.  The Company shall have no duty to change the written address of any Member or Officer unless the Secretary receives written notice of such address change.

**9.2**    **Articles and Sections**.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The Article and Section headings contained in this Agreement have been inserted only as a matter of convenience and for reference, and in no way shall be construed to define, limit or describe the scope or intent of any provision of this Agreement.

**9.3**    **Entire Agreement**.  This Agreement constitutes the entire operating agreement of the Company.

**9.4**    **Termination**.  This Agreement shall terminate and be of no further force or effect upon the filing of a certificate of cancellation cancelling the Certificate of Formation pursuant to Article VIII of this Agreement; *provided, however*, that Sections 4.12 and 4.13 shall survive termination.

**9.5**    **Interpretation**.  In the event that any provisions of this Agreement are inconsistent with the Plan, the provisions of the Plan shall control.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.  Words denoting the singular shall include the plural and words denoting the plural shall include the singular.  Words denoting one gender shall include the other gender.  "Including" shall mean "including without limitation" or "including but not limited to." References to approval, consent, discretion or judgment on the part of the CRO shall mean the CRO's sole consent, discretion or judgment, provided the exercise thereof does not constitute gross negligence or willful misconduct.

**9.6**    **Governing Law**.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without regard to application of conflict of laws principles.

**9.7**    **Amendment**.  This Agreement may be modified, amended or supplemented only by a written instrument executed by the Company and the Member and approval of the Bankruptcy Court; *provided, however*, that the following provisions shall not be amended, and shall remain unmodified and in full force and effect, at all times during the Plan Period:  Section 4.1, Section 4.2, Section 4.3, Section 4.4, Section 4.7, Section 5.4, Section 6.1, Section 7.5, this Section 9.7 and Section 9.10.

**9.8**    **Severability**.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against such court's or authority's regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

**9.9**    **Third Party Beneficiaries**.  Except as otherwise contemplated in Section 4.12 and Section 4.13, this Agreement is intended for the benefit of the Parties and is not intended to create any rights, powers or benefit in favor of any other Persons.

**9.10**    **CONSENT TO JURISDICTION**.  **THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF WILMINGTON, DELAWARE, (B) IRREVOCABLY SUBMITS TO THE**

**JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED HEREIN (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY DELAWARE LAW).**

**9.11** **Definitions**. Unless expressly provided otherwise in the specific context, capitalized terms used herein without definition shall have the meanings, if any, ascribed to such terms in the Plan. The terms set forth below shall have the following meanings when used in this Agreement:

(a) *"Affiliate"* means, with respect to any Person, a Person who controls such Person, a Person controlled by such Person, or a Person under common control with such Person.

(b) *"Agreement"* has the meaning set forth in the preamble to this Agreement.

(c) *"Bankruptcy Case"* means Case No. 13-10028 (BLS) in the Bankruptcy Court.

(d) *"Certificate of Formation"* has the meaning set forth in Section 1.1.

(e) *"Company"* has the meaning set forth in the preamble to this Agreement.

(f) *"Covered Person"* means the CRO, any other Officer, or any director, shareholder, member, manager, partner, employee, Professional, or expressly authorized agent of the Company.

(g) *"Creditors"* means the holder of any Allowed Claim against the Company.

(h) *"CRO"* means John C. DiDonato or any Person appointed as CRO as his successor in accordance with this Agreement.

(i) *"Delaware LLC Act"* has the meaning set forth in Section 1.1 above.

(j) *"Effective Date"* has the meaning set forth in the preamble to this Agreement.

(k)　"***Loss***" means any loss, claim, damages, liability, obligation, settlement, judgment, action, cause of action, litigation, mediation, arbitration, proceeding, investigation (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalty, cost, or expense, including fees and disbursements.

(l)　"***Member***" means the sole Member of the Company, which shall be the CRO.

(m)　"***Membership Interest***" means the interest of a Member in the Company.

(n)　"***Membership Interest Rights***" means all rights, powers and privileges and all benefits arising out of or related to the Membership Interest, whether arising under this Agreement, the Delaware LLC Act or otherwise under applicable law, including any and all voting, consent, and approval rights, rights to distributions (liquidating or otherwise), allocations, and other economic benefits, and rights to information and management of the Company.

(o)　"***Officer***" means an officer of the Company.

(p)　"***Plan Period***" means the period beginning on the Effective Date and ending on the date of the entry of an order of the Bankruptcy Court for a final decree in the Bankruptcy Case.

(q)　"***Professionals***" shall mean attorneys, accountants, appraisers, financial advisers, real estate and other brokers, investment bankers and other professionals.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first above written.

**THE COMPANY**:

US TOOL & ENGINEERING, LLC

By: _____
          John C. DiDonato
Its:    Chief Restructuring Officer

**SOLE MEMBER**:

_____
John C. DiDonato,
Chief Restructuring Officer of the Company under the Plan

**EXHIBIT A**

**SCHEDULE OF MEMBERS**

| NAME | ADDRESS | PERCENTAGE INTEREST |
|---|---|---|
| John C. DiDonato, Chief Restructuring Officer | c/o Huron Consulting Services LLC 900 Wilshire Drive, Suite 270 Troy, MI 48084 | 100% |