# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| REVSTONE INDUSTRIES, LLC, *et al.*,[1] | ) | Case No. 12-13262 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## ORDER CONFIRMING THE DEBTORS' JOINT CHAPTER 11
## PLAN OF REORGANIZATION

The above captioned debtors and debtors in possession (collectively, the "Debtors")
having:

(a)  commenced, on December 3, 2012 (the "Petition Date"), the chapter 11 cases of Revstone Industries, LLC and Spara, LLC and commenced on January 4, 2013, the chapter 11 cases of Greenwood Forgings, LLC and US Tool & Engineering, LLC, by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

(b)  operated their businesses and managed their properties during these chapter 11 cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

(c)  filed, on December 10, 2014, the *Debtors' Joint Plan of Reorganization* [Docket No. 1868]; the *Disclosure Statement In Respect of Debtors' Joint Plan of Reorganization* [Docket No. 1869]; and the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement, (II) Scheduling the Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Package; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Establishing Deadline and Procedures for*

---

[1]  The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are:  Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool and Engineering, LLC (6450).  The location of the Debtors' headquarters and the service address for each of the Debtors is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084.

*Filing Objections to Confirmation of Plans; and (VI) Granting Related Relief* [Docket No. [1870];

(d)    filed, on January 20, 2015, the updated *Debtors' Joint Plan of Reorganization* [Docket No. 1941] (the "<u>Plan</u>");[2] and the *Disclosure Statement In Respect of Debtors' Joint Plan of Reorganization* (the "<u>Disclosure Statement</u>" [Docket No. 1942];

(e)    filed, on January 23, 2015, the *Notice of (A) Hearing To Consider Confirmation of Chapter 11 Plan; (B) Deadline for Casting Votes to Accept or Reject Plans; and (C) Related Matters* [Docket No. 1947] (the "<u>Confirmation Hearing Notice</u>"), which contained notice of the date and time set for the hearing to consider Confirmation of the Plan (the "<u>Confirmation Hearing</u>") and the deadline for filing objections to Confirmation;

(f)    filed, on January 28, 2015, the *Affidavit of Service* of the Solicitation Package [Docket No. 1954] (the "<u>Affidavit</u>");

(g)    filed, on February 24, 2015, the *Supplement to the Debtors' Joint Plan of Reorganization* [Docket No. 301] (as may be further amended from time to time, the "<u>Plan Supplement</u>");

(h)    filed, on March 2, 2015, the *Declaration of Catherine Nownes-Whitaker of Rust Consulting/Omni Bankruptcy Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 2004] (the "<u>Voting Report</u>"); and

(i)    filed, on March 2, 2015, the *Debtors' Memorandum of Law in Support of Confirmation of the Debtors' Joint Plan of Reorganization* [Docket No. 2003] (the "<u>Confirmation Brief</u>").

The Court having:

(a)    entered the *Order (I) Approving the Disclosure Statement, (II) Scheduling the Confirmation Hearing; (III) Approving Form and Manner of Notice of Confirmation Hearing; (IV) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Content of Solicitation Package; (B) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (C) Approving Forms of Ballots; (D) Establishing Voting Deadline for Receipt of Ballots and (E) Approving Procedures for Vote Tabulations; (V) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plans; and (VI) Granting Related Relief* [Docket No. 1937] (the "<u>Disclosure Statement Order</u>");

---

2  Capitalized terms not defined herein shall have the meanings set forth in the Plan.

(b)    set March 5, 2015, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Disclosure Statement Order;

(c)    reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Confirmation Hearing Notice, the Affidavit, and all filed pleadings, exhibits, statements, and comments regarding Confirmation of the Plan, including all objections, statements, and reservations of rights;

(d)    held the Confirmation Hearing on March 5, 2015, at 10:00 a.m., prevailing Eastern Time;

(e)    heard the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto;

(f)    considered all oral representations, affidavits, testimony, documents, filing, and other evidence regarding Confirmation of the Plan and the objections thereto; and

(g)    taken judicial notice of all pleadings and other documents filed, all orders, entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## INTRODUCTION

1.    <u>Findings and Conclusions</u>.  The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "<u>Order</u>") constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated

herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

2. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

3. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

4. <u>Solicitation and Notice</u>. The Plan, Disclosure Statement, Disclosure Statement Order, notice of the Confirmation Hearing, and an appropriate ballot (collectively, the "<u>Ballots</u>") for voting on the Plan with a return envelope or a notice of non-voting status (in substantially the forms approved pursuant to the Disclosure Statement Order) (collectively, the "<u>Solicitation Materials</u>") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. The solicitation of votes on the Plan complied with the solicitation procedures in the Disclosure

Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

5.    <u>Notice</u>. As evidenced by the Affidavit, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

6.    <u>Voting</u>. Votes to accept or reject the Plan have been solicited and tabulated in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

7.    <u>Burden of Proof</u>. The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

8.    <u>Notice of Plan Supplement Documents</u>. The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

## CONFIRMATION

9.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

10.    <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. Article IV of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Tax Claims,

DOCS_DE:198333.5 73864/001

which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

11.    <u>Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3))</u>.  Article IV of the Plan specifies that Claims and Interests in Classes 1 and 2 are Unimpaired.  Article IV of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, and 5.  The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

12.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  Article IV of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

13.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation:  (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including, but not limited to, the incorporation of the terms of the intercompany settlement, the PBGC Settlement Agreement, and the PBGC Settlement Order pursuant to section 1123(b)(3)(A) of the Bankruptcy Court; (b)  establishment of the Revstone Reorganized Board and the adoption of the

Reorganized Debtor Operating Agreements; (c) establishment of the Revstone/Spara Litigation Trust and vesting of Revstone/Spara Litigation Trust Assets; (d) funding distributions under the Plan from Cash on hand, the sale or other disposition of the remaining property of the Debtors and their non-Debtor subsidiaries and prosecution of Retained Rights of Action; (e) transfer of funds between and among the Debtors as necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan; (f) funding the Revstone/Spara Litigation Trust; (g) vesting of certain assets in the Reorganized Debtors; (h) authorization and approval of all corporate actions contemplated under the Plan; (i) expiration of the terms of the members of the Debtors' Board of Managers and appointment of the Boards of Managers of the Reorganized Debtors; (j) exemption from transfer taxes pursuant to section 1146 of the Bankruptcy Code; (k) maintenance of the Debtors' directors' and officers' and other insurance policies; and (l) preservation of certain of the Debtors' Retained Rights of Action.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

    14.   <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  Article VI.E of the Plan provides that the Reorganized Debtor Operating Agreements will prohibit the issuance of non-voting securities.  The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

    15.   <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Article VI.F of the Plan describes the manner of selection of the Board of Managers of the Reorganized Debtors. Such provisions are entirely consistent with the interests of creditors, equity security holders, and public policy.  The Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

DOCS_DE:198333.5 73864/001

16.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically the Debtors: (a) are proper debtors under section 109 of the Bankruptcy Code; (b) have complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Bankruptcy Court; and (c) have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan.

17.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its Confirmation. The Chapter 11 Cases were filed, and the Plan was proposed, for the legitimate purpose of allowing the Debtors to reorganize and maximize distributions to creditors, and providing them with sufficient liquidity and capital resources to satisfy their obligations. The Plan, therefore, satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

18.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable. The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

19.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. Pursuant to Article VI.F of the Plan, as to Reorganized Spara, Reorganized Greenwood and Reorganized

U.S. Tool, the Chief Restructuring Officer shall be appointed as the sole manager of each such Reoganized Debtor and the Plan Supplement discloses the identity and affiliations of the persons proposed to serve as the Board of Managers of Reorganized Revstone and the identity of and compensation to be paid to any insiders, if any, to be retained by the Reorganized Debtors, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims and Interests and with public policy.  The Plan, in conjunction with the Plan Supplement, therefore satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

20.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval.    Therefore,  section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

21.    <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>.  Each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The liquidation analysis set forth in Article V.B of the Disclosure Statement and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.  The methodology used and assumptions made in the liquidation analysis set forth in the Disclosure Statement, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.  The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

DOCS_DE:198333.5 73864/001

22.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1 and 2 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 3 and 4, the Impaired Classes entitled to vote on the Plan, have voted to accept the Plan. Class 5 is an Impaired Class of Interests that will not receive or retain any property under the Plan on account of such Class 5 Interests, is not entitled to vote on the Plan, and thus is deemed to reject the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has accepted the Plan.

23.    Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expenses and Tax Claims as set forth in Article III of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

24.    Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). As set forth in the Voting Report, Classes 3 and 4, each an Impaired Class of Claims under the Plan, voted to accept the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

25.    Feasibility of the Plan (11 U.S.C. § 1129(a)(11)). Based upon the evidence proffered or adduced at or prior to the Confirmation Hearing, and in the Confirmation Brief and financial projections set forth in the Disclosure Statement and in the PBGC Funding Schedule set forth in the PBGC Settlement Agreement, attached as Exhibit A to the Plan, the Plan is feasible and Confirmation is not likely to be followed by the Reorganized Debtors liquidating or

requiring further financial reorganization. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

26.    <u>Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))</u>. Article XIII.B.9 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

27.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits, at levels established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated itself to provide such benefits. The Debtors do not have any retiree benefit plans within the meaning of section 1129(a)(13) of the Bankruptcy Code. The Plan, therefore, satisfies section 1129(a)(13) of the Bankruptcy Code.

28.    <u>Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16))</u>. The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

29.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in the Chapter 11 Cases. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

30.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DOCS_DE:198333.5 73864/001

31.    Good Faith Solicitation (11 U.S.C. § 1125(e)).    Based on the record in the Chapter 11 Cases, the Debtors and each of their current or former subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.F of the Plan.

32.    Satisfaction of Confirmation Requirements.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.    Confirmation.    The Plan, including all exhibits thereto, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code.    The terms of the Plan and the Plan Supplement and each of the documents comprising the Plan Supplement, any amendments, modifications, or supplements thereto, and all documents and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized.    The Debtors and the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan, including entry into any agreements contained in the Plan Supplement.

2.    <u>Objections</u>.    All objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled are overruled on the merits.

3.    <u>Bankruptcy Rule 1007(b)(1) Requirements Waived</u>.  The requirements set forth in Bankruptcy Rule 1007(b)(1) are waived.

4.    <u>Omission of Reference to Particular Plan Provisions</u>.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

5.    <u>Classifications</u>.    The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and the Disclosure Statement Order.

6.    <u>General Settlement of Claims and Interests</u>.   As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  Subject to Article VIII of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

7.    <u>Reorganized Debtors.</u>  On the Effective Date, the Reorganized Revstone Board shall be established and as to Reorganized Spara, Reorganized Greenwood, and Reorganized U.S. Tool, the Chief Restructuring Officer shall be appointed as the sole manager of each such Reorganized Debtor.  The Chief Restructuring Officer of Revstone shall report to and be subject

to the oversight by the Reorganized Revstone Board. The Reorganized Debtors shall adopt the Reorganized Debtor Operating Agreements. The Reorganized Debtors shall be authorized to implement and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary or desirable to consummate the Plan.

8. Sources of Consideration for Plan Distributions. The Reorganized Debtors shall fund distributions under the Plan with the Distributable Assets and the proceeds thereof, including, without limitation, each Debtor's Cash on hand and proceeds from the sale or other disposition of the remaining property of the Debtors and their non-Debtor subsidiaries and prosecution of Retained Rights of Action, as set forth in the PBGC Funding Schedule and subject to the terms of the PBGC Settlement Agreement.

9. Corporate Action. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (a) selection of the Board of Managers for Reorganized Revstone and appointment of the Chief Restructuring Officer as the sole manager of Reorganized Spara, Reorganized Greenwood and Reorganized U.S. Tool; (b)  execution of the Reorganized Debtor Operating Agreements; (c) the execution of the Revstone/Spara Litigation Trust Agreement and (d) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the board of directors, shareholders, managers, or members of the Debtors or the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable)

directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors.

10.    <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective Date, the Reorganized Debtors, and the Chief Restructuring Officer and members of the Board of Managers of Reorganized Revstone, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

11.    <u>Section 1146 Exemption</u>.  Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

12.    <u>Employee and Retiree Benefits</u>.  There are no employment, retirement, indemnification, or other arrangements in effect on the Effective Date with the Debtors, or retirement income plans and welfare benefit plans for such persons, and accordingly, no such agreements or arrangements will be assumed by the Reorganized Debtors or otherwise remain in effect after the Effective Date.  Nothing in the Plan shall limit, diminish, or otherwise alter the

DOCS_DE:198333.5 73864/001

Reorganized Debtors' defenses, claims, Rights of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.

13.    <u>Preservation of Retained Rights of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article X of the Plan, the Reorganized Debtors and, solely as to the Revstone/Spara Litigation Trust Assets, the Revstone/Spara Litigation Trustee, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Rights of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' or Revstone/Spara Litigation Trustee's rights to commence, prosecute, or settle such Retained Rights of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors and the Revstone/Spara Litigation Trustee may pursue such Retained Rights of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors or Revstone/Spara Litigation Trust.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Right of Action against it as any indication that the Reorganized Debtors or Revstone/Spara Litigation Trustee, as applicable, will not pursue any and all available Rights of Action against it.  The Reorganized Debtors or Revstone/Spara Litigation Trustee, as applicable, expressly reserve all rights to prosecute any and all Retained Rights of Action against any Person or Entity, except as otherwise expressly provided in the Plan.** Unless any Retained Rights of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, or a Bankruptcy Court order, the Reorganized Debtors and Revstone/Spara Litigation Trustee, as applicable, expressly reserve all Retained Rights of Action, for later adjudication, and, therefore, no preclusion

doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Rights of Action upon, after, or as a consequence of the Confirmation or Consummation.   In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Rights of Action that the Reorganized Debtors or Revstone/Spara Litigation Trustee, as applicable, may hold against any Person or Entity shall vest in the Reorganized Debtors or Revstone/Spara Litigation Trust, applicable.     The Reorganized Debtors or Revstone/Spara Litigation Trust, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Retained Rights of Action. The Reorganized Debtors and the Revstone/Spara Litigation Trustee, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Rights of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Nothing herein is intended to change the rights or defenses any Person or Entity has or had immediately prior to Confirmation of the Plan.

14.    Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, except as otherwise provided herein or in the Plan Supplement, all executory contracts or unexpired leases will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory Contract and unexpired lease assumed by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in

accordance with its terms, except as such terms are modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. The Debtors will maintain and, to the extent applicable, assume their directors' and officers', general liability, and other insurance policies.

15. <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>. Proofs of Claim with respect to Claims arising from the rejection of executory contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court within thirty (30) days after the earlier of (a) the Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order or approval of the Bankruptcy Court. Allowed Claims arising from the rejection of the Debtors' executory contracts or unexpired leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Plan, as applicable. **Rejection claims for which a Proof of Claim is not timely Filed will be forever barred from assertion against the Debtors, their Estates, the Reorganized Debtors, and their respective property unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Such Rejection claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article X of the Plan.**

16. <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtors that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that any of the Reorganized Debtors has any liability thereunder.

DOCS_DE:198333.5 73864/001

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

17.   Contracts and Leases Entered Into After the Petition Date.  Contracts and leases entered into after the Petition Date by any Debtor, if any, including any executory contracts and unexpired leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, subject to the terms thereof, such contracts and leases (including any assumed executory contracts and unexpired leases, if any) will survive and remain unaffected by entry of the Confirmation Order.

18.   Distributions Under the Plan.  The procedures governing distributions contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

19.   Procedures for Resolving Contingent, Unliquidated, and Disputed Claims.  The procedures and authority to file objections, settle, compromise, withdraw or litigate to judgment Claims, adjudicate or resolve Tax issues or liabilities, and estimate, adjudicate and resolve any contingent or unliquidated Disputed Claim, contained in Article IX of the Plan shall be, and hereby are, approved in their entirety.

20.   **Injunction Related to Rights of Action and Claims, Administrative Expenses and Interests.**  Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest or other debt or liability against or in the Debtors  are permanently enjoined from taking any of the following actions against property of the

Debtors, their Estates, the Revstone/Spara Litigation Trust, or the Reorganized Debtors on account of all or such portion of any such Claims, Administrative Expenses, Interests, debts or liabilities:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan

21.    <u>Discharge of the Debtors</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties.  Upon the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Claim based upon such debt is Allowed under section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted the Plan.

22.    <u>Exculpation</u>.  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, (i) the Debtors, (ii) the Debtors' independent managers, Messrs. James B. Shein and Richard E. Newsted (solely in their respective capacity as managers of the Debtors, including in their respective role as the members of the Restructuring Committee) (the "<u>Independent</u>

Managers"), (iii) the Debtors' postpetition attorneys and other professionals retained with the approval of the Bankruptcy Court (solely in their respective capacity as professionals of the Debtors) (the "Debtor Retained Professionals"), (iv) the attorneys and professionals retained by the Restructuring Committee (solely in their capacity as such), (v) the Huron Parties (solely with respect to services rendered for the Debtors, including as officers, representatives, professionals for, and/or agent of the Debtors), (vi) the former and current members of the Creditors' Committee (solely acting in such capacity), (vii) the Creditors' Committee's attorneys and other Professional Persons (solely acting in the capacity as professionals of the Creditors' Committee), (viii) BFG, (ix) PBGC, and (x) the respective successors or assigns of the foregoing parties, shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken, on or after the Petition Date, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud. For the avoidance of doubt, the scope of the exculpation provided under Article X.C of the Plan does not cover:  (i) Mayer Brown LLP, (ii) Richards Layton & Finger LLP, (iii) MPI Products LLC, Monomoy Capital Partners, Monomoy Capital Partners II, LP, or any of their respective affiliates or successors, or (iv) any of the George Hofmeister Parties or the

former and current officers, managers or representatives of the Debtors (other than the Independent Managers, the Debtor Retained Professionals, the attorneys and professionals retained by the Restructuring Committee, and the Huron Parties expressly exculpated above).

23.   **Debtors' Release of CRO, Independent Managers, Creditors' Committee and Other Parties.**  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, the Debtors, for themselves and the Estates, hereby irrevocably, unconditionally and generally release (i) the Independent Managers, (ii) the Debtor Retained Professionals, (iii) the attorneys and professionals retained by the Restructuring Committee (solely in their capacity as such), (iv) the Huron Parties (solely with respect to services rendered for the Debtors, including as officers, representatives, professionals for, and/or agent of the Debtors), (v) the former and current members of the Creditors' Committee (solely acting in such capacity), (vi) the Creditors' Committee's attorneys and other Professional Persons (solely acting in the capacity as professionals of the Creditors' Committee), (vii) BFG, (viii) PBGC, and (ix) the respective successors or assigns of the foregoing parties (collectively, the "Released Parties"), from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, based on or relating to in any way the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, other than claims or liabilities arising out of or relating to any act or omission of the Released Parties that constitutes willful misconduct, gross negligence or fraud; provided that such released claims, obligations, rights, suits, damages, causes of action, and liabilities relate to (a) acts or

omissions on or after the Petition Date and prior to the Effective Date or (b) prepetition acts or omissions relating to the commencement of the Chapter 11 Cases; provided further that the foregoing release shall be without prejudice to any objections to claims, including counter-claims or setoffs, relating to Claims asserted by any of the Released Parties against the Debtors that the Debtors or the Reorganized Debtors may assert against the Released Parties.  For the avoidance of doubt, the scope of the release provided under this Article X.D does not cover:  (i) Mayer Brown LLP, (ii) Richards Layton & Finger LLP, (iii) MPI Products LLC, Monomoy Capital Partners, Monomoy Capital Partners II, LP, or any of their respective affiliates or successors, or (iv) any of the George Hofmeister Parties or the former and current officers, managers or representatives of the Debtors (other than the Independent Managers, the Debtor Retained Professionals, the attorneys and professionals retained by the Restructuring Committee, and the Huron Parties expressly released above).

24.   **Release by Creditors**.  As of and subject to the occurrence of the Effective Date, for good and valuable consideration, each holder of a Claim that votes to accept the Plan (the "Creditor-Releasors"), for itself and its respective present or former officers, directors, managers, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such, shall be deemed to have completely, conclusively, unconditionally and irrevocably released (i) the Debtors, (ii) the Estates, (iii) the Independent Managers, (iv) the Debtor Retained Professionals, (v) the attorneys and professionals retained by the Restructuring Committee (solely in their capacity as such), (vi) the Huron Parties (solely with respect to services rendered for the Debtors, including as officers, representatives, professionals for, and/or agent of the Debtors), (vii) the former

23

and current members of the Creditors' Committee (solely acting in such capacity), (viii) the Creditors' Committee's attorneys and other Professional Persons (solely acting in the capacity as professionals of the Creditors' Committee), (ix) BFG, (x) PBGC, and (xi) the respective successors or assigns of the foregoing parties (the "Released Estate Parties"), from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise, based on or relating to in any way the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, arising prior to the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of the Released Estate Parties that constitutes willful misconduct or gross negligence; provided, however, the foregoing shall not constitute a waiver or release of any right of the Holder of an Allowed Claim to payment under the Plan on account of such Allowed Claim.  For the avoidance of doubt, the Released Estate Parties do not include:  (i) Mayer Brown LLP, (ii) Richards Layton & Finger LLP, (iii) MPI Products LLC, Monomoy Capital Partners, Monomoy Capital Partners II, LP, or any of their respective affiliates or successors, or (iv) any of the George Hofmeister Parties or the former and current officers, managers or representatives of the Debtors (other than the Independent Managers, the Debtor Retained Professionals, the attorneys and professionals retained by the Restructuring Committee, and the Huron Parties expressly released above).

25.  **Release by Debtors' Non-Debtor Affiliates of the Restructuring Committee**. Except as otherwise specifically provided in the Plan, for good and valuable consideration, as of the Effective Date, all of the non-debtor, direct or indirect corporate subsidiaries of the Debtors (the "Releasor Affiliates") shall conclusively, absolutely, unconditionally,

irrevocably and forever release and discharge the Released Estate Parties from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities whatsoever, arising prior to the Effective Date and directly or indirectly arising from or relating to, in whole or in part, the Debtors and/or the Chapter 11 Cases.  For the avoidance of doubt, the Releasor Affiliates do not include TPOP, LLC f/k/a Metavation, LLC.

26.   Retention of Jurisdiction.  Notwithstanding the entry of the Confirmation Order of the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.

27.   Payment of Statutory Fees.  On the Effective Date, and thereafter as may be required, the Disbursing Agent shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

28.   Statutory Committee and Cessation of Fee and Expense Payment.  On the Effective Date, the Creditors Committee shall be dissolved.  As of the Effective Date, the Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Creditors Committee.

29.   Revstone/Spara Litigation Trust.  On the Effective Date: (i) each of Revstone and Spara shall take any and all actions as may be necessary or appropriate to establish the Revstone/Spara Litigation Trust and to cause the transfer and assignment of Revstone's and Spara's Retained Rights of Action, the Relevant Books and Records, and a Cash reserve for Plan Expenses of the Revstone/Spara Litigation Trust in an amount up to $1,000,000, as set forth in

DOCS_DE:198333.5 73864/001

the definition of "Plan Expenses" in the Plan and subject to the terms of the PBGC Settlement Agreement, which together shall constitute the initial Revstone/Spara Litigation Trust Assets; and; (ii) the Revstone/Spara Litigation Trust shall be vested with all right, title and interest in the Revstone/Spara Litigation Trust Assets, and such property shall become the property of the Revstone/Spara Litigation Trust free and clear of all Claims, Liens, charges, other encumbrances and interests, subject only to the rights, in instances described in Article VI.M.5 of the Plan and the Revstone/Spara Litigation Trust Agreement, of the Chief Restructuring Officer of Reorganized Spara consistent with the terms of the Plan, the PBGC Settlement Agreement, and the Revstone/Spara Litigation Trust Agreement.

30.    <u>Successors and Assigns</u>.  The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

31.    <u>Plan Supplement</u>.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Debtors and the Reorganized Debtors, are authorized and approved when they are finalized, executed, and delivered.  Without further order or authorization of this Court, the Debtors, Reorganized Debtors, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.

32.    <u>United States Environmental Protection Agency</u>.  Nothing in this Confirmation Order or the Plan discharges, releases, resolves, exculpates, precludes, or enjoins: (i) any

environmental liability to any governmental unit that is not a Claim as defined in 11 U.S.C. § 101(5); (ii) any environmental Claim of any governmental unit arising on or after the Effective Date; (iii) any environmental liability to any governmental unit on the part of any entity as the owner or operator of property after the Effective Date; or (iv) any liability to the United States on the part of any person or entity other than the Debtors or Reorganized Debtors. Nothing in this Order or the Plan divests any tribunal of any jurisdiction it may have under environmental law to interpret this Order or the Plan.

33.    <u>Binding Effect</u>.  Pursuant to Article XV of the Plan, Confirmation will bind the Debtors, all Holders of Claims, Administrative Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the Plan.

34.    <u>Governmental Approvals Not Required</u>.  Except as otherwise specifically provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

35.    <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, members, or stockholders of the Debtors or Reorganized Debtors and with the

DOCS_DE:198333.5 73864/001

effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

36.   _Plan and Confirmation Order Mutually Dependent_.  This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms;  (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

37.   _Reversal_.  If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors.  Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

38.   _No Stay_.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests, all Entities that are parties to or subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or in this Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

39.   <u>Confirmation Order Supersedes</u>.   It is hereby ordered that this Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Order.

40.   <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

41.   <u>Recording</u>.  The Debtors and the Reorganized Debtors hereby are authorized to deliver a notice or short form of this Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Court, (b) shall constitute sufficient notice of the entry of this Order to such filing and recording officers, and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law.  The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

42.   <u>Conflicts Between This Order and the Plan</u>. The provisions of the Plan and of this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.

43.     Final Order.  This Order is a Final Order and the period in which an appeal must

be filed shall commence upon the entry hereof.

Dated:  March 23, 2015
Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE